1

2

Steve W. Berman (*pro hac vice*)
*steve@hbsslaw.com*
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Matthew D. Schelkopf
*mds@sauderschelkopf.com*
SAUDER SCHELKOPF LLC
1109 Lancaster Avenue
Berwyn, PA 19312
Telephone: (610) 200-0581
Facsimile: (610) 421-1326

*Interim co-Lead Counsel*

[Additional counsel listed on signature page]

3

4

5

6

7

8

9

10

11

12

13

14

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

15

16

17

18

*In re: Hyundai and Kia Engine
Litigation II*

Case No. 8:18-cv-02223-JLS-JDE

**PLAINTIFFS' AMENDED
CONSOLIDATED CLASS
ACTION COMPLAINT**

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ..................................................................................1

II.   JURISDICTION AND VENUE..........................................................5

III.  PARTIES .............................................................................................5

      A.   Plaintiffs ...................................................................................5

      B.   Defendants..............................................................................31

IV.   FACTUAL ALLEGATIONS..............................................................34

      A.   The Engine Failure Defect ....................................................34

      B.   The Class Vehicles utilize various engines manufactured by
           Defendants..............................................................................40

      C.   The Engine Failure Defect results in a serious risk of engine
           failure and spontaneous fires across multiple models and
           years of Defendants' vehicles, and Defendants were aware of
           such dangers. .........................................................................41

           1.   NHTSA and other online complaints evidence the
                Engine Failure Defect in Class Vehicles going back as
                far as 2010. .................................................................41

           2.   Warranty claims, part sales, and customer complaints
                lodged with Defendants also alerted Defendants to the
                Engine Failure Defect. ..............................................139

           3.   Defendants' belated, piecemeal, inadequate, and
                incomplete recalls evidence Defendants' knowledge
                of the Engine Failure Defect. ...................................141

           4.   Defendants knew or should have known about the
                Engine Failure Defect given Defendants' rigorous pre-
                sale durability testing. ..............................................158

      D.   Despite knowledge of the Engine Failure Defect, Defendants
           marketed the Class Vehicles as safe, durable, and reliable. ...............162

      E.   Defendants' warranties for Class Vehicles ..........................166

V.      CLASS ALLEGATIONS ................................................................... 169

        A.      Class Definitions .................................................................. 169

        B.      Class Action Requirements ................................................. 173

VI.     TOLLING OF STATUTES OF LIMITATIONS ........................... 176

        A.      The discovery rule justifies tolling. .................................... 176

        B.      Fraudulent concealment justifies tolling. ........................... 177

        C.      Estoppel justifies tolling. ................................................... 177

VII.    CALIFORNIA LAW APPLIES TO THE CLAIMS OF THE
        NATIONWIDE CLASS .................................................................. 178

VIII.   CLAIMS ALLEGED ...................................................................... 179

COUNT I  VIOLATIONS OF THE CALIFORNIA CONSUMER
        LEGAL REMEDIES ACT (CAL. CIV. CODE § 1750, *ET SEQ.*)
        (ON BEHALF OF THE NATIONWIDE CLASS OR,
        ALTERNATIVELY, THE CALIFORNIA CLASS) ................................. 179

COUNT II  VIOLATIONS OF THE CALIFORNIA UNFAIR
        COMPETITION LAW (CAL. BUS. & PROF. CODE § 17200)
        (ON BEHALF OF THE NATIONWIDE CLASS OR,
        ALTERNATIVELY, THE CALIFORNIA STATE CLASS) ...................... 181

COUNT III  VIOLATIONS OF CALIFORNIA FALSE ADVERTISING
        LAW (CAL. BUS. & PROF. CODE § 17500, *ET SEQ.*) (ON
        BEHALF OF THE NATIONWIDE CLASS OR,
        ALTERNATIVELY, THE CALIFORNIA CLASS) ................................. 183

COUNT IV  VIOLATIONS OF THE CALIFORNIA SONG-BEVERLY
        ACT – BREACH OF IMPLIED WARRANTY (CAL. CIV. CODE
        § 1790, *ET SEQ.*) (ON BEHALF OF THE NATIONWIDE CLASS
        OR, ALTERNATIVELY, THE CALIFORNIA CLASS) ........................... 185

COUNT V  VIOLATIONS OF THE ALABAMA DECEPTIVE TRADE
        PRACTICES ACT (ALA. CODE § 8-19-1, *ET SEQ.*) (ALLEGED
        BY PLAINTIFF FRANKLIN MARBURY ON BEHALF OF THE
        ALABAMA CLASS) ........................................................................... 186

COUNT VI  BREACH OF ALABAMA'S IMPLIED WARRANTY OF
    MERCHANTABILITY (ALA. CODE §§ 7-2-314; 7-2A-212)
    (ALLEGED BY PLAINTIFF FRANKLIN MARBURY ON
    BEHALF OF THE ALABAMA CLASS) ....................................................187

COUNT VII  VIOLATIONS OF THE ARIZONA CONSUMER FRAUD
    ACT (ARIZ. REV. STAT. § 44-1522, *ET SEQ.*) (ALLEGED BY
    PLAINTIFF PALMER ON BEHALF OF THE ARIZONA
    CLASS) ..............................................................................................188

COUNT VIII  BREACH OF ARIZONA'S IMPLIED WARRANTY OF
    MERCHANTABILITY (ARIZ. REV. STAT. §§ 47-2314; 47-
    2A212) (ALLEGED BY PLAINTIFF PALMER ON BEHALF OF
    THE ARIZONA CLASS) ..........................................................................190

COUNT IX  VIOLATIONS OF THE CONNECTICUT UNFAIR
    TRADE PRACTICES ACT (CONN. GEN. STAT. §§ 42-110A *ET
    SEQ.*) (ALLEGED BY PLAINTIFF FRAZIER ON BEHALF OF
    THE CONNECTICUT CLASS) ..................................................................190

COUNT X  BREACH OF CONNECTICUT'S IMPLIED WARRANTY
    OF MERCHANTABILITY (CONN. GEN. STAT. §§ 42A-2-314
    AND 42A-2A-504) (ALLEGED BY PLAINTIFF FRAZIER ON
    BEHALF OF THE CONNECTICUT CLASS) ...............................................192

COUNT XI  VIOLATIONS OF THE FLORIDA DECEPTIVE AND
    UNFAIR TRADE PRACTICES ACT (FLA. STAT. § 501. 201,
    *ET SEQ.*) (ALLEGED BY PLAINTIFFS GAGAS, CARO, AND
    CARPENTER ON BEHALF OF THE FLORIDA CLASS)........................193

COUNT XII  BREACH OF FLORIDA'S IMPLIED WARRANTY OF
    MERCHANTABILITY (F.S.A. §§ 672.314; 680.212) (ALLEGED
    BY PLAINTIFFS GAGAS, CARO, AND CARPENTER ON
    BEHALF OF THE FLORIDA CLASS)........................................................195

COUNT XIII  VIOLATIONS OF THE GEORGIA FAIR BUSINESS
    PRACTICES ACT (GA. CODE ANN. § 10-1-390, *ET SEQ.*)
    (ALLEGED BY PLAINTIFF MARTINO ON BEHALF OF THE
    GEORGIA CLASS)..................................................................................196

COUNT XIV  VIOLATIONS OF THE GEORGIA UNIFORM
      DECEPTIVE TRADE PRACTICES ACT (GA. CODE ANN.
      § 10-1-371(5)) (ALLEGED BY PLAINTIFF MARTINO ON
      BEHALF OF THE GEORGIA CLASS) ....................................... 197

COUNT XV  BREACH OF GEORGIA'S IMPLIED WARRANTY OF
      MERCHANTABILITY (GA. CODE ANN. §§ 11-2-314; 11-2A-
      212) (ALLEGED BY PLAINTIFF MARTINO ON BEHALF OF
      THE GEORGIA CLASS) ....................................................... 199

COUNT XVI  VIOLATIONS OF THE MARYLAND CONSUMER
      PROTECTION ACT (MD. CODE ANN. COM. LAW § 13-101,
      *ET SEQ.*) (ALLEGED BY PLAINTIFF MOON ON BEHALF OF
      THE MARYLAND CLASS) .................................................... 200

COUNT XVII  BREACH OF MARYLAND'S IMPLIED WARRANTY
      OF MERCHANTABILITY (MD. CODE COM. LAW §§ 2-314;
      2A-212) (ALLEGED BY PLAINTIFF MOON ON BEHALF OF
      THE MARYLAND CLASS) .................................................... 202

COUNT XVIII  VIOLATIONS OF THE MICHIGAN CONSUMER
      PROTECTION ACT (MICH. COMP. LAWS § 445.903, *ET SEQ.*)
      (ALLEGED BY PLAINTIFF O'BRIEN ON BEHALF OF THE
      MICHIGAN CLASS) ........................................................... 202

COUNT XIX  BREACH OF MICHIGAN'S IMPLIED WARRANTY OF
      MERCHANTABILITY (MICH. COMP. LAWS §§ 440.2314;
      440.2860) (ALLEGED BY PLAINTIFF O'BRIEN ON BEHALF
      OF THE MICHIGAN CLASS) ................................................ 204

COUNT XX  VIOLATION OF THE MISSOURI MERCHANDISING
      PRACTICES ACT (MO. REV. STAT. §§ 407.010 *ET SEQ.*)
      (ALLEGED BY PLAINTIFF CARDUFF ON BEHALF OF THE
      MISSOURI CLASS)............................................................ 205

COUNT XXI  BREACH OF MISSOURI'S IMPLIED WARRANTY OF
      MERCHANTABILITY (MO. REV. STAT. §§ 407.2–314 ET
      SEQ.) (ALLEGED BY PLAINTIFF CARDUFF ON BEHALF OF
      THE MISSOURI CLASS) ..................................................... 207

COUNT XXII  VIOLATIONS OF THE OHIO CONSUMER SALES
      PRACTICES ACT (O.R.C. §§ 1345.01, *ET SEQ.*) (ALLEGED BY
      PLAINTIFF RONFELDT ON BEHALF OF THE OHIO CLASS)............. 208

COUNT XXIII  VIOLATIONS OF OHIO'S IMPLIED WARRANTY
        OF MERCHANTABILITY (O.R.C. §§ 1302.27 AND 1310.19)
        (ALLEGED BY PLAINTIFF RONFELDT ON BEHALF OF THE
        OHIO CLASS) .........................................................................................211

COUNT XXIV  VIOLATIONS OF THE NORTH CAROLINA UNFAIR
        AND DECEPTIVE TRADE PRACTICES ACT (N.C. GEN.
        STAT. §§ 75-1.1, *ET SEQ.*) (ALLEGED BY PLAINTIFF
        PRESSLEY ON BEHALF OF THE NORTH CAROLINA
        CLASS) ...................................................................................................212

COUNT XXV  BREACH OF NORTH CAROLINA'S IMPLIED
        WARRANTY OF MERCHANTABILITY (N.C. GEN. STAT. §§
        25-2-314 AND 25-2A-212) (ALLEGED BY PLAINTIFF
        PRESSLEY ON BEHALF OF THE NORTH CAROLINA
        CLASS) ...................................................................................................214

COUNT XXVI  VIOLATIONS OF THE PENNSYLVANIA UNFAIR
        TRADE PRACTICES AND CONSUMER PROTECTION LAW
        (73 PA. STAT. § 201-1, *ET SEQ.*) (ALLEGED BY PLAINTIFFS
        DIPARDO, DIPARDO, AND ROOS ON BEHALF OF THE
        PENNSYLVANIA CLASS) ....................................................................215

COUNT XXVII  BREACH OF PENNSYLVANIA'S IMPLIED
        WARRANTY OF MERCHANTABILITY (13 PA. CONS. STAT.
        §§ 2314; 2A212) (ALLEGED BY PLAINTIFFS DIPARDO,
        DIPARDO, AND ROOS ON BEHALF OF THE
        PENNSYLVANIA CLASS) ....................................................................217

COUNT XXVIII  VIOLATION OF THE TEXAS DECEPTIVE TRADE
        PRACTICES – CONSUMER PROTECTION ACT (TEX. BUS. &
        COM. CODE §§ 17.01, *ET SEQ.*) (ALLEGED BY PLAINTIFF
        SMITH ON BEHALF OF THE TEXAS CLASS) ......................................218

COUNT XXIX  BREACH OF TEXAS'S IMPLIED WARRANTY OF
        MERCHANTABILITY (TEX. BUS. & COM. CODE §§ 2.314
        AND 2A.212, *ET SEQ.*) (ALLEGED BY PLAINTIFF SMITH ON
        BEHALF OF THE TEXAS CLASS) .........................................................220

COUNT XXX  VIOLATIONS OF THE WASHINGTON CONSUMER
        PROTECTION ACT (WASH. REV. CODE § 19.86.010, *ET SEQ.*)
        (ALLEGED BY PLAINTIFFS BUETTNER AND SHORT ON
        BEHALF OF THE WASHINGTON CLASS) ............................................221

COUNT XXXI  BREACH OF WASHINGTON'S IMPLIED
WARRANTY OF MERCHANTABILITY (WASH. REV. CODE.
§§ 62A.2-314; 62A.2A-212) (ALLEGED BY PLAINTIFFS
BUETTNER AND SHORT ON BEHALF OF THE
WASHINGTON CLASS)...........................................................................224

COUNT XXXII  VIOLATION OF THE WEST VIRGINIA
CONSUMER CREDIT AND PROTECTION ACT (W. VA.
CODE §§ 46A-1-101, *ET SEQ.*) (ALLEGED BY PLAINTIFF
TWIGGER ON BEHALF OF THE WEST VIRGINIA CLASS)................225

COUNT XXXIII  BREACH OF WEST VIRGINIA'S IMPLIED
WARRANTY OF MERCHANTABILITY (W. VA. CODE §§ 46-
2-314 AND 46-2A-212) (ALLEGED BY PLAINTIFF TWIGGER
ON BEHALF OF THE WEST VIRGINIA CLASS)...................................228

COUNT XXXIV  FRAUD BY CONCEALMENT (COMMON LAW)
(ALLEGED BY ALL PLAINTIFFS ON BEHALF OF THE
NATIONWIDE CLASS OR, ALTERNATIVELY, THE STATE
CLASSES).................................................................................................229

COUNT XXXV  BREACH OF EXPRESS WARRANTY (ALLEGED
BY ALL PLAINTIFFS ON BEHALF OF THE NATIONWIDE
CLASS OR, ALTERNATIVELY, THE STATE CLASSES) ......................232

COUNT XXXVI  VIOLATIONS OF THE MAGNUSON-MOSS
WARRANTY ACT  (15 U.S.C. § 2301, *ET SEQ.*) (ALLEGED BY
ALL PLAINTIFFS ON BEHALF OF THE NATIONWIDE
CLASS OR, ALTERNATIVELY, THE STATE CLASSES) ......................234

COUNT XXXVII  BREACH OF THE DUTY OF GOOD FAITH AND
FAIR DEALING (ALLEGED BY ALL PLAINTIFFS ON
BEHALF OF THE NATIONWIDE CLASS OR,
ALTERNATIVELY, THE STATE CLASSES) ..........................................238

REQUEST FOR RELIEF ...................................................................................239

DEMAND FOR JURY TRIAL...........................................................................240

Plaintiffs file this lawsuit individually and on behalf of a class. Plaintiffs allege as follows, based upon personal knowledge as to their own acts and experiences, and, as to all other matters, based on the investigation of counsel and experts:

## I.     INTRODUCTION

1.     The most important duty of a car manufacturer is to provide consumers with a safe car. A second related duty is to warn consumers and fix a car where the manufacturer learns of a vehicle defect that implicates serious safety issues.

2.     Hyundai and Kia breached these fundamental duties. Certain Hyundai and Kia vehicles equipped with Gamma and Nu gasoline direct injection ("GDI") engines and Theta II multipoint fuel injections ("MPI") engines ("Class Vehicles") contain an engine defect that presents consumers with an unacceptable risk of engine failure and spontaneous engine stalling and fire while driving.

3.     The Class Vehicles include:

| MODEL YEAR ("MY") | MODEL |
|---|---|
| 2010–2012 | Hyundai Santa Fe vehicles equipped with a Theta II 2.4-liter MPI engine |
| 2011–2015 | Hyundai Sonata Hybrid vehicles equipped with a Theta II 2.4-liter MPI engine |
| 2016-2019 | Hyundai Sonata Hybrid/Plug-In vehicles equipped with a Nu 2.0 GDI engine |
| 2010–2013 | Hyundai Tucson vehicles equipped with a Theta II 2.4-liter MPI engine |
| 2014-2021 | Hyundai Tucson vehicles equipped with a Nu 2.0 GDI engine |
| 2014 | Hyundai Elantra Coupe vehicles equipped with a Nu 2.0 GDI engine |
| 2014-2016 | Hyundai Elantra vehicles equipped with a Nu 2.0 GDI engine |
| 2014-2020 | Hyundai Elantra GT vehicles equipped with a Nu 2.0 GDI engine |
| 2012–2017 | Hyundai Veloster vehicles equipped with a Gamma 1.6-liter GDI engine |

| MODEL YEAR ("MY") | MODEL |
|---|---|
| 2010–2013 | Kia Forte vehicles equipped with a Theta II 2.4-liter MPI engine |
| 2010–2013 | Kia Forte Koup vehicles equipped with a Theta II 2.4-liter MPI engine |
| 2014–2018 | Kia Forte vehicles equipped with a Nu 2.0 GDI engine |
| 2014–2016 | Kia Forte Koup vehicles equipped with a Nu 2.0 GDI engine |
| 2011–2016 | Kia Optima Hybrid vehicles equipped with a Theta II 2.4-liter MPI engine |
| 2017–2020 | Kia Optima Hybrid/Plug-In vehicles equipped with a Nu 2.0 GDI engine |
| 2011–2013 | Kia Sorento vehicles equipped with a Theta II 2.4-liter MPI engine |
| 2012–2016 | Kia Soul vehicles equipped with a Gamma 1.6-liter GDI engine |
| 2014–2019 | Kia Soul vehicles equipped with a Nu 2.0 GDI engine |
| 2011–2013 | Kia Sportage vehicles equipped with a Theta II 2.4-liter MPI engine. |

4.      Hyundai and Kia knew before selling the Class Vehicles that their engines were defective, prone to premature and catastrophic failure, and posed an unreasonable risk of non-collision engine failures and fires. A defect exists in the Class Vehicles that causes the engine's rotating assembly, inclusive of the connecting rod bearings and engine block, to prematurely wear to the point that the internal engine components become seized and/or pierce the engine block, which results in a sudden stop of engine operation while the vehicles are being operated (the "Engine Failure Defect"). In some instances, engine seizure can even cause internal parts, such as the connecting rods, to break and pierce a hole in the engine block, allowing fluids to leak and ignite a fire.

5.      The Engine Failure Defect exposes putative class members to an unreasonable and increased risk of accident, injury, or death should their vehicle's

engine fail while in operation, let alone spontaneously ignite. The Engine Failure Defect also exposes passengers and other drivers on the road to an unreasonable and increased risk of accident, injury, or death.

6.     The Engine Failure Defect plagues an ever-increasing number of Hyundai and Kia vehicle models, years, and engines, including the Class Vehicles. Many putative class members, including Plaintiffs Joanna Caballero, Tavish Carduff, John H. Caro, Brian Frazier, Ashley Gagas, James J. Martino, Sharon Moon, William Pressley, Nicole Thornhill, James Michael Twigger, Janet O'Brien, James H. Palmer, Seane Ronfeldt, Christina Roos, Jeannett Smith and Stanton Vignes, have already experienced catastrophic engine failure and/or fire because of the Engine Failure Defect, costing them thousands of dollars in repairs and/or loss of use of the vehicle for extended periods of time.

7.     The catastrophic engine failure and fire risk is the direct result of a defect known to, concealed by, and still unremedied by Hyundai and Kia. Not only did Hyundai and Kia actively conceal the Engine Failure Defect from consumers, but they also concealed its consequences, including the serious safety hazards and monetary harm caused by the Engine Failure Defect.

8.     Hyundai and Kia knew or should have known about the Engine Failure Defect as evidenced by: (1) consumer complaints lodged with the National Highway Traffic Safety Administration ("NHTSA") and elsewhere online; (2) warranty claims, part sales, and consumer complaints lodged with Hyundai and Kia directly; (3) technical service bulletins and safety recalls issued by Hyundai and Kia in an attempt to address the Engine Failure Defect; and (4) Hyundai and Kia's own pre-sale durability testing of the Class Vehicles.

9.     Despite Hyundai and Kia's longstanding knowledge of the Engine Failure Defect in the Class Vehicles, the automakers have issued piecemeal and belated recalls over the last six years, all while omitting similar vehicles without apparent explanation. On information and belief, only after the number of complaints about the

Engine Failure Defect increased and consumers grew dissatisfied with their vehicles' performance, did Hyundai and Kia publicly acknowledge the Engine Failure Defect inherent in the Class Vehicles and issue recalls.

10.     Hyundai and Kia's purported remedies for the Engine Failure Defect under these recalls only provide engine repairs and replacements, but do not reimburse vehicle owners and lessees for out-of-pocket expenses, loss of use, or loss of value. Replacement engines are also not readily available, so vehicle owners and lessees are left without a safely operable vehicle for unknown and often lengthy periods.

11.     Meanwhile, Hyundai and Kia refuse to fix the Engine Failure Defect at no cost in unrecalled vehicles, even within the warranty period. At times the automakers and their dealerships even fail to disclose the Engine Failure Defect when presented with vehicles displaying symptoms consistent with the Defect, ignoring the problem until it causes significant mechanical problems necessitating costly repairs. Hyundai and Kia also routinely deny warranty claims for the Engine Failure Defect when it manifests after expiration of the warranty period despite their knowledge of the Defect at the time of sale, or when a consumer cannot produce copies of all maintenance records for the vehicle.

12.     Because of Hyundai and Kia's unfair, misleading, deceptive, and fraudulent business practices, in failing to disclose the Engine Failure Defect to Plaintiffs and putative class members, owners and lessees of Class Vehicles are injured in fact, incurred damages, and suffered ascertainable losses in money and property. Had Plaintiffs and the putative class members known of the Engine Failure Defect, they would not have purchased or leased those vehicles, or would have paid substantially less for them. Engine failure and fire in the Class Vehicles also requires expensive repairs, car rentals, car payments, towing charges, time off work, other miscellaneous costs, and loss of use. Moreover, because of the Engine Failure Defect and Hyundai and Kia's concealment, the Class Vehicles have a lower market value and are inherently worth less than they otherwise would be.

13. Plaintiffs bring this consolidated class action to redress Hyundai and Kia's widespread misconduct. Plaintiffs seek damages and a repair under state consumer-protection statutes and common law.

## II.   JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d)(2) and (6) because: (i) there are one hundred or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000 exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different states. This Court also has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

15. This Court has personal jurisdiction over Defendants by virtue of their transactions and business conducted in this judicial district, and because Defendants are headquartered in California. Defendants have transacted and done business, and violated statutory and common law, in the State of California and in this judicial district.

16. Venue is proper in this judicial district under 28 U.S.C. § 1391 because Defendants transact substantial business and are headquartered in this district. Defendants advertised in this district and received substantial revenue and profits from sales and/or leases of the Class Vehicles in this district. Defendants also have a manufacturing plant in this district. Therefore, a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this district.

## III.   PARTIES

**A.   Plaintiffs**

17. Plaintiff and proposed class representative **Gabrielle Alexander** is a resident and citizen of Fountain Hills, Arizona. In June 2016, she purchased a new 2016 Kia Soul equipped with the 2.0-liter "Nu" engine for approximately $22,065 from Garden Grove Kia in Garden Grove, California.

18.     Through her exposure and interaction with Hyundai, Plaintiff Alexander was aware of Kia's uniform and pervasive marketing message of dependability and safety, which is a primary reason she purchased her Class Vehicle. However, despite touting the safety and dependability of the Class Vehicles, at no point did Kia disclose the Engine Failure Defect to her. Had Defendants disclosed the safety-related defect and risk of fire or stalling at the time of purchase, Plaintiff would not have purchased the vehicle or would have paid considerably less for it. In fact, Defendants continue to conceal the truth about the Engine Failure Defect to this day.

19.     Plaintiff and proposed class representative **Robert Buettner** is a resident and citizen of Lacey, Washington. He purchased a new 2012 Santa Fe with a 2.4L Theta II MPI engine on July 30, 2012, from Titus Will Hyundai in Olympia, Washington. Mr. Buettner's Santa Fe is a Class Vehicle equipped with the Engine Failure Defect. Through his exposure and interaction with Hyundai, Mr. Buettner was aware of Hyundai's uniform and pervasive marketing message of dependability and safety, upon which he relied and which was a primary reason he purchased his Class Vehicle. However, despite touting the safety and dependability of the Class Vehicles, at no point did Hyundai or their agents, dealers, or other representatives disclose the Engine Failure Defect to him. Mr. Buettner regularly services the vehicle but is now concerned about driving it due to the dangers resulting from the Engine Failure Defect and believes that its market value is diminished as a result. Mr. Buettner would not have purchased the vehicle, or he would have paid less for it, had he known about the Engine Failure Defect.

20.     Plaintiff and proposed class representative **Joanna Caballero** is a resident and citizen of San Diego, California. In July 2017, Ms. Caballero purchased a used 2015 Kia Soul with a 2.0-liter "Nu" GDI engine from Kia of Alhambra in Alhambra, California. The vehicle was still covered by the manufacturer's warranty. Ms. Caballero purchased the vehicle after she conducted research into its reliability, safety, and affordability. She was looking for a commuting vehicle that would be safe,

comfortable, and achieve exceptional gas mileage. She considered several other vehicles, but ultimately chose this vehicle because of the safety reviews on Edmunds and Consumer Reports. At all times relevant herein, Ms. Caballero adhered to Kia's recommended maintenance intervals as closely as possible. Neither Defendants nor their agents, dealers, or other representatives informed Ms. Caballero of the Engine Failure Defect's existence at any time either before or following her purchase.

21.    On February 24, 2019, the vehicle's engine failed while Ms. Caballero's twenty-five-year-old son was driving it on the freeway in Los Angeles. After he exited the vehicle, the engine started on fire. The vehicle was ultimately totaled. Ms. Caballero has suffered an ascertainable loss as a result of Defendants' omissions and misrepresentations associated with the Engine Failure Defect, including, but not limited to, out of pocket losses associated with the Engine Failure Defect, out of pocket losses associated with an engine fire, diminished value of her vehicle, increased risk to her safety, and other consequential damages. Ms. Caballero would not have purchased the vehicle had she known about the Engine Failure Defect.

22.    Plaintiff and proposed class representative **Tavish Carduff** is a resident and citizen of Kansas City, Missouri. In May 2014, she purchased a new 2014 Kia Soul equipped with the 2.0-liter "Nu" engine for approximately $21,000 from Oakes Kia in Kansas City, Missouri.

23.    Through her exposure and interaction with Kia, Plaintiff Carduff was aware of Kia's uniform and pervasive marketing message of dependability and safety, which is a primary reason she purchased her Class Vehicle. However, despite touting the safety and dependability of the Class Vehicles, at no point did Kia disclose the Engine Failure Defect to her.

24.    In October 2019, Plaintiff Carduff's vehicle suffered a catastrophic engine failure while driving in rush hour traffic. The vehicle had approximately 106,000 miles at the time of the failure. Plaintiff paid out of pocket for a tow to Oakes Kia for repair, where the service department informed her that the vehicle required a

new engine and catalytic converter to be drivable. Plaintiff Carduff's vehicle experienced symptoms associated with the Engine Failure Defect.

25.    The quoted cost of the engine replacement was $8,300, and the catalytic converter was $1,300. KA offered to pay for $3,000 toward the engine replacement, but only if Plaintiff Carduff and her husband signed a broad release of all potential legal claims. Plaintiff refused to sign the release and has paid $9,712.94 out of pocket for these repairs to date.

26.    Before the failure, Plaintiff had repeatedly voiced concerns that the vehicle was running roughly and was making odd noises from the engine bay, but dealership staff was unable or unwilling to diagnose a problem, despite multiple visits.

27.    Had Defendants disclosed the Engine Failure Defect and risk of fire or stalling at the time of purchase, Plaintiff would not have purchased the vehicle or would have paid considerably less for it. In fact, Defendants continue to conceal the truth about the Engine Failure Defect to this day.

28.    Plaintiff and proposed class representative **John H. Caro** is a resident and citizen of Fort Pierce, Florida. On or around July 24, 2014, Mr. Caro purchased a 2013 Kia Sportage from Smith Kia of Merritt Island, Florida. The vehicle came with Kia's standard 5-year/60,000-mile warranty and 10-year/100,000-mile powertrain warranty. Before purchasing the Class Vehicle, Mr. Caro test drove the Class Vehicle, viewed advertisements for the vehicle and the vehicle's window sticker, and spoke with Kia's sales representatives concerning the vehicle's features. Neither Defendants nor their agents, dealers, or other representatives informed Mr. Caro about the Engine Failure Defect at any time either before or following his purchase. Mr. Caro relied on Defendants' misrepresentations and omissions in deciding to purchase his vehicle. Mr. Caro purchased (and still owns) this vehicle, which was used for personal, family and/or household uses until it became inoperable.

29.    On or about September 19, 2020, Mr. Caro's vehicle engine failed while driving. Because Mr. Caro's vehicle had more than 105,000 miles, it was not eligible

for repair under the 100,000-mile warranty. Mr. Caro was also informed that there were no replacement long block engines available to repair the vehicle. The vehicle remains unrepaired and in Mr. Caro's possession. At all relevant times, Mr. Caro adhered to Kia's recommended maintenance intervals as closely as possible. Mr. Caro has suffered an ascertainable loss because of Defendants' omissions and/or misrepresentations about the Engine Failure Defect, including, but not limited to, out-of-pocket losses associated with the Engine Failure Defect, diminished value of his vehicle, increased risk to his safety, and other consequential damages. Mr. Caro would not have purchased the vehicle had he known about the Engine Failure Defect.

30.     Plaintiff and proposed class representative **James Carpenter** is a resident and citizen of Seffner, Florida. In April 2015, Mr. Carpenter purchased a new 2015 Kia Soul with a 2.0-liter "Nu" GDI engine from Kia Country of Charleston in Charleston, South Carolina. The vehicle came with Kia's standard 5-year/60,000-mile warranty and 10-year/100,000-mile powertrain warranty. Mr. Carpenter was a longtime Kia consumer, including previously owning a 2014 Kia Forte with a GDI engine. He chose the 2015 Soul after reviewing information from sources including Consumer Reports and JD Powers, and based on his personal experience with the brand, expecting the vehicle to be both safe and reliable. Neither Defendants nor their agents, dealers, or other representatives informed Mr. Carpenter of the Engine Failure Defect's existence at any time either before or following his purchase. Mr. Carpenter would not have purchased the vehicle, or he would have paid less for it, had he known about the Engine Failure Defect.

31.     Plaintiffs and proposed class representatives **Jennifer and Anthony DiPardo** are residents and citizens of Carnegie, Pennsylvania. The DiPardos purchased a new 2014 Kia Soul equipped with the 2.0-liter "Nu" engine on September 16, 2014, from Baierl Kia in Wexford, Pennsylvania, for approximately $23,000.

32.     Through their exposure and interaction with Kia, the DiPardo Plaintiffs were aware of Kia's uniform and pervasive marketing message of dependability and

safety, which is a primary reason they purchased their Class Vehicle. However, despite touting the safety and dependability of the Class Vehicles, at no point did Kia disclose the Engine Failure Defect to them. Had Defendants disclosed the Engine Failure Defect and risk of sudden stalling or fire at the time of purchase, Plaintiffs would not have purchased their vehicle or would have paid considerably less for it. In fact, Defendants continue to conceal the truth about the Engine Failure Defect to this day.

33.     The DiPardo Plaintiffs worry about driving their vehicle due to the dangers resulting from the Engine Failure Defect and believe that its market value has been diminished as a result of the Engine Failure Defect.

34.     Plaintiff and proposed class representative **Leslie Flaherty** is a resident and citizen of San Jose, California. In October 2013, Ms. Flaherty purchased a new 2013 Kia Soul with a 1.6-liter "Gamma" GDI engine from Capitol Kia in San Jose, California for personal, family, and/or household use. The vehicle came with the manufacturer's 10-year/100,000-mile warranty. The safety and reliability of the vehicle, along with its fuel economy, were important factors to Ms. Flaherty in purchasing it. Neither Defendants nor their agents, dealers, or other representatives informed Ms. Flaherty of the Engine Failure Defect's existence at any time either before or following her purchase. At all relevant times, Ms. Flaherty adhered to Kia's recommended maintenance intervals as closely as possible. Ms. Flaherty has suffered an ascertainable loss because of Defendants' omissions and misrepresentations associated with the Engine Failure Defect, including, but not limited to, diminished value of her vehicle, increased risk to her safety, and other consequential damages. Ms. Flaherty would not have purchased the vehicle, or she would have paid less for it, had she known about the Engine Failure Defect.

35.     Plaintiff and proposed class representative **Brian Frazier** is a resident and citizen of Killingley, Connecticut. Plaintiff Frazier purchased a used 2014 Soul

from Courtesy Ford in Killingley, Connecticut in February 2016 with an odometer reading of 73,936 miles for approximately $12,070.

36. Prior to purchasing his Class Vehicle, Plaintiff Frazier reviewed Kia's televised and website promotional materials without Kia disclosing the Engine Failure Defect.

37. Through his exposure and interaction with Kia, Plaintiff Frazier was aware of Kia's uniform and pervasive marketing message of dependability and safety, which is a primary reason he purchased his Class Vehicle. However, despite touting the safety and dependability of the Class Vehicles, at no point did Kia disclose the Engine Failure Defect to him.

38. In August 2019, at approximately 103,200 miles, Plaintiff Frazier's 2014 Soul, while operating in intended and foreseeable circumstances, suffered catastrophic internal engine component failure that punctured a hole in the engine's block, caught fire and burned completely, as shown in the photo below. A wrecker service towed Plaintiff Frazier's vehicle to a salvage yard. The 2014 Soul was rendered a total loss and a fire investigator concluded the fire originated at the engine. Plaintiff Frazier submitted a written request for reimbursement to KA, which declined to compensate Frazier or acknowledge fault.



**FRAZIER VEHICLE DAMAGED FROM THROWN CONNECTING ROD AND SUBSEQUENT FIRE**

39.     Plaintiff Frazier did not receive the benefit of his bargain. He purchased a vehicle of lesser standard, grade, and quality than represented, and he did not receive a vehicle that met ordinary and reasonable consumer expectations regarding safe and reliable operation.

40.     Had Kia disclosed the Engine Failure Defect, Plaintiff Frazier would not have purchased his Class Vehicle, or certainly would have paid less to do so.

41.     Plaintiff and proposed class representative **Ashley Gagas** is a resident and citizen of Tamarac, Florida. On or around August 28, 2018, Ms. Gagas purchased a 2012 Hyundai Santa Fe. Before purchasing the Class Vehicle, Ms. Gagas test drove the Class Vehicle, viewed advertisements for the vehicle, and conducted independent research on Hyundai's website about the vehicle's features. Neither Defendants nor their agents, dealers, or other representatives informed Ms. Gagas of the Engine Failure Defect's existence at any time either before or following her purchase. Ms. Gagas relied on Defendants' misrepresentations and omissions in deciding to purchase her vehicle. Ms. Gagas purchased (and still owns) this vehicle, which is used for personal, family and/or household uses.

42.     In or around November 2019, Ms. Gagas heard a knocking sound emanating from the engine of her Class Vehicle. Ms. Gagas was pregnant at this time and stopped driving the Class Vehicle out of fear that the engine would fail. Ms. Gagas had the vehicle towed to a local mechanic, who diagnosed the cause of the knocking noise as connecting rod bearing failure. Ms. Gagas then had her Class Vehicle towed to Coconut Creek Hyundai in Coconut Creek, Florida. The dealership employees also diagnosed the cause of the knocking noise as connecting rod bearing failure. Ms. Gagas requested that Coconut Creek Hyundai repair her Class Vehicle under warranty, but Coconut Creek Hyundai declined to do so. Ms. Gagas also contacted Hyundai's corporate customer service line and spoke to a number of different Hyundai employees about receiving warranty coverage for the necessary repairs. Hyundai declined to offer warranty coverage. Ms. Gagas also contacted the

Better Business Bureau, but they did not provide any assistance in resolving her issue. Ms. Gagas also called the National Highway Traffic Safety Administration and submitted a verbal complaint regarding the dangerous safety Defect in her Class Vehicle, and Hyundai's unwillingness to assist her. After several attempts, Hyundai's corporate customer service offered to reduce the cost of the required engine replacement by $1,500, to $4,721. Ms. Gagas then procured the necessary replacement by paying $4,721 out-of-pocket to Coconut Creek Hyundai. At all relevant times, Ms. Gagas adhered to Hyundai's recommended maintenance intervals as closely as possible. Ms. Gagas has suffered an ascertainable loss because of Defendants' omissions and misrepresentations about the Engine Failure Defect, including, but not limited to, out of pocket losses associated with the Engine Failure Defect, diminished value of her vehicle, increased risk to her safety, and other consequential damages. Ms. Gagas would not have purchased the vehicle, or she would have paid less for it, had she known about the Engine Failure Defect.

43.     Plaintiff and proposed class representative **Kesha Franklin Marbury** is a resident and citizen of Tuscaloosa, Alabama. In 2017, Ms. Marbury bought a 2012 Hyundai Sonata Hybrid from Tuscaloosa Hyundai. The vehicle came with the used car 5-year/60,000-mile limited warranty. Before purchasing the Class Vehicle, Ms. Marbury test drove the Class Vehicle, viewed advertisements for the vehicle and the vehicle's window sticker, and spoke with the sales representatives at Tuscaloosa Hyundai concerning the vehicle's features. Neither Defendants nor their agents, dealers, or other representatives informed Ms. Marbury of the Engine Failure Defect's existence at any time either prior to or following her purchase. Ms. Marbury relied on Defendants' misrepresentations and omissions in deciding to purchase her vehicle. Ms. Marbury purchased (and still owns) this vehicle, which was used for personal, family and/or household uses, but now it stays in her garage because she is afraid to drive it.

44.     On two occasions, in late 2019 and in early 2020, Ms. Marbury's son was driving the car when there was a knocking sound in the engine, a warning light appeared, and the car stalled. On one of the occasions, the car stalled while Ms. Marbury's son was making a left turn into traffic. Ms. Marbury's son barely avoided an accident. On both occasions, the car was towed to the dealer. At all relevant times, Ms. Marbury adhered to Hyundai's recommended maintenance intervals as closely as possible. Ms. Marbury has suffered an ascertainable loss because of Defendants' omissions and misrepresentations about the Engine Failure Defect, including, but not limited to, out of pocket losses associated with the Engine Failure Defect, diminished value of her vehicle, increased risk to her safety, and other consequential damages. Ms. Marbury would not have purchased the vehicle, or she would have paid less for it, had she known about the Engine Failure Defect.

45.     Plaintiff and proposed class representative **James J. Martino** is a resident and citizen of Dacula, Georgia. On or around March 10, 2018, Mr. Martino purchased a used 2013 Kia Sorento from Ewing Motor Company of Buford, Georgia. Before purchasing the Class Vehicle, Mr. Martino test drove the Class Vehicle, had a vehicle inspection done at a Kia dealership and from that inspection obtained a report that showed no issues with the Class Vehicle. Neither Defendants nor their agents, dealers, or other representatives informed Plaintiff Martino of the Engine Failure Defect's existence at any time during the inspection or before or following his purchase. Mr. Martino relied on Defendants' misrepresentations and omissions in deciding to purchase his vehicle. Mr. Martino purchased (and still owns) this vehicle, which was used for personal, family and/or household uses until it became inoperable.

46.     On or about September 13, 2019, Mr. Martino's vehicle had a total internal failure in the lower end of the engine while driving. His vehicle had more than 94,994 miles on it and therefore was not eligible for repair under the used 60,000-mile vehicle warranty. Mr. Martino was informed that the Class Vehicle had experienced what was "definitely an engine failure," but because it was the MPI engine, it was not

under recall. The dealer further informed Mr. Martino that the dealership could not even submit the repair for a warranty claim. The dealership representative further stated that the MPI engines would usually have cylinder 4 failures when the connecting rods become loose and start knocking and ultimately cause the engine to fail. Mr. Martino was further informed that his engine was "knocking like crazy" and that a connecting rod had failed. The vehicle remains unrepaired and in possession of the Kia dealership.

47.     In September 2019, Mr. Martino put Kia on notice of his engine failure and his claims. His first contact to Kia Consumer Assistance occurred on or about September 13, 2019. Mr. Martino has remained in contact almost continually since that time and has contacted approximately 20 people at Kia and made more than 40 calls to the dealership and Kia. These contacts alone have resulted in over nine hours of time discussing the engine failure and Mr. Martino's concerns that the issue is widespread. He has supplied Kia with information showing that there are numerous NHTSA complaints, advised them about consent orders covering similar defects that have been entered into with other engines, advised them of the GDI recalls with the same issues, the GDI class action, and other information generally highlighting that these issues are common and pervasive. Despite being supplied this information, Kia has represented to him that they are unaware of substantial issues with the MPI engines. Alternatively, Kia representatives said there was no open campaign on the vehicle that they were aware of involving vehicles with engines similar to his. Through continued contacts with Consumer Affairs, the director of Corporate Communications, and Kia's president, Defendants have remained adamant in advising Mr. Martino that the issue is not prevalent and that no action needs be taken. Many times the Consumers Affairs department would relay that they did not know if the issue was being investigated as it was not their department. Consumer Affairs would not give further information on how to escalate the issue. When Mr. Martino tried to escalate this to Corporate Communications or other departments, he was always

referred back to Consumer Affairs. During this time, Kia offered to pay for one-third of the cost of the replacement engine. Kia declined to provide full warranty coverage. Throughout his discussions with Kia, Mr. Martino advised them of the number of NHTSA complaints getting filed and even filed his own.

48.     In one of the final discussions Mr. Martino had with Kia, on or about June 23, 2020, he advised Kia that the issue was widespread, that he had suffered a decrease in value even if the vehicle was ultimately repaired, and that people who owned these vehicles were suffering due to Kia's failure to warranty the Engine Failure Defect. He was told by Kia Consumer Affairs, "it is what it is" and, "there is nothing more that we can do." He was further advised that Kia could not tell him what had been done to look in to the MPI failures. At all times relevant herein, Mr. Martino adhered to Kia's recommended engine maintenance intervals as closely as possible. In fact, all of this maintenance has been performed by a Kia dealership. At no time did the dealership advise that any kind of repairs, recalls or upgrades needed to be performed on the vehicle related to the engine. Mr. Martino has suffered an ascertainable loss as a result of Defendants' omissions and/or misrepresentations associated with the Engine Failure Defect, including, but not limited to, out of pocket losses associated with the Engine Failure Defect, diminished value of his vehicle, increased risk to his safety, and other consequential damages. Mr. Martino would not have purchased the vehicle, or he would have paid less for it, had he known about the Engine Failure Defect.

49.     Plaintiff and proposed class representative **Sharon Moon** is a resident and citizen of La Plata, Maryland. In April 2015, Ms. Moon purchased a new 2015 Kia Soul Plus with a 2.0-liter "Nu" GDI engine from Kia of Waldorf in Waldorf, Maryland. The vehicle came with a 100,000-mile powertrain warranty. The safety and reliability of the vehicle were important to her, so she researched the vehicle's ratings online before purchasing it. The Kia dealership also told touted the vehicle's superior safety, and she relied on this information in buying the car. Ms. Moon ultimately

chose this vehicle for its reputation for safety and reliability, and because it provided optimal accessibility given her knee issues getting in and out of vehicles. Neither Defendants nor their agents, dealers, or other representatives informed Ms. Moon of the Engine Failure Defect's existence at any time either before or following her purchase.

50.     In or around November 2018, Ms. Moon brought the vehicle to her local dealer because the engine was having problems. When the dealership technicians took it for a test drive, the vehicle's engine failed, and the dealership eventually informed Ms. Moon that her engine needed the short block replaced. On January 17, 2019, the dealership performed the engine repair and when the technicians took it for a test drive the engine started on fire. The vehicle was totaled in the fire. Ms. Moon has suffered an ascertainable loss because of Defendants' omissions and/or misrepresentations associated with the Engine Failure Defect, including, but not limited to, out of pocket losses associated with the Engine Failure Defect, out of pocket losses associated with an engine fire, loss of value of her vehicle, increased risk to her safety while she had the vehicle, and other consequential damages. Ms. Moon would not have purchased the vehicle, or she would have paid less for it, had she known about the Engine Failure Defect.

51.     Plaintiff and proposed class representative **Janet O'Brien** is a resident and citizen of Ferndale, Michigan. In September 2012, Ms. O'Brien purchased a new 2012 Kia Sportage EX with a 2.4-liter Theta II MPI engine from Al Serra Kia of Grand Blanc in Michigan. The vehicle came with the manufacturer's standard warranty. This warranty was a selling point for Ms. O'Brien, as she interpreted it as indication about the quality of the vehicle and Kia's commitment to stand behind its product. Neither Defendants nor their agents, dealers, or other representatives informed Ms. O'Brien of the Engine Failure Defect's existence at any time either before or following her purchase. Over the July 4, 2019 holiday weekend, the vehicle suffered catastrophic engine failure while Ms. O'Brien was driving to a local dog park,

leaving her stranded on the side of the road with her two dogs in the summer heat. She had just paid the vehicle off a few months before in April. Two Kia dealerships inspected the vehicle and blamed the engine failure on lack of maintenance, even though Ms. O'Brien had it routinely serviced by her local Kia dealership and the dealership had the records to confirm this. After shopping the engine replacement around and receiving a quote for $8,000 from one Kia dealership, Ms. O'Brien sold the vehicle to an online auction house for around $2,000. But for the catastrophic engine failure caused by the Engine Failure Defect, Ms. O'Brien estimates her vehicle was worth around $10,000 based on regular offers to buy it that she received from metro Detroit-based Kia dealerships. During the tumultuous three weeks her vehicle was inoperable, Ms. O'Brien spent about $3,200 in rental car fees and had difficulty finding and buying a new car given the July holiday. She eventually purchased a Subaru that she had to drive to Ohio to pick up. Roughly a year-and-a-half after Ms. O'Brien's catastrophic engine failure, Kia finally recalled her vehicle for the Engine Failure Defect. Ms. O'Brien suffered an ascertainable loss because of Defendants' omissions and misrepresentations associated with the Engine Failure Defect, including, but not limited to, out of pocket losses associated with the Engine Failure Defect, loss of value of her vehicle, increased risk to her safety, and other consequential damages. Ms. O'Brien would not have purchased the vehicle, or she would have paid less for it, had she known about the Engine Failure Defect.

52.     Plaintiff and proposed class representative **James H. Palmer** is a resident and citizen of Benson, Arizona. In April 2015, Mr. Palmer purchased a 2011 Kia Optima Hybrid from Royal Kia in Arizona. Before purchasing the Class Vehicle, Mr. Palmer test drove the Class Vehicle, viewed advertisements for the vehicle, and spoke with Kia sales representatives concerning the vehicle's features. Neither Defendants nor their agents, dealers, or other representatives informed Plaintiff Palmer of the Engine Failure Defect's existence at any time either before or following his purchase. Mr. Palmer relied on Defendants' misrepresentations and omissions in deciding to

purchase his vehicle. Mr. Palmer purchased this vehicle and used it for personal, family and/or household uses until it was declared a total loss following an engine fire.

53.     On or about July 8, 2016, Mr. Palmer had loaned his car to his son. While his son was driving, a pop was heard in the engine compartment, the car started to smoke and then was soon engulfed in flames. The vehicle was a total loss and there was damage to the bottom of the engine consistent with a thrown connecting rod, as shown in the photo below. Even though Mr. Palmer maintained insurance on the vehicle he was out of pocket for several thousand dollars as the full loan was not satisfied. Mr. Palmer tried to explore a resolution with Kia and was denied. He later learned of defects in the Theta II GDI engines and the associated class action litigation. He attempted to make a claim in that case, but found that, even though he experienced the same type of failure as was experienced in that class action, it involved only GDI Theta II engines and MPI engines were not part of the case. At all times relevant herein, Mr. Palmer adhered to Kia's recommended maintenance intervals as closely as possible. Mr. Palmer has suffered an ascertainable loss as a result of Defendants' omissions and/or misrepresentations associated with the Engine Failure Defect, including, but not limited to, out of pocket losses associated with the Engine Failure Defect, out of pocket losses associated with an engine fire, diminished value of his vehicle, increased risk to his safety, and other consequential damages. Mr. Palmer would not have purchased the vehicle, or he would have paid less for it, had he known about the Engine Failure Defect.

**PALMER VEHICLE ENGINE DAMAGED FROM THROWN CONNECTING ROD AND SUBSEQUENT FIRE**

54.     Plaintiff and proposed class representative **Chad Perry** is a resident and citizen of Helendale, California. In September 2019, he purchased a used 2014 Kia Soul equipped with the 2.0-liter "Nu" engine for approximately $22,285 from Valley Hi Kia in Victorville, California.

55.     Through his exposure and interaction with Kia, Plaintiff Perry was aware of Kia's uniform and pervasive marketing message of dependability and safety, which is a primary reason he purchased his Class Vehicle. However, despite touting the safety and dependability of the Class Vehicles, at no point did Kia disclose the Engine Failure Defect to him. In fact, Defendants continue to conceal the truth about the Engine Failure Defect to this day.

56.     In April 2020, with fewer than 81,000 miles on the odometer, oil consumption tests on the Soul determined that it needed a new engine. Plaintiff Perry's vehicle experienced symptoms associated with the Engine Failure Defect. Had Defendants disclosed the Engine Failure Defect and risk of fire or stalling at the time of purchase, Plaintiff Perry would not have purchased the vehicle or would have paid considerably less for it.

57.     Plaintiff and proposed class representative **William Pressley** is a resident and citizen of Charlotte, North Carolina. In August 2016, Plaintiff Pressley purchased

a used 2015 Soul from Hertz Car Sales in Charlotte, North Carolina, with an odometer reading of 45,079 miles for approximately $13,455.

58.     Prior to purchasing his Class Vehicle, Plaintiff Pressley reviewed Kia's televised and website promotional materials without Kia disclosing the Engine Failure Defect.

59.     Through his exposure and interaction with Kia, Plaintiff Pressley was aware of Kia's uniform and pervasive marketing message of dependability and safety, which is a primary reason he purchased his Class Vehicle. However, despite touting the safety and dependability of the Class Vehicles, at no point did Kia disclose the Engine Failure Defect to him. In fact, Defendants continue to conceal the truth about the Engine Failure Defect to this day.

60.     In July 2019, at approximately 84,790 miles, Plaintiff Pressley's 2015 Soul, while operating in intended and foreseeable conditions, suffered catastrophic internal engine component failure that punctured a hole in the engine's block. A wrecker service towed Plaintiff Pressley's vehicle to Dutch Kia in Charlotte, North Carolina, which examined the engine and diagnosed total rotating component and block failure and quoted a replacement engine cost of approximately $10,000. Kia offered Plaintiff Pressley no assistance in terms of goodwill warranty repair or discounted engine replacement. Plaintiff Pressley's vehicle experienced symptoms associated with the Engine Failure Defect.

61.     Mr. Pressley declined Dutch Kia's engine replacement bid and in August 2019 had the vehicle towed to Brake and Alignment Center, an independent repair shop in Charlotte, North Carolina. Brake and Alignment Center removed the destroyed factory engine and installed a used 2.0-liter "Nu" replacement engine for approximately $5,729.00.

62.     Plaintiff Pressley did not receive the benefit of his bargain. He purchased a vehicle of lesser standard, grade, and quality than represented, and he did not receive a vehicle that met ordinary and reasonable consumer expectations regarding safe and

reliable operation. The Engine Failure Defect has significantly diminished the value of Plaintiff Pressley's Class Vehicle.

63.     Had Kia disclosed the Engine Failure Defect, Plaintiff Pressley would not have purchased his Class Vehicle, or certainly would have paid less to do so.

64.     Plaintiff and proposed class representative **Seane Ronfeldt** is a resident and citizens of Toledo, Ohio. In November 2016, he purchased a new 2016 Kia Soul equipped with the 1.6-liter "Gamma" engine from Taylor Kia in Toledo, Ohio, for approximately $19,000.

65.     Through his exposure and interaction with Kia, Plaintiff Ronfeldt was aware of Kia's uniform and pervasive marketing message of dependability and safety, which is a primary reason he purchased his Class Vehicle. However, despite touting the safety and dependability of the Class Vehicles, at no point did Kia disclose the Engine Failure Defect to him. In fact, Defendants continue to conceal the truth about the Engine Failure Defect to this day.

66.     On Saturday, July 20, 2019, Plaintiff Ronfeldt was driving his Kia Soul at approximately 70 MPH on an interstate highway in Michigan when the engine shuddered and lost all power. He maneuvered the vehicle onto an exit ramp and then, with assistance from other people, pushed it into a nearby parking lot. The vehicle was towed to Kia of Lansing, Michigan, which confirmed that the engine had blown a connecting rod through the engine casing. Kia suggested replacing the engine but refused to do this work under warranty or otherwise compensate Plaintiff Ronfeldt for replacing the engine or any other repairs. Plaintiff had the vehicle towed back to Toledo, Ohio, at his own expense. Plaintiff Ronfeldt's vehicle experienced symptoms associated with the Engine Failure Defect at approximately 55,000 miles.

67.     Plaintiff Ronfeldt contacted Defendant Kia of America through its website and entered information to request repair of his engine under warranty. Service managers at both Kia of Lansing and Taylor Kia of Toledo informed Plaintiff Ronfeldt that Kia of America would not cover the repairs under warranty or otherwise

reimburse the repairs. Plaintiff Ronfeldt's insurance company, however, upon inspection, concluded that the incident was the result of a design or manufacturing defect. Because Plaintiff Ronfeldt concluded that Kia's charges for replacing the engine with a new engine were exorbitant without warranty coverage, and because Plaintiff still owed substantial amounts on the vehicle and relied on it for transportation, he had a local mechanic install a used 1.6-liter "Gamma" engine. Plaintiff services the vehicle regularly but is worried about driving it due to the dangers resulting from the Engine Failure Defect, especially since he has experienced the engine failure and connecting rod breakage once already—fortunately without a resultant engine fire. He believes that his vehicle's market value has been substantially diminished as a result of the Engine Failure Defect and his vehicle's repair and incident history. Had Defendants disclosed the Engine Failure Defect and risk of fire or stalling at the time of purchase, Plaintiff would not have purchased the vehicle or would have paid considerably less for it.

68.     Plaintiff and proposed class representative **Christina Roos** is a resident and citizen of Thorndale, Pennsylvania. On or around May 16, 2018, Ms. Roos purchased a 2012 Kia Sportage from Jim Sipala Kia in Coatesville, Pennsylvania, for personal, family and/or household uses. Before purchasing the Class Vehicle, Ms. Roos test drove the Class Vehicle, viewed advertisements for the vehicle and spoke with Kia's sales representatives concerning the vehicle's features. Neither Defendants nor their agents, dealers, or other representatives informed Plaintiff Roos of the Defect's existence at any time either before or following her purchase. Ms. Roos relied on Defendants' misrepresentations and omissions in deciding to purchase her vehicle.

69.     On or about January 26, 2020, Ms. Roos was driving at approximately 55 miles per hour when the vehicle's warning lights started flashing and the vehicle suddenly lost power. She had a difficult time getting the vehicle safely to the side of the road. Ms. Roos had the car towed to Great Valley Automotive in Malvern, Pennsylvania. The mechanic at Great Valley said that he thought the problem was a

connecting rod bearing failure and that he had seen the problem before with other Kia and Hyundai vehicles. The mechanic told Ms. Roos she would have to take the car to a Kia dealership. Ms. Roos towed the vehicle to the Kia dealership in Coatesville. She was told by personnel there the engine had failed, but the repairs were not covered by Ms. Roos' warranty. They advised Ms. Roos to contact Kia's corporate office. Ms. Roos did so and was instructed to file a written complaint. After months of not having her problem resolved by either Kia corporate or Coatesville, Ms. Roos traded in the car for a 2018 Kia Optima at Kia Coatesville. Ms. Roos lost money on the transaction. At all relevant times, Ms. Roos adhered to Kia's recommended maintenance intervals as closely as possible. Ms. Roos has suffered an ascertainable loss because of Defendants' omissions and/or misrepresentations associated with the Engine Failure Defect, including, but not limited to, out of pocket losses from the Engine Failure Defect, diminished value of her vehicle, increased risk to her safety, and other consequential damages. Ms. Roos would not have purchased the vehicle, or she would have paid less for it, had she known about the Engine Failure Defect.

70. Plaintiff and proposed class representative **Linda Short** is a resident and citizen of Redmond, Washington. Plaintiff Short leased a new 2013 Hyundai Tucson equipped with the 2.4-liter "Theta II" engine on or about March 30, 2013, and then purchased the vehicle at the end of the lease from Hyundai of Kirkland in Kirkland, Washington on January 6, 2016, at which time the vehicle was still covered by the manufacturer's warranty.

71. Through her exposure and interaction with Hyundai, Plaintiff Short was aware of Hyundai's uniform and pervasive marketing message of dependability and safety, which is a primary reason she purchased her Class Vehicle. However, despite touting the safety and dependability of the Class Vehicles, at no point did Hyundai disclose the Engine Failure Defect to her. Had Defendants disclosed the Engine Failure Defect and risk of fire or stalling at the time of lease and purchase, Plaintiff would not have leased or purchased the vehicle or would have paid considerably less

for it. In fact, Defendants continue to conceal the truth about the Engine Failure Defect to this day.

72.     Plaintiff regularly services the vehicle but is now concerned about driving it due to the dangers resulting from the Engine Failure Defect and believes that its market value has been diminished as a result of the Engine Failure Defect.

73.     Plaintiff and proposed class representative **Jeannett Smith** is a resident and citizen of Rowlett, Texas. Plaintiff Smith purchased a used 2012 Soul from Southwest Kia in Rockwall, Texas, in February 2013 with an odometer reading of approximately 48,000 miles for approximately $27,250.

74.     Prior to purchasing her Class Vehicle, Plaintiff Smith reviewed Kia's televised, website and hard copy promotional materials without Kia disclosing the Engine Failure Defect.

75.     Through her exposure and interaction with Kia, Plaintiff Smith was aware of Kia's uniform and pervasive marketing message of dependability and safety, which is a primary reason she purchased her Class Vehicle. However, despite touting the safety and dependability of the Class Vehicles, at no point did Kia disclose the Engine Failure Defect to her. In fact, Defendants continue to conceal the truth about the Engine Failure Defect to this day.

76.     In December 2016, at approximately 105,559 miles, Plaintiff Smith's 2012 Soul, while operating in intended and foreseeable conditions, suffered catastrophic internal engine component failure that resulted in an engine fire that consumed the entire vehicle within moments. Plaintiff Smith's vehicle was rendered a total loss, as shown in the photos below.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



**SMITH VEHICLE DAMAGE FROM ENGINE FIRE**

**SMITH VEHICLE DAMAGE FROM ENGINE FIRE**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



**SMITH VEHICLE DAMAGE FROM ENGINE FIRE**

16    77.    Kia offered Plaintiff Smith no compensation for the loss of her vehicle.

17  Plaintiff Smith's vehicle experienced symptoms associated with the Engine Failure

18  Defect.

19    78.    Plaintiff Smith did not receive the benefit of her bargain. She purchased a

20  vehicle of lesser standard, grade, and quality than represented, and she did not receive

21  a vehicle that met ordinary and reasonable consumer expectations regarding safe and

22  reliable operation. The Engine Failure Defect has significantly diminished the value of

23  Plaintiff Smith's Class Vehicle.

24    79.    Had Kia disclosed the Engine Failure Defect, Plaintiff Smith would not

25  have purchased her Class Vehicle, or certainly would have paid less to do so.

26    80.    Plaintiff and proposed class representative **Nicole Thornhill** is a resident

27  and citizen of Ventura, California. In May 2018, Ms. Thornhill purchased a 2012 Kia

28  Optima Hybrid with a 2.4-liter Theta II MPI engine from a private seller in California

for personal, family, and/or household use. Ms. Thornhill purchased the Optima because all her research indicated that it was a safe vehicle, and the vehicle had low mileage and a clean CarFax. Ms. Thornhill had friends with Kias that told her they loved their cars, and her partner worked on Kia and Hyundai advertising campaigns years ago and loved their vehicles, too. She thought she was buying a safe, reliable vehicle. At all relevant times, Ms. Thornhill adhered to Kia's recommended maintenance intervals as closely as possible.

81.     In August 2018, just months after financing the vehicle purchase, Ms. Thornhill was driving to work when she noticed a knocking noise coming from the engine. She dropped the vehicle off at a local mechanic to inspect it that same day. The mechanic said the engine was on the verge of failure and needed immediate repair. Ms. Thornhill took the vehicle to Kirby Kia of Ventura in Ventura, California, where it found the engine had a "lower-end knock from crank area" and required replacement of the short block. Because Ms. Thornhill was still making payments on the vehicle, as well as insuring it, she had to charge the nearly $7,000 engine repair to a credit card. The vehicle sat at the dealership for six months awaiting the short block needed for the repair. This waiting period negatively affected Ms. Thornhill's life and livelihood, as she could not afford a rental vehicle and instead relied on public transportation or borrowing her partner's car for her 60 mile-per-day commute to work. Finally, on February 9, 2019, her vehicle was repaired and returned to her. Roughly one year later, Kia finally recalled her vehicle for the Engine Failure Defect. Ms. Thornhill has suffered an ascertainable loss because of Defendants' omissions and misrepresentations associated with the Engine Failure Defect, including, but not limited to, out of pocket losses associated with the Engine Failure Defect, diminished value of her vehicle, increased risk to her safety, and other consequential damages. Ms. Thornhill would not have purchased the vehicle, or she would have paid less for it, had she known about the Engine Failure Defect.

82.     Plaintiff and proposed class representative **James Michael Twigger** is a resident and citizen of Charleston, West Virginia. In July 2014, he purchased a new 2014 Kia Soul Plus equipped with the 2.0-liter "Nu" engine for approximately $19,500 from Dutch Miller Kia of South Charleston, West Virginia.

83.     Through his exposure and interaction with Kia, Plaintiff Twigger was aware of Kia's uniform and pervasive marketing message of dependability and safety, which is a primary reason he purchased his Class Vehicle. However, despite touting the safety and dependability of the Class Vehicles, at no point did Kia disclose the Engine Failure Defect to him. In fact, Defendants continue to conceal the truth about the Engine Failure Defect to this day.

84.     On July 1, 2017, while driving on I-64, a major highway, his vehicle's engine spontaneously stopped working, so he moved the car to the shoulder of the highway. Moments later, the engine started smoking, ignited into flames, and burned, destroying the vehicle, as shown in the photos below.



**TWIGGER VEHICLE ENGINE FIRE**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**TWIGGER VEHICLE ENGINE FIRE**



**TWIGGER VEHICLE DAMAGE FROM ENGINE FIRE**

85.   Upon information and belief, the fire was caused by the Engine Failure Defect that resulted in a connecting rod failure that led to a hole in his engine block through which oil leaked, ultimately touching hot engine components and sparking this destructive fire. Plaintiff Twigger's vehicle experienced symptoms associated with the Engine Failure Defect. The failure occurred at 118,349 miles. Had Defendants disclosed the Engine Failure Defect and risk of fire or stalling at the time of purchase, Plaintiff would not have purchased the vehicle or would have paid considerably less for it.

86.   Plaintiff and proposed class representative **Stanton Vignes** is a resident and citizen of Long Beach, California. In November 2014, Mr. Vignes purchased a new 2014 Kia Soul with a 1.6-liter "Gamma" GDI engine from Kia of Alhambra in Alhambra, California for personal, family, and/or household use. The vehicle came with the standard manufacturer's warranty. He chose this vehicle specifically for its 5-star safety rating and safety features, which he researched before buying the car. Neither Defendants nor their agents, dealers, or other representatives informed Mr. Vignes of the Engine Failure Defect's existence at any time either before or following his purchase. At all relevant times, Mr. Vignes adhered to Kia's recommended maintenance intervals as closely as possible.

87.   In July or August 2015, when the vehicle had approximately six thousand miles on it and was less than a year old, the catalytic converter melted and required replacement. Mr. Vignes would not have purchased the vehicle had he known about the Engine Failure Defect.

**B.    Defendants**

88.   Defendant Hyundai Motor Company ("HMC") is a South Korean multinational automaker headquartered in Seoul, South Korea. HMC, together with Defendants Kia Motors Corporation, Kia Motors America, Inc., and Hyundai Motor America, comprise the Hyundai Motor Group, which manufactures the Class Vehicles at issue in this Complaint. HMC is the parent corporation of Hyundai Motor America.

89.     Defendant Hyundai Motor America ("HMA") is an automobile design, manufacturing, distribution, and/or service corporation doing business within the United States. HMA designs, develops, manufactures, distributes, markets, sells, leases, warrants, services, and repairs passenger vehicles, including the Hyundai Class Vehicles.

90.     Defendant HMA is incorporated and headquartered in the state of California with its principal place of business at 10550 Talbert Avenue, Fountain Valley, California 92708. HMA is the American sales, marketing, and distribution arm of its parent company, HMC, overseeing sales and other operations across the United States. HMA distributes and sells a complete line of Hyundai vehicles through more than 800 dealers throughout the United States. Money received from the purchase or lease of a Hyundai vehicle from a dealership flows from the dealer to HMA and HMC (together, "Hyundai"). Hyundai uses its nationwide dealerships as a means to communicate with Plaintiffs and putative class members.

91.     On information and belief, Defendant HMA is responsible for the distribution, service, repair, installation, and decisions regarding the Hyundai Class Vehicles as they relate to the Engine Failure Defect.

92.     On information and belief, Defendant HMA developed the post-purchase owner's manuals, warranty booklets, and other information related to maintenance recommendations and/or schedules for the Hyundai Class Vehicles.

93.     Defendant HMA engages in continuous and substantial business in California.

94.     Defendant Kia Corporation ("KC") is a South Korean multinational automaker headquartered in Seoul, South Korea. KC is the parent corporation of Kia America, Inc. As of December 31, 2017, Defendant KC's largest shareholder is HMC, which holds 33.88 percent of KC's stock.[1]

---

[1] 2017 KC Annual Report, available at https://worldwide.kia.com/int/company/ir/archive/annual-report (last visited Sept. 7, 2022).

95.     Defendant Kia America, Inc. ("KA") is an automobile design, manufacturing, distribution, and/or service corporation doing business within the United States. KA designs, develops, manufactures, distributes, markets, sells, leases, warrants, services, and repairs passenger vehicles, including the Kia Class Vehicles.

96.     Defendant KA is incorporated and headquartered in the state of California with its principal place of business at 111 Peters Canyon Road, Irvine, California 92606. KA is the American sales, marketing, and distribution arm of its parent company, KC, overseeing sales and other operations across the United States. KA distributes and sells a complete line of Kia vehicles through more than 755 dealers throughout the United States. Money received from the purchase or lease of a Kia vehicle from a dealership flows from the dealer to KA and KC (together, "Kia"). Kia uses its nationwide dealerships as a means to communicate with Plaintiffs and putative class members.

97.     On information and belief, Defendant KA is responsible for the distribution, service, repair, installation, and decisions regarding the Kia Class Vehicles as they relate to the Engine Failure Defect.

98.     On information and belief, Defendant KA developed the post-purchase owner's manuals, warranty booklets, and other information related to maintenance recommendations and/or schedules for the Kia Class Vehicles.

99.     Defendant KA engages in continuous and substantial business in California.

100.   On information and belief, the design, manufacture, modification, installation, and decisions regarding the Class Vehicles and their engines were made exclusively by Defendants.

# IV.   FACTUAL ALLEGATIONS

## A.   The Engine Failure Defect

101.   The Class Vehicles are equipped with certain MPI and GDI engines, namely Theta II 2.4-liter MPI engines, 1.6-liter Gamma GDI engines, and 2.0-liter Nu GDI engines.

102.   Defendants manufactured the Class Vehicles' engines in multiple locations, including Hyundai Motor Manufacturing Alabama in Montgomery, Alabama, Hyundai Motor Company in the Republic of Korea, and Kia Motor Company in the Republic of Korea. On information and belief, the engines in the Class Vehicles were built with the same parts, on the same assembly lines, and using the same manufacturing processes.

103.   The engines in the Class Vehicles use four reciprocating pistons to convert pressure into a rotating motion. Gasoline is mixed with air in the combustion chambers of the engine. To generate such rotating motion, a four-stroke sequence is used (the "Combustion Cycle"). First, the intake stroke begins with the inlet valve opening and a vaporized fuel mixture is pulled into the combustion chamber. Second, the compression stroke begins with the inlet valve closing and the piston beginning its movement upward, compressing the fuel mixture in the combustion chamber. Third, the power stroke begins when the spark plug ignites the fuel mixture, expanding the gases and generating power that is transmitted to the crankshaft. And fourth, the exhaust stroke begins with the exhaust valve opening and the piston moving back up, forcing the exhaust gases out of the cylinder. The exhaust valve then closes, the inlet valve opens, and the Combustion Cycle repeats itself. A diagram of the Combustion Cycle is below:

1
2
3
4
5
6
7
8
9
10



**COMBUSTION CYCLE**

11
12
13
14
15
16
17
18
19

104.   The pistons are connected to the crankshaft via the connecting rod. As the connecting rod moves up and down during the Combustion Cycle, this causes the crankshaft to rotate, ultimately resulting in power to the drive wheels of the vehicle. During this cycle, the crankshaft rotates many thousands of times per minute within each connecting rod. To reduce friction and prolong longevity, this design utilizes a bearing placed between the connecting rod and crankshaft surfaces. The connecting rod bearings allow the crankshaft to rotate within the connecting rods during the Combustion Cycle. An exemplar diagram of the piston, connecting rod, connecting rod bearing and crankshaft is shown below:

20
21
22
23
24
25
26
27
28



1
2
3
4
5
6
7
8
9
10



CONNECTING ROD SHAFT

CONNECTING ROD BEARING

CONNECTING ROD BEARING

CONNECTING ROD CAP

Figure 3-70.—Connecting rod bearings.

11     105.   When the Class Vehicles are in operation, engine oil is used to lubricate

12  the pistons, cylinder walls, connecting rod bearings, and other rotating and moving

13  components as the pistons move up and down through the four-stroke sequence.

14  Engine oil is necessary to reduce wear on moving parts throughout the engine,

15  improve sealing, and cool the engine by carrying heat away from the moving parts.

16  Engine oil also cleans and transports contaminants away from the engine to the engine

17  oil filter. Oil is pumped and pressurized throughout the engine by the oil pump. The

18  oil pump draws oil from the oil pan, located underneath the piston and crankshaft. The

19  oil pump forces engine oil through the oil filter and then through passages in the

20  engine to properly lubricate and reduce friction in internal moving engine components.

21  The oil then returns to the oil pan through small drainage holes located throughout the

22  engine where it will be recirculated by the oil pump. Below is a diagram illustrating

23  the typical path and channels of engine oil lubrication in an overhead cam engine:

24
25
26
27
28

1
2
3
4
5
6
7
8
9
10



11    106.   The connecting rod bearings are also lubricated with engine oil to allow
12  the crankshaft to rotate within the connecting rods. A close-up picture of a functional
13  connecting rod bearing is below:

14
15
16
17
18
19
20
21
22
23

24    107.   On information and belief, the rotating assembly fails due to an improper
25  manufacturing and machining process. As a result, the connecting rod bearings in the
26  Class Vehicle engines undergo prolonged failure as the crankshaft rotates within the
27  connecting rod bearings and metal debris circulates throughout the engine via the
28  engine oil. Over time, and because of the manufacturing Defect within the rotating

assembly and the contaminants within the oiling system, the connecting rod bearings begin to fracture. Once the connecting rod bearings fracture, large amounts of metal debris begin to accumulate in the engine oil. As a result, the oil becomes so contaminated with metal debris that the oil filter can no longer remove the plethora of contaminants and maintain the necessary oil pressure within the engine. This contaminated engine oil is recirculated throughout the engine by the oil pump, causing and accelerating further damage to the various engine components and eventually resulting in sudden and unexpected catastrophic engine failure. If the vehicle is operated on the highway at the time of engine failure, it will result in a high-speed stalling event.

108.   Additionally, as the connecting rod bearings continue to fracture, the acceptable tolerances between the bearings, the connecting rod, and the crankshaft rapidly deteriorate. Eventually, the Class Vehicles produce a "knocking" sound originating from the engine because of the deteriorating bearings. In some instances, the defective connecting rod bearings may eventually cause the piston and connecting rod to break through the engine block because of the deterioration.

109.   Once the connecting rod breaks through the engine block, it can cause an engine compartment fire as oil spills throughout the broken cylinder wall and engine.

110.   A fractured connecting rod bearing is pictured below. The bearing has fractured and worn away to the point of laying flush along the inside of the connecting rod cap. A large fracture is also plainly visible along the bottom left side of the bearing.

111.    After the connecting rod bearings fail and metal debris is circulated throughout the engine via the engine oil, it can damage other key engine components. For example, the main cap, which fastens the crankshaft to the engine, can also become damaged by the metal debris in the engine oil. After the main cap is damaged, play between the main cap and engine develops, which also leads to catastrophic engine failure.

112.    The metal debris circulating throughout the engine, scratching various parts and creating buildup and blockages along the way, can also damage adjacent systems, like the oil pump or catalytic converter. Damaged catalytic converters can put back-pressure on the engine, leading to reduced engine power and, potentially, stalling, among other issues.

113.    Because of the Engine Failure Defect, the Class Vehicles suffer from restricted and inadequate engine oil lubrication. Engines are designed to have oil distributed throughout the engine via lubrication channels. When operating properly, the oil pump distributes oil throughout the engine and then it flows back to the oil pan where it is redistributed throughout the engine again.

114.    In the Class Vehicles, the lubrication channels become clogged and restricted because of the Engine Failure Defect, even under normal use and proper

maintenance. When the lubrication channels clog, engine oil cannot be pumped throughout the engine (via the oil pump) and cannot adequately return to the oil pan, causing a condition known as oil starvation. This results in insufficient lubrication throughout the Class Vehicle's engine, which in turn causes premature wear of the engine components and catastrophic engine failure.

115.   The Engine Failure Defect poses serious safety issues for operators and occupants of Class Vehicles. For example, the California Department of Motor Vehicles asserts stalled engines pose a significant safety risk and, as part of its safety curriculum, instructs on proper response to a stalled action to avoid further risk of injury.

116.   NHTSA takes a similar view of engine failure during vehicle operation. According to *Forbes*, in 2011, NHTSA recalled certain Chrysler and Dodge vehicles due to "engine seizure because of connecting rod bearing failure … . Engine seizure could increase the risk of a crash."[2]

117.   Defendants failed to adequately research, design, test, and/or manufacture the Class Vehicles before warranting, advertising, promoting, marketing, and selling the Class Vehicles as suitable and safe for use in an intended and reasonably foreseeable manner.

**B.     The Class Vehicles utilize various engines manufactured by Defendants.**

118.   Defendants manufacture and use a 2.4-liter "Theta II" MPI engine in certain vehicles, including some Class Vehicles. On information and belief, Hyundai used these Theta II MPI engines in certain Sonata, Sonata Hybrid, Santa Fe, and Tucson vehicles, and Kia used them in certain Forte, Forte Koup, Optima Hybrid, Sorento, and Sportage vehicles.

119.   Defendants manufacture and use a 1.6-liter "Gamma" GDI engine in certain vehicles, including some Class Vehicles. On information and belief, Hyundai

---

[2] http://www.forbes.com/sites/altheachang/2011/09/30/engine-problems-prompt-chrysler-recalls/ (last visited Sept. 7, 2022).

used the Gamma GDI engine in certain Veloster vehicles, and Kia used these engines in certain Soul vehicles.

120.   Defendants manufacture and use a 2.0-liter "Nu" GDI engine in certain vehicles, including some Class Vehicles. On information and belief, Kia used the Nu GDI engine in certain Forte, Forte Koup, Optima Hybrid, and Soul vehicles, and Hyundai used these engines in certain Tucson, Elantra, Elantra Coupe, Elantra GT, and Sonata Hybrid vehicles.

121.   On information and belief, the Class Vehicles are equipped with Theta II MPI, Gamma GDI, and Nu GDI engines that contain the Engine Failure Defect. Along with creating a severe driving hazard and increasing the chance of injury or death, the Engine Failure Defect causes serious, extensive, and expensive damage to the engine and even total loss of the Class Vehicle.

**C.    The Engine Failure Defect results in a serious risk of engine failure and spontaneous fires across multiple models and years of Defendants' vehicles, and Defendants were aware of such dangers.**

122.   On information and belief, Defendants knew or should have known about the Engine Failure Defect as evidenced by: (1) consumer complaints lodged with NHTSA and elsewhere online; (2) warranty claims, part sales, and consumer complaints lodged with Hyundai and Kia directly; (3) technical service bulletins and safety recalls issued by Hyundai and Kia in an attempt to address the Engine Failure Defect; and (4) Hyundai and Kia's own pre-sale durability testing of the Class Vehicles.

**1.    NHTSA and other online complaints evidence the Engine Failure Defect in Class Vehicles going back as far as 2010.**

123.   Plaintiffs' experiences are not isolated or outlying occurrences. The internet is replete with consumer complaints on blogs and websites about the Engine Failure Defect in the Class Vehicles and other of Defendants' vehicles with the same engines. Hyundai and Kia's customer relations departments routinely monitor the internet for customer complaints, and Hyundai has retained the services of third parties

to do the same. Their customer relations divisions regularly receive and respond to customer calls concerning, *inter alia*, product defects. Through these sources, Hyundai and Kia were made aware of the Engine Failure Defect. The complaints also indicate Hyundai and Kia's knowledge of the Defect and its potential danger.

124.   All vehicle manufacturers, including Defendants, are required by law (which is backed by criminal penalties) to routinely monitor and analyze NHTSA complaints to determine whether vehicles or automotive components should be recalled due to safety concerns. Thus, Defendants have knowledge of all NHTSA complaints. *See* TREAD Act, Pub. L. No. 106-414, 114 Stat. 1800 (2000).

125.   Complaints submitted to Defendants and to NHTSA via Vehicle Owner Questionnaires ("VOQ") reveal a large number of Defendants' vehicles catching on fire.

126.   In the NHTSA database, hundreds and thousands of drivers of Class Vehicles have reported almost identical observations—including, e.g., knocking sounds coming from their engines—and near if not total catastrophes, such as stalling and fires. Many drivers directly report harrowing near accidents and fear for themselves and their families.

127.   Reproduced below are a representative sampling[3] of the NHTSA complaints related to Class Vehicles. This sample includes some early complaints, some emblematic complaints of knocking and engine stalls, some harrowing reports of near accidents and fires, as well as more recent complaints showing the ongoing nature of the Engine Failure Defect. Some complaints occurred at low mileage, indicating that the Defect manifested well within the range Defendants tested for in their pre-sale durability testing (discussed below in Section IV.C.4.), and well before the initial vehicle warranties expired. Some complaints also expressly mention that the drivers took their vehicles to Defendants' dealers and/or that the manufacturers were

---

[3] *See generally Safety Issues and Recalls*, NHTSA, https://www.nhtsa.gov/recalls (last visited Sept. 7, 2022).

notified. Some complaints note that after their vehicles were inspected, metal shavings or debris was found in the engine. Some complaints also expressly state that the drivers were told that their vehicles were not covered by Defendants' recalls for other vehicles manifesting the same exact problems.

### 2010 Hyundai Santa Fe

**July 25, 2010 NHTSA ID NUMBER: 10345212**
ON TUESDAY, JUNE 8, 2010 I WAS ON A BUSY INTERSTATE HIGHWAY WITH FAST MOVING TRAFFIC AND MY CAR LOST ALL POWER WHILE TRAVELING AT 70 MPH. FORTUNATELY, I WAS ABLE TO BARELY GLIDE THE SANTE FE TO THE SHOULDER AND STOP WITHOUT INCIDENT.
***
OBVIOUSLY, THIS IS A SERIOUS LIFE THREATENING SITUATION THAT NEEDS TO BE RESEARCHED THOROUGHLY AND CORRECTED. *TR

**February 1, 2011 NHTSA ID NUMBER: 10379895**
ON SATURDAY, JAN. 15TH, I WAS DRIVING MY 2010 HYUNDAI SANTA FE V6 (4 1/2 MONTHS OLD, < 2000 MILES) WHEN I TURNED A CORNER ONTO A BUSY STREET, AND THE CAR LOST ALL POWER AS IF SOMEONE HAD TURNED OF THE IGNITION. LUCKILY WE WERE NOT IN AN ACCIDENT WHEN WE LOST POWER STEERING AND ENGINE POWER OR WHEN WE SAT IN THE MIDDLE OF TRAFFIC SINCE THE CAR WOULD NOT RE-START. ROADSIDE ASSISTANCE WAS UNABLE TO SEND ANYONE FOR ALMOST 40 MINUTES, SO WE HAD TO HAVE THE POLICE PUSH US TO SAFETY. AFTER BEING TOWED TO THE HYUNDAI DEALER FOR SERVICE, THE CAR JUST STARTED UP AGAIN. WE WERE TOLD THAT THEY COULD NOT FIND THE PROBLEM SINCE NO ERROR CODE WAS SEEN. THE TECHNICIANS UPDATED THE ECM TO VERSION CMAN S2 AB8F SINCE IT WAS A RECOMMENDED GENERAL SERVICE. NO ONE KNEW IF IT WOULD FIX THE PROBLEM. THE TECHNICIANS ALSO MENTIONED THAT ANOTHER CUSTOMER HAD THE SAME PROBLEM THE WEEK BEFORE. HYUNDAI CONSUMER AFFAIRS WAS NOT HELPFUL, BUT DID OPEN A CASE NUMBER.
PROBLEM HAS NOT RE-OCCURED YET ALTHOUGH TRANSMISSION OFTEN POPS. *LN

**November 30, 2018 NHTSA ID NUMBER: 11155264**
ENGINE STOPPED AND ROD KNOCKING STARTED WHILE I WAS DRIVING ON A HIGHWAY

**April 3, 2019 NHTSA ID NUMBER: 11193558**
TL* THE CONTACT OWNS A 2010 HYUNDAI SANTA FE. THE CONTACT STATED THAT THE MOTOR STARTED KNOCKING AND SPUTTERING, AND THE VEHICLE LOST POWER WHILE DRIVING 55 MPH. BOB KING HYUNDAI (1601 SILAS CREEK PKWY, WINSTON-SALEM, NC 27127, (336) 724-2861) STATED THAT THERE WAS NO RECALL AND ADVISED THE CONTACT TO BRING THE VEHICLE IN FOR DIAGNOSTIC TESTING. THE CONTACT ALSO TOOK THE VEHICLE TO AN INDEPENDENT MECHANIC AND WAS INFORMED THAT THE ENGINE NEEDED TO BE REPLACED. THE MANUFACTURER WAS NOT CONTACTED. THE FAILURE MILEAGE WAS 115,000.

**October 1, 2020 NHTSA ID NUMBER: 11362147**
ENGINE SHUTS DOWN WHILE DRIVING ON THE HIGHWAY OR I EXPERIENCE A LURCHING. AT TIME IT JUST WON'T ACCELERATE. THIS HAPPENS ON SEVERAL OCCASION THIS YEAR

## 2011 Hyundai Santa Fe

**June 30, 2011 NHTSA ID NUMBER: 10410037**
NEW SANTA FE, 45 DAYS OLD, SCREECHING / METAL ON METAL GRINDING SOUND. DEALERSHIP COULD NOT FIND A PROBLEM. AT 3 MONTHS OLD, CAR ENGINE TURNED OFF WHILE DRIVING. DEALERSHIP COULD NOT FIND A PROBLEM. NOTHING DONE TO CORRECT THE FAILURE. DO NOT TRUST CAR. *TR

**November 17, 2011 NHTSA ID NUMBER: 10436180**
TL* THE CONTACT OWNED A 2011 HYUNDAI SANTA FE. THE CONTACT STATED THAT WHILE DRIVING 68 MPH, THE ENGINE BEGAN TO EMIT A LOUD BANGING NOISE AND CAUGHT ON FIRE. THE VEHICLE WAS MANEUVERED TO THE SHOULDER AND STOPPED. A STATE TROOPER APPEARED ON THE SCENE TO EXTINGUISH THE FIRE. THE VEHICLE WAS DESTROYED AND TOWED TO AN AUTHORIZED DEALER. THE FAILURE WAS NOT DIAGNOSED AND THE MANUFACTURER WAS NOT MADE AWARE

OF THE FAILURE. THE FAILURE AND THE CURRENT MILEAGES WERE 673.

**July 18, 2012 NHTSA ID NUMBER: 10466481**

I HAVE HAD THE SAME PROBLEM WITH MY 2011 HYUNDAI SANTA FE REPORTED IN OTHER ODI COMPLAINTS. SPECIFICALLY, MY VEHICLE STALLS RANDOMLY WHILE TRAVELING AT LOW SPEEDS. ODI ID #10460671, #10453272, AND #10412636, ALL SEEM TO REPORT THE SAME PROBLEM I HAVE. OCCASIONALLY, WHILE BRAKING OR ALLOWING THE CAR TO STOP, IT WILL STALL OUT. WHEN IT DOES, ACCELERATING, POWER STEERING, AND POWER BRAKING ARE ALL DISABLED. ONCE THE CAR GEAR IS SHIFTED TO PARK AND THE IGNITION IS TURNED OFF, THE PROBLEM RESOLVES AFTER RE-STARTING THE CAR LATER. THE DEALERSHIP SERVICE DEPARTMENT HAD WORKED ON THIS CAR FOR THE SAME PROBLEM FOUR TIMES WITHOUT BEING ABLE TO 1. DIAGNOSE THE PROBLEM AND 2. COME UP WITH AN ADEQUATE REMEDY. EVEN THOUGH THE TECHNICIANS HAVE NOT BEEN ABLE TO REPRODUCE THE STALLING, THE FIRST THREE TIMES IT WAS IN THE SHOP, THREE DIFFERENT REPAIRS WERE MADE. THEY HAVE ALL INVOLVED COMPUTER FIXES, INCLUDING CHANGING OUT THE CONTACTS, REPLACING THE JUNCTION BOX, AND UPDATING SOFTWARE. HYUNDAI IS AWARE OF MY ISSUE AND THE PENDING LEMON LAW ARBITRATION CLAIM THAT I HAVE MADE. HYUNDAI HAS CURRENTLY MADE THE UNILATERAL DETERMINATION THAT THIS VEHICLE DOES NOT QUALIFY AS A LEMON, WHICH I DISPUTE BECAUSE 1. THIS DETERMINATION IS NOT CAPABLE OF BEING MADE UNILATERALLY, AND 2. THIS IS A SERIOUS SAFETY DEFECT AND MORE THAN A "REASONABLE" AMOUNT OF REPAIR ATTEMPTS HAVE BEEN UNSUCCESSFUL. A MANAGING ENGINEER HAS EXAMINED THE VEHICLE WITHOUT FINDING ANY PROBLEMS, AND I'M CURRENTLY WORKING WITH HYUNDAI TO HAVE A "FLIGHT RECORDER" INSTALLED TO RECORD DATA WHEN THE CAR STALLS NEXT. THE MOST RECENT OCCURRENCE WAS WHILE I WAS DRIVING IN HEAVY TRAFFIC WITHOUT A SHOULDER ON THE FREEWAY--A LIFE-THREATENING SITUATION. I CONSIDER THIS CAR TO BE AN UNRELIABLE SAFETY THREAT ON THE ROADWAYS AND HAVE COMMUNICATED THIS TO HYUNDAI, BUT ITS REPRESENTATIVE DO NOT HAVE THE SAME SENSE OF URGENCY I HAVE. *TR

**June 5, 2014 NHTSA ID NUMBER: 10596478**

WHILE DRIVING THE ENGINE DIED SUDDENLY, I WAS ABLE TO RESTART THE ENGINE. THIS HAS HAPPENED MULTIPLE TIMES AND IS VERY DANGEROUS FOR A REAR END COLLISION, I HAVE TAKEN THE CAR TO HYUNDAI DEALERSHIPS BUT THEY ARE UNABLE TO DUPLICATE THE PROBLEM AND SAY THAT THEY CAN'T FIND ANYTHING WRONG WITH THE VEHICLE. I HAVE NOTIFIED HYUNDAI OF THE PROBLEM AND THEY JUST TELL ME TO TAKE IT TO A DIFFERENT DEALERSHIP. I HAVE RESEARCHED THIS ISSUE ON THE INTERNET AND THERE SEEMS TO BE MANY HYUNDAI OWNERS HAVING THE SAME ISSUE WITH THE SAME YEAR AND MAKE OF VEHICLE. THERE DOESN'T SEEM TO BE A FIX FOR THIS PROBLEM THAT HYUNDAI IS AWARE OF. PLEASE HELP! THANK YOU *TR

**December 30, 2020 NHTSA ID NUMBER: 11385612**

AS I WAS DRIVING MY FAMILY HOME FROM A SOCCER MATCH IN DENVER TO OUR HOME IN BRECKENRIDGE MY CAR(HYUNDAI, SANTA FE 2011) LOST ALL POWER WITH OUT THE ENGINE DYING. WE WERE HEADING WEST AND IN THE TUNNEL. IT WAS EXTREMELY SCARY AND PUT MY FAMILY IN DANGER. NO WARNING LIGHTS HAVE EVER COME UP ON MY CAR BEFORE OR AFTER. THIS IS THE FIRST TIME OF MANY INCIDENTS THAT THIS HAS HAPPENED AND NOT ONLY WHEN I HAVE BEEN DRIVING BUT ALSO MY DAUGHTER, SHE HAS HER PERMIT! IT DOESN'T JUST HAPPEN ON THE INTERSTATE BUT ALSO AROUND OUR COMMUNITY WHILE DRIVING. I HAVE HAD IT CHECKED IT OUT WITH MY MECHANIC AND THEY COULDN'T FIND THE ISSUE AS THE DIAGNOSTIC CAME UP WITH NOTHING. THIS IS A SERIOUS SAFETY HAZARD NOT ONLY FOR MYSELF BUT MY FAMILY AND OTHERS ON THE ROAD.

<u>**2012 Hyundai Santa Fe**</u>

**March 25, 2012 NHTSA ID NUMBER: 10452900**

ON THURSDAY MAR 22 2012 I WAS DRIVING MY HYUNDAI SANTA FE SE AWD WITH 2400 MILES ON IT IN TWO WAY DOWN HILL ROAD WITH A SPEED OF 20 TO 25 MILES PER HOUR THAN ALL OF SUDDEN WITHOUT ANY WARNING OR ANY SIGN THE CAR JUST DIE ON ME I TRIED TO TURN IT BACK ON IT DID TURN ON SO NEXT DAY I TOOK IT TO HYUNDAI DELEAR IN SAN JOSE CALIFORNIA THEEY

CHECKED IT AND SAID THEY COULDN'T FIND NOTHING WRONG WITH SO I AM KIND OF CONCERN ABOUT MY SAFETY AND MY FAMILY IF THIS DOES HAPPEN AGAIN. *TR

**August 7, 2012 NHTSA ID NUMBER: 10469577**
THE VEHICLE ENGINE STALLED RANDOMLY DURING DRIVING, TOTAL 4 TIMES, ALMOST CAUSING 4 ACCIDENTS. THE DEALER MECHANIC INSPECTED THE VEHICLE BUT COULD NOT FIND THE CAUSES FOR THIS PROBLEM AND THEREFORE WAS UNABLE TO FIX IT, LEAVING THE VEHICLE IN A STATUS WITH TREMENDOUS SAFETY CONCERNS. *TR

**September 14, 2017 NHTSA ID NUMBER: 11023494**
MY SANTA FE HAS ONLY 78,000 MILES ON IT AND HAS BEEN MAINTAINED VERY WELL. DESPITE THIS, DURING OUR EVACUATION FOR HURRICANE IRMA, THE ENGINE COMPLETELY LOCKED UP ON THE HIGHWAY, DRIVING ABOUT 70 MPH WITH CRUISE CONTROL. THE VEHICLE WAS NOT UNDER STRAIN, WE WERE NOT TOWING ANYTHING AND ONLY HAD 2 PERSONS IN THE CAR. WE WERE LEFT HAVING TO GET THE VEHICLE TOWED TO A REPAIR SHOP WHERE I WAS INFORMED THE THETA II 2.4L ENGINE THAT WAS IN MY VEHICLE WAS ON RECALL. HOWEVER THE RECALL ONLY COVERED THIS ENGINE IN THE HYUNDAI SONATA MODELS AND FOR SOME REASON WAS NOT COVERED IN THE SANTA FE. I CAN'T IMAGINE WHY AN IDENTICAL ENGINE WOULD BE RECALLED FOR THIS PROBLEM IN ONE MODEL VEHICLE BUT NOT IN ANOTHER. I HAD EVEN HAD THE OIL CHANGED 3 WEEKS PRIOR, WHICH THE MECHANIC CONFIRMED THAT EVERYTHING APPEARED FULLY FUNCTIONAL AND IN GOOD WORKING ORDER WITH THE OIL, TRANSMISSION AND COOLING SYSTEM.

**January 31, 2017 NHTSA ID NUMBER: 10948737**
4/1/2016: DRIVING ON INTERSTATE I-40 WESTBOUND IN LAS CRUCES IN A CONSTRUCTION ZONE, THE CAR ENGINE DIED, BUT I WAS ABLE TO GET TO SHOULDER. CAR TOWED TO AUTO REPAIR SHOP, BUT PROBLEM COULD NOT BE DIAGNOSED; CAR EVENTUALLY RESTARTED. 2ND ATTEMPT TO DIAGNOSE ON 4/11/16; NONE COULD BE FOUND. CAR STARTED TO MAKE OCCASIONAL LOUD ENGINE NOISE OVER ENSUING MONTHS. I CONTACTED HYUNDAI, AND IN OCTOBER 2016 WAS TOLD TO BRING CAR 100 MILES BACK TO LAS CRUCES, NM (BORMAN AUTOPLEX) FOR

FURTHER DIAGNOSIS. BORMAN DIAGNOSED METAL SHAVINGS IN ENGINE (SIMILAR OR IDENTICAL TO PROBLEM FOR THE 470,000 SONATAS WITH METAL SHAVINGS IN THE ENGINE). A FULL ENGINE FAILURE AND ENGINE REPLACEMENT WAS RECOMMENDED. I CONTENDED THAT THE ENGINE SHOULD BE REPLACED FREE OF CHARGE, AS IT WAS A MANUFACTURING DEFECT AND THE VEHICLE DYING WITHOUT NOTICE WHILE BEING DRIVEN COULD PROVE DANGEROUS OR FATAL TO THE DRIVER/PASSENGERS. THE ENGINE FAILED FULLY, AND THE VEHICLE IS NOT DRIVABLE. AGAIN, ISSUE BEGAN 4/1/2016; ENGINE FAILED COMPLETELY 12/28/2016. *TR

**February 25, 2021 NHTSA ID NUMBER: 11397903**
TL* THE CONTACT OWNS A 2012 HYUNDAI SANTA FE. THE CONTACT STATED WHILE DRIVING 65 MPH, THERE WAS AN ABNORMALLY LOUD KNOCKING COMING FROM THE VEHICLE. THE CONTACT PULLED OVER TO THE SIDE OF THE ROADWAY AND WAITED A LITTLE WHILE BEFORE RESTARTING THE VEHICLE AND CONTINUED DRIVING TO HER DESTINATION. THE CONTACT ARRIVED HER DESTINATION AND THEN DECIDED TO HAVE THE VEHICLE TOWED BACK TO HER RESIDENCE. THE CONTACT LATER DROVE THE VEHICLE TO THE LOCAL DEALER ADVANTAGE HYUNDAI (440 PLAINVIEW RD, HICKSVILLE, NY 11801) TO BE DIAGNOSED. THE CONTACT WAS INFORMED THAT THE VEHICLE WAS INCLUDED IN NHTSA CAMPAIGN NUMBER: 20V746000 (ENGINE) HOWEVER, THE PART TO DO THE RECALL REPAIR WAS NOT YET AVAILABLE. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 98,000.*DT*JB

## 2011 Hyundai Sonata Hybrid

**April 14, 2014 NHTSA ID NUMBER: 10579596**
THE CAR SUDDENLY STARTED CHIMING LOUDLY, THE CHECK ENGINE LIGHT LIT UP, A SECOND LIGHT LIT ON THE DASH AND A WARNING MESSAGE THAT SAID TO CHECK THE CHARGING SYSTEM APPEARED ON THE CONSOLE. THE CAR BECAME NEAR IMPOSSIBLE TO OPERATE: LIMITED ACCELERATION, JERKED REPEATEDLY TRYING TO STOP IN A SAFE LOCATION, LOST POWER TO AC SYSTEM....DANGEROUS SITUATION IF OTHER TRAFFIC HAD

BEEN NEARBY. THE CAR IS NOW INOPERABLE AS WE WAIT FOR A TOW TO TAKE IT TO THE NEAREST DEALER. *JS

**June 8, 2015 NHTSA ID NUMBER: 10724008**
I HAVE HAD THIS 2011 HYUNDAI SONATA HYBRID IN THE SHOP SINCE I PURCHASED IT IN 2011 NEW THE CAR HAS SERIOUS CAR HESITATION AND GAS MILEAGE IS 19 TO 30 PER GALLON.
I HAVE HAD NUMEROUS PROBLEMS WITH OIL LEAKS AND ENDED UP WITH A BLOWN MOTOR AT 60,000 MILES.
I ALSO HAVE NUMEROUS SERVICE ISSUES WITH THE BLOWER AC/ HEATER NOT WORKING AS WELL.
THE CAR IS A LEMON AFTER 30 VISITS TO DEALERSHIP FOR REPEATED PROBLEMS. I HAVE TAKEN CAR TO 4 DIFFERENT DEALERSHIPS TO HAVE A NEW SET OF EYES FIX THE PROBLEMS AND STUCK WITH A REBUILT MOTOR IN MAY 2015. CAR IS BACK IN THE SHOP FOR HESITATE AND ECS PROBLEMS AS OF JUNE 2015. NEED HELP.

**November 21, 2016 NHTSA ID NUMBER: 10927169**
METAL SHAVINGS IN ENGINE OIL PAN CAUSING ENGINE FAILURE, KNOCKING, LOSE OF POWER WHILE DRIVING, MANUFACTURING DEFECT ON SMALL BLOCK ENGINE BUT NOT ON THE SMALL BLOCK HYBRID... WE WERE TOLD BY THE DEALER BUT THE HYBRID STILL HAS THE SAME DEFECT AS THE NONE HYBRID SAME EXACT ISSUES METAL SHAVING IN OIL PAN DEFECTS FROM MANUFACTURER. THE NONE HYBRID WAS RECALLED BUT A RECALL WAS NEVER ISSUED FOR THE HYBRID STATED BY EMPLOYEES AT GLOBAL AUTO MALL IN NEW JERSEY.

**January 26, 2020 NHTSA ID NUMBER: 11301915**
ENGINE BEGAN MAKING A KNOCKING KNOCKING NOISE THAT BECAME WORSE OVER THREE DAYS (ORIGINALLY MISTAKEN FOR BAD GAS BUT BECAME MUCH LOUDER THAN THAT WOULD BE). WHILE DRIVING ALONG A BUSY STATE ROAD (NC 98) AND CAR CHOKED TWICE WITH A LOUD THUMP AND I FEARED IT WOULD STALL. PULLED OVER, SHUT VEHICLE OFF. SMOKE WAS COMING FROM ENGINE COMPARTMENT. NO ACTUAL FLAMES DETECTED. TOWED TO DEALER. DEALER DESCRIBED HOLES IN THE ENGINE. CONSULTED HYUNDAI AND THEY WILL ONLY OFFER A SHORT BLOCK REPLACEMENT. LABOR COSTS ARE APPROXIMATELY $2500 WHICH I AM REQUIRED TO PAY. VEHICLE HAS APPROXIMATELY

141K MILES. TOW TRUCK OPERATOR ALSO TOLD ME TO RESEARCH THE RECALLS ON THIS VEHICLE BUT THIS VEHICLE WAS NOT LISTED BUT SHOULD BE. IT WOULD APPEAR THAT THE RECALL WAS INCOMPLETE AND SHOULD HAVE BEEN BROADER.

**February 25, 2021 NHTSA ID NUMBER: 11397944**
TL* THE CONTACT OWNS A 2011 HYUNDAI SONATA HYBRID. THE CONTACT STATED WHILE DRIVING 75 MPH, THERE WAS AN ABNORMAL CLUNKING SOUND DETECTED. THERE WERE NO WARNING LIGHTS ILLUMINATED. THE CONTACT RECEIVED NOTIFICATION OF NHTSA CAMPAIGN NUMBER: 20V746000 (ENGINE) HOWEVER, THE PART TO DO THE RECALL REPAIR WAS UNAVAILABLE. THE VEHICLE WAS TOWED TO AMARILLO HYUNDAI (1900 INTERSTATE 40 ACCESS RD #3029, AMARILLO, TX 79103, (806) 376-4911) TO BE DIAGNOSED. THE CONTACT WAS INFORMED THAT THE ENGINE NEEDED TO BE REPLACED HOWEVER, THE VEHICLE WAS NOT REPAIRED. THE PART WAS NOT AVAILABLE. THE CONTACT STATED THAT THE MANUFACTURER HAD EXCEEDED A REASONABLE AMOUNT OF TIME FOR THE RECALL REPAIR. THE MANUFACTURER WAS MADE AWARE OF THE ISSUE. THE FAILURE MILEAGE WAS 105,000. VIN TOOL CONFIRMS PARTS NOT AVAILABLE.

## 2012 Hyundai Sonata Hybrid

**September 15, 2014 NHTSA ID NUMBER: 10633248**
WE WERE TRAVELING DOWN HIGHWAY 125 WHEN MY 2012 HYUNDAI SONATA HYBRID CAUGHT ON FIRE. IT COMPLETELY BURNED TO THE GROUND. WE HAD ABOUT 5 SECONDS TO JUMP OUT OF CAR. ALL 4 OCCUPANTS GOT OUT OF CAR THANK YOU GOD. *TR

**October 25, 2015 NHTSA ID NUMBER: 10785863**
WHILE DRIVING IT DOWN THE STREET STARTED TO HESITATE FREQUENTLY WHILE DRIVING THEN HEARD A LOUD CLANKING SOUND WHICH CONTINUED ON WHILE DRIVING IT TO DEALER. DEALER LOOKED AT IT AND WE WERE TOLD THE MOTOR HAD GONE OUT AND NEEDED TO BE REPLACED! THEY ALSO SAID WE HAD TO PAY FOR IT BECAUSE THEY SAID OUR OIL CHANGES WERE NOT APPROVED! ONCE WE GOT THE PAPER WORK BACK THEY QUOTED THEY FOUND OIL BUILD UP AND LARGE CHUNKS OF

METAL THROUGHOUT THE ENGINE THAT HAS CONTAMINATED THE VALVE TRAIN. THEY HAD TO REPLACE ENGINE, CYLINDER HEAD, VALVE, VALVE SPRING, CAMSHAFTS ,GASKETS! NOW THEY ARE ISSUING A RECALL ON HYUNDAI SONATAS FOR THIS EXACT PROBLEM , BUT THEY ARE ALSO SAYING OUR CAR IS NOT INCLUDED IN THE RECALL EVEN THOUGH WHAT THEY FIXED IS THE EXACT PROBLEM THAT IS LISTED ON THE RECALL. IT TOOK THEM ALMOST 2 MONTHS TO HAVE OUR CAR IN THE SHOP BECAUSE THEY COULDN'T FIND THE PARTS NEEDED TO FIX THE ENGINE!!!!

**May 23, 2016 NHTSA ID NUMBER: 10870404**
MY VEHICLE BLEW A PISTON ROD WHILE I WAS DRIVING DOWN THE HIGHWAY ON CRUISE CONTROL DOING 2000 RPM'S. I HAVE ALWAYS KEPT UP ON THE MAINTENANCE WITH THIS CAR BUT WHEN I HAD IT TOWED TO THE DEALERSHIP THEY ARE SAYING THAT IT WAS MY FAULT. THEY DO HAVE AN OPEN RECALL ON MY YEAR, MAKE, MODEL AND ENGINE SIZE BUT NOT MY VIN. I HAVE DONE MY RESEARCH ONLINE AND I HAVE FOUND OTHER CASES LIKE THIS. THE CAR ONLY HAS 69,000 MILES ON IT.

**August 7, 2018 NHTSA ID NUMBER: 11118421**
ENGINE STARTED MAKING A VERY LOUD KNOCKING SOUND WHILE DRIVING 70-75 MPH. SHORTLY THERE AFTER THE ENGINE STOPPED AND SMOKE CAME OUT OF THE HOOD.
TOWED THE VEHICLE TO A LOCAL HYUNDAI DEALERSHIP THAT SAID THE PISTON BROKE AND WENT THROUGH THE FIREWALL.

### 2013 Hyundai Sonata Hybrid

**August 4, 2016 NHTSA ID NUMBER: 10893204**
TL* THE CONTACT OWNS A 2013 HYUNDAI SONATA HYBRID. WHILE DRIVING 25 MPH, A LOUD KNOCKING SOUND WAS HEARD FROM THE HOOD OF THE VEHICLE. THE FAILURE RECURRED INTERMITTENTLY. THE VEHICLE WAS TAKEN TO THE DEALER WHERE IT WAS DIAGNOSED, BUT THE CAUSE OF THE FAILURE WAS NOT FOUND. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS 64,000.

**November 23, 2017 NHTSA ID NUMBER: 11048131**

WE BOUGHT THIS CAR USED FROM THE DEALER EARLY ON WE HAD HYBRID WARNING SYSTEM ISSUES WE HAVE BEEN STUCK ON THE SIDE OF THE ROAD SEVERAL TIMES HAVING TO HAVE THE CAR TOWED TO THE DEALER RECHARGED AND SERVICE EACH TIME WE WERE TOLD THEY DON'T FIND ANYTHING WRONG THE DEALER CHARGES THE BATTERY AND GIVES THE CAR BACK. NOW 3 YEARS LATER WE GOT THE OIL CHANGED AS NORMAL, IT'S THANKSGIVING WEEK AND WE ARE HEADED TO VACATION 3 HOURS FROM HOME WE AR E AN HOUR AWAY FROM DESTINATION AND THE CAR LOSES POWER GOING UP HILL THE OIL PAN LIGHT COMES ON, WE PULL OVER IN THE MIDDLE OF THE MOUNTAINS AND SIT ON THE SIDE OF THE ROAD WAITING FOR THE TOW TRUCK TO FIND US. WE TOW THE CAR TO THE DEALER HOPING SOMETHING WASN'T DONE RIGHT WITH THE OIL CHANGED HOWEVER DEALER SAYS THE ENGINE SEIZED AND THE CAR IS OUTSIDE OF WARRANTY AND EXTENDED WARRANTY SO WE WILL NEED TO PAY $6600 TO REPLACE WITH USED ENGINE. THIS CAR IS 4 YEARS OLD WE REGULARLY HAD THE OIL CHANGED. WE ARE NOT GIVEN ANY REASON FOR THE SEIZED ENGINE. PLEASE LOOK INTO THIS. THIS CAR HAS BEEN NOTHING BUT PROBLEMS SINCE THE DAY WE GOT IT AND THE DEALER HAS NEVER PROVIDED MUCH HELP AS WERE ASKED TO TAKE PICTURES WHICH WE DID BUT STILL NOTHING

**June 28, 2018 NHTSA ID NUMBER: 11104473**
MY HUSBAND AND I WERE DRIVING ON INTERSTATE 81 SOUTH NEAR WOODSTOCK, VA ON SUNDAY MORNING, JUNE 24, 2018. THE CAR BEGAN MAKING A KNOCKING SOUND, THEN WE LOST POWER. BY THE TIME WE WERE ABLE TO PULL OVER, THE ENGINE WAS ON FIRE. THE ENTIRE CAR ENDED UP BURNING. THE VA STATE POLICE, VDOT, AND FIRE DEPARTMENT RESPONDED AND I-81 SOUTH WAS SHUT DOWN FOR A TIME. I PURCHASED MY CAR NEW AND DID ALL REQUIRED MAINTENANCE PER FACTORY RECOMMENDATION INCLUDING OIL CHANGES, TIRE ROTATIONS, ETC. BY THE HYUNDAI DEALER IN BOWIE, MD. I HAVE COPIES OF ALL MY RECEIPTS FROM THE DEALER AND THEY HAVE THE RECORDS ON THEIR COMPUTER SYSTEM. MY CAR HAD 91,000 MILES ON IT. WE CONTACTED THE INSURANCE COMPANY AND THE CAR IS A TOTAL LOSS.

**April 30, 2019 NHTSA ID NUMBER: 11204784**

I WAS DRIVING HOME FROM WORK AND SUDDENLY LOUD
TICKING SOUNDS STARTING COMING FROM THE ENGINE. THEN
THE POWER ALMOST WENT TO NOTHING AND THE CAR STARTED
SLOWLY DOWN (AS IF THE CAR HAD BEEN TURNED OFF (IT WAS
STILL ON).
THE CHECK ENGINE LIGHT CAME ON AND THE TICKING SOUND
GOT LOUDER. I WAS ABLE TO SAFELY DRIVE OFF WITHOUT ANY
ACCIDENTS.
I GOT HOME AND CALLED SEVERAL MACHANICS TO SEE IF
ANYONE COULD COME BY AND SEE WHAT'S GOING ON AS I DIDN'T
FEEL SAFE TO DRIVE THE CAR.
TODAY A MECHANIC CAME AND SAID THE FOLLOWING:
CHECK ENGINE LIGHT ON. LOUD VALVE TRAIN NOISES AND FAINT
KNOCKING CAN BE HEARD AT IDLE.
DEAD MISFIRE ON ONE CYLINDER.
NOISE IS MECHANICAL.
ONE DTC RETURNED (PO365 - CAN SENSOR B CKT MALFUNCTION).
PER MECHANIC - STRONGLY SUSPECT ENGINE IS IN EARLY STAGES
OF COMMON FAILURE.
INQUIRE W/MFG ENGINE RECALL.
IT IS SHOWING SAME SYMPTOMS AS PREVIOUS YEAR RECALL FOR
SONATA HYBRIDS AND ENGINE FAILURES.
THERE IS LOW OF POWER AND LOUD TICKING NOISES FROM THE
ENGINE.

**August 13, 2020 NHTSA ID NUMBER: 11349028**
TL* THE CONTACT OWNS A 2013 HYUNDAI SONATA HYBRID. THE
CONTACT STATED THAT WHILE DRIVING APPROXIMATELY 55
MPH, THE VEHICLE LOSS MOTIVE POWER AND THE SPEED WAS
REDUCED. AFTER STOPPING ON THE SIDE OF THE ROADWAY,
THERE WAS AN ABNORMAL KNOCKING SOUND COMING FROM THE
FROM THE ENGINE. THE VEHICLE WAS TOWED TO DEALER
SOUTHERN STATE HYUNDAI OF RALEIGH LOCATED AT 2511 WAKE
FOREST RD, RALEIGH, NC 27609, WHO DIAGNOSED THAT THE
ENGINE WAS DEFECTIVE AND NEEDED TO BE REPLACED. THE
VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS NOT
NOTIFIED OF THE FAILURE. THE CONTACT WAS INFORMED BY THE
DEALER THAT THE VEHICLE WAS NOT INCLUDED IN THE NHTSA
CAMPAIGN NUMBER: 17V226000 (ENGINE AND ENGINE COOLING).
THE CONTACT STATED THAT THE VEHICLE HAD EXPERIENCED

THE SAME FAILURE LISTED IN THE RECALL. THE FAILURE MILEAGE WAS 138,000

### 2014 Hyundai Sonata Hybrid

**May 25, 2017 NHTSA ID NUMBER: 10991578**
THE ENGINE STOP WORKING, DEALER SAID ENGINE IS SIS UP. DEALER DIDN'T WANT TO APPLY THE 100,000 MILES WARRANTY BECAUSE THE CAR WAS NOT CERTIFIED AND WE ARE 2ND OWNER. WE BOUGHT CERTIFY, BUT DEALER WASH THE HANDS AND SAID UPS IT WAS NOT, YOU NEED A NEW ENGINE.

**October 1, 2017 NHTSA ID NUMBER: 11030760**
IT'S A 2014 HYUNDAI SONATA HYBRID, WITH A LITTLE OVER 61000 MILES ON IT, I HAD TO EVACUATE FROM A HURRICANE ABOUT WEEK AFTER THAT, WHEN I RETURNED I CHECKED THE OIL ON MY CAR THERE WAS NO OIL SHOWING ON THE STICK THE OIL LIGHT NEVER CAME ON, I TOOK IT TO THE DEALERSHIP THEY SAID ENGINE OIL DRAIN BOLT WASHER HAD CRACK IN IT, THEY PUT OIL IN AND SAID EVERYTHING WAS FINE. I HAD TO GO OUT OF TOWN THIS PAST WEEK AND ON THE WAY BACK I CHECKED THE OIL IT WAS ABOUT A QUART AND A HALF LOW I CALLED THE DEALERSHIP AND ASK THE SERVICE MANAGER WHAT TYPE OF OIL THEY USED WAS IT SYNTHETIC OR REGULAR OIL SHE WENT AND ASK THE MECHANIC SHE CAME BACK AND SAID DO NOT PUT OIL IN IT BECAUSE IT WOULD VOID THE WARRANTY I ASK HER HOW THAT WOULD VOID IT, SHE DIDN'T HAVE AN ANSWER FOR ME AND I GOT KINDA MAD CAUSE THEY WOULD NOT TELL ME WHAT OIL TO PUT IN IT, THEN I DROVE TO THE NEXT REST AREA A CHECKED IT AGAIN THERE WAS NO OIL ON THE STICK I TRIED TO CALL THE DEALERSHIP THEY WOULD NEVER ANSWER THE PHONE I GUESS THEY HAD CALLER ID , SO I CALLED A TOW TRUCK AND TOOK IT TO THE CLOSET HYUNDAI DEALERSHIP THEY PUT IT ON THE RACK THE UNDER BELLY WAS CLEAN THERE HAD BEEN NO LEAK, HE THEN TOOK OFF THE OIL CAP AND THERE WAS SO MUCH SLUDGE BUILD UP HE SAID THE ENGINE WAS TORCHED NO WAY IT COULD BE FIX, I ASK WAY THE OIL LIGHT NEVER CAME ON, HE SAID BECAUSE OF ALL THE SLUDGE IN THERE, HE SAID THIS SHOULD HAVE NEVER BEEN SOLD

**March 12, 2019 NHTSA ID NUMBER: 11186237**

WHILE IN MOTION GOING 60MPH, VEHICLE SPUTTERED AND THEN AN ALARM SOUNDED ALONG WITH A WARNING DISPLAYED ON THE DRIVERS SIDE SCREEN STATING "HYBRID SAFETY WARNING. PULL OVER AND DO NOT DRIVE." THE CAR WOULD NO LONGER ACCELERATE AND CAME TO A STOP. HAD TO RESTART THE CAR. THE SAME WARNING HAPPENED AGAIN THE FOLLOWING DAY WHILE IN MOTION GOING 50MPH. HAD TO GET OUT OF THE ROADWAY AND RESTART THE CAR. HYUNDAI REPLACED THE ENTIRE ENGINE UNDER MANUFACTURER WARRANTY (TOOK ABOUT 5 MONTHS). UPON RECEIVING VEHICLE BACK, THE SAME ISSUE HAPPENED IN THE FIRST 10 MINS OF DRIVING IT (ISSUE NOT FIXED). IT IS BACK AT THE HYUNDAI SERVICE CENTER AWAITING REPAIR.

### 2015 Hyundai Sonata Hybrid

**March 6, 2017 NHTSA ID NUMBER: 10958901**
A FEW MONTHS AGO THE VEHICLE STALLED AT A RED LIGHT. I FOUND COMPLAINTS OF THE SAME MAKE, YEAR AND MODEL STALLING ON OTHER OWNERS ON THE INTERNET. WENT TO DEALER AND AFTER NUMEROUS HOURS IN THE SHOP THEY COULD NOT FIND THE PROBLEM. TODAY MY 19 YEAR OLD DAUGHTER WAS ON A FOUR LANE HIGHWAY WITH NO PULL OFF LANES, ONLY CEMENT BARRIERS. THE VEHICLE STALLED AT 60 MPH. SHE ALMOST DIED FROM BEING HIT BY A TRACTOR TRAILER. SHE WAS MISSED BY ONLY A FEW INCHES. THE VEHICLE DID START AGAIN AND SHE GOT OFF THE HIGHWAY. MADE COMPLAINT WITH HYUNDAI CONSUMER AFFAIRS.

**December 19, 2017 NHTSA ID NUMBER: 11055562**
TL* THE CONTACT OWNS A 2015 HYUNDAI SONATA HYBRID. THE CONTACT STATED THAT THE VEHICLE HAD PREMATURE ENGINE FAILURE DUE TO SLUDGE AND METAL FRAGMENTS ENTERING THE ENGINE ASSEMBLY. THE VEHICLE STALLED MORE THAN TWICE. THE VEHICLE WAS TOWED TO NORTH COUNTY HYUNDAI OF CARLSBAD (5285 CAR COUNTRY DR, CARLSBAD, CA 92008, (760) 929-4900) FOR THE FIRST REPAIR. THE DEALER INDICATED THAT THEY REPLACED THE GSI BELTS, BUT THE FAILURE RECURRED. THE VEHICLE WAS TOWED TO THE DEALER A SECOND TIME WHO INDICATED THAT THE HYBRID BATTERY DETACHED. THE DEALER RE-ATTACHED THE BATTERY, BUT THIS DID NOT PREVENT THE

FAILURE. THE VEHICLE STALLED AGAIN AND WAS UNABLE TO BE
DRIVEN. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE
AND DID NOT ASSIST. THE VIN WAS NOT INCLUDED IN NHTSA
CAMPAIGN NUMBER: 15V568000 (ENGINE AND ENGINE COOLING).
THE APPROXIMATE FAILURE MILEAGE WAS 88,000.

**June 21, 2018 NHTSA ID NUMBER: 11103080**
TL* THE CONTACT OWNS A 2015 HYUNDAI SONATA HYBRID.
WHILE DRIVING 65 MPH, A LOUD POP SOUND WAS HEARD COMING
FROM UNDERNEATH THE VEHICLE ON THE FRONT PASSENGER
SIDE. THE CONTACT NOTICED SMOKE COMING FROM THE FRONT
PASSENGER SIDE FLOOR PANEL. THERE WERE NO WARNING
INDICATORS. THE CONTACT COASTED THE VEHICLE TO THE SIDE
OF THE ROAD, EXITED THE VEHICLE, AND NOTICED FLAMES
UNDERNEATH THE CENTER OF THE VEHICLE. THE ENTIRE VEHICLE
BECAME ENGULFED IN FLAMES. THE FIRE DEPARTMENT WAS
CALLED AND EXTINGUISHED THE FIRE. A FIRE REPORT WAS FILED.
THE VEHICLE WAS TOWED TO A TOW LOT. THE VEHICLE WAS NOT
TAKEN TO A DEALER OR AN INDEPENDENT MECHANIC FOR
DIAGNOSTIC TESTING. THE VEHICLE WAS NOT REPAIRED. THE
MANUFACTURER WAS NOTIFIED OF THE FAILURE AND DID NOT
ASSIST. THE APPROXIMATE FAILURE MILEAGE WAS 35,000. THE
VIN WAS NOT AVAILABLE. *TT

**December 2, 2018 NHTSA ID NUMBER: 11155443**
COMING HOME FROM A FUNERAL OUT OF TOWN. THE VEHICLE
STARTED MAKING A CLICKING NOISE UNDER THE HOOD ON THE
PASSENGER SIDE OF THE CAR. THEN THE VEHICLE STARTED
SLOWING DOWN. WE WERE ABLE TO MAKE IT TO A GAS STATION
AND THE VEHICLE STOPPED. THERE IS ALSO OIL LEAKAGE. IT
WOULD TURN OVER, BUT STOP AGAIN. HAD TO PAY 700 TO TOW US
AND THE VEHICLE HOME.

## **2016 Hyundai Sonata Hybrid**

**January 8, 2018 NHTSA ID NUMBER: 11061129**
ON 4 SEPARATE OCCASIONS WHILE TRAVELING ON HIGHWAYS AT
HIGHWAY SPEED IN EV MODE, GETTING A WARNING "CHECK
HYBRID SYSTEM TURN OFF ENGINE" ALONG WITH A CHECK
ENGINE LIGHT; THESE ARE THE OCCURRENCE DATES 12/01/2017,
12/11/2017, 12/23/2017, 01/06/2018. EACH TIME HAS BEEN

ACCOMPANIED BY A COMPLETE LOSS OF GASOLINE ENGINE AVAILABILITY RESULTING IN A SIGNIFICANT AND UNSAFE DROP IN VEHICLE SPEED DUE TO THE CAR ONLY BEING ABLE TO CONTINUE RUNNING ON BATTERY POWER. AFTER PULLING OVER I HAVE BEEN ABLE SHUTDOWN THE CAR AND RESTART. UPON RESTART, THE GASOLINE ENGINE DOES COME BACK ON. ALSO NOTE THE "CHECK ENGINE" LIGHT HAS TURNED BACK OFF BY THE TIME I HAVE TAKEN THE CAR BACK TO THE DEALERSHIP. THE CAR HAS BEEN TO THE DEALERSHIP TWICE NOW AND SUPPOSEDLY REPAIRED BOTH TIMES UNDER WARRANTY. THE FIRST REPAIR ATTEMPT ON 12/12/2017; THE DEALER WAS INSTRUCTED BY HYUNDAI TO TRY TSB 16-01-020-1. THE SECOND REPAIR ATTEMPT ON 12/27/2017; THERE HAD BEEN A P261F AND P0A0F FAULT CODE AND THE DEALER WAS INSTRUCTED BY HYUNDAI TO REPLACE ALL FOUR SPARK PLUG COILS. THESE ATTEMPTS HAVE NOT FIXED THE UNDERLYING PROBLEM AS REPRESENTED BY THE LATEST OCCURRENCE ON 01/06/2018. THIS CAR IS LESS THAN TWO YEARS OLD AND HAD ONLY 36000 MILES ON IT WHEN THIS STARTED HAPPENING.

**February 15, 2019 NHTSA ID NUMBER: 11180233**
WENT TO GO GET AN OIL CHANGED ON FEB 9TH. MONDAY, FEB 11TH DROVE TO WORK AND BACK HOME, WHEN I REACHED THE EXIT OFF THE BELTWAY, THE CAR STARTED PUT PUTING, SMOKE STARTED COMING OUT OF THE BACK, ENGINE AND OIL LIGHT CAME ON. I IMMEDIATELY DROVE IT 6 MILES HOME TO PARK IT. HAD IT TOWED AN HOUR LATER. THE SHOP SAID THE ROD BUSTED AND WENT THROUGH MY ENGINE AND NO OIL WAS IN THE CAR. THIS HAS BEEN AN ONGOING ISSUES WITH THIS TYPE OF CAR. THIS EXPERIENCE HAS REALLY DRAMATIZED ME. NOT SURE IF MY INSURANCE WILL PAY FOR IT AND I WILL HAVE TO COME OUT OF POCKET TO REPLACE AN ENGINE THAT COULD HAVE POSSIBLY BEEN A RECALL. BASED OF MY VIN: ITS NOT, BUT JANUARY 2019 & APRIL 2016, THERE WERE RECALLS WITH THIS SAME ISSUE. ITS NOT RIGHT.

**May 23, 2019 NHTSA ID NUMBER: 11209538**
ON 5/11 MY WIFE WAS DRIVING WHEN SHE HEARD A CLICKING SOUND. SHE WAS NOT FAR FROM THE DEALERSHIP AND DECIDED TO DRIVE THE CAR IN TO GET LOOKED AT. AS SHE GOT CLOSE TO THE DEALERSHIP THE VEHICLE STARTED TO SMOKE. SHE PULLED

OVER TO A SAFE LOCATION WHERE SHE COULD GET OUT AND AS SHE WAS PULLING OVER THE VEHICLE STARTED TO FLAME. SHE IMMEDIATELY GRABBED THE DOG AND JUMPED OUT OF THE CAR AND CALLED 911. WITHINJUST A COUPLE MINUTES OF EXITING THE VEHICLE IT WAS FULLY ENGULFED IN FLAMES AND EXPLODED.

**March 25, 2021 NHTSA ID NUMBER: 11404829**
TL* THE CONTACT OWNS A 2016 HYUNDAI SONATA HYBRID. THE CONTACT RECEIVED NOTIFICATION OF NHTSA CAMPAIGN NUMBER: 20V746000 (ENGINE) HOWEVER, THE PART TO DO THE RECALL REPAIR WAS UNAVAILABLE. THE CONTACT CALLED BOB BAKER HYUNDAI (5285 CAR COUNTRY DR, CARLSBAD, CA 92008, (760) 929-4900) WHERE IT WAS CONFIRMED THAT THE PART WAS NOT YET AVAILABLE FOR THE RECALL REPAIR. THE CONTACT STATED THAT THE MANUFACTURER EXCEEDED A REASONABLE AMOUNT OF TIME FOR THE RECALL REPAIR. THE CONTACT STATED WHILE DRIVING 30 MPH, A CLICKING SOUND WAS HEARD. THE CONTACT STATED THAT SEVERAL WARNING LIGHTS WERE ILLUMINATED. THE VEHICLE WAS NOT TAKEN TO AN INDEPENDENT MECHANIC OR DEALER TO DIAGNOSED OR REPAIRED. THE MANUFACTURER WAS NOT MADE AWARE OF THE ISSUE. THE FAILURE MILEAGE WAS APPROXIMATELY 55,707. PARTS DISTRIBUTION DISCONNECT.

**May 19, 2021 NHTSA ID NUMBER: 11417828**
TL* THE CONTACT OWNS A 2016 HYUNDAI SONATA HYBRID. THE CONTACT STATED WHILE DRIVING 15 MPH, THE VEHICLE LOSS MOTIVE POWER AND SHUDDERED WHILE THE ACCELERATOR PEDAL WAS BEING DEPRESSED. THERE WAS NO WARNING LIGHT ILLUMINATED. THE CONTACT PULLED OVER AND RESTARTED THE VEHICLE HOWEVER, THE FAILURE PERSISTED. THE CONTACT TOOK THE VEHICLE TO THE LOCAL DEALER HOWEVER, THE VEHICLE WAS NOT YET DIAGNOSED NOR REPAIRED. THE CONTACT WAS CONCERNED THAT THE FAILURE WAS ENGINE RELATED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS 99,000.

## **2010 Hyundai Tucson**

**December 16, 2013 NHTSA ID NUMBER: 10556218**

TL* THE CONTACT OWNS A 2010 HYUNDAI TUCSON. THE CONTACT STATED THAT WHILE TRAVELING VARIOUS SPEEDS, THE VEHICLE SUDDENLY LOST ACCELERATION POWER. THE VEHICLE WAS TAKEN TO THE DEALER WHERE THE FAILURE COULD NOT BE REPLICATED. THE MANUFACTURER WAS CONTACTED ABOUT THE FAILURE. THE FAILURE MILEAGE WAS APPROXIMATELY 20,000.

**March 19, 2019 NHTSA ID NUMBER: 11190038**
I FIRST NOTICED WHITE SMOKE COMING FROM THE BACK OF MY SUV. I PULLED INTO A STORE PARKING LOT AND TRIED TO PARK. MY MAIN BRAKES FAILED. I THEN TRIED USING MY EMERGENCY BRAKE. IT TOO FAILED. WHITE SMOKE STARTED COMING THROUGH THE VENTS SO I TURNED THEM AWAY FROM ME AND TRIED SHIFTING TO PARK WITH NO SUCCESS. I THEN PRESSED THE MAIN BRAKE AGAIN AND WAS ABLE TO SHIFT TO PARK. THEN SOMEONE IN THE PARKING LOT YELLED, "YOUR CAR'S ON FIRE! GET OUT!" I GRABBED MY KEYS, CELL PHONE AND WORK BADGE AND AS I WAS GETTING OUT, BLACK SMOKE BEGAN FILLING THE CABIN. STORE EMPLOYEES TRIED TO PUT OUT THE FIRE WITH FIRE EXTINGUISHERS WITH NO SUCCESS. WITHIN 10 MINUTES THE FRONT HALF OF THE SUV WAS ENGULFED IN FLAMES! I HAVE NO CLUE WHAT COULD HAVE CAUSED THE BRAKES TO FAIL NOR THE REASON FOR THE ENGINE TO CATCH FIRE! I HAVE VIDEO AND PHOTOS FOR VIEWING.

**July 26, 2019 NHTSA ID NUMBER: 11235127**
TL* THE CONTACT OWNS A 2010 HYUNDAI TUCSON. THE CONTACT STATED THAT THE VEHICLE WAS LEAKING FUEL. THE FUEL PUDDLES UNDERNEATH THE VEHICLE GREW LARGER EACH WEEK. THE CONTACT CALLED HYUNDAI CUSTOMER SERVICE AT 1-855-371-9460, BUT WAS NOT ASSISTED. THE CONTACT CALLED KEYS MISSION HILLS HYUNDAI (10240 SEPULVEDA BLVD, MISSION HILLS, CA 91345, (818) 221-4000) AND WAS INFORMED THAT THE VIN WAS INCLUDED IN NHTSA CAMPAIGN NUMBER: 19V063000 (ENGINE AND ENGINE COOLING). THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS 109,448. *JS *LN *JS

## **2011 Hyundai Tucson**

**September 29, 2010 NHTSA ID NUMBER: 10358198**

TL*THE CONTACT OWNS A 2011 HYUNDAI TUCSON. AFTER ATTEMPTING TO MOVE FORWARD FROM A STOP, THE VEHICLE SUDDENLY STALLED AND COMPLETELY SHUT OFF. THE CONTACT COULD NOT RESTART THE ENGINE. THE VEHICLE WAS TOWED TO AN AUTHORIZED DEALER BUT THE FAILURE COULD NOT BE DUPLICATED. THE MANUFACTURER SENT OUT A DISTRICT MANAGER TO INSPECT THE VEHICLE BUT COULD NOT FIND THE CAUSE FOR FAILURE. THE VEHICLE HAD NOT BEEN REPAIRED. THE FAILURE MILEAGE WAS APPROXIMATELY 600.

**July 11, 2019 NHTSA ID NUMBER: 11231044**
ENGINE HAS A VERY BAD KNOCKING SOUND AS DESCRIBED IN RECALLED CARS THAT CATCH FIRE WITH THE SAME ENGINE. I CAN'T DRIVE IT IN THIS CONDITION AND THE MECHANIC SAYS REPAIR IS VERY EXPENSIVE AND MIGHT NOT FIX THE PROBLEM. THERE IS A CONCERN THAT THERE ARE NO GOOD ENGINE PARTS FROM WHICH TO EVER FIX IT. THE SOUND JUST KEEPS GETTING WORSE.

**October 28, 2019 NHTSA ID NUMBER: 11271483**
TL* THE CONTACT OWNS A 2011 HYUNDAI TUCSON. THE CONTACT RECEIVED A RECALL NOTIFICATION FOR NHTSA CAMPAIGN NUMBER: 19V063000 (ENGINE, AND ENGINE COOLING). THE VEHICLE WAS TAKEN TO RICK CASE HYUNDAI (19991 VILLAVIEW RD, CLEVELAND, OH 44119, (216) 487-6295) AND REPAIRED PER THE RECALL. WHILE DRIVING, THE RPMS INCREASED, AND THE ENGINE REVVED AND MADE A CLICKING NOISE. ALL THE WARNING INDICATORS ILLUMINATED ON THE INSTRUMENT PANEL. THE CONTACT COASTED THE VEHICLE TO THE SIDE OF THE ROAD AND SMOKE EMERGED FROM THE ENGINE. THE CONTACT LIFTED THE HOOD AND NOTICED OIL SPILLED ALL AROUND THE ENGINE. THE VEHICLE WAS TOWED TO AN INDEPENDENT MECHANIC WHO STATED THAT THE ENGINE NEEDED TO BE REPLACED. ACCORDING TO HYUNDAI IT WAS A BOLT THAT GOT LOOSE AND CAUSED ALL THE HAVOK. RODS AND METAL WERE EVERYWHERE IN THE VEHICLE AND THERE IS APPARENTLY (HAVEN'T SEEN IT YET) A HOLE IN THE ENGINE BLOCK AND OIL PAN. THE VEHICLE WAS NOT REPAIRED. THE DEALER AND MANUFACTURER WERE NOT NOTIFIED. THE FAILURE MILEAGE WAS APPROXIMATELY 140,000. *TR*JB *BF *JS

**August 31, 2020 NHTSA ID NUMBER: 11352210**
TL* THE CONTACT OWNS A 2011 HYUNDAI TUCSON. THE CONTACT STATED THAT WHILE DRIVING ON THE HIGHWAY AT 55 MPH, THE VEHICLE STARTED LEAKING OIL, RESULTING IN A BLOWN PISTON. THE ENGINE WAS SEVERELY DAMAGED BY THE PISTON HOWEVER, THE COMPLETE EXTENT OF THE DAMAGES WERE UNKNOWN. THE CONTACT PULLED OVER TO THE SIDE OF THE ROADWAY. THE CONTACT STATED THAT THERE WAS EVIDENCE OF THE OIL LEAK ON THE ROADWAY. THE VEHICLE WAS TOWED BY THE INSURANCE COMPANY TO AN INDEPENDENT MECHANIC TO BE DIAGNOSED. AN UNKNOWN DEALER WAS CONTACTED AND INFORMED OF THE FAILURE. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER HAD NOT BEEN CONTACTED. THE FAILURE MILEAGE WAS 78,000.

## 2012 Hyundai Tucson

**June 13, 2016 NHTSA ID NUMBER: 10873948**
WHILE DRIVING ON THE I90 THROUGH SNOQUALMIE PASS IN WASHINGTON, MOVED TO OVERTAKE ANOTHER VEHICLE IN THE OVERTAKING LANE.
AS I MOVED INTO THE LANE AND ACCELERATED, THE ENGINE DROPPED DOWN A GEAR AND A WHINING NOISE WAS HEARD. AT THIS POINT I HAD TOTAL LOSS OF POWER AND WAS TRAVELLING AT ~70MPH.
I WAS ABLE TO SAFELY PULL OVER ONTO THE SIDE OF THE ROAD AND THE CAR WAS TOWED. THERE WAS MEDIUM TRAFFIC AT THE TIME HOWEVER I WAS ON A SLIGHT DOWNHILL SO DIDN'T RAPIDLY LOSE SPEED.
HYUNDAI CARPROS IN RENTON REPORTED THAT THE PISTON HAD FAILED AND HAD PUNCTURED THE ENGINE CASING.

**October 3, 2016 NHTSA ID NUMBER: 10911312**
TRAVELING STRAIGHT ON INTERSTATE, SPONTANEOUSLY LOST ALL POWER TO VEHICLE AFTER A LOUD METAL CRUNCHING SOUND. HARDLY WAS ABLE TO DRIFT OUT OF INTERSTATE TRAFFIC ON TO SHOULDER OF ROAD. I WAS UNABLE TO TURN IGNITION OVER, OIL AND ENGINE CAUTION LIGHTS WERE ON. NO VISIBLE ISSUES OR LEAKS FROM ENGINE.
ONE OWNER VEHICLE, TRAVELED MOSTLY HIGHWAY MILES, HAD REGULAR MAINTENANCE FROM DEALER SHIP WHERE PURCHASED FROM, AND ONLY HAD 70776 MILES ON A 2012 MODEL.

**April 11, 2017 NHTSA ID NUMBER: 10971922**
WHILE DRIVING --LOUD KNOCKING NOISE IN THE ENGINE. WAS DIAGNOSED BY DEALER AS HAVING WORN ROD/CRANKSHAFT;METAL DEBRIS IN OIL PAN -- IF CONTINUING TO DRIVE, THEN WARNED TO CAUSE ENGINE FAILURE AND SHUTDOWN. THIS SAME PROBLEM RECEIVED A RECALL IN SONATAS, BUT NOW IS HAPPENING WITH THE TUCSONS.

**June 25, 2019 NHTSA ID NUMBER: 11222384**
TL* THE CONTACT OWNS A 2012 HYUNDAI TUCSON. THE CONTACT RECEIVED A NHTSA CAMPAIGN NUMBER : 19V063000 (ENGINE AND ENGINE COOLING). THE CONTACT STATED THAT WHILE DRIVING AT 65 MPH, HE HEARD AN EXPLOSION IN THE ENGINE AND THE POWER BRAKES STOPPED WORKING. THE ENTIRE PANEL ILLUMINATED AND THE CONTACT PULLED THE VEHICLE OVER. THE VEHICLE WAS SMOKING AND THE CONTACT HAD TO BE HELPED OUT OF THE VEHICLE BY A PASSER BY. THE ENTIRE VEHICLE ENGULFED IN FLAMES. THE FIRE WAS FROM THE FRONT OF THE VEHICLE BY THE ENGINE AND WENT TO THE REAR PASSENGER DOORS. THERE WERE NO INJURIES. A POLICE AND FIRE REPORT WERE COMPLETED AND THE FLAMES WERE FINALLY PUT OUT BY THE FIRE COMPANY. THE DEALER KEY HYUNDAI 4660 SOUTHSIDE BLVD #100, JACKSONVILLE, FL 32216 (904) 642-6060 WERE EMAILED BY THE CONTACT TO TRY TO ARRANGE TO HAVE THE VEHICLE TOWED TO THEIR LOCATION FOR A DIAGNOSIS. THE MANUFACTURER WAS NOT YET CONTACTED. THE FAILURE MILEAGE WAS 134,000.

**January 19, 2021 NHTSA ID NUMBER: 11388898**
WHILE ACCELERATING ONTO THE HIGHWAY, A CLICKING OR CLACKING NOISE WAS HEARD FROM THE ENGINE, THE VEHICLE THEN SEEMED TO SUDDENLY LOOSE POWER THEN STALL. I WAS FORTUNATE TO BE ABLE TO COAST THE VEHICLE OFF THE ROAD AND INTO A PARKING LOT. WITH THE VEHICLE PARKED, FOUND OIL POURING FROM UNDER THE ENGINE AND ALSO SAW A LONG TRAIL OF OIL LEADING FROM THE HIGHWAY TO THE VEHICLE. ALSO FOUND METAL SHAVINGS IN THE OIL AND DEBRIS FROM THE BROKEN ENGINE BLOCK CAUGHT IN THE PLASTIC SHROUD UNDER THE ENGINE.

## 2013 Hyundai Tucson

**April 17, 2017 NHTSA ID NUMBER: 10978772**
TL* THE CONTACT OWNS A 2013 HYUNDAI TUCSON. WHILE DRIVING VARIOUS SPEEDS, THE VEHICLE STALLED AND THE ENGINE SEIZED WITHOUT WARNING. THE VEHICLE WAS TAKEN TO THE DEALER, BUT THE CAUSE OF THE FAILURE COULD NOT BE DUPLICATED. THE VIN WAS NOT INCLUDED IN NHTSA CAMPAIGN NUMBER: 17V226000 (ENGINE). THE MANUFACTURER WAS MADE AWARE OF THE FAILURE AND INFORMED THE CONTACT THAT NOTHING COULD BE DONE TO ASSIST. THE FAILURE MILEAGE WAS APPROXIMATELY 61,000.

**May 20, 2017 NHTSA ID NUMBER: 10990692**
I OWN A 2013 HYUNDAI TUCSON WITH 70,000 MILES ON IT. I MAINTAIN IT PROPERLY, USE SYNTHETIC OIL REGULARLY, BUT THE ENGINE SEIZED YESTERDAY WHILE DRIVING ON THE PENNSYLVANIA TURNPIKE. HYUNDAI KNOWS THEY HAVE A PROBLEM WITH THEIR ENGINES AND I AM HOPING MY ACTION TODAY WILL LEAD TO A RECALL OF THIS TYPE OF VEHICLE.

**June 7, 2017 NHTSA ID NUMBER: 10993737**
TL* THE CONTACT OWNS A 2013 HYUNDAI TUCSON. WHILE DRIVING APPROXIMATELY 65 MPH, THERE WAS A KNOCKING NOISE COMING FROM THE FRONT PASSENGER SIDE OF THE ENGINE COMPARTMENT WHILE ACCELERATING. THE ENGINE SEIZED WITHOUT WARNING. THE CONTACT COASTED THE VEHICLE TO THE SIDE OF THE ROAD AND ATTEMPTED TO START THE ENGINE, BUT IT FAILED. THE VEHICLE WAS TOWED TO THE DEALER (HEADQUARTERS HYUNDAI LOCATED AT 3775 N US HIGHWAY 17-92, SANFORD, FL, 32773) WHERE IT WAS DIAGNOSED THAT THE SECOND BEARING MELTED AND THE ENTIRE ENGINE NEEDED TO BE REPLACED. THE DEALER INFORMED THE CONTACT THAT THE VEHICLE WAS OUT OF WARRANTY AND COULD NOT BE SERVICED. THE VEHICLE WAS NOT REPAIRED. THE VIN WAS NOT INCLUDED IN NHTSA CAMPAIGN NUMBER: 17V226000 (ENGINE AND ENGINE COOLING). THE MANUFACTURER WAS NOTIFIED. THE APPROXIMATE FAILURE MILEAGE WAS 95,000.

**August 8, 2018 NHTSA ID NUMBER: 11118639**
AT HIGHWAY SPEED VEHICLE BEGAN TO SHUDDER THEN LOUD
"CLUNK" AND LOST POWER. SMALL ENGINE COMPARTMENT FIRE
DEVELOPED BUT THEN THANKFULLY WENT OUT. VEHICLE WAS
TOWED TO NEAREST SHOP WHICH INFORMED US THAT VEHICLE
HAD THROWN A ROD AND WILL REQUIRE ENGINE REPLACEMENT.
VEHICLE HAS NOW BEEN TOWED TO NEAREST HYUNDAI DEALER
THAT "WILL GO TO BAT TO TRY AND GET HYUNDAI TO FIX". WE
ARE NOT THE ORIGINAL OWNERS OF VEHICLE SO APPARENTLY
THE 10/100 DOES NOT APPLY. VEHICLE HAS BEEN MAINTAINED
PROPERLY. NEED TO KNOW WHAT TO DO OR WHO TO
COMMUNICATE WITH TO GET HYUNDAI TO RECOGNIZE THIS
PROBLEM.

**April 9, 2021 NHTSA ID NUMBER: 11407201**
I WAS DRIVING AT HIGH SPEED OF 55 MPH AND EXPERIENCED A
HIGH-SPEED STALL ON MY 2013 HYUNDAI TUSCON. I HEARD A
KNOCKING SOUND AND THEN ALL MY LIGHTS CAME ON
(OIL,ENGINE,ETC.). I WAS SO SCARED AND MADE IT TO THE
SHOULDER SAFELY. THANK GOD. I TRIED TO START THE CAR BUT
IT WOULDN'T START. I ALSO, SAW SMOKE SO I DIDN'T KNOW
WHAT WAS HAPPENING. SO I WAS STRANDED ON THE HIGHWAY
AND CALLED A TOW TRUCK AND THEY TOWED ME TO THE
MECHANICS SHOP IN MY TOWN. THE MECHANIC STATED TO ME
THAT THERE IS OIL LEAKING UNDERNEATH AND THAT MY ENGINE
IS SHOT! I HAVE ALWAYS TAKEN VERY CARE OF MY VEHICLE, I
STILL HAVE TWO YEARS OF CAR PAYMENTS ON IT! HE SAID IT
LOOKS LIKE A ROD BROKE AND THERE IS A HOLE IN MY ENGINE!
ALSO, SOME KIND OF METAL DEBRIS IN MY OIL. SO GLAD I AM
SAFE AND MY 9 YEAR OLD DAUGHTER IS SAFE. I AM SO UPSET.
VERY SCARY SITUATION. STAY SAFE WITH THESE VEHICLES
EVERYONE. NOT GOOD...

<u>**2016 Hyundai Tucson**</u>

**December 1, 2017 NHTSA ID Number: 11052577**
MY CAR TURNED OFF TWICE WHILE DRIVING WITH NO
INDICATORS LIGHTING UP. I WAS GOING TO TAKE IT FOR OIL
CHANGE CLOSER TO MY WORK; BUT HAD TO PULL OVER THE
VEHICLE STARTED TO KNOCK AGAIN NO INDICATORS CAME ON. I
FINALLY GET TO A DEALERSHIP FOR KIA AND AGENT TOLD ME

THEY HAD TO CHECK FOR RECALLS ON THE ENGINE BECAUSE
PAST CARS LIKE 2014,2015,2016 ALL HAD ENGINE TROUBLE. THEN
TOLD ME ENGINE IS KNOCKING AND I SHOULD PARK IT TO AVOID
FURTHER DAMAGE . I TOLD HIM BUT CAR IS ONLY A YEAR OLD.
BOUGHT IT IN 2016 BRAND NEW; BUT BECAUSE OF MY
NEGLIGENCE OF GETTING THE OIL CHANGE ON TIME; I HAVE TO
COVER MY OWN REPAIRS.---AGAIN NO INDICATOR TELLING ME ITS
OUT OF OIL OR RUNNING HOT CAME ON.

**April 11, 2018 NHTSA ID Number: 11164324**
HYUNDAI TUCSON ENGINE THE VEHICLE IS BURNING EXCESS
AMOUNTS OF OIL. THE RATE OF ENGINE OIL LOSS IS OVER ONE
QUART PER 500 MILES. MY MECHANIC TELLS ME HIS EVALUATION
IS THE VEHICLE'S TURBO UNIT CAUSES THE ENGINE TO RUN VERY
HOT, AND THE INTERNAL SEALS ARE BREAKING DOWN, CAUSING
OIL TO MIX WITH THE FUEL. THE SOLUTION IS AN ENGINE
REBUILD, WHICH WILL COST OVER $3,000. SUCH A REBUILD WILL
RESULT IN THE SAME ISSUE ARISING AGAIN AFTER THE VEHICLE
IS IN USE FOR A PERIOD OF TIME. THE MANUFACTURER HAS
REFUSED TO ADDRESS THE ISSUE, AS I HAVE CORRESPONDED
WITH THEM ABOUT IT. THE ISSUE IS GENERIC TO ALL HYUNDAI
TUCSONS WITH 1.6 LITRE TURBOCHARGED ENGINE. MY MECHANIC
HAS RESEARCHED THE ISSUE, AND SAYS IT OCCURS IN ALL
HYUNDAI TUCSON VEHICLES WITH THIS ENGINE CONFIGURATION.
THERE ARE OTHER ISSUES RELATED TO BUILD QUALITY,
TRANSMISSION, AND OTHER COMPONENTS, BUT THIS ISSUE OF
THE DEFECTIVE ENGINE DESIGN IS OBVIOUSLY THE MOST
IMPORTANT. THE DEALER THAT SOLD ME THIS VEHICLE KNEW OF
THIS CONDITION AND DID NOT DISCLOSE IT AT THE TIME OF SALE,
AND REPRESENTED THAT THE ENGINE WAS IN SOUND WORKING
ORDER. *DT*JB

**June 24, 2018 NHTSA ID Number: 11114946**
THE ENGINE OIL PRESSURE WARNING LIGHT TURNED ON
WITHOUT ANY AUGURIES WHILE DRIVING ON A HIGHWAY. WE
PULLED OVER THE CAR AS SOON AS POSSIBLE, BUT THE CAR
COULD NOT BE STARTED AGAIN AFTER WE TURNED OFF THE
ENGINE. WE HAD THE CAR TOWED TO A HYUNDAI DEALERSHIP,
AND THEN WE WERE TOLD THE ENGINE WAS SEIZED AND NEEDED
TO BE REPLACED. WHEN WE ASKED HOW IT HAPPENED, THEY
TOLD US THAT OUR ENGINE OIL PLUG WAS MISSING, SO ALL THE

ENGINE OIL WAS DRAINED OUT. THEY CHECKED OUR MAINTENANCE RECORD, AND FOUND THAT WE HAD AN OIL CHANGE THREE MONTHS BACK AT ANOTHER HYUNDAI DEALERSHIP. WE WERE TOLD THAT IT COULD BE POSSIBLE THAT THE ENGINE OIL PLUG WAS NOT PROPERLY INSTALLED DURING LAST MAINTENANCE SERVICE, BUT THEY WERE NOT SURE ABOUT IT, AFTER ALL IT HAD BEEN 3 MONTHS NOT 30 MINUTES SINCE THEN. WE WERE NEVER GIVEN A SURE REASON FOR WHAT HAPPENED TO THE CAR, BUT THE ENGINE REPLACEMENT WAS TAKEN CARE OF BY HYUNDAI WARRANTY. PERSONALLY I DON'T THINK THE 'MAINTENANCE MISTAKE' HYPOTHESIS MAKE SENSE. WE DID NOT DRIVE THIS CAR DAILY, MAXIMUM AVERAGE USAGE WAS ABOUT WEEKLY, BUT LONG DISTANCE MOST TIMES. IF THE PLUG WAS LOOSE DUE TO THE MAINTENANCE, WE SHOULD HAVE A PROBLEM SOONER UNLESS THE OIL DOESN'T DRAIN WHEN A CAR IS PARKED. IN ADDITION, IT COULD NOT BE SOMEONE LOOSE THE PLUG AT A PARKING LOT ON PURPOSE EITHER. BECAUSE WHEN WE DROVE THE CAR OUT, WE DID NOT NOTICE ANY OIL TRACE ON THE GROUND, AND WE HAD BEEN CONTINUOUSLY DRIVING THIS CAR FOR ABOUT 2 HOURS BEFORE THE ENGINE FAILURE HAPPENED. THE MOST POSSIBLE REASON THAT I COULD THINK OF IS THE ENGINE WAS DEFECTIVE. I AM HOPING THIS ISSUE CAN BE BROUGHT INTO A FORMAL INVESTIGATION, BECAUSE IT COULD LEAD TO VERY SERIOUS CONSEQUENCES.

**March 25, 2019 NHTSA ID Number: 11203826**
I GO TO START MY CAR IN THE MORNING AND IT IS MAKING A LOUD TAPPING NOISE THE VEHICLE WAS STATIONARY IN MY DRIVEWAY. BUT AS IT WARMED UP IT WENT AWAY SO I CONTINUED TO DRIVE TO WORK IT WAS FINE ALL DAY BUT I FIGURED I WOULD LET THE DEALERSHIP TAKE A LOOK AT IT SINCE IT'S WASNT A PLEASANT NOISE. I DROP THE VEHICLE OFF AND THEY SAID THE OIL IS EXTREMELY LOW (I'VE ONLY HAD THIS CAR FOR ABOUT A MONTH) I HAD BOUGHT IT FROM A DEALERSHIP SO I ASSUMES ALL THE FLUIDS WOULD BE FINE UNTIL I NEEDED AN OIL CHANGE. WELL THEY CONTINUED WITH THE OIL CHANGE AND FOUND METAL SHAVINGS IN THE OIL PAN THEY THEN DROPPED THE OIL PAN AND FOUND METAL CHUNKS. THEY TOLD ME THE VEHICLE IS STILL UNDER THE BUMPER TO BUMPER WARRANTY AND THAT THE ENGINE NEEDED TO BE REPLACED. I THEN ASKED AROUND ABOUT WHY A VEHICLE THIS NEW WOULD

NEED THE ENGINE REPLACED AND THEY SAID THAT HYUNDAI
HAS A RECALL OUT FOR THOSE ENGINES THAT THEY TEND TO
FAIL BUT I CAN NOT FIND ANYWHERE THAT MY VEHICLE HAS A
RECALL. THIS HAS BEEN THE MOST INCONVENIENT PROCESS THE
DEALERSHIP HAS HAD MY CAR FOR ABOUT A MONTH AND DO NOT
EVEN HAVE A ETA FOR WHEN THE ENGINE WILL COME IN.

### 2017 Hyundai Tucson

**October 23, 2017 NHTSA ID Number: 11035690**
ENGINE FIRE. PULLING INTO OUR DRIVEWAY THE CAR WAS
STOPPED IN FRONT OF OUR GARAGE. SMOKE WAS ISSUING FROM
UNDER THE HOOD. OPENING THE HOOD REVEALED A FIRE FROM
UNDER THE ENGINE TOP COWLING AND ON THE FELT HOOD LINER.
A FIRE EXTINGUISHER (A,B,C) IN THE GARAGE WAS USED TO
QUICKLY EXTINGUISH THE FIRE. THE FIRE DID NOT SPREAD
BEYOND THE ENGINE COMPARTMENT.

**November 2, 2018 NHTSA ID Number: 11171387**
THIS CAR WORKED FINE UNTIL IT DIED ON THE FREEWAY AT 60
MILES PER HOUR ONE EVENING. I WAS ABLE TO RESTART IT AND
MAD IT 3 MORE MILES TO HOME. NEXT DAY IT WOULD NOT START
AND WAS TOWED TO DEALER AND DEALER SAYS THE ENGINE IS
BAD AND OIL IS SLUDGY DUE TO LACK OF MAINTENANCE AND IT
IS NOT COVERED UNDER WARRANTY. CAR HAS 30,000 MILES AND
HAS HAD 4 OIL CHANGES AND WAS DUE FOR NEXT OIL CHANGE.

**January 11, 2019 NHTSA ID Number: 11173612**
AS I WAS DRIVING, THE CAR BEGAN TO SLOW DOWN SO I PULLED
OVER AND THE ENGINE TURNED OFF. IT WOULDN'T TURN BACK
ON. LIGHTS, RADIO, HEAT-ALL WORKING BUT THE ENGINE
DOESN'T START. WE HAVE IT TOWED TO THE DEALER AND THEY
SAY THE ENGINE SEIZED UP ON US. IT WILL BE REPLACED
BECAUSE IT IS UNDER WARRANTY BUT IT WILL TAKE 1-2 MONTHS
FOR A NEW ONE TO COME IN. APPARENTLY HYUNDAI IS AWARE
OF THE ISSUE AND IS REDESIGNING THE ENGINES TO FIX THE
PROBLEM. HOW MANY TIMES DOES THIS HAVE TO HAPPEN
BEFORE THEY ARE RECALLED? WHAT IF YOU ARE ON THE
HIGHWAY AND YOUR CAR SHUTS OFF? NO PRIOR WARNING,
NOTHING. THEY TRIED TO GIVE US THE SAME BOLOGNA ABOUT

ENGINE MAINTENANCE AND OIL CHANGES. THIS IS A SERIOUS DESIGN FLAW.

**September 15, 2019 NHTSA ID Number:** 11269357
DRIVING ABOUT 25 MPH TURNING INTO A PARKING LOT THE VEHICLE JERKED FORWARD, THEN JUST STALLED. I BARELY GOT IT OFF THE ROAD AND FINALLY HAD BYSTANDERS HELP PUSH ME OFF. IT WAS TOWED TO LOCAL HYUNDAI DEALER AND AFTER REVIEW, THEY STATED SOMETHING ABOUT DEBRIS MELTED AND GOT INTO THE ENGINE, WHICH DESTROYED THE ENGINE. WAS UNDER FULL WARRANTY AND NOW IT'S BEEN 30 DAYS I'VE BEEN WITHOUT MY VEHICLE.

**December 31, 2019 NHTSA ID Number: 11292362**
TL* THE CONTACT OWNED A 2017 HYUNDAI TUCSON. WHILE DRIVING 20-25 MPH DOWN A ROAD PREPARING TO MERGE, THE VEHICLE STALLED AND CONTINUED TO ROLL FORWARD. THE CONTACT ATTEMPTED TO RESTART THE VEHICLE BUT FAILED. THE CONTACT NOTICED WHITE SMOKE AND STOPPED THE VEHICLE BY ENGAGING THE EMERGENCY BRAKE. THE CONTACT GATHERED SOME OF HER BELONGINGS AS THE SMOKE TURNED GRAY AND GOT 20 FEET AWAY FROM THE VEHICLE. THERE WERE FLAMES NOTICED COMING FROM UNDER THE HOOD. A BYSTANDER ATTEMPTED TO EXTINGUISH THE FIRE WITH A FIRE EXTINGUISHER MEANWHILE THE FIRE DEPARTMENT ARRIVED TO THE SCENE. THE FIRE DEPARTMENT EXTINGUISHED THE FIRE. THE CONTACT SUSTAINED POST TRAUMATIC STRESS DISORDER DUE TO THE INCIDENT. A POLICE REPORT WAS FILED. THE CONTACT ALSO MENTIONED THAT HER CHILD WOULD RIDE IN THE REAR OF THE VEHICLE AND THE SAFETY SEAT WAS DESTROYED DURING THE FIRE. THE CHILD WAS NOT PRESENT AT THE TIME OF THE FAILURE. THE CONTACT STATED THAT THE VEHICLE WAS REPAIRED PER NHTSA CAMPAIGN NUMBER: 17V226000 (ENGINE) BY ROUTE 2 HYUNDAI DEALER (743 NORTH MAIN STREET, LEOMINSTER, MA 01453, (978) 534-9999) IN MAY OF 2019 DUE TO THE INITIAL FAILURE IN JANUARY OF 2019 WHERE THE ENGINE BLEW UP. THE DEALER REPLACED THE ENGINE, BUT THE FAILURE REOCCURRED WHICH LEAD TO THE ENTIRE VEHICLE CATCHING ON FIRE MOST RECENT. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE VEHICLE WAS DESTROYED AND TOWED

AWAY. THE FAILURE MILEAGE WAS 118,000. THE VIN WAS UNKNOWN.

## 2018 Hyundai Tucson

**October 12, 2019 NHTSA ID Number: 11268441**
THE CAR STARTED MAKING A LOUD NOISE MY OIL LAMP LIGHT STARTED FLASHING, AFTER I STOPPED AT A RED LIGHT I ACCELERATED THEN MY ALTERNATOR LIGHT CAME ON THE CAR DIED. WITHIN SECONDS MY CAR STARTED SMOKING A WHITE COLOR LIGHTLY AND THEN WITHIN MINUTES THE SMOKE TURNED BLACK AND HEAVY THEN CAR CAUGHT ON FIRE.

**November 13, 2019 NHTSA ID Number: 11289665**
I GET OIL CHANGES QUITE FREQUENTLY DUE TO THE MILEAGE I PUT IN A VEHICLE. I HAVE 7 OIL CHANGES/TIRE ROTATIONS BETWEEN NOVEMBER 2018 AND NOVEMBER 2019. ON NOVEMBER 13TH 2019 MY CHECK ENGINE LIKE CAME ON AND AT THE SAME TIME MY ENGINE STARTED MAKING A KNOCKING SOUND. PRIOR TO THIS I HAD NO INDICATORS THAT ANYTHING WAS WRONG. I IMMEDIATELY TOOK IT TO THE DEALERSHIP AND WAS INFORMED THAT I NEED A NEW ENGINE AND THAT IT'S NOT COVERED UNDER THE WARRANTY SINCE I AM THE SECOND OWNER. AND THAT IT'S GOING TO COST ABOUT $10,000 FOR A NEW ENGINE WHICH INCLUDES LABOR. DID I MISS SOMETHING HERE. MY CAR IS MY LIVELIHOOD AND I HAVE GOTTEN EVERY REQUIRED MAINTENANCE. THEY SAID MY CAR IS BURNING THROUGH OIL AT A HIGH RATE OF SPEED. THERE WERE ZERO SIGNS OF AN OIL LEAK AND EVERYTHING LOOKED FIND OTHER THAN THE VEHICLE HAD NO OIL. WHY DIDN'T MY VEHICLE ALERT ME OF THIS. WHY WASN'T THERE ANY INDICATION UNTIL IT WAS TOO LATE. WHERE THE HELL DID ALL THE OIL GO?? NOW I'M STUCK WITH A HIGH CAR PAYMENT FOR A VEHICLE I CAN NOT EVEN DRIVE PLUS BECAUSE I NEED MY CAR FOR MY WORK I HAD TO BE LET GO FROM MY JOB. CAN'T WORK WITHOUT A VEHICLE CAN PAY FOR $10,000 IN REPAIRS WITHOUT A JOB AND CAN'T PAY MY CAR PAYMENT WITHOUT WORKING. I DON'T KNOW WHAT TO DO. THIS IS JUST RIDICULOUS ESPECIALLY SINCE I HAVE DONE EVERYTHING HYUNDAI SUGGESTS AS FAR AS MAINTENCE (FREQUENT OIL CHANGES AND SYSTEMS CHECKS ON A REGULAR

BASIS. HYUNDAI SAYS 'SORRY THERE'S NOTHING WE CAN DO FOR YOU, YOU HAVE TO PAY TO REPLACE THE ENGINE.'.

**April 5, 2020 NHTSA ID Number: 11320680**
I HAVE A 2018 HYUNDAI TUCSON AND IT CUT OFF ON ME WHILE RETURNING HOME FROM OUT OF TOWN ON 4/5/2020 ON 495 CAPITAL BELTWAY. WHITE SMOKE STARTED COMING OUT THE TAILPIPE SO I PULLED OVER AND CUT THE TRUCK OFF, I TRIED TO RESTART AND IT WOULDN'T TURN OVER, ALL OF THE DASH LIGHTS LIT UP, I HAD TO CALL AAA TO TOW ME HOME, THE TOW DRIVER NOTICED OIL UNDER THE TRUCK AND EVEN AFTER HE TOWED ME AND PUT MY TRUCK ON THE STREET THERE WAS OIL ON HIS FLATBED. THIS TRUCK HAS A DEFAULT WITH THE OIL PLUG OR SOMETHING, I KEEP UP ON MY OIL CHANGES EVERY 3 MONTHS, THERE WAS NO WARNING ON THE DASH ABOUT LOW OIL OR ANYTHING BEFORE IT STARTED SMOKING. SOMETHING IS WRONG WITH HOW THIS TRUCK BURNS OIL AND IT NEEDS TO BE INVESTIGATED. NOW I HAVE A TRUCK SITTING THAT I CAN;T DRIVE AND STILL HAVE TO PAY A CAR NOTE ON. *TR

**July 22, 2020 NHTSA ID Number: 11351329**
VEHICLE CAUGHT FIRE WHILE DRIVING ON THE HIGHWAY.

## 2015 Hyundai Veloster

**February 26, 2018 NHTSA ID Number: 11110447**
TL* THE CONTACT OWNED A 2015 HYUNDAI VELOSTER. WHILE DRIVING 60 MPH, THE CONTACT NOTICED SMOKE UNDER THE PASSENGER SIDE DASHBOARD. THERE WERE NO WARNING INDICATORS ILLUMINATED. THE CONTACT WAS ABLE TO COAST THE VEHICLE TO THE SIDE OF THE ROAD AS THE ENGINE STALLED. THE CONTACT OPENED THE HOOD AND OBSERVED FLAMES AROUND THE ENGINE COMPARTMENT. THE FIRE DEPARTMENT WAS CALLED AND EXTINGUISHED THE FIRE. A POLICE REPORT WAS FILED AND THERE WERE NO INJURIES. THE VEHICLE WAS DESTROYED AND TOWED. THE DEALER WAS NOT CONTACTED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. THE VIN WAS INVALID. THE FAILURE MILEAGE WAS APPROXIMATELY 53,000.

**March 14, 2020 NHTSA ID Number: 11378128**

I HAD PROBLEMS WITH MY ENGINE. FOUND OUT THE ROD BEARING WAS GONE. CALL HYUNDAI AND POWER TRAIN WARRANTY EXPIRE WEEKS BEFORE IT HAPPENED. HAD TO SWAP ENGINES ON THE CAR BECAUSE IT WAS BAD. ALWAYS HAD PROBLEMS WITH THE ENGINE BURNING OIL REALLY BAD. I ALSO HAD PROBLEMS WITH THE TRANSMISSION GEARS DROPPING OUT OF NO WERE. LAST TIME IT HAPPENED WHEN I WHEN TO MAKE A RIGHT TURN AND SHIFT IT INTO 2ND GEAR AND WHEN IT SHIFT TO 3RD IT DROP TO 1. THANKFULLY THERE WASN'T ANY OTHER CAR BEHIND ME. IT WOULD OF DEFINITELY COST AN ACCIDENT AND HAD MY 1 YEAR OLD WITH ME. I TALK TO HYUNDAI AND TOLD ME THEY COULDN'T DO MUCH ABOUT IT BECAUSE THEY DIDN'T KNOW ABOUT ANYONE ELSE WITH SAME ISSUES.

**September 17, 2020 NHTSA ID Number: 11360200**

DRIVING ON MAJOR HIGHWAY, CAR LOST POWER. STEPPING ON THE GAS WOULD NOT ALLOW THE CAR TO MOVE. CAR IS NO LONGER ABLE TO BE DRIVEN AND HAD TO BE TOWED TO DEALERSHIP. WE ARE BEING TOLD THE ENGINE IS BAD AND NEEDS TO BE REPLACED. THE ONLY DETAIL IS THERE IS A NOISE. THIS IS SIMILAR TO THE SAME PROBLEM AS THE EARLIER YEAR VEHICLES. THIS IS A HUGE SAFETY CONCERN AND LUCKILY NOBODY WAS INJURED AND THERE WAS NO CRASH OR FIRE. IT HAS TAKEN 4 DAYS TO GET A DIAGNOSTIC FROM HYUNDAI. THEY WILL NOT AUTHORIZE A RENTAL UNTIL WARRANTY WORK IS AUTHORIZED BY HYUNDAI, WHICH COULD TAKE ANOTHER THREE TO FOUR DAYS. CONSIDERING THE SERVICE DEPT IS TRYING TO GO THROUGH HYUNDAI FOR WARRANTY INSTEAD OF THE EXTENDED WARRANTY COMPANY LEADS ME TO BELIEVE THERE IS SOMETHING BIGGER THAT THEY ARE NOT BEING TRANSPARENT ABOUT. I REGRET BUYING THIS CAR.

**January 11, 2021 NHTSA ID Number: 11397275**

TL* THE CONTACT OWNS A 2015 HYUNDAI VELOSTER. THE CONTACT STATED THAT WHILE DRIVING 60 MPH, THERE WAS AN ABNORMAL KNOCKING SOUND DETECTED. THE CHECK ENGINE WARNING LIGHT WAS FLASHING. THE VEHICLE WAS TAKEN TO BOB BELL HYUNDAI (7117 RITCHIE HWY, GLEN BURNIE, MD 21061, (410) 766-3600) TO BE DIAGNOSED. THE CONTACT WAS INFORMED THAT THE ENGINE NEEDED TO BE REPLACED. THE VEHICLE WAS

NOT REPAIRED. THE CONTACT STATED THAT THE FAILURE WAS SIMILAR TO NHTSA CAMPAIGN NUMBER: 20V746000 (ENGINE). THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 124,000. *DT*JB

## 2016 Hyundai Veloster

**April 22, 2020 NHTSA ID Number: 11378055**
IS BURNING TO MUCH OIL AND MOSTLY TIMES SMOKE MY CAR JUST HAVE 110,543 MILES...

**November 13, 2020 NHTSA ID Number: 11378264**
I WAS DRIVING THE CAR WHEN IT STARTED SMOKING AND THEN SHUT OFF WHILE I WAS DRIVING STRAIGHT DOWN HIGHWAY 195 IN TEXAS. THE CAR WAS TOWED TO EUROPE SERVICES IN KILLEEN, TX AND WE WERE TOLD THAT THE ENGINE IS BLOWN OUT. WE ARE UNABLE TO FIND A NEW ENGINE ANYWHERE. I LOOKED ONLINE AND SAW THAT THE YEAR, MAKE AND MODEL OF MY CAR HAD A RECALL WITH PREMATURE ENGINE ISSUES.

**January 15, 2021 NHTSA ID Number: 11389833**
TL* THE CONTACT OWNS A 2016 HYUNDAI VELOSTER. THE CONTACT STATED WHILE DRIVING 60 MPH, THE VEHICLE DECELERATED INDEPENDENTLY WITH THE CHECK ENGINE WARNING LIGHT ILLUMINATED. THE CONTACT PARKED THE VEHICLE ON THE SIDE OF THE ROADWAY AND THEN HAD IT TOWED TO AN INDEPENDENT MECHANIC TO BE DIAGNOSED. THE CONTACT WAS INFORMED THAT THE ENGINE NEEDED TO BE REPLACED. THE VEHICLE WAS NOT REPAIRED. THE CONTACT BECAME AWARE THAT THE VIN WAS INCLUDED IN NHTSA CAMPAIGN NUMBER: 20V746000 (ENGINE) HOWEVER, THE PART TO DO THE RECALL REPAIR WAS NOT YET AVAILABLE. THE VEHICLE WAS TAKEN TO TEMECULA HYUNDAI (27430 YNEZ RD, TEMECULA, CA 92591, (951)699-6807) WHERE IT WAS CONFIRMED THAT THE PART WAS NOT YET AVAILABLE. THE CONTACT STATED THAT THE MANUFACTURER HAD EXCEEDED A REASONABLE AMOUNT OF TIME FOR THE RECALL REPAIR. THE MANUFACTURER WAS NOT MADE AWARE OF THE ISSUE. THE APPROXIMATE FAILURE MILEAGE WAS 81,500. VIN TOOL CONFIRMS PARTS NOT AVAILABLE.

### 2010 Kia Forte

**March 25, 2014 NHTSA ID NUMBER: 10574780**
TL\* THE CONTACT OWNS A 2010 KIA FORTE. THE CONTACT STATED THAT THERE WAS A LOAD KNOCKING IN THE ENGINE. THE VEHICLE WAS TAKEN TO THE DEALER, WHO DIAGNOSED THAT THE VEHICLE EXHIBITED A ROD KNOCK AND RECOMMENDED HAVING THE ENGINE REPLACED. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS NOTIFIED OF THE PROBLEM. THE APPROXIMATE FAILURE MILEAGE WAS 47,000

**July 7, 2014 NHTSA ID NUMBER: 10608579**
TL\* THE CONTACT OWNS A 2010 KIA FORTE. THE CONTACT STATED THAT WHILE DRIVING 40 MPH, THE ENGINE STALLED. THE CONTACT WAS ABLE TO RESTART THE VEHICLE BUT THE PROBLEM RECURRED SEVERAL TIMES. THE VEHICLE WAS TAKEN TO THE DEALER, WHO COULD NOT DUPLICATE THE FAILURE. THE VEHICLE HAD NOT BEEN REPAIRED. THE MANUFACTURER WAS NOT MADE AWARE OF THE PROBLEM. THE APPROXIMATE FAILURE MILEAGE WAS 43,000.

**March 8, 2016 NHTSA ID NUMBER: 10845617**
I HAVE KIA FORTE WHICH WAS RUNNING FINE. UNTIL I CHANGE THE STARTER THEN THE OIL WAS PUMPING TO THE ENGINE IT WOULD KNOCK LOUDLY & IF I WOULD ANY LONGER IT WOULD BLOW THE ENGINE.

**February 14, 2019 NHTSA ID NUMBER: 11180050**
2010 KIA FORTE; 113,000 MILES. CHECK ENGINE LIGHT CAME ON. CODE READ '3RD ENGINE BANK SENSORS.' DEALERSHIP DIAGNOSED THE PROBLEM AS 'KNOCKING RODS COMING APART INSIDE THE ENGINE.' THE DEALERSHIP CURRENTLY HAS TWO KIA FORTES IN THE SHOP WITH THE SAME MILEAGE AND PROBLEM. SEEMS LIKE A PATTERN.

**September 15, 2020 NHTSA ID NUMBER: 11355065**
I HAD A MILD ENGINE KNOCKING NOISE FOR A SEVERAL WEEKS, BUT JUST HAD AN OIL CHANGE A FEW DAYS PRIOR TO THE INCIDENT. I WAS DRIVING DOWN THE ROAD AND THE CAR SEEMED TO BE STRUGGLING TO SHIFT GEARS AND GO. I PULLED OVER AND HEARD TERRIBLE ROD KNOCKING AND ENGINE

CLANKING NOISES. I TURNED THE CAR OFF TO CALL MY FATHER AND ASK IF HE THOUGHT I COULD MAKE IT HOME, AND I AGREED TO ATTEMPT IT. WHEN I TURNED THE CAR BACK ON THE ROD KNOCKING WAS WORSE THAN BEFORE, IT MADE A VERY LOUD CLICKING NOISE WHEN I ACCELERATED, AND THE OIL LIGHT CAME ON. I GOT BACK ON THE ROAD AND THE ENGINE STALLED WITHIN MINUTES, IN THE MIDDLE OF A BUSY INTERSECTION.

### 2011 Kia Forte

**October 28, 2015 NHTSA ID NUMBER: 10786802**
TOOK MY 2011 KIA FORTE INTO THE KIA DEALERSHIP TODAY BECAUSE THE ENGINE IS MAKING A TICKING SOUND. I HAVE HAD TWO OTHER MECHANICS IN RECENT WEEKS TELL ME IT IS A SERIOUS PROBLEM WITH THE LIFTERS AND/OR THE PISTONS INSIDE THE ENGINE. THE KIA MECHANIC REFUSES TO ACKNOWLEDGE THERE IS A TICKING SOUND, BUT IN FORMED ME THE AIR BAG SENSOR IS MALFUNCTIONING AND I WILL HAVE TO PAY $1100 TO HAVE THE AIR BAG SENSOR REPAIRED BEFORE I CAN SELL THE CAR. ALSO, MY BRAKES WILL OCCASIONALLY MAKE A VERY LOUD 'THUMP' WHEN I APPLY THEM, BUT THE KIA DEALER CAN FIND NOTHING WRONG WITH THEM.

**September 21, 2016 NHTSA ID NUMBER: 10908482**
WHEN DRIVING STRAIGHT ALONG AN INTERSTATE WITH MY CRUISE CONTROL SET TO THE SPEED LIMIT, A LOUD BANG CAME FROM UNDER THE HOOD OF MY KIA, THE CHECK ENGINE INDICATOR TURNED ON, AND SMOKE BEGAN TO POUR OUT FROM UNDER THE HOOD AND INSIDE MY CAR THROUGH THE AIR VENTS. WHEN I PUSHED THE GAS PEDAL GENTLY, THERE WAS A LOW GUTTURAL NOISE AND MY CAR WAS NOT PICKING UP SPEED. I PUT MY CAR INTO NEUTRAL AND COASTED TO THE SHOULDER WITH LOW VISIBILITY AS THE SMOKE BECAME MORE DENSE AND DARKER IN COLOR. I BROUGHT MY VEHICLE TO A FULL STOP ON THE SHOULDER AND PUT IT INTO PARK BEFORE TURNING IT OFF AND REMOVING MY KEY FROM THE IGNITION. UPON EXITING THE CAR I NOTICED THE SMOKE WAS EVEN MORE INTENSE THAN BEFORE AND PROMPTLY CALLED 911 AND GAVE MY LOCATION AND SITUATION INFORMATION TO THE 911 REPRESENTATIVE. AS I WAS SPEAKING, I NARRATED IN HORROR AS FLAMES BECAME VISIBLE FROM UNDER THE CAR ITSELF AND UNDER THE HOOD AS

WELL, IN AS LITTLE AS ONE MINUTE AFTER EXITING MY CAR. BY THE TIME THE FIRE DEPARTMENT GOT TO THE VEHICLE, THE FLAMES WERE OVER 20 FEET TALL AND THE HEAT WAS UNBEARABLE; I RELOCATED MYSELF FARTHER AND FARTHER AWAY TO STAY COOL AND SAFE AS THE TIME WENT ON. NOBODY WAS BURNED, HURT, OR INJURED AS A RESULT OF THE INCIDENT, BUT ONLY MY MERE COINCIDENCE.

**February 2, 2018 NHTSA ID NUMBER: 11066683**
THE ENGINE IS MAKING A LOUD TICKING SOUND SO I BROUGHT IT TO THE DEALER THAT I PURCHASED IT FROM 11 MONTHS EARLIER. THEY TOLD ME THE ENGINE NEEDS TO BE REPLACED AND IT WILL COST ABOUT $7,000. I PAID $9,000 FOR THE CAR 11 MONTHS AGO AND IT ONLY HAS 77,000 MILES ON IT. I'VE LEARNED THROUGH SOME EXTENSIVE RESEARCH THAT KIA HAS RECALLED THE ENGINES IN SEVERAL OF THEIR OTHER MODELS. THIS RECALL WAS PUT INTO PLACE BECAUSE THE ENGINES ARE "STALLING" AND POSING A SAFETY HAZZARD. THIS CAR CAN NOT BE DRIVEN UNTIL THE ENGINE IS REPLACE. ALL SCHEDULED MAINTENANCE HAS BEEN PERFORMED AND THE ENGINE STILL GAVE OUT AT ONLY 77,000 MILES. THE DEALER IS BERLIN CITY IN GORHAM, NH. THE R.O. PRINT OUT OF CODES AND ISSUES WITH THE ENGINE IS HALF A PAGE LONG AND INCLUDES BLUE SMOKE FROM EXHAUST, MISSFIRING ON TWO CYLINDERS, KNOCKING, FLASHING "CHECK ENGINE LIGHT", LEAKING HEAD GASKET, ETC. MY RESEARCH SEEMS TO TELL ME THAT THIS MODEL LINE SHOULD BE ADDED TO THE RECALL LIST. SEEMS LIKE THE SAME ISSUES AS THE ENGINES WITH THE RECALL ARE HAVING.

**August 15, 2020 NHTSA ID NUMBER: 11349555**
ENGINE ISSUES! THIS ENGINE NEEDS TO BE RECALLED FOR SAFETY REASONS AND POSSIBLE LEMON. MY CAR HAS ONLY 106,890 MILES ON IT. THE ENGINE STARTED MAKING A TAPPING NOISE. THEN I STARTED TO HAVE A LOSS OF POWER WHEN ACCELERATING OR GOING UP HILL. HAD THE CODES READ AND IT SAID THE CRANKSHAFT POSITION SENSOR. REPLACED THAT. THEN IT STARTED TO IDLE ROUGH. HAD CODE READ AGAIN. IT SAID MAP SENSOR AND NUMBER 2 CYLINDER MISFIRE. REPLACED PLUGS, COILS, AND MAP SENSOR. NOW IT WON'T START. IT HAS NO SPARK. NOW IT IS SHOWING CODES FOR MAP SENSOR AGAIN. NUMBER 2 CYLINDER MISFIRE, THROTTLE ACTUATOR CONTROL SENSOR AND

THE POWER TRAIN CONTROL MODULE. AT JUST OVER 100,000 MILES THIS SHOULD NOT BE HAPPENING. OTHER MODEL CARS WITH THE SAME 2.0 ENGINE HAVE BEEN RECALLED. THE 2.0 ENGINE NEEDS TO ALSO BE RECALLED IN THE 2011 KIA FORTE KOUP EX. I'M NOT THE ONLY OWNER OF THIS MODEL CAR THAT HAS HAD MULTIPLE ISSUES AND OR TOTAL ENGINE FAILURE.

**February 17, 2021 NHTSA ID NUMBER: 11396697**
AFTER OWNING MY 2011 KIA FORTE FOR THE LAST 6 YEARS IT HAS DEVELOPED A TICKING SOUND IN THE ENGINE. IT IS VERY MILD WHILE IDLING, AND WHILE RPMS ARE UNDER 1500. AFTER RPMS GO PAST 2000 THE TICKING NOISE IS PROGRESSIVELY LOUDER. WHEN I BOUGHT THE CAR IT HAD ROUGHLY 85,000 MILES ON IT AND NOW HAS $125,000. I HAVE HAD REGULAR OIL CHANGES ON IT, EVERY 3000-5000 MILES. AFTER HEARING THE TICKING I TOOK IT IN TO MY MECHANIC WHO SAID THIS IS A REGULAR OCCURRENCE WITH KIA FORTES AND THAT THE ONLY FIX IS REPLACING OR REPAIRING THE ENGINE. I HAVE BEEN DOING A LOT OF RESEARCH AND READING A LOT OF COMPLAINTS ON THIS WEBSITE ABOUT KIA ENGINES GOING BAD AROUND 100,000 MILES AND I BELIEVE YOU SHOULD LOOK INTO KIA FOR THIS. THERE NEEDS TO BE A RECALL ON KIA'S ENGINES.

## 2012 Kia Forte

**October 17, 2012 NHTSA ID NUMBER: 10480912**
WE WERE DRIVING OUR 2012 KIA FORTE EX (SEDAN) WHICH WE HAD PURCHASED BRAND NEW IN DECEMBER 2011 TO THE STORE TO GET BREAD AND WERE ON OUR WAY HOME (ONLY ABOUT 2 MINUTES INTO THE DRIVE) WHEN WE SAW SMOKE COMING FROM THE FRONT OF THE CAR. WE PULLED OVER WITHIN ABOUT 50 FEET OF SEEING IT, PUT IT IN PARK- WHICH BY THE TIME WE DID SO, WE LOST ALL POWER AND COULDN'T EVEN GET THE KEY OUT OF THE IGNITION. WE GOT OUT AND MY BOYFRIEND TRIED TO POP THE HOOD BUT IT WAS ALREADY SO HOT HE COULDN'T DO IT... I RAN ABOUT 20 FEET AWAY FOR SAFETY REASONS, SO I AM NOT SURE WHERE IT STARTED, BUT WITHIN ABOUT 30 SECONDS, THE FLAMES CAME OUT OF THE SIDES AND FRONT OF THE HOOD. MY BOYFRIEND THINKS IT WAS ABOUT WHERE THE FUSE BOX IS, BECAUSE THAT IS WHERE HE NOTICED THE PAINT START TO

BUBBLE OFF. HE IS A MECHANIC AND HAS NEVER SEEN ANYTHING LIKE IT.

THE ENTIRE FRONT OF THE CAR, THROUGH THE DASH IS DISINTEGRATED. MY AIRBAGS MELTED AND POURED OUT OF THE DASH AND ROOF, UPHOLSTERY MELTED OFF THE SEATS, AND DOOR PANELS BUBBLED UP. ALL THE SPEAKERS BLEW AND MELTED.

IT HAPPENED SO QUICKLY, IF I HAD KIDS IN THE BACK OR COULDN'T HAVE PULLED OVER IN TIME, THERE COULD HAVE BEEN VERY SERIOUS INJURIES OR DEATHS. I AM VERY THANKFUL IT DIDN'T HAPPEN ON MY WAY TO WORK, AS I DRIVE IN TRAFFIC ON A HIGHWAY WITH NO SHOULDER.

I HAD NO ELECTRONIC MODIFICATIONS. IT WAS ENTIRELY STOCK, WITH THE EXCEPTION OF WINDOW TINT, EXHAUST, A LOWERING KIT, AND AFTERMARKET TIRES AND WHEELS--ALL WHICH WERE INSTALLED BY PROFESSIONALS. THE CAR HAD 8900 MILES ON IT AND ALL MAINTENANCE WORK HAD BEEN DONE. EVEN 3 OIL CHANGES- EVEN THOUGH KIA CLAIMS THE CAR CAN GO 7K WITHOUT ONE.

MY INSURANCE COMPANY IS GOING TO TREAT IT AS A TOTAL LOSS AND DO AN INVESTIGATION ON IT. KIA HAS A CASE GOING BUT HAVE NOT YET SENT AN ENGINEER OUT. *TR

**January 9, 2017 NHTSA ID NUMBER: 10943968**
DRIVING HOME ON CHRISTMAS DAY FROM MY PARENTS ON THE FREEWAY, HEARD A NOISE IN ENGINE IMMEDIATELY PULLED OVER. NOTICED THAT THE CAR WAS SMOKING. THE CAR WOULDN'T TURN OFF AND MY HUSBAND GOT OUT AND UPON OPENING THE HOOD OF THE CAR NOTICED IT WAS IN FLAMES. HE IMMEDIATELY YELLED FOR US TO ALL GET OUT OF THE CAR. AS WE STARTED RUNNING THE ENTIRE CAR WENT UP IN FLAMES. THANKFULLY WE GOT OUT WHEN WE DID, HOWEVER ALL OF MY CHILDREN'S CHRISTMAS GIFTS, ALL OF OUR BELONGINGS WEREN'T SO LUCKY. MY KIDS ARE TRAUMATIZED AND IN SHOCK. THE CAR ONLY HAD 40K MILES ON IT. RECENTLY HAD THE 35K SERVICE BY KIA AND NOTHING WAS WRONG WITH IT. YET THEIR WARRANTY MEANT NOTHING. THEY WON'T EVEN INSPECT THE CAR YET THEY DETERMINED THAT IT ISN'T THEIR PROBLEM. HOW DOES A RELATIVELY NEW CAR JUST BURN UP ?!?! *TR

**April 13, 2017 NHTSA ID NUMBER: 10972281**

MY WIFE AND I WERE PASSING ANOTHER VEHICLE GOING ABOUT 75MPH ON A HIGHWAY IN SOUTHEAST KANSASWHEN MY CAR ESSENTIALLY TURNED OFF. LUCKILY THERE WAS A SHOULDER TO PULL ONTO. TRIED JUMPING IT WITH NO LUCK. WE HAD IT TOWED TO A NEARBY TOWN TO A BODY SHOP WHO KEPT IT OVER THE WEEKEND TO TRY AND REPLICATE THE ISSUE. THIS WAS A FRIDAY AND WE RETURNED THAT FOLLOWING MONDAY TO PICK UP THE CAR. BODYSHOP STATED THEY COULD NOT GET THE CAR TO REPICATE WHAT HAD HAPPEND AND NOTHING FLASHED ON THE COMPUTER. WE DROVE IT IN THE TOWN A LITTLE BIT WITH NO ISSUES AND PROCEEDED HOME. WE WERE OUT OF THE TOWN ABOUT 10 MINUTES WHEN WE HEARD A SMALL KNOCKING THAT CONTINUED TO GET WORSE. WE PULLED OVER. WE CONTINUED DOWN THE ROAD TO THE NEXT TOWN WHICH WAS ABOUT 5 MILES AWAY TO A BODY SHOP. WE JUST GOT INTO TOWN WHEN THE CAR DIED AGAIN AS IF I TURNED THE CAR OFF. I MUSCLED THE CAR TO A PARKING LOT. TRIED TURNING THE CAR ON AGAIN AND ENGINE STARTED SMOKING. GOT IT TOWED BACK HOME TO A LOCAL BODY SHOP WHO LOOKED AT IT THE NEXT DAY TO INFORM ME I NEEDED A NEW ENGINE, MAIN WIRE HARNESS, AND STARTER. I CONTACTED KIA, EVENTHOUGH I WAS ONLY 11K MILES OVER WARRANTY, TO SEE WHAT COULD BE DONE. GOT IT TOWED TO A LOCAL KIA DEALERSHIP WHO LOOKED IT OVER AND FOUND LOTS A METAL IN THE OIL. THEY PUT A CLAIM IN WITH KIA WHICH THEY DENIED. I CALLED CUSTOMER SERVICE WHO THEN SENT IT TO THE DISTRICT MANAGER AND HE DENIED ANY HELP. IT THEN GOT ESCALATED TO A HIGHER DEPARTMENT AND THEY DENIED ANY HELP EITHER. PRIOR TO THIS I HAD NO ISSUES OR PROBLEMS WITH THE CAR.
DURING THE TIME I HAD MY CAR I HAD PROPER OIL CHANGES AND MAINTENANCE. THE CAR IS ONLY 5 YEARS OLD WITH ONLY 71,462 MILES ON IT AND NOW NEEDS A WHOLE NEW ENGINE. THANKFULLY THE TIMES IT STALLED, WHICH NO WARNING LIGHT EVER CAME ON NOR WAS THERE EVER A NOISE OF ANY KIND INDICATING ANYTING WAS WRONG, MY WIFE AND I WERE NOT IN A CRASH.

**February 26, 2020 NHTSA ID NUMBER: 11311653**
TURN ON THE CAR AND THE ENGINE STARTED MAKING A LOUD KNOCKING NOISE. I WAS TOLD THE ENGINE NEEDS TO BE

REPLACED. I HAVE ALWAYS TAKEN THE CAR IN FOR REGULAR
SCHEDULED OIL CHANGES AND MAINTENANCE SERVICES.

**January 2, 2021 NHTSA ID NUMBER: 11386061**
DEVELOPED A VERY SUBTLE TICKING NOISE IN 2018, HAPPENING
MOSTLY AT LOW SPEEDS, GONE AFTER WARM UP. TOOK IT TO
DEALERSHIP (NAPLETON'S IN URBANA, IL), AND WAS TOLD THEY
COULD NOT LOCATE ANY NOISE AND DIDN'T FIND ANY IMPACT
ON DRIVABILITY. I CONTINUED DRIVING THE CAR, WITH REGULAR
OIL CHANGES (ALL MY MAINTENANCE WAS DONE AT THE
DEALER), UNTIL SEPTEMBER 2020, WHEN THE NOISE BECAME
VERY NOTICEABLE, AT ALL SPEEDS AND ALMOST CONSTANT.
BECAUSE I HAD MOVED TO CALIFORNIA, I TOOK IT TO ANOTHER
KIA DEALERSHIP IN OAKLAND AND THEY SAID THEY CAN
INSTALL A USED ENGINE REPLACEMENT (WITH 30 K MILES ON IT
ALREADY) FOR A MINIMUM OF 6200 BEFORE TAX. I THOUGHT
THEY WERE KIDDING, TOOK IT TO AN INDEPENDENT MECHANIC
BECAUSE THEY DIDN'T EVEN DO SO MUCH AS CHANGE THE OIL IN
THAT VISIT.... WELL THE INDEPENDENT MECHANIC AGREES ON
THE ROD BEARING BEING ON ITS WAY OUT AND THAT THE ENGINE
CAN SEIZE AT ANY POINT. THE INDEPENDENT MECHANIC TORE
DOWN THE ENGINE TO DIAGNOSE IT. I NOW HAVE TO PAY MORE
THAN THE CAR'S WORTH TO ENSURE IT DOESN'T SEIZE AT
HIGHWAY SPEEDS AND KILL SOMEONE, OR HAVE TO SELL IT FOR
SCRAPS, DESPITE INSTALLING BRAKE PADS, ROTORS, A NEW EVAP
CANISTER (CRACKED AND FAILED SMOG TEST IN
CALIFORNIA)AND PURGE VALVE JUST THIS YEAR ALONE. THE
VEHICLE IS DANGEROUS TO DRIVE NOW. KIA NEEDS TO FIX THIS.
THESE ENGINES NEED TO BE REPLACED UNDER WARRANTY.
FORUMS ARE FULL OF FAILED KIA FORTES FROM 2012, SOME
MUCH EARLIER THAN MINE. 93.5K MILES SINCE BUYING IT IN
AUGUST 2013).

### 2013 Kia Forte

**May 2, 2013 NHTSA ID NUMBER: 10510076**
THE CONSUMER STATED THREE WEEKS AFTER HER DAUGHTER
PURCHASED THE VEHICLE, THE CHECK ENGINE LIGHT
ILLUMINATED AND THE VEHICLE OVERHEATED. THE VEHICLE
STARTED TO MALFUNCTION AND BECAME DIFFICULT TO
CONTROL. SMOKE AND A VERY STRONG BURNING ODOR EMITTED

FROM THE ENGINE. THE VEHICLE WAS TOWED TO THE DEALER FOR AN INSPECTION. THE RADIATOR WAS FOUND TO BE FAULTY. SINCE THE REPAIRS WERE MADE, THE VEHICLE WAS BURNING EXCESSIVE AMOUNT OF OIL, WHICH REQUIRED ADDING OIL TO KEEP IT AT FULL LEVEL. THE TAIL PIPE WAS DARK BLACK AND HEAVILY SOILED, WHICH INDICATED THE VEHICLE STILL HAD A SERIOUS PROBLEM. ONE MONTH LATER, THE CONSUMER EXPERIENCED DELAYED ACCELERATION

**September 4, 2014 NHTSA ID NUMBER: 10630711**
I PURCHASED THE CAR DECEMBER 2012; 2013 KIA FORTE EX. ABOUT A 9 MONTHS AFTER I PURCHASED THE CAR, I WAS DRIVING AND THERE WAS A LOUD KNOCKING NOSE IN THE ENGINE AND ABOUT A HOUR LATER THE CAR STALLED ON ME IN DOWNTOWN SACRAMENTO, CA. I GOT THE CAR TOWED TO SACRAMENTO KIA (2820 FULTON AVE, SACRAMENTO, CA 95821). AFTER THE CAR WAS DIAGNOSED THEY TOLD ME THAT IT WAS A MANUFACTURING PROBLEM, THEY SAID WHEN THE CAR WAS BUILT A FEW PARTS IN THE ENGINE WERE PUT IN INCORRECTLY WHICH CAUSED MY ENGINE TO BASICALLY OVER HEAT AND START TO FALL APART. SO THEY SAID THAT THEY WILL REPLACE THE ENGINE FREE OF CHARGE.
AUGUST 17 2014 AWHILE AFTER THE NEW ENGINE WAS PUT IN MY CAR, THE CAR STALLED ON ME AGAIN WITH THE SAME KNOCKING NOISE COMING FROM THE ENGINE. AT THE TIME I WAS ON THE FREEWAY GOING ABOUT 60MPH. AFTER THE CAR STALLED ON ME I COULD NOT GO ABOVE 30MPH NO MATTER HOW HARD I PUSHED THE GAS PEDAL. I HAD TO DRIVE ALL THE WAY HOME ON THE FREEWAY WITH THE HAZARD LIGHTS ON GOING 30MPH. WHEN I GOT HOME I HAD THE CAR TOWED TO SACRAMENTO KIA (2820 FULTON AVE, SACRAMENTO, CA 95821). IT TOOK THEM A FEW DAYS TO A WEEK FOR THEM TO CALL ME AND LET ME KNOW THE CAR WAS THERE. I CALLED TWICE EVERYDAY AND NEVER RECEIVED A CALL BACK WHEN THEY SAID THEY WERE BUSY. I DID NOT RECEIVE A PHONE CALL UNTIL THEY CALLED ME THE THIRD WEEK AND SAID THEY ARE ORDERING PARTS FOR THE CAR. I DID NOT AUTHORIZE ANYONE TO ORDER PARTS FOR THE CAR BECAUSE I DID NOT FIND OUT WHAT WAS WRONG WITH THE CAR. TWO DAYS AGO SEPTEMBER 2 2014 WAS THE DATE I FOUND OUT THAT I NEEDED A WHOLE NEW ENGINE WHEN THE ENGINE WAS REPLACED A YEAR AGO. SO THIS WOULD BE THE THIRD ENGINE

FOR MY BRAND NEW 2013 KIA FORTE EX I PURCHASED A YEAR
AGO. *TR

**December 14, 2017 NHTSA ID NUMBER: 11054770**
TL* THE CONTACT OWNS A 2013 KIA FORTE. WHILE DRIVING 70
MPH, THE MOTOR FAILED. THERE WERE NO WARNING INDICATORS
ILLUMINATED. THE VEHICLE WAS TOWED TO DELAND KIA (2322 S
WOODLAND BLVD, DELAND, FL 32720, (386) 734-7800) WHERE IT
WAS DIAGNOSED THAT THE CRANK SHAFT FAILED AND
DESTROYED THE ENGINE. THE VEHICLE WAS REPAIRED. THE
MANUFACTURER STATED THAT THEY WOULD NOT REPAIR THE
VEHICLE BECAUSE THERE WAS NO OPEN RECALL AND THE
VEHICLE WAS NOT UNDER WARRANTY. THE FAILURE MILEAGE
WAS 66,000.

**June 12, 2018 NHTSA ID NUMBER: 11101299**
I WAS ENTERING THE FREEWAY, ACCELERATED TO MATCH
TRAFFIC SPEED, I HEARD THE ENGINE'S RPMS INCREASE BUT
ALMOST IMMEDIATELY AFTERWARDS THE CAR SHUT DOWN. I
WAS IN THE MIDDLE LANE OF A VERY BUSY INTERCHANGE AND
GOING ABOUT 60MPH WHEN THE CAR QUIT. I KEPT TRYING TO
RESTART THE CAR BY PUTTING IT IN NEUTRAL AND AT THE SAME
TIME STEER IT TOWARDS THE SHOULDER. THERE WERE NO
WARNING LIGHTS. WHEN I HEARD THE ENGINE NOISE I LOOKED
AT THE DASH, ALL WAS NORMAL, THE D FOR DRIVE WAS VISIBLE.
IT HAPPENED VERY QUICKLY. ONCE STOPPED AND OUT OF
TRAFFIC, I TRIED TO RESTART THE CAR, IT RAN FOR JUST
SECONDS THEN NOTHING. THIS CAR HAD JUST BEEN SERVICED AT
THE KIA DEALER. IT ONLY HAS 51K MILES ON IT. I HAD TO HAVE IT
TOWED TO THE DEALER. THEY ARE TELLING ME THE ENGINE IS
FAULTY BUT THEY DON'T MAKE IT ANYMORE AND THEY HAVE NO
RESOLUTION FOR ME. THE CAR IS ONLY 4 MONTHS PAST THE 5
YEAR MARK AND IT IS UNDER 60000 MILES. IT HAS BEEN
MAINTAINED PERFECTLY, IT STILL LOOKS NEW. THE ORIGINAL
OWNER DID ALL THE SERVICE AS WELL. KIA KNOWS THEY HAVE
FAULTY ENGINES, YET THEY DO NOTHING TO WARN THE OWNERS
OR REMEDY THE PROBLEM.
THE SAY THEIR CARS ARE GOOD FOR 10YRS OR 100K MILES, THEN
THEY SHOULD MAKE IT SO. THIS CAR IS A TOP OF THE LINE 2013
FORTE SX (WITH ALL THE BELLS AND WHISTLES) . I BELIEVE IT IS
ALSO AFFECTED BY THE LATEST AIRBAG RECALL AS WELL.

**February 23, 2021 NHTSA ID NUMBER: 11397481**
LOUD TICKING OR KNOCKING SOUND COMING FROM ENGINE.
SOUNDS EXACTLY THE SAME AS OTHER ENGINES THAT WERE
REPLACED BECAUSE OF "ROD KNOCK". THIS SAME ENGINE WAS
RECALLED ON MANY OTHER MODELS SO WHY NOT ON THE 2013
KIA FORTE?

### 2014 Kia Forte and Forte Koup

**August 16, 2017 NHTSA ID Number: 11118352**
TL* THE CONTACT OWNS A 2014 KIA FORTE. WHILE DRIVING 30
MPH, AN ABNORMAL KNOCKING SOUND WAS HEARD COMING
FROM THE ENGINE COMPARTMENT. THERE WERE NO WARNING
INDICATORS ILLUMINATED. THE VEHICLE WAS TAKEN TO THE
DEALER (SHAWNEE MISSION KIA USED CARS, 7810 SHAWNEE
MISSION PARKWAY, OVERLAND PARK, KS 66202) WHERE IT WAS
DIAGNOSED THAT THE MOTOR FAILED. THE VEHICLE WAS NOT
REPAIRED. THE MANUFACTURER WAS NOT NOTIFIED OF THE
FAILURE. THE FAILURE MILEAGE WAS 48,000.

**November 15, 2017 NHTSA ID Number: 11046543**
2014 KIA FORTE EXPERIENCED AN UNEXPLAINED CATASTROPHIC
ENGINE FIRE WHILE DRIVING DOWN THE ROAD AT A STEADY
40MPH IN 40 DEG. F. WEATHER. ALL SUSPENSION COMPONENTS
SHOWED NO OBVIOUS DAMAGE, AND THE OWNER DID NOT
PERFORM ANY RECENT SERVICE WORK. NO SYMPTOMS SUCH AS
ENGINE LIGHTS OR SOUNDS WERE OBSERVED UNTIL THE CAR
BEGAN LOSING POWER AND CAUGHT FIRE ABOUT 60 SECONDS
LATER. THE CHECK ENGINE LIGHT ILLUMINATED AFTER SMOKE
WAS OBSERVED BY THE DRIVER WHO WAS STOPPING THE CAR.

**April 26, 2018 NHTSA ID Number: 11092181**
TL* THE CONTACT OWNS A 2014 KIA FORTE. THE CONTACT STATED
THAT THE ENGINE SEIZED WHILE DRIVING APPROXIMATELY 25
MPH. THE FAILURE OCCURRED WITHOUT WARNING. HOMETOWN
KIA (111 MIDTOWN AVE, MT HOPE, WV) DIAGNOSED THAT THE
ENGINE FAILED AND NEEDED TO BE REPLACED. THE
MANUFACTURER WAS NOTIFIED AND REFERRED THE CONTACT TO
NHTSA. THE FAILURE MILEAGE WAS APPROXIMATELY 121,000.

**June 7, 2018 NHTSA ID Number: 11112156**
TL* THE CONTACT OWNS A 2014 KIA FORTE. WHILE DRIVING AT AN UNKNOWN SPEED, AN ABNORMAL KNOCKING NOISE WAS HEARD. THERE WERE NO WARNING INDICATORS ILLUMINATED. THE VEHICLE WAS TOWED TO THE LOCAL DEALER (RICK CASE KIA, 3190 SATELLITE BLVD, DULUTH, GA 30096, (888) 322-3854) WHERE IT WAS DIAGNOSED THAT THE ENGINE NEEDED TO BE REPLACED. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE AND PROVIDED CASE NUMBER: 12774224. NO FURTHER ASSISTANCE WAS PROVIDED. THE FAILURE MILEAGE WAS 75,000.

**July 13, 2018 NHTSA ID Number: 11113392**
TL* THE CONTACT OWNED A 2014 KIA FORTE. WHILE DRIVING 15 MPH, THE CONTACT DETECTED AN ABNORMAL ODOR. ALSO, WHILE THE VEHICLE WAS PARKED WITH THE ENGINE RUNNING, SMOKE WAS SEEN COMING FROM UNDER THE HOOD AND FLAMES APPEARED FROM THE FRONT OF THE VEHICLE. A POLICE REPORT WAS FILED. THE FIRE DEPARTMENT EXTINGUISHED THE FIRE. THE FIREFIGHTERS INFORMED THE CONTACT THAT THE VEHICLE WAS SEVERELY DAMAGED AND THE CAUSE OF THE FIRE WAS NOT DETERMINED. THE CONTACT'S SIGNIFICANT OTHER SUFFERED BURNS ON THE RIGHT HAND THUMB, BUT NO MEDICAL ATTENTION WAS REQUIRED. THE VEHICLE WAS TOWED TO A TOW LOT AND DEEMED A TOTAL LOSS. THE DEALER WAS NOT CONTACTED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 60,000.

**September 6, 2018 NHTSA ID Number: 11130517**
AT APPROXIMATELY 63,000 MILES I BEGAN HEARING A KNOCK IN THE ENGINE AND NOTICED HESITANCY AS THE ENGINE SHIFTED GEARS. ABOUT 4 DAYS LATER THE CHECK ENGINE LIGHT CAME ON. I TOOK THE CAR TO THE DEALERSHIP AND WAS TOLD THERE WAS SLUDGE IN THE ENGINE. THE SERVICE REP AT THE DEALERSHIP INDICATED THAT THE WOULD CONTACT KIA TO DETERMINE IF THE ENGINE REPAIR WOULD BE COVERED UNDER THE WARRANTY. YESTERDAY I WAS TOLD IT MAY BE AN ENGINE ROD. IT HAS BEEN OVER A WEEK WITHOUT ANY RESOLUTION. I MENTIONED THAT KIA HAD RECALLED KIA OPTIMA FOR SIMILAR ENGINE AND WAS RUDELY ADVISED THAT THE FORTE AND OPTIMA HAD DIFFERENT ENGINES.

**October 19, 2018 NHTSA ID Number: 11141568**
MILEAGE 109000. DRIVING ALONG A HEARD KNOCKING IN ENGINE. PULLED TO SIDE AND WAITED FOR IT TO COOL DOWN AND CHECKED FLUIDS. EVERYTHING WAS GOOD. STARTED BACK DRIVING AND KNOCKING INCREASED AND THEN ENGINE SHUT OFF CAUSING US TO COAST FROM 60MPH ON A 4 LANE ROAD. LUCKILY WAS ABLE TO DRIFT TO A SAFE SPOT TO PULL OVER.

**November 29, 2018 NHTSA ID Number: 11154793**
TAKATA RECALL, THE INDICATOR GAUGES/SENSORS ON THE INSTRUMENT PANEL INDICATING LOW OIL PRESSURE, AS WELL AS OTHERS ARE CURRENTLY NOT WORKING AND MY ENGINE IS BURNING OIL IN EXCESS OF MANUFACTURES SPECIFICATIONS. GENERAL KNOWLEDGE IS THAT THIS CAN CAUSE MY ENGINE TO SEIZE OR CATCH ON FIRE WHICH IS AN IMMENSE SAFETY CONCERN. PER THE YORK PA KIA DEALER, THE OIL WAS EMPTY THE OIL PRESSURE INDICATOR NEVER ILLUMINATED. IT WASN'T UNTIL MY CAR WAS DEEMED EMPTY THAT THE CHECK ENGINE LIGHT CAME ON. CAR WAS INSPECTED BY DEALER AND YORK KIA (SEPT 18) CLAIMED NO PERMANENT DAMAGE TO MY ENGINE AS A RESULT. (VEHICLE PASSED EMISSIONS/SAFETY TWO WEEKS LATER - MONROE MUFFLER & BREAK, YORK PA) AS MY CAR DIDN'T SEEM TO BE LEAKING OIL, SUBSEQUENT VIGILANCE BY ME REVEALED THAT MY CAR WAS BURNING OIL. TWO FOLLOW-UP VISITS SINCE SEPTEMBER TO REMEDY THE PROBLEM WITH LANCASTER PA KIA (LAST 11/27 - 11/28 (81,500 K ON ENGINE) AND WORK WITH GWC (POWER TRAIN $2,100 WARRANTY) AN AFTERMARKET WARRANTY HAVE BEEN REJECTED DESPITE EVIDENCE THAT MY CAR IS BURNING OIL IN EXCESS OF SPECS. AS I AM NOT THE ORIGINAL OWNER, NOR DID I PURCHASE THIS AS A CERTIFIED VEHICLE, AS THERE IS NO ACTIVE RECALL, KIA WILL NOT REMEDY. MAINTENANCE RECORDS SUPPORT THAT THIS VEHICLE WASN'T MECHANICALLY NEGLECTED AND MAINTAINED BY ALL PREVIOUS OWNERS. IF YOU REQUEST NOTES FROM THE DEALERS THAT I HAVE BEEN WORKING WITH PLEASE CALL ME AT [XXX] AND LEAVE ME A MESSAGE SO I KNOW WHAT THE CALL IS REGARDING. IN ADDITION MY EMAIL IS [XXX] THANK YOU. PS. AS THIS IS MY ONLY VEHICLE, AND NOT REALLY SAFE, INFORMATION THAT WOULD INDICATE THAT A RECALL FOR MY MAKE AND MODEL WOULD BE VERY HELPFUL ON HOW I HANDLE THE SITUATION

WITH MY CURRENT VEHICLE. LOST AROUND $500 NEEDING RENTALS ETC. PLUS WORTHLESS WARRANTY. INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6). *TR

**June 10, 2019 NHTSA ID Number: 11221325**
2014 KIA FORTE EX 2.0 LITER GDI ENGINE HAS KNOCKING NOISES. WHEN I TOOK IT TO GROSSINGER KIA OF LINCOLNWOOD, IL THEY QUOTED OVER $4,300 + LABOR DUE TO METAL SHRAPNEL IN THE ENGINE AND THEY TOLD ME THAT I NEEDED TO REPLACE THE SHORT BLOCK OF THE ENGINE. THEY TOLD ME THAT THE CAR WAS OUT OF WARRANTY BECAUSE I WAS NOT THE FIRST OWNER AND THAT THE ENGINE WAS ONLY COVERED UNTIL 60,000 MILES. I BOUGHT THE CAR USED AROUND NOVEMBER 2018 WHEN IT HAD AROUND 61,000 MILES BECAUSE IT HAD A CLEAN CARFAX HISTORY BUT I NOTICED THE KNOCKING NOISES BECAME INCREASINGLY LOUDER UNTIL I TOOK IT TO THE DEALER. I'VE SEARCHED ONLINE AND IT APPEARS THAT HYUNDAI/KIA HAS A MANUFACTURING DEFECT WITH THEIR GDI ENGINES AS THERE ARE CURRENTLY LAWSUITS CONCERNING THEIR ENGINES FAILING DUE TO A MANUFACTURING DEFECT. I BELIEVE THIS CAR ALSO HAS A DEFECT ENGINE AND AN INVESTIGATION SHOULD BE DONE TO COMPEL THEM TO REPAIR THEIR DEFECTIVE ENGINES.

## 2015 Kia Forte and Forte Koup

**June 6, 2017 NHTSA ID Number: 10994965**
TL* THE CONTACT OWNS A 2015 KIA FORTE. THE CONTACT STATED THAT THERE WAS AN ABNORMAL NOISE THAT SUDDENLY PROGRESSED WHILE THE VEHICLE WAS BEING PULLED INTO THE DRIVEWAY TO BE PARKED. THE VEHICLE WAS NOT SAFE TO DRIVE AND WAS TOWED TO THE DEALER (WORLD KIA JOLIET, 2525 W JEFFERSON ST, JOLIET, IL 60435, (815) 725-2575). THE DEALER INDICATED THAT THE ENGINE WAS A GDI MODEL. THE MANUFACTURER HAD NOT DEVELOPED A REPAIR SOLUTION AND THAT THERE WAS A CAMPAIGN TO ADDRESS THE GDS MODEL TYPES. THE CONTACT WAS UNCERTAIN AS TO WHY THE DEALER HAD NOT BEEN ABLE TO DETERMINE A SOLUTION. THE REPAIR CONCERNS WERE TO BE ESCALATED BUT, WHEN THE CONTACT FOLLOWED UP, THEY HAD NOT BEEN ESCALATED. THE APPROXIMATE FAILURE MILEAGE WAS 39,000. UPDATED

08/03/17*LJ THE CONSUMER STATED THE DEALER CLAIMED THE FAILURE WAS DUE TO POOR MAINTENENCE. THE CONSUMER LOCATED OIL CHANGE RECIEPTS. THE DEALER THE REPLACED THE ENGINE. *JS

**September 13, 2017 NHTSA ID Number: 11023328**
BEARINGS IN THE ENGINE WENT BAD AND ENGINE LOCKED UP WITH LESS THAN 45000 MILES ON THE VEHICLE. VEHICLE IS TWO YEARS OLD. IT WAS IN THE SERVICE DEPARTMENT ONE MONTH AGO AND THEY REPORTED NO PROBLEMS AT THE TIME. VEHICLE WAS IN MOTION IN A PARKING LOT WHEN THE ENGINE LOCKED UP.

**June 7, 2018 NHTSA ID Number: 11101058**
TL* THE CONTACT OWNS A 2015 KIA FORTE. WHILE DRIVING AT AN UNKNOWN SPEED, SMOKE APPEARED UNDER THE HOOD. THE CONTACT WAS ABLE TO COAST THE VEHICLE TO THE ROAD SHOULDER. THE CONTACT UNLATCHED THE HOOD AND FOUND FLAMES UNDER THE HOOD. THE CONTACT STATED THAT SOMEONE STOPPED AND ASSISTED WITH A FIRE EXTINGUISHER AND WAS ABLE TO EXTINGUISH THE FIRE. THE FIRE DEPARTMENT AND LOCAL POLICE ARRIVED AND A POLICE REPORT WAS FILED. THE FIRE DEPARTMENT DID NOT DETERMINE THE ORIGIN OF THE FIRE. THE VEHICLE WAS TOWED TO AN UNKNOWN LOCATION AND WAS AWAITING TO BE TOWED TO A DEALER FOR FURTHER INSPECTION. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS NOT NOTIFIED. THE VIN WAS NOT AVAILABLE. THE FAILURE MILEAGE WAS 37,000.

**July 27, 2018 NHTSA ID Number: 11114380**
I WAS DRIVING ON HIGHWAY 8 IN SAN DIEGO,CA AND I HEARD A LOUD RATTLING NOISE, THE CHECK ENGINE LIGHT LIT UP AND THE ENGINE DIED AND I WAS LUCKY TO BE ABLE TO COAST THE CAR TO THE SHOULDER OF THE FREEWAY. I HAD IT TOWED TO MY KIA DEALERSHIP IN EL CAJON, CA. THEY LOOKED AT IT AND TOLD ME MY ENGINE SEIZED AND THE ENGINE WAS BLOWN. I BOUGHT THIS CAR 11 MONTHS AGO AS A CPO AND IT IS WITHIN THE WARRANTY OF 10 YRS/100,000 MILES. I'VE ONLY PUT 21,000 MILES ON IT. THEY ARE ASKING FOR MY MAINTENANCE RECORDS AND ARE HAVING A SPECIAL INVESTIGATOR TO COME OUT ON 7/31/2018 TO DETERMINE THE CAUSE. I HAVE HAD ONE OIL CHANGE DONE

AT THE DEALER IN JANUARY OF 2018, THE REST OF THE OIL CHANGES I DID ON MY OWN. THE LAST OIL CHANGE WAS JUST 2 WEEKS AGO. THE DEALERSHIP IS NOW TELLING ME THAT IT'S UP TO THE INVESTIGATOR TO DECIDE IF THE ENGINE WAS DEFECTIVE AND IF THEY'LL COVER MY ENGINE UNDER THE POWERTRAIN WARRANTY. WHEN I TOOK MY VEHICLE IN TO THE DEALER IN JANUARY 2018, I INFORMED THE MECHANIC THAT THERE WAS A KNOCKING/PINGING NOISE IN THE ENGINE, HE TOLD ME THAT THIS WAS NORMAL. THEY NEVER DOCUMENTED MY COMPLAINT. AFTER READING ABOUT ALL THE PROBLEMS WITH THESE ENGINES AND HOW KIA IS HANDLING THESE PROBLEMS, I AM VERY CONCERNED THAT THEY'LL HONOR THE WARRANTY. I AM MAKING CAR LOAN PAYMENTS ON THIS CAR AND CANNOT AFFORD TO PAY FOR A NEW ENGINE WHILE THE BATTLE OVER THESE ENGINES PLAY OUT IN THE COURTS, YOUR INVESTIGATIONS AND THE RECENT FBI INVOLVEMENT. THE DEALER NEVER INFORMED ME OF POSSIBLE PROBLEMS WITH THESE ENGINES. I NEVER WOULD'VE PURCHASED THIS CAR. PLEASE HELP, I AM CONCERNED THAT THE INVESTIGATOR WILL FALSIFY WHAT IS FOUND IN THE ENGINE UPON INVESTIGATION.

**December 26, 2018 NHTSA ID Number: 11164177**
TL* THE CONTACT OWNS A 2015 KIA FORTE. WHILE DRIVING APPROXIMATELY 72 MPH, THE FRONT OF THE VEHICLE CAUGHT FIRE. THE CONTACT NOTICED THAT THE FIRE WAS COMING FROM THE ENGINE. THERE WERE NO INJURIES. THE FIRE DEPARTMENT EXTINGUISHED THE FIRE. THE VEHICLE WAS TOWED TO A LOCAL TOW LOT. THE DEALER AND MANUFACTURER WERE NOT NOTIFIED OF THE FAILURE. THE CAUSE OF THE FAILURE WAS NOT DIAGNOSED. THE APPROXIMATE FAILURE MILEAGE WAS 83,000. THE VIN WAS NOT PROVIDED.

**March 4, 2019 NHTSA ID Number: 11184245**
ENGINE LIGHT CAME ON TOOK IT TO KIA THEY DID A TUNE UP AND FUEL FLUSH CAR SOUNDED TERRIBLE. TOLD ME THEY COULDN'T DIAGNOSE THE PROBLEM UNLESS THE ENGINE LIGHT CAME ON AGAIN. I TOOK IT BACK BECAUSE THE SOUND WAS WORSE 3 WEEKS LATER. THEY SAID I NEEDED A NEW ENGINE $7702 OR THEY COULD CHECK THE ENGINE FOR $2000 AND REPLACE IT IF NEEDED THE PRICE WOULD BE $7702 PLUS TAX. I DO NOT UNDERSTAND WHY IT SOUNDED WORSE AFTER THE TUNE UP OR

1
2

WHY THEY DID NOT IDENTIFY THE PROBLEM BEFORE THE TUNE. THEY SAID IT WAS INTERNAL ENGINE FAILURE.

3

**March 30, 2019 NHTSA ID Number: 11193333**

4
5
6
7
8
9
10
11
12
13

ON SATURDAY MARCH 30, 2019, I WAS DRIVING ALONG THE 110 NORTH HIGHWAY ( CALIFORNIA) WITH MY ONLY SON , MY MOTHER AND MY BOYFRIEND , I WAS GETTING SIGNALED TO PULL OVER BY OTHER DRIVERS AT THAT VERY MOMENT MY CAR STALLED AND HEAVY DARK SMOKE STARTED TO COME OUT OF AIR VENT , MY BOYFRIEND SHOUTED FOR US TO GET OUT OF THE CAR QUICK , MY MOTHER IS DISABLED AND USES A WALKER TO WALK WE HAD TO MAKE SURE SHE GOT OUT FIRST , AS WE STARTED TO RUN FROM THE CAR I TURNED AROUND AND NOTICED A FIRE UNDER MY CAR ( I WAS DRIVING LIKE THAT , UNKNOWINGLY) MY CAR WENT INTO FLAMES WITHIN MINUTES AND IT WAS A TOTAL LOSS. I HAVE PROVIDED PICTURES FOR YOU REVIEW, I WAS VERY AFRAID FOR NOT ONLY MY LIFE BUT MY FAMILIES LIFE, IT CROSSED MY MIND THAT I WAS GOING TO DIE, IF THESE DOORS DON'T OPEN

14
15

**<u>2012 Kia Forte Koup</u>**

16

**December 22, 2019 NHTSA ID NUMBER: 11290669**

17
18
19
20
21
22
23
24
25
26
27

2012 KIA FORTE KOUP DRIVING ON A 45MPH ROAD WHEN WITHOUT WARNING ENGINE SEIZED CAUSING DANGEROUS SITUATION ATTEMPTING TO PULL CAR TO SIDE WITHOUT POWER.
TOOK VEHICLE TO DELEARSHIP FOR WARRANTY SERVICE AS CAR WAS STILL UNDER WARRANTY
WAS DENIED WARRANTY SERVICE FOR LUDICROUS REFUSAL TO ACCEPT MAINTENANCE RECORDS BECAUSE I SCANNED THE ORIGINALS AND WOULD NOT HAND OVER THE ORIGINALS.
VEHICLE WAS IN PERFECT RUNNING ORDER AND I PROVIDED VIDEO EVIDENCE SHOWING KIA VIDEO I HAPPENED TO HAVE SHOT JUST A FEW WEEKS BEFORE THE ENGINE FAILED DEMONSTRATING CAR WAS RUNNING PERFECT WITHOUT ANY SHAKES, RUMBLES,ODD NOISES AND ABSOLUTELY NO "SERVICE ENGINE" OR OTHER WARNING LIGHTS.
KIA TOOK 2 MONTHS TO EVEN GIVE ME A PRELIMINARY DECISION THAT WOULD NOT COVER THE REPAIRS WITH NO OFFER TO ASSIST WITH A LOANER CAR OR RENTAL OR ANY OTHER ASSISTANCE.

28

OPENED ENGINE UP TO FIND METAL SHAVINGS AND OTHER REMNANTS FROM MANUFACTURE FLOATING AROUND IN OIL PAN UPON INVESTIGATING A LITTLE FURTHER DISCOVERED THAT KIA NEEDS TO HELD ACCOUNTABLE NOT ONLY FOR THE GDI THETA ENGINES THAT HAVE BEEN RECALLED UNDER SC147 BUT ALSO THE MPI MODEL ENGINES LIKE I HAVE IN MY CAR.
IN THE RECALL KIA CLAIMS METAL SHAVINGS FROM MANUFACTURE OF THE CRANKSHAFTS ON THE GDI ENGINES CAUSED THE ISSUES.......HOWEVER, THE EXACT SAME CRANKSHAFT DOWN TO THE PART NUMBERS ARE 100% IDENTICAL.
PLEASE I IMPLORE YOU TO HOLD KIA ACCOUNTABLE NOT ONLY FOR THE GDI ENGINES BUT ALSO THE MPI AS WELL. THEY BOTH USE THE EXACT SAME PART KIA CLAIMS HAD ISSUES AND KIA CONTINUES TO LIE AND NOT HONOR THEIR WARRANTY.

**December 6, 2020 NHTSA ID NUMBER: 11378120**
2012 KIA FORTE KOUP CAR WILL SHUT OFF WHILE DRIVEING AND VERY LOUD KNOCK IN THE ENGINE TOOK IT TO KIA IN LANCASTER OHIO VEHICLE THROWING NO CODES WHY IS THIS ENGINE NOT INCLUDED IN THE RECALL I HAVE SEEN OTHERS ASK THE VERY SAME QUESTION FOR EXACT VEHICLE

<u>**2013 Kia Forte Koup**</u>

**August 10, 2019 NHTSA ID NUMBER: 11242998**
I HAVE A 2013 KIA FORTE KOUP SX WITH THE 2.4L MPI ENGINE. I WAS DRIVING DOWN THE INTERSTATE AT 75MPH AND ALL OF THE SUDDEN THE ENGINE QUIT RUNNING. I COASTED TO THE SIDE OF THE ROAD AND OPENED MY HOOD AND DID NOT SEE ANY APPARENT PROBLEMS IN THE ENGINE BAY. OIL LEVEL WAS OK. I STARTED THE CAR AGAIN AND DID NOT HEAR ANY ABNORMAL NOISES SO I DROVE IT HOME. TWO WEEKS LATER THE ENGINE STARTED TO MAKE KNOCKING SOUNDS ON MY WAY HOME FROM ANOTHER TRIP. I AM NOW TOLD THAT THE CAR NEEDS A NEW ENGINE WITH ONLY 69,000 MILES ON IT. THE KIA RECALL 17V224000 FOR IMPROPERLY MACHINED ENGINES IS NOT NEARLY AS COMPREHENSIVE AS IT NEEDS TO BE AND DOES NOT INCLUDE THE FORTE. KIA CLAIMS THAT ONLY THE GDI ENGINES ARE AFFECTED BUT THE REALITY IS THE MPI VERSION OF THE 2.0 AND 2.4 THETA II ENGINES ARE FAILING PREMATURELY IN THE EXACT

SAME MANNER AS EVIDENCED BY THE MANY REPORTS FROM
OWNERS ONLINE.

**January 1, 2021 NHTSA ID NUMBER: 11386011**
DRIVING ON INTERSTATE I-70 MD AT 65MPH WHEN I HEARD A
TICKING SOUND AND I WASNT GETTING ANY POWER. CAR WAS
STRUGGLING TO MOVE WHEN ALL THE SUDDEN BANG!!!! SMOKE,
PLASTIC AND METAL WENT FLYING EVERYWHERE FROM THE
ENGINE BAY, RICOCHETING OFF THE ASPHALT TOWARDS THE
SIDES OF MY VEHICLE AND OTHER CARS TRAILING BEHIND ME.
CARS SWERVED TO AVOID THE DEBRIS FROM HITTING THEIR
VEHICLES. POWER STEERING WENT OUT AND I STRUGGLED TO
MOVE THE CAR OVER TO THE SHOULDER ACROSS ANOTHER LANE.
I COULDVE EASILY BEEN KILLED HAD A DRIVER NOT BEEN
PAYING ATTENTION OR LOOKING AT THEIR PHONE CROSSING
LANES AS THE VEHICLE QUICKLY WAS COMING TO A STOP,
INABLE TO MOVE. I SOMEHOW SAFELY GOT TO THE SHOULDER
AND GOT THE CAR TOWED AT MY EXPENSE TO THE MECHANIC.
CATASTROPHIC ENGINE FAILURE. ROD SNAPPED AND BLEW A 2
INCH HOLE THROUGH THE ENGINE BLOCK AND CAR LIT ON FIRE
BRIEFLY. BOUGHT A NEW (USED) THETA II ENGINE (THE SAME
ENGINE RECALLED IN HUNDREDS OF THOUSANDS OTHER KIAS
AND HYUNDAIS) BUT NOT FOR THE 2013 KIA KOUP WITH THE
SAME ENGINE PROBLEM. $4800+ LATER, IM STILL SCARED DRIVING
ON THE HIGHWAY AS I COULDVE EASILY BEEN SMASHED THAT
DAY BY ANOTHER VEHICLE. KIA NEEDS TO RECALL EVERY SINGLE
MAKE YEAR AND MODEL WITH THE THETA 2 ENGINE. HAVE NEW
(USED) ENGINE RECIEPT AND ALL DOCUMENTATION PERTAINING
TO THE INCIDENT.

**February 15, 2021 NHTSA ID NUMBER: 11396326**
SEVERAL RECALLS HAVE BEEN ISSUED FOR THE THETA II ENGINE.
I OWN A 2013 KIA FORTE KOUP EX WHICH IS EQUIPPED WITH THE
2.0L MPI ENGINE. THE 2.4L ENGINE OF THE SAME TYPE WAS
RECALLED JUST A FEW WEEKS AGO. THE ONLY DIFFERENCE
BETWEEN THESE TWO ENGINES IS THE SIZE. THEY ARE NOT
FUNDAMENTALLY DIFFERENT OTHER THAN A FEW TWEAKS TO
ACCOUNT FOR THE EXTRA VOLUME. LIKELY THIS MEANS THE
SAME MANUFACTURING PROCESSES WERE USED FOR BOTH
ENGINES. IT WOULD BE INCREDIBLY INEFFICIENT TO CREATE NEW
MANUFACTURING PROCESSES FOR EACH OF THESE ENGINES.

THEREFORE, IF THERE WAS A MAJOR MANUFACTURING ERROR IN THE 2.4L PRODUCTION (SAY METAL SHAVINGS THAT BLOCK OIL ACCESS TO THE ROD BEARINGS CAUSING CRITICAL WEAR AND DAMAGE), THEN THAT ERROR PROBABLY OCCURRED IN THE 2.0L MANUFACTURING.

I WANT TO KNOW WHY THE 2.0L MPI ENGINE HAS NOT BEEN RECALLED.

THE 2.0L MPI ENGINE ON MY KIA FORTE KOUP EX HAS BEGUN TO KNOCK. BY THE SOUND, THE ROD BEARING HAS PROBABLY WORN THROUGH AND THE LIFE OF MY CAR AND MY OWN SAFETY ARE AT A HIGH RISK. I CANNOT AFFORD A NEW ENGINE OR A NEW CAR RIGHT NOW JUST BECAUSE KIA SCREWED UP. PLEASE LOOK INTO THIS ISSUE. JUST BECAUSE NOT AS MANY PEOPLE HAVE CARS WITH THE THETA II 2.0L MPI ENGINE DOESN'T MEAN OUR SAFETY AND OUR LIFE SAVINGS CAN BE THROWN OUT THE WINDOW.


### 2011 Kia Optima Hybrid

**July 17, 2017 NHTSA ID NUMBER: 11005850**
MY ENGINE DID EXACTLY AS THE RECALL ON THE NON-HYBRID ENGINES. LOST OIL PRESSURE, OIL INDICATOR CAME ON, CHECK ENGINE LIGHT CAME ON AS ENGINE SEIZED ON HIGHWAY DURING DRIVING. DEALERSHIP REFUSING TO INCLUDE MY CAR ENGINE IN RECALL BECAUSE OF HYBRID -EVEN THOUGH IT HAS A GAS ENGINE. KIA CORPORATE CONTACTED AND STATED THEY WERE WILLING TO "WORK SOMETHING OUT" WITH IT IF DEALERSHIP WILL CONTACT THEM. I CANNOT GET DEALERSHIP TO DO THIS YET. LIKELY LEGAL COUNSEL WILL HAVE TO BE CONTACTED. INSURANCE ADJUSTER ALSO COMMENTED DEFECTIVE PART LIKELY CAUSE. GOOD THING I DID NO HAVE CARDIAC ISSUE -HAD TO WAIT IN HEAT ON HIGHWAY DURING SUMMER MORNING FOR TOW TRUCK AFTER SUDDEN ENGINE FAILURE IN TRAFFIC WHILE EXITING ON TO THE HIGHWAY. ALSO FORTUNATE THE CARS BEHIND ME DID NOT HIT ME CAUSING MORE DAMAGE OR PERSONAL INJURY. STILL TRAUMATIC EXPERIENCE.

**August 18, 2017 NHTSA ID NUMBER: 11016266**
TL* THE CONTACT OWNS A 2011 KIA OPTIMA HYBRID. THE CONTACT STATED THAT THE ENGINE SEIZED WHILE DRIVING 60

MPH. THE CONTACT WAS ABLE TO COAST THE VEHICLE OVER TO THE EMERGENCY LANE. THERE WERE NO WARNING INDICATORS ILLUMINATED. THE CONTACT WAS ABLE TO DRIVE THE VEHICLE. THE CONTACT ALSO STATED THAT THE VEHICLE MADE A VERY LOUD KNOCKING NOISE AND SOUNDED LIKE SOMETHING WAS DRAGGING FROM THE BOTTOM OF THE VEHICLE. THE CONTACT COASTED TO THE SIDE OF THE ROAD AND WAS UNABLE TO RESTART THE VEHICLE. THE VEHICLE WAS TOWED TO AN UNKNOWN KIA DEALER IN IRVINE, CA. THE CONTACT WAS INFORMED THAT THE ENGINE NEEDED TO BE TORN DOWN TO DETERMINE WHAT CAUSED THE FAILURE. THE TECHNICIAN DIAGNOSED THAT THE FAILURE WAS DUE TO A ROD BEARING AND THERE WERE METAL SHAVINGS IN THE OIL PAN; HOWEVER, THE VEHICLE WAS FREE OF SLUDGE. THE MANUFACTURER WAS CONTACTED. BECAUSE THE CONTACT WAS THE THIRD OWNER OF THE VEHICLE, THE VEHICLE WOULD NOT BE REPAIRED FOR FREE. THE CONTACT WAS ALSO INFORMED THAT THE FAILURE WAS IDENTICAL TO A PREVIOUS UNKNOWN RECALL. THE VEHICLE HAD A 100,000 MILE WARRANTY, WHICH WAS NO LONGER VALID. THE APPROXIMATE FAILURE MILEAGE WAS 67,000. THE VIN WAS NOT AVAILABLE.

**November 30, 2017 NHTSA ID NUMBER: 11051611**
WHILE DRIVING ON THE HIGH WAY THE ENGINE STARTED MAKING A KNOCKING SOUND AND THEN THERE WAS A BURNING SMELL AND THE CAR WOULD NOT ACCELERATE THEN THE CAR SHUT OFF. I WAS FORCED TO SWITCH LANES AND GET OFF THE NEAREST EXIT.

**May 16, 2018 NHTSA ID NUMBER: 11094133**
DRIVING ON RAMP TO I10 IN CHANDLER AZ , SUDDENLY I'VE LOST POWER ON THE CAR, NO WARNING LIGHTS ON OR ANY SOUND HEARD .I COAST TO THE EMERGENCY LINE AND TRY TO START THE ENGINE AGAIN BUT NOTHING HAPPENED. AAA TOW THE CAR TO KIA DEALER AND THEY SAID THE ENGINE IS SEIZED. ONLY 64000 MILES . NO WARNING LIGHTS ON , NO ENGINE CHECK LIGHT ON .

**March 25, 2019 NHTSA ID NUMBER: 11191408**
OUR CAR BEGAN EXHIBITING A CLACKING NOISE WHEN DRIVING THAT WOULD WORSEN WITH ACCELERATION. WITHIN 1-2 DRIVES,

IT QUICKLY PROGRESSED TO BE QUITE LOUD AND CONSTANT, SO WE TOOK IT TO OUR LOCAL DEALERSHIP. WE WERE INFORMED THAT OUR ENGINE HAD THROWN A ROD AND WOULD NEED TO BE COMPLETELY REPLACED. WE ARE JUST OUTSIDE THE 100,000 MILE WARRANTY AND BOUGHT THE CAR BRAND NEW IN 2012 (YES, THE YEAR AFTER THE MODEL DATE, TAKING ADVANTAGE OF THE PRICE BREAK IN BUYING OLD STOCK), SO IT IS STILL A FAIRLY YOUNG ENGINE TO BE HAVING THIS PROBLEM. IT APPEARS OTHER NON-HYBRID KIA AND HYUNDAI MODELS FROM THE SAME YEAR ARE HAVING THE SAME PROBLEM AND HAVE BEEN RECALLED, BUT NOTHING ON THE HYBRID VEHICLES, DESPITE THAT WE WERE ALSO TOLD THIS HAS BEEN A COMMON PROBLEM.

### 2012 Kia Optima Hybrid

**September 2, 2016 NHTSA ID NUMBER: 10903342**
AFTER ~20K MILES, I NOTICED A SLIGHT TAPPING/KNOCKING NOISE COMING FROM THE ENGINE. I TOOK THE CAR TO THE DEALERSHIP FOR MAINTENANCE AND ASKED ABOUT THE NOISE. THEY SAID THERE WAS NOTHING WRONG. OVER TIME, IT GOT A BIT LOUDER BUT NOT MUCH AND EACH TIME IT WAS TAKEN TO THE DEALERSHIP, THEY WOULD SAY THERE WAS NOTHING WRONG. AT ~80K MILES, MY WIFE WAS TRAVELING HOME ON THE FREEWAY AT 70MPH WHEN THE ENGINE STARTED MAKING A TERRIBLE NOISE (SOUNDED LIKE A ROD WAS ABOUT TO COME THROUGH THE ENGINE), LOST POWER, AND ALL OF THE LIGHTS CAME ON, WHICH ALMOST CAUSED HER TO WRECK, AS SHE WAS IN HEAVY TRAFFIC. SHE IMMEDIATELY PULLED OVER AND WE HAD TO CALL A TOW TRUCK. AFTER CALLING THE DEALERSHIP, THEY SAID THAT THEY WOULDN'T FIX IT AND THAT I'D HAVE TO PAY 7K TO HAVE THE ENGINE REPLACED. I ENDED UP BUYING AN ENGINE FROM A WRECKED 2014 KIA OPTIMA HYBRID. SO MUCH FOR A WARRANTY. AFTER DOING RESEARCH, IT SEEMS THAT THERE ARE NUMEROUS PEOPLE HAVING THE EXACT SAME ISSUES I'VE EXPERIENCED.

**January 3, 2017 NHTSA ID NUMBER: 10939306**
LOUD BANGING NOISE FROM THE MOTOR THEN LOUD BAND AND 2 PARTS FLEW OUT THE BOTTOM ANT IT STARTED SPILLING OIL EVERYWHERE

**May 18, 2018 NHTSA ID NUMBER: 11096650**
WHILE DRIVING, AT NIGHT WITH MY TWO YEAR OLD SON, ON A TWO LANE ROAD MY CAR STARTING MAKING A LOUD KNOCKING NOISE, I BEGAN TO LOSE POWER QUICKLY. THANK GOD I WAS ABLE TO GET THE CAR TO THE EDGE OF THE ROAD. I CALLED FAMILY, WHO SAID TO STAY PUT, THEY BROUGHT A TRAILER TO LOAD MY CAR ON. I WASN'T SURE WHAT TO DO NEXT, I WAS BEING TOLD THE MOTOR HAD THROWN A ROD. SADLY THEY WERE ALL CORRECT. I CALLED KIA HEADQUARTERS, THEY GAVE ME A CASE NUMBER AND THE NAME OF A DEALERSHIP NEAR ME, WHICH IS STILL 60 MILES AWAY, WEST PALM BEACH KIA. I TOWED THE CAR OVER ON APRIL 3, 2018, AFTER THEIR DIAGNOSES I WAS TOLD I NEEDED A MOTOR. I TOO QUESTIONED THE KIA OPTIMA RECALL, I WAS TOLD THE HYBRIDS ARE NOT INCLUDED IN THAT RECALL, NEITHER WAS MY VIN. TODAY IS MAY 18, 2018, MY CAR IS STILL AT WEST PALM BEACH KIA AWAITING A MOTOR. SINCE BEING AT WEST PALM BEACH KIA, WHO I REMIND YOU WAS SUGGESTED BY KIA HEADQUARTERS I HAVE BEEN THROUGH THREE SERVICE MANAGERS. I HAVE BEEN INFORMED THAT I WILL HAVE TO PAY $3500 OF THE $8000 BILL, DUE TO KIA GOODWILL." TENTATIVE DATE OF MAY 29, 2018", WHICH IS THE THIRD CHANGE OF DATE ALSO. MY CAR IS STILL THERE WITH A MY CAR HAS 92,000 MILES ON IT. WITH KIA OFFERING TO PAY AT ALL, IT SEEMS THEY KNOW THEY HAVE A PROBLEM MOTOR, WITH A SAFETY ISSUE SO WHY IS THERE NOT A RECALL?? MY TWO YEAR OLD SON AND I COULD HAVE BEEN HURT SERIOUSLY IF A SEMI TRACTOR TRAILER OR PICK UP TRUCK HAD BEEN BEHIND ME. PLEASE ISSUE A RECALL BEFORE PEOPLE GET KILLED!!!

**May 12, 2019 NHTSA ID NUMBER: 11207083**
WHILE DRIVING ON A HIGHWAY AROUND 45MPH, THE ENGINE SUDDENLY MADE A RATTLING NOISE, THEN SHORTLY AFTER, MADE A LOUD SQUEALING NOISE AND THEN A SUDDEN JOLT. THE CAR SHUT DOWN AND SHOWED AN ERROR ABOUT THE HYBRID SYSTEM MALFUNCTION AND I EXPERIENCED A QUICK DROP IN SPEED AND WAS UNABLE TO ACCELERATE. AFTER PULLING OVER, THE CAR WOULD NOT START. CAR WAS TOWED TO DEALER AND THEY WERE ABLE TO START VEHICLE, BUT IT MAKES A LOUD 'CLANKING' NOISE AND CAR VIBRATES. DEALER INFORMED THAT APPEARS A PART INSIDE ENGINE HAD FAILED AND WILL NEED COMPLETE ENGINE REPLACEMENT

**January 19, 2021 NHTSA ID NUMBER: 11388790**
TL* THE CONTACT OWNS A 2012 KIA OPTIMA HYBRID. THE CONTACT STATED WHILE DRIVING 75 MPH, WHEN SHE HEARD AN ABNORMAL NOISE AND THE VEHICLE BEGAN TO DECELERATE. THE CONTACT STATED NO WARNING LIGHT WAS ILLUMINATED. THE CONTACT STATED THE VEHICLE FAILED TO EXCEED 40 MPH. THE CONTACT PARKED ON THE SIDE OF THE ROAD AND HAD THE VEHICLE TOWED TO AN INDEPENDENT MECHANIC WHERE THE CONTACT WAS INFORMED THAT THE ENGINE NEEDED TO BE REPLACED. THE VEHICLE WAS THEN TOWED TO BOB KING KIA (1725 LINK RD, WINSTON-SALEM, NC 27103, (336) 724-3866) TO BE DIAGNOSED. THE CONTACT WAS INFORMED THAT THE ENGINE NEEDED TO BE REPLACED. THE VEHICLE WAS NOT REPAIRED. UPON INVESTIGATION, THE CONTACT ASSOCIATED THE FAILURE WITH NHTSA CAMPAIGN NUMBER: 20V750000 (ENGINE) HOWEVER, THE VIN WAS NOT INCLUDED. THE MANUFACTURER WAS INFORMED OF THE FAILURE. THE FAILURE MILEAGE WAS APPROXIMATELY 118,000.

### 2013 Kia Optima Hybrid

**September 11, 2018 NHTSA ID NUMBER: 11128714**
1. DRIVING VEHICLE ON FREEWAY AND THE ENGINE BLEW. KIA REBUILT THE TOP HALF OF THE ENGINE. 2. DRIVING VEHICLE ON STREET AND THE POWER STEERING WENT OUT. TOOK A LOT OF STRENGTH TO STEER TO THE SIDE OF THE ROAD. KIA RESET MAIN CONTROL UNIT TO FIX ISSUE. 3. DRIVING VEHICLE ON STREET AND THE POWER STEERING WENT OUT AGAIN. KIA WANTS TO REPLACE MAIN CONTROL UNIT. CAR HAS PASSED THE WARRANTY BY 10K MILES. NOT COVERED.

**May 26, 2019 NHTSA ID NUMBER: 11210065**
HYBRID WARNING LIGHT SUDDENLY CAME ON INDICATING THAT I SHOULD PULL OVER WHILE I WAS DRIVING ON THE FREEWAY. I IMMEDIATELY VEERED TO MY LEFT TO GET TO THE SHOULDER, AS THE CAR HAD ALREADY DIED, AND I WAS MOVING ONLY ON MOMENTUM. I WAS ALMOST HIT BY A CAR BEHIND ME. I WAITED A WHILE, AND THE CAR RESTARTED. THE ENGINE LIGHT CAME ON AND WENT AWAY LATER THAT DAY. THIS WAS A SATURDAY, AND I TOOK THE CAR TO THE DEALERSHIP ON MONDAY. THIS WAS NOT

THE FIRST OCCURRENCE. THE FIRST TIME I EXPERIENCED THE SAME SCENARIO AND ALSO ALMOST GOT HIT BY A CAR AS I WAS TRYING TO GET TO THE RIGHT SHOULDER. MY CAR DID NOT START IN THAT INCIDENT, AND I HAD TO GET IT TOWED. THE SECOND TIME WAS AGAIN THE SAME SCENARIO, AND IT DID RESTART. EACH TIME I TOOK IT TO THE DEALERSHIP. EACH TIME THEY SAID THEY COULDN'T REPLICATE THE PROBLEM, AND THEY MADE ANCILLARY UPDATES, WHICH DIDN'T HELP. THE THIRD TIME IT HAPPENED, I WAS ADAMANT THAT THEY FIX IT BECAUSE THEY WERE AT RISK OF SERIOUS LIABILITY BECAUSE I WAS BEING PLACED IN EXTREME DANGER. FURTHER, IT BROUGHT ABOUT MUCH ANXIETY KNOWING THAT THIS COULD HAPPEN WITHOUT WARNING AT ANY TIME WHILE DRIVING. MY CAR IS STILL WITHIN THE 100K WARRANTY. THE FIRST TIME, THEY REFUSED TO ADDRESS IT UNDER WARRANTY, AND THEY ARGUED WITH ME ABOUT IT ONLY TO CONCEDE LATER THAT, IN FACT, IT WAS COVERED UNDER WARRANTY.

**April 28, 2021 NHTSA ID NUMBER: 11414285**
TL* THE CONTACT OWNS A 2013 KIA OPTIMA HYBRID. THE CONTACT RECEIVED NOTIFICATION OF NHTSA CAMPAIGN NUMBER: 20V750000 (ENGINE). THE CONTACT'S DAUGHTER WAS DRIVING AT AN UNDISCLOSED SPEED, WHEN THE VEHICLE STALLED. THE VEHICLE WAS TOWED TO KIA OF MCCOMB (1030 LONGLEAF RD, MCCOMB, MS 39648) AND DIAGNOSED THAT THE ENGINE HAD THROWN A ROD AND NEEDED TO BE REPLACED. THE DEALER INFORMED THE CONTACT THAT THE VEHICLE WAS ELIGIBLE FOR A NEW ENGINE UNDER THE RECALL HOWEVER, AFTER SPEAKING WITH THE MANUFACTURER, THE CONTACT WAS INFORMED THAT THE VEHICLE WAS EXCLUDED FROM THE RECALL REPAIR BECAUSE THE MILEAGE WAS OVER 150,000. THE CONTACT STATED THAT THE VEHICLE HAD A HYBRID AND GASOLINE ENGINE SO THE ODOMETER MILEAGE SHOULD NOT BE THE DECIDING FACTOR IN DETERMINING WHICH VEHICLES WERE INCLUDED OR EXCLUDED FROM THE FREE RECALL REPAIR AND ENGINE REPLACEMENT. THE FAILURE MILEAGE WAS 162,900. VIN WAS UNAVAILABLE.

## 2011 Kia Sorento

**August 1, 2012 NHTSA ID NUMBER: 10468798**

TL* THE CONTACT OWNS A 2011 KIA SORENTO. THE CONTACT STATED THAT THE VEHICLE WOULD STALL SPORADICALLY WITH THE ILLUMINATION OF THE CHECK ENGINE AND OIL WARNING LIGHTS. THE VEHICLE HAD BEEN TAKEN TO THE DEALER THREE TIMES FOR THE FAILURE BUT THE TECHNICIANS WERE UNABLE TO DUPLICATE OR CORRECT THE PROBLEM. THE VIN WAS NOT AVAILABLE. THE FAILURE MILEAGE WAS 7,000 AND THE CURRENT MILEAGE WAS 15,000.

**November 2, 2012 NHTSA ID NUMBER: 10483125**
TL* THE CONTACT OWNS A 2011 KIA SORENTO. THE CONTACT STATED THAT WHILE DRIVING 10 MPH THE VEHICLE STALLED WITHOUT WARNING. THE VEHICLE WAS TAKEN TO THE DEALER WHO WAS UNABLE TO DIAGNOSE THE FAILURE BUT REPLACED THE ALTERNATOR AS A TEMPORARY REMEDY. THE REMEDY FAILED TO REPAIR THE FAILURE. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE WHO ADVISED THE CONTACT THAT THEY WOULD FOLLOW UP WITH THE DEALER. THE VEHICLE WAS NOT REPAIRED. THE FAILURE MILEAGE WAS 10 AND THE CURRENT MILEAGE WAS 47,000.

**September 7, 2013 NHTSA ID NUMBER: 10542432**
FROM POINT OF PURCHASE (NOVEMBER 2010) THE VEHICLE ALWAYS HAD A HARD START, THE SEAT BELT WAS INCORRECTLY INSTALLED AND THE GAS LID FAILS TO OPEN WITHOUT MANUAL PRODDING. IN APRIL 2012 THE ENGINE FAILED TO START, AND THEN THIS CONTINUED TO HAPPEN MULTIPLE TIMES THEREAFTER. THE DEALERSHIP CHANGED THE BATTERY AND SERVICE THE VEHICLE. IN THE FOLLOWING MONTHS A SERIES OF ISSUES CONTINUED, WINDSHIELD WASHER PUMP STOPPED WORKING, FAILURE START, LOUD KNOCKING SOUND IN THE ENGINE WHILE IDLE AND DRIVING, AND THEN THE CAR STARTED TO STALL AND THRUST HARD FORWARD. THE CAR WAS SERVICED AGAIN, OIL CHANGED, THE CHANGED THE PUMP AND FILTERS, ALL REPORTED PROBLEMS PERSISTED THROUGH 2013. FOR THREE MONTHS THE CAR REMAINED IN THE DEALERSHIP SERVICE SHOP WHERE THE ENGINE WAS SERVICED, AND SOME ?TAPPETS? WERE REPLACED. THE DEALERSHIP CRACKED THE ENGINE COVER, REPLACED IT, WITHOUT INFORMING ME. ALL ENGINE, FAIL START, AND WINDSHIELD PUMP ISSUES CONTINUES TO PERSIST TO DATE (SEPTEMBER 2013) DESPITE MULTIPLE SERVICES.

**July 21, 2016 NHTSA ID NUMBER: 10887421**
ENGINE WAS MAKING A CYCLICAL CLICKING/KNOCKING NOISE. WE TOOK THE VEHICLE TO KIA DEALERSHIP AND THEY SAID THEY COULD NOT FIND ANY ISSUES WITH THE CAR. ABOUT A WEEK LATER THE CAR BROKE DOWN WHILE DRIVING AT HIGHWAY SPEEDS. AFTER HAVING IT TOWED TO AN INDEPENDENT GARAGE, WE WERE INFORMED THE ENGINE HAD A CONNECTING ROD FAILURE. THIS IS THE EXACT SAME PROBLEM THE HYUNDAI SONATA HAS WITH THE EXACT SAME THETA 2.4 LITER ENGINE. HYUNDAI HAS ISSUES A RECALL BUT KIA FAILS TO ACKNOWLEDGE THE ISSUE.

**January 14, 2021 NHTSA ID NUMBER: 11388180**
IT STARTED LIKE A LOW SOUND FROM THE ENGINE WHEN I TRIED TO SPEED UP THREE DAYS BEFORE MONDAY. AND THIS NOISE WAS GROWING WHILE DRIVING ON ROAD. THE CAR SLOWED DOWN GRADUALLY AND STOPPED THE ENGINE. THE MECHANIC HELPED ME REACH MY APT AND PARKED AFTER HE CHANGED ONLY THE STARTER, HE SAID ENGINE FAILURE DUE TO DEFEATED BEARING.

**April 27, 2021 NHTSA ID NUMBER: 11414131**
TL* THE CONTACT OWNED A 2011 KIA SORENTO. THE CONTACT STATED WHILE DRIVING 70 MPH, THE CONTACT HEARD A LOUD NOISE COMING FROM THE ENGINE COMPARTMENT. THE CONTACT PULLED OVER TO THE SIDE OF THE ROAD AS SPARKS AND FLAMES WERE SEEN COMING FROM THE ENGINE COMPARTMENT. THE CONTACT EXITED THE VEHICLE, OPENED THE HOOD AND A FIRE EMERGED FROM THE ENGINE. THE CONTACT STATED THAT SHE SUSTAINED AN EYE INJURY DUE TO THE FLAMES. THE FIRE DEPARTMENT WAS CONTACTED AND WAS ABLE TO EXTINGUISH THE FIRE. THE CONTACT WAS UNAWARE IF A POLICE OR FIRE DEPARTMENT REPORT WAS FILED. THE VEHICLE WAS TOWED TO A JUNK YARD. THE CONTACT NOTIFIED KIA OF SOUTH AUSTIN (5306 S IH 35 FRONTAGE RD, AUSTIN, TX 78745) AND THEY INFORMED THE CONTACT THAT THEY COULD NOT ASSIST DUE TO THE VEHICLE NOT BEING UNDER A RECALL. THE VEHICLE HAD NOT BEEN DIAGNOSED OR REPAIRED. THE VEHICLE WAS DESTROYED. THE MANUFACTURER HAD BEEN INFORMED OF THE FAILURE AND COMPLAINT WAS FILED. THE FAILURE MILEAGE WAS UNKNOWN.

## 2012 Kia Sorento

**August 9, 2012 NHTSA ID NUMBER: 10469985**
TL* THE CONTACT OWNS A 2012 KIA SORENTO. THE CONTACT WAS DRIVING 20 MPH WHEN THE VEHICLE STALLED WITHOUT WARNING. THERE WERE NO WARNING LIGHTS ILLUMINATING. THE ENGINE WAS TURNED OFF AND THEN RESTARTED WITHIN TEN MINUTES. THE DEALER WAS NOTIFIED AND THE CONTACT WAS WAITING ON A RETURN CALL. THE MANUFACTURER WAS NOT NOTIFIED. THE FAILURE MILEAGE WAS 17,000.

**November 26, 2012 NHTSA ID NUMBER: 10486070**
TL* THE CONTACT OWNS A 2012 KIA SORENTO. THE CONTACT STATED THAT WHILE DRIVING 60 MPH THE VEHICLE STALLED. THE VEHICLE WAS MERGED TO THE SIDE OF THE ROAD AND THEN TOWED TO A DEALER FOR DIAGNOSIS. THE TECHNICIAN STATED THAT THE ENGINE LOCKED UP AND AS A RESULT, IT WOULD NEED TO BE REPLACED. THE VEHICLE WAS IN THE PROCESS OF BEING REPAIRED. THE MANUFACTURER WAS NOTIFIED BUT OFFERED NO ASSISTANCE. THE FAILURE AND CURRENT MILEAGE WAS 22,000... UPDATED 01/04/13 *BF THE DEALER REPLACED THE ENGINE BLOCK UNDER WARRANTY. UPDATED 01/09/13

**July 7, 2015 NHTSA ID NUMBER: 10732492**
MY 2012 KIA SORENTO WAS RUNNING FINE, NO WARNING WHATSOEVER. I WAS ON THE HIGHWAY WHEN I HEARD A FLUTTER NOISE THAT TURNED INTO A KNOCKING SOUND. HAD THE CAR TOWED TO DEALER. TOW TRUCK DRIVER STARTED THE CAR AND DROVE IT APPROXIMATELY 60 FT TO A PARKING SPOT. I WAS TOLD BY THE DEALER I HAD CATASTROPHIC ENGINE FAILURE AND THAT THE ENGINE WAS SEIZED TIGHT (WHICH WAS NOT TRUE AT ALL) DUE TO NEGLECT. I HAVE PROVIDED KIA CORP. AND THE DEALER WITH ALL OF THE SERVICE RECORDS AS WELL AS THE OIL PURCHASE RECEIPTS, OIL FILTER RECEIPTS AND OIL CHANGE RECORDS. OIL CHANGES WERE PERFORMED TO WHAT KIA'S MANUAL SUGGESTS. I HAVE DONE RESEARCH AND HAVE FOUND NUMEROUS KIA OWNERS WITH THE EXACT SAME ISSUE I HAD. THEIR COMPLAINTS ARE ALMOST EXACTLY WORD FOR WORD WHAT HAPPENED TO MY KIA. SOMETHING NEEDS TO BE DONE ABOUT THIS...MOST KIA OWNERS HAD THIS CATASTROPHIC

ENGINE FAILURE HAPPEN ON THE HIGHWAY OR WHEN THEIR TEENAGERS WERE DRIVING. KIA HAS A CLASS ACTION LAW SUIT AGAINST THEM FOR THIS VERY REASON. PLEASE DO SOMETHING BEFORE SOMEONE REALLY GETS HURT. I WAS VERY LUCKY THERE WAS NOT A LOT OF TRAFFIC AND WAS ABLE TO GET OFF OF THE HIGHWAY. IF THERE WERE TRAFFIC AND I WAS NOT ABLE TO GET OFF OF THE HIGHWAY.. IT COULD GAVE RESULTED IN MUCH WORSE. PLEASE I AM BEGGING YOU TO DO SOMETHING ABOUT THIS. I HAVE CAME ACROSS SO MANY PEOPLE IN STORES, RESTAURANTS, AND DEALERS WHILE LOOKING FOR ANOTHER CAR TO BE ABLE TO GET MY CHILD TO AND FROM SCHOOL, FOOTBALL, ETC. I STILL HAVE A LOAN ON MY KIA AND NOW HAVE ANOTHER LOAN BECAUSE THIS ISSUE. KIA HAS BASED MY WARRANTY REPAIR ON PICTURES THE DEALER TOOK. THEY ABSOLUTELY REFUSE TO LISTEN TO ME NOR HELP ME. I BEGGED AND PLEADED WITH THEM TO LOOK FURTHER INTO IT AND THEY WANTED NOTHING TO DO WITH IT. THEN I WAS TOLD THERE WAS NOTHING ELSE THEY COULD DO AND I NEEDED TO GET MY CAR OFF OF THEIR LOT.

**June 1, 2017 NHTSA ID NUMBER: 10992669**
TL* THE CONTACT OWNS A 2012 KIA SORENTO. WHILE DRIVING 45 MPH, THE CRANK CASE BEARING IN THE ENGINE DISINTEGRATED AND RUINED THE MOTOR. THE VEHICLE WAS TOWED TO OXONDALE KIA IN FLAGSTAFF ARIZONA WHERE IT WAS DIAGNOSED THAT METAL FRAGMENTS ENTERED INTO THE ENGINE OIL DEPOSIT, WHICH CAUSED FURTHER DAMAGE TO THE VEHICLE. THE SERVICE MANAGER AT THE DEALER STATED THAT THERE WAS A RECALL FOR THE FAILURE, BUT THE CONTACT'S VIN WAS NOT INCLUDED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. THE RECALL DETAILS WERE NOT PROVIDED. THE FAILURE MILEAGE WAS APPROXIMATELY 81,000.

**June 16, 2017 NHTSA ID NUMBER: 10995476**
TL* THE CONTACT OWNS A 2012 KIA SORENTO. WHILE OPERATING THE VEHICLE, A LOUD TICKING NOISE WAS PRESENT COMING FROM THE ENGINE AND THE VEHICLE SUDDENLY SHUT OFF. THE VEHICLE WAS TOWED TO SOUTHWEST KIA OF ROUND ROCK, TEXAS WHERE IT WAS DIAGNOSED THAT THE ENGINE WAS FAULTY AND NEEDED TO BE REPLACED. THE VEHICLE WAS NOT

REPAIRED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE.
THE FAILURE MILEAGE WAS 103,000.

## 2013 Kia Sorento

**April 3, 2013 NHTSA ID NUMBER: 10505487**
ENGINE STARTED MAKING A LOUD NOISE, CHECKED OIL TURNED
ENGINE OFF AND ON AGAIN AND NOISE CONTINUED. DROVE HOME
APPROX 150 MILES FROM VISITING OUR SON AT COLLEGE. AFTER
ARRIVING AT HOME ENGINE STILL MADE NOISE. TOOK INTO
DEALER THE FOLLOWING DAY AND TODAY WAS INFORMED WE
ARE NEEDING A NEW SHORT BLOCK ENGINE AND IT'S ON
BACKORDER FOR A WEEK AND A HALF. NOT A HAPPY CUSTOMER,
SINCE I AM MAKING CAR PAYMENTS AND DON'T HAVE THE
VEHICLE. IT WORRIES ME WHAT IS YET TO COME WITH THIS
VEHICLE. THE REASON WE PURCHASED IT TO BEGIN WITH WAS
THE WARRANTY, BUT HAD WE KNOWN WE'D BE USING IT 7
MONTHS INTO OWNING THIS KIA I WOULD HAVE NEVER
PURCHASED IT TO BEGIN WITH. I DO WANT TO SAY THE
DEALERSHIP WE ARE DEALING WITH ARE EXTREMELY HELPFUL
WITH A LOANER CAR, ALTHOUGH IT'S A SEDAN AND NOT WHAT I
PURCHASED. SO THEY ARE DOING THEIR PART AND I APPRECIATE
THAT FACT. *TR

**March 27, 2014 NHTSA ID NUMBER: 10575062**
ENGINE STALLED A TOTAL OF 8 TIMES WHILE IN MOTION SINCE
6/13/12, THE DATE OF PURCHASE OF THIS NEW CAR. THIS CAR HAD
BEEN TAKEN INTO THE DEALER MULTIPLE TIMES. KIA HAS SAID IT
CANNOT DIAGNOSE THE PROBLEM. *TR

**October 2, 2017 NHTSA ID NUMBER: 11030863**
I EXPERIENCE A LOUD KNOCKING IN MY ENGINE, UPON BRINGING
TO THE DEALERSHIP FOR FURTHER INSPECTION, THE ENGINE IS
BELIEVED THAT THE ROD BEARINGS FAILED AND THE ENGINE
HAS METAL DEBRI INSODE OF ENGINE. CAUSING THE ENGINE TO
BE COMPLETELY UNUSABLE AND POSSIBLY OTHER ENGINE
DAMAGE BECAUSE OF THIS. NOT TO MENTION THE SENSORS ON
THE CAR NEVER CAME ON TO WARN ME OF ANY POSSIBLE
PROBLEMS THAT MIGHT BE HAPPENING. THE CAR IS STILL BEING
OWED ON AND IN UNDRIVABLE CONDITION. IT HAS BEEN SINCE
PARKED, EXCEPT WHEN TOWED ( FULL BED TOW) TO THE

DEALERSHIP FOR INSPECTION AND THAN TOWED BACK TO MY RESIDENCE. THE ESTIMATED COST KIA OFFERED WAS OVER $9,000 FOR PARTS AND LABOR WITH ONLY A 12,000 MILE/ 1 YEAR WARRANTY WHEN THE ORIGINAL ENGINE WARRANTY IS 100.000 MI WARRANTY. THE MAINTENCE HAS BEEN KEPT UP ON DURING THE LIFE OF THE VWHICLE AND NO KNOWN NEGLIGENCE WAS DONE TO CAUSE THIS PROBLEM. THE PROBLEM WAS IDENTIFIED WHEN MY HUSBAND WAS DRIVING AND THE CAR STALLED OUT 3 TIMES WHILE PICKING UP OUR KIDS FROM SCHOOL. WHEN HE ARRIVED HOME IT HAD LOUND KNOCKING NOISES COMING FROM ENGINE , SO WE ARRANGED FOR THE DEALER TO INSPECT THE ISSUE. THEY INFORMED ME IT WAS OVER THEIR WARRANTY BECAUSE OF THE MILEAGE AND WOULDNT COVER THE DAMAGE. I HAVE SINCE FOUND OUT OTHER OWNERS WITH SIMILAR PROBLEMS AS MY KIA HAPPENING TO THEM AS WELL AS THE LAWSUIT THAT KIA /HYUNDAI PAID OUT FOR REPAIRS IN THE CASE GREG WALLIS VS. KIA MOTORS CASE #8:16-CV-01033 (US DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA. WITH THEM AGREEING TO PAY ALL REPAIRS.

**February 16, 2021 NHTSA ID NUMBER: 11396451**
DRIVING HOME FROM 30 MILE TRIP AND ENGINE MADE A BIG TICKING NOISE THEN A BOOM. LOTS OF SMOKE COMING FROM HOOD AND COASTED TO STOP. ONLY HAS 107K MILES. NEVER HAD A CAR DO THIS BEFORE. GOT IT ANALYZE FROM GARAGE AND THERE IS A HOLE IN THE ENGINE BLOCK.

**March 11, 2021 NHTSA ID NUMBER: 11400294**
TL* THE CONTACT OWNS A 2013 KIA SORENTO. THE CONTACT STATED THAT WHILE DRIVING APPROXIMATELY 40 MPH, THE VEHICLE STALLED WITHOUT WARNING. THE CONTACT COASTED TO THE SIDE OF THE ROAD AND TURNED OFF THE VEHICLE. THE VEHICLE WAS TOWED TO A CERTIFIED MECHANIC WHO STATED THAT THE ENGINE BEARINGS WERE WORN, CAUSING THE ENGINE TO SEIZE. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE AND INFORMED THE CONTACT THAT THE VIN WAS NOT UNDER RECALL. THE APPROXIMATE FAILURE MILEAGE WAS 100,000.

**2012 Kia Soul**

**October 25, 2021 NHTSA ID NUMBER: 11438456**
APPROXIMATELY SIX MONTHS AGO, MY CHECK ENGINE LIGHT CAME ON AND I TOOK MY CAR TO A LOCAL MECHANIC. HE SAID THAT I NEEDED AN OIL CHANGE AND MY OIL LEVEL SEEMED A BIT LOW EVEN THOUGH IT WASN'T AT THE 5000 MILE MARK YET, SO I SHOULD KEEP AN EYE ON OIL CONSUMPTION. AROUND 3500 MILES AFTER THIS OIL CHANGE, MY CHECK ENGINE LIGHT CAME ON AGAIN. I TOOK MY CAR BACK TO THE MECHANIC AT MIDAS AND HE INFORMED ME THAT MY CAR WAS CONSUMING OIL DUE TO FAULTY SEALS AROUND THE PISTONS, AND I WOULD NEED TO MAKE A WARRANTY CLAIM TO KIA. THE DEALERSHIP IMMEDIATELY KNEW WHAT THE ISSUE WAS AND AGREED TO MAKE AN APPOINTMENT TO REPLACE THE ENGINE, BUT CALLED BACK AND INFORMED ME I NEEDED TO DO AN OIL CONSUMPTION TEST AND WOULD HAVE TO PAY FOR AN ADDITIONAL OIL CHANGE FROM THE DEALERSHIP. I AGREED AND AFTER DRIVING 1000 MILES I BROUGHT MY CAR BACK. THE DEALERSHIP CONFIRMS IT IS BURNING OVER A QUART OF OIL EVERY 1000 MILES, BUT NOW THEY CLAIM THE ENGINE WILL NOT BE COVERED UNLESS IT SEIZES UP WHILE I AM DRIVING. THEIR SUGGESTION IS I REPLACE THE ENGINE ON MY OWN DIME OR PUT MORE OIL IN EVERY FEW THOUSAND MILES UNTIL IT SEIZES AND CAUSES A POTENTIALLY FATAL ACCIDENT. AS I HAVE BEEN RESEARCHING ONLINE, I HAVE FOUND SEVERAL PEOPLE WITH SIMILAR ISSUES, AND MANY WHO'S CARS HAVE SEIZED WHILE THEY WERE DRIVING HIGHWAY SPEEDS. IT SEEMS AS THOUGH KIA'S PLAN TO KEEP COSTS LOW IS TO HOPE ANYONE WITH AN ENGINE CLAIM DIES IN THE CRASH WHEN IT INEVITABLY SEIZES UP. BURNING OVER A QUART OF OIL EVERY 1000 MILES AND SUGGESTING I PUMP MORE OIL IN TO GET BURNED UP IS HARDLY ENVIRONMENTALLY FRIENDLY OR HEALTHY FOR THE AIR WE BREATHE. THERE SHOULD BE A RECALL FOR KIA ENGINES BECAUSE THIS IS OBVIOUSLY A WIDESPREAD AND WELL KNOWN ISSUE, BUT FOR SOME REASON KIA WAS ALLOWED TO GET AWAY WITH RECALLING A FRACTION OF THE CARS THEY SHOULD AND LETTING THE REST OF US RISK OUR LIVES WAITING FOR OUR ENGINE TO SEIZE UP GOING 75MPH!

**October 21, 2021 NHTSA ID NUMBER: 11438146**
WHILE ATTEMPTING TO ACCELERATE ON THE INTERSTATE (AROUND 70 MPH), THE ENGINE BEGAN TO KNOCK. NO WARNING

LIGHTS WERE ILLUMINATED. TOOK THE VEHICLE TO A LOCAL
AUTOMOTIVE REPAIR AND WAS INFORMED THAT IT HAD
COMPLETELY BURNED THROUGH THE OIL AND THE ENGINE
WOULD NEED TO BE REPLACED. THE TECHNICIAN ADVISED THAT
THERE IS A TECHNICAL SERVICE BULLETIN OUT FOR THE ISSUE IN
QUESTION AS IT RELATES TO EXCESSIVE OIL CONSUMPTION FOR
AFFECTED VEHICLES. THE ENGINE COULD HAVE FAILED AT ANY
POINT AND WE WERE ADVISED IT WAS UNSAFE TO DRIVE. AS
STATED EARLIER, THERE WERE NO WARNING LIGHTS AND NO
REASON TO BELIEVE ANYTHING WAS WRONG WITH THE CAR
PRIOR TO THIS INCIDENT AS IT HAS HAD ROUTINE OIL CHANGES
AND MAINTENANCE. THE PROBLEM WAS DETECTED AT A TIRES
PLUS LOCATION BUT THE CAR IS BEING TOWED TO THE DEALER
TO CONFIRM THE ISSUE THIS WEEK. THE VEHICLE HAS NOT BEEN
INSPECTED BY ANYONE ELSE.

**October 1, 2019 NHTSA ID NUMBER: 11436437**
THE CONTACT OWNS A 2012 KIA SOUL. THE CONTACT STATED
WHILE DRIVING APPROXIMATELY 65 MPH WHEN THE ENGINE
BEGAN TO KNOCK. THE CONTACT STATED NO WARNING LIGHTS
WERE ILLUMINATED. THE VEHICLE WAS TAKEN TO A LOCAL
DEALER WHERE IT WAS DIAGNOSED WITH NEEDING ENGINE
REPLACED BUT WAS NOT REPAIRED. UPON INVESTIGATION, THE
CONTACT ASSOCIATED THE FAILURE WITH NHTSA CAMPAIGN
NUMBER: 19V120000 (ENGINE, ENGINE AND ENGINE COOLING)
HOWEVER THE VIN WAS NOT INCLUDED. THE MANUFACTURER
WAS INFORMED OF FAILURE AND TOLD THE CONTACT THAT
THEIR VEHICLE WAS NOT INCLUDED IN A RECALL. THE FAILURE
MILEAGE WAS APPROXIMATELY 130,000

**January 1, 2018 NHTSA ID NUMBER: 11436472**
THE ROD PUNCTURED THE ENGINE BLOCK AND CAUSED A FIRE
AROUND THE FUEL PUMP AREA. SIGNS ON THE POSITIVE BATTERY
TERMINAL OF JUMPING BACKWARDS. KIA BELIEVES THE CAUSE
OF THE FIRE WAS THE ENGINE FALLING APART. I HAD BEEN
TRAVELLING FREE OF WORRY WHEN I HEARD A HIGH WHIRRING
SOUND THEN A BANG COMING FROM THE ENGINE. I PULLED OVER
IMMEDIATELY AND UPON OPENING THE HOOD DISCOVERED A
FIRE. GOOD SAMARITANS PULLED OVER AND PUT THE FIRE OUT,
THERE WERE 3 FEMALES IN MY CAR WHO COULD'VE BURNED
ALIVE HAD THE OTHERS NOT STOPPED. THE CAR NEEDED A NEW

ENGINE AT THE COST OF $7,404.08 I SOLD THIS CAR TO CARVANA AND AM WAITING FOR KIA TO GET THEIR ACT TOGETHER AND REFUND THE COST OF POTENTIALLY KILLING 3 PEOPLE. I HAVE ALL PAPERWORK FROM KIA REGARDING THE INCIDENT.

**July 14, 2021 NHTSA ID NUMBER: 11432801**
THE CONTACT OWNS A 2012 KIA SOUL. THE CONTACT STATED UPON STARTING THE VEHICLE, THE CHECK ENGINE WARNING LIGHT ILLUMINATED. THE VEHICLE WAS TAKEN TO AN INDEPENDENT MECHANIC WHO DIAGNOSED THAT THE ESC SENSORS NEEDED TO BE REPLACED. THE CONTACT STATED THAT THE VEHICLE WAS REPAIRED HOWEVER, THE FAILURE PERSISTED. THE CONTACT STATED WHILE DRIVING 60 MPH, THE ENGINE STARTED KNOCKING. THE CHECK ENGINE WARNING LIGHT ILLUMINATED. THE CONTACT WAS ABLE TO PULL INTO A NEARBY GAS STATION. THE VEHICLE WAS TOWED TO THE DEALER WHO DIAGNOSED THAT THE ENGINE HAD FAILED AND NEEDED TO BE REPLACED. THE DEALER INFORMED THE CONTACT THAT THE VEHICLE COULD NOT BE REPAIRED UNDER NHTSA CAMPAIGN NUMBER: 19V120000 (ENGINE, ENGINE, AND ENGINE COOLING) SINCE THE VEHICLE WAS OUT OF WARRANTY. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. THE VEHICLE WAS NOT REPAIRED. THE APPROXIMATE FAILURE MILEAGE WAS 118,000.

**July 24, 2021 NHTSA ID NUMBER: 11430641**
THE CONTACT OWNS A 2012 KIA SOUL. THE CONTACT STATED THAT WHILE DRIVING AT 55 MPH, A ABNORMAL NOISE AND ODOR APPEARED FROM THE REAR BOTH DRIVER AND PASSENGER SIDE OF THE VEHICLE. THE CONTACT MANAGED TO VEER TO THE SHOULDER OF THE ROAD, TURN THE VEHICLE OFF, WAIT FOR ABOUT 15 MINUTES, ATTEMPTED TO TURN THE VEHICLE BACK ON WHEN THE NOISE BECAME LOUDER AND THE CHECK ENGINE WARNING ILLUMINATED. THE VEHICLE THEN WAS TOWED TO AN INDEPENDENT MECHANIC WHERE IT WAS DIAGNOSED THAT THE COMMAND ROD FRACTURED AND WENT THROUGH THE ENGINE. THE VEHICLE WAS NOT REPAIRED. THE VEHICLE WAS NOT DRIVABLE. IN ADDITION, A VISIBLE LEAK WAS NOTICED BY THE TECHNICIAN. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE AND INFORMED THE CONTACT THAT NO RECALLS WERE UNDER THE VIN. THE CONTACT MENTIONED NHTSA CAMPAIGN

NUMBER: 19V12000 ( ENGINE, ENGINE COOLANT ) AS A POSSIBLE
SOLUTION TO THE FAILURE HOWEVER THE VIN WAS NOT
INCLUDED. THE FAILURE MILEAGE WAS APPROXIMATE 90,600.

**May 1, 2021 NHTSA ID NUMBER: 11416175**
I RECEIVED A RECALL LETTER THAT WAS DATED ON APRIL 6,2021
FROM KIA THAT MY CAR NEEDED TO COME IN FOR UPDATE TO
THE ENGINE TO PROTECT FROM EXCESSIVE ROD BEARING
DAMAGE. UPON GETTING THE CAR FROM THE COLLEGE CAMPUS
AND ON THE WAY TO BRING IT BACK INTO THE AREA TO GET THE
WORK DONE, IT BLEW THE ENGINE. KIA IS NOW STATING THAT
THEY WILL NOT TAKE CARE OF THE PROBLEM SINCE I WASN'T
ABLE TO GET THE CAR THERE TO HAVE THE WORK DONE BEFORE
THE DAMAGE HAPPENED. THE ENGINE BLEW ON MAY 1,2021 LESS
THAN A MONTH AFTER THEIR LETTER WAS DRAFTED. THIS IS A
CAR THAT HAS ALWAYS BEEN DEALER MAINTAINED AND HAS
ALWAYS BEEN KEPT UP ON ITS REPAIRS. THEY TOLD ME THAT
THEY DIDN'T EVEN LOOK INTO THE HISTORY OF THE CAR AND
JUST SAID THAT IT WAS MY FAULT FOR NOT MAKING IT IN TO THE
SHOP, EVEN THROUGH THAT'S WHERE I WAS GETTING IT TO. THEY
IN THEIR LETTER STATE THAT HAD I BEEN ABLE TO GET THE CAR
IN IT WOULD HAVE EXTENDED THE WARRANTY TO 150,000 MILES,
THE CAR ONLY HAS 107,000 ON IT WHEN THIS HAPPENED. EVEN
THROUGH THEY SENT A LETTER STATING THAT THEY SOLD ME A
CAR WITH FAULTY PARTS NOW THEY WON'T COVER THE DAMAGE.
DAMAGE THAT LUCKILY DIDN'T END IN A MAJOR ACCIDENT BUT
DID TOTAL MY CAR. THE CAR WAS TRAVELING AT 75 MILES PER
HOUR ON THE HIGHWAY WHEN THE ROD BROKE OFF AND WENT
THRU THE SIDE OF THE ENGINE.

**May 1, 2018 NHTSA ID NUMBER: 11415244**
TL* THE CONTACT OWNS A 2012 KIA SOUL. THE CONTACT STATED
WHILE DRIVING AT VARIOUS SPEEDS, AN ABNORMAL KNOCKING
SOUND WAS COMING FROM THE ENGINE. THERE WAS NO
WARNING LIGHT ILLUMINATED. THE CONTACT ALSO STATED
THAT A RATTLING SOUND WAS COMING FROM THE VEHICLE
WHILE DEPRESSING THE ACCELERATOR PEDAL, WITHOUT
WARNING. UPON INVESTIGATION, THE CONTACT DISCOVERED
NHTSA CAMPAIGN NUMBER: 19V120000 (ENGINE, ENGINE AND
ENGINE COOLING) WHICH SHE LINKED TO THE FAILURE. THE
MANUFACTURER WAS NOTIFIED OF THE FAILURE AND INFORMED

HER THAT THE VIN WAS NOT UNDER RECALL. THE VEHICLE WAS
NOT REPAIRED. THE FAILURE MILEAGE WAS UNKNOWN.

**March 19, 2021 NHTSA ID NUMBER: 11414287**
TL* THE CONTACT OWNS A 2012 KIA SOUL. THE CONTACT STATED
WHILE DRIVING 55 MPH, THE VEHICLE STARTED TO DECELERATE
AND LOSE FORWARD MOMENTUM. THE CONTACT STATED THAT
WITH THE ACCELERATOR PEDAL DEPRESSED, THE VEHICLE
FAILED TO EXCEED 40 MPH. THE CHECK ENGINE WARNING LIGHT
WAS ILLUMINATED. THE VEHICLE WAS DRIVEN TO THE LOCAL
MECHANIC WHO HAD THE VEHICLE TOWED TO SOUTHWEST KIA -
DALLAS (39650 LYNDON B JOHNSON FWY, DALLAS, TX 75237, (972)
283-9797) TO BE DIAGNOSED. THE CONTACT WAS INFORMED THAT
THE ENGINE NEEDED TO BE REPLACED DUE TO A CONNECTING
ROD FAILURE. THE VEHICLE WAS REPAIRED. THE MANUFACTURER
WAS NOT MADE AWARE OF THE FAILURE. THE APPROXIMATE
FAILURE MILEAGE WAS 154,000.

**March 10, 2021 NHTSA ID NUMBER: 11400128**
TL* THE CONTACT OWNS A 2012 KIA SOUL. THE CONTACT STATED
THAT WHILE DRIVING AT 65 MPH, AN ABNORMAL KNOCKING
NOISE COULD BE HEARD FROM THE VEHICLE AS AN UNKNOWN
COLOR SMOKE BEGAN TO EMIT FROM THE ENGINE. AS THE
CONTACT PULLED OVER AND OPENED THE HOOD, FLAMES BEGAN
TO EMIT FROM THE ENGINE AS TWO FELLOW MOTORISTS
ASSISTED HER WITH THROWING A BLANKET OVER THE FLAMES
TO EXTINGUISHED THE FIRE. NO INJURIES WERE REPORTED AND
THE AUTHORITIES WERE NOT CALLED TO THE SCENE. DUE TO THE
FAILURE, THE CONTACT HAD THE VEHICLE TOWED TO TOM
DOLAN'S RENO KIA(9455 S VIRGINIA ST, RENO, NV 89511) WHERE
THEY DISCOVERED THAT AN ENGINE ROD HAD BLOWN THREW AN
ENGINE BLOCK. THEY DIAGNOSED THE VEHICLE WITH ENGINE
FAILURE AND THE CONTACT HAD THE ENGINE REPLACED. THE
MANUFACTURER WAS NOTIFIED OF THE FAILURE AND OFFERED
NO ASSISTANCE. THE VEHICLE WAS REPAIRED BY THE DEALER.
THE FAILURE MILEAGE WAS 105,402.

**February 20, 2021 NHTSA ID NUMBER: 11397731**
TL* THE CONTACT OWNS A 2012 KIA SOUL. THE CONTACT STATED
THAT WHILE HIS DAUGHTER WAS DRIVING AT HIGHWAY SPEEDS,
AN ABNORMAL KNOCKING NOISE BEGAN TO EMIT FROM THE

ENGINE WITHOUT WARNING. DESPITE THE NOISE, HIS DAUGHTER WAS ABLE TO RESUME NORMAL DRIVING AND DROVE THE VEHICLE HOME. THE NEXT DAY, THE CONTACT STARTED THE VEHICLE AND BEGAN HEARING THE KNOCKING NOISE FOR HIMSELF AND IMMEDIATELY TURNED THE VEHICLE OFF. THE CONTACT CALLED KIA OF GREER (14345 E WADE HAMPTON BLVD, GREER, SC 29651) WHERE HE WAS INFORMED THAT NO REPAIRS COULD BE PERFORMED ON THE VEHICLE UNLESS THE MANUFACTURER APPROVED OF THE REPAIR. THE MANUFACTURER WAS THEN NOTIFIED OF THE FAILURE AND INFORMED THE CONTACT THAT THE VEHICLE WAS NOT UNDER RECALL. THE CONTACT WAS REFERRED TO NHTSA FOR ASSISTANCE. THE VEHICLE WAS NOT REPAIRED. THE FAILURE MILEAGE WAS APPROXIMATELY 134,000.

**January 27, 2021 NHTSA ID NUMBER: 11390200**
THE ENGINE MADE A POPPING SOUND AND BURST INTO FLAMES.

**December 9, 2020 NHTSA ID NUMBER: 11382733**
TL* THE CONTACT OWNS A 2012 KIA SOUL. THE CONTACT STATED THAT WHILE OPERATING THE VEHICLE, THE CHECK ENGINE LIGHT HAD ILLUMINATED AND THE SPEED OF THE VEHICLE HAD SUDDENLY REDUCED. THE VEHICLE WAS TAKEN TO THE LOCAL DEALER TROPHY KIA OF CARSON LOCATED AT 22020 RECREATION RD, CARSON, CA 90745, WHO RESET THE ENGINE SOFTWARE BUT THE FAILURE CONTINUED TO OCCUR. THE ENGINE LATER EXPERIENCED A LOUD KNOCKING NOISE AND EXCESSIVE OIL CONSUMPTION. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE AND INFORMED THAT THE VIN WAS NOT INCLUDED IN NHTSA CAMPAIGN NUMBER: 19V120000 (ENGINE AND ENGINE COOLING). THE CONTACT STATED THAT THE VEHICLE HAD EXPERIENCED THE SAME FAILURE LISTED IN THE RECALL. THE FAILURE MILEAGE WAS 125,000.

**August 17, 2020 NHTSA ID NUMBER: 11349920**
7/22/20 - CAR DRIVEN TO FIRESTONE STORE #005738, NEWPORT, KY TO PURCHASE 2 NEW TIRES AND AN ENGINE COURTESY CHECK WAS PERFORMED - FIRESTONE ID #7046930 - NO ENGINE LIGHTS, NO SAFETY WARNINGS, MILEAGE 77,071 MILES ON CAR. 7/27/20 - THE CAR STOPPED RUNNING WHILE BEING DRIVEN - CAR WAS TOWED TO FIRESTONE, MASON, OH. 7/29/20 - THEY EXAMINED THE

CAR, MILEAGE 77,398. THE ENGINE HAD A ROD BLOW THROUGH
THE OIL PAN CAUSING ALL OF THE OIL TO DRAIN FROM THE CAR.
THEY ALSO RAN A DIAGNOSITC ON THE CAR AND THE MECHANIC
GOT A READING OF CODES: P0300 - RANDOM MULTIPLE PISTONS
MIS FIRE, P0303 - CYLANDER #3 MIS FIRING. THIS IS SIMILAR TO A
CURRENT RECALL ON 2012–2016 KIA SOULS - RECALL #19V120000.
[VEHICLES EQUIPPED WITH 1.6LGASOLINE DIRECT INJECTION (GDI)
ENGINES. HIGH EXHAUST GAS TEMPERATURES MAY DAMAGE
CALYTIC CONVERTER POSSIBLY RESUTLING IN ABNORMAL
ENGINE COMBUSTION AND DAMAGE TO ONE OR MORE OF THE
ENGINE'S PISTONS AND POSSIBLE PISTON CONNECTING ROD
FAILURE.] PER KIA, CONSEQUENCES OF THIS POSSIBLE
CONVERTER FAILURE CAN CAUSE THE ROD TO PUNCTURE THE
ENGINE AND CAUSE THE OIL TO DRAIN OUT. WE CHECKED WITH
THE RECALL SITE TO VERIFY IF THE VEHICLE VIN# WAS LISTED
FOR THE RECALL. THE KIA DEALERSHIP HAS STATED THAT THE
VEHICLE DID NOT QUALIFY BECUASE THE P0420 CODE DID NOT
DISPLAY. THEY DID NOT VISUALLY INSPECT THE CATALYTIC
CONVERTER OR COULD NOT RUN A HEAT TEST ON THE ENGINE
SINCE THE VEHICLE WOULD NOT RUN. WE ARE REQUESTING THAT
THIS VEHICLE BE CONSIDERED PART OF THE RECALL BECUASE
WHAT HAPPEND TO OUR VEHICLE IS THE SAME AS WHAT HAPPENS
TO VEHICLES INVOLVED IN THE RECALL.

**June 22, 2020 NHTSA ID NUMBER: 11330025**
TL* THE CONTACT OWNS A 2012 KIA SOUL. THE CONTACT STATED
THAT WHILE DRIVING A KNOCKING NOISE OCCURRED COMING
FROM THE ENGINE AS WELL AS SMOKE WAS SEEN COMING FROM
UNDER THE HOOD. THE ENGINE AND OIL WARNING LIGHTS
ILLUMINATED. THE CONTACT STATED THAT SHE WAS CLOSED TO
THE DEALER AND COASTED INTO SPRITZER KIA CLEVELAND (3414
BROOKPARK RD, CLEVELAND, OH 44134) WHERE THE VEHICLE
WAS DIAGNOSED THAT A ROD WENT THROUGH THE SIDE OF THE
ENGINE AND THE ENGINE NEEDED TO BE REPLACED. THE VEHICLE
WAS NOT REPAIRED. THE CONTACT REFERRED THE FAILURE TO
NHTSA CAMPAIGN NUMBER: 19V120000 (ENGINE, ENGINE AND
ENGINE COOLING), HOWEVER HER VIN WAS NOT INCLUDED IN THE
RECALL. THE MANUFACTURER WAS NOT MADE AWARE OF THE
FAILURE. THE FAILURE MILEAGE WAS APPROXIMATELY 109,000.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**April 9, 2020 NHTSA ID NUMBER: 11320642**
TL* THE CONTACT OWNS A 2012 KIA SOUL. THE CONTACT STATED
THAT THE VEHICLE WAS TAKEN TO AN INDEPENDENT MECHANIC
FOR AN OIL CHANGE. THE CONTACT WAS INFORMED THAT THE
ENGINE NEEDED TO BE REPLACED DUE TO A CONNECTING ROD
FAILURE. THE CONTACT STATED THAT THERE WAS AN
ABNORMAL SOUND COMING FROM THE ENGINE. THE VEHICLE
WAS TAKEN TO WILLIAMS KIA OF ELMIRA LOCATED AT (951
COUNTY RD 64, ELMIRA, NY 64903), AND IT WAS DETERMINED
THAT THE ENGINE NEEDED TO BE REPLACED. THE VEHICLE WAS
INCLUDED IN NHTSA CAMPAIGN NUMBER: 19V120000 (ENGINE,
ENGINE AND ENGINE COOLING). THE VEHICLE WAS NOT
REPAIRED. THE MANUFACTURER WAS NOT NOTIFIED OF THE
FAILURE. THE FAILURE MILEAGE WAS 136,341.

**January 3, 2020 NHTSA ID NUMBER: 11297013**
I WAS ON THE WAY OUT OF TOWN WITH MY FAMILY, I WAS
TRAVELING ON A DARK COUNTY ROAD AT NIGHT, I WAS DRIVING
70 MILES AND ALL OF A SUDDEN A PIECE FLEW UNDER THE CAR
AND OIL STARTED SPRAYING OUT AND MY CAR STARTED
SMOKING AND WHEN I PULLED OVER TO SEE WHAT HAPPENED
THE CAR WOULD NOT EVEN GO IN NEUTRAL SO THAT I COULD
MOVE IT TO THE GRASS. I WAS STRANDED IN A SMALL TOWN ON
THE HIGHWAY WITH FAST MOVING VEHICLES AND 18- WHEELERS
WITH MY 2 KIDS. IT WAS VERY SCARY IT TOOK THE POLICE 15
MINUTES TO COME OUT. VERY UNSAFE WAITING ON THE SIDE OF
THE HIGHWAY IN THE DARK. THE CAR WAS INOPERABLE SO I HAD
TO LEAVE IT ON SIDE OF THE ROAD.

**December 12, 2019 NHTSA ID NUMBER: 11288689**
TL* THE CONTACT OWNS A 2012 KIA SOUL. WHILE THE CONTACT'S
PARENTS WERE DRIVING APPROXIMATELY 60 MPH, THE VEHICLE
SUDDENLY STALLED. THERE WERE NO WARNING INDICATORS
ILLUMINATED. THE VEHICLE WAS TOWED TO GOSSETT KIA
(LOCATED AT 1900 COVINGTON PIKE, MEMPHIS, TN 38128, 901-255-
6320) WHERE IT WAS DETERMINED THAT SLUDGE IN THE ENGINE
CAUSED THE ENGINE TO BURN OIL TOO QUICKLY. THE DEALER
STATED THAT THE ENGINE NEEDED TO BE REPLACED. THE
VEHICLE HAD NOT BEEN REPAIRED. THE MANUFACTURER WAS
MADE AWARE OF THE FAILURE AND INFORMED THE CONTACT
THAT BECAUSE THE DIAGNOSTIC CODE SHOWN FOR THE VEHICLE

WAS DIFFERENT FROM THE ONE MENTIONED IN THE CLASS ACTION LAWSUIT, THE VEHICLE WOULD NOT BE COVERED. THE MANUFACTURER PROVIDED CASE NUMBER: 13404459. THE APPROXIMATE FAILURE MILEAGE WAS 65,000. THE VIN WAS INVALID.

**July 17, 2019 NHTSA ID NUMBER: 11232709**
TL* THE CONTACT OWNS A 2012 KIA SOUL. WHILE DRIVING APPROXIMATELY 25 MPH, THE VEHICLE MADE A LOUD NOISE AND WOULD NOT ACCELERATE. THE CONTACT ALSO NOTICED BLACK SMOKE EMERGING FROM THE ENGINE COMPARTMENT ALONG WITH A STRONG BURNING ODOR. THE VEHICLE WAS TOWED TO THE CONTACT'S RESIDENCE AND THEN TO AN INDEPENDENT MECHANIC. THE VEHICLE WAS THEN TOWED TO KIA OF BEDFORD (18180 ROCKSIDE RD, BEDFORD, OH 44146) WHERE IT WAS DIAGNOSED THAT THE VEHICLE NEEDED A NEW ENGINE; HOWEVER, NO CODES APPEARED FOR THE CATALYTIC CONVERTER. WHILE RESEARCHING THE FAILURE ONLINE, THE CONTACT FOUND NHTSA CAMPAIGN NUMBER: 19V120000 (ENGINE, ENGINE AND ENGINE COOLING) ASSOCIATED WITH THE VIN. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 79,000.

**July 9, 2019 NHTSA ID NUMBER: 11230319**
A LOUD TICKING NOISE DEVELOPED IN THE ENGINE THIS SPRING. IT WAS DIAGNOSED BY A KIA TECHNICIAN AS WORN CONNECTING ROD/CRANKSHAFT BEARINGS. I HAVE PERFORMED REGULAR RECOMMENDED MAINTENANCE, INCLUDING OIL CHANGES, WITHIN MANUFACTURER'S GUIDELINES. THE NOISE BEGAN SUBTLY AND WORSENED OVER TIME. IT CAN BE HEARD WHEN THE VEHICLE IS STATIONARY AND AT ALL SPEEDS. IT IS LOUDEST WHILE ACCELERATING AND IS FAINT WHILE COASTING. MY SPECIFIC VEHICLE IS 2012 KIA SOUL+ (PLUS) WHICH HAS A NU 2.0-LITER GDI ENGINE. THE SAME ENGINE IN OTHER VEHICLES AND DIFFERENT ENGINE IN THIS VEHICLE HAVE BEEN RECALLED FOR THIS SAME PROBLEM. I BELIEVE THIS IS AN ERROR IN MANUFACTURING AND SHOULD BE RECALLED BECAUSE OF THE SAFETY HAZARD IT PRESENTS (ENGINE FIRE).

**June 28, 2019 NHTSA ID NUMBER: 11228311**
MY CAR DOES NOT SEEM TO BE COVERED UNDER RECALL 19V120000, HOWEVER IT IS HAVING THE SAME ISSUES ASSOCIATED WITH THAT RECALL NUMBER. HIGH EXHAUST TEMPERATURES WITHIN THE CATALYTIC CONVERTER MAY CAUSE INTERNAL ENGINE DAMAGE TO THE PISTONS AND CONNECTING RODS, RESULTING IN AN ENGINE STALL AND FAILURE. THERE IS ENGINE SHAVINGS IN MY OIL AND IT IS MAKING A HORRIBLE NOISE. IT IS NO LONGER DRIVEABLE. I TOOK IT INTO KIA SERVICE PREVIOUSLY AND THEY TOLD ME IT WAS RELATED TO THE ABOVE CONCERNS,

**June 3, 2019 NHTSA ID NUMBER: 11217440**
OCCASIONALLY, THE CHECK ENGINE LIGHT WOULD TURN ON AND THEN TURN OFF. FOR ONLY A DAY OR TWO, I COULD HEAR A RATTLING SOUND UPON ACCELERATION. WHILE DRIVING ON THE HIGHWAY, THE NOISE BECAME MUCH LOUDER, THE ENGINE FAILED AND BEGAN SMOKING. THE CAR BECAME INOPERABLE. I HAD THE CAR TOWED TO AN AUTO SHOP WHERE THEY SHOWED ME THAT A PISTON ROD HAD PUNCTURED THE CAR'S ENGINE BLOCK. I LEARNED THAT THE CAR HAD BEEN RECALLED UNDER NHTSA RECALL NUMBER 19V120. I FOLLOWED RECALL INSTRUCTIONS AND BROUGHT THE CAR TO A LOCAL DEALER. THE DEALER REFUSED TO REPAIR THE CAR. THEY STATED THAT THERE IS NO PROOF THAT THE ENGINE MALFUNCTION WAS RELATED TO THE RECALL.

**May 21, 2019 NHTSA ID NUMBER: 11208897**
TL* THE CONTACT OWNS A 2012 KIA SOUL. WHILE DRIVING 60 MPH, THE CONTACT HEARD A LOUD EXPLOSION COMING FROM THE FRONT OF THE VEHICLE. THERE WAS NO WARNING INDICATOR ILLUMINATED. THE CONTACT NOTICED SMOKE UNDER THE HOOD OF THE VEHICLE. THE CONTACT WAS ABLE TO SAFELY PULL THE VEHICLE OFF OF THE ROADWAY. UPON RAISING THE HOOD, THE CONTACT NOTICED OIL EVERYWHERE IN THE ENGINE COMPARTMENT AND ON THE ROAD SURFACE. THE VEHICLE WAS TOWED TO AN INDEPENDENT MECHANIC, BUT WAS NOT DIAGNOSED OR REPAIRED. CHARLIE'S KIA (LOCATED AT 475 WESTERN AVE, AUGUSTA, ME 04330, (207) 622-6621) WAS NOTIFIED OF THE FAILURE. THE CONTACT BELIEVED THAT THE DEALER WOULD NOT ASSIST BECAUSE THE VEHICLE WAS NOT PURCHASED

FROM THEM. THE VEHICLE WAS INCLUDED IN NHTSA CAMPAIGN NUMBER: 19V120000 (ENGINE AND ENGINE COOLING). THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 108,000.

**May 13, 2019 NHTSA ID NUMBER: 11207234**
TL* THE CONTACT OWNS A 2012 KIA SOUL. CONSUMER STATED ON OR ABOUT MARCH 29, A TAPPING NOISE WAS NOTICED COMING FROM THE ENGINE, WE HAD THE OIL CHANGED ON APRIL 2ND AND THE NOISE WAS REDUCED. ON APRIL 3RD WHILED DRIVING TO WORK THE VEHICLE BEGAN TO SMOKE AND THE FIRE DEPARTMENT WAS CALLED. THE CONTACT STATED THAT A ROD FRACTURED CAUSING A HOLE IN THE OIL PAN WHICH RESULTED IN A CATASTROPHIC ENGINE FIRE. THE VEHICLE WAS UNABLE TO BE DRIVEN. A FIRE INSPECTION REPORT WAS PROVIDED. THE VEHICLE WAS INCLUDED IN NHTSA CAMPAIGN NUMBER: 19V120000 (ENGINE AND ENGINE COOLING) HOWEVER, THE DEALER GOSSETT KIA, 1900 COVINGTON PIKE, MEMPHIS, TN 38128, 901-388-8989, WAS NOTIFIED OF THE FAILURE TO BUT OFFERED NO ASSISTANCE. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS NOT AVAILABLE. *BF*JB

**May 9, 2019 NHTSA ID NUMBER: 11206564**
TL* THE CONTACT OWNS A 2012 KIA SOUL. THE CONTACT STATED WHILE DRIVING AT 35 MPH, AN ABNORMAL NOISE WAS HEARD AS THE CHECK ENGINE WARNING LIGHT ILLUMINATED. IN ADDITION, THE CONTACT STATED HE HEARD A LOUD BOOM NOISE AND THE VEHICLE CEASED IN THE MIDDLE OF THE ROAD. THE CONTACT STATED HE SAW OIL LEAKING UNDER THE VEHICLE. THE VEHICLE WAS TOWED TO AN INDEPENDENT MECHANIC WHERE THE VEHICLE WAS DIAGNOSED WITH NEEDING AN ENGINE REPLACEMENT. THE MANUFACTURER WAS INFORMED OF FAILURE AND INFORMED THE CONTACT THAT NO RECALL WAS ASSOCIATED WITH VIN. THE CONTACT TOWED THE VEHICLE TO HIS RESIDENCE. THE CONTACT STATED ON APRIL 26, 2019 HE RECEIVED NOTIFICATION OF NHTSA CAMPAIGN NUMBER: 19V120000 (ENGINE, ENGINE AND ENGINE COOLING). THE CONTACT CALLED THE MANUFACTURER, WERE HE WAS NOTIFIED THE VEHICLE WOULD BE TOWED TO LOCAL DEALER DEMONTROND KIA (14101 NORTH FWY, HOUSTON, TX 77090, (281) 607-1973) WHERE

IT WAS DIAGNOSED THAT THE DAMAGE ON THE ENGINE WAS NOT ASSOCIATED TO NHTSA CAMPAIGN NUMBER: 19V120000 (ENGINE, ENGINE AND ENGINE COOLING). THE VEHICLE WAS NOT REPAIRED AND WAS STILL AT THE DEALER. THE FAILURE MILEAGE WAS 104,000.

**May 8, 2019 NHTSA ID NUMBER: 11206203**
TL* THE CONTACT OWNS A 2012 KIA SOUL. THE CONTACT'S ENGINE SEIZED WHILE EXITING A FUEL STATION. THE CONTACT PULLED THE VEHICLE OVER AND ATTEMPTED TO RESTART THE ENGINE, BUT WAS UNSUCCESSFUL. THE CONTACT HAD TO LEAVE THE VEHICLE AT THE SCENE AND THE CHECK ENGINE INDICATOR ILLUMINATED. THE VEHICLE WAS TAKEN TO SOUTHWEST KIA OF AUSTIN (13175 US-183 N, AUSTIN, TX 78750, (512) 583-1900) WHERE IT WAS DIAGNOSED THAT METAL SHAVINGS WERE IN THE ENGINE AND SENSORS. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS 124,131.

**March 16, 2019 NHTSA ID NUMBER: 11187247**
WAS DRIVING ON HIGHWAY. WAS EXITING ON OFF RAMP CAR LOST EXCELERATION CAR BLEW OUT SMOKE AND STALLED COASTED OFF EXIT. WOULD NOT RUN AFTER THAT. IT CLICKED LIKE IT WANTED TO START. FOUND HUGE HOLE BLOWN IN MY ENGINE BLOCK

**May 17, 2018 NHTSA ID NUMBER: 11096613**
WAS DRIVING ON THE EXPRESS WAY BEHIND A SEMI. WHEN THE SEMI GOT OVER IN THE RIGHT LANE I ACCELERATED AND HERD A LOUD BANG AND DARK SMOKE STARTED COMING FROM MY ENGINE. IT SMELLED OFTEN AND IMPAIRED MY VISION. SEVERAL OF MY CAUSATION LIGHT ILLUMINATED AND I WAS STUCK AT 60 MPH MY CAR WOULD NOT ACCELERATE AND STOPPED WORKING. I GOT OVER IN THE RIGHT LANE SAFELY AND COASTED FOR ABOUT A MILE AND A HALF TO THE NEAREST EXIT. SOMETHING TOLD ME DO NOT PUT YOUR FOOT ON THE BRAKES OR YOU WILL BE IN SERIOUS TROUBLE. AS I GOT OF THE EXIT I STARTED TO BRAKE AND MY CAR STOPPED AND DIED.OIL WAS LEAKING OUT AND NOTHING WAS WORKING. I HAD TO GET PEOPLE TO PUSH ME OFF TO THE SIDE OF THE ROAD AND GET A TOW TO THE DEALERSHIP. THEY TOLD ME I HAD CATASTROPHIC ENGINE

FAILURE. SO MY ENGINE FAILED ME AND I COULD HAVE BEEN KILLED. I DID RESEARCH AND THERE HAVE BEEN MANY KIA'S WITH RECALL AND VERY SIMILAR SITUATIONS AS MINE BUT NOT WITH MY MODEL CAR. I AM SURE THIS IS A MANUFACTURES ERROR AND I PRAY KIA DOES A RECALL TO PROTECT PEOPLE'S LIVES. *JS *JS

## 2013 Kia Soul

**October 13, 2021 NHTSA ID NUMBER: 11436672**
THE CONTACT OWNS A 2013 KIA SOUL. THE CONTACT STATED WHILE DRIVING 55-60 MPH, SHE HEARD ABNORMAL KNOCKING SOUNDS COMING FROM THE ENGINE. THE CHECK ENGINE WARNING LIGHT ILLUMINATED. THE CONTACT STATED SHE CONTINUED TO DRIVE THE VEHICLE AND TOOK THE VEHICLE TO THE DEALER. THE DEALER DIAGNOSED THAT THE ENGINE HAD FAILED AND NEEDED TO BE REPLACED. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE VEHICLE WAS NOT REPAIRED. THE APPROXIMATE FAILURE MILEAGE WAS 46,000.

**September 28, 2021 NHTSA ID NUMBER: 11434669**
ENGINE LOCKED UP ON THE HIGHWAY AT HIGH SPEED. WE HAD TO GET THE CAR OFF THE ROAD VERY QUICKLY. OUR MECHANIC DIAGNOSIS WAS LOWER BEARING FAILURE RESULTING IN A SEIZED ENGINE. NO SYMPTOMS WERE NOTICED BEFORE SEIZING UP.

**June 24, 2021: NHTSA ID NUMBER: 11422200**
THE CONTACT OWNS A 2013 KIA SOUL. THE CONTACT STATED WHILE DRIVING AT 55 MPH, A LOUD KNOCKING NOISE WAS COMING FROM THE ENGINE COMPARTMENT. THE CONTACT STATED NO WARNING LIGHT WAS ILLUMINATED. THE VEHICLE WAS TAKEN TO AN INDEPENDENT MECHANIC WHERE IT WAS DIAGNOSED WITH THE ENGINE NEEDING TO BE REPLACED DUE TO METAL SHAVINGS BEING FOUND IN THE OIL PAN. THE VEHICLE WAS NOT REPAIRED. THE CONTACT THEN TOOK THE VEHICLE TO A LOCAL DEALER WHERE IT WAS DIAGNOSED WITH THE ENGINE NEEDING TO BE REPLACED. THE VEHICLE WAS NOT REPAIRED. THE CONTACT WAS RELATING THE FAILURE TO NHTSA CAMPAIGN NUMBER: 19V120000 (ENGINE, ENGINE AND ENGINE COOLING). THE MANUFACTURER HAD BEEN INFORMED OF THE FAILURE AND

INFORMED THE CONTACT THAT THEY WOULD CALL HIM BACK. THE FAILURE MILEAGE WAS APPROXIMATELY 134,000.

**May 2, 2021 NHTSA ID NUMBER: 11414788**
METAL SHAVINGS FOUND IN ENGINE AND ROD WENT THRU THE BLOCK. KEEPS OVERHEATING EVEN WHEN SEEN BY 3 DIFFERENT MECHANICS. VALUE 3 WON'T WORK NO MATTER WHAT WE DO TO FIX IT

**March 4, 2021 NHTSA ID NUMBER: 11399102**
TL* THE CONTACT OWNS A 2013 KIA SOUL. THE CONTACT STATED WHILE DRIVING AT 25 MPH, THE CONTACT HEARD A LOUD NOISE COMING FROM THE ENGINE COMPARTMENT FOLLOWED BY AN ODOR OF SOMETHING BURNING. THE CONTACT STOPPED THE VEHICLE, AND UPON INSPECTION THE VEHICLE WAS LEAKING OIL FROM THE ENGINE COMPARTMENT. THE CONTACT STATED THE CHECK OIL WARNING LIGHT WAS ILLUMINATED. THE VEHICLE WAS TOWED TO CONTACTS RESIDENCE. THE VEHICLE WAS NOT REPAIRED. UPON INVESTIGATION, THE CONTACT ASSOCIATED THE FAILURE WITH NHTSA CAMPAIGN NUMBER: 19V120000 (ENGINE, ENGINE AND ENGINE COOLING) HOWEVER THE VIN WAS NOT INCLUDED. THE MANUFACTURER WAS INFORMED OF FAILURE AND TOLD THE CONTACT THAT THE VEHICLE WAS NOT UNDER A RECALL. THE FAILURE MILEAGE WAS APPROXIMATELY 175,000.

**February 17, 2021 NHTSA ID NUMBER: 11396626**
TL* THE CONTACT OWNS A 2013 KIA SOUL. THE CONTACT STATED THAT WHILE DRIVING AT 65 MPH, THE VEHICLE BEGAN TO STALL AS A BLACKISH SMOKE BEGAN TO EMIT FROM THE ENGINE. AFTER THE ENGINE COMPLETELY FAILED, THE OIL AND CHECK ENGINE WARNING LIGHTS BOTH APPEARED ON THE INSTRUMENT PANEL. DUE TO THE FAILURE, THE CONTACT HAD THE VEHICLE TOWED TO AN INDEPENDENT MECHANIC WHO INFORMED HIM THAT A ROD PIERCED THROUGH THE ENGINE BLOCK. THE VEHICLE WAS DIAGNOSED WITH A COMPLETE ENGINE FAILURE AND WAS REPLACED WITH ANOTHER ENGINE BY THE SAME MECHANIC. THE VEHICLE WAS REPAIRED. THE CONTACT LINKED HIS FAILURE TO NHTSA CAMPAIGN NUMBER: 19V120000 (ENGINE, ENGINE AND ENGINE COOLING); HOWEVER THE VIN WAS NOT INCLUDED. THE DEALER AND THE MANUFACTURER WERE NOT NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 76,250.

1

2

**January 21, 2021 NHTSA ID NUMBER: 11389180**
TL* THE CONTACT OWNS A 2013 KIA SOUL. THE CONTACT STATED
THAT THE WHILE DRIVING APPROXIMATELY 40 MPH, THE
CLUNKING NOISE WAS PRESENT COMING FROM THE ENGINE. THE
VEHICLE WAS TAKEN TO THE LOCAL DEALER EWALD KIA
LOCATED AT 36883 E WISCONSIN AVE, OCONOMOWOC, WI 53066
WHO DIAGNOSED THAT THE ENGINE ROD HAD FAILED AND THE
ENGINE NEEDED TO BE REPLACED. THE VEHICLE WAS NOT
REPAIRED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE
BUT NO ASSISTANCE WAS OFFERED. THE FAILURE MILEAGE WAS
117,000.

**December 15, 2020 NHTSA ID NUMBER: 11383499**
BOUGHT THIS CAR FOR MY TEENAGE DAUGHTER. ROD BROKE,
PUNCTURED THE ENGINE BLOCK, WHICH CAUSED THE OIL
LEAKED OUT AND IT CAUGHT FIRE WITH MY DAUGHTER AND HER
FRIENDS IN THE CAR.

**September 1, 2020 NHTSA ID NUMBER: 11352564**
TL* THE CONTACT OWNS A 2013 KIA SOUL. THE CONTACT STATED
THAT WHILE DRIVING 75 MPH, THE ENGINE MADE A KNOCKING
SOUND. THE CONTACT CHECKED THE OIL AFTER PULLING IN TO A
GAS STATION. THE CONTACT CONTINUED DRIVING HOME
HOWEVER, THE ENGINE BLEW AND OIL STARTED SQUIRTING
FROM UNDER THE HOOD. THE CONTACT PULLED OFF THE
ROADWAY AND THE VEHICLE WAS TOWED TO AN INDEPENDENT
MECHANIC. THE MECHANIC DISCOVERED A HOLE AT THE BOTTOM
OF THE ENGINE HOWEVER, A DIAGNOSTIC TEST WAS NOT
PERFORMED. NEITHER THE DEALER NOR THE MANUFACTURER
WERE CONTACTED. THE VEHICLE WAS NOT REPAIRED. THE
FAILURE MILEAGE WAS 112,000.

**August 6, 2020 NHSA ID NUMBER: 11343594**
WAS DRIVING MY 2013 KIA SOUL AND IT THREW A ROD AND MY
ENGINE LOCKED UP. I FOUND OUT THAT THERE WAS A RECALL ON
THE CATALYTIC CONVERTER. DEALERSHIP SAID THEY TRIED TO
RUN A DIAGNOSTIC AND IT SAID ENGINE FAILURE AFTER THEY
REPLACED THE RECALLED CATALYTIC CONVERTER.

**July 12, 2020 NHTSA ID NUMBER: 11338842**
WAS DRIVING ON THE HIGH WAY ENGINE BLINKED FIVE TIMES
AND CAR LOCKED UP BEGAN TO SHUT OFF. GOT OUT THE CAR
THINKING I NEED OIL POPPED THE HOOD SAW SOMETHING FALL
LOOKED UNDER THE CAR THERE WAS A FIRE PUT THE FIRE OUT
WITH A TOWEL CALLED THE POLICE AND THE FIRE DEPARTMENT
CAME AND SAID A ROD BLEW? AND I GOOGLED THERE IS A
RECALL FOR THIS EXACT HAPPENING

**June 29, 2020 NHTSA ID NUMBER: 11331600**
WHILE DRIVING MY CERTIFIED 2013 KIA SOUL ON A BUSY
HIGHWAY IT SUDDENLY LOST ALL POWER. I WAS ABLE TO GET IT
TO THE SIDE OF THE ROAD AND PUSH IT INTO A PARKING LOT. I
OPENED THE HOOD AND FOUND OIL HAD EXPLODED
EVERYWHERE SO I HAD TO HAVE IT TOWED TO MY HOME. A
MECHANIC SAID THE ENGINE THREW A ROD THAT WENT
THROUGH THE BLOCK, SO THE WHOLE ENGINE WOULD HAVE TO
BE REPLACED. I HAD THE CAR SERVICED 2 MONTHS PRIOR TO THE
FAILURE AND THEY DIDN'T ADVISE OF ANY ISSUES. AFTER
CONTACTING THE DEALERSHIP WHERE I PURCHASED THE KIA
SOUL THEY CONFIRMED KIA WAS ALREADY AWARE OF THIS
PROBLEM AND SHOULD HAVE TOLD ME THERE WAS A RECALL ON
MY VEHICLE BEFORE THE ENGINE WAS DAMAGED. WHEN I
CONTACTED KIA THEY TOLD ME MY VEHICLE DIDN'T QUALIFY
FOR THE RECALL, BUT SINCE THE FAILURE OF MY VEHICLE IS
EXACTLY WHAT HAS HAPPENED ON OTHER VEHICLES I'M NOT
SURE WHY MINE DOESN'T QUALIFY. I'M CURRENTLY WITHOUT A
VEHICLE BECAUSE I DON'T HAVE THE FUNDS TO REPLACE THE
ENGINE. I NEED DIRECTION ON WHAT TO DO.

**March 6, 2020 NHTSA ID NUMER: 11316535**
I WAS DRIVING TO WORK AND MY CHECK ENGINE LIGHT CAME
ON. I FIGURED I WOULD TAKE IT TO MY MECHANIC THE NEXT DAY
SINCE I DID NOT SEE, HEAR, OR SMELL ANYTHING AT THAT TIME.
WITHIN 10 MINUTES, A KNOCKING NOISE STARTED UNDER MY
HOOD. I IMMEDIATELY HEADED TOWARDS MY MECHANIC'S SHOP -
I MADE IT 8 MILES, WITH THE KNOCKING BECOMING MORE
FREQUENT, UNTIL IT STOPPED AND MY ENGINE DIED. I WAS IN THE
RIGHT LANE OF THE HIGHWAY AT APPROXIMATELY 50 MPH. I WAS
ABLE TO COAST FROM THE CLOSEST EXIT RAMP INTO A GAS
STATION PARKING LOT. I HAD MY VEHICLE TOWED THE REST OF

THE WAY TO MY MECHANIC, WHO DIAGNOSED A SPUN OR THROWN ROD BEARING. HE IDENTIFIED ONE HOLE IN THE BOTTOM OF THE ENGINE - THE EJECTED PART HAD PIERCED THE ENGINE BLOCK AND MY OIL PAN. I CALLED KIA CONSUMER AFFAIRS, WHO ADVISED THIS SOUNDED LIKE AN ISSUE I SHOULD TAKE IT TO A DEALERSHIP TO HAVE EVALUATED FOR REPLACEMENT/REPAIR BY KIA. AS FAR AS I KNOW, THERE HAS BEEN NO RECALL, BUT KIA SEEMS TO ALREADY BE AWARE OF THIS PROBLEM IN SOULS AND HAS NOT ISSUED A RECALL. THE REPRESENTATIVE ON THE PHONE AT KIA CONSUMER AFFAIRS SAID I "MAY NOT HAVE EVEN RECEIVED THE LETTER YET". MY VEHICLE WAS NOT INCLUDED IN THE PREVIOUS RECALL BUT APPEARS TO HAVE SUFFERED THE EXPECTED ISSUE. THE RECALL SHOULD BE EXPANDED. I TOOK MY VEHICLE TO MY LOCAL DEALERSHIP, WHO COORDINATED WITH THEIR DISTRICT MANAGER AND KIA HAS AGREED TO REPAIR MY ENGINE. I AM CONCERNED THAT THEY WILL ONLY REPAIR THE DAMAGE BUT NOT ADDRESS THE ACTUAL ISSUE. THE DEALERSHIP ALSO IDENTIFIED A SECOND HOLE THAT HAD BEEN MADE IN MY ENGINE BLOCK BY DEBRIS WHEN MY ENGINE BROKE DOWN.

**July 23, 2019 NHTSA ID NUMBER: 11234222**
I WAS DRIVING MY 2013 KIA SOUL, AND I WAS TURNING ACROSS A BUSY INTERSECTION. AS I WAS IN THE MIDDLE OF CROSSING THE INTERSECTION MY CAR STALLED OUT AND I WAS ALMOST IN A VERY SERIOUS ACCIDENT. IF THE ONCOMING CAR HAD NOT SWERVED IT WOULD HAVE BEEN A SERIOUS COLLISION. SINCE THIS INCIDENT, MY CAR HAS BEEN TOWED TO A KIA SERVICE CENTER AND EVALUATED. THE KIA TECHNICIAN STATED THAT MY CAR HAD METAL SHAVINGS WITHIN THE CRANKSHAFT OIL PASSAGES, AND THE CRANKPINS THEMSELVES MAY BE TOO ROUGH ON THE EDGES. AS A RESULT, OIL MAY BE BLOCKED AND CAUSE THE CONNECTING ROD BEARINGS TO WEAR, WHICH WOULD THEN CAUSE THEM TO FAIL AND SEIZE THE WHOLE ENGINE. THAT, OF COURSE, WOULD CAUSE THE CAR TO STALL DURING DRIVING. THIS IS THE EXACT SAME PROBLEM THAT THE OTHER KIA ENGINES WERE RECALLED FOR. IN ADDITION TO STALLING THIS COULD CAUSE THE RODS TO PIERCE THE ENGINE AND CAUSE A FIRE. MORE LIVES ARE AT RISK BECAUSE THE KIA RECALL IS NOT COMPLETE. ENGINES LIKE MINE, ARE STILL OUT THERE POSSIBLY CAUSING SERIOUS AND OR FATAL INCIDENTS.

KIA NEEDS TO EXPAND THE RECALL TO THE 2. ENGINES AS WELL. THIS IS A MANUFACTURING DEFECT THAT NEEDS IMMEDIATE ACTION. PLEASE EXPAND THE RECALL AS THIS PROBLEM IS STILL CONTINUING IN OTHER KIA SOUL ENGINES NOT LISTED IN THE RECALL. *TR CONSUMER STATED MY 2013 KIA SOUL HAS BEEN TOWED TO THE DULLES KIA DEALERSHIP. THEY ARE SAYING THAT EVEN THOUGH THE ISSUE MY CAR IS HAVING IS THE SAME/ OR SIMILAR TO THE OTHER RECALLED KIA SOUL ENGINES, MY ENGINE IS NOT LISTED ON THE RECALL. SINCE IT IS NOT ON THE RECALL, I NEED A NEW ENGINE AT THE COST OF $6,200 DOLLARS. MY KIA IS A 2013, WITH 86,712 MILES ON IT.*JB

**April 29, 2019 NHTSA ID NUMBER: 11204492**
TL* THE CONTACT OWNS A 2013 KIA SOUL. WHILE DRIVING, A LOUD EXPLOSION WAS HEARD UNDERNEATH THE VEHICLE. THE CONTACT WAS ABLE TO COAST THE VEHICLE TO THE SIDE OF THE ROAD AND BYSTANDERS HELPED PUSH THE VEHICLE INTO A PARKING LOT. THE VEHICLE WAS TOWED TO WORLD CAR KIA NEW BRAUNFELS (LOCATED AT 3363 INTERSTATE 35 FRONTAGE RD, NEW BRAUNFELS, TX 78132, (830) 214-7280) WHERE IT WAS DIAGNOSED THAT THE PISTON ROD EXPLODED AND BLEW A HOLE IN THE ENGINE. THE ENGINE NEEDED TO BE REPLACED. THE VEHICLE WAS NOT REPAIRED. THE VIN WAS INCLUDED IN NHTSA CAMPAIGN NUMBER: 19V120000 (ENGINE, ENGINE AND ENGINE COOLING). THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 143,000. *DT

**April 18, 2018 NHTSA ID NUMBER: 11120842**
THE ENGINE IN MY 2013 KIA SOUL BLEW AT ONLY 56000 MILES. MY WIFE WAS DRIVING THE CAR ON THE INTERSTATE WHEN SHE HEARD A KNOCKING NOISE AND SHE PULLED OVER. A MAN CAME UP TO HER WINDOW AND TOLD HER THERE WAS FLAMES COMING FROM THE BOTTOM OF THE CAR. IT TURNS OUT THAT A ROD WENT THROUGH THE ENGINE BLOCK AND LEAKED ALL THE OIL OUT OF THE CAR. WHEN I TOOK THE VEHICLE TO KIA, THE SERVICE TECH ASKED ABOUT THE OIL CHANGES AND HAD MENTIONED THAT THE OEM OIL FILTER THAT KIA PUTS HAS SOME TYPE OF PRESSURE RELEASE AND WHEN YOU GET THE OIL CHANGED SOMEWHERE ELSE THEY DON'T HAVE THAT TYPE OF FILTER. I ASKED IF IT WAS REQUIRED TO HAVE THE OIL CHANGED AT A KIA DEALER AND HE SAID NO. WE HAVE HAD ALL THE OIL CHANGES

UP TO DATE ON THE VEHICLE. IT IS REALLY HARD TO UNDERSTAND HOW AN ENGINE WITH 56K MILES CAN STOP.

**July 19, 2018 NHTSA ID NUMBER: 11112510**
TAKATA RECALL MY 2013 KIA SOUL HAD BEEN A GREAT CAR FOR ALMOST 5 YEARS NOW. OUT OF NO WHERE WHEN I WAS DRIVING MY CAR IT JUST STARTED TO MAKE THIS REALLY LOUD KNOCKING AND TICKING SOUND. THE CHECK ENGINE LIGHT CAME ON AND IT SHUTS OFF WHILE I'M DRIVING. I GOT IT TO TURN ON I TOOK IT TO KIA THEY DID THE DIAGNOSIS ITS AN ENGINE FAILURE MY ROD IS FAULTY THE GUY SAID BUT MY WARRANTY APPARENTLY JUST ENDED BUT HOW DOES MY 5 YEAR OLD CAR HAVE ENGINE FAILURE OUT OF THE BLUE IT ONLY HAS 56.263 MILES ON IT I ONLY USE IT LOCALLY I MAINTENANCE MY CAR HOW DOES THIS HAPPEN.

**August 3, 2020 NHTSA ID NUMBER: 11343004**
TL* THE CONTACT OWNS A 2013 KIA SOUL. THE CONTACT STATED THAT THE PISTON BLEW WITHOUT WARNING AND CAUSED OIL TO LEAK INTO THE ENGINE AND CAUSED THE ENGINE TO BURN. THE CONTACT RECEIVED NOTIFICATION OF NHTSA CAMPAIGN NUMBER: 19V120000 (ENGINE, ENGINE AND ENGINE COOLING) THE VEHICLE WAS TAKEN TO THE STOKES KIA DEALER (202 S GOOSE CREEK BLVD, GOOSE CREEK, SC 29445) WHERE IT WAS STATED THAT NO CODES WERE FOUND AND THEREFORE THE ENGINE WOULD NOT BE REPLACED. THE MANUFACTURER WAS MADE AWARE OF THE ISSUE AND STATED THAT THE ENGINE WAS PURCHASED USED AND DID NOT QUALIFY FOR A REPLACEMENT UNDER THE RECALL. THE VEHICLE WAS NOT REPAIRED. THE FAILURE MILEAGE WAS APPROXIMATELY 70,000.*DT*DT*JB*DT*AS

## 2014 Kia Soul

**June 29, 2015 NHTSA ID Number: 10731276**
TAKING A DAY TRIP TO THE CRAYOLA FACTORY, WE WERE 10 MILES FROM OUR DESTINATION WHEN WE FIRST SMELLED SMOKE THEN SAW IT COMING IN THROUGH THE VENTS AND FROM THE FRONT PASSENGER CORNER OF THE VEHICLE. I FIRST CHECKED THE GAUGES TO SEE IF IT WAS OVER HEATED, NOTHING. POPPED THE HOOD AND THAT'S WHEN WE REALIZED IT WAS ON FIRE. WE RACED TO GET THE 2 SMALL KIDS OUT OF THE VEHICLE AS THE

FLAMES WERE STARTING TO OVER TAKE THE FRONT HOOD. WE
WERE ABLE TO SECURE THE KIDS AND GET FAR ENOUGH AWAY
FROM THE VEHICLE BUT 3 MINUTES LATER THE CAR WAS GUTTED.
NOTHING BUT METAL LEFT ON THE INSIDE. WE HAD NO WARNING
THAT SOMETHING WAS WRONG WHILE DRIVING THE CAR, NO
ENGINE LIGHT, NO OVERHEATING - JUST SMELLED AND THEN SAW
SMOKE. WE WERE LUCKY WE HAD A PLACE TO PULL OFF ON A
BUSY HIGHWAY. I WAS TOLD BY THE POLICE OFFICER THAT I'M
LUCKY THAT I TURNED OFF THE CAR AND OPENED THE DOORS
BEFORE THE LOCKS MALFUNCTIONED AS HE HAS SEEN IN OTHER
KIA CARS. MY HOPE IS THAT KIA CAN FIND THE SOURCE OF THE
FIRE AND DO A RECALL BEFORE ANYONE ELSE IS FACED WITH
THIS NIGHTMARE. I REPORTED IT TO KIA VIA SOCIAL MEDIA, BUT
THEY SEEMED MORE CONCERNED ON HOW TO TAKE MY PICTURES
OFF RATHER THAN FIX THE ISSUE. *TR UPDATED 11/02/2017*CN

**June 1, 2017 NHTSA ID Number: 11043182**
2014 KIA SOUL BURNING OIL EXCESSIVELY. HAVE TO REFILL OIL
ONE A WEEK. THIS VEHICLE HAS NEVER MISSED AN OIL CHANGE.
100,XXX MILES. STARTED AT 80,XXX MILES.

**July 25, 2017 NHTSA ID Number: 11011211**
ENGINE CUT OFF WITHOUT WARNING WHILE CAR WAS MOVING IN
BOULEVARD TRAFFIC, DECELERATING AS I APPROACHED A TURN
INTO A SHOPPING PLAZA. OIL LIGHT CAME ON. ENGINE WOULD
NOT RESTART. MECHANIC SAYS THERE ARE LOOSE LITTLE PIECES
OF METAL INSIDE ENGINE AND THAT ENGINE MUST BE REPLACED.
I HAVE FOLLOWED ALL MANUFACTURER'S RECOMMENDATIONS
FOR MAINTENANCE. THIS ENGINE SHOULD NOT HAVE SELF-
DESTRUCTED AT 93,000 MILES. I AM FILING THIS INFO WITH NHTSA
BECAUSE I SUSPECT THAT PREVIOUS KIA ENGINE RECALL SHOULD
HAVE INCLUDED THIS MODEL ALSO.

**October 25, 2017 NHTSA ID Number: 11041768**
ON 10/25/2017 WHILE DRIVING ON THE HIGHWAY, MY 2014 KIA
SOUL CAUGHT ON FIRE - SPONTANEOUSLY AND WITHOUT
WARNING (NO APPARENT ISSUES IN OPERATING THE CAR,
WARNING LIGHTS ON THE DASH, ETC.). TWO FELLOW MOTORISTS
HONKED THEIR HORNS AND FLASHED THEIR LIGHTS IN AN EFFORT
TO SIGNAL ME. THE BACK WINDSHIELD BEGAN TO 'FOG UP' DUE
TO THE HEAT/FIRE, AND WE IMMEDIATELY PULLED OFF THE

HIGHWAY. IN AN EFFORT TO ESCAPE THIS EMERGENCY, I ALONG WITH MY SON, WHO WAS DRIVING, IMMEDIATELY GOT OUT OF THE VEHICLE AND MOVED A SAFE DISTANCE AWAY BEFORE CALLING 911. AT THIS POINT FLAMES WERE COMING FROM BOTH UNDERNEATH THE VEHICLE AND FROM THE ENGINE COMPARTMENT. THE CAR WAS SOON ENGULFED IN FLAMES. MULTIPLE FIRE ENGINES RESPONDED TO THE SCENE IN EXTINGUISHING THE FIRE AND SECURING THE SCENE. THE CAR WAS A COMPLETE LOSS (SEE PICTURES ATTACHED IN THE REPORT). IT IS IMPORTANT TO NOTE THAT MY 2014 KIA SOUL WAS TAKEN TO A LOCAL KIA DEALERSHIP BETWEEN 10/17/2017 - 10/19/2017 FOR DIAGNOSTICS DUE TO LIGHTS (INTERNAL AND ON THE DASH) FLICKERING AND AN ABNORMAL SOUND. THE DEALERSHIP'S SERVICE DEPARTMENT REPLACED THE BATTERY, PERFORMED A SAFETY INSPECTION, BUT WERE UNABLE TO IDENTIFY THE FLICKERING LIGHTS ISSUE, NOR WERE THEY ABLE TO IDENTIFY THE SOURCE OF THE ABNORMAL SOUND ALTHOUGH THEY DID ACKNOWLEDGE ITS PRESENCE. THE SERVICE DEPARTMENT RELEASED THE VEHICLE TO ME AND ADVISED ME TO DRIVE THE VEHICLE TO SEE WHAT HAPPENED. MY CAR WAS BROUGHT HOME, PARKED, AND NOT DRIVEN UNTIL THE INCIDENT ON 10/25/2017.

**November 10, 2017 NHTSA ID Number: 11045951**
11/10/17: DRIVING SOUTH BOUND ON THE TACONIC STATE PARKWAY MY VECHICLE STARTED MAKING A KNOCKING SOUND AND STALLED DURING DRIVING. LUCKILY I WAS ON THE RT HAND SIDE AND MADE IT TO PULL OVER. GOT MY CAR TOLD AND MECHANIC TOLD ME MY ENGINE SEIZED. HE ALSO TOLD ME THIS WASN'T THE FIRST 2014 KIA SOUL THAT THIS HAS HAPPENED TOO. TOOK ME BY SURPRISE BECAUSE MY VEHICLE HAS NEVER MISSED AN OIL CHANGE. I CALLED KIA AND THEY ARE LOOKING INTO IT.

**March 3, 2018 NHTSA ID Number: 11080315**
MY KIA SOUL 2014 JUST BLEW UP AND CAUGHT FIRE. THE ENGINE WAS A 4 CYLINDER GDI. THE CAR WENT UP IN FLAMES. THE ENGINE BLEW LOUD AND AS I CAME TO A HALT THE ENTIRE CAR WAS ON FIRE. THEN THE GAS TANK EXPLODED. I WAS IN CRUISE CONTROL GOING UP A HIP NOTICED THE ENGINE RIVETING HARD AND THEN THE CAR ENGINE MADE THAT LOUD BANG AND THEN

IN 12 MINUTES CAR WAS ENGULFED AND GAS TANK BLEW AS THE FIRE DEPARTMENT ARRIVED.

### 2015 Kia Soul

**August 10, 2016 NHTSA ID Number: 10940026**
THE ENGINE FAILED AT 23,600 MI. I WAS SITTING IN TRAFFIC WHEN THE "OIL" LIGHT CAME ON AND THE ENGINE SEIZED UP COMPLETELY. FORTUNATELY THIS DID NOT HAPPEN ON THE HIGHWAY. THE KIA DEALERSHIP DENIED THE POWERTRAIN WARRANTY STATING THAT SINCE I DID THE OIL CHANGES MYSELF THE WARRANTY WAS VOID. I PAID A MECHANIC TO REPLACE THE ENGINE. WHEN I TOOK IT TO THE SHOP THE MECHANIC SAID THEY HAD JUST REPLACED THE ENGINE IN A 2014 KIA OPTIMA AND WHERE MORE THAN FAMILIAR WITH AN ENGINE SWAP ON A MODERN KIA. THESE CARS ARE NOT SAFE, THE GOVERNMENT SHOULD BE INVESTIGATING KIA MOTORS FOR THEIR FRAUDULENT PRACTICES.

**August 24, 2016 NHTSA ID Number: 10898504**
THE CAR CAUGHT FIRE UNDER THE HOOD OF THE ENGINE. UPON ARRIVING HOME FROM GROCERY STORE PASSENGER NOTICED SMOKE UNDER THE HOOD. THE FIRE WAS EXTINGUISHED AND THE KIA EMERGENCY ROADSIDE SERVICE WAS CALLED. THE LOCAL KIA DEALER DOESNT WANT ANYTHING TO DO WITH THE CAR EVEN THOUGH THE CAR IS STILL UNDER FACTORY WARRANTY . KIA CORPORATE ISN'T MUCH HELP EITHER SAYING IT WILL BE 2-5 BUSINESS DAYS BEFORE SOMEONE FROM THERE WILL BE ABLE TO COME AND INSPECT IT. IN THE MEANTIME I AM STRANDED IN FORT WAYNE WITH NO TRANSPORTATION. AGAIN THE CAR IS STILL UNDER FACTORY WARRANTY!!!!!!!!!

**April 5, 2018 NHTSA ID Number: 11089043**
I WAS DRIVING MY 2015 KIA SOUL ON MY NORMAL ROUTE TO WORK ON 4/5/18. IT WAS A DARK, CLEAR MORNING ON A BUSY HIGHWAY. I WAS MOVING WITH TRAFFIC AT APPROXIMATELY 60 MPH. AT JUST ABOUT 5:30 A.M., THE VEHICLE MADE A NOISE AND LOST ACCELERATION. I WAS ABLE TO GET TO THE SIDE OF THE HIGHWAY AND PARK THE VEHICLE. I WAS PARKED FOR APPROXIMATELY 3 MINUTES WHEN I SAW SMOKE AND FLAMES COMING FROM THE ENGINE. I EXITED THE VEHICLE. SHORTLY

THEREAFTER, THE VEHICLE WAS FULLY ENGULFED IN FLAMES.
NO OTHER PERSONS OR VEHICLES WERE INVOLVED IN THIS
INCIDENT. I PURCHASED THE VEHICLE NEW AND IT HAD HAD NO
SIGNIFICANT MECHANICAL WORK IN THE 2 YEARS THAT I OWNED
IT, JUST NORMAL OIL CHANGES AND A COUPLE OF SAFETY
RECALLS. NEITHER THE FIREFIGHTER ON THE SCENE, NOR THE
INSURANCE ADJUSTER, WERE ABLE TO DETERMINE THE CAUSE OF
THE FIRE, ONLY THAT IT STARTED IN THE ENGINE.

**April 19, 2018 NHTSA ID Number: 11089999**
OWNER WAS DRIVING ON INTERSTATE 80 HEADING EAST AT APX
65 MILES PER HOUR.WITH NO WARNING , OIL LIGHT STARTED
FLASHING ,CAR SEIZED UP AND STARTED MAKING A VERY LOUD
BANGING.OWNER IS A 22 YEAR OLD NEW DRIVER AND WAS VERY
LUCKY TO HAVE NOT BEEN KILLED. VEHICLE HAS BEEN TOWED
TO AN AUTHORIZED KIA DEALER.THE SAME DEALERSHIP OWNER
PURCHASED CAR. MILEAGE IS 78.000 MILES AND OIL CHANGES
HAVE BEEN DONE AT RECOMMENDED INTERVALS.OWNER IS
WAITING TO HEAR FROM DEALERSHIP SERVICE DEPARTMENT.

**July 28, 2018 NHTSA ID Number: 11122204**
TL* THE CONTACT OWNED A 2015 KIA SOUL. WHILE THE
CONTACT'S SON WAS DRIVING 60 MPH, SMOKE APPEARED FROM
THE FRONT OF THE VEHICLE, THE VEHICLE STALLED, AND AN
ABNORMAL NOISE WAS HEARD. THE CONTACT'S SON EXITED THE
VEHICLE AND OBSERVED THAT THE BOTTOM OF THE ENGINE WAS
ON FIRE. WITHIN A MATTER OF MINUTES, THE ENTIRE VEHICLE
CAUGHT ON FIRE. THE FIRE DEPARTMENT EXTINGUISHED THE
FIRE AND INDICATED THAT THE VEHICLE WAS A TOTAL LOSS. THE
VEHICLE WAS TOWED. THE CAUSE OF THE FIRE WAS UNKNOWN.
THERE WERE NO INJURIES AND NO POLICE REPORT WAS FILED.
THE MANUFACTURER AND DEALER WERE NOT NOTIFIED OF THE
FAILURE. THE FAILURE MILEAGE WAS APPROXIMATELY 80,000.

### 2016 Kia Soul

**September 19, 2017 NHTSA ID Number: 11153156**
I WAS GETTING READY TO MERGE ONTO THE INTERSTATE WHEN I
HEARD NOISE COMING FROM THE ENGINE COMPARTMENT. WHEN I
GOT ONTO THE INTERSTATE THE CAR WOULD NOT ACCELERATE,
SO I PULLED OVER TO THE SHOULDER, AND THE ENGINE DIED.

SMOKE WAS COMING FROM UNDER THE HOOD, AND TWO MEN IN TWO VEHICLES STOPPED AND OPENED THE HOOD AND FLAMES WERE COMING OUT FROM UNDER THE HOOD. THEY HAD WATER AND A FIRE EXTINGUISHER AND ALSO THREW SOME DIRT ON THE FIRE TO PUT IT OUT. THE VEHICLE WAS TOWED TO THE KIA DEALERSHIP WHERE IT WAS BOUGHT. THE INSURANCE COMPANY HAD THE KIA SOUL TOWED TO DENVER COLORADO TO HAVE THEIR AGENT LOOK IT THE KIA. IT WAS DECLARED A TOTAL LOSS AND WAS NOT AN ARSON FIRE. THE KIA DEALERSHIP FROM WHICH THE KIA SOUL WAS BOUGHT NEVER INSPECTED THE SOUL. ALL ROUTINE MAINTENANCE WAS DONE ON SCHEDULE BY THE KIA DEALERSHIP FOR THE 9 MONTHS I OWNED THE KIA. IT WAS BOUGHT NEW IN DECEMBER OF 2016 AND CAUGHT FIRE IN SEPTEMBER OF 2017. THE CAUSE OF THE FIRE WAS NEVER DETERMINED AND KIA NEVER TOOK ANY RESPONSIBLE.

**January 19, 2018 NHTSA ID Number: 11073041**
MY CAR IS 2016, ITS 18 MONTHS OLD HAS 19K MILES AND THE ONLY THING DONE TO THE CAR WAS OIL CHANGES WHICH WERE PERFORMED AT THE DEALER WHERE I BOUGHT MY CAR. ON JAN 19, 2018 MY CAR STOP WORKING WHILE DRIVING 45 MILES AN HOUR ON THE STREET. IT HAPPENED ON NW 36TH STREET GOING EAST IN MIAMI, FLORIDA ZIPCODE 33166 WHEN TOWED TO THE DEALER WAS TOLD ON THE FOLLOWING MONDAY THE PISTON PUSH THE ROD BLOCK AND THE ENGINE LOCK UP. ITS STILL AT THE DEALER. ON MONDAY IT WILL BE A MONTH. AND EVEN THOUGH I AM DRIVING A RENTAL ( WHICH THE DEALER IS PAYING FOR) THEY HAVE NO IDEA WHEN THE CAR WILL BE FIXED. EVERYTHING IS UNDER WARRANTY. MY CONCERN IS HOW CAN THIS MANUFACTURE BUILD CARS WHICH THEIR ENGINES LOCK UP AFTER LESS THAN 2 YEARS. THANK GOD I WAS NOT DRIVING IN AN EXPRESSWAY. I AM BEYOND SCARED TO DRIVE THIS KIND OF CAR AGAIN. *TR

**September 18, 2018 NHTSA ID Number: 11133366**
CAR WAS IN GOOD CONDITION AND WELL MAINTAINED ACCORDING TO MANUFACTURER'S SERVICE SCHEDULE. IT WAS LAST SERVICED ON 7/31/18 WHEN IT PASSED NYS INSPECTION. THE OWNER WAS INFORMED ON 9/18/18 @ 7:03 PM BY DAUGHTER THAT CAR STARTED MAKING A STRANGE SOUND ON 9/17/18. PLANNED TO HAVE DEALER CHECK OUT CAR ON 9/19/18. ON 9/18/18 @

APPROXIMATELY 8:35 PM, WHILE BEING DRIVEN ON THE LOCAL
PORTION OF AN INTERSTATE HIGHWAY, THE CAR'S OIL LIGHT
BLINKED ON AND OFF. A FEW MINUTES LATER THE CHECK ENGINE
LIGHT WENT ON. A FEW MINUTES LATER THE CAR ENGINE BEGAN
TO SMOKE AND SMOKE CAME INTO THE CAR THROUGH THE AIR
VENTS. THE DRIVER, MY DAUGHTER'S BOYFRIEND, PULLED OVER
INTO THE BREAKDOWN LANE, TURNED OFF THE CAR, GOT OUT,
STEPPED AWAY FROM IT AND THE ENGINE ERUPTED IN FLAMES.
BY APPROXIMATELY 8:50 PM THE CAR WAS TOTALLY ENGULFED
IN FLAMES. THE CAR LOOKS LIKE IT WAS FIRE BOMBED.

**November 30, 2018 NHTSA ID Number: 11156931**
OIL LIGHT CAME ON, PULLED OVER TO CHECK OIL. AS CAR
SLOWED DOWN THE OIL LIGHT STARTED TO BLINK, THE CHECK
ENGINE LIGHT CAME ON, AND THE ENGINE STARTED TO KNOCK
AND MISFIRE. WHEN THE CAR GOT TO ABOUT 15–20 MPH IT
STALLED / CUT OFF AND I HAD TO COAST TO A PARKING LOT TO
STOP. CAR TURNED BACK ON, BUT IMMEDIATELY BEGAN
SQUEAKING AND KNOCKING BADLY. CAR WAS TOWED TO A SHOP
WHERE WE WERE TOLD THE MOTOR IS "BLOWN". SINCE ALL
SERVICE RECORDS COULD NOT BE PROVIDED KIA WILL NOT
HONOR THE WARRANTY (UNDER 60K MILES), EVEN THOUGH THE
OWNERS MANUAL SPECIFICALLY STATES THAT A LACK OF
MAINTENANCE RECORDS CANNOT BE THE SOLE REASON
WARRANTY CLAIMS ARE DENIED. THE PREVIOUS VERSION OF THIS
MOTOR IS ALREADY RECALLED, AND THIS VERSION IS ALREADY
SUSPECTED TO BE DEFECTIVE AS WELL. QUOTED ROUGHLY $6,000
TO REPAIR THE MOTOR, HAS A REPLACEMENT IS NOT AVAILABLE,
AND ALL MOTORS ARE BACKORDERED FROM THE
MANUFACTURER.

**February 24, 2019 NHTSA ID Number: 11183448**
I PURCHASED MY KIA SOUL IN FEBRUARY 2016. I'VE DRIVEN
AROUND 45,000 MILES AND REALLY ENJOYED IT UNTIL THE OTHER
NIGHT. DRIVING ABOUT 45MPH ON A MAJOR STREET WHEN A
LOUD SCREECH CAME FROM THE ENGINE. THE CAR JERKED AND I
THOUGHT IT WAS GOING TO STALL BUT IT DIDN'T. A LOUD
KNOCKING SOUND STARTED FROM UNDER THE HOOD AND THE
OIL LIGHT FLICKERED A COUPLE OF TIMES. DROVE ABOUT 1/4
MILE TO THE NEAREST GAS STATION. ADDED AROUND 1 QUART
OF OIL SINCE I SAW THE OIL LIGHT FLICKER. I THEN DROVE HOME

(ABOUT 5 MILES) AND THE OIL LIGHT FLICKERED A COUPLE OF TIMES ON THE WAY. THE NEXT DAY I STARTED THE CAR, THE OIL LIGHT WAS OFF BUT THE CHECK ENGINE LIGHT WAS ON. SO, I DROVE IT TO THE DEALERSHIP (1.5 MILES AT THE MOST) AND WAS TOLD I NEEDED A WHOLE NEW ENGINE. I WAS QUOTED $4,000 TO $6,000 FOR A USED ONE AND FOR A NEW ONE IT WOULD BE SUBSTANTIALLY MORE. I'VE TAKEN GOOD CARE OF THIS VEHICLE AND HAVE MAINTAINED AND REGULAR OIL CHANGES. SEVERAL OF THE OIL CHANGES WERE PERFORMED AT AN AUTO REPAIR SHOP THAT WENT BANKRUPT. I HAVE NO WAY TO OBTAIN COPIES OF THOSE RECEIPTS. ALL I COULD SUPPLY THE DEALERSHIP WAS ONE RECEIPT AND THEY HAD ONE RECEIPT IN THEIR SERVICE RECORDS. THEREFORE, NO COPIES... NO WARRANTY. I CAN'T AFFORD THE COST TO REPAIR IT AND I HAVE NO IDEA WHAT TO DO AT THIS POINT. THE DEALER WILL BUY THE CAR BACK FOR AROUND $4,000 AT BEST. WHY IS IT THAT ONE MINUTE A 3 YEAR OLD CAR IS RUNNING GREAT WITHOUT A PROBLEM AND THE NEXT MINUTE IT'S PARKED AND IN NEED OF A NEW ENGINE? SOMETHING ISN'T RIGHT ABOUT THAT AND I AM AT A LOSS OF WHAT TO DO NEXT.

### 2017 Kia Soul

**November 28, 2018 NHTSA ID Number: 11312243**
WHILE IN MOTION ON THE HIGHWAY I EXPERIENCE ENGINE FAILURE. I WAS TOLD THAT MY ENGINE THREW A ROD AND PUNCTURED A HOLE IN MY ENGINE.

**June 20, 2019 NHTSA ID Number: 11269075**
AT 75K MILES THE ENGINE FAILED ON MY 2017 KIA SOUL. SPECIFICALLY, IT THREW A ROD. THE CAR WAS SOLD TO ME AS A CERTIFIED USED CAR, THAT BEING THE DEALER SAID THERE WAS NOTHING WRONG WITH THE CAR. I TOOK THE CAR INTO GOSSETT KIA IN MEMPHIS, WHERE I PURCHASED THE CAR FOR AN OIL CHANGE. I WAS CALLED LATER AND TOLD THE ENGINE WAS KNOCKING. THE SERVICE WRITER TOLD ME, "DO NOT WORRY ABOUT THIS. IT IS A KNOWN PROBLEM WITH THE 2016 AMD 2017 KIA SOUL AND YOUR CAR IS UNDER WARRANTY." KIA TOLD ME THE CAR WAS NOT UNDER WARRANTY BECAUSE I CHOSE TO DRIVE FOR A RIDE SHARE COMPANY AND THAT VOIDED THE

WARRANTY. THE PROBLEM IS THEY SOLD ME A CAR AS CERTIFIED WHEN THEY KNEW ABOUT THE ENGINE FAILURE ISSUE.

**February 2, 2020 NHTSA ID Number: 11309150**
ENGINE- 2017 KIA SOUL 2.0 L 4-CYL. MILEAGE AT THE TIME OF PURCHASE 42,788. MILEAGE AT FAILURE WAS 89,144. USAGE PREDOMINATELY HWY MILES. AT THE TIME OF FAILURE, WE OWNED THE VEHICLE 19 MONTHS. REGULAR OIL CHANGES WITH CASTROL GTX AND EDGE 100% SYNTHETIC 5W20 OIL. FEBRUARY 02, 2020 MY WIFE STARTED THE DAY DRIVING AWAY FROM HOME. THE OUTSIDE TEMPERATURE IN THE 60'S AND SUNNY. DROVE 4.5 MILES TRAVELING 45MPH ON A STRAIGHT LEVEL CITY ROADWAY IN HEAVY TRAFFIC. SHE COULD HAVE BEEN REAR-ENDED OR WHEN TURNING OFF THE ROADWAY WITH LOSS OF POWER T-BONED TRYING TO EXIT THE ROADWAY IN AN EMERGENCY. THERE IS NO BREAKDOWN LANE OR ENOUGH GROUND ON THE SIDE OF THE ROADWAY TO PULL OFF. ALL OF A SUDDEN, FOR NO REASON, THE ENGINE LOST POWER AND MADE A KNOCKING SOUND. SHE CHECKED THE INSTRUMENT PANEL, NO WARNING LIGHTS. TEMPERATURE GAUGE READ NORMAL. WITHIN SECONDS, SHE PULLED INTO A PARKING LOT AND TURNED OFF THE MOTOR. NO VISIBLE SIGNS OF ANY DAMAGE ON THE EXTERIOR OF THE MOTOR OR UNDERNEATH THE VEHICLE. WE ARE THE SECOND OWNER OF THIS VEHICLE. MANUFACTURES INITIAL TRANSFERABLE WARRANTY EXPIRED. WE TOWED THE VEHICLE TO OUR REGULAR ASE CERTIFIED MECHANIC. THEY DETERMINED THE ISSUE TO BE A ROD KNOCK. FURTHER DIAGNOSIS DETERMINED FROM A COMPRESSION TEST THE #2 CYLINDER IS AT 80#'S COMPRESSION THE OTHER THREE AT 150#'S. I HAVE READ YOUR REPORT REGARDING THE ONGOING INVESTIGATION INTO KIA'S MOTOR FAILURES. I BELIEVE THIS MOTOR SHOULD BE INCLUDED IN THE INVESTIGATION ALTHOUGH BOTH VIN SEARCHES TURNED UP NO RECALL ON MY VEHICLE. WE ARE CURRENTLY TRYING TO GET THE LOCAL DEALER TO WORK ON THE VEHICLE AND THEY WANT TO CHARGE A MINIMUM FEE OF 1500-1600 TO TEAR THE MOTOR DOWN AND COMPLETE AN INVESTIGATION INTO WHY THE MOTOR FAILED. WE HAVE AN AFTERMARKET WARRANTY PROGRAM AND THEY ARE TRYING TO FIND A WAY NOT TO PAY FOR ANY CLAIM ON THIS ISSUE. OUR DILEMMA IS ONGOING AT THE TIME OF THIS COMPLAINT.

**April 6, 2020 NHTSA ID Number: 11320360**
MILEAGE 75,000 AND THE ENGINE THREW A ROD THROUGH THE BOTTOM OF THE ENGINE BLOCK AND THROUGH THE OIL PAN. I PURCHASED THE CAR WITH ABOUT 22,000 MILES. I'VE DRIVEN THE CAR LESS THAN 2 YEARS AND HAVE PUT ABOUT 50,000 MILES ON IT. I HAVE MAINTAINED THE VEHICLE ACCORDING TO MANUFACTURER SPECIFICATIONS WITH REGULAR OIL CHANGES EVERY 5000 MILES. I HAVE NEVER HAD THE CHECK ENGINE OR OIL LIGHTS COME ON SINCE I'VE OWNED THE VEHICLE. WHILE DRIVING ON THE INTERSTATE ABOUT 80 MPH WITH THE CRUISE CONTROL ON, THE CAR STRUGGLED AND FELT LIKE IT WAS GOING TO STALL OUT, LIKE IT WASN'T GETTING GAS OR THE ALTERNATOR WAS FAILING. THE CHECK ENGINE AND OIL LIGHT CAME ON AND SMOKE WAS BILLOWING FROM UNDER THE HOOD. I HAD TO DRIVE FOR ABOUT HALF A MILE OR SO TO THE NEAREST EMERGENCY PULL OFF AND TURNED OFF THE CAR. WHEN I WAS FINALLY BRAVE ENOUGH TO POP THE HOOD, THERE WAS OIL SPRAYED ALL OVER THE ENGINE BAY, A SMALL PUDDLE ON THE GROUND, AND NO OIL IN THE ENGINE. I HAD IT TOWED TO MY LOCAL GARAGE AND WAS TOLD THAT THE ENGINE BLEW THE CONNECTOR ROD OUT OF THE ENGINE BLOCK AND THROUGH THE OIL PAN. MY VEHICLE HAS NOT BEEN RECALLED FOR THIS ISSUE BUT THERE HAS BEEN A RECALL ON 2012-16 KIA SOUL FOR THE EXACT SAME PROBLEM. IT CANNOT BE A COINCIDENCE THAT MY VEHICLE HAS THIS PROBLEM AS WELL. MY LOCAL KIA DEALERSHIP HAS SAID I CAN BRING IT IN, PAY THE $100 DIAGNOSTICS FEE, AND THEY'LL DECIDE IF IT CAN BE COVERED SINCE THE WARRANTY HAS LAPSED. SINCE I AM THE SECOND OWNER, I DO NOT HAVE THE 100,000 MILE 10 YEAR WARRANTY. THE WARRANTY IS REDUCED TO 3 YEARS 60,000 FROM THE ORIGINAL (FIRST OWNER) PURCHASE DATE.

**July 15, 2020 NHTSA ID Number: 11339618**
AT 91K MILES, THE ENGINE BLEW. AT 84K MILES THE CATALYTIC CONVERTER WAS CONDEMNED.

### **2018 Kia Soul**

**June 8, 2020 NHTSA ID Number: 11338396**
ON 7/8/20, MY CAR MADE A VERY LOUD NOISE AND SHUT OFF ON ME. NO SENSORS, NO LIGHTS CAME ON. I HAD IT TOWED TO THE

KIA IN WHICH I PURCHASED IT FROM, AND THEY TOLD ME MY
ENGINE BLEW. MY WARRANTY WAS SUPPOSE TO COVER THE
REPAIRS BUT THEY ARE REFUSING TO COVER THE REPAIR.

**August 17, 2020 NHTSA ID Number: 11351542**
TL* THE CONTACT OWNS A 2018 KIA SOUL. THE CONTACT STATED
THAT WHILE DRIVING AT 30 MPH, AN ABNORMAL NOISE WAS
PRESENT WITHOUT WARNING. THE VEHICLE WAS TAKEN TO THE
DEALER (KIA OF MUNCIE 6732 W HOMETOWN BLVD, MUNCIE, IN
47304) WHERE IT WAS DIAGNOSED AND DETERMINED THAT THAT
THE ENGINE ROID FAILED AND NEEDED TO BE REPLACED. THE
VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS NOT
MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS
APPROXIMATELY 60,000.

**August 20, 2020 NHTSA ID Number: 11361636**
WHILE DRIVING THE VEHICLE TO WORK, VEHICLE CAME TO A
COMPLETE STOP AND WOULD NOT TURN ON. AT FIRST THOUGHT
IT WAS THE BATTERY BUT THE TOW TRUCK CHARGED THE
BATTERY AND WHEN STARTED THE RODS WERE KNOCKING. WE
TOWED TO THE DEALERSHIP, REGAL KIA AND THEY DIAGNOSED
MY CAR FOR NEEDING A WHOLE NEW ENGINE. IF WE WERE TO
DRIVE THE VEHICLE ANY FURTHER THE ENGINE WOULD BLOW.
OIL CHANGE WAS JUST A MONTH BEFORE AT THE REGAL KIA
DEALERSHIP SO IT WASN'T DUE TO LOW OIL. THE 2018 KIA SOUL
HAD 61,000 MILES AT IT AND ENGINE WAS RUINED.

**January 2, 2021 NHTSA ID Number: 11386699**
TL* THE CONTACT OWNS A 2018 KIA SOUL. THE CONTACT STATED
THAT WHILE HER SON WAS DRIVING 60 MPH, THE VEHICLE
STALLED WITHOUT WARNING. THE VEHICLE WAS NOT DRIVABLE.
THE VEHICLE WAS TOWED TO HER SON'S APARTMENT. THE
VEHICLE WAS TAKEN TO THE LOCAL DEALER KIA OF SOUTH
AUSTIN (5306 S IH 35 FRONTAGE RD, AUSTIN, TX 78745, (512) 444-
6635) TO BE DIAGNOSED. THE CONTACT WAS INFORMED THAT THE
ENGINE NEEDED TO BE REPLACED. THE VEHICLE WAS NOT
REPAIRED. THE MANUFACTURER HAD BEEN INFORMED OF THE
FAILURE. THE FAILURE MILEAGE WAS APPROXIMATELY 68,000.

**October 12, 2021 NHTSA ID Number: 11436700**

1
2
3
4
5

ENGINE STARTED TO KNOCK, THEN IT GOT LOUDER AND FINALLY
THE ENGINE STOPPED RUNNING. IF IT WOULD HAVE SHUT DOWN
ON THE BUSY INTERSTATE, IT COULD HAVE BEEN A DISASTER.
THE PROBLEM HAS NOT BEEN INSPECTED BY MANUFACTURE.
TRYING TO REPORT TO KIA. ENGINE HAS LESS THAN 84000. THE
OIL LIGHT CAME ON RIGHT BEFORE IT DIED.

6

### 2019 Kia Soul

7
8
9
10
11
12
13
14
15

**October 10, 2018 NHTSA ID Number: 11397349**
TL* THE CONTACT OWNS A 2019 KIA SOUL. THE CONTACT STATED
THAT WHILE DRIVING AT VARIOUS SPEEDS, THE CHECK ENGINE
WARNING LIGHT ILLUMINATED AND AN ABNORMAL ODOR
APPEARED. THE VEHICLE WAS TAKEN TO KIA SERVICE CENTER
1137 U S 46, STE A, CLIFTON, NJ 07013 (973) 779-7000 WHERE IT WAS
DIAGNOSED THAT THE VEHICLE NEEDED AN OIL CONSUMPTION
TEST. THE VEHICLE OIL WAS REPLACED HOWEVER THE FAILURE
RECURRED. THE VEHICLE WAS SEEN 3 ADDITIONAL TIMES AT THE
DEALER. THE CONTACT MENTIONED THAT THE VEHICLE WAS
BURNING 1 QUART OF OIL EVERY MONTH. THE MANUFACTURER
WAS NOT NOTICED OF THE FAILURE. THE FAILURE MILEAGE WAS
APPROXIMATELY 35,000.

16
17
18
19

**May 15, 2021 NHTSA ID Number: 11422713**
BOUGHT A 2019 KIA SOUL+ AND AFTER HITTING A FEW HUNDRED
MILES OUTSIDE THE 60,000 WARRANTY THE ENGINE DIES TO THE
POINT KIA HAS TO REPLACE THE WHOLE ENGINE.

20

### 2011 Kia Sportage

21
22
23

**October 1, 2014 NHTSA ID NUMBER: 10640483**
SECOND CATASTROPHIC FAILURE OF 2.0 LITER TURBOCHARGED
ENGINE IN LESS THAN 30,000 MILES SERVICE. *TR

24
25
26
27

**June 20, 2016 NHTSA ID NUMBER: 10875228**
ENGINE SHUT DOWN IN THE HIGHWAY CAUSING LOSS OF POWER
STEERING/BRAKES. CAR HAS LESS THAN 80K MILES, ALL OIL
CHANGES PERFORMED PER SPEC RECENTLY ADTER SWITCHING TO
FULL SYNTHETIC OIL CHANGED EVERY 5000 MILES. ENGINE
SEIZED. VERY SIMILAR TO HYUNDAI RECALL ISSUED 9/25/2015.

28

SAME ENGINE MANUFACTURED IN THE SAME PLANT WITH A DIFFERENT NAME BADGE.

**February 13, 2017 NHTSA ID NUMBER: 10954281**
2011 KIA SPORTAGE - ENGINE FAILED WITHOUT WARNING WITH TWO TODDLERS IN CAR. LUCKILY THIS HAPPENED AS I TURNED OFF A HIGHWAY AND WAS ABLE TO STOP ON THE SHOULDER. MANUFACTURER REFUSES TO FIX BECAUSE I DON'T HAVE MAINTENANCE RECORD. I HAVE A FRIEND WHO HAS BEEN CHANGING OIL/SERVICING CAR. I HAVE LEARNED THAT MANY OWNERS OF THIS YEAR/MODEL CAR HAVE SIMILAR EXPERIENCES. I FEEL THE MANUFACTURER SHOULD DEAL WITH A PROBLEM AS SEVERE AS THIS IMMEDIATELY!

**October 13, 2017 NHTSA ID NUMBER: 11033238**
THE ENGINE BLEW UP IN MY 2011 KIA SPORTAGE. IT HAD JUST A LITTLE OVER 100,000 MILES ON IT. I'M TOLD THAT IT IS NOT ONE OF THE ENGINES THAT HAVE BEEN RECALLED AND I FEEL THAT IT SHOULD BE. I WAS DRIVING INTO WORK AND WAS STRANDED. I COULD HEAR A LOUD BANGING NOISE AS I WAS DRIVING INTO WORK. SO I TOOK IT TO A LOCAL MECHANIC AND HE SAID THAT THE ENGINE HAD BLOWN UP. I HAD TO HAVE IT TAKEN TO MY HOME ON A FLATBED.

**February 6, 2019 NHTSA ID NUMBER: 11174660**
I'M EXPERIENCING THE SAME BEARING WEAR ISSUE THAT THE ENGINE RECALL IS FOR BUT MY VIN IS NOT LISTED WITHIN THE RECALL. I WILL BE DRIVING AT SPEED AND WITHOUT WARNING THE ENGINE WILL STALL OUT FOR MAYBE 1 TO 2 SECONDS AND THEN PICK BACK UP AT THE SPEED I WAS TRAVELLING AT. IN CERTAIN INSTANCES WHEN THIS HAPPENS THE CHECK ENGINE LIGHT WILL COME ON AND THE CAR WILL IDLE EXTREMELY ROUGH UNTIL THE ENGINE IS SHUTOFF AND ALLOWED TO SIT FOR A FEW MINUTES BEFORE BEING RESTARTED. I FEEL THIS IS THE EXACT COMPLAINT THAT THE RECALL WAS ISSUED FOR BUT MY CAR IS NOT LISTED IN THE RECALL. I FEEL THE RECALL IS VERY LIMITED IN IT'S SCOPE AND THE RECALL SHOULD BE EXTENDED TO FURTHER VIN NUMBERS.

**2012 Kia Sportage**

**November 20, 2012 NHTSA ID NUMBER: 10485272**

I PULLED A TRAILER FOR THE FIRST TIME ON THIS DATE. THE TRUCK ONLY MADE IT 10 MILES, AND LOST ALL POWER, AND I BARELY MADE IT OFF OF THE FREEWAY. BROUGHT IT TO THE DEALER, AND THEY FOUND THE SPARK PLUGS BLEW APART. ALL THEY DID WAS CHANGE THE SPARK PLUGS AND SENT ME ON MY WAY. ON JULY 13TH, I TOWED MY CAMPER, WHICH WAS LIGHTER THAN THE LAST TRAILER I PULLED. THIS TIME, ABOUT 6 MILES INTO THE TRIP, THE ENGINE COMPLETELY LET GO ON THE HIGHWAY. I HAD TO GET ACROSS 4 LANES OF TRAFFIC WITH NO POWER AND A CAMPER IN-TOW. WAITED AT THE SIDE OF THE ROAD FOR AN HOUR AND A HALF BEFORE KIA SENT A TOW VEHICLE. DISCOVERED ALL 4 SPARK PLUGS WERE DESTROYED, AND A HOLE IN CYLINDER 3. KIA WILL NOT WARRANTY IT, BLAMING THE ENGINE FAILURE ON THE CAMPER NOT HAVING TRAILER BRAKES(COMPLETELY ABSURD). THE FIRST FAILURE IN JUNE, THE TRAILER WEIGHED 500LBS MORE, AND HAD TRAILER BRAKES. KIA DOES NOT WANT TO ADMIT FAULT FOR THIS EXTREMELY DANGEROUS FAULT IN THEIR ENGINE. THE VEHICLE IS RATED FOR 2,000LBS TOWING CAPACITY, AND BOTH TRAILERS WERE WELL UNDER THE LIMIT. MY CAMPER IS ONLY 1,155LBS. COMPLETE ENGINE FAILURE ON THE HIGHWAY PUT ME AND MY ENTIRE FAMILY IN DANGER TWICE. THIS IS UN-ACCEPTABLE. THIS WAS A LOADED SX AWD.(TURBOCHARGED). *TR

**October 10, 2015 NHTSA ID NUMBER: 10781245**

WHILE DRIVING CAR AT HIGHWAY SPEEDS, SUDDENLY CAR BEGAN TO DECELERATE, LUCKILY WAS ABLE TO GET TO SHOULDER OF HIGHWAY. CAR DIED WHEN GETTING TO SHOULDER, STARTED AGAIN, ENGINE MAKING HORRIBLE KNOCKING SOUND, AND WOULDN'T MOVE. GOT TOWED TO KIA DEALER, STATED WE NEEDED A NEW ENGINE. KIA DEALER STATED THE CONNECTING ROD ON THE CRANKSHAFT EITHER SEIZED UP OR BROKE AND LOCKED UP.

**December 30, 2016 NHTSA ID NUMBER: 10938677**

WHILE DRIVING ON THE HIGHWAY, WE HEARD A THUMP FROM OUR 2012 KIA SPORTAGE. WHEN WE GOT HOME, MY HUSBAND CHECKED THE ENGINE AND HE FOUND WE HAD NO OIL. WE NEVER HAD A CHECK ENGINE OR OIL LIGHT COME ON AND NEVER HAD AN OIL SPOT UNDER OUR CAR. WE TOOK IT TO OUR KIA DEALER

AND WAS TOLD IT NEEDED A NEW ENGINE. AFTER READING OTHER COMPLAINTS ABOUT THE SAME ISSUE, I REALIZE WE WERE VERY LUCKY WE WERE ABLE TO MAKE IT HOME WITH OUR CAR THAT NIGHT. OUR KIA HAD LESS THAN 35,000 MILES ON IT AND WE CHANGED THE OIL REGULARLY , SO WE JUST KNEW IT WOULD BE UNDER WARRANTY. HOWEVER, BECAUSE MY HUSBAND DID SOME OF THE OIL CHANGES HIMSELF, THEY WOULD NOT HONOR THE WARRANTY- HE DIDN'T HAVE ALL OF THE RECEIPTS FOR THE OIL AND FILTERS SINCE 2012. THE RECEIPTS WE COULD PROVIDE FROM BUSINESSES THAT DID OIL CHANGES AND SOME COPIES OF RECEIPTS MY HUSBAND COULD GET FROM THE AUTO PARTS STORES SHOWED THAT THE OIL WAS CHANGED OFTEN, BUT WE DIDN'T HAVE ALL THE RECEIPTS. REGARDLESS, A VEHICLE WITH LESS THAN 35,000 MILES, WITH PROOF OF SEVERAL OIL CHANGES, NOT EVER HAVING A CHECK ENGINE OR OIL LIGHT COME ON, AND NO OIL SPOTS WHERE IT'S PARKED EVERY DAY- SHOULD NOT RUN OUT OF OIL AND NEED A NEW ENGINE. I KNEW THIS HAD TO BE A DEFECT WITH KIA ENGINES AND AFTER READING MANY COMPLAINTS FROM OTHER KIA OWNERS, IT'S OBVIOUSLY A KNOWN AND DANGEROUS DEFECT AND NEEDS TO BE ADDRESSED. *TR

**December 24, 2020 NHTSA ID NUMBER: 11384850**
2012 KIA SPORTAGE LX 2.4L MPI ENGINE WITH APPROXIMATELY 120K MILES ENGINE SEIZED AT MODERATE SPEED ON THE INTERSTATE. CAR WAS WELL MAINTAINED BOUGHT SECOND HAND FROM BRANDON KIA IN TAMPA, FL IN JULY 2018 WITH APPROX. 92K MILES. ENGINE SEIZED ON 14 DEC 2020. TOWED TO LOCAL REPAIR SHOP AND ANALYZED AS REPLACE ENGINE. WE READ ABOUT THE KIA/HYUNDAI ENGINE PROBLEMS SO WENT TO LOCAL KIA DEALER TO INQUIRE. THE SERVICE REP SAID TOW IT IN AND THEY WOULD ANALYZE AND IF THE SEIZURE MET THE CONDITIONS, THEY WOULD REPLACE PER KIA GUIDANCE. SO WE DID THIS, AND WERE TOLD "SORRY, YOUR VEHICLE ISN'T COVERED." SAME RUN AROUND AS EVERYONE ELSE IS EXPERIENCING WITH KIA. KIA NEEDS TO ADMIT EVERY THETA II ENGINE THEY PRODUCED BETWEEN 2011 AND 2014 HAD A MANUFACTURING FLAW AND JUST BITE THE BULLET AND REPLACE THEM WHEN THEY FAIL. WE ARE WEIGHING OUR OPTIONS NOW, NONE OF WHICH ARE GOOD AT THIS POINT. THE ENGINE REPLACEMENT WILL COST WHAT THE CAR IS WORTH, SO

IF KIA WILL NOT REPLACE THE ENGINE OR AT LEAST ABSORB
SOME OF THE COST, THE CAR IS NOT WORTH REPAIRING. KIA
NEEDS TO STAND BY THEIR PRODUCTS. NO ENGINE SHOULD FAIL
AT 120K MILES FOR CRANKCASE ISSUES, WHICH IS WHAT IS
HAPPENING WITH THESE THETA II ENGINES. PLEASE PUT
PRESSURE ON KIA TO REPLACE THESE ENGINES, NO
EXCLUSIONS!!!

**March 30, 2021 NHTSA ID NUMBER: 11405703**
I WAS DRIVE DOWN THE HWY AND THE TRUCK JUST CUT OFF ON
THW HWY AND LITTLE SMOKE CAME FROM THE HOOD I HAD TO
TRY PUSH THE TRUCK TO THE SIDE OF THE ROAD AND THE TRUCK
NEVER CRANK AGAIN ITS DEAD

**March 30, 2021 NHTSA ID NUMBER: 11405573**
FIRST COMPLAINT #11340436 FILED IN JULY 2020 FOR ORIGINAL
2012 ENGINE. ENGINE LIGHT NEVER CAME ON. DRIVING ON A
HIGHWAY 70-75 MPH. KNOCKING SOUND IN ENGINE. CRANKSHAFT
PISTON ROD DAMAGED. ENGINE REPLACED WITH USED 2014
MOTOR. MARCH 2021 COMPLAINT BEING FILED FOR REPLACEMENT
2014 ENGINE (IN JULY 2020) ENGINE LIGHT HAS COME ON
REPEATEDLY IN THE LAST MONTH WHEN JUST DRIVING AROUND
TOWN. 1) OIL WAS CHANGED; LIGHT RESET. 2) SOLENOID SWITCH
REPLACED; LIGHT RESET. 3) LEAKING OIL; VALVE COVER
SECURED 4) VARIABLE VALVE TIMING GEAR PROBLEM, TIMING IS
OFF CAUSING OIL PRESSURE PROBLEMS. VEHICLE RUNNING
ROUGH, ENGINE IS AUDIBLY MISSING.

## 2013 Kia Sportage

**September 28, 2016 NHTSA ID NUMBER: 10910177**
TL* THE CONTACT OWNS A 2013 KIA SPORTAGE. WHILE DRIVING
APPROXIMATELY 40 MPH AND APPROACHING A RAMP, THE
VEHICLE SHUT DOWN WITHOUT WARNING. THE VEHICLE WAS
COASTED OVER TO THE SIDE OF THE ROAD AND RESTARTED. THE
CHECK ENGINE AND OIL INDICATORS ILLUMINATED. THE VEHICLE
WAS DRIVEN TO THE DEALER WHERE IT WAS DIAGNOSED THAT
THE ENGINE HAD BLOWN AND NEEDED TO BE REPLACED. THE
VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS
NOTIFIED. THE APPROXIMATE FAILURE MILEAGE WAS 57,000.

**March 29, 2017 NHTSA ID NUMBER: 10969408**
1ST INCIDENT ENGINE STALLED WHILE DRIVING, NOTICED RPM'S
WERE RUNNING TO HIGH AND AUTOMATIC TRANS SHIFTED ONLY
WHEN BACKING OFF ACCELERATOR PETAL AND A "PAAP" SOUND
WAS EMITTED FROM THE ENGINE, ENGINE TURNED OVER BUT
FAILED TO START BEFORE BATTERY DIED AFTER 3 TURNOVER,
DEALER REPLACED THE BATTERY AND FOUND NO OTHER ISSUES,
CUSTOMER WAS CHARGED $180.00. BUT, "OVER THE NEXT 14 DAYS
DRIVER NOTICED ENGINE MOMENTARY RAN ERRATICALLY
WITHOUT ANY PATTERN, THEN ABOUT 13 DAYS A CLACKING
SOUND BEGAN, AND BECAME INCREASINGLY LOUDER, VEHICLE
STALLED TWICE WHEN RELEASING THE ACCELERATOR PETAL,
AFTER THE 2ND STALL THE CHECK ENGINE LIGHT CAME ON, A
CODE P0014 WAS NOTED, ENGINE RESTARTED BUT WAS MAKING
LOUD CLACKING SOUNDS, TOWED TO ANOTHER DEALER, STATED
CONNECTING ROD BEARING FAILURE RESULTED IN CLOGGING
THE OIL CONTROL VALVE STARVING THE TOP OF THE ENGINE OF
OIL. DEALER ALSO STATED THE TIMING CHAIN HAD JUMPED.
COVERED BY KIA WARRANTY A NEW ENGINE IS TO BE INSTALLED
AT NO CHARGE, WERE HOPING, FAILURE OCCURRED AT 59,000
MILES, OIL WAS CHANGED AT REGULAR INTERVALS.

**July 4, 2017 NHTSA ID NUMBER: 11002915**
AT 85K MILES AND AFTER REGULAR MAINTENANCE, THE ENGINE
SEIZED WHILE IN STOP-AND-GO TRAFFIC. THE CAR ACCELERATED
TO ABOUT 35 MPH FROM ABOUT 10 MPH AND THEN JUST DIED,
REQUIRING A NEW ENGINE. THERE WAS NO PRIOR INDICATION OF
ANY ENGINE ISSUES. THE CAR HAD JUST COMPLETED A 400 MILE
ROUND-TRIP ROAD TRIP THE PREVIOUS WEEKEND WITHOUT ANY
ISSUES. WE BELIEVE THIS IS THE SAME ENGINE ISSUE CURRENTLY
UNDER RECALL AND THAT THE RECALL SHOULD BE EXPANDED.

**September 25, 2019 NHTSA ID NUMBER: 11257996**
ENGINE HAD A KNOCKING IN IT. TOOK TO A GARAGE AND WAS
TOLD ENGINE HAD FAILED AT 128,000 MILES AND NEEDS A NEW
ENGINE. CALLED KIA AND WAS TOLD NOT ON RECALL EVEN
THOUGH TWO OTHER ENGINES FOR THIS YEAR ARE RECALLED
DUE TO EARLY ENGINE FAILURE. HOPING THIS MODEL ENGINE
WILL SOON BE ON THE RECALL LIST ALSO.

**January 18, 2021 NHTSA ID NUMBER: 11388747**

WAS DRIVING HOME ALONE FROM LOUISIANA TO MISSISSIPPI AND PASSED A CAR AND CAR DIES AND ALL DASH LIGHTS COME ON SO I PULLED OVER AND TURNED OFF CAR AND SAT FOR A FEW MINUTES. I TURNED CAR BACK ON AND NO DASH LIGHTS CAME ON AND DIDN'T HEAR ANY NOISE TO INDICATE ANYTHING WAS WRONG WITH VEHICLE SO I CONTINUED ON MY TRIP BEING I WAS ALONE AND IN A RURAL AREA. CAR RAN NORMAL FOR ABOUT 30 MILES AND CAR STARTED SLOWING DOWN TO WHERE THERE WAS NO POWER AND FINALLY WOULDN'T GO. NOTE: NO ENGINE LIGHTS CAME ON AT THAT TIME.HAD IT TOWED TO MY HOME (3) HOURS AWAY, AND MY MECHANIC SAID THE BEARING ARE RUINED AND THERE'S METAL SHAVINGS IN THE OIL AND THE OIL HAS A BURNT SMELL TO IT. I HAD OIL CHANGED REGULARLY AND THAT OIL CHANGE HAD ABOUT 600 MILES ON IT.

128.   On March 29, 2019, NHTSA opened a preliminary evaluation to assess the scope, frequency, and potential safety-related consequences of alleged defects relating to non-collision engine fires in Defendants' vehicles in response to a petition from the Center for Auto Safety after identifying more than 3,000 reports of non-collision fires in certain Hyundai and Kia vehicles, including certain Class Vehicles, dating back to 2010.[4]

129.   Notably, NHTSA expanded the scope of its investigation into Defendants' vehicles to include "all other [Hyundai and Kia] vehicles equipped with Theta II, Lambda II, Gamma and Nu engines, manufactured for sale or lease in the United States, including, but not limited to, the District of Columbia, and current U.S. territories and possessions."[5] To date, this NHTSA investigation is ongoing.

---

[4] *See* NHTSA PE19-003 (Hyundai), available at https://static.nhtsa.gov/odi/inv/2019/INOA-PE19003-2613.PDF (last visited Sept. 7, 2022); NHTSA PE19-004 (Kia), available at https://static.nhtsa.gov/odi/inv/2019/INOA-PE19004-4727.PDF (last visited Sept. 7, 2022); *See* 2011-14 Hyundai Kia Fire Complaints excel spreadsheet containing NHTSA complaint data, available at http://www.autosafety.org/wp-content/uploads/2018/06/2011-14-Hyundai-Kia-Fire-Complaints-FINAL.xlsx (last visited Sept. 7, 2022).

[5] *See* Apr. 12, 2019 NHTSA Ltr. to Hyundai, available at https://static.nhtsa.gov/odi/inv/2019/INIM-PE19003-74878.pdf (last visited Sept. 7, 2022); *See* Apr. 12, 2019

130.    While automakers occasionally produce vehicles that catch fire, when compared to these Hyundai and Kia vehicles, the Center for Auto Safety noted that there is enough of a statistical disparity to suggest a systemic issue. More specifically, in its June 7, 2018 review of all NHTSA-reported cases of non-collision fires involving similar class and size vehicles, the Center found there were 22 reported cases in competitor vehicles as opposed to 120 for the Kia and Hyundai models.[6] The Center's June 11, 2018 Petition noted that Defendants' competitors Honda and Toyota sold 3.4 million comparable vehicles in the U.S. to Defendants' approximately 2.2 million vehicles, and that "[w]hen factoring in the number of vehicles of these types sold per manufacturer compared to the number of fire complaints, the differences are even more profound."[7]

### 2.    Warranty claims, part sales, and customer complaints lodged with Defendants also alerted Defendants to the Engine Failure Defect.

131.    Defendants knew or should have known about the Engine Failure Defect because of the sheer number of reports they received regarding the connecting rod bearings and lubrication channels. For instance, Hyundai and Kia's customer relations departments, which interact with Hyundai- and Kia-authorized service technicians to identify potentially widespread vehicle problems and assist in the diagnosis of vehicle issues, have received numerous reports of engine problems relating to the connecting rod bearings and lubrication channels. Customer relations also collects and analyzes field data including, but not limited to, repair requests made at dealerships and service centers, technical reports prepared by engineers that have reviewed vehicles for which warranty coverage is requested, parts sales reports, and warranty claims data.

---

NHTSA Ltr. to Kia, available at https://static.nhtsa.gov/odi/inv/2019/INIM-PE19004-74879.pdf (last visited Sept. 7, 2022).

[6] *See* June 11, 2018 Center for Auto Safety Petition, available at https://www.autosafety.org/wp-content/uploads/2018/06/Center-for-Auto-Safety-Kia-Hyundai-Fire-Defect-Petition.pdf (last visited Sept. 7, 2022).

[7] *Id.*

132.   Defendants' warranty departments similarly review and analyze warranty data submitted by their dealerships and authorized technicians to identify defect trends in its vehicles. Hyundai and Kia dictate that when a repair is made under warranty (or warranty coverage is requested), service centers must provide Hyundai and Kia with detailed documentation of the problem and the fix that describes the complaint, cause, and correction, and must also save the broken part should Hyundai and Kia later decide to audit the dealership or otherwise verify the warranty repair. Service centers are meticulous about providing this detailed information about in-warranty repairs to Hyundai and Kia because the automakers will not pay the service centers for the repair if the complaint, cause, and correction are not sufficiently described.

133.   Defendants also knew or should have known about the Engine Failure Defect because of the high number of replacement parts likely ordered from Defendants. All Hyundai and Kia service centers are required to order replacement parts, including engines, piston assemblies, and connecting rod bearings directly from Defendants. Other independent vehicle repair shops that service Class Vehicles also order replacement parts directly from Defendants. Defendants routinely monitor part sales reports, and they are responsible for shipping parts requested by dealerships and technicians. Defendants have detailed, accurate, and real-time data regarding the number and frequency of replacement part orders. The increase in orders for the MPI and GDI engines and engine components used in the Class Vehicles was known to Defendants and should have alerted the automakers to the scope and severity of the Engine Failure Defect.

134.   Defendants are experienced in the design and manufacture of consumer vehicles. As experienced manufacturers, Defendants likely conduct testing on incoming batches of components, including the MPI and GDI engines at issue here, to verify that the parts are free from defects and comply with Defendants' specifications. Accordingly, Defendants knew or should have known that the engines used in the

Class Vehicles were defective and likely to fail prematurely, costing Plaintiffs and putative class members thousands of dollars in expenses.

### 3. Defendants' belated, piecemeal, inadequate, and incomplete recalls evidence Defendants' knowledge of the Engine Failure Defect.

135.   From 2015 to present, Defendants have reluctantly and belatedly recalled hundreds of thousands of vehicles—including certain Class Vehicles—spanning many models and years and equipped with a myriad of GDI and MPI engines, for the same Engine Failure Defect.

136.   The recalls have similarities that point to the presence of a common defect in the engines: (1) they all focus on mitigating the risks of engine stalls and/or fires; (2) they all point to common warning signs, including knocking sounds and "check engine" and "oil pressure" warnings; and (3) multiple recalls include updates to the vehicles' KSDS as part of their remedies. This last fact demonstrates that all of the Class Vehicles suffer from the same problems, while acknowledging it can't actually be fixed, only mitigated by warning when catastrophe is imminent.[8] In these recalls, the variations on the concept of engine oil leaks that can result in fires all undersell the severity of the problem: oil leaks that result in fire occur in the Class Vehicles' defective engines when a hole is punched in the engine block by a broken and rapidly spinning connecting rod, spilling engine oil and resulting in fire.

137.   Below is a summary of the relevant recalls known to date:

---

[8] *Part 573 Safety Recall Report for NHTSA Recall No. 19V063000*, NHTSA (Aug. 23, 2019), https://static.nhtsa.gov/odi/rcl/2019/RCLRPT-19V063-1419.PDF; *Part 573 Safety Recall Report for NHTSA Recall No. 20V746000*, NHTSA (Dec. 1, 2020), https://static.nhtsa.gov/odi/rcl/2020/RCLRPT-20V746-3838.PDF; *Recall 198 Attachment A; Chronology of Events Leading up to Defect Decision*, NHTSA, https://static.nhtsa.gov/odi/rcl/2020/RMISC-20V746-4680.pdf (chronology NHTSA Recall No. 20V746000); *Part 573 Safety Recall Report for NHTSA Recall No. 20V75000*, NHTSA (Dec. 2, 2020), https://static.nhtsa.gov/odi/rcl/2020/RCLRPT-20V750-5519.PDF; *Engine Compartment Fires (SC200); Basis of Safety Defect Determination 573.6(c)(6)*, NHTSA, https://static.nhtsa.gov/odi/rcl/2020/RMISC-20V750-6401.pdf (chronology NHTSA Recall No. 20V75000).

| Recall & Date | Vehicles & Engines | Recall Details | Production Dates & Locations for Class Vehicles |
|---|---|---|---|
| 15V568000 9/10/2015 | 2011–2012 Hyundai Sonata (2.0L and 2.4L Theta II GDI engines) | **Reason:** Risk of stall from "connecting rod wear" caused by "metallic debris may not have been fully removed during manufacturing of the engine crankshaft." <br><br>**Warning signs:** "knocking noise from engine" and [i[llumination of the engine warning lamp." <br><br>**Chronology:** NHTSA first raised the issue with Hyundai in June 2015, and Hyundai eventually recalled the vehicles in response. <br><br>**Remedy:** Engine inspection and, if necessary, replacement; extended warranty for engine short block; and reimbursement for repairs. | Dec. 11, 2009, to Apr. 12, 2012, by Hyundai Motor Manufacturing Alabama. |
| 17V226000 3/31/2017 | 2013–2014 Hyundai Sonata; 2013–2014 Hyundai Santa Fe Sport (2.0L and 2.4L Theta II GDI engines) | **Reason:** Risk of stall and fire from "[m]achining errors during the engine manufacturing process" that "cause premature bearing wear within the engine." <br><br>**Warning signs:** "[k]nocking noise from engine", "[r]educed power and/or hesitation", "[i]llumination of the 'Check Engine' warning lamp" and "[i]llumination | **Santa Fe:** June 28, 2012, to May 31, 2014, by Kia Motor Manufacturing Georgia. <br><br>**Sonata:** Mar. 21, 2012, to May 29, 2014, by Hyundai Motor Manufacturing Alabama |

| Recall & Date | Vehicles & Engines | Recall Details | Production Dates & Locations for Class Vehicles |
|---|---|---|---|
| | | of engine oil pressure warning lamp." **Chronology:** Hyundai expanded original 15V568000 recall to include these additional vehicles. In May 2017, NHTSA opened investigation into this and related safety defects in other Hyundai and Kia vehicles. **Remedy:** Engine inspection and, if necessary, replacement; and reimbursement for repairs. | |
| 17V224000 3/31/2017 | 2011–2014 Kia Optima; 2012–2014 Kia Sorento; 2011–2013 Kia Sportage (2.0L and 2.4L Theta II GDI engines) | **Reason:** Risk of stall from "[m]achining errors during the engine manufacturing process" that "cause premature bearing wear within the engine." **Warning signs:** "[k]nocking noise from engine", "[i]llumination of the engine warning lamp and/or oil pressure warning lamp." **Chronology:** From 2015–2016, Kia monitors Hyundai recalls for same engines and incidents of engine defect in Kia vehicles before recalling Kia vehicles. In May 2017, NHTSA opened investigation into this and | **Optima:** Aug. 12, 2010, to Sept. 27, 2013; Aug, 28, 2013, to May 15, 2014, by KMMG with engines supplied by Hyundai Motor Manufacturing Alabama. **Sorento:** Apr. 19, 2011, to Feb. 10, 2014. **Sportage:** Dec. 30, 2010, to Aug. 30, 2013. |

| Recall & Date | Vehicles & Engines | Recall Details | Production Dates & Locations for Class Vehicles |
|---|---|---|---|
| | | related safety defects in other Hyundai and Kia vehicles.<br><br>**Remedy:** Engine inspection and, if necessary, replacement; and reimbursement for repairs. | |
| 17V578000<br>9/20/2017 | 2017 Hyundai Santa Fe (3.3L V6 Lambda II engines) | **Reason:** Risk of stalls from engine bearing wear caused by "crankshaft assemblies … produced with surface irregularities in the crankshaft pin."<br><br>**Warning signs:** "[a]bnormal noise from the engine"; "[r]educed motive power and/or hesitation"; and "[i]llumination of the 'Check Engine'…[or] engine oil pressure warning lamp."<br><br>**Chronology:** Hyundai began investigating in May 2017, after "field report from a 2017 Santa Fe vehicle indicating a 'knocking' noise coming from the engine."<br><br>**Remedy:** "The engine crankshaft is covered for 10 years or 100,000 miles under Hyundai's new vehicle limited warranty. As owners of these vehicles would not have incurred expenses for the warranted repair as a | Jan. 26, 2017, to Feb. 13, 2017, by Hyundai Motor Company. |

| Recall & Date | Vehicles & Engines | Recall Details | Production Dates & Locations for Class Vehicles |
|---|---|---|---|
| | | result of this condition, no notification regarding reimbursement … is necessary." | |
| 17V586000 9/21/2017 | 2017 Kia Sorento (3.3L V6 Lambda II engines) | **Reason:** Risk of stalls and fire from engine bearing wear caused by "improperly heat treated crankshaft." **Warning signs:** "knocking noise from engine" and [i[llumination of the engine warning lamp." **Chronology:** Kia began investigating in July 2017, after customer reported "engine blew the vehicle caught fire" and sustained burn injuries. **Remedy:** "disassemble the oil pan and check the crankshaft's lot number using a borescope and replace the engine sub assembly, if necessary. Kia will reimburse owners for repair expenses already incurred…" | Mar. 27, 2017, to Mar. 30, 2017. |
| 19V063000 2/5/2019 | 2011–2013 Hyundai Tucson (all types) | **Reason:** Risk of engine stalls and fires due to "engine oil leak which . . . could eventually lead to engine damage." **Warning signs:** "[k]nocking noise from engine[,]" "[r]educed | May 1, 2010 to Dec. 31, 2012 by Hyundai Motor Company. |

| Recall & Date | Vehicles & Engines | Recall Details | Production Dates & Locations for Class Vehicles |
|---|---|---|---|
| | | power and/or hesitation," and "[c]heck [e]ngine" or "oil pressure" warning lights.<br><br>**Chronology:** NHTSA began investigating in May 2017, following up on related recalls for 2011–2014 Sonata and 2013–2014 Santa Fe Sports.<br><br>**Remedy:** Inspection and possible replacement of the oil pan and/or engine sub-assembly, along with oil pressure switch replacement. Possible reimbursement for prior repairs. | |
| 19V101000 2/5/2019 | 2011–2012 Kia Sportage (2.4L Theta II engines) | **Reason:** Risk of engine stalls and fires due to "engine oil leak" that could result in damage to the engine.<br><br>**Warning signs:** "[c]heck [e]ngine" or "oil pressure" warning lights; "[r]educed power and/or hesitation," and "[s]mell and/or smoke associated with oil on hot surfaces."<br><br>**Chronology:** NHTSA began investigating in May 2017, following up on related recalls for 2011–2014 Optima, 2012–2014 Sorento, and 2011–2013 Sportages. | June 11, 2010, to Feb. 13, 2012, by Hyundai Motor Company. |

| Recall & Date | Vehicles & Engines | Recall Details | Production Dates & Locations for Class Vehicles |
|---|---|---|---|
| | | **Remedy:** Inspection and possible replacement of the oil pan and/or engine sub-assembly, along with oil pressure switch replacement. Possible reimbursement for prior repairs. | |
| 20V746000 12/1/2020 | 2012 Hyundai Santa Fe and 2011–2013, 2016 Hyundai Sonata Hybrid (2.4L Theta II MPI and 2.0L Nu GDI engines) 2015–2016 Hyundai Veloster (1.6L Gamma engines) | **Reason:** Risk of engine stalls and fires due to "premature wear of the connecting rod bearings," because "[t]he engines in the subject vehicles may have been produced with conditions that can cause premature wear[.]" **Warning signs:** "Abnormal (knocking) noise from the engine," "[r]educed power and/or hesitation," and "[c]heck [e]ngine" or "oil pressure" warning lights. **Chronology:** NHTSA began investigating in March 2019 "to assess the scope, frequency, and potential safety-related consequences of alleged defects relating to non-collision vehicle fires." **Remedy:** Engine inspection to determine whether there is any bearing damage and updated KSDS software to "continuously monitor[] engine vibrations for unusual | **Santa Fe:** Jan. 10, 2012, to July 3, 2012, by Hyundai Motor Manufacturing Alabama and Kia Motor Company in the Republic of Korea. **Sonata Hybrid:** June 2, 2010, to Dec. 17, 2013; and Feb. 25, 2015, to Apr. 25, 2016, by Hyundai Motor Company in the Republic of Korea. **Veloster:** May 26, 2014, to July 13, 2016, by Hyundai Motor Company in the Republic of Korea. |

| Recall & Date | Vehicles & Engines | Recall Details | Production Dates & Locations for Class Vehicles |
|---|---|---|---|
| | | patterns potentially indicating an abnormal condition with the engine." Possible reimbursement for some repairs[9] | |
| 20V75000 12/2/2020 | 2012–2013 Kia Sorento (2.4L Theta II MPI engines) 2012–2015 Kia Forte and Forte Koup (2.4L Theta II MPI and 2.0L Nu GDI engines) 2011–2013 Kia Optima Hybrid (2.4L Theta II MPI engines) 2014–2015 Kia Soul (2.0L Nu GDI engines) 2012 Kia Sportage (2.4L Theta | **Reason:** Risk of engine fire "due to potential fuel leaking, oil leaking and/or engine damage." **Warning signs:** include "engine noise," "check engine" or "low oil" warning lights. **Chronology:** NHTSA began investigating in March 2019 re non-crash engine fires. **Remedy:** Engine inspection to determine whether there are any engine oil leaks or needed repairs, and updated KSDS software "that will prevent engine damage from potential excessive connecting rod bearing wear." Extended warranty coverage for 15 years/150,000 miles for engine long block assembly repairs due to | **Sorento:** Apr. 26, 2011 to Jan. 10, 2013. **Forte:** June 1, 2011, to Mar. 22, 2013; Dec. 5, 2012, to Apr. 8, 2015. **Optima Hybrid:** Feb. 15, 2011, to Dec. 12, 2013. **Soul:** July 21, 2013, to May 21, 2015. **Sportage:** May 17, 2011, to May 24, 2012. |

---

[9] This recall itself does not include a warranty extension, but a related TSB, No 21-EM-005H does, "for certain engine repairs and/or replacement where the engine damage, defect, or failure is related to connecting rod bearing wear," which covers various Class Vehicles, including 2011–2012 Santa Fe and 2011–2013 Sonata Hybrid vehicles. *Hyundai TSB No. 21-EM-005H; Engine Warranty Extension*, NHTSA (Mar. 2021), https://static.nhtsa.gov/odi/tsbs/2021/MC-10190049-0001.pdf.

| Recall & Date | Vehicles & Engines | Recall Details | Production Dates & Locations for Class Vehicles |
|---|---|---|---|
| | II MPI engines) | connecting rod bearing damage. | |

138.   In June 2015, NHTSA contacted Hyundai regarding instances of stalling events in 2011–2012 Hyundai Sonatas. "Hyundai explained that, as of that time, it did not consider the issue to be safety-related…."[10] NHTSA responded by, as Hyundai put it, "inform[ing] Hyundai of its concern over the potential for higher speed stalling events."

139.   Because of NHTSA's prodding, in September 2015, Hyundai issued Recall No. 15V568000 for 470,000 MY 2011–2012 Hyundai Sonata vehicles equipped with 2.4L and 2.0L turbo Theta II GDI engines for a defect described as "connecting rod wear" that "may result in engine stall."

140.   In its NHTSA filings, Hyundai described the Recall No. 15V568000 defect and manifestation as follows:

> Hyundai has determined that metal debris may have been generated from factory machining operations as part of the manufacturing of the engine crankshaft during the subject production period. As part of the machining processes, the engine crankshaft is cleaned to remove metallic debris. If the debris is not completely removed from the crankshaft's oil passages, it can be forced into the connecting rod oiling passages restricting oil flow to the bearings. Since bearings are cooled by oil flow between the bearing and journal, a reduction in the flow of oil may raise bearing temperatures increasing the potential of premature bearing wear. A worn connecting rod bearing will produce a metallic, cyclic knocking noise from the engine which increases in frequency as the engine rpm increases. A worn connecting rod bearing may also result in illumination of the oil pressure lamp in the instrument cluster. If the vehicle continues to be

---

[10] *Part 573 Safety Recall Report Chronology for NHTSA Recall No. 15V568000*, NHTSA (Sept. 10, 2015), https://static.nhtsa.gov/odi/rcl/2015/RCLRPT-15V568-9490.PDF, at 2.

driven with a worn connecting rod bearing, the bearing can
fail, and the vehicle could stall while in motion.[11]

141.   Subsequently, in December 2015, Hyundai issued a Technical Service

Bulletin ("TSB") to dealerships about Recall No. 15V568000 and the steps for

performing recall procedures. The TSB instructed dealerships to conduct "an Engine

Noise Inspection to confirm [the engine's] normal operation" and that the sound test

would "help indicate if the engine is operating normally or if an excessive connecting

rod bearing wear condition in the engine crankcase may be present." The TSB went on

to describe the consequences if the defect manifested, stating, "If the vehicle continues

to be driven with a worn connecting rod bearing, the bearing can fail, and the vehicle

could stall while in motion, increasing the risk of a crash."[12]

142.   Hyundai's December 2015 TSB in Recall No. 15V568000 only called for

engine replacement if the vehicle did not pass the sound test. If the engine did pass, no

actual repair was made to the vehicle, its engine, or any other parts. Hyundai simply

instructed the dealers to swap out the vehicle's dipstick and top off the oil. This left

"passing" vehicles and their owners vulnerable to future development and

manifestation of the Engine Failure Defect and its dire consequences.

143.   In March 2017, Hyundai issued Recall No. 17V226000 for 572,000 MY

2013–2014 Hyundai Sonata and Santa Fe Sport vehicles equipped with 2.0L and 2.4L

Theta II GDI engines for a defect described as "bearing wear" that "may result in

engine seizure."

144.   In its NHTSA filings, Hyundai described the Recall No. 17V226000

defect and manifestation as follows:

> The subject engines may contain residual debris from factory
> machining operations, potentially restricting oil flow to the
> main bearings and leading to premature bearing wear. A
> worn connecting rod bearing will produce a cyclic knocking

---

[11] *Id.* at 1.

[12] Dec. 2015 Remedy Instructions and TSB, available at https://static.nhtsa.gov/odi/
rcl/2015/RCRIT-15V568-3933.pdf (last visited Sept. 7, 2022), at 1.

1
2
3

> noise from the engine and may also result in the illumination of the oil pressure lamp in the instrument panel. Over time, the bearing may fail and the vehicle could lose motive power while in motion.[13]

4    145.   In June 2017, Hyundai issued a TSB and Dealer Best Practice Guide to

5   dealers addressing the issue in the 2013–2014 Sonata and Santa Fe vehicles. The

6   documents describe a defect identical to that in the earlier Sonata model years and

7   orders the same purported "fix":

8
9
10
11

> The engines in certain 2013–2014 model year Sonata (YF) and Santa Fe Sport (AN) vehicles equipped with 2.4L and 2.0T GDI engines may contain residual debris from factory machining operations, potentially restricting oil flow to the main bearings and leading to premature bearing wear. Over time, a bearing may fail and the vehicle could lose power while in motion.

12
13

> Indications of a worn connecting rod bearing include:

14
15
16

> 1. Knocking noise from the engine
> 2. Reduced power and/or hesitation
> 3. Illumination of the "Check Engine" warning lamp
> 4. Illumination of engine oil pressure warning lamp

17
18

> The service process consists of an inspection and dipstick, oil and oil filter replacement. If the vehicle does not pass the inspection, the dealer will replace the engine.[14]

19    146.   Much like Hyundai's earlier 2011–2012 Sonata recall, in its Part 573

20   Safety Recall Report for NHTSA Recall No. 17V226000, Hyundai summarily

21   explains that, "Over time, the bearing may fail and the vehicle could lose motive

22
23
24
25
26
27
28

---

[13] Part 573 Safety Recall Report for NHTSA Recall No. 17V226000, Mar. 31, 2017, available at https://static.nhtsa.gov/odi/rcl/2017/RCLRPT-17V226-4558.pdf (last visited Sept. 7, 2022), at 1.

[14] June 2017 Dealer Best Practice Guide, available at https://static.nhtsa.gov/odi/rcl/2017/RCMN-17V226-4739.pdf (last visited Sept. 7, 2022), at 3.

power while in motion."[15] Careful not to even use the word "stall," Hyundai's 2017 "recall inspection" of later model year Sonatas for a malfunction mechanically known to be associated with vehicle fires demonstrates Hyundai's continued concealment of the Engine Failure Defect and its consequences.

147.   Notably, in its chronology submission for the recall associated with subsequent model year Sonatas (NHTSA Recall No. 17V226000), Hyundai conceded that its recall was the result of Hyundai "continu[ing] to monitor engine-related field data" from the original 15V568000 recall group and "noting an increase in claims relating to the subsequent model years."[16]

148.   Again attempting to mitigate the gravity of the Engine Failure Defect, Hyundai noted in its chronology submission to NHTSA that "the majority of claims for engine replacement indicated that customers were responding to substantial noise or the vehicle's check engine or oil pressure warning lights (and bringing their vehicles to service as a result of those warnings)."[17] In other words, Hyundai was relying on customers to prevent their own catastrophic engine failure that could *at best* result in a moving stall and *at worst* result in a vehicle fire.

149.   In March 2017, Kia also issued a recall virtually identical to that of Hyundai: Recall No. 17V224000 for 618,160 MY 2011–2014 Optima, 2012–2014 Sorento, and 2011–2013 Sportage vehicles equipped with 2.0L turbo GDI or 2.4L Theta II GDI engines for a defect described as "bearing wear" that "may result in engine seizure."

150.   In its NHTSA filings, Kia described the Recall No. 17V224000 defect and manifestation as follows:

> Metal debris may have been generated from factory
> machining operations as part of the manufacturing of the

---

[15] Part 573 Safety Recall Report for NHTSA Recall No. 17V226000, Mar. 31, 2017, available at https://static.nhtsa.gov/odi/rcl/2017/RCLRPT-17V226-4558.pdf (last visited Sept. 7, 2022), at 2.

[16] *See id.*

[17] *Id.*

engine crankshaft which may not have been completely removed from the crankshaft's oil passages during the cleaning process. In addition, the machining processes of the crankpins caused an uneven surface roughness. As a result, the metal debris and uneven surface roughness can restrict oil flow to the bearings, thereby increasing bearing temperatures causing premature bearing wear. A worn connecting rod bearing will produce a cyclic knocking noise from the engine and may also result in the illumination of the engine warning lamp and/or oil pressure lamp in the instrument panel. If the warnings are ignored and the vehicle is continued to be driven, the bearing may fail and the vehicle could stall while in motion.[18]

151.   But in Kia's September 2017 TSB to dealers for Recall No. 17V224000, in addition to the metal debris problem, it lists an extra cause for the oil restriction: "the additional machining processes of the crankpins may have caused uneven surface roughness."[19] The TSB states, "These combined conditions can restrict oil flow to the bearings increasing the potential for premature bearing wear."[20]

152.   Kia's recall procedure mirrored that of Hyundai's in its two recalls: perform the sounds test, and if the engine passes, simply change out the color-coded dipstick and change the oil. If the car does not pass, replace the engine.[21]

153.   Curiously, in its chronology submitted to NHTSA regarding Recall No. 17V224000, Kia notes that when it learned of the Hyundai 15V568000 recall in September 2015, it "check[ed] Theta engine manufacturing process for Optima on separate assembly line and identifie[d] different procedures and no issues."[22] But the

---

[18] Part 573 Safety Recall Report for NHTSA Recall No. 17V224000, Mar. 31, 2017, available at https://static.nhtsa.gov/odi/rcl/2017/RCLRPT-17V224-2355.PDF (last visited Sept. 7, 2022), at 2.

[19] Revised Remedy Instructions and TSB for NHTSA Recall No. 17V224000, Sept. 1, 2017, available at https://static.nhtsa.gov/odi/rcl/2017/RCRIT-17V224-4127.pdf (last visited Sept. 7, 2022), at 1.

[20] *Id.*

[21] *See id.*

[22] Chronology addendum to Second Amended Part 573 Safety Recall Report for NHTSA Recall No. 17V226000, Aug. 23, 2017, available at https://static.nhtsa.gov/odi/rcl/2017/RMISC-17V224-3802.pdf (last visited Sept, 7, 2022), at 1.

chronology goes on to say that from January to April 2016, the engine remanufacturer
Translead conducted a "detailed review of all recent Kia warranty returned engines"
and identified an "*oil delivery issue* with Theta GDI engines (Optima, Sportage &
Sorento)."[23] (Emphasis added.) As Kia's warranty claims increased through 2016, it
extended the warranties on these vehicles, but still waited until March 2017 to issue a
formal recall after finally focusing "on anticipatory risk compared to absence of
accidents or injuries."[24]

154.   Throughout all three recalls, Defendants boasted no reports of accidents
or injuries associated with the Engine Failure Defect.[25] Even if taken as true, this
means Hyundai and Kia would have hundreds of thousands of defective vehicle
drivers *wait to be injured or die* because of a defect that admittedly results in moving
stalls and spontaneous vehicle fires.

155.   However, based on NHTSA's March 29, 2019 decision to open
preliminary evaluations into Defendants' high incidence of non-collision fires in
certain Class Vehicles, we now know that Defendants' claims of no injuries are false.
By that time, Defendants had received *at least 100* reports of injuries related to these
non-collision vehicle fires.[26] And this number continues to grow, as NHTSA expands
its investigation to include all Hyundai and Kia vehicles equipped with Theta II,
Lambda II, Gamma, and Nu engines, including certain Class Vehicles.

156.   In September 2017, Hyundai and Kia recalled certain Class Vehicles with
3.3-liter Lambda II engines. Hyundai recalled 2017 Santa Fes and Kia recalled 2017

---

[23] *Id.*

[24] *Id.* at 2.

[25] *See id.*; Part 573 Safety Recall Report for NHTSA Recall No. 17V226000, Mar.
31, 2017, available at https://static.nhtsa.gov/odi/rcl/2017/RCLRPT-17V226-4558.pdf
(last visited Sept, 7, 2022).

[26] *See* NHTSA PE19-003 (Hyundai), available at https://static.nhtsa.gov/odi/inv/
2019/INOA-PE19003-2613.PDF (last visited Sept. 7, 2022); NHTSA PE19-004 (Kia),
available at https://static.nhtsa.gov/odi/inv/2019/INOA-PE19004-4727.PDF (last
visited Sept, 7, 2022).

Sorentos because "[t]he crankshaft assemblies may have been produced with surface irregularities in the crankshaft pin, causing engine bearing wear."

157.  In addition to NHTSA's investigation into non-collision fires in Defendants' vehicles, the federal agency also previously opened Recall Queries (RQ17003 and RQ17004) into Hyundai's recall of 2011–2014 Sonata and 2013–2014 Santa Fe vehicles with "Theta II" engines (Recall Nos. 15V-568 and 17V-226), and Kia's recall of 2011–2014 Optima, 2012–2014 Sorento, and 2011–2013 Sportage vehicles with "Theta II" engines (Recall No. 17V-224). The Recall Queries, opened on May 18, 2017, scrutinize both the timeliness and scope of Defendants' "Theta II" engine recalls and Defendants' compliance with reporting requirements. These NHTSA investigations are ongoing.

158.  In or around October 2018, Kia began sending owners and lessees of 2011–2014 Optima, 2012–2014 Sorento, and 2011–2013 Sportage vehicles letters regarding a "Product Improvement Campaign" in response to widespread reports of non-collision vehicle fires that stated:

> Kia Motors America, Inc. is conducting an important Product Improvement Campaign to perform a software update on all 2011–2013 MY Optima vehicles equipped with 2.4L Gasoline Direct Injection ("GDI") and 2.0L Turbocharged GDI ("T-GDI") engines, and some 2014 MY Optima vehicles equipped with 2.4L GDI and 2.0L T-GDI engines to protect the engine from excessive connecting rod bearing damage. The update will be done free of charge and will only involve the addition of newly developed computer software for the Engine Control Unit ("ECU").

> Kia recently developed a Knock Sensor Detection System ("KSDS") that detects vibrations indicating the onset of excessive connecting rod bearing wear in the engine. The KSDS is designed to alert a vehicle driver at an early stage of bearing wear before the occurrence of severe engine damage including engine failure.

159.  In or around late January 2019, Kia expanded this "Product Improvement Campaign" to include later model years of Optima, Sorento, and Sportage vehicles.

160.   In or around February 15, 2019, Hyundai followed suit by issuing a "Product Improvement Campaign" for certain 2011–2018 Sonatas, 2013–2018 Santa Fe Sports, and 2014–2015, 2018 Tucsons. The campaign provides the same or similar Knock Sensor Detection System as in the Kia vehicles.

161.   In December 2020, Hyundai and Kia recalled certain Class Vehicles under Recall Nos. 20V746000 (Hyundai) and 20V750000 (Kia) for the same Engine Failure Defect plaguing other vehicles that were the subject of NHTSA's investigations and recalled earlier.

162.   Hyundai's Recall No. 20V746000 includes 128,948 Class Vehicles[27] across four models that are equipped with 2.4-liter Theta II MPI, 2.0-liter Nu GDI, and 1.6-liter Gamma GDI engines manufactured between June 2010 and July 2016 at plants in Alabama and the Republic of Korea. Hyundai's associated NHTSA filings indicate all vehicles from this recall "were determined jointly by Hyundai and NHTSA's Office of Defects Investigation ("ODI") during a review of Hyundai's response(s) to investigations PE19-003."

163.   Kia's Recall No. 20V750000 includes 294,756 Class Vehicles[28] across six models that are equipped with 2.4-liter Theta II MPI and 2.0-liter Nu GDI engines manufactured between February 2011 and May 2015 at unspecified plants or the Kia Hwasung Plant. Kia's associated NHTSA filings indicate all vehicles from this recall were determined through a review of vehicle production records.

164.   While the MPI engines in the Class Vehicles are recalled for the Engine Failure Defect for the first time here, the Nu and Gamma GDI engines were previously recalled in connection with a defect that sounds suspiciously like the Engine Failure Defect.

---

[27] MY 2012 Santa Fe; MY 2011–2013, 2016 Sonata Hybrid; MY 2015–2016 Veloster.

[28] MY 2012–2015 Forte; MY 2012–2015 Forte Koup; MY 2011–2013 Optima Hybrid; MY 2012–2013 Sorento; MY 2014–2015 Soul; MY 2012 Sportage.

165.   On February 22, 2019, Kia recalled 2012–2016 Souls with 1.6-liter Gamma GDI engines for what it described as an overheating catalytic converter. A closer review of the defect summary reveals that the defect causes the same damage and risk as that of the Engine Failure Defect here, stating, "[the] damage may result in an engine stall," "[a] broken connecting rod may puncture the engine block allowing engine oil to escape," and such "leaking oil may contact the exhaust, increasing the risk of a fire."

166.   Plaintiffs Joanna Caballero, Tavish Carduff, John Caro, Brian Frazier, Ashley Gagas, Kesha Marbury, James Martino, Sharon Moon, Janet O'Brien, James Palmer, William Pressley, Seane Ronfeldt, Christina Roos, Jeannett Smith, Nicole Thornhill, James Michael Twigger and Stanton Vignes have all experienced engine failure in their Class Vehicles, and even fire in the cases of Ms. Caballero, Mr. Frazier, Ms. Moon, Ms. Smith, Mr. Twigger, and Mr. Palmer. These incidents appear consistent with, and on information and belief were caused by, the Engine Failure Defect.

167.   Defendants have also attempted to alleviate public and governmental scrutiny of its vehicles' increased incidence of engine failures and fires by initiating other recalls in the various models plagued by engines fires, but these recalls fail to adequately explain and remedy the Engine Failure Defect broadly observed across so many of Defendants' vehicles.

168.   In December 2018, Defendants recalled certain 2011–2014 Hyundai Sonata, 2013–2014 Hyundai Santa Fe Sport, 2011–2017 Kia Optima, 2012–2017 Kia Sorento, and 2011–2018 Kia Sportage vehicles previously repaired under Recall Nos. 15V-568, 17V-226, and 17V-224, citing the problem as a damaged high pressure fuel pipe connecting to the fuel pump outlet during an engine replacement procedure.

169.   The MY 2011–2013 Tucsons are the subject of a separate recall for defective oil pan seals prompted by a NHTSA investigation, which does not address the Engine Failure Defect present in all Theta II engines, including the Tucson.

170.   NHTSA began investigating the Hyundai Tucson in May 2017, following recalls for related vehicles. In December 2018, Hyundai analyzed and provided its own market data to ODI, which informed Hyundai that it expected them to issue a safety recall for MY 2011–2013 Tucsons. In February 2019, Hyundai issued Recall No. 19V063000 for 125,000 MY 2011–2013 Tucsons equipped with 2.4-liter Theta II engines and Kia issued Recall No. 19V101000 for 32,296 MY 2011–2012 Sportages equipped with 2.4-liter Theta II engines—all Class Vehicles—claiming the engine oil pan could leak and, if not addressed, lead to engine damage and a moving stall. Those recalls were inadequate to fully remedy even the oil pan defect they purport to address because there is no provision to check for engine damage or repair or replace engine parts other than the oil pan seal, and it does nothing to address the Engine Failure Defect present in all Theta II vehicles.

171.   As problematic as Defendants' recalls and purported fixes were already, they also left out swaths of other vehicles with GDI engines marked by reports of non-collision fires, like certain Kia Souls, and the Hyundai Tucsons equipped with Gamma and Nu GDI engines.

### 4.   Defendants knew or should have known about the Engine Failure Defect given Defendants' rigorous pre-sale durability testing.

172.   Defendants are experienced in the design and manufacture of consumer vehicles. As experienced manufacturers, Defendants conduct tests like pre-sale durability testing on incoming components, including the engine, to verify the parts are free from defects and align with Defendants' specifications.

173.   Hyundai and Kia have long touted the joint-testing facility they maintain in California, known as the "Proving Grounds."[29] Opened in 2005, the Proving Grounds—a $60 million facility—was designed as a "test site for the next-generation Hyundai and Kia vehicles," "reaffirm[ing] the compan[ies'] commitment to designing,

---

[29] *Hyundai Celebrates Grand Opening of New $60 Mln U.S. Proving Ground*, Hyundai Motor Am. (Jan. 26, 2005), https://www.hyundainews.com/en-us/releases/393.

testing, and building Hyundai [and Kia] products in the United States for North American consumers."[30] Commentators have also noted the thorough nature of tests conducted at the Proving Grounds, with one such commentator calling them a "searing torture test."[31] According to Hyundai and Kia Senior Research Engineer, Jong-Woo Kim, all vehicles tested at the facility must pass a "30,000 miles . . . accelerated durability test and a 100,000 miles . . . field fleet durability test to be sold in North America."[32] Such rigorous testing is intended to simulate up to "five years' wear and tear."[33]

174.   Kia conducts expansive presale durability testing on its vehicles to make sure they "endure over a long time without fault."[34] This presale testing includes seven different types of durability tests: (1) an item durability test; (2) a module durability test; (3) a Belgian road test; (4) a high-speed test; (5) a corrosion test; (6) a P/T test; and (7) a vehicle test. Kia conducts these tests in extreme weather conditions including coldness and heat.

175.   In addition, John Juriga, the Director of Powertrain at Kia in 2015, stated that Kia's validation testing is among the toughest in the automotive industry.[35] Among other things, this validation testing runs the engine at maximum throttle (the maximum speed the engine can operate under) while under full load "so we're stressing the components as much as possible and we run it virtually nonstop for 300

---

[30] *Id.*

[31] Graem Fletcher, *Kia's proving grounds a searing torture test* (Sept. 19, 2013), https://driving.ca/kia/auto-news/news/kias-proving-grounds-a-searing-torture-test-3.

[32] *Enduring the Scorching Desert Heat in Extreme Heat Tests of Hyundai and Kia* (Sept. 15, 2020), https://tech.hyundaimotorgroup.com/article/enduring-the-scorching-desert-heat-in-extreme-heat-tests-of-hyundai-and-kia/.

[33] *See Behind the scenes at Kia's desert testing facility* (June 2, 2018), https://www.autocar.co.uk/car-news/new-cars/behind-scenes-kias-desert-testing-facility.

[34] https://www.kia.com/fj/experience/innovation-story/performance.Theta.html (last visited Sept. 7, 2022).

[35] https://www.youtube.com/watch?v=GNPB3RtHN2M (last visited Sept. 7, 2022).

hours." After, Kia does an "overrun spec" where it runs it over spec for 10–20 hours to make sure it can survive past the red line limits in order to "make sure these products stay durable in the customers' hands."

176.   Moreover, Kia also uses "the most extreme and rigorous vehicle testing program ever devised by the company."[36] As part of this test, Kia stimulates stop-and-go driving repeated over several times to "put additional strain on the engine, transmission and HVAC systems and eliminate any possible flaws." In addition, at its Mojave Proving Grounds test site, Kia utilizes a "high-speed oval, gravel off-road tracks, high-vibration road surfaces, brake test facilities and different gradients" that "enable engineers to evaluate and refine the ride, handling, brakes and NVH of prototype and production vehicles."

177.   Touting its safety and durability testing, Kia's website declares, "We put our engines through rigorous testing in the highest, hottest, and coldest places that a car can possibly be before we put them in our cars."[37]

178.   On information and belief, Hyundai conducts durability testing on its vehicles that is similar to Kia's testing.[38]

179.   Hyundai, when talking about its safety and durability testing, even goes so far as to refer to an "added safety feature" called "Hyundai Assurance," claiming to "leave parts out in the sun for years on end to make sure they'll stand up to even the most extreme heat," "punish our vehicles over rough terrain, hairpin turns and pothole-riddled highways," and "simulate America's most demanding driving conditions, *over and over and over again*" so that Hyundai is "*completely satisfied that every Hyundai is durable, reliable, and battle-tested*." (Emphasis added.)

---

[36] https://www.thenewsmarket.com/global/kia-motors-corporation/death-valley-hot-weather-test-for-all-new-kia-sportage/s/bfe8a9b5-9786-4e73-a648-2970972d74f1 (last visited Sept. 7, 2022).

[37] *Performance*, Kia, https://www.kia.com/fj/experience/innovation-story/performance.Theta.html (last visited Sept. 7, 2022).

[38] *See, e.g.*, https://www.hyundai.news/eu/articles/press-releases/hail-rain-or-shine-hyundai-motors-extreme-weather-testing.html (last visited Sept. 7, 2022).



180.   The Engine Failure Defect is precisely the type of defect that such rigorous pre-sale testing would reveal, because the Defect is a manufacturing defect in which the metal debris is either already present in the vehicles before they are ever driven or begins to accumulate as mileage accrues and metal parts wear. As such, any tested vehicles would show evidence of the Defect when the engines are examined after the testing is complete, or if the vehicles manifested symptoms, including knocking sounds, stalls, or engine fires during the high-mileage tests intended to simulate up to five years of driving. These symptoms would be consistent with the consumer NHTSA complaints quoted above, many of which report symptoms of engine hesitation, stalling, knocking sounds, total failure, and fires, well before the 30,000- or 100,000-mile distances to which Defendants claim to test their vehicles.

**D.    Despite knowledge of the Engine Failure Defect, Defendants marketed the Class Vehicles as safe, durable, and reliable.**

181.   Defendants have long touted the safety and durability of their vehicles as well as the performance of their engines because they know safety is material to consumers.

182.   On information and belief, Defendants marketed the Class Vehicles' safety, durability, and warranties throughout the class period. This is reflected by the sales brochures Defendants issued for various Class Vehicles, which point to vehicle safety and also point to the purported power of their engines.[39]

183.   Defendants marketed their vehicles to Plaintiffs and putative class members as safe, reliable, and functional. Below are examples pulled from Defendants' vehicle brochures:



---

[39] *See generally Hyundai PDF Sales Brochures*, Auto-Brochures, https://www.auto-brochures.com/hyundai.html (last visited Sept. 7, 2022); *Kia PDF Sales Brochures*, Auto-Brochures, https://www.auto-brochures.com/kia.html (last visited Sept. 7, 2022).

## A new way to roll®

Introducing the all-new 2014 Kia Soul. Everything from an available 2.0L Gasoline Direct Injection (GDI) engine* to a panoramic sunroof* is designed to make every drive more exciting than ever. Unique exterior styling — complemented by a striking interior with soft-touch material throughout — gives Soul a personality all its own. Three trim levels along with a choice of packages allow you to add impressive options. Like all new Kia models, Soul comes with an industry-leading, 10-year/100,000-mile warranty program.¹

**EXCERPT FROM 2014 KIA SOUL BROCHURE**



2016 HYUNDAI SONATA HYBRID

## THE NEW SONATA HYBRID. COMMON SENSE IS NOW MORE SENSUOUS THAN EVER.

Tell Hyundai engineers to find room for improvement, and you know what you'll get? In the all-new, totally redesigned 2016 Sonata Hybrid, you get more room – more passenger room, and more cargo room. In fact, by redesigning the hybrid battery system packaging and moving it under the trunk floor, we've given the new Sonata Hybrid more total interior volume than any hybrid in its class.¹

You also get more fuel efficiency. Powered by a new 2.0L GDI hybrid engine, the 2016 Sonata Hybrid delivers an EPA-estimated 44 MPG on the highway.² And the improvements don't stop there. Its regenerative braking system captures more electric charge than the previous model, and its steering and suspension systems are more dynamic. Its safety systems are more advanced, too, with available technologies like Blind Spot Detection, Forward Collision Warning, and more.

Now here's where common sense gets sensuous. Sonata Hybrid's sleek new exterior is a more sophisticated design – an expression of our Fluidic Sculpture accented by LED Daytime Running Lights, unique LED taillights and Eco-spoke alloy wheels. The aerodynamic benefits of a full underbody cover and active air flaps behind the front grille contribute to an industry-leading 0.24 drag coefficient that helps the car slip through the air (boosting Sonata Hybrid's fuel efficiency even further).

Inside, the cabin is more luxurious, with standard dual automatic temperature control and available features like a heated steering wheel, ventilated front seats and heated front/rear seats. We even found room for improvement in America's Best Warranty. The hybrid-related components of Sonata Hybrid are covered for 10 years or 100,000 miles with a lifetime hybrid battery warranty. No other car in its class can match that.

¹Claim based on comparison of specifications on manufacturer websites. ²EPA estimates for comparison only. Mileage may vary: Your actual mileage will vary with options, driving conditions, driving habits and vehicle's condition.

> You also get more fuel efficiency. Powered by a new 2.0L GDI hybrid engine, the 2016 Sonata Hybrid delivers an EPA-estimated 44 MPG on the highway.

**EXCERPT FROM 2016 HYUNDAI SONATA HYBRID BROCHURE**



**EXCERPT FROM 2015 HYUNDAI VELOSTER BROCHURE**

**THE 2015 SONATA HYBRID BROCHURE TOUTS ITS "5-STAR OVERALL SAFETY RATING."**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





**KIA'S BROCHURES FOR THE 2012 SORENTO TOUT ITS SAFETY AND "TECHNOLOGICALLY ADVANCED ENGINES," INCLUDING THE 2.4L ENGINE.**

184.    On information and belief, Defendants' brochures for other Class Vehicles make similar claims about safety, durability, and/or the technological prowess of the defective engine.

185.    On information and belief, Hyundai and Kia developed, created, and controlled all the advertising, marketing, and point-of-sale materials for their respective Class Vehicles. Therefore, Hyundai and Kia could and should have disclosed the Engine Failure Defect to Plaintiffs and Class members in such materials.

**E.    Defendants' warranties for Class Vehicles**

186.    Hyundai and Kia each issued two relevant warranties with each Class Vehicle: a "New Vehicle Limited Warranty" and a "Powertrain Warranty."

187.    Under the basic New Vehicle Limited Warranty, Hyundai and Kia agreed to repair defects within the earlier of 5 years or 60,000 miles.

188.    Under the Powertrain Warranty, Hyundai agreed to repair defects affecting various powertrain components through 10 years and 100,000 miles. According to HMA's Warranty and Consumer Information Manual, Powertrain Coverage Components include:

**ENGINE**
Cylinder block/head and all internal parts, manifolds, timing gears, timing chain, timing cover, gaskets and seals, oil pump, water pump, fly-wheel, oil pan assembly, rocker cover and engine mounts, and turbocharger.

**TRANSMISSION/TRANSAXLE**
Case and all internal parts, axle shafts (front/rear), constant velocity joints, front/rear hub bearings, propeller shafts, seals and gaskets, torque converter and converter housing and clutch cover and housing, transfer case for Santa Fe, Tucson and Veracruz AWD and rear differential for Santa Fe, Tucson, Veracruz AWD and Genesis.[40]

189.    Under the Powertrain Warranty, Kia agreed to repair defects affecting various powertrain components through 10 years and 100,000 miles. According to

---

[40] *See, e.g.*,
https://owners.hyundaiusa.com/content/dam/hyundai/us/myhyundai/manuals/factory-warranty/2012/2012MY_Hyundai_Warranty_Handbook.pdf (last visited Sept. 7, 2022).

KA's Warranty and Consumer Information Manual, Powertrain Coverage Components include:

> **In the Engine:** Cylinder block, cylinder head and all internal parts, timing gear, seals and gaskets, valve cover, flywheel, oil pump, water pump and turbo charger.
>
> **In the Transaxle:** Transmission case and all internal parts, torque converter, drive shafts, universal joints, front hubs, bearings, seals and gaskets.
>
> **In the Transmission**: Transmission case, transfer case, torque converter and all internal parts, seals, and gaskets.[41]

190.   On information and belief, Hyundai and Kia provided these warranties, or substantially similar warranties, for all Class Vehicles at all relevant times.

191.   Hyundai and Kia instruct vehicle owners and lessees to bring their vehicles to a Hyundai or Kia dealership for the warranty repairs. Plaintiffs and putative class members have and continue to present their Class Vehicles to Hyundai and Kia dealerships with complaints related to the Engine Failure Defect.

192.   Hyundai and Kia evaded their warranty obligations by failing to disclose the Engine Failure Defect to consumers, and by representing that the Engine Failure Defect is the result of the consumer's failure to properly maintain the vehicle, including its engine oil and oil level. This representation is false because the Class Vehicles' engines are inherently defective due to the Engine Failure Defect.

193.   Hyundai and Kia have also evaded their warranty obligations by requiring consumers to produce the Class Vehicle's entire maintenance history, including a mandate that all oil changes be completed at a Hyundai or Kia dealership, before determining whether to make the necessary repairs under warranty. For example, consumers have reported Hyundai and Kia denying warranty repairs for the Engine Failure Defect where their vehicle maintenance, including oil changes, were performed by third-party mechanics and service centers. Hyundai and Kia know the

---

[41] *See, e.g.*, https://www.kia.com/us/content/dam/kia/us/en/images/warranty/manual/general-warranty-and-consumer-info/2012_warranty.pdf (last visited Sept. 7, 2022).

Engine Failure Defect can manifest in Class Vehicles even if the owner or lessee has followed Hyundai and Kia's maintenance guidelines. Even if consumers produce their vehicle maintenance history, Hyundai and Kia blame the Engine Failure Defect and subsequent engine failure or fire on the consumer, refuse to cover the necessary repairs under warranty, and charge thousands of dollars to repair the engine.

194.   Hyundai advertises that it offers "America's Best Warranty." Hyundai publicizes the existence of its 10-year/100,000-mile Powertrain Warranty but fails to mention that subsequent owners only receive powertrain warranty coverage for 5 years/60,000 miles. Subsequent owners are left to discover the limited warranty coverage after purchasing their vehicle. Hyundai's failure to cover repairs under the powertrain warranty between 5 years/60,000 miles and 10 years/100,000 miles is therefore unconscionable and the warranty limitation is unenforceable. A typical Hyundai advertisement touting "America's Best Warranty" is pictured below:



195.   Kia advertises that it offers "an industry-leading Kia 10-year or 100,000-mile warranty program." Kia publicizes the existence of its 10-year/100,000-mile Powertrain Warranty but fails to mention that subsequent owners only receive powertrain warranty coverage for 5 years/60,000 miles. Subsequent owners are left to discover the limited warranty coverage after purchasing their vehicle. Kia's failure to

cover repairs under the powertrain warranty between 5 years/60,000 miles and 10 years/100,000 miles is therefore unconscionable and the warranty limitation is unenforceable. A typical Kia advertisement touting its warranty is pictured below:



196.   In many instances, consumers must pay for diagnosis of the Engine Failure Defect, even though the Class Vehicle was manufactured with the Defect, and pay out of pocket for the repair or replacement of the engine, connecting rods, crank shaft, oil pump, and other engine components.

197.   Many putative class members presenting their Class Vehicles with the Engine Failure Defect to Hyundai and Kia dealerships were denied warranty repairs and informed that nothing was wrong with their vehicles. As a result, after expiration of the warranty period, putative class members are later forced to pay for costly repairs related to the Engine Failure Defect.

## V.   CLASS ALLEGATIONS

### A.   Class Definitions

198.   Under Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, Plaintiffs bring this action on behalf of themselves, the Nationwide Class, and State Classes, defined as:

### Nationwide Class

All persons or entities who purchased or leased a Class Vehicle in the United States (including its territories and the District of Columbia).

The Class Vehicles are:

- Model year ("MY") 2010–2012 Hyundai Santa Fe vehicles equipped with a Theta II 2.4-liter MPI engine;
- MY 2011–2015 Hyundai Sonata Hybrid vehicles equipped with a Theta II 2.4-liter MPI engine;
- MY 2016–2019 Hyundai Sonata Hybrid/Plug-In vehicles equipped with a Nu 2.0 GDI engine;
- MY 2010–2013 Hyundai Tucson vehicles equipped with a Theta II 2.4-liter MPI engine;
- MY 2014–2021 Hyundai Tucson vehicles equipped with a Nu 2.0 GDI engine;
- MY 2014 Hyundai Elantra Coupe vehicles equipped with a Nu 2.0 GDI engine;
- MY 2014–2016 Hyundai Elantra vehicles equipped with a Nu 2.0 GDI engine;
- MY 2014–2020 Hyundai Elantra GT vehicles equipped with a Nu 2.0 GDI engine;
- MY 2012–2017 Hyundai Veloster vehicles equipped with a Gamma 1.6-liter GDI engine;
- MY 2010–2013 Kia Forte vehicles equipped with a Theta II 2.4-liter MPI engine;
- MY 2010–2013 Kia Forte Koup vehicles equipped with a Theta II 2.4-liter MPI engine;
- MY 2014–2018 Kia Forte vehicles equipped with a Nu 2.0 GDI engine;
- MY 2014–2016 Kia Forte Koup vehicles equipped with a Nu 2.0 GDI engine;
- MY 2011–2016 Kia Optima Hybrid vehicles equipped with a Theta II 2.4-liter MPI engine;
- MY 2017–2020 Kia Optima Hybrid/Plug-In vehicles equipped with a Nu 2.0 GDI engine;
- MY 2011–2013 Kia Sorento vehicles equipped with a Theta II 2.4-liter MPI engine;
- MY 2012–2016 Kia Soul vehicles equipped with a Gamma 1.6-liter GDI engine;
- MY 2014–2019 Kia Soul vehicles equipped with a Nu 2.0 GDI engine; and
- MY 2011–2013 Kia Sportage vehicles equipped with a Theta II 2.4-liter MPI engine.

199.   In addition to the Nationwide Class, and under Fed. R. Civ. P. 23(c)(5), Plaintiffs seek to represent the following State Classes as well as any subclasses or issue classes as Plaintiffs may propose and/or the Court may designate at the time of class certification:

**Alabama Class**

All persons or entities who purchased or leased a Class Vehicle in the State of Alabama.

**Arizona Class**

All persons or entities who purchased or leased a Class Vehicle in the State of Arizona.

**California Class**

All persons or entities who purchased or leased a Class Vehicle in the State of California.

**Connecticut Class**

All persons or entities who purchased or leased a Class Vehicle in the State of Connecticut.

**Florida Class**

All persons or entities who purchased or leased a Class Vehicle in the State of Florida.

**Georgia Class**

All persons or entities who purchased or leased a Class Vehicle in the State of Georgia.

**Maryland Class**

All persons or entities who purchased or leased a Class Vehicle in the State of Maryland.

**Michigan Class**

All persons or entities who purchased or leased a Class Vehicle in the State of Michigan.

**Missouri Class**

All persons or entities who purchased or leased a Class
Vehicle in the State of Missouri.

**North Carolina Class**

All persons or entities who purchased or leased a Class
Vehicle in the State of North Carolina.

**Ohio Class**

All persons or entities who purchased or leased a Class
Vehicle in the State of Ohio.

**Pennsylvania Class**

All persons or entities who purchased or leased a Class
Vehicle in the State of Pennsylvania.

**Texas Class**

All persons or entities who purchased or leased a Class
Vehicle in the State of Texas.

**Washington Class**

All persons or entities who purchased or leased a Class
Vehicle in the State of Washington.

**West Virginia Class**

All persons or entities who purchased or leased a Class
Vehicle in the State of West Virginia.

200.    Excluded from the Classes are individuals who have personal injury

claims resulting from the Engine Failure Defect and conduct alleged herein;

Defendants and their subsidiaries, affiliates, officers, and directors; all persons who

timely elect exclusion from the Classes; and the Judge(s) to whom this case is

assigned and their immediate family.

201.    Certification of Plaintiffs' claims for class-wide treatment is appropriate

because Plaintiffs can prove the elements of their claims on a class-wide basis using

the same evidence as would be used to prove those elements in individual actions alleging the same claim.

202.   This action has been brought and may be properly maintained on behalf of each of the Classes proposed herein under Federal Rule of Civil Procedure 23.

203.   Plaintiffs reserve the right to revise the Class definitions based on information learned through discovery and further investigation.

**B.     Class Action Requirements**

204.   **Numerosity.** Federal Rule of Civil Procedure 23(a)(1): The members of the Classes are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. Plaintiffs are informed and believe, based on information available regarding the nationwide sales and recalls of Class Vehicles, there are hundreds of thousands of Class members. The precise number of Class members is unknown to Plaintiffs but may be ascertained from the Defendants' records and vehicle registration records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and published notice.

205.   **Commonality and Predominance.** Federal Rule of Civil Procedure 23(a)(2) & (b)(3): This action involves common questions of law and fact that predominate over any questions affecting individual Class members, including, without limitation:

        a.    Whether Defendants engaged in the conduct alleged herein;

        b.    Whether Defendants designed, advertised, marketed, distributed, leased, sold, or otherwise placed the Class Vehicles into the stream of commerce in the United States;

        c.    Whether the Class Vehicles have and were sold with the Engine Failure Defect;

d.  Whether a reasonable consumer would consider the Engine Failure Defect and its consequences to be material to the decision to purchase or lease a Class Vehicle;

e.  Whether the Engine Failure Defect constitutes a safety defect;

f.  Whether Defendants knew of the Engine Failure Defect but failed to disclose the problem and its consequences to Plaintiffs and Class members;

g.  When Defendants discovered or knew of the Engine Failure Defect, and what, if anything, they did in response;

h.  Whether Defendants had a duty to disclose the true nature of the Class Vehicles to Plaintiffs and Class members;

i.  Whether Defendants omitted, concealed, or failed to disclose material facts about the Class Vehicles to Plaintiffs and Class members;

j.  Whether Defendants' concealment of the true nature of the Class Vehicles would have induced a reasonable consumer to act to his or her detriment by purchasing and/or leasing the Class Vehicles;

k.  Whether Defendants' conduct violates the California Legal Remedies Act, California Unfair Competition Law, California False Advertising Law, the Song-Beverly Act, and any other statutes asserted herein;

l.  Whether Plaintiffs and Class members overpaid for their Class Vehicles;

m.  Whether Plaintiffs and Class members suffered out-of-pocket losses because of the Engine Failure Defect;

n.  Whether Plaintiffs and Class members are entitled to damages and other monetary relief and, if so, in what amount;

o.   Whether Plaintiffs and Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief; and

p.   Whether Defendants continue to unlawfully conceal and misrepresent whether additional vehicles, besides those reported in the press to date, are in fact Class Vehicles.

206.   **Typicality.** Federal Rule of Civil Procedure 23(a)(3): Plaintiffs' claims are typical of the claims of the Class members whom they seek to represent because Plaintiffs and each Class member purchased a Class Vehicle and were similarly injured by Defendants' wrongful conduct as described herein. Plaintiffs and the Class members suffered damages as a direct, proximate result of the same wrongful practices by Defendants. Plaintiffs' claims arise from the same practices and courses of conduct that give rise to the claims of the other Class members. Plaintiffs' claims are based on the same legal theories as the claims of the Class members.

207.   **Adequacy.** Federal Rule of Civil Procedure 23(a)(4): Plaintiffs' and their counsel are adequate because their interests do not conflict with the interests of the Class members they seek to represent. Plaintiffs have retained counsel competent and experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously. Plaintiffs and their counsel will fairly and adequately protect the Class members' interests.

208.   **Superiority.** Federal Rule of Civil Procedure 23(b)(3): A class action is superior to any other available means for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for Class members to individually seek redress for Defendants' wrongful conduct. Even if Class members could afford individual

litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. On information and belief, Class members can be readily identified and notified based on, *inter alia*, Defendants' vehicle identification numbers, warranty claims, registration records, and database of complaints.

209.   **Declaratory and Injunctive Relief.** Federal Rule of Civil Procedure Rule 23(b)(2): Defendants have acted, and refused to act, on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief and declaratory relief with respect to the Classes as a whole.

## VI.   TOLLING OF STATUTES OF LIMITATIONS

### A.   The discovery rule justifies tolling.

210.   Plaintiffs and Class members did not discover, and could not have discovered through the exercise of reasonable diligence, Defendants' deception with respect to the Engine Failure Defect.

211.   Defendants' concealment is ongoing, as evidenced by their piecemeal recalls and product improvement campaigns, which do not specifically identify the defect or offer a fix.

212.   Plaintiffs and Class members could not have discovered through the exercise of reasonable diligence that Defendants were concealing the Engine Failure Defect and misconduct complained of herein, or that Defendants were misrepresenting their true position with respect to the Engine Failure Defect.

213.   Unless a Class member experienced a catastrophic engine failure, Plaintiff and Class members would have no reason to discover the Engine Failure Defect, and even if they did experience such a failure, would have no reason to discover the existence of a widespread defect and effort to conceal it.

214.   Plaintiffs and Class members therefore did not discover, and did not know of, facts that would have caused a reasonable person to suspect that Defendants had concealed information about the Engine Failure Defect in the Class Vehicles, which Plaintiffs discovered shortly before filing this action.

215.   For these reasons, the discovery rule tolls all applicable statutes of limitation with respect to claims as to the Class Vehicles.

**B.   Fraudulent concealment justifies tolling.**

216.   All applicable statutes of limitation are also tolled by Defendants' knowing, active and ongoing fraudulent concealment of the facts alleged herein.

217.   Defendants concealed the Engine Failure Defect, minimized the scope, cause, and dangers of the Engine Failure Defect with inadequate recalls and purported remedies, and refused to investigate, address, and remedy the Engine Failure Defect as it pertains to all Class Vehicles.

218.   Defendants still haven't admitted the existence of the Engine Failure Defect, but Defendants knew about the Defect before the earliest Class Vehicles were sold, based on presale durability testing. That testing put up to 100,000 miles on vehicle engines, while many of the relevant NHTSA complaints included above-described symptomatic engine issues and failures well before 100,000 miles. Additionally, early NHTSA complaints and warranty claims revealed the Defect as early as 2010. Defendants' concealment continues to date.

**C.   Estoppel justifies tolling.**

219.   Defendants were under a continuous duty to disclose to Plaintiffs and Class members the true character, quality, and nature of the Engine Failure Defect, and the inevitable repairs, costs, time, and monetary damage resulting from the Engine Failure Defect.

220.   Based on the foregoing, Defendants are estopped from relying on any statutes of limitations in defense of this action.

---

PLS.' AM. CONSOLIDATED CLASS ACTION COMPL. – 177
Case No. 8:18-cv-02223-JLS-JDE
010789-11/2029202 V1

## VII.   CALIFORNIA LAW APPLIES TO THE CLAIMS OF THE NATIONWIDE CLASS

221.   California law applies to the nationwide claims because California's interest in this litigation exceeds that of any other state.

222.   Defendant HMA is headquartered in Fountain Valley, California, and is the sole entity in the United States responsible for distributing, selling, leasing, and warranting Hyundai vehicles, including the Hyundai Class Vehicles.

223.   Defendant KA is headquartered in Irvine, California and is the sole entity in the United States responsible for distributing, selling, leasing, and warranting Kia vehicles, including the Kia Class Vehicles.

224.   Defendants KA and HMA each maintain their customer relations, engineering, marketing, and warranty departments at their corporate headquarters in this judicial district. Defendants' customer relations department is responsible for fielding customer complaints and monitoring customer complaints posted to their respective websites or third-party websites.

225.   Defendants KA and HMA's warranty and engineering departments are responsible for the decisions to conceal the Engine Failure Defect from the Class members.

226.   Based on the foregoing, Defendants' policies, practices, acts, and omissions giving rise to Plaintiffs' and Class members' claims were developed in, and emanated from, Defendants KA and HMA's headquarters in this judicial district in California. As detailed herein, Defendants knew or should have known about the Engine Failure Defect through the activities of their divisions and affiliated entities located within California. Accordingly, the State of California has the most significant relationship to this litigation and its law should govern.

# VIII.  CLAIMS ALLEGED

## COUNT I

### VIOLATIONS OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT
#### (CAL. CIV. CODE § 1750, *ET SEQ.*)
#### (On Behalf of the Nationwide Class or, Alternatively, the California Class)

227.   Plaintiffs and the Class reallege and incorporate by reference all paragraphs as though fully set forth herein.

228.   Plaintiffs bring this claim on behalf of themselves and the Nationwide Class against all Defendants. Alternatively, Plaintiffs Gabrielle Alexander, Joanna Caballero, Leslie Flaherty, Chad Perry, Nicole Thornhill, and Stanton Vignes bring this claim on behalf of themselves and the California Class against all Defendants.

229.   Defendants are persons as defined in California Civil Code § 1761(c).

230.   Plaintiffs and the Class members are consumers as defined in California Civil Code §1761(d).

231.   Defendants engaged in unfair and deceptive acts in violation of the CLRA through the practices described herein, and by knowingly and intentionally concealing the Engine Failure Defect in the Class Vehicles from Plaintiffs and Class members, along with concealing the risks, costs, and monetary damage resulting from the Engine Failure Defect. These acts and practices violate, at a minimum, the following sections of the CLRA: (a)(2) Misrepresenting the source, sponsorship, approval, or certification of goods or services; (a)(5) Representing that goods or services have sponsorships, characteristics, uses, benefits, or quantities which they do not have, or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have; (a)(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and (a)(9) Advertising goods and services with the intent not to sell them as advertised.

232.   Defendants' unfair and deceptive acts or practices occurred repeatedly in Defendants' trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

233.   Defendants knew the Class Vehicles' engines were defectively manufactured, would fail prematurely, were prone to cause fires, and were not suitable for their intended use.

234.   Defendants had a duty to Plaintiffs and Class members to disclose the defective nature of the Class Vehicles' engines because:

a.   Defendants were in a superior position to know the true state of facts about the Engine Failure Defect and associated repair costs in the Class Vehicles and their engines, and the Defect affects a core function of the car;

b.   Plaintiffs and Class members could not reasonably have been expected to learn or discover that the Class Vehicles and their engines had a dangerous safety defect until manifestation of the Engine Failure Defect; and

c.   Defendants knew that Plaintiffs and Class members could not reasonably have been expected to learn or discover the Engine Failure Defect and the associated repair costs until manifestation of the Engine Failure Defect; and

d.   Defendants actively concealed the safety-related Defect and the associated repair costs by asserting to Plaintiffs and Class members that the cause of their engine problems was the result of Plaintiffs' and the Class members' inability to maintain the proper engine oil levels despite knowing the repairs needed to correct the Defect.

235.   In failing to disclose the Engine Failure Defect and the associated safety risks and repair costs that result from it, Defendants have knowingly and intentionally concealed material facts and breached their duty to disclose.

236.   The facts concealed or not disclosed by Defendants to Plaintiffs and Class members are material in that a reasonable consumer would have considered them important in deciding whether to purchase the Class Vehicles or to pay a lesser price.

Had Plaintiffs and the Class members known about the defective nature of the Class Vehicles and their engines, they would not have purchased or leased the Class Vehicles or would have paid less for them.

237.   On or about April 10, 2015, December 11, 2018, January 10, 2019, March 4, 2019, April 19, 2019, February 17, 2021, and March 12, 2021, Plaintiffs, through undersigned counsel, provided Defendants written notice of their violations of the CLRA under California Civil Code § 1782(a) regarding the Class Vehicles or Hyundai and Kia vehicles with the same alleged Engine Failure Defect.

238.   Plaintiffs and Class members' injuries were proximately caused by Defendants' fraudulent and deceptive business practices.

239.   Plaintiffs and the Class members seek all relief available under the CLRA.

## COUNT II

### VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW
(CAL. BUS. & PROF. CODE § 17200)
(On Behalf of The Nationwide Class or, Alternatively, The California State Class)

240.   Plaintiffs and the Class reallege and incorporate by reference all paragraphs as though fully set forth herein.

241.   Plaintiffs bring this claim on behalf of themselves and the Nationwide Class against all Defendants. Alternatively, Plaintiffs Gabrielle Alexander, Joanna Caballero, Leslie Flaherty, Chad Perry, Nicole Thornhill, and Stanton Vignes bring this claim on behalf of themselves and the California Class against all Defendants.

242.   The California Unfair Competition Law ("UCL") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

243.   Defendants engaged in unfair competition and unfair, unlawful or fraudulent business practices through the conduct, statements, and omissions described

herein, and by knowingly and intentionally concealing the Engine Failure Defect in the Class Vehicles from Plaintiffs and Class members, along with concealing the risks, costs, and monetary damage resulting from the Engine Failure Defect. Defendants should have disclosed this information because they were in a superior position to know the true facts related to the Engine Failure Defect, and Plaintiffs and Class members could not reasonably be expected to learn or discover the true facts related to the Engine Failure Defect.

244.   The Engine Failure Defect causes catastrophic engine failure and fire in the Class Vehicles and this constitutes a safety issue that triggered Defendants' duty to disclose the safety issue to consumers.

245.   Defendants' acts and practices have deceived Plaintiffs and are likely to deceive the public. In failing to disclose the Engine Failure Defect and suppressing other material facts from Plaintiffs and Class members, Defendants breached their duties to disclose these facts, violated the UCL, and caused injuries to Plaintiffs and Class members. Defendants' omissions and concealment pertained to information that was material to Plaintiffs and Class members, as it would have been to all reasonable consumers.

246.   The injuries suffered by Plaintiffs and Class members are not greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiffs and Class members should have reasonably avoided.

247.   Defendants' acts and practices are unlawful because they violate California Civil Code §§ 1668, 1709, 1710, and 1750, *et seq.*, and California Commercial Code § 2313.

248.   Plaintiffs and the other Class Members have suffered an injury in fact, including the loss of money or property, as a result of Defendants' unfair, unlawful, and/or deceptive practices.

249.   Plaintiffs seek to enjoin further unlawful, unfair, and/or fraudulent acts or practices by Defendants, to obtain restitutionary disgorgement of all monies and revenues generated because of such practices, and all other relief allowed under California Business & Professions Code § 17200.

## COUNT III

### VIOLATIONS OF CALIFORNIA FALSE ADVERTISING LAW
(CAL. BUS. & PROF. CODE § 17500, *ET SEQ.*)
**(On Behalf of the Nationwide Class or, Alternatively, the California Class)**

250.   Plaintiffs and the Class reallege and incorporate by reference all paragraphs as though fully set forth herein.

251.   Plaintiffs bring this claim on behalf of themselves and the Nationwide Class against all Defendants. Alternatively, Plaintiffs Gabrielle Alexander, Joanna Caballero, Leslie Flaherty, Chad Perry, Nicole Thornhill, and Stanton Vignes bring this claim on behalf of themselves and the California Class against all Defendants.

252.   California Business & Professions Code § 17500 states: "It is unlawful for any … corporation … with intent directly or indirectly to dispose of real or personal property … to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated … from this state before the public in any state, in any newspaper or other publication, or any advertising device, … or in any other manner or means whatever, including over the Internet, any statement … which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

253.   Defendants caused to be made or disseminated through California and the United States, through advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or through the exercise of reasonable care should have been known to Defendants, to be untrue and misleading to consumers, including Plaintiffs and the Class members.

254.   Defendants violated section 17500 because their misrepresentations and omissions regarding the safety, reliability, and functionality of the Class Vehicles as described herein were material, untrue, and misleading, and likely to deceive a reasonable consumer.

255.   Plaintiffs and Class members have suffered an injury in fact, including the loss of money or property, because of Defendants' unfair, unlawful, and/or deceptive practices. In purchasing or leasing their Class Vehicles, Plaintiffs and the Class members relied on Defendants' misrepresentations and omissions regarding the safety and reliability of the Class Vehicles. Defendants' representations and omissions were untrue because the Class Vehicles are distributed with a defective engine. Had Plaintiffs and the Class members known this, they would not have purchased or leased their Class Vehicles or paid as much for them. Accordingly, Plaintiffs and the Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain.

256.   All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendants' businesses. Defendants' wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in California and nationwide.

257.   Plaintiffs, individually and on behalf of the Class members, request this Court enter such orders or judgments as necessary to enjoin Defendants from continuing their unfair, unlawful, and/or deceptive practices, to restore to Plaintiffs and the Class members any money Defendants acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief permitted.

**COUNT IV**

**VIOLATIONS OF THE CALIFORNIA SONG-BEVERLY ACT –
BREACH OF IMPLIED WARRANTY
(CAL. CIV. CODE § 1790, *ET SEQ.*)
(On Behalf of the Nationwide Class or, Alternatively, the California Class)**

258.   Plaintiffs and the Class reallege and incorporate by reference all paragraphs as though fully set forth herein.

259.   Plaintiffs bring this claim on behalf of themselves and the Nationwide Class against all Defendants. Alternatively, Plaintiffs Gabrielle Alexander, Joanna Caballero, Leslie Flaherty, Chad Perry, Nicole Thornhill, and Stanton Vignes bring this claim on behalf of themselves and the California Class against all Defendants.

260.   At all relevant times, Defendants were the manufacturer, distributor, warrantor, and seller of the Class Vehicles. Defendants knew or should have known the specific use for which the Class Vehicles were purchased.

261.   Defendants provided Plaintiffs and Class members with an implied warranty that the Class Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. The Class Vehicles, however, are not fit for their ordinary purpose because, *inter alia*, the Class Vehicles contained an inherent defect at the time of sale that causes the Class Vehicles to experience premature and catastrophic engine failure and fire.

262.   The Class Vehicles are not fit for the purpose of providing safe and reliable transportation because of the Engine Failure Defect.

263.   Defendants impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use. This implied warranty included, *inter alia*, the following: (i) a warranty that the Class Vehicles and engines manufactured, supplied, distributed, and sold by Defendants were safe and reliable for providing transportation and would not prematurely and catastrophically fail or catch fire; and (ii) a warranty that the Class Vehicles and their engines would be fit for their intended

1  use–providing safe and reliable transportation–while the Class Vehicles were

2  operated.

3       264.   Contrary to the applicable implied warranties, the Class Vehicles and

4  their engines at the time of sale and thereafter were not fit for their ordinary and

5  intended purpose. Instead, the Class Vehicles are defective, including, but not limited

6  to, the Engine Failure Defect and/or manufacturing of the GDI and MPI engines.

7       265.   Defendants' actions, as described herein, breached the implied warranty

8  that the Class Vehicles were of merchantable quality and fit for such use in violation

9  of California Civil Code §§ 1792 and 1791.1.

## COUNT V

### VIOLATIONS OF THE ALABAMA DECEPTIVE TRADE PRACTICES ACT
### (ALA. CODE § 8-19-1, *ET SEQ.*)
### (Alleged by Plaintiff Franklin Marbury on behalf of the Alabama Class)

        266.   Plaintiffs and the Class reallege and incorporate by reference all
paragraphs as though fully set forth herein.

        267.   Plaintiff Kesha Franklin Marbury ("Plaintiff" for purposes of the
Alabama causes of action) brings this action on behalf of herself and the Alabama
State Class against all Defendants.

        268.   Plaintiff and the Alabama Class are "consumers" and Defendants are
"persons" within the meanings of the Alabama deceptive trade practices act
("Alabama DTPA").

        269.   The Class Vehicles are "goods" and Defendants were engaged in "trade
or commerce" within the meaning of the Alabama DTPA.

        270.   The Alabama DTPA declares unlawful: "(5) representing that goods or
services have sponsorship, approval, characteristics, ingredients, uses, benefits, or
qualities that they do not have"; "(7) representing that goods or services are of a
particular standard, quality, or grade, … if they are of another"; and "(27) engaging in

1  any other unconscionable, false, misleading, or deceptive act or practice in the conduct

2  of trade or commerce."

3     271.   Defendants engaged in a deceptive act or practice in violation of the

4  Alabama DTPA concerning the Class Vehicles that was likely to mislead consumers

5  acting reasonably under the circumstances. Defendants knowingly misrepresented,

6  concealed, and omitted material facts concerning the Class Vehicles, specifically the

7  existence of the Engine Failure Defect.

8     272.   Plaintiff and the Alabama Class members could not have discovered the

9  existence of the Engine Failure Defect, or Defendants' deception and responsibility for

10 the Engine Failure Defect, until shortly before this class action was commenced.

11    273.   Plaintiff and the Alabama Class members suffered monetary damages as

12 result of Defendants' deceptive acts, practices, and omissions alleged herein. Had

13 Plaintiff and the members of the Alabama class known the truth about the Engine

14 Failure Defect they would not have purchased or leased the vehicles or would have

15 paid significantly less for them, and they would not have incurred monetary loss for

16 repairs and other costs associated with the Engine Failure Defect.

17    274.   Plaintiff and the Alabama Class seek monetary relief against Defendants

18 in the greater amount of actual damages or statutory damages in the amount of $100.

19    275.   Plaintiff also seeks an order enjoining Defendants' unlawful practices and

20 any other just and proper relief available under the Alabama DTPA.

21    276.   On February 17, 2021, Plaintiff sent a notice letter to Defendants HMC

22 and HMA.

23 **COUNT VI**

24 **BREACH OF ALABAMA'S IMPLIED WARRANTY OF MERCHANTABILITY**
**(ALA. CODE §§ 7-2-314; 7-2A-212)**
25 **(Alleged by Plaintiff Franklin Marbury on behalf of the Alabama Class)**

26    277.   Plaintiffs and the Class reallege and incorporate by reference all

27 paragraphs as though fully set forth herein.

28

PLS.' AM. CONSOLIDATED CLASS ACTION COMPL. – 187
Case No. 8:18-cv-02223-JLS-JDE
010789-11/2029202 V1

278.   Plaintiff Kesha Franklin Marbury brings this action on behalf of herself and the Alabama State Class against all Defendants.

279.   Defendants are "merchants" and "sellers" of motor vehicles and the Class Vehicles are "goods" under Alabama law.

280.   Under Alabama law, an implied warranty of merchantability attaches to the Class Vehicles under Ala. Code §§ 7-2-314 and 7-2A-212.

281.   The Class Vehicles were not merchantable when sold or leased because the engines of the Class Vehicles are prone to premature and catastrophic failure, and pose an unreasonable risk of non-collision engine failures and engine fires due to the Engine Failure Defect described herein.

282.   Plaintiff and the other Alabama Class members are third-party beneficiaries of Defendants' implied warranty.

283.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff and other Alabama Class members have been damaged in an amount to be determined at trial.

## COUNT VII

### VIOLATIONS OF THE ARIZONA CONSUMER FRAUD ACT
#### (ARIZ. REV. STAT. § 44-1522, *ET SEQ.*)
#### (Alleged by Plaintiff Palmer on behalf of the Arizona Class)

284.   Plaintiffs and the Class reallege and incorporate by reference all paragraphs as though fully set forth herein.

285.   Plaintiff James Palmer ("Plaintiff" for purposes of the Arizona causes of action) brings this action on behalf of himself and the Arizona Class against all Defendants.

286.   Defendants and Plaintiff are persons within the meaning of the Arizona Consumer Fraud Act ("Arizona CFA"), Ariz. Rev. Stat. § 44-1521(6).

287.   The Class Vehicles are merchandise within the meaning of the Arizona CFA, Ariz. Rev. Stat. § 44-1521(5).

288.   The Arizona CFA provides "[t]he act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice." Ariz. Rev. Stat. § 44-1522(A).

289.   Defendants, by the conduct, statements, and omissions described herein, made material misrepresentations and omissions regarding the nature and existence of the Engine Failure Defect, including that Class Vehicles contain the Defect (and the costs, safety risks, and diminished value of the vehicles arising therefrom), in connection with the sale or advertisement of the Class Vehicles to Plaintiff and the Arizona Class.

290.   With the intent that purchasers such as Plaintiff and Arizona Class members rely on Defendants' omissions, Defendants failed to disclose and in fact concealed from Plaintiff and the Arizona Class the nature and existence of the Engine Failure Defect.

291.   Defendants' misrepresentations and omissions regarding the Engine Failure Defect described herein were material.

292.   Plaintiff could not have discovered the existence of the Engine Failure Defect, or Defendants' deception and responsibility for the Engine Failure Defect, until shortly before this class action was commenced.

293.   Defendants' conduct described herein proximately caused harm to Plaintiff and the Arizona Class. Had Plaintiff and the Arizona Class known about the defective nature of the Class Vehicles, they would not have purchased the Class Vehicles, would have paid less for them, or would have avoided the extensive repair costs and serious safety issues associated therewith.

# COUNT VIII

## BREACH OF ARIZONA'S IMPLIED WARRANTY OF MERCHANTABILITY
### (ARIZ. REV. STAT. §§ 47-2314; 47-2A212)
### (Alleged by Plaintiff Palmer on behalf of the Arizona Class)

294.    Plaintiffs and the Class reallege and incorporate by reference all paragraphs as though fully set forth herein.

295.    Plaintiff James Palmer brings this action on behalf of himself and the Arizona Class against all Defendants.

296.    Defendants are "merchants" and "sellers" of motor vehicles, and the Class Vehicles are "goods" under Arizona law.

297.    Under Arizona law, an implied warranty of merchantability attaches to the Class Vehicles under Ariz. Rev. Stat §§ 47-2314 and 47-2A212.

298.    The Class Vehicles were not merchantable when sold or leased because the engines of the Class Vehicles are prone to premature and catastrophic failure and pose an unreasonable risk of non-collision engine failures and engine fires due to the Engine Failure Defect described herein.

299.    Plaintiff and the other Arizona Class members are third-party beneficiaries of Defendants' implied warranty.

300.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff and other Arizona Class members have been damaged in an amount to be determined at trial.

# COUNT IX

## VIOLATIONS OF THE CONNECTICUT UNFAIR TRADE PRACTICES ACT
### (Conn. Gen. Stat. §§ 42-110a *et seq.*)
### (Alleged by Plaintiff Frazier on behalf of the Connecticut Class)

301.    Plaintiffs and the Class incorporate by reference each preceding paragraph as though fully set forth herein.

302.   Plaintiff Brian Frazier ("Plaintiff" for purposes of the Connecticut causes of action) brings this count individually and on behalf of the other members of the Connecticut Class.

303.   The Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110a, et seq., prohibits "engag[ing] in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

304.   By the conduct described in detail above and incorporated herein, Defendants engaged in deceptive trade practices.

305.   Defendants were provided notice of the Engine Failure Defect through numerous complaints filed against them directly and through their dealers, as well as their own internal engineering knowledge.

306.   Defendants' omissions regarding the Engine Failure Defect, described above, which causes catastrophic engine failure or fire, are material facts that a reasonable person would have considered in deciding whether or not to purchase (or pay the same price for) the Class Vehicles.

307.   Defendants intended for Plaintiff and the other Connecticut Class members to rely on Defendants' omissions regarding the Engine Failure Defect.

308.   Plaintiff and the other Connecticut Class members justifiably acted or relied to their detriment upon Defendants' omissions of fact concerning the above-described Engine Failure Defect, as evidenced by Plaintiff and the other Connecticut Class members' purchases of Class Vehicles.

309.   Had Defendants disclosed all material information regarding the Engine Failure Defect to Plaintiff and the other Connecticut Class members, Plaintiff and the other Connecticut Class members would not have purchased or leased Class Vehicles or would have paid less to do so.

310.   Defendants' omissions have deceived Plaintiff, and those same business practices have deceived or are likely to deceive members of the consuming public and the other members of the Connecticut Class.

311.   As a direct and proximate result of Defendants' deceptive trade practices, Plaintiff and the other Connecticut Class members have suffered ascertainable loss and actual damages. Plaintiff and the other Connecticut Class members who purchased or leased the Class Vehicles would not have purchased or leased the Class Vehicles, or, alternatively, would have paid less for them had the truth about the Engine Failure Defect been disclosed. Plaintiff and other Connecticut Class members also suffered diminished value of their vehicles. Plaintiff and the other Connecticut Class members are entitled to recover the actual damages, attorneys' fees and costs, and all other relief allowed under Conn. Gen. Stat. §§ 42-110a, et seq.

## COUNT X

### BREACH OF CONNECTICUT'S IMPLIED WARRANTY OF MERCHANTABILITY
### (Conn. Gen. Stat. §§ 42a-2-314 and 42a-2a-504)
### (Alleged by Plaintiff Frazier on behalf of the Connecticut Class)

312.   Plaintiffs and the Class incorporate by reference each preceding paragraph as though fully set forth herein.

313.   Plaintiff Brian Frazier brings this count individually and on behalf of the other members of the Connecticut Class.

314.   Defendants are and were at all relevant times "merchants" with respect to motor vehicles under C.G.S.A. §§ 42a-2-104 and 42a-2a-501.

315.   Pursuant to C.G.S.A. §§ 42a-2-314 and 42a-2a-504, a warranty that the Class Vehicles were in merchantable condition was implied by law, and the Class Vehicles were bought and sold subject to an implied warranty of merchantability.

316.   The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and no in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the Engine Failure Defect which causes the Class Vehicles' to catastrophically fail or catch fire.

317.   Defendants were provided notice of the Engine Failure Defect through numerous complaints filed with NHTSA and warranty claims made through their dealers, as well as their own internal engineering knowledge. And after his car was totaled, Plaintiff submitted a written request for reimbursement to KA, which declined to compensate Plaintiff or acknowledge fault. In addition, and in the alternative, a notice letter would have been futile under the circumstances because Plaintiff's vehicle was irreparably destroyed by the engine fire, making any cure impossible.

318.   Plaintiff and the other Connecticut Class members suffered injuries due to the defective nature of the Class Vehicles and Defendants' breach of the implied warranty of merchantability.

319.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff and the other Connecticut Class members have been damaged in an amount to be proven at trial.

## COUNT XI

### VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
#### (FLA. STAT. § 501. 201, *ET SEQ.*)
**(Alleged by Plaintiffs Gagas, Caro, and Carpenter on behalf of the Florida Class)**

320.   Plaintiffs and the Class reallege and incorporate by reference all paragraphs as though fully set forth herein.

321.   Plaintiffs Ashley Gagas, John Caro, and James Carpenter ("Plaintiffs" for purposes of the Florida causes of action) bring this action on behalf of themselves and the Florida Class against all Defendants.

322.   Plaintiffs and the Florida Class members are consumers within the meaning of Fla. Stat. § 501.203(7).

323.   At all relevant times, Defendants were engaged in trade or commerce within the meaning of Fla. Stat. § 501.203(8).

324.   The purpose of the Florida Deceptive and Unfair Trade Practices Act ("Florida DUTPA"), Fla. Stat. § 501.201, *et seq.*, is to "protect the consuming public .

. . from those who engage in unfair methods of competition, or unconscionable, deceptive or unfair acts or practice in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

325.   The Florida DUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).

326.   Defendants engaged in an unfair and deceptive act or practice by knowingly concealing, suppressing, and omitting the Engine Failure Defect in the Class Vehicles from consumers, and this deception was likely to mislead a consumer acting reasonably in the circumstances. The existence of the Engine Failure Defect is material to a reasonable consumer in that it renders the Class Vehicles unsafe and unusable, leads to thousands of dollars in repair expenses, and causes the Class Vehicles to be worth substantially less than they would otherwise.

327.   Defendants engaged in an act or practice concerning the Engine Failure Defect and the Class Vehicles that is unfair because it causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers and not outweighed by countervailing benefits to consumers or competition.

328.   Defendants have engaged in unfair and deceptive trade practices, including representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Class Vehicles are of a particular standard and quality when they are not; advertising the Class Vehicles with the intent to not sell them as advertised; and otherwise engaging in conduct likely to deceive. Further, Defendants' acts and practices described herein offend established public policy because the harm caused consumers outweighs any benefit associated with such practices, and because Defendants fraudulently concealed the defective nature of the Class Vehicles from consumers.

329.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and the Florida Class members have suffered monetary harm because they

1    purchased Class Vehicles they otherwise would not have, overpaid for their Class

2    Vehicles, did not receive the benefit of their bargain, incurred out-of-pocket costs

3    related to engine failures, and their Class Vehicles lost value. Meanwhile, Defendants

4    have sold more Class Vehicles than they otherwise could have and charged inflated

5    prices for the Class Vehicles, thereby unjustly enriching themselves.

6         330.   Under Fla. Stat. § 501.211, Plaintiffs and the Florida State Class members

7    are entitled to damages, declaratory judgment, and equitable relief, including

8    restitutionary disgorgement of all profits accruing to Defendants because of their

9    deceptive practices, and an order requiring Defendants to adequately disclose and

10   repair the Engine Failure Defect.

11                              **COUNT XII**

12   **BREACH OF FLORIDA'S IMPLIED WARRANTY OF MERCHANTABILITY**
     **(F.S.A. §§ 672.314; 680.212)**
13   **(Alleged by Plaintiffs Gagas, Caro,**
     **and Carpenter on behalf of the Florida Class)**
14

15        331.   Plaintiffs and the Class reallege and incorporate by reference all

16   paragraphs as though fully set forth herein.

17        332.   Plaintiffs Ashley Gagas, John Caro, and James Carpenter bring this action

18   on behalf of themselves and the Florida Class against all Defendants.

19        333.   Defendants are "merchants" and "sellers" of motor vehicles, and the

20   Class Vehicles are "goods" under Florida law.

21        334.   Under Florida law, an implied warranty of merchantability attaches to the

22   Class Vehicles under F.S.A. §§ 672.314 and 680.212.

23        335.   The Class Vehicles were not merchantable when sold or leased because

24   the engines of the Class Vehicles are prone to premature and catastrophic failure and

25   pose an unreasonable risk of non-collision engine failures and engine fires due to the

26   Engine Failure Defect as described herein.

27        336.   Plaintiffs and the other Florida Class members are third-party

28   beneficiaries of Defendants' implied warranty.

337.   As a direct and proximate result of Defendants' breach of the implied
warranty of merchantability, Plaintiffs and other Florida Class members have been
damaged in an amount to be determined at trial.

## COUNT XIII

### VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT
### (GA. CODE ANN. § 10-1-390, *ET SEQ.*)
### (Alleged by Plaintiff Martino on behalf of the Georgia Class)

338.   Plaintiffs and the Class reallege and incorporate by reference all
paragraphs as though fully set forth herein.

339.   Plaintiff James Martino ("Plaintiff" for purposes of the Georgia causes of
action) brings this action on behalf of themself and the Georgia Class against all
Defendants.

340.   The Georgia Fair Business Practices Act ("Georgia FBPA") declares
"[u]nfair or deceptive acts or practices in the conduct of consumer transactions and
consumer acts or practices in trade or commerce" to be unlawful, Ga. Code. Ann. §
10-1-393(a), including but not limited to "representing that goods or services have
sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that
they do not have," "[r]epresenting that goods or services are of a particular standard,
quality, or grade … if they are of another," and "[a]dvertising goods or services with
intent not to sell them as advertised." Ga. Code. Ann. § 10-1-393(b).

341.   Defendants engaged in unfair and deceptive acts in violation of the
Georgia FBPA by concealing the Engine Failure Defect in the Class Vehicles from
Plaintiff and the Georgia Class members, and this deception was likely to mislead
consumers acting reasonably under the circumstances.

342.   Plaintiff and the Georgia Class members justifiably relied on Defendants'
unfair and deceptive acts in purchasing or leasing their Class Vehicles. The facts
concealed or not disclosed by Defendants to Plaintiff and the Georgia Class members
are material in that a reasonable consumer would have considered them to be

important in deciding whether to purchase Defendants' Class Vehicles or pay a lesser price. Had Plaintiff and the Georgia Class known about the defective nature of the Class Vehicles, they would not have purchased the Class Vehicles, would have paid less for them, and would have avoided the extensive repair costs associated therewith.

343.   Defendants engaged in a deceptive act or practice that is unfair because it causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers and not outweighed by countervailing benefits to consumers or competition.

344.   Defendants' unfair and deceptive acts and practices described herein directly and proximately caused harm, including monetary loss, to Plaintiff and the Georgia Class. Had Plaintiff and the Georgia Class known about the Engine Failure Defect, they would not have purchased the Class Vehicles, would have paid less for them, or would have avoided the extensive repair costs and serious safety issues associated therewith.

345.   More than thirty days prior to the commencement of this action, on several occasions, Plaintiff wrote Defendants and demanded they rectify the problems with his vehicle. Defendants failed to do so.

## COUNT XIV

**VIOLATIONS OF THE GEORGIA
UNIFORM DECEPTIVE TRADE PRACTICES ACT
(GA. CODE ANN. § 10-1-371(5))
(Alleged by Plaintiff Martino on behalf of the Georgia Class)**

346.   Plaintiffs and the Class reallege and incorporate by reference all paragraphs as though fully set forth herein.

347.   Plaintiff James Martino brings this action on behalf of themself and the Georgia Class against all Defendants.

348.   Defendants and Plaintiff are persons within the meaning of Georgia Uniform Deceptive Trade Practices Act ("Georgia UDTPA"), Ga. Code Ann. § 10-1-371(5).

349.   The Georgia UDTPA prohibits "deceptive trade practices," which include the "misrepresentation of standard or quality of goods or services," and "engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding." Ga. Code. Ann. § 10-1-372(a).

350.   Defendants engaged in "deceptive trade practices" and "misrepresented the standard and quality of goods" in violation of the Georgia UDTPA by engaging in the practices described herein, and by knowingly and intentionally concealing the Engine Failure Defect from Plaintiff and the Georgia Class members.

351.   In the course of its business, Defendants concealed the Engine Failure Defect in the Class Vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive. Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Class Vehicles.

352.   The facts concealed or not disclosed by Defendants to Plaintiff and the Georgia Class members are material in that a reasonable consumer would have considered them important in deciding whether to purchase Defendants' Class Vehicles or pay a lesser price. Had Plaintiff and the Georgia Class known about the defective nature of the Class Vehicles, they would not have purchased the Class Vehicles, would have paid less for them, or would have avoided the extensive repair costs associated therewith.

353.   By failing to disclose and by actively concealing the Engine Failure Defect from Plaintiff and the Georgia Class members, which Defendants marketed as safe, reliable, and of high quality, Defendants engaged in unfair and deceptive business practices in violation of the Georgia UDTPA.

354.   New GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the true safety and reliability of their vehicles.

355.   Defendants' deceptive acts and practices described herein directly and proximately caused ascertainable harm, including monetary loss, to Plaintiff and the Georgia Class.

356.   Defendants should be enjoined from the deceptive acts and practices described herein; ordered to recall and repair the Class Vehicles; and ordered to make restitutionary disgorgement to Plaintiff and the Georgia Class.

## COUNT XV

**BREACH OF GEORGIA'S IMPLIED WARRANTY OF MERCHANTABILITY**
**(GA. CODE ANN. §§ 11-2-314; 11-2A-212)**
**(Alleged by Plaintiff Martino on behalf of the Georgia Class)**

357.   Plaintiffs and the Class reallege and incorporate by reference all paragraphs as though fully set forth herein.

358.   Plaintiff James Martino brings this action on behalf of himself and the Georgia Class against all Defendants.

359.   Defendants are "merchants" and "sellers" of motor vehicles, and the Class Vehicles are "goods" under Georgia law.

360.   Under Georgia law, an implied warranty of merchantability attaches to the Class Vehicles under Ga. Code Ann. §§ 11-2-314; 11-2A-212.

361.   The Class Vehicles were not merchantable when sold or leased because the engines of the Class Vehicles are prone to premature and catastrophic failure, and pose an unreasonable risk of non-collision engine failures and engine fires due to the Engine Failure Defect described herein.

362.   Plaintiff and the other Georgia Class members are third-party beneficiaries of Defendants' implied warranty.

363.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff and other Georgia Class members have been damaged in an amount to be determined at trial.

## COUNT XVI

**VIOLATIONS OF THE MARYLAND CONSUMER PROTECTION ACT**
**(MD. CODE ANN. COM. LAW § 13-101, *ET SEQ.*)**
**(Alleged by Plaintiff Moon on behalf of the Maryland Class)**

364.   Plaintiffs and the Class reallege and incorporate by reference all paragraphs as though fully set forth herein.

365.   Plaintiff Sharon Moon ("Plaintiff" for purposes of the Maryland causes of action) brings this action on behalf of themself and the Maryland Class against all Defendants.

366.   Defendants and Plaintiff are persons within the meaning of Md. Code Ann. Com. Law § 13-101(h).

367.   Unfair, abusive, or deceptive trade practices under the Maryland Consumer Protection Act ("Maryland CPA") include any "(1) False, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers; (2) Representation that: (i) Consumer goods…have a sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quantity which they do not have; … (iv) Consumer goods…are of a particular standard, quality, grade, style, or model which they are not; (3) Failure to state a material fact if the failure deceives or tends to deceive; … (5) Advertisement or offer of consumer goods, consumer realty, or consumer services: (i) Without intent to sell, lease, or rent them as advertised or offered … [and] (9) Deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with: (i) The

promotion or sale of any consumer goods, consumer realty, or consumer service…" Md. Code Ann. Com. Law § 13-101.

368.   Defendants engaged in a deceptive and unfair practice regarding the Engine Failure Defect and the Class Vehicles that was misleading when judged from the viewpoint of a reasonable but unsophisticated consumer.

369.   The Engine Failure Defect in the Class Vehicles, and Defendants' concealment of the same, is material because a significant number of unsophisticated consumers, including Plaintiff and the Maryland Class members, would find the Engine Failure Defect important in determining whether to purchase their vehicle.

370.   Defendants engaged in an act or practice concerning the Engine Failure Defect and Class Vehicles that is unfair because it causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers and not outweighed by countervailing benefits to consumers or competition.

371.   Plaintiff could not have discovered the existence of the Engine Failure Defect, or Defendants' deception and responsibility for the Engine Failure Defect, until shortly before this class action was commenced.

372.   As a direct and proximate result of Defendants' violations of the Maryland CPA, Plaintiff and other Maryland Class members suffered ascertainable, monetary loss in the form of out-of-pocket expenses, loss of use, and lost value related to the Class Vehicles. Plaintiff and Maryland Class members also would have paid less for their Class Vehicles or would not have purchased or leased them at all.

373.   Plaintiff and the Maryland Class seek actual damages, attorneys' fees, and any other just and proper relief available under the Maryland CPA.

## COUNT XVII

### BREACH OF MARYLAND'S IMPLIED WARRANTY OF MERCHANTABILITY
### (MD. CODE COM. LAW §§ 2-314; 2A-212)
### (Alleged by Plaintiff Moon on behalf of the Maryland Class)

374.   Plaintiffs and the Class reallege and incorporate by reference all paragraphs as though fully set forth herein.

375.   Plaintiff Sharon Moon brings this action on behalf of herself and the Maryland Class against all Defendants.

376.   Defendants are "merchants" and "sellers" of motor vehicles, and the Class Vehicles are "goods" under Maryland law.

377.   Under Maryland law, an implied warranty of merchantability attaches to the Class Vehicles under Md. Code Com. Law §§ 2-314; 2A-212.

378.   The Class Vehicles were not merchantable when sold or leased because the engines of the Class Vehicles are prone to premature and catastrophic failure, and pose an unreasonable risk of non-collision engine failures and engine fires due to the Engine Failure Defect described herein.

379.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff and other Maryland Class members have been damaged in an amount to be determined at trial.

## COUNT XVIII

### VIOLATIONS OF THE MICHIGAN CONSUMER PROTECTION ACT
### (MICH. COMP. LAWS § 445.903, *ET SEQ.*)
### (Alleged by Plaintiff O'Brien on behalf of the Michigan Class)

380.   Plaintiffs and the Class reallege and incorporate by reference all paragraphs as though fully set forth herein.

381.   Plaintiff Janet O'Brien ("Plaintiff" for purposes of the Michigan causes of action) brings this action on behalf of herself and the Michigan Class against all Defendants.

382.   Defendants, Plaintiff, and the Michigan Class members are persons, and Defendants were engaged in trade or commerce, within the meaning of the Michigan Consumer Protection Act ("Michigan CPA").

383.   The Michigan CPA prohibits "Unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce." Mich. Comp. Laws § 445.903(1).

384.   Prohibited practices include: "(c) representing that goods or services have … characteristics … that they do not have; … (e) representing that goods or services are of a particular standard… if they are of another; … (s) failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which could not reasonably be known by the consumer; … (bb) making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; [and] (cc) failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner." Mich. Comp. Laws § 445.911.

385.   Defendants violated the Michigan CPA because they misrepresented, concealed, and omitted material facts concerning the Class Vehicles, specifically the existence of the Engine Failure Defect. A material fact for purposes of the Michigan CPA is "one that is important to the transaction or affects the consumer's decision to enter into the transaction."

386.   As alleged herein, Defendants made representations of fact concerning the Engine Failure Defect and the Class Vehicles such that a consumer would reasonably believe the represented or suggested state of affairs to be other than it actually is.

387.   As alleged herein, Defendants omitted facts about the Engine Failure Defect and the Class Vehicles that would tend to mislead or deceive a consumer, including Plaintiff and the Michigan Class, and about which the consumer could not reasonably know.

388.   A reasonable person, including Plaintiff and the Michigan Class, would rely on Defendants' representations of fact and omissions.

389.   Plaintiff could not have discovered the existence of the Engine Failure Defect, or Defendants' deception and responsibility for the Engine Failure Defect, until shortly before this class action was commenced.

390.   Defendants' conduct alleged herein directly and proximately caused actual damages and an ascertainable monetary loss to Plaintiff and the Michigan Class. Had Plaintiff and the members of the Michigan Class known the truth about the Engine Failure Defect they would not have purchased or leased the vehicles or would have paid significantly less for them. Plaintiff and other Michigan Class members also suffered ascertainable, monetary loss in the form of out-of-pocket expenses, loss of use, and lost value related to the Class Vehicles.

391.   Plaintiff and the Michigan Class seek monetary relief against Defendants in the greater amount of actual damages or statutory damages in the amount of $250. Plaintiff and the Michigan Class also seek an order enjoining Defendants' unlawful practices and any other just and proper relief available under the Michigan CPA.

## COUNT XIX

**BREACH OF MICHIGAN'S IMPLIED WARRANTY
OF MERCHANTABILITY**
**(MICH. COMP. LAWS §§ 440.2314; 440.2860)**
**(Alleged by Plaintiff O'Brien on behalf of the Michigan Class)**

392.   Plaintiffs and the Class reallege and incorporate by reference all paragraphs as though fully set forth herein.

393.   Plaintiff Janet O'Brien brings this action on behalf of herself and the Michigan Class against all Defendants.

394.   Defendants are "merchants" and "sellers" of motor vehicles, and the Class Vehicles are "goods" under Michigan law.

395.   Under Michigan law, an implied warranty of merchantability attaches to the Class Vehicles under Mich. Comp. Laws §§ 440. 2314; 440.2862.

396.   The Class Vehicles were not merchantable when sold or leased because the engines of the Class Vehicles are prone to premature and catastrophic failure, and pose an unreasonable risk of non-collision engine failures and engine fires due to the Engine Failure Defect described herein.

397.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff and other Michigan Class members have been damaged in an amount to be determined at trial.

## COUNT XX

**VIOLATION OF THE MISSOURI MERCHANDISING PRACTICES ACT**
**(Mo. Rev. Stat. §§ 407.010 *et seq.*)**
**(Alleged by Plaintiff Carduff on behalf of the Missouri Class)**

398.   Plaintiffs and the Class incorporate by reference each preceding paragraph as though fully set forth herein.

399.   Plaintiff Tavish Carduff ("Plaintiff" for purposes of the Missouri causes of action) brings this Count on behalf of herself and the Missouri Class against all Defendants.

400.   Defendants, Plaintiff, and Class members are "persons" under the meaning of Mo. Rev. Stat. § 407.010(5).

401.   Defendants were engaged in "trade" or "commerce" within the meaning of Mo. Rev. Stat. § 407.010(7).

402.   Class Vehicles are "merchandise" within the meaning of Mo. Rev. Stat. § 407.010(4).

403.   The Missouri Merchandising Practices Act prohibits "deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce." Mo. Rev. Stat. § 407.020.

404.   Defendants concealed Class Vehicles' defective engines that made them unsafe to drive. Defendants did not tell Plaintiff and Missouri Class members about the Engine Failure Defects. Even when Defendants announced recalls for certain Class

Vehicles, Defendants continued to conceal the Engine Failure Defects in others and concealed that the recall did not address the root cause of the problem.

405.   Defendants violated the Missouri MPA by, at minimum, representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Class Vehicles are of a particular standard and quality when they are not; advertising the Class Vehicles with the intent not to sell them as advertised; and omitting material facts in describing the Class Vehicles.

406.   Defendants' acts and practices, as described throughout this Complaint, constitute violations of Mo. Rev. Stat. § 407.020(1).

407.   Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with the intent to mislead Plaintiff and the Missouri Class.

408.   Defendants knew or should have known that their conducted violated the Missouri MPA.

409.   Defendants' fraudulent concealment of the true characteristics of Class Vehicles' Engine Failure Defect were material to Plaintiff and Missouri Class members.

410.   Defendants' violations present a continuing risk to Plaintiff as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

411.   Defendants had an ongoing duty to their customers to refrain from unfair and deceptive practices under the Missouri MPA. All owners of Class Vehicles suffered ascertainable loss in the form of the diminished value of their vehicles as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

412.   Plaintiff repeatedly voiced concerns about the vehicle to the dealership from which she purchased the vehicle. She also paid out of pocket for a tow to Oakes Kia for repair, where the service department informed her that the vehicle required a

new engine and catalytic converter to be drivable. KA offered to pay for $3,000 toward the engine replacement, but only if Plaintiff and her husband signed a broad release of all potential legal claims. Plaintiff refused to sign the release and has paid approximately $9,712.94 out of pocket for these repairs to date.

413.   As a direct and proximate result of Defendants' violations of the Missouri MPA, Plaintiff and the Missouri Class have suffered injury-in-fact and/or actual damage.

414.   Pursuant to Mo. Rev. Stat. § 407.025, Plaintiff and the Missouri Class seek actual damages, attorneys' fees, punitive damages, restitution, civil penalties, and any other relief available under the Missouri MPA that the Court deems just and proper.

**COUNT XXI**

**BREACH OF MISSOURI'S IMPLIED WARRANTY OF MERCHANTABILITY**
**(Mo. Rev. Stat. §§ 407.2–314 et seq.)**
**(Alleged by Plaintiff Carduff on behalf of the Missouri Class)**

415.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

416.   Plaintiff Tavish Carduff brings this Count on behalf of herself and the Missouri Class against all Defendants.

417.   Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Mo. Rev. Stat. § 407.2–104, and "sellers" of motor vehicles under § 407.2–103(1)(d).

418.   The Class Vehicles were at all relevant times "goods" within the meaning of Mo. Rev. Stat. §§ 407.2–105.

419.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to §§ 407.2–314.

420.   Defendants sold and/or leased Class Vehicles that they knew were not in merchantable condition and/or fit for the ordinary purpose for which they were sold— namely, providing safe and reliable transportation. Defendants did not disclose their knowledge that Class Vehicles were not in merchantable condition and/or fit for the ordinary purpose for which they were sold, in order to induce Plaintiff and Missouri Class members to purchase Class Vehicles.

421.   Plaintiff repeatedly voiced concerns about the vehicle to the dealership from which she purchased the vehicle. She also paid out of pocket for a tow to Oakes Kia for repair, where the service department informed her that the vehicle required a new engine and catalytic converter to be drivable. KA offered to pay for $3,000 toward the engine replacement, but only if Plaintiff and her husband signed a broad release of all potential legal claims. Plaintiff refused to sign the release and has paid approximately $9,712.94 out of pocket for these repairs to date.

422.   Defendants' breach of the implied warranty of merchantability caused damage to Plaintiff and Missouri Class members who purchased or leased the defective vehicles. The amount of damages due will be proven at trial.

## COUNT XXII

**VIOLATIONS OF THE OHIO CONSUMER SALES PRACTICES ACT**
**(O.R.C. §§ 1345.01, *et seq.*)**
**(Alleged by Plaintiff Ronfeldt on behalf of the Ohio Class)**

423.   Plaintiffs and the Class incorporate by reference each preceding paragraph as though fully set forth herein.

424.   Plaintiff Seane Ronfeldt ("Plaintiff" for purposes of the Ohio causes of action) brings this Count on behalf of himself and the Ohio Class.

425.   Plaintiff and the Ohio State Class are "consumers" within the meaning of Ohio Revised Code §1345.01(A)

426.   Defendants are "suppliers" within the meaning of Ohio Revised Code §1345.01(C).

427.   Plaintiff, the Ohio Class, and the Defendants all engaged in a "consumer transaction" within the meaning of Ohio Revised Code §1345.01(D).

428.   The Ohio Consumer Sales Practices Act ("CSPA") makes it unlawful for suppliers to "commit an unfair or deceptive act or practice in connection with a consumer transaction." O.R.C. § 1345.02, et seq.

429.   Defendants violated the CSPA by selling Class Vehicles with the safety-related Engine Failure Defect making the vehicles prone to catastrophic and sudden engine failures and stalling at speed, often resulting in fires.

430.   Prior to and throughout Plaintiff and the Ohio Class's purchases and leases of their Defective Vehicles, Defendants engaged in unfair methods of competition and unfair or deceptive acts or practices by, among other things, representing that the defective Class Vehicles had characteristics, uses or benefits that they do not have; that the Class Vehicles were of a particular standard, quality, or grade that they were not; and, that the Class Vehicles were made available to Plaintiff and the Ohio Class for a reason that does not exist. *See* O.R.C. § 1345.02(B)(1), (2), and (4).

431.   Additionally, Defendants knowingly made misleading statements and representations with respect to the Class Vehicles (and particularly their defective engines) that Defendants knew Plaintiff and the Ohio Class would likely rely upon in deciding whether to purchase Defendants' Vehicles. *See* O.R.C. §1345.03(6).

432.   In the course of Defendants' business, they willfully failed to disclose the safety-related Engine Failure Defect in the Class Vehicles as described above. Defendants also actively concealed the Engine Failure Defect when they learned of them. Accordingly, Defendants engaged in unfair and deceptive acts or practices and unconscionable acts or practices.

433.   Defendants knowingly misrepresented the Class Vehicles as fit for the purpose for which they were intended, when, in fact, Defendants knew the Class Vehicles were unable to perform as advertised.

434.   These acts and practices have deceived Plaintiff and the Ohio Class and are likely to, and did, deceive the public. In failing to disclose the Engine Failure Defect in the Class Vehicles and suppressing material facts from Plaintiff and the Ohio Class members, Defendants breached their duties to disclose these facts.

435.   The omissions and acts of concealment by the Defendants pertained to information that was material to Plaintiff and Ohio Class members, as it would have been to all reasonable consumers.

436.   Defendants knew that their conduct violated the CSPA.

437.   Plaintiff and the Ohio Class have suffered injury in fact and actual damages as a direct and proximate result of Defendants' material omissions and misrepresentations. Had Plaintiff and the Ohio Class known about the Engine Failure Defect in the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

438.   Plaintiff and the Ohio Class have suffered actual damages and ascertainable loss as a direct and proximate result of the Defendants' violations of the CSPA, including but not limited to diminished and or complete lost value for the Class Vehicles they purchased or leased; lost or diminished use, enjoyment and utility of such vehicles; and annoyance, aggravation and inconvenience resulting from Defendants' violations of the CSPA.

439.   Pursuant to Ohio Revised Code § 1345.09, for each violation of the CSPA, Plaintiff and the Ohio Class members seek the actual damages resulting from each such violation, plus an amount not exceeding five thousand dollars in noneconomic damages, together with equitable relief as determined by the Court to be proper. Specifically, Plaintiff and the Ohio Class ask the Court to enjoin the Defendants from further unfair or deceptive acts or practices; to order that Defendants return all amounts that Plaintiff and the Ohio Class paid to Defendants for purchase and/or lease of the Class Vehicles; to award attorneys' fees and costs against the Defendants; to assess punitive damages as the Court finds just and proper to punish

Defendants for their willful, intentional and malicious plans to deceive, defraud and injure Plaintiff and the Ohio Class; and to order any other just and proper relief available under the CSPA.

### COUNT XXIII

**VIOLATIONS OF OHIO'S IMPLIED WARRANTY OF MERCHANTABILITY**
**(O.R.C. §§ 1302.27 and 1310.19)**
**(Alleged by Plaintiff Ronfeldt on behalf of the Ohio Class)**

440.   Plaintiffs and the Class incorporate by reference each preceding paragraph as though fully set forth herein.

441.   Plaintiff Seane Ronfeldt brings this Count on behalf of himself and the Ohio Class.

442.   The Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Ohio Rev. Code §§ 1302.01(5) and 1310.01(A)(20), and "sellers" of motor vehicles under Ohio Rev. Code § 1302.01(4).

443.   With respect to leases, the Defendants are and were at all relevant times "lessors" of motor vehicles under Ohio Rev. Code § 13.10.01(A)(20).

444.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Ohio Rev. Code §§ 1302.01(8) and 1310.01(A)(8).

445.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Ohio Rev. Code §§ 1302.27 and 1310.19.

446.   Defendants, and in particular KA, transacted business through its flagship dealer in Northwest Ohio, Taylor Kia of Toledo.

447.   On information and belief, through the operation of KA's contracts and agreements, and through day-to-day operational practices, Taylor Kia of Toledo operated under the guidance of, and acted primarily for the benefit of, the Kia Defendants.

448.   At all times relevant to this Complaint with respect to Plaintiff—including both at the time of purchase and after the engine failure, particularly including the denial of responsibility to repair, replace, or reimburse for the engine failure—Taylor Kia of Toledo acted to the benefit of the Kia Defendants.

449.   Defendant KA solely made the decision to deny warranty coverage to repair, replace, or reimburse for Plaintiff's defective failed engine.

450.   These Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and were not and are not fit for the ordinary purpose for which vehicles are used. Specifically, the Class Vehicles are inherently defective in that they contain engines that are prone to sudden catastrophic failure and/or fires, rendering the vehicles unreliable, highly dangerous, and unfit to drive.

451.   Defendants were provided notice of the Engine Failure Defect through numerous consumer complaints and incident reports over the years, specifically pertaining to the engines in the Class Vehicles, but also those relating to similar gasoline direct injection engines manufactured by Defendants for their other vehicles, and Defendants ignored, denied and concealed the dangerous Engine Failure Defect for years prior to taking any action or issuing any recalls that may (or may not) address the defect.

452.   As a direct and proximate result of the Defendants' breach of the implied warranty of merchantability, Plaintiff and the Ohio Class members have been damaged in an amount to be proven at trial.

## COUNT XXIV

### VIOLATIONS OF THE NORTH CAROLINA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT
#### (N.C. Gen. Stat. §§ 75-1.1, *et seq.*)
#### (Alleged by Plaintiff Pressley on behalf of the North Carolina Class)

453.   Plaintiffs and the Class incorporate each preceding paragraph as though fully set forth herein.

454.   Plaintiff William Pressley ("Plaintiff" for purposes of the North Carolina causes of action) brings this Count individually and on behalf of the other members of the North Carolina Class.

455.   Defendants engaged in unlawful, unfair, and deceptive trade practices in violation of the North Carolina Unfair and Deceptive Trade Practices Act by advertising, selling, and warranting the defective Class Vehicles.

456.   Defendants knew that the Class Vehicles suffered from the Engine Failure Defect that results in catastrophic engine failure, stalling, and fires.

457.   In advertising, selling, and warranting the Class Vehicles, Defendants omitted material facts concerning the Engine Failure Defect that results in catastrophic engine failure, stalling, and fires. Defendants failed to give Plaintiff and the other North Carolina Class members sufficient notice or warning regarding this Defect.

458.   Defendants intended that Plaintiff and the other North Carolina Class members rely upon Defendants' omissions when purchasing vehicles containing the 2.0-liter "Nu" Engines.

459.   Plaintiff and the other North Carolina Class members were deceived by Defendants' concealment of the Engine Failure Defect.

460.   Defendants' conduct was in commerce and affected commerce.

461.   As a direct and proximate result of these unfair, willful, unconscionable, and deceptive commercial practices, Plaintiff and the other North Carolina Class members have been damaged and are entitled to recover actual and treble damages, as well as attorneys' fees and costs, and all other relief allowed under N.C. Gen. Stat §§ 75-16 and 75-16.1.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## COUNT XXV

**BREACH OF NORTH CAROLINA'S IMPLIED WARRANTY OF MERCHANTABILITY**
**(N.C. Gen. Stat. §§ 25-2-314 and 25-2A-212)**
**(Alleged by Plaintiff Pressley on behalf of the North Carolina Class)**

462.    Plaintiffs and the Class incorporate each preceding paragraph as though fully set forth herein.

463.    Plaintiff William Pressley brings this Count individually and on behalf of the other members of the North Carolina Class.

464.    Defendants are and were at all relevant times a merchant with respect to motor vehicles under N.C. Gen Stat. § 25-2-314 and 25-2A-212.

465.    Pursuant to N.C. Gen. Stat. §§ 25-2-314 and 25-2A-212, a warranty that the Class Vehicles were in merchantable condition was implied by law, and the Class Vehicles were bought and sold subject to an implied warranty of merchantability.

466.    The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the Engine Failure Defect which causes catastrophic engine failure, stalling, and fires.

467.    Plaintiff and the other North Carolina Class members suffered injuries due to the defective nature of the Class Vehicles and Defendant's breach of the warranty of merchantability.

468.    Defendants were provided notice of the Engine Failure Defect through numerous complaints filed against them directly and through their dealers, as well as their own internal engineering knowledge. In addition, and in the alternative, the notice letter would have been futile under the circumstances because Plaintiff's vehicle was irreparably destroyed by the Engine Failure Defect as described above, making any cure impossible.

469.    As a direct and proximate result of Defendant's breach of the warranty of merchantability, Plaintiff and the other North Carolina Class members have been damaged in an amount to be proven at trial.

## COUNT XXVI

**VIOLATIONS OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW**
**(73 PA. STAT. § 201-1, *ET SEQ.*)**
**(Alleged by Plaintiffs DiPardo, DiPardo, and Roos on behalf of the Pennsylvania Class)**

470.    Plaintiffs and the Class reallege and incorporate by reference all paragraphs as though fully set forth herein.

471.    Plaintiffs Jennifer DiPardo, Anthony DiPardo, and Christina Roos ("Plaintiffs" for purposes of the Pennsylvania causes of action) bring this action on behalf of themselves and the Pennsylvania Class against all Defendants.

472.    Plaintiffs are natural persons who purchased a Class Vehicle for personal, family, or household purposes.

473.    The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("PUTPCPL") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" as set forth in the statute. 73 Pa. Stat. § 201-3.

474.    As alleged herein, Defendants engaged in unfair and deceptive acts in the conduct of trade or commerce in violation of the PUTPCPL by knowingly and intentionally concealing the existence of the Engine Failure Defect in Class Vehicles, along with the costs, risks, and diminished value of the vehicles as a result of this Defect, from Plaintiffs and the Pennsylvania Class members. These acts and practices violate, at a minimum, the following sections of PUTPCPL section 201-2: (4)(ii) Misrepresenting the source, sponsorship, approval or certification of goods or services; (4)(v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a

person has a sponsorship, approval, status, affiliation or connection that he does not have; (4)(vii) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another; (4)(ix) Advertising goods and services with intent not to sell them as advertised; and (4)(xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

475.   Defendants knew that their Class Vehicles contained the Engine Failure Defect, could fail prematurely, and were not suitable for their intended use. Defendants engaged in a deceptive act or practice concerning the Engine Failure Defect and the Class Vehicles that created a likelihood of confusion or misunderstanding. Plaintiffs and the Pennsylvania Class members justifiably relied upon the deception when deciding to purchase their Class Vehicles.

476.   Defendants owed a duty to Plaintiffs and the Pennsylvania Class members to disclose the defective nature of the Class Vehicles because: (a) Defendants were in a superior position to know the true state of facts about the Defect in the Class Vehicles; (b) Plaintiffs and the Pennsylvania Class members could not reasonably be expected to learn or discover that the Class Vehicles were defective and not in accordance with Defendants' advertisements and representations; (c) the Engine Failure Defect is a safety related defect; and (d) Defendants knew that Plaintiffs and the Pennsylvania Class members could not reasonably be expected to learn or discover the Engine Failure Defect in the Class Vehicles.

477.   In failing to disclose the Engine Failure Defect and the associated safety risks and repair costs, Defendants knowingly and intentionally concealed material facts and breached their duty.

478.   The facts concealed or not disclosed by Defendants to Plaintiffs and the Pennsylvania Class members are material in that a reasonable consumer would have considered them important in deciding whether to purchase Defendants' Class Vehicles or pay a lesser price.

479.   Defendants' deceptive acts and practices alleged herein directly and proximately caused actual damages and an ascertainable monetary loss to Plaintiffs and the Pennsylvania Class. Had Plaintiffs and the Pennsylvania Class members known the truth about the Engine Failure Defect they would not have purchased or leased the vehicles or would have paid significantly less for them. Plaintiffs and other Pennsylvania Class members also suffered ascertainable, monetary loss in the form of out-of-pocket expenses, loss of use, and lost value related to the Class Vehicles.

480.   Unfair or deceptive acts and practices as defined by the PUTPCPL also include "[f]ailing to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services is made." 73 Pa. Stat. § 201-2(4)(xiv). Defendants violated the PUTPCPL by refusing to repair the Pennsylvania State Class members' vehicles, and at no cost to them under the terms of Defendants' New Vehicle Limited Warranty and Powertrain Warranty applicable to all Class Vehicles.

481.   Defendants' failure to honor their warranty terms directly and proximately caused injuries to Plaintiffs and other Pennsylvania Class members. Had Defendants honored their warranties, Plaintiffs and other Pennsylvania Class members would not have incurred substantial repair costs.

482.   Under 73 Pennsylvania Statutes section 201-9.2, Plaintiffs request the Court grant treble damages.

## COUNT XXVII

### BREACH OF PENNSYLVANIA'S IMPLIED WARRANTY OF MERCHANTABILITY
### (13 PA. CONS. STAT. §§ 2314; 2A212)
### (Alleged by Plaintiffs DiPardo, DiPardo, and Roos on behalf of the Pennsylvania Class)

483.   Plaintiffs and the Class reallege and incorporate by reference all paragraphs as though fully set forth herein.

484.   Plaintiffs Jennifer DiPardo, Anthony DiPardo, and Christina Roos bring this action on behalf of themselves and the Pennsylvania Class against all Defendants.

485.   Defendants are "merchants" and "sellers" of motor vehicles, and the Class Vehicles are "goods" under Pennsylvania law.

486.   Under Pennsylvania law, an implied warranty of merchantability attaches to the Class Vehicles under 13 Pa. Cons. Stat. §§ 2314; 2A212.

487.   The Class Vehicles were not merchantable when sold or leased because the engines of the Class Vehicles are prone to premature and catastrophic failure and pose an unreasonable risk of non-collision engine failures and engine fires due to the Engine Failure Defect described herein.

488.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and other Pennsylvania Class members have been damaged in an amount to be determined at trial.

## COUNT XXVIII

### VIOLATION OF THE TEXAS DECEPTIVE TRADE PRACTICES – CONSUMER PROTECTION ACT
### (Tex. Bus. & Com. Code §§ 17.01, *et seq.*)
### (Alleged by Plaintiff Smith on behalf of the Texas Class)

489.   Plaintiffs and the Class incorporate by reference each preceding paragraph as though fully set forth herein.

490.   Plaintiff Jeannett Smith ("Plaintiff" for purposes of the Texas causes of action) brings this Count individually and on behalf of the other members of the Texas Class.

491.   The Texas Deceptive Trade Practices—Consumer Protection Act ("TDTPA") states that it is unlawful to commit "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce." Tex. Bus. & Com. Code § 17.46.

492.   By the conduct described in detail above and incorporated herein, Defendants engaged in false, misleading and deceptive trade practices.

493.   Defendants were notified of the Engine Failure Defect by letter sent via certified mail, return receipt requested on May 1, 2020, on behalf of Plaintiff. Defendants were also provided notice of the Engine Failure Defect through numerous complaints filed against them directly and through their dealers, as well as their own internal engineering knowledge. In addition, and in the alternative, the notice and cure letter contemplated by Tex. Bus. & Com. Code § 17.505 would have been futile under the circumstances because Plaintiff's vehicle was irreparably destroyed by the engine fire, making any cure impossible.

494.   Defendants' omissions regarding the Engine Failure Defect, described above, that results in Class Vehicles prone to sudden catastrophic engine failure, stalling, and fires. Engine damage within the 2.0-liter "Nu" Engines and consequences thereof, are material facts that a reasonable person would have considered in deciding whether to purchase (or to pay the same price for) the Class Vehicles.

495.   Defendants intended for Plaintiff and the other Texas Class members to rely on Defendants' omissions regarding the Engine Failure Defect.

496.   Plaintiff and the other Texas Class members justifiably acted or relied to their detriment upon Defendants' omissions of fact concerning the above-described Engine Failure Defect that results in in Class Vehicles prone to sudden catastrophic engine failure, stalling, and fires, as evidenced by Plaintiff and the other Texas Class members' purchases of Class Vehicles.

497.   Had Defendants disclosed all material information regarding the Engine Failure Defect to Plaintiff and the other Texas Class members, Plaintiff and the other Texas Class members would not have purchased or leased Class Vehicles or would have paid less to do so.

498.   Defendants' omissions have deceived Plaintiff, and those same business practices have deceived or are likely to deceive members of the consuming public and the other members of the Texas Class.

499.   In addition to being deceptive, the business practices of Defendants were unfair because Defendants knowingly sold Plaintiff and the other Texas Class members Class Vehicles with defective engines that are essentially unusable for the purposes for which they were sold. The injuries to Plaintiff and the other Texas Class members are substantial and greatly outweigh any alleged countervailing benefit to Plaintiff and the other Texas Class members or to competition under all of the circumstances. Moreover, in light of Defendants' exclusive knowledge of the Engine Failure Defect, the injury is not one that Plaintiff or the other Texas Class members could have reasonably avoided.

500.   As a direct and proximate result of Defendants' unfair and deceptive trade practices, Plaintiff and the other Texas Class members have suffered ascertainable loss and actual damages. Plaintiff and the other Texas Class members who purchased or leased the Class Vehicles would not have purchased or leased the Class Vehicles, or, alternatively, would have paid less for them had the truth about the Engine Failure Defect been disclosed. Plaintiff and the other Texas Class members also suffered diminished value of their vehicles. Plaintiff and the other Texas Class members are entitled to recover actual damages, attorneys' fees and costs, and all other relief allowed under the TDTPA.

## COUNT XXIX

### BREACH OF TEXAS'S IMPLIED WARRANTY OF MERCHANTABILITY
(Tex. Bus. & Com. Code §§ 2.314 and 2A.212, *et seq.*)
(Alleged by Plaintiff Smith on behalf of the Texas Class)

501.   Plaintiffs and the Class incorporate by reference each preceding paragraph as though fully set forth herein.

502.   Plaintiff Jeannett Smith brings this Count individually and on behalf of the Texas Class.

503.   Defendants are and were at all relevant times a merchant with respect to motor vehicles under Tex. Bus. & Com. Code §§ 2.104 and 2A.103.

504.   Pursuant to Tex. Bus. & Com. Code §§ 2.314 and 2A.212, a warranty that the Class Vehicles were in merchantable condition was implied by law, and the Class Vehicles were bought and sold subject to an implied warranty of merchantability.

505.   The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the Engine Failure Defect making them prone to sudden catastrophic engine failure, stalling, and fires.

506.   Defendants were notified of the Engine Failure Defect by letter sent via certified mail, return receipt requested on May 1, 2020, on behalf of Plaintiff. Defendants were also provided notice of the Engine Failure Defect through numerous complaints filed against it directly and through their dealers, as well as their own internal engineering knowledge. In addition and in the alternative, the notice would have been futile under the circumstances because Plaintiff's vehicle was irreparably destroyed by the engine fire, making any cure impossible.

507.   As a direct and proximate result of Defendants' breach of the warranty of merchantability, Plaintiff and the other Texas Class members have been damaged in an amount to be proven at trial.

## COUNT XXX

### VIOLATIONS OF THE WASHINGTON CONSUMER PROTECTION ACT
(WASH. REV. CODE § 19.86.010, *ET SEQ.*)
(Alleged by Plaintiffs Buettner and Short on behalf of the Washington Class)

508.   Plaintiffs and the Class reallege and incorporate by reference all paragraphs as though fully set forth herein.

509.   Plaintiffs Robert Buettner and Linda Short ("Plaintiffs" for purposes of the Washington causes of action) bring this action on behalf of themselves and the Washington Class against all Defendants.

510.   Defendants, Plaintiffs and members of the Washington Class are "person[s]" within the meaning of Wash. Rev. Code § 19.86.010(2).

511.   Defendants are engaged in trade or commerce within the meaning of Wash. Rev. Code § 19.86.010(2).

512.   The Washington Consumer Protection Act ("Washington CPA") makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]" Wash. Rev. Code § 19.86.020.

513.   In the course of their business, Defendants intentionally or negligently concealed and suppressed material facts concerning the serious and dangerous Engine Failure Defect in the Class Vehicles. Defendants concealed the truth about the Defect and failed to make any effort to remedy the Defect even though they knew about it for years.

514.   Plaintiffs and the Washington Class members had no way of discerning that Defendants had falsely and deceptively concealed the latent Engine Failure Defect unless and until the Defect manifested by causing catastrophic and sudden engine failures, stalls, or fires. Plaintiffs and the Washington Class members could not unravel this deception on their own.

515.   Even though Defendants knew of the Engine Failure Defect before any Class Vehicles were sold, they continued to produce and market Class Vehicles for sale. Plaintiffs purchased their vehicles after that date, at which time Defendants were on notice of the Defect.

516.   Defendants' actions constitute a violation of the Washington CPA. Defendants knew the true nature of the Class Vehicles because of pre-sale durability testing, complaints and warranty claims by consumers to Defendants directly as well as to NHTSA, and previous recalls related to these or similar engines for similar defects.

517.   Defendants owed Plaintiffs a duty to disclose the defect and its resulting safety risks because Defendants:

A.  Possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States with a dangerous safety-related defect;

B.  Intentionally concealed the foregoing from regulators, Plaintiffs, and Washington Class members; and/or

C.  Made incomplete representations, via recalls of Class Vehicles or related vehicles for similar defects, concerning the safety and presence of a defect in the Class Vehicles, while purposefully withholding material facts from Plaintiffs and Washington Class members that contradicted those representations.

518.   Defendants' unfair and deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety, roadworthiness, and value of the Class Vehicles.

519.   Plaintiffs and Washington Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment of and failure to disclose material information. Plaintiffs and Washington Class members who purchased or leased Class Vehicles would not have done so or would have paid significantly less for them if their true nature was known.

520.   Meanwhile, Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Washington CPA in the course of their business.

521.   Defendants' violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

522.   Under Wash. Rev. Code § 19.86.090, Plaintiffs and the Washington Class seek an order enjoining Defendants' unfair and/or deceptive acts or practices, damages, punitive damages, and attorneys' fees, costs, and any other just and proper

relief available under the Washington CPA. Because Defendants' actions were willful and knowing, Plaintiffs' damages should be trebled. *Id.*

## COUNT XXXI

### BREACH OF WASHINGTON'S IMPLIED WARRANTY OF MERCHANTABILITY
### (WASH. REV. CODE. §§ 62A.2-314; 62A.2A-212)
**(Alleged by Plaintiffs Buettner and Short on behalf of the Washington Class)**

523.   Plaintiffs and the Class reallege and incorporate by reference all paragraphs as though fully set forth herein.

524.   Plaintiffs Robert Buettner and Linda Short bring this action on behalf of themselves and the Washington Class against all Defendants.

525.   Defendants are "merchants" and "sellers" of motor vehicles, and the Class Vehicles are "goods" under Washington law.

526.   Under Washington law, an implied warranty of merchantability attaches to the Class Vehicles under Wash. Rev. Code §§ 62A.2-314; 62A.2A-212.

527.   The Class Vehicles were not merchantable when sold or leased because the engines of the Class Vehicles are prone to premature and catastrophic failure, and pose an unreasonable risk of non-collision engine failures and engine fires due to the Engine Failure Defect described herein.

528.   Plaintiffs and the other Washington Class members are third-party beneficiaries of Defendants' implied warranty.

529.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and other Washington Class members have been damaged in an amount to be determined at trial.

# COUNT XXXII

## VIOLATION OF THE WEST VIRGINIA CONSUMER CREDIT AND PROTECTION ACT
### (W. Va. Code §§ 46A-1-101, *et seq.*)
### (Alleged by Plaintiff Twigger on behalf of the West Virginia Class)

530.   Plaintiffs and the Class incorporate by reference each preceding paragraph as though fully set forth herein.

531.   Plaintiff James Michael Twigger ("Plaintiff" for purposes of the West Virginia causes of action) brings this Count on behalf of himself and the West Virginia Class.

532.   Plaintiff, the West Virginia Class, and Defendants are "consumers" and engaged in "consumer transaction[s]" within the meaning of West Virginia Code § 46A-6-102(2).

533.   Defendants engaged in "trade" or "commerce" as defined by West Virginia Code § 46A-6-102(6).

534.   The West Virginia Consumer Credit and Protection Act ("WVCCPA") makes it unlawful to engage in any "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." W. Va. Code § 46A-6-104.

535.   Defendants violated the WVCCPA by selling Class Vehicles with defective engines, containing the safety-related Engine Failure Defect that made Class Vehicles prone to sudden catastrophic engine failure, stalling, and fires.

536.   Prior to and throughout Plaintiff and the West Virginia Class members' purchases and leases of their Class Vehicles, Defendants engaged in unfair methods of competition and unfair or deceptive acts or practices by, among other things, representing that the Class Vehicles had characteristics, uses, benefits and qualities which they do not have; representing that the Class Vehicles are of a particular standard, quality and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and engaging in other conduct creating a

likelihood of confusion or of misunderstanding. See WV Code § 46A-6-102(7)(E), (G), (I) and (L).

537.   Even though Defendants knew of the Engine Failure Defect at least as early as May 2012 for the Souls and June 2013 for the Tucsons, they continued to produce and market Class Vehicles for sale after that date. Plaintiff and the West Virginia Class members purchased or leased their Vehicles after Defendants had notice of the Engine Failure Defect.

538.   In the course of their business, Defendants willfully failed to disclose the safety-related Engine Failure Defect in the Class Vehicles as described above. Defendants also actively concealed the true characteristics, qualities, and grades of the engines in the Class Vehicles when Defendants gained this information. Accordingly, Defendants engaged in unfair and deceptive acts or practices.

539.   Defendants knowingly misrepresented the Class Vehicles as fit for the purpose for which they were intended, when, in fact, Defendants knew the Class Vehicles were unable to perform as advertised.

540.   These acts and practices have deceived Plaintiff and the West Virginia Class. In failing to disclose the true characteristics and qualities of the Class Vehicles and suppressing material facts from Plaintiff and the West Virginia Class members, Defendants breached their duties to disclose these facts.

541.   The omissions and acts of concealment by Defendants pertained to information that was material to Plaintiff and the West Virginia Class members, as it would have been to all reasonable consumers.

542.   Defendants knew that their conduct violated the WVCCPA.

543.   Plaintiff and the West Virginia Class have suffered injury in fact and actual damages as a direct and proximate result of Defendants' material omissions and misrepresentations. Had Plaintiff and the West Virginia Class known the true characteristics and qualities of the engines in the Class Vehicles, they would not have purchased the Class Vehicles or would have paid substantially less for them. In

satisfaction of WV Code § 46A-6-106(c), and § 46A-6A-3(a) and 5(c), and pursuant to this Court's order dated March 15, 2020, Plaintiff sent statutory notice letters to all Defendants by certified mail, return receipt requested, on March 18, 2020. These letters alleged and specified violations of the WVCCPA and provided Defendants the opportunity to make a cure offer within 10 days of receipt of the letter. KA received the letter on March 31, 2020; KC received the letter on April 21, 2020; and HMA received the letter on March 19, 2020. None of the Defendants have responded.

544.   Plaintiff and the West Virginia Class have suffered actual damages and ascertainable loss as a direct and proximate result of the Defendants' violations of the WVCCPA, including but not limited to diminished and or complete lost value for the Class Vehicles they purchased or leased; lost or diminished use, enjoyment and utility of such vehicles; and annoyance, aggravation and inconvenience resulting from Defendants' violations of the WVCCPA.

545.   Pursuant to WV Code § 46A-6-106(a), for each violation of the WVCCPA, Plaintiff and the West Virginia Class seek the actual damages resulting from each such violation, or $200, whichever is greater, together with equitable relief as determined by the Court to be proper. Specifically, Plaintiff and the West Virginia Class ask the Court to enjoin Defendants from further unfair or deceptive acts or practices; to order that Defendants return all amounts that Plaintiff and the West Virginia Class paid to Defendants for purchase and/or lease of the Class Vehicles; to award attorneys' fees and costs against Defendants; to assess punitive damages as the Court finds just and proper to punish Defendants for their willful, intentional and malicious plan to deceive, defraud and injure Plaintiff and the West Virginia Class; and to order any other just and proper relief available under the WVCCPA.

# COUNT XXXIII

## BREACH OF WEST VIRGINIA'S IMPLIED WARRANTY OF MERCHANTABILITY
### (W. Va. Code §§ 46-2-314 and 46-2A-212)
### (Alleged by Plaintiff Twigger on behalf of the West Virginia Class)

546.   Plaintiffs and the Class incorporate by reference each preceding paragraph as though fully set forth herein.

547.   Plaintiff James Michael Twigger brings this Count on behalf of himself and the West Virginia Class.

548.   Defendants were at all relevant times "merchants" with respect to motor vehicles under W. Va. Code §§ 46-2-104(1) and 46-2A-103(1)(t), and "sellers" of motor vehicles under § 46-2-103(1)(d).

549.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under W. Va. Code § 46-2A-103(1)(p).

550.   The Class Vehicles are and were at all relevant times "goods" within the meaning of W. Va. Code §§ 46-2-105(1) and 46-2A-103(1)(h).

551.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to W. Va. Code §§ 46-2-314 and 46-2A-212.

552.   Defendants sold and/or leased Class Vehicles that were not in merchantable condition and/or fit for the ordinary purpose for which they were sold—namely, providing safe and reliable transportation, free from the risk of sudden engine stalling and fire.

553.   Defendants' breaches of the implied warranty of merchantability caused damage to Plaintiff and the West Virginia Class. The amount of damages due will be proven at trial.

1

## COUNT XXXIV

2

3

### FRAUD BY CONCEALMENT (Common Law)
### (Alleged by all Plaintiffs on behalf of the Nationwide Class or, alternatively, the State Classes)

4

5

554.   Plaintiffs and the Class reallege and incorporate by reference all paragraphs as though fully set forth herein.

6

7

555.   Plaintiffs bring this claim on behalf of themselves and the Nationwide Class against all Defendants. Alternatively, Plaintiffs bring this claim on behalf of themselves and the State Classes against all Defendants.

8

9

10

556.   As alleged herein, Defendants intentionally concealed, suppressed, and omitted the material fact of the Engine Failure Defect in the Class Vehicles, specifically that the Class Vehicles had a manufacturing defect that could damage various engine components and result in sudden and catastrophic engine stalling, failure, and fire.

11

12

13

14

557.   Defendants also misrepresented the safety, reliability, quality, durability, and functionality of the Class Vehicles. These representations were false because, unbeknownst to Class members, the Class Vehicles contained the Engine Failure Defect rendering the vehicles dangerous, unreliable, prone to premature engine wear and failure, and not fit for their ordinary use.

15

16

17

18

19

558.   Defendants' misrepresentations and omissions about the Engine Failure Defect in the Class Vehicles were material because the misrepresentations and omissions alleged herein induced Plaintiffs and the Class members to purchase their Class Vehicles when, had they known about the Engine Failure Defect, they would not have purchased their Class Vehicles or they would have paid less for them.

20

21

22

23

24

559.   Defendants knew or should have known about the Engine Failure Defect before the Class Vehicles were sold due to (1) their involvement in the design, installation, calibration, manufacture, durability testing, and warranty service of vehicles with the engines, (2) their issuance of related recalls for similar issues in other

25

26

27

28

---

PLS.' AM. CONSOLIDATED CLASS ACTION COMPL. – 229
Case No. 8:18-cv-02223-JLS-JDE
010789-11/2029202 V1

1  vehicles, and (3) the myriad of relevant complaints about Class Vehicles submitted by

2  consumers and received by Defendants directly, via online sources, and via NHTSA.

3      560.   Defendants had reason to expect that Plaintiffs and Class members would

4  purchase or lease the Class Vehicles, or spend more money to acquire them, if the

5  Class Vehicles and specifically their engines were safe, reliable, quality, durable, and

6  functional. Likewise, Defendants knew or should have known that Plaintiffs and Class

7  members would not purchase or lease, or at least pay as much, for the Class Vehicles

8  if they knew they contained the Engine Failure Defect.

9      561.   Reasonable consumers, such as Plaintiffs and the Class, would not know

10 about the Engine Failure Defect in Class Vehicles and that the Defect could, through

11 normal operation and driving, damage various engine components and adjacent

12 systems and eventually result in catastrophic engine stalls and fires. Plaintiffs and the

13 Class members did not know these facts that were concealed from them by

14 Defendants. Moreover, as ordinary consumers, Plaintiff and the Class members did

15 not, and could not, unravel the deception on their own.

16     562.   Defendants concealed the truth about the Engine Failure Defect,

17 intending for Plaintiffs and the Class to rely on their misrepresentations and omissions.

18 Plaintiffs and the Class members relied on Defendants' misrepresentations and

19 omissions in choosing to purchase or lease their Class Vehicles, believing them to be

20 safe and free from major engine defects, like the Engine Failure Defect. Plaintiffs and

21 Class members were reasonable and justified in their reliance on Defendants'

22 representations about the Class Vehicles and omissions about the Engine Failure

23 Defect because Defendants are multinational automakers well-versed in the design,

24 manufacture, and service of automobiles.

25     563.   Defendants had a duty to disclose the Engine Failure Defect to Plaintiffs

26 and Class members because the true facts about the Engine Failure Defect were known

27 and accessible only to Defendants, and because Defendants knew these facts were not

28 known to or reasonably discoverable by Plaintiffs or the Class members unless and

PLS.' AM. CONSOLIDATED CLASS ACTION COMPL. – 230
Case No. 8:18-cv-02223-JLS-JDE
010789-11/2029202 V1

1   until the Defect manifested in their personal vehicle. Additionally, the Engine Failure

2   Defect is safety related because it can damage various engine components and lead to

3   engine stalls at high speeds, and even catastrophic engine fires. As alleged herein,

4   Defendants denied and concealed the Defect in the face of consumer complaints.

5   Plaintiffs and Class members did not, and could not, unravel Defendants' deception on

6   their own.

7   564.   Defendants also had a duty to disclose the true nature of these vehicles as

8   a result of their knowledge of the Engine Failure Defect and issuance of prior and

9   related recalls. By issuing recalls of certain vehicles and representing that these recalls

10  encompassed the full population of affected vehicles, Defendants led consumers and

11  even safety regulators to believe, at least for a time, that they were remedying the

12  engine problems. In fact, these recalls—in addition to being unsuccessful—failed to

13  include hundreds of thousands of additional vehicles that suffered from similar major

14  defects. And the recalls that Defendants have issued to date do not suffice to remedy

15  the problems or make Plaintiffs and Class members whole.

16  565.   Defendants' omissions were made with knowledge of their falsity, and

17  with the intent that Plaintiffs and the Class Members rely on them.

18  566.   Plaintiffs and Class members were entitled to rely on Defendants'

19  misrepresentations and omissions because they are purchasers and lessees of

20  Defendants' vehicles, and Defendants have been enriched by the sales of these Class

21  Vehicles.

22  567.   Plaintiffs and the Class members reasonably relied on Defendants'

23  misrepresentations and omissions and suffered injury and monetary damages as a

24  direct and proximate result. Had Defendants not concealed the material facts of the

25  safety-related Engine Failure Defect, Plaintiffs and the Class would not have

26  purchased the Class Vehicles or would have paid less for them. Plaintiffs and Class

27  members have also incurred out-of-pocket costs related to the Engine Failure Defect,

28  loss of use of their Class Vehicles, and diminished value in their Class Vehicles

because of Defendants' fraud and the growing public awareness about the Engine Failure Defect. Accordingly, Defendants are liable to Plaintiffs and the Class for damages in an amount to be proven at trial.

568.   Defendants' acts were committed wantonly, maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the rights and safety of Plaintiffs and the Class; and to enrich themselves. Their misconduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, and such amount shall be determined according to proof at trial.

**COUNT XXXV**

**BREACH OF EXPRESS WARRANTY**
**(Alleged by all Plaintiffs on behalf of the Nationwide Class or, alternatively, the State Classes)**

569.   Plaintiffs and the Class reallege and incorporate by reference all paragraphs as though fully set forth herein.

570.   Plaintiffs bring this claim on behalf of themselves and the Nationwide Class against all Defendants. Alternatively, Plaintiffs bring this claim on behalf of themselves and the State Classes against all Defendants.

571.   Defendants provided all purchasers and lessees of the Class Vehicles, including Plaintiffs and the Class members, with the express warranties alleged herein, which formed a part of the basis of the bargain. Accordingly, Defendants' warranties are express warranties under state law.

572.   The parts affected by the Engine Failure Defect, including the rotating assembly and engine block, were manufactured and distributed by Defendants in the Class Vehicles and are covered by the warranties Defendants provided to all purchasers and lessors of Class Vehicles.

573.   Defendants breached these warranties by selling and leasing Class Vehicles with the Engine Failure Defect, requiring repair or replacement within the

applicable warranty periods, and refusing to honor the warranties by providing repairs or replacements at no cost to Class members during the applicable warranty periods.

574.   Plaintiffs notified Defendants of the breach within a reasonable time, or were not required to do so because affording Defendants a reasonable opportunity to cure their breaches would have been futile. Defendants also knew about the Engine Failure Defect and yet chose to conceal it and to neglect their warranty obligations.

575.   As a direct and proximate cause of Defendants' breach, Plaintiffs and the Class members bought or leased Class Vehicles they otherwise would not have, overpaid for their vehicles, did not receive the benefit of their bargain, and their Class Vehicles suffered a diminution in value. Plaintiffs and Class members also incurred and will continue to incur costs related to the diagnosis and repair of the Engine Failure Defect.

576.   Defendants' attempt to disclaim or limit these express warranties vis-à-vis consumers are unconscionable and unenforceable under the circumstances. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold a defective product without informing consumers about the Engine Failure Defect.

577.   The time limits contained in Defendants' warranty period were also unconscionable and inadequate to protect Plaintiffs and Class members. Among other things, Plaintiffs and Class members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in formation and bargaining power existed between Defendants and the Class members, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale and could fail well before the end of their useful lives.

578.   Plaintiffs and the Class members complied with all obligations under the warranty, or otherwise are excused from performance of such obligations because of Defendants' conduct alleged herein.

# COUNT XXXVI

## VIOLATIONS OF THE MAGNUSON-MOSS WARRANTY ACT
### (15 U.S.C. § 2301, *ET SEQ.*)
### (Alleged by all Plaintiffs on behalf of the Nationwide Class or, alternatively, the State Classes)

579.   Plaintiffs and the Class reallege and incorporate by reference all paragraphs as though fully set forth herein.

580.   Plaintiffs bring this claim on behalf of themselves and the Nationwide Class against all Defendants. Alternatively, Plaintiffs bring this claim on behalf of themselves and the State Classes against all Defendants.

581.   Plaintiffs and the Class are consumers within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3). They are consumers because they are persons entitled under applicable state law to enforce against the warrantor the obligations of its implied warranties.

582.   Defendants are suppliers and warrantors within the meaning of 15 U.S.C. §§ 2301(4)-(5).

583.   The Class Vehicles are consumer products within the meaning of 15 U.S.C. § 2301(1).

584.   Defendants' 5-year/60,000-mile Basic Warranty and 10-year/100,000-mile Powertrain Warranty are written warranties within the meaning of 15 U.S.C. § 2301(6).

585.   Defendants breached the express warranties by:

      a.   Providing a 5-year/60,000-mile Basic Warranty and a 10-year/100,000-mile Powertrain Warranty with the purchase or lease of the Class Vehicles, thereby warranting to repair or replace any part defective in material or workmanship at no cost to the owner or lessee;

b.  Selling and leasing Class Vehicles with engines that were defective in materials and/or workmanship, requiring repair or replacement within the warranty period; and

c.  Refusing and/or failing to honor the express warranties by repairing or replacing, free of charge, the engine or any of its component parts to remedy the defective connecting rod bearings and insufficient engine oil lubrication channels.

586.  Plaintiffs and Class members relied on the existence and length of the express warranties in deciding whether to purchase or lease the Class Vehicles.

587.  Defendants' breach of the express warranties has deprived Plaintiffs and Class members of the benefit of their bargain.

588.  Defendants were afforded a reasonable opportunity to cure their breach of the written warranties and/or Plaintiffs and Class members were not required to do so because affording Defendants a reasonable opportunity to cure their breach of written warranties would have been futile. Defendants were also on notice of the alleged Engine Failure Defect from the complaints and service requests it received from Class members, as well as from their own warranty claims, customer complaint data, and/or parts sales data.

589.  15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with an implied warranty.

590.  Defendants provided Plaintiffs with an implied warranty of merchantability in connection with the purchase or lease of their Class Vehicles that is an "implied warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7). As a part of the implied warranty of merchantability, Defendants warranted that the Class Vehicles were fit for their ordinary purpose as safe passenger motor vehicles, would pass without objection in the trade as designed, manufactured, and marketed, and were adequately contained, packaged, and labeled.

591.   Defendants breached their implied warranties, as alleged herein, and are therefore liable to Plaintiffs under 15 U.S.C. § 2310(d)(1). Without limitation, the Class Vehicles share common manufacturing defects in that they are equipped with the Engine Failure Defect that causes the engine's rotating assembly, inclusive of the connecting rod bearings and engine block, to prematurely wear until the internal engine components seize and pierce the engine block, which results in a sudden stop of engine operation while the vehicles are being operated, and can result in fire, leaving occupants of the Class Vehicles vulnerable to crashes, serious injury, and death. Defendants have admitted that the Class Vehicles are defective in issuing their recalls, but the recalls are insufficient to address the Engine Failure Defect.

592.   In their capacities as warrantors, Defendants had knowledge of the Engine Failure Defect in the Class Vehicles. Any effort by Defendants to limit the implied warranties in a manner that would exclude coverage of the Class Vehicles is unconscionable.

593.   Any limitations Defendants might seek to impose on their warranties are procedurally unconscionable. There was unequal bargaining power between Defendants and Plaintiffs, as, at the time of purchase and lease, Plaintiffs had no other options for purchasing warranty coverage other than directly from Defendants.

594.   Any limitations Defendants might seek to impose on their warranties are substantively unconscionable. Defendants knew that the Class Vehicles were defective and would continue to pose safety risks after the warranties purportedly expired. Defendants failed to disclose these defects to Plaintiffs. Thus, Defendants' enforcement of the durational limitations on those warranties is harsh and shocks the conscience.

595.   Plaintiffs have had sufficient direct dealings with either Defendants or their agents (dealerships) to establish privity of contract between Defendants and Plaintiffs. Nonetheless, privity is not required here because Plaintiffs are intended third-party beneficiaries of contracts between Defendants and their dealers, and

specifically, of Defendants' implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit consumers. Finally, privity is also not required because the Class Vehicles are dangerous instrumentalities due to the Engine Failure Defect alleged herein.

596.   Under 15 U.S.C. § 2310(e), Plaintiffs are entitled to bring this class action and are not required to give Defendants notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiffs under Rule 23 of the Federal Rules of Civil Procedure.

597.   As a direct and proximate result of Defendants' breach of the written and implied warranties, Plaintiffs and Class members sustained monetary damages and other losses in an amount to be determined at trial. The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum or value of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit. Plaintiffs, individually and on behalf of all other Class members, seek all damages permitted by law, including actual damages, consequential damages, statutory damages, specific performance, diminution in value of their vehicles, and any other relief as deemed appropriate in an amount to be proven at trial. In addition, under 15 U.S.C. § 2310(d)(2), Plaintiffs are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiffs and the other Class members in connection with the commencement and prosecution of this action.

598.   Further, Plaintiffs and the Magnuson-Moss Subclass are also entitled to equitable relief under 15 U.S.C. § 2310(d)(1). Based on Defendants' continuing failures to fix the known dangerous Engine Failure Defect, Plaintiffs seek a declaration that Defendants have not adequately implemented their recall

1  commitments and requirements and general commitments to fix their failed processes,

2  and injunctive relief in the form of judicial supervision over the recall process is

3  warranted. Plaintiffs also seek the establishment of a Hyundai and Kia-funded

4  program for Plaintiffs and Class members to recover out of pocket costs incurred in

5  attempting to rectify the Engine Failure Defect in their Class Vehicles.

6  ## COUNT XXXVII

7  ### BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING
8  (Alleged by all Plaintiffs on behalf of the Nationwide Class or,
   Alternatively, the State Classes)

9  599.   Plaintiffs and the Class reallege and incorporate by reference all

10 paragraphs as though fully set forth herein.

11 600.   Plaintiffs bring this claim on behalf of themselves and the Nationwide

12 Class against all Defendants. Alternatively, Plaintiffs bring this claim on behalf of

13 themselves and the State Classes against all Defendants.

14 601.   All contracts contain an implied covenant of good faith and fair dealing.

15 The implied covenant of good faith and fair dealing is an independent duty and may be

16 breached even if there is no breach of a contract's express terms.

17 602.   A contractual relationship existed between Plaintiffs and the Class and

18 Defendants. As alleged herein, Defendants were the designers, manufacturers,

19 distributors, and warrantors of the Class Vehicles. Defendants provided Plaintiffs with

20 both an express warranty arising from Defendants' 5-year/60,000-mile Basic

21 Warranties and 10-year/100,000-mile Powertrain Warranties, as well as an implied

22 warranty of merchantability in connection with the purchase or lease of their Class

23 Vehicles. Defendants warranted that the Class Vehicles were fit for their ordinary

24 purpose as safe passenger motor vehicles, would pass without objection in the trade as

25 designed, manufactured, and marketed, and were adequately contained, packaged, and

26 labeled.

27

28

603.   At all relevant times, Plaintiffs and the Class members adhered to the warranty requirements for their Class Vehicles relevant to the Engine Failure Defect.

604.   Defendants breached the covenant of good faith and fair dealing by, *inter alia*, failing to notify Plaintiffs and Class members of the Engine Failure Defect in the Class Vehicles, and failing to fully and properly repair this Defect, thereby depriving Plaintiffs and the Class of the benefits under the contract. As a result of Defendants' breach of their duty of good fair and fair dealing, Plaintiffs were monetarily damaged, suffering out of pocket costs related to the Engine Failure Defect, loss of use, and diminution of value in the Class Vehicles. Had Plaintiffs and Class members known about the Engine Failure Defect, they would not have purchased or leased the Class Vehicles, or they would have paid less for them.

605.   Defendants acted in bad faith and/or with a malicious motive to deny Plaintiffs and Class members some benefit of the bargain originally intended by the parties, thereby causing them injuries in an amount to be determined at trial.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of members of the Nationwide and State Classes, respectfully request that the Court enter judgment in their favor and against the Defendants, as follows:

A.   Certification of the proposed Nationwide and State Classes, including appointment of Plaintiffs as class representatives and appointment of Plaintiffs' counsel as Class Counsel;

B.   Damages, including actual, compensatory, general, special, incidental, statutory, punitive, and consequential damages, costs, and disgorgement in an amount to be determined at trial;

C.   An order requiring Defendants to pay both pre- and post-judgment interest on any amounts awarded;

D.   Grant appropriate injunctive and/or declaratory relief, including, without limitation, an order requiring Defendants to repair, recall, and/or replace the Class

1   Vehicles and extend the applicable warranties to a reasonable period of time, or at a

2   minimum, provide Plaintiffs and Class members with appropriate curative notice

3   regarding the existence and cause of the Engine Failure Defect;

4        E.     An award of reasonable costs and attorney fees; and

5        F.     Such other or further relief as may be appropriate.

6                       **DEMAND FOR JURY TRIAL**

7        Plaintiffs hereby demand a jury trial for all claims so triable.

8   DATED: September 13, 2022     Respectfully submitted,

9                       Hagens Berman Sobol Shapiro LLP

10

11                       */s/ Steve W. Berman*
                         Steve W. Berman (*pro hac vice*)

12                       1301 Second Avenue, Suite 2000
                         Seattle, WA 98101

13                       Telephone: (206) 623-7292
                         Facsimile: (206) 623-0594

14                       steve@hbsslaw.com

15                       Matthew D. Schelkopf

16                       Joseph B. Kenney
                         Sauder Schelkopf LLC

17                       1109 Lancaster Avenue
                         Berwyn, PA 19312

18                       Telephone: (610) 200-0581
                         Facsimile: (610) 421-1326

19                       mds@sauderschelkopf.com

20                       jbk@sauderschelkopf.com

21                       *Interim co-Lead Counsel*

22

23

24

25

26

27

28

Gretchen Freeman Cappio
Ryan McDevitt
Maxwell Goins
Adele Daniel
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Telephone: (206) 623-1900
Facsimile: (206) 623-3384
gcappio@kellerrohrback.com
rmcdevitt@kellerrohrback.com
mgoins@kellerrohrback.com
adaniel@kellerrohrback.com

*Settlement Counsel*

Bonner C. Walsh (*pro hac vice*)
WALSH PLLC
1561 Long Haul Road
Grangeville, ID 83530
Telephone: (541) 359-2827
Facsimile: (866) 503-8206
bonner@walshpllc.com

Adam Gonnelli (*pro hac vice*)
LAW OFFICE OF ADAM R. GONNELLI, L.L.C.
707 Alexander Road
Bldg. 2, Suite 208
Princeton, NJ, 08540
Telephone: (917) 541-7110
Facsimile: (315) 446-7521
adam@arglawoffice.com

Rachel E. Fitzpatrick (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
11 W. Jefferson Street, Suite 1000
Phoenix, AZ 85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
rachelf@hbsslaw.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Benjamin L. Bailey
Jonathan D. Boggs
BAILEY GLASSER LLP
209 Capitol Street
Charleston, WV 25301
Telephone: (304) 345-6555
Facsimile: (304) 342-1110
bbailey@baileyglasser.com
jboggs@baileyglasser.com

W. Daniel "Dee" Miles, III
H. Clay Barnett, III
J. Mitch Williams
BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
272 Commerce Street
Montgomery, AL 36104
Telephone: (334) 269-2343
dee.miles@beasleyallen.com
clay.barnett@beasleyallen.com
mitch.williams@beasleyallen.com