1 | Steve W. Berman (*pro hac vice*)
*steve@hbsslaw.com*
2 | HAGENS BERMAN SOBOL SHAPIRO LLP
3 | 1301 Second Avenue, Suite 2000
Seattle, WA 98101
4 | Telephone: (206) 623-7292
Facsimile: (206) 623-0594
5 |
6 | Matthew D. Schelkopf (*pro hac vice*)
*mds@sauderschelkopf.com*
7 | SAUDER SCHELKOPF LLC
1109 Lancaster Avenue
8 | Berwyn, PA 19312
Telephone: (610) 200-0581
9 | Facsimile: (610) 421-1326
10 | *Interim Co-Lead Counsel*
11 | [*Additional counsel listed on signature page*]

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re: Hyundai and Kia Engine Litigation II* | Case No. 8:18-cv-02223-JLS-JDE |
| | Related Cases:<br>8:17-cv-00838-JLS-JDE<br>8:21-cv-01057-JLS-JDE<br>8:21-cv-00379-JLS-JDE<br>8:21-cv-00854-JLS-JDE |
| | **PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| | Date: November 18, 2022<br>Time: 10:30 a.m.<br>Hon. Josephine L. Staton<br>Courtroom: 8A |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ......................................................................................... 1

II.  FACTUAL BACKGROUND ........................................................................ 2

    A.   Plaintiffs' Allegations and Pre-Litigation Investigation ......................... 2

    B.   History of the Litigation ........................................................................ 2

    C.   Settlement Efforts.................................................................................. 5

    D.   The Proposed Settlement Terms ............................................................ 6

        1.   15-Year/150,000-Mile Extended Warranty Coverage ................. 8

        2.   Recall and Product Improvements................................................ 9

        3.   Repair Reimbursements ............................................................. 10

        4.   Repair-Related Transportation and Towing Reimbursements...................................................................... 11

        5.   Inconvenience Due to Repair Delays ......................................... 12

        6.   Incidentals for Qualifying Engine Failure or Engine Fire........... 13

        7.   Lost Value for Sold or Traded-In Vehicles ................................ 14

        8.   Vehicle Destroyed by Engine Fire.............................................. 14

        9.   Rebate Program........................................................................ 15

    E.   Notice to the Settlement Class ............................................................ 16

    F.   The Release ....................................................................................... 17

III. ARGUMENT ............................................................................................ 18

    A.   The proposed Settlement warrants preliminary approval. ..................... 18

        1.   The proposed Settlement is the product of serious, informed, arm's-length negotiations by experienced counsel. ................................................................................ 18

2.  The proposed Settlement offers no improper preferential treatment to Class Representatives or segments of the Class. ........................................................................ 22

3.  The proposed Settlement easily meets the "threshold of plausibility" and has no obvious deficiencies. ........................... 23

4.  The proposed Settlement falls within the range of possible approval. ........................................................ 23

    i.   The strength of Plaintiffs' case .......................................... 24

    ii.  The risk, expense, complexity, and likely duration of further litigation .......................................... 26

    iii. The risk of maintaining class action status through trial........................................................................ 27

    iv.  The amount or type of relief offered in settlement .......... 27

    v.   Discovery completed and the stage of the proceedings........................................................ 29

    vi.  The experience and views of counsel................................ 30

    vii. The presence of a governmental participant .................... 31

    viii. The reaction of Class members .......................................... 31

B.  The Settlement Class satisfies Rule 23. ................................................. 32

    1.  The Settlement Class satisfies Rule 23(a). ................................. 32

    2.  The Settlement Class satisfies Rule 23(b)(3). .......................... 34

C.  The Court should order dissemination of the Class notice. ................... 35

    1.  The proposed Settlement offers the best notice method practicable.................................................................. 36

    2.  The proposed notice adequately informs Class members about their rights. ........................................................ 37

    3.  Notice to federal and state officials. ......................................... 38

D.  Proposed Schedule for Final Approval ................................................. 38

IV.  CONCLUSION ..................................................................................... 39

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Acosta v. Trans Union, LLC*,
   243 F.R.D. 377 (C.D. Cal. 2007)............................................................................ 27

*Aikens v. Malcolm Cisneros*,
   No. 5:17-CV-02462-JLS-SP, 2019 WL 3491928 (C.D. Cal. July 31,
   2019) ............................................................................................................. 32, 33

*Altamirano v. Shaw Indus., Inc.*,
   No. 13-CV-00939-HSG, 2015 WL 4512372 (N.D. Cal. July 24, 2015) ............... 22

*Amchem Prods. v. Windsor*,
   521 U.S. 591 (1997) ...................................................................................... 32, 35

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ................................................................................. 18

*Buettner v. Hyundai Motor America, Inc. et al.*,
   No. 8:21-cv-01057-JLS-JDE (C.D. Cal.) ........................................................ 4, 5, 19

*Casey v. Doctor's Best, Inc.*,
   No. 820-cv-01325-JLS-JDE, 2022 WL 1726080 (C.D. Cal. Feb. 28,
   2022) ................................................................................................. 20, 21, 26, 31

*Chamberlan v. Ford Motor Co.*,
   223 F.R.D. 524 (N.D. Cal. 2004) .......................................................................... 35

*Chieco, et al. v. Kia Motors America, Inc., et al.*,
   No. 8:21-cv-00854-JLS-JDE (C.D. Cal.) ............................................................. 4, 5

*Churchill Vill., L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) ........................................................................... 18, 38

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) .......................................................................... 18, 26

*Clesceri v. Beach City Investigations & Protective Servs., Inc.*,
   No. CV-10-3873-JST, 2011 WL 320998 (C.D. Cal. Jan. 27, 2011) ...................... 29

*Collins v. Cargill Meat Sols. Corp.*,
    274 F.R.D. 294 (E.D. Cal. 2011) ........................................................................... 18

*Correa v. Zillow, Inc.*,
    No. 8:19-cv-00921-JLS-DFM, 2021 WL 4925394 (C.D. Cal. June 14,
    2021) ........................................................................................................................ 29

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011) ................................................................................. 27

*Flaherty et al. v. Hyundai Motor Company, et al.*,
    No. 8:18-cv-02223-JLS-JDE (C.D. Cal.) ......................................................... *passim*

*G. F. v. Contra Costa Cty.*,
    No. 13-CV-03667-MEJ, 2015 WL 4606078 (N.D. Cal. July 30, 2015) .......... 20, 22

*In re Gen. Motors Corp. Pickup Truck Fuel Tank Prods. Liab. Litig.*,
    MDL 961, 1993 WL 204116 (E.D. Pa. June 10, 1993) ......................................... 31

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ............................................................. 32, 33, 34, 35

*Hughes v. Microsoft Corp.*,
    Nos. C98–1646C, 2001 WL 34089697 (W.D. Wash. Mar. 26, 2001) ................... 19

*In re Hyundai & Kia Fuel Econ. Litig.*,
    926 F.3d at 566 ................................................................................................. 34, 35

*In re: Hyundai and Kia Engine Litig.*,
    No. 8:17-cv-00838 (C.D. Cal.) ......................................................................... *passim*

*Kakani v. Oracle Corp.*,
    No. C 06-06493 WHA, 2007 WL 1793774 (N.D. Cal. June 19, 2007) ................. 23

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998) ......................................................................... 26, 29

*Marbury et al. v. Hyundai Motor America et al.*,
    No. 8:21-cv-00379-JLS-JDE (C.D. Cal.) ....................................................... 4, 5, 19

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ................................................................................. 29

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ............................................................................. 26

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.*,
   688 F.2d 615 (9th Cir. 1982) .......................................................................... 24, 28

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) .................................................................. 31

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
   148 F.3d 283 (3d Cir. 1998) .................................................................................... 21

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
   163 F.R.D. 200 (S.D.N.Y. 1995) ............................................................................ 31

*Rannis v. Recchia*,
   380 F. App'x 646 (9th Cir. 2010) ........................................................................... 37

*Ruch v. AM Retail Grp., Inc.*,
   No. 14-CV-05352-MEJ, 2016 WL 1161453 (N.D. Cal. Mar. 24, 2016) ................. 23

*Saenz v. Lowe's Home Centers, LLC*,
   No. 2:17-cv-08758-ODW-PLA, 2019 WL 1382968 (C.D. Cal. Mar.
   27, 2019) ................................................................................................................. 32

*Schaffer v. Litton Loan Servicing, LP*,
   No. 05-cv-07673-MMM, 2012 WL 10274679 (C.D. Cal. Nov. 13,
   2012) ....................................................................................................................... 38

*Sebastian v. Sprint/United Mgmt. Co.*,
   No. 8:18-cv-00757-JLS-KES, 2019 WL 13037010 (C.D. Cal. Dec. 5,
   2019) ....................................................................................................................... 23

*Short et al. v. Hyundai Motor Company, et al.*,
   No. 2:19-cv-00318-JLR (W.D. Wash.) .......................................................... *passim*

*Smith v. Am. Greetings Corp.*,
   No. 14-CV-02577-JST, 2016 WL 362395 (N.D. Cal. Jan. 29, 2016) .................... 23

*Snider et al. v. Hyundai Motor America, et al.*,
   No. 2:19-cv-00371/3:19-cv-05193-JLR (W.D. Wash.) ........................................... 2

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ........................................................................... 18, 23

*Sullivan v. Am. Express Publ'g Corp.*,
  No. SACV 09-142-JST, 2011 WL 2600702 (C.D. Cal. June 30, 2011) ................. 36

*Thornhill et al. v. Hyundai Motor Company et al.*,
  No. 8:21-cv-00481-JLS-JDE (C.D. Cal.) ........................................................ 4, 5, 19

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ................................................................................................ 32

*West v. Circle K Stores, Inc.*,
  No. CIV. S-04-0438 WBS GGH, 2006 WL 1652598 (E.D. Cal. June
  13, 2006) .................................................................................................................. 23

*Wolin v. Jaguar Land Rover N. Am., LLC*,
  617 F.3d 1168 (9th Cir. 2010) ............................................................................... 33

## RULES AND STATUTES

28 U.S.C. § 1715 ........................................................................................... 17, 38

Fed. R. Civ. P. 23(a) .......................................................................................... 32

Fed. R. Civ. P. 23(e)(1) ....................................................................................... 36

Fed. R. Civ. P. 23(c)(2)(B) .......................................................................... 36, 37

## OTHER AUTHORITIES

A. Conte & H.B. Newberg, Newberg On Class Actions § 11:41 ................................ 19

A. Conte & H.B. Newberg, Newberg On Class Actions § 11:50 ................................ 26

1

## NOTICE OF MOTION

2      PLEASE TAKE NOTICE that on November 18, 2022, at 10:30 a.m., before the

3  Honorable Josephine L. Staton in Courtroom 8A, 8th Floor, of the United States

4  District Court for the Central District of California, located at First Street U.S.

5  Courthouse, 350 West 1st St., Los Angeles, CA 90012, Plaintiffs Leslie Flaherty,

6  Joanna Caballero, Sharon Moon, Stanton Vignes, Kesha Franklin Marbury, Christina

7  Roos, James Carpenter, James J. Martino, James H. Palmer, John H. Caro, Ashley

8  Gagas, Nicole Thornhill, Janet O'Brien, Robert Buettner, Linda Short, James Twigger,

9  Jennifer and Anthony DiPardo, Seane Ronfeldt, Gabrielle Alexander, Tavish Carduff,

10  Brian Frazier, Chad Perry, William Pressley, and Jeannett Smith will and hereby do

11  move for a Court order preliminarily approving the proposed Settlement; certifying the

12  proposed Settlement Class under Rule 23(b)(3); appointing Plaintiffs as Class

13  representatives; appointing the undersigned attorneys Steve W. Berman and Matthew

14  D. Schelkopf as Co-Lead Counsel and Gretchen Freeman Cappio as Settlement

15  Counsel; ordering dissemination of the Class Notice under the notice plan set forth in

16  the Settlement Agreement; and setting a schedule for final settlement approval.

17      Plaintiffs' unopposed motion is based on this notice; the accompanying

18  Memorandum of Law; the Declarations of Steve W. Berman, Matthew D. Schelkopf,

19  and Gretchen Freeman Cappio, and all attachments thereto (including the Settlement

20  Agreement and its exhibits); the Proposed Order Granting Preliminary Approval of

21  Class Action Settlement; and all other papers filed and proceedings had in this Action.

22      This motion is made following the conference of counsel under Local Rule 7-3

23  which took place on September 26, 2022.

24

25

26

27

28

DATED: September 26, 2022

Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

*/s/ Steve W. Berman*

Steve W. Berman (*pro hac vice*)
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Matthew D. Schelkopf (*pro hac vice*)
Joseph B. Kenney
SAUDER SCHELKOPF LLC
1109 Lancaster Avenue
Berwyn, PA 19312
Telephone: (610) 200-0581
Facsimile: (610) 421-1326
mds@sauderschelkopf.com
jbk@sauderschelkopf.com

*Interim Co-Lead Counsel*

Gretchen Freeman Cappio
Ryan McDevitt
Maxwell Goins
Adele Daniel
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Telephone: (206) 623-1900
Facsimile: (206) 623-3384
gcappio@kellerrohrback.com
rmcdevitt@kellerrohrback.com
mgoins@kellerrohrback.com
adaniel@kellerrohrback.com

*Interim Settlement Counsel*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Bonner C. Walsh (*pro hac vice*)
WALSH PLLC
1561 Long Haul Road
Grangeville, ID 83530
Telephone: (541) 359-2827
Facsimile: (866) 503-8206
bonner@walshpllc.com

Adam Gonnelli (*pro hac vice*)
LAW OFFICE OF ADAM R. GONNELLI, L.L.C.
707 Alexander Road
Bldg. 2, Suite 208
Princeton, NJ, 08540
Telephone: (917) 541-7110
Facsimile: (315) 446-7521
adam@arglawoffice.com

Rachel E. Fitzpatrick (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
11 W. Jefferson Street, Suite 1000
Phoenix, AZ 85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
rachelf@hbsslaw.com

## I.   INTRODUCTION

This proposed Settlement[1] derives from a similar alleged engine defect as the one in *In re: Hyundai and Kia Engine Litig.*, No. 8:17-cv-00838 (C.D. Cal.) ("*Engine I*"), a class action also litigated by Co-Lead Counsel and presided over by Judge Staton to which final approval was granted in May 2021. The engine defect made the vehicles susceptible to premature, catastrophic engine failure, as well as the risk of engine fire during operation.

In *Engine I*, Hyundai and Kia agreed to settle class claims involving vehicles equipped with a Theta II gasoline direct injection engine, while continuing to oppose Plaintiffs' allegations that other vehicles with different engines contained the defect. But Plaintiffs' counsel continued to receive complaints from consumers about engine failures and fires in other engines, and thus continued to investigate and pursue these claims even while settling *Engine I*. This litigation and settlement is the product of those continued efforts.

The proposed Class Vehicles here encompass 2,119,358 Hyundai and Kia vehicles equipped with Gamma and Nu gasoline direct injection ("GDI") engines, as well as Theta II multipoint fuel injection ("MPI") engines.[2] Under the proposed Settlement, Class members are eligible to receive a range of benefits, including a robust warranty extension, reimbursement and compensation for certain out-of-pocket repairs, costs, and incidentals, goodwill payments, a rebate, and compensation for Class Vehicles destroyed by fire or sold or traded-in because of a failed engine. Because the proposed Settlement provides substantial benefits to Class members while avoiding the risks and costs of protracted litigation, Plaintiffs respectfully request the

---

[1] The capitalized terms used herein are defined in Section I of the Settlement Agreement, which is attached as Exhibit 1 to the Declaration of Steve W. Berman ("Berman Decl.").

[2] *See* Section II.D., *infra*, for the list of proposed Class Vehicles.

1    Court grant their unopposed Motion for Preliminary Approval of the Class Action
2    Settlement so that notice may be disseminated to the Settlement Class.

3                         **II.    FACTUAL BACKGROUND**

4    **A.    Plaintiffs' Allegations and Pre-Litigation Investigation**

5           This Settlement is a result of the extensive efforts of both Co-Lead Counsel and
6    Settlement Counsel and their independent pre-suit investigations concerning the
7    existence of the engine defect in Theta II MPI, Gamma GDI, and Nu GDI engines.
8    The pre-suit investigation included speaking with putative Class members and
9    reviewing their documents, consulting automotive experts regarding the design and
10   performance of Hyundai and Kia's engines, reviewing relevant regulatory documents,
11   and investigating potential legal claims applicable to the putative Class.

12   **B.    History of the Litigation**

13          On December 14, 2018, Plaintiff Flaherty and other named plaintiffs who
14   owned or leased Hyundai and Kia vehicles equipped with Gamma GDI and Theta II
15   GDI engines filed the proposed nationwide class action *Flaherty et al. v. Hyundai*
16   *Motor Company, et al.*, No. 8:18-cv-02223-JLS-JDE (C.D. Cal.). *Flaherty* was
17   amended twice, on January 10, 2019, and May 1, 2019, to add Plaintiffs Carpenter,
18   Caballero, Moon, and Vignes, who owned or leased Hyundai and Kia vehicles
19   equipped with Gamma and Nu GDI engines, along with other plaintiffs not subject to
20   this proposed Settlement. The claims of the *Flaherty* plaintiffs with Theta II GDI
21   engines were settled as part of *Engine I*, and the remaining litigation was stayed
22   pending that settlement, including claims concerning the Gamma and Nu GDI engines.

23          On March 4, 2019, Plaintiff Linda Short filed the proposed nationwide class
24   action *Short et al. v. Hyundai Motor Company, et al.,* No. 2:19-cv-00318-JLR (W.D.
25   Wash.), and following consolidation with a related action (*Snider et al. v. Hyundai*
26   *Motor America, et al.,* No. 2:19-cv-00371/3:19-cv-05193-JLR (W.D. Wash.)),
27   Plaintiffs Short, Twigger, Jennifer and Anthony DiPardo, Seane Ronfeldt, Gabrielle

28

Alexander, Tavish Carduff, Brian Frazier, Chad Perry, William Pressley, and Jeannett Smith filed a consolidated amended complaint in *Short* on May 4, 2020. These actions also included allegations that the Gamma and Nu GDI and Theta II MPI engines suffered from the same defect as the Theta II GDI engines. Defendants vigorously opposed these allegations.

Between 2019 and 2021, the *Short* case was litigated extensively. In September 2019 and June 2020, Defendants filed two successive rounds of motions to dismiss Plaintiffs' allegations concerning Gamma GDI, Nu GDI, and Theta II MPI engines. Following these two rounds of extensive briefing on Defendants' motions, the majority of Plaintiffs' claims survived. Plaintiffs thereafter conducted significant discovery and expert work to establish the nature of the engine defect and to prove their claims concerning Defendants' conduct. Throughout late 2020 and much of 2021, the parties engaged in very active discovery and work with experts. Between rolling productions of documents and data, the parties engaged in iterative negotiations concerning the scope of discovery, search terms to facilitate locating and producing data and documents, and protocols for the production and treatment of electronically stored information. These negotiations were hard-fought but collegial, as Defendants fought to limit discovery while Plaintiffs sought the discovery they would need to prove their claims, particularly as to the Gamma and Nu GDI equipped vehicles owned by all but one of the Plaintiffs.

In the interest of litigating the case as efficiently as possible, Plaintiffs first prioritized technical and warranty documents and data in order to establish a common defect for class certification purposes. These efforts culminated in Defendants' production of thousands of pages of technical and engineering documents and voluminous warranty data. Plaintiffs' counsel and their experts reviewed and analyzed this information in considerable detail in order to prove their claims, assess the defect and potential remedies, and support class certification. Between April and June 2021,

the parties disclosed lengthy and detailed technical and economic expert reports in support of and in opposition to class certification. In preparation for further discovery and expert work on the merits, Plaintiffs worked with a consultant to completely tear down and analyze a Gamma GDI engine. On July 22, 2021, the parties filed a stipulation in which they informed the court that they were engaged in discussions regarding potential resolution of the action and set a schedule for class certification briefing and depositions of the experts. Shortly thereafter, and as a result of discussions between Plaintiffs' counsel in all of the pending actions and defense counsel, the parties agreed to stay the *Short* litigation to facilitate classwide settlement negotiations (see Section C *infra*). Nonetheless, the parties engaged in vigorous litigation right up to the start of global negotiations. Indeed, Defendants took the depositions of four of *Short* Plaintiffs just before negotiations commenced.

On February 26, 2021, Plaintiffs Marbury, Roos, Palmer, Martino, Caro, and Gagas filed the proposed nationwide class action *Marbury et al. v. Hyundai Motor America et al.*, No. 8:21-cv-00379-JLS-JDE (C.D. Cal.). On March 12, 2021, Plaintiffs Thornhill and O'Brien filed the proposed nationwide class action *Thornhill et al. v. Hyundai Motor Company et al.*, No. 8:21-cv-00481-JLS-JDE (C.D. Cal.). On June 15, 2021, Plaintiff Buettner filed the proposed nationwide class action *Buettner v. Hyundai Motor America, Inc. et al.*, No. 8:21-cv-01057-JLS-JDE (C.D. Cal.). Each of these actions alleged defects in Hyundai and Kia vehicles with Theta II MPI engines.

On September 8, 2021, the Court ordered the *Flaherty*, *Marbury*, *Thornhill*, and *Buettner* cases consolidated as *In re: Hyundai and Kia Engine Litigation II*, No. 8:18-cv-02223-JLS-JDE (C.D. Cal.) ("*Engine II*") (Doc. 55). On November 8, 2021, Plaintiffs in *Engine II* filed a consolidated complaint (Doc. 57). On August 25, 2022, the *Short* case was consolidated with *Engine II* (Doc. 71), and on September 13, 2022, Plaintiffs filed an amended consolidated complaint (Doc. 72). On May 31, 2022, and September 22, 2022, respectively, the Court related and then consolidated *Chieco, et*

*al. v. Kia Motors America, Inc., et al.*, No. 8:21-cv-00854-JLS-JDE (C.D. Cal.), with *Engine II*.[3] (*Chieco* Doc. 98; *Engine II*, Doc. 77.)

**C.      Settlement Efforts**

While litigating *Engine I*, the parties agreed to stay the remaining *Flaherty* claims alleging that Gamma and Nu GDI engines also contained the engine defect. The parties strongly disagreed on which vehicle engines were afflicted.

After the settlement in *Engine I* received final approval in May 2021, the remaining *Flaherty* plaintiffs reinitiated this litigation with Defendants. Around the same time, and based on their independent investigations into different engine types, Co-Lead Counsel and Settlement Counsel filed the related proposed class actions *Marbury*, *Thornhill*, and *Buettner*, which expanded the scope of Hyundai and Kia vehicles alleged to suffer from the same engine defect to include Theta II MPI engines. Co-Lead Counsel and Settlement Counsel agreed to work together to cooperatively litigate the pending cases, which led the cases to be consolidated as *Engine II*, and the parties continued to litigate and discuss potential resolution jointly with Defendants.

From December 2020 to February 2022, Class Counsel and Settlement Counsel met and conferred with Defendants' counsel on multiple occasions regarding the *Engine II* allegations, HMA and KA's defenses, and potential resolution. These meetings culminated in a mediation session before Honorable Edward Infante (Ret.) of JAMS on February 22, 2022. At mediation, the parties reached agreement on the overall settlement structure but not all the specific details, and so we continued to negotiate regularly through August 2022, when the parties ultimately agreed to the proposed Settlement.

---

[3] Since *Chieco*'s relation and consolidation to *Engine II*, counsel for the *Chieco* Plaintiffs have not communicated with Class Counsel and Settlement Counsel about litigating or resolving class-wide claims for any overlapping proposed Class Vehicles.

The parties have already begun confirmatory discovery. On June 17, 2022, Plaintiffs served written discovery on Defendants. Defendants responded to Plaintiffs' requests on August 19, 2022, and began producing documents the week of August 22, 2022. The parties also negotiated a protective order, which Magistrate Judge Early entered on September 14, 2022. (Doc. 75.) Class Counsel and Settlement Counsel are reviewing Defendants' document production, and they will take the depositions of Defendants' corporate designees in the coming months.

## D.     The Proposed Settlement Terms

If approved, the Settlement will provide substantial benefits to the following Class:

> All owners and lessees of a Class Vehicle who purchased or leased the Class Vehicle in the United States, including those that were purchased while the owner was abroad on active U.S. military duty, but excluding those purchased in U.S. territories or abroad.[4]

---

[4] Excluded from the claims of the Class (and not released by this Settlement) are all claims for death, personal injury, property damage (other than damage to a Class Vehicle that is the subject of a Qualifying Repair), and subrogation. Also excluded from the Class are (a) HMA, HMC, KC and KA; (b) any affiliate, parent, or subsidiary of HMA, HMC, KC or KA; (c) any entity in which HMA, HMC, KC or KA has a controlling interest; (d) any officer, director, or employee of HMA, HMC, KC or KA; (e) any successor or assign of HMA, HMC, KC or KA; (f) any judge to whom this Action is assigned, the judge's spouse or partner, and all persons within the third degree of relationship to either of them, as well as the spouses of such persons; (g) individuals and/or entities who validly and timely opt-out of the settlement; (h) consumers or businesses that have purchased Class Vehicles previously deemed a total loss, salvaged, branded, or obtained from a junkyard (subject to verification through Carfax or other means); (i) vehicle owners or lessees who rent or previously rented the Class Vehicle for use by third-party drivers, including leasing companies; (j) individuals and commercial entities engaged in the business of buying, selling, or dealing in motor vehicles, including new and used motor vehicle dealerships, franchisees, vehicle brokers, or automobile auction houses and individuals employed by or acting on behalf of such businesses; (k) banks, credit unions or other lienholders; and (l) current or former owners of a Class Vehicles who previously released their claims in an individual settlement with HMA, HMC, KC or KA with respect to the issues raised the Action.

The Class Vehicles include the following vehicle models that were originally equipped or replaced with the respective corresponding genuine engine type within Original Equipment Manufacturer ("OEM") specifications.:

| MODEL YEAR ("MY") | MODEL |
|---|---|
| 2010–2012 | Hyundai Santa Fe vehicles equipped with a Theta II 2.4-liter MPI engine |
| 2011–2015 | Hyundai Sonata Hybrid (HEV) vehicles equipped with a Theta II 2.4-liter MPI Hybrid engine |
| 2016-2019 | Hyundai Sonata Hybrid/Plug-In (HEV/PHEV) vehicles equipped with a Nu 2.0 GDI Hybrid engine |
| 2010–2013 | Hyundai Tucson vehicles equipped with a Theta II 2.4-liter MPI engine |
| 2014–2021 | Hyundai Tucson vehicles equipped with a Nu 2.0 GDI engine |
| 2014 | Hyundai Elantra Coupe vehicles equipped with a Nu 2.0 GDI engine |
| 2014–2016 | Hyundai Elantra vehicles equipped with a Nu 2.0 GDI engine |
| 2014–2020 | Hyundai Elantra GT vehicles equipped with a Nu 2.0 GDI engine |
| 2012–2017 | Hyundai Veloster vehicles equipped with a Gamma 1.6-liter GDI engine |
| 2010–2013 | Kia Forte vehicles equipped with a Theta II 2.4-liter MPI engine |
| 2010–2013 | Kia Forte Koup vehicles equipped with a Theta II 2.4-liter MPI engine |
| 2014–2018 | Kia Forte vehicles equipped with a Nu 2.0 GDI engine |
| 2014–2016 | Kia Forte Koup vehicles equipped with a Nu 2.0 GDI engine |
| 2011–2016 | Kia Optima Hybrid (HEV) vehicles equipped with a Theta II 2.4-liter MPI Hybrid engine |
| 2017–2020 | Kia Optima Hybrid/Plug-In (HEV/PHEV) vehicles equipped with a Nu 2.0 GDI Hybrid engine |

| Model Year ("MY") | Model |
|---|---|
| 2011–2013 | Kia Sorento vehicles equipped with a Theta II 2.4-liter MPI engine |
| 2012–2016 | Kia Soul vehicles equipped with a Gamma 1.6-liter GDI engine |
| 2014–2019 | Kia Soul vehicles equipped with a Nu 2.0 GDI engine |
| 2011–2013 | Kia Sportage vehicles equipped with a Theta II 2.4-liter MPI engine. |

### 1.   15-Year/150,000-Mile Extended Warranty Coverage

All Class Vehicles that have completed the Knock Sensor Detection System ("KSDS") software update will receive a 15-year or 150,000-mile warranty ("Extended Warranty") covering all costs associated with inspections and repairs, including replacement parts, labor, diagnoses, and mechanical or cosmetic damage caused by connecting rod bearing failure. Settlement Agreement ("SA") § II(A). Further, for ninety (90) days immediately following the Final Approval Date, all Class Vehicles within the 15-year or 150,000-mile warranty period that have not received a recall inspection[5] will be eligible to schedule a free inspection and, if necessary, obtain repairs under the Extended Warranty regardless of any transfer in ownership or lease or any prior repairs.

Class Vehicles may only be denied Extended Warranty coverage for two reasons: Exceptional Neglect or KSDS Installation Neglect. Exceptional Neglect refers to when (i) Defendants or their dealers suspect the engine evidences a lack of maintenance or care (*i.e.*, outside of factory maintenance and care specifications) based on an inspection of the physical condition of the engine that shows unacceptable lacquering, varnish, or sludge (unless such lack of maintenance was due to a Qualifying Failure or Qualifying Fire) and (ii) service records demonstrate

---

[5] Previous recall campaigns are discussed *infra*.

unacceptable gaps in regular oil changes. Defendants will bear the diagnostic costs associated with establishing Exceptional Neglect. SA § I.J. KSDS Installation Neglect for Extended Warranty coverage purposes refers to the failure of a Class member to have the KSDS installed before experiencing an otherwise covered engine failure.[6] SA § I.Q.

In addition, Defendants will provide a comparable class of loaner vehicle to Class members during any repairs under the Extended Warranty. If no loaner vehicle is reasonably available through Defendants' authorized dealerships, the Class member is eligible to receive reimbursement of up to $80 per day for reasonable rental car expenses incurred until the Qualifying Repairs are completed.

As described more in Section III.A.4.iv. *infra*, the Extended Warranty is a robust but appropriate warranty length according to the National Highway Transportation Safety Administration ("NHTSA").

### 2. Recall and Product Improvements

In December 2020, in the wake of continuing litigation and discussions among the parties in both *Flaherty* and *Short*, Hyundai recalled certain model year 2011-2013 and 2016 Sonata Hybrid; 2012 Santa Fe; and 2015-2016 Veloster vehicles under NHTSA Recall No. 20V746. In September 2021, Hyundai recalled certain model year 2017 Tucson and 2017 Sonata Hybrid vehicles under NHTSA Recall No. 21V727.

In December 2020, Kia recalled certain model year 2012-2013 Sorento; 2012-2015 Forte and Forte Koup; 2011-2013 Optima Hybrid; 2014-2015 Soul; and 2012 Sportage vehicles under NHTSA Recall No. 20V750. In October 2021, Kia recalled certain model year 2017-2018 Optima Hybrid and Optima Hybrid Plug-In vehicles under NHTSA Recall No. 21V844.

---

[6] Recalled Class Vehicles are not subject to the KSDS Installation Neglect term. *See* SA § I.Q.

As of October 2021, Defendants represent that they had each initiated product improvement campaigns in which knock sensor technology could be added through a free software update to the Class Vehicles.

As part of the proposed Settlement, Defendants acknowledge that these recalls and product improvements represent part of the consideration to the Class. SA § II.B.

### 3.      Repair Reimbursements

Class members who obtained a Qualifying Repair for a Class Vehicle within 15 years from the date of original retail delivery or first use or 150,000 miles and before receiving notice of the Settlement will be eligible for full reimbursement by Defendants.[7] SA § II.C. This reimbursement is available to Class members regardless of whether the Class member was an original owner, lessee, or subsequent purchaser, whether the repair was made at an authorized Hyundai or Kia dealership or third-party repair shop, and whether the repair was completed before or after the recall campaigns identified in the preceding section. Repair reimbursements will be provided under the proposed Settlement even if Defendants initially denied warranty coverage for alleged failure to properly service or maintain the Class Vehicle. Class members who presented their Class Vehicle to an authorized dealership and were denied in-warranty repair before receiving notice of this Settlement and then obtained their repair elsewhere are eligible for an additional $150 goodwill payment.

Claimants must submit a completed Claim Form within ninety (90) days of the Final Approval Order along with Proof of Ownership, Proof of Qualifying Repair reflecting a repair date on or before the Notice Date, and Proof of Payment for the Qualifying Repair.[8] For reimbursement claims regarding repairs performed at authorized Hyundai or Kia dealerships, Defendants shall take all reasonably available steps to acquire the information reasonably necessary to approve the claim (i.e., the

---

[7] Class Vehicles may be denied repair reimbursement for Exceptional Neglect.
[8] Claimants previously reimbursed in full or in part for a repair expense are not entitled to reimbursement for any monies already received.

date, nature, and cost charged for the repair) from their authorized dealerships that are still in operation. Defendants represent that they should be able to acquire such information in many instances, except for Proof of Payment by the Claimant. Such Claimants will likely only need to substantiate Proof of Payment for the repair (e.g., repair receipt, credit card receipt or statement, or any other receipt or statement showing a payment to the authorized dealership), as well as Proof of Ownership at the time of the repair (e.g., title, registration, or insurance documentation). If the Claimant does not have a repair receipt for a payment made in cash to an authorized Hyundai or Kia dealership, they may attest under the penalty of perjury that they do not have a receipt. Claimants who received repairs from a third-party shop must obtain and submit the required documentation to support their claim.

### 4.    Repair-Related Transportation and Towing Reimbursements

Class members may also seek reimbursement for (1) all towing or other out-of-pocket expenses reasonably related to obtaining a Qualifying Repair, and (2) up to $80 per day for rental car, ride-sharing, or other transportation expenses if a loaner vehicle was not originally provided by Defendants.[9] SA § II.D. Reimbursement for towing, rental car, ride-share, and other transportation services is limited to no more than 15 days before delivery of the vehicle to the dealership or repair shop for the Qualifying Repair, and up to 3 business days after the Claimant was notified their vehicle was ready to be picked up. To obtain these reimbursements, the Qualifying Repair must occur within 15 years from the date of original retail delivery or first use or 150,000 miles, whichever comes sooner. Lost wages or other consequential damages are not reimbursable.

---

[9] Class members may be denied reimbursement for Exceptional Neglect or KSDS Installation Neglect. KSDS Installation Neglect for purposes of this settlement benefit means the failure of a Class member to have the KSDS installed within 150 days of the Notice Date. *See* SA § I.Q.

Claimants must submit a completed Claim Form within ninety (90) days of the Final Approval Order (for a Qualifying Repair occurring on or before the Notice Date) or the date the expenses were incurred or paid (for a Qualifying Repair occurring after the Notice Date), along with Proof of Ownership, Proof of Qualifying Repair, and Proof of Payment.[10]

### 5.      Inconvenience Due to Repair Delays

Class members inconvenienced by repair delays exceeding sixty (60) days from an authorized Hyundai or Kia dealership may seek a goodwill payment based on the total cumulative delay length.[11] SA § II.E. For repair delays lasting between sixty-one (61) and one hundred and eighty (180) days, Class members are eligible for a $75 goodwill payment. For repair delays lasting one hundred and eighty-one (181) days or longer, Class members are eligible for a $100 goodwill payment plus an additional $100 payment for each 30-day period of delay thereafter. To obtain these inconvenience payments, the Qualifying Repair must occur within 15 years from the date of original retail delivery or first use or 150,000 miles, whichever comes sooner. Claimants may elect to receive this compensation in the form a dealership service card valued at 150% of the amount that would otherwise be paid, which can only be used at Defendants' authorized dealerships for parts, service, or merchandise.

Claimants must submit a completed Claim Form within ninety (90) days of the Final Approval Order (for a Qualifying Repair occurring on or before the Notice Date) or the date the repair was completed (for a Qualifying Repair occurring after the Notice Date). In the Claim Form, the Claimants must attest they felt inconvenienced by the delay and provide the number of days the repair took for completion. The

---

[10] Class members previously reimbursed in full or in part for repair-related expenses are not entitled to reimbursement for any monies already received.

[11] Class members may be denied reimbursement for Exceptional Neglect or KSDS Installation Neglect. KSDS Installation Neglect for purposes of this settlement benefit means the failure of a Class member to have the KSDS installed within 150 days of the Notice Date. *See* SA § I.Q.

Claimants must also submit Proof of Ownership and either Proof of Qualifying Repair or sufficient information for HMA or KA to ascertain the delay information from the repairing dealership.[12] Defendants shall take all reasonably available steps to acquire the information reasonably necessary to approve the claim (i.e., the date, nature, and cost charged for the repair) from their authorized dealerships, and Defendants represent that they should be able to acquire such information in many instances.

### 6.    Incidentals for Qualifying Engine Failure or Engine Fire

Class members who experience a Qualifying Failure or Qualifying Fire while the Class member is far from home may seek additional reimbursement for other reasonably related transportation, lodging, and meal expenses.[13] SA § II.H. Claimants will receive reimbursement of full towing expenses. In addition, where the Qualifying Failure or Qualifying Fire occurred within one hundred and fifty (150) miles of the Class member's nearest residence, they are eligible for reimbursement of transportation expenses incurred on the date of the Qualifying Failure or Qualifying Fire up to $125. For a Qualifying Failure or Qualifying Fire occurring more than one hundred and fifty (150) miles from the Class member's nearest residence at the time, they are eligible for reimbursement of transportation, lodging, and reasonable meal expenses incurred for a maximum of three days following the Qualifying Failure or Qualifying Fire of up to $300 for the first day, $200 for the second day, and $100 for the third day. To obtain these reimbursements, the Qualifying Failure or Qualifying Fire must occur within 15 years from the date of original retail delivery or first use or

---

[12] Claimants that previously received a goodwill payment from HMA or KA are only eligible for the calculated amount of this inconvenience payment less any amounts previously paid.

[13] Claimants may be denied reimbursement for Exceptional Neglect or KSDS Installation Neglect. KSDS Installation Neglect for purposes of this settlement benefit means the failure of a Class member to have the KSDS installed within 150 days of the Notice Date. *See* SA § I.Q.

150,000 miles, whichever comes sooner. Lost wages or other consequential damages are not reimbursable.

Claimants must submit a completed Claim Form within ninety (90) days of the Final Approval Order (for a Qualifying Failure or Qualifying Fire occurring on or before the Notice Date) or the date the repair was completed (for a Qualifying Failure or Qualifying Fire occurring after the Notice Date), along with Proof of Ownership, Proof of Qualifying Failure or Qualifying Fire, Proof of Payment for the claimed expenses, and documentation evidencing the Class member's nearest residence.[14]

### 7.     Lost Value for Sold or Traded-In Vehicles

Class members that (1) experienced a Qualifying Failure or Qualifying Fire within 15 years from the date of original retail delivery or first use or 150,000 miles, whichever comes sooner, and before receiving notice of the Settlement, and (2) sold or traded-in the Class Vehicle before the Notice Date without first procuring the recommended repair will be entitled to a $150 payment plus reimbursement of the baseline Black Book value (i.e., wholesale used vehicle value) of the sold or traded-in Class Vehicle at the time of loss minus the actual amount received from the sale or trade-in.[15] SA § II.G. Claimants must submit a completed Claim Form within ninety (90) days of the Final Approval Order, along with Proof of Ownership, Proof of Qualifying Failure or Qualifying Fire, and proof of sale or trade-in and the value received.[16]

### 8.     Vehicle Destroyed by Engine Fire

Class members with Class Vehicles destroyed by a Qualifying Fire within 15 years from the date of original retail delivery or first use or 150,000 miles, whichever

---

[14] Claimants previously reimbursed in full or in part for such expenses are not entitled to reimbursement for any monies already received.

[15] Claimants may be denied reimbursement for Exceptional Neglect.

[16] Claimants previously paid in full or in part for such loss are not entitled to reimbursement for any monies already received.

comes sooner, will be entitled to a $150 goodwill payment plus reimbursement of the maximum Black Book value (i.e., private party/very good) of the Class Vehicle at the time of loss minus any value received for the vehicle.[17] SA § II.H. Claimants must submit a completed Claim Form within ninety (90) days of the Final Approval Order (for a Qualifying Fire occurring on or before the Notice Date) or within ninety (90) days after the Qualifying Fire occurred (for a Qualifying Fire occurring after the Notice Date), along with Proof of Ownership and Proof of Qualifying Fire.[18]

### 9.    Rebate Program

Class members who (1) experience a Qualifying Failure or Qualifying Fire, (2) lose faith in their Class Vehicle because of the Settlement, (3) sell their Class Vehicle in an arm's length sale or trade, and (4) purchase a replacement Hyundai (for Hyundai Class members) or Kia (for Kia Class members) vehicle are eligible for a rebate.[19] The rebate will be calculated as the difference between the value the Claimant received at trade-in or sale and the maximum Black Book value (*i.e.*, private party/very good) of the Class Vehicle at the time of the relevant KSDS campaign launch for their Class Vehicle, irrespective of any underlying vehicle loans, up to the following amounts: (a) $2,500 for model year 2010-2012 Class Vehicles; (b) $2,000 for model year 2013-2014 Class Vehicles; (c) $1,500 for model year 2015-2016 Class Vehicles; and (d) $1,000 for model year 2017-2021 model year Class Vehicles. To obtain this rebate,

---

[17] Claimants may be denied reimbursement for Exceptional Neglect or KSDS Installation Neglect. KSDS Installation Neglect for purposes of this settlement benefit means the failure of a Class member to have the KSDS installed within 150 days of the Notice Date. *See* SA § I.Q.

[18] Claimants previously paid in full or in part for such loss are not entitled to reimbursement for any monies already received.

[19] Claimants may be denied reimbursement for Exceptional Neglect or KSDS Installation Neglect. KSDS Installation Neglect for purposes of this settlement benefit means the failure of a Class member to have the KSDS installed within 150 days of the Notice Date. *See* SA § I.Q.

the Qualifying Failure or Qualifying Fire must occur within 15 years from the date of original retail delivery or first use or 150,000 miles, whichever comes sooner.

Claimants must submit a completed Claim Form within ninety (90) days of the Final Approval Order (for a Qualifying Failure or Qualifying Fire occurring on or before the Notice Date) or within ninety (90) days of the Qualify Failure or Qualifying Fire (for a Qualifying Failure or Qualifying Fire occurring after the Notice Date). In the Claim Form, the Claimant must attest they lost faith in the Class Vehicle because of this Settlement. The Claimant must also submit Proof of Ownership, Proof of Qualifying Failure or Qualifying Fire, proof of sale or trade-in and the value received, and proof of purchase of a replacement Hyundai or Kia vehicle.

**E.     Notice to the Settlement Class**

The Settlement Agreement contains a comprehensive notice plan, to be paid for and administered by Defendants. SA § IV. Class members will receive the Long Form Notice by direct U.S. mail. Defendants will identify Class members through Defendants' records and verify and update the information via R.L. Polk (a third party that maintains and collects the names and addresses of automobile owners) or a similar third-party entity, and will send the notice to Class members by first-class mail. Defendants will conduct an address search through the United States Postal Service's National Change of Address database to update the address information for Class Vehicle owners before mailing notice. For each notice that is returned as undeliverable, Defendants will use their best efforts to conduct an advanced address search using their customer database to obtain a deliverable address.

In addition, a dedicated website will be created that will include the Long Form Notice, Pamphlet, Claim Form, Settlement Agreement, and other relevant documents. The settlement website will also include the ability for visitors to enter their VINs without completing a Claim Form to determine if their vehicles are Class Vehicles. Defendants will also email a hyperlink to the settlement website and electronic

versions of the Long Form Notice and Claim Form to Class members for which Defendants maintain an email address. Class Counsel and Settlement Counsel will also provide a link to the settlement website on their respective firm websites.

Notice will be sent within one hundred twenty (120) days after the Court's entry of an order preliminarily approving the proposed Settlement. Co-Lead Counsel and Settlement Counsel will also receive reports from Defendants regarding the details of the notices sent, including the number of notices sent and the total number of notices returned as undeliverable. Defendants will also provide notice of the settlement to the appropriate state and federal officials, as required by the Class Action Fairness Act, 28 U.S.C. § 1715. Defendants will file a certificate of service on the docket after CAFA notice has been completed.

Within one hundred twenty (120) days of the Final Approval Date, Defendants will also provide a copy of their Pamphlet by direct U.S. mail to all reasonably identifiable current owners or lessees of Class Vehicles. The Pamphlet is a separate, color-printed document that is designed to be kept with the owner's manual of the Class Vehicles. Defendants will also provide an electronic version of the Pamphlet by email to all current owners or lessees of Class Vehicles for whom Defendants maintain an email address.

The Settlement also accounts for any Class members who wish to object or exclude themselves. Any such request must be sent to Defendants and postmarked no more than forty-five (45) days after the Notice Date. The Settlement requires that any objection or opt-out contain sufficient information to reasonably demonstrate that the submission is made by a person who has standing as a Class member.

## F. The Release

In exchange for the foregoing, and subject to approval by the Court, Plaintiffs and Class members who do not timely exclude themselves will be bound by a release applicable to all claims arising out of or relating to the claims that were asserted in the

complaint (the "Released Claims"). SA § VI. The Released Claims will extend to Defendants and their related entities and persons. The Released Claims will not, however, apply to any claims for death, personal injury, property damage (other than damage to a Class Vehicle), or subrogation.

## III.   ARGUMENT

### A.   The proposed Settlement warrants preliminary approval.

The proposed Settlement should be preliminarily approved if, taken as a whole and examined for overall fairness, the Court finds it "fundamentally fair, adequate, and reasonable." *Staton v. Boeing Co*., 327 F.3d 938, 952 (9th Cir. 2003) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). Preliminary approval is appropriate where "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls with the range of possible approval…" *Collins v. Cargill Meat Sols. Corp.*, 274 F.R.D. 294, 301-02 (E.D. Cal. 2011) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)). The Ninth Circuit has declared that a strong judicial policy favors settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

### 1.   The proposed Settlement is the product of serious, informed, arm's-length negotiations by experienced counsel.

First, the proposed Settlement is not the result of collusion among the parties. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (vacating and remanding a settlement approval order because the district court had not considered possible collusion); *Churchill Vill.*, *L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (considering and rejecting objectors' argument that settlement was product of collusion where allegations in complaint preceded settlement by one year and no other evidence of collusion). Courts consider whether the proposed settlement is a product of arm's length negotiations, performed by counsel well versed in the type

of litigation at issue. *See* A. CONTE & H.B. NEWBERG, NEWBERG ON CLASS ACTIONS § 11:41 ("NEWBERG") (proposed settlement entitled to "an initial presumption of fairness" when "negotiated at arm's length by counsel for the class"); *See Hughes v. Microsoft Corp.*, Nos. C98–1646C, 2001 WL 34089697, at *7 (W.D. Wash. Mar. 26, 2001) ("A presumption of correctness is said to attach to a class settlement reached in arms-length negotiations between experienced capable counsel after meaningful discovery." (quoting MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.42).

Here, the litigation history, settlement process, and substantive settlement terms demonstrate the Settlement is not the product of collusion. The Settlement was formally negotiated at arm's length over the past twenty months, but also heavily predicated on the foundation, information, and experience of Co-Lead Counsel in the *Engine I* litigation. And the Class Vehicles here were on Co-Lead Counsel and Settlement Counsel's radar even before *Flaherty*'s initial filing in December 2018 given the attorneys' investigations into the alleged engine defect and widespread public reports of vehicle failures and fires in Class Vehicles. Despite the successful settlement and approval of *Engine I*, the parties began the negotiations here anew. From late 2020 through summer 2021, Plaintiffs' counsel for *Flaherty*/*Thornhill*, *Marbury*, *Buettner*, and *Short* were in separate contact and negotiations with Defendants' counsel concerning their individual cases against Hyundai and Kia. (Berman Decl. ¶ 13; Declaration of Matthew D. Schelkopf Decl. ("Schelkopf Decl.") ¶ 12; Declaration of Gretchen Freeman Cappio ("Freeman Cappio Decl.") ¶ 8.) Once Plaintiffs' counsel began working together, they spent roughly fifteen months negotiating substantive settlement issues, including the scope of class vehicles, the alleged defect, and regulatory action, with defense counsel. (Berman Decl. ¶ 14; Schelkopf Decl. ¶ 13; Freeman Cappio Decl. ¶13.)

Settlement Counsel also spent years litigating *Short* before any settlement negotiations began in earnest. As described in Section B, *supra*, during this time the

*Short* case was in active litigation right up until the case was stayed—Hyundai and Kia scheduled and took the depositions of four *Short* plaintiffs during the week of July 19, 2021, even as the parties informed the *Short* court that they were engaged in settlement discussions. Once Co-Lead Counsel and Settlement Counsel began working together to prosecute their proposed class actions and the *Short* litigation was stayed, they filed a consolidated complaint with the benefit of their ongoing research and the discovery obtained and expert work conducted in *Short*. (Berman Decl. ¶ 14; Schelkopf Decl. ¶ 13; Freeman Cappio Decl. ¶ 13.) They also renewed their settlement demands to Defendants. These negotiations culminated in mediation before retired Judge Infante, during which the parties agreed on a settlement structure. (Berman Decl. ¶15; Schelkopf Decl. ¶ 14; Freeman Cappio Decl. ¶ 14.) *See, e.g.*, *Casey v. Doctor's Best, Inc.*, No. 820-cv-01325-JLS-JDE, 2022 WL 1726080, at *10 (C.D. Cal. Feb. 28, 2022) (finding all-day remote mediation with Hon. Edward A. Infante (Ret.) of JAMS supported arms'-length negotiations and lack of collusion); *G. F. v. Contra Costa Cty.*, No. 13-CV-03667-MEJ, 2015 WL 4606078, at *13 (N.D. Cal. July 30, 2015) ("[T]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.") (internal quotations omitted). After the February 2022 mediation, the parties continued to correspond and negotiate to reach the final terms proposed here. (Berman Decl. ¶¶ 15, 18; Schelkopf Decl. ¶¶ 14, 17; Freeman Cappio Decl. ¶¶ 14, 16.)

In addition to the discovery already obtained, the parties have already begun confirmatory discovery. Plaintiffs served written discovery, the parties negotiated a protective order, Defendants responded and produced documents to Plaintiffs, and Plaintiffs' counsel are in the process of reviewing these productions. Plaintiffs' counsel will also take the depositions of Defendants' corporate designees in the coming months.

Co-Lead Counsel and Settlement Counsel are experienced, capable class action attorneys that have represented consumers in a number of significant class actions against automakers including Hyundai and Kia, several of which resulted in successful, court-approved settlements. (Berman Decl. ¶¶ 2-3, 11, 18; Schelkopf Decl. ¶¶ 2-6, 11, 17; Freeman Cappio Decl. ¶¶ 2-5.) The settlement terms achieved are advantageous to the Class and on par with the relief demanded in Plaintiffs' respective complaints.

Last, while the parties have settled the substantive terms for the Class, they have not settled on attorneys' fees and costs. *See* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.7 ("MANUAL (FOURTH)") ("Separate negotiation of the class settlement before an agreement on fees is generally preferable."); *see also Casey*, 2022 WL 1726080, at *10 (finding proposed settlement did not initially include an attorney fee agreement and the fact that a fee agreement was reached "several months later" demonstrated the settlement was "not the product of collusion to the benefit of Plaintiff's Counsel"); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 334-35 (3d Cir. 1998) (affirming final approval of class settlement and fee award where "[t]here [was] no indication the parties began to negotiate attorneys' fees until after they had finished negotiating the settlement agreement."). The parties began negotiating fees and costs only after reaching agreement on the material terms of the Settlement. (Berman Decl. ¶ 19; Schelkopf Decl. ¶ 18; Freeman Cappio Decl. ¶ 17.) Defendants agree to pay a separate award of attorneys' fees and costs here, but the amount is still in dispute. If this proposed Settlement is preliminarily approved and the parties cannot agree on fees and costs before moving for Final Approval, Co-Lead Counsel and Settlement Counsel will file a joint motion for attorneys' fees and costs.

The substantive terms of the Settlement were thoroughly negotiated and net a favorable outcome for the Class. The Court should preliminarily approve the proposed Settlement.

**2.    The proposed Settlement offers no improper preferential treatment to Class Representatives or segments of the Class.**

Scrutinizing a proposed settlement for possible preferential treatment of any settlement class member requires consideration of any disparity among what class members are poised to receive and, if there is any disparity, whether the settlement "compensates class members in a manner generally proportionate to the harm they suffered on account of [the] alleged misconduct." *Altamirano v. Shaw Indus., Inc.*, No. 13-CV-00939-HSG, 2015 WL 4512372, at *8 (N.D. Cal. July 24, 2015) (finding no preferential treatment); accord *Contra Costa Cty.*, 2015 WL 4606078, at *13-14 (analyzing whether the settlement singles out particular class members or instead "appears uniform").

Here, Plaintiffs seek certification of a single class of vehicle owners and lessees, and the relief offered is commensurate with the harms suffered by the Class members. For example, Class members who have not experienced a Qualifying Failure or Qualifying Fire will receive the Extended Warranty providing future coverage should the defect manifest in the 15-year/150,0000-mile useful life of their Class Vehicle. Class members who experience a Qualifying Fire are eligible for additional benefits under the proposed Settlement, including reimbursements and goodwill payments. The Settlement thus offers relief that will make each Class member whole based on the harm suffered and the Class member's experience with their Class Vehicle.

Likewise, the Class representatives will not receive preferential treatment or compensation disproportionate to their respective harm and contribution to the case under this proposed Settlement. They may submit settlement claims for applicable categories of relief like any other Class member, and Defendants have agreed to pay $5,000 for representatives who were deposed, and $3,000 for representatives who

were not, amounts that are well within the range of incentive awards in similar cases. *See Sebastian v. Sprint/United Mgmt. Co.*, No. 8:18-cv-00757-JLS-KES, 2019 WL 13037010, at *9 (C.D. Cal. Dec. 5, 2019) (approving $10,000 service award to plaintiff); *Ruch v. AM Retail Grp., Inc.*, No. 14-CV-05352-MEJ, 2016 WL 1161453, at *12 (N.D. Cal. Mar. 24, 2016) (internal quotations omitted) (permitting service awards to class representatives); s*ee also Smith v. Am. Greetings Corp.*, No. 14-CV-02577-JST, 2016 WL 362395, at *10 (N.D. Cal. Jan. 29, 2016) (finding $5,000 service awards are "presumptively reasonable").

### 3. The proposed Settlement easily meets the "threshold of plausibility" and has no obvious deficiencies.

Courts employ a "threshold of plausibility" standard intended to identify conspicuous defects. *Kakani v. Oracle Corp.*, No. C 06-06493 WHA, 2007 WL 1793774, at *6 (N.D. Cal. June 19, 2007). Unless the Court's initial examination "disclose[s] grounds to doubt its fairness or other obvious deficiencies," the Court should order that notice of a formal fairness hearing be given to Class members under Rule 23(e). *West v. Circle K Stores, Inc.*, No. CIV. S-04-0438 WBS GGH, 2006 WL 1652598, at *11 (E.D. Cal. June 13, 2006) (citation omitted); MANUAL (FOURTH) § 21.632, at 321-22. Because the proposed Settlement here meets the requirements required for preliminary approval, as detailed herein, it is not obviously defective and merits preliminary approval.

### 4. The proposed Settlement falls within the range of possible approval.

In determining whether to grant preliminary approval, the Court must consider several factors, including: "the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Staton*, 327 F.3d at 959 (internal citation and

quotation marks omitted). "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982).

### i.      The strength of Plaintiffs' case

Plaintiffs allege that Defendants sold Class Vehicles with defectively manufactured engines that are prone to sudden and catastrophic failure, creating the risk of engine fire. Engine failures and fires are expensive, destructive, and pose serious safety risks to consumers and other drivers. The engine defect alleged here can manifest in any of the Class Vehicles, necessitating recalls and implementation of the KSDS (installed in the Class Vehicles during the pendency of this litigation) for early engine wear detection. Defendants claim to have improved their design and manufacturing processes to reduce and potentially eliminate the problem in later model years, but as Co-Lead Counsel and Settlement's Counsel's ongoing investigations have shown, additional models continue to be impacted. Without the knock sensor technology, it is impossible to identify and repair those Class Vehicles that will manifest the defect beforehand. If the case were not to settle and the litigation to continue, Plaintiffs would expect to present evidence suggesting that Defendants each knew about the dangerous safety defect before Class Vehicles were made available for purchase, and that the Class Vehicles' engines can and do fail even if they are properly maintained. Co-Lead Counsel and Settlement Counsel are poised to prove Defendants violated numerous state consumer protection statutes, breached state and federal warranty laws, and engaged in fraud by failing to disclose a known safety defect that put consumers in avoidable danger and caused them to incur expensive and lengthy repairs.

1      But Co-Lead Counsel and Settlement Counsel are seasoned automotive class

2   action litigators and recognize there are risks to proving liability here, in whole or in

3   part. For example, Defendants may argue there was no fraud because they did not

4   have knowledge of the engine defect before many of the Class Vehicles were sold.

5   They will argue that not all Class members are harmed because some Class Vehicles

6   will never manifest the engine defect, and for those that do, Defendants developed the

7   KSDS to notify Class members and prevent engine failure and fire at all. Defendants

8   will also argue that the individual service history of a Class Vehicle has a bearing on

9   whether the engines will fail, and thus certification under Rule 23(b)(3) is

10  inappropriate. Defendants will also likely argue they have made the affected Class

11  members whole by covering many engine repairs under warranty or through goodwill,

12  and that those repairs not covered were fairly denied because the dealership's

13  inspection revealed the Class member was at fault for poor vehicle maintenance.

14      Finally, even if Plaintiffs prevail at trial and on appeal, the recovery and its

15  benefits to the Class would be delayed by years. This means distributing damage

16  awards would be even more difficult given the age of certain Class Vehicles already.

17  Locating Class members will be more difficult, too, as will Class members' ability to

18  find and submit required documentation for compensation. Certain benefits of the

19  proposed Settlement, like the Extended Warranty and Class Vehicles values, would be

20  diminished by the time of trial or appeal exhaustion as well. In other words, a victory

21  at trial several years from now would likely not deliver results superior to the

22  proposed Settlement before the Court now. Moreover, numerous engine failures and

23  engine fires would have needlessly occurred during the time it took to prevail at trial

24  and on appeal, many of which could have been avoided through the proposed

25  Settlement.

26

27

28

ii.     **The risk, expense, complexity, and likely duration of further litigation**

Class actions typically entail a high level of risk, expense, and complexity, which is why judicial policy so strongly favors resolving class actions through settlement. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998) (affirming district court's approval of settlement and certification of class); *Class Plaintiffs*, 955 F.2d at 1276 (noting judicial policy favoring settlement of class actions). The litigation will likely be protracted and costly if the Parties cannot resolve this case through settlement. Co-Lead Counsel and Settlement Counsel frequently litigate automotive class actions that take several years to resolve, while some have gone on for over a decade with appeals. Before trying this case, the parties would brief motions to dismiss, conduct discovery, brief class certification (along with a potential Rule 23(f) appeal), and brief summary judgment and *Daubert* motions, in addition to expending considerable resources on electronic discovery, depositions, and expert witnesses. It is unlikely the case would reach trial before 2024, with additional post-trial activity to follow. In that time, more Class members will have sold their vehicles or experienced the defect and lost money out-of-pocket. And more Class members would be at risk for engine seizure or stalling, which they will be notified about and able to address through free inspections and repairs under this proposed Settlement.

The proposed Settlement balances these costs, risks, and potential for delay with its benefits, achieving a settlement that is fair and desirable to the Class. *See Casey,* 2022 WL 1726080, at *8 (observing that even if plaintiff prevailed at every stage, the possibility of lengthy appeals evidenced substantial risk of further litigation); Newberg § 11:50 ("In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."); *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 526 (C.D. Cal. 2004).

### iii.    The risk of maintaining class action status through trial

A litigation class has not been certified here, and Plaintiffs face real risk at the class certification stage regardless of case strength. *See Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 392 (C.D. Cal. 2007) ("The value of a class action 'depends largely on the certification of the class,' and [] class certification undeniably represents a serious risk for plaintiffs in any class action lawsuit.") (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 817 (3d Cir. 1995). While Plaintiffs believe this case is appropriate for class certification and that they could marshal sufficient evidence in support of such a motion, class certification proceedings are highly discretionary. *See, e.g., Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 987 (9th Cir. 2011). In addition, instead of resolving this litigation on a nationwide basis, Plaintiffs would likely only succeed in certifying certain state classes, further reducing the scope of relief to the potential class.

### iv.    The amount or type of relief offered in settlement

The proposed Settlement provides Class members with largely everything Plaintiffs sought in their complaints. Defendants are warning affected drivers of the risk of engine stalling and providing an Extended Warranty that will allow Class Vehicles free inspections and necessary repairs within the expected, useful life of the car (15 years or 150,000 miles). Although Plaintiffs initially sought lifetime warranties as they did in *Engine I*, safety considerations subsequently raised by NHTSA indicate an extended warranty for the expected useful life of the vehicle is more appropriate. Specifically, in ongoing communications between HMA and NHTSA about the alleged defect, a concern was recognized that the lifetime warranty could create a public safety risk by incentivizing consumers to drive vehicles longer than their contemplated useful lives.[20] NHTSA's view was that while the non-warranted vehicle

---

[20] Hyundai's communications with NHTSA about the extended warranty are chronicled in a declaration by Hyundai safety executive Brian Latouf. Due to extenuating circumstances, Mr. Latouf was unable to execute the declaration by

systems (such as those related to steering, braking, and general automotive safety) would deteriorate over time and cause safety hazards to drivers and the public alike, putative class members might be less likely to perform necessary vehicle maintenance or purchase a newer vehicle with innovative safety features because their engine is warranted for life.

Given Plaintiffs' concession on the lifetime warranty term, they demanded—and received—increased benefits in other categories of settlement relief as compared to *Engine I*. First, Class members will receive a higher cap on rental car reimbursements ($80 per day). Second, Class members stranded away from home because of a Qualifying Failure or Qualifying Repair are eligible for transportation, lodging, and meal reimbursements. Third, inconvenience payments for repair delays were increased, as were goodwill payments amounts for Qualifying Fires and warranty repairs improperly denied by Defendants. Like in *Engine I*, Class members will still receive full reimbursement for towing expenses and past repairs, compensation for sold or traded-in Class Vehicles that experienced a Qualifying Failure or Class Vehicles that were destroyed in a Qualifying Fire, and a rebate for lost faith in their Class Vehicles. In the proposed Settlement, the BBB process applies to both settlement claims and warranty coverage denials and also provides a more streamlined appeals process.

The Settlement offers an excellent result for the Class. Even though it is unlikely that a trial would produce a better result than the proposed Settlement, the settlement need not be the best possible outcome to meet the fair and adequate standard. *See Officers for Justice*, 688 F.2d at 628 ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair.") (citing *Flinn v. FMC Corp.*, 528 F.2d 1169,

_____

today's filing deadline. Hyundai represents that this declaration will be executed and filed this week.

1173-74 (4th Cir. 1975)); *Correa v. Zillow, Inc.*, No. 8:19-cv-00921-JLS-DFM, 2021 WL 4925394, at *5 (C.D. Cal. June 14, 2021) (approving settlement that represented approximately 13.75% of the defendant's total potential exposure).

### v.        Discovery completed and the stage of the proceedings

The Court must assess whether "the parties have sufficient information to make an informed decision about settlement." *Linney*, 151 F.3d at 1239. Discovery can be both formal and informal. *See Clesceri v. Beach City Investigations & Protective Servs., Inc.*, No. CV-10-3873-JST (RZx), 2011 WL 320998, at *9 (C.D. Cal. Jan. 27, 2011); *see also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) (finding plaintiffs had "sufficient information to make an informed decision about the [s]ettlement" where formal discovery had not been completed but class counsel had "conducted significant investigation, discovery and research, and presented the court with documentation supporting those services.").

Before filing the *Flaherty* complaint, Co-Lead Counsel and Settlement Counsel devoted substantial time and energy to investigating the underlying facts and developing the factual and legal allegations. This included a review of several publicly available sources of technical information, hundreds of communications with class members, analyses and inspection of the allegedly defective engines (and how those engine designs were similar to or differed from the engines at issue in *Engine I*), consultation with automotive experts, and extensive research via publicly available documents. (Berman Decl. ¶ 12; Schelkopf Decl. ¶ 12; Freeman Cappio Decl. ¶ 7.) Counsel's independent document review included data and analysis relating to relevant warranty claims, customer complaints, goodwill payments, and field service reports. *Id.*

Settlement Counsel engaged in similar pre-suit investigation before filing the *Short* action, but also had the benefit of formal discovery as the case was litigated. (Freeman Cappio Decl. ¶ 8.) Defendants produced thousands of pages of technical and

engineering documents, including design, testing, and service bulletin information, as well as voluminous, detailed data on hundreds of thousands of repairs and warranty claims, including diagnostic information and comments from the technicians who worked on class members' vehicles. *Id.* at ¶ 9. Counsel and their highly qualified experts reviewed these documents and data closely, and both engineering and economic experts provided counsel with detailed reports based on this discovery. *Id.* Plaintiffs also worked with a consultant to tear down and analyze a Gamma GDI engine from a Class Vehicle. *Id.*

Based on Co-Lead Counsel and Settlement Counsel's substantial experience litigating automotive defect cases—including litigation and successful settlement of *Engine I*—the information they received was sufficient to evaluate the fairness of the proposed Settlement for the Class. (Berman Decl. ¶ 11; Schelkopf Decl. ¶ 11; Freeman Cappio Decl. ¶ 15.) While negotiating and resolving this litigation, Plaintiffs had a reasonably good sense of the strength and weakness of their case and were well situated to make an informed decision regarding settlement. *Id.* This is equally true as to the strengths as it is to weaknesses: in the *Short* case, in addition to their own experts' reports, Settlement Counsel were able to assess Defendants' view of the case because Hyundai and Kia disclosed lengthy and detailed reports from their own technical and economic experts. (Freeman Cappio Decl. ¶ 9.) Plaintiffs' counsel has also reviewed hundreds of putative Class member repair orders during this litigation. In addition, the parties have started confirmatory discovery, some of which was exchanged before finalizing this Settlement, and the confirmatory discovery will continue over the next several months. (Berman Decl. ¶ 16; Schelkopf Decl. ¶ 15; Freeman Cappio Decl. ¶ 15.)

### vi.    The experience and views of counsel

Co-Lead Counsel and Settlement Counsel believe the Settlement is fair, reasonable, and adequate based on their extensive experience litigating class actions.

At the preliminary approval stage, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008); *see also Casey*, 2022 WL 1726080, at *9 (finding the experience and view of experienced class counsel weighed in favor of approving settlement). Co-Lead Counsel and Settlement Counsel's experience is outlined in their respective declarations. *See* Berman Decl. ¶¶ 2-3; Schelkopf Decl. ¶¶ 2-6; Freeman Cappio Decl. ¶¶ 2-5.

### vii.    The presence of a governmental participant

The only connection with governmental entities in this litigation are Defendants' voluntary recalls of certain Class Vehicles, described in Section II(D)(2), *supra*, which was overseen by NHTSA. While NHTSA might have eventually initiated an investigation into all Class Vehicles, a great benefit of the proposed Settlement is that it avoids the protracted process of a multistage NHTSA investigation that can take years to complete. *See generally In re Gen. Motors Corp. Pickup Truck Fuel Tank Prods. Liab. Litig.*, MDL 961, 1993 WL 204116, at *3 (E.D. Pa. June 10, 1993) (noting NHTSA proceedings can take several years to conclude).

### viii.    The reaction of Class members

The Class has not been notified of the proposed Settlement and given an opportunity to object, so it is premature to assess this factor. Before the final approval hearing, the parties will provide the Court with any objections received after notice is disseminated, and they will address the substance of any of the objections in their motion for final approval. But granting preliminary approval and directing notice to Class members where the Class has not been certified before settlement may actually enhance Class members' opt-out rights. *See In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 205-06 (S.D.N.Y. 1995) (explaining that "because the right to exclusion [from the class] is provided simultaneously with the opportunity to accept or

reject the terms of a proposed settlement," class members have a more concrete basis upon which to decide what they will sacrifice by opting out).

**B.      The Settlement Class satisfies Rule 23.**

   **1.      The Settlement Class satisfies Rule 23(a).**

In granting preliminary approval, the Court must confirm the proposed Class meets the requirements of Rule 23. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); MANUAL (FOURTH), § 21.632. The prerequisites for class certification under Rule 23(a) are numerosity, commonality, typicality, and adequacy of representation, each of which is satisfied here. Fed. R. Civ. P. 23(a); *Hanlon*, 150 F.3d at 1019. First, Rule 23(a)(1) requires the class be "so numerous that joinder of all members is impracticable." In the Ninth Circuit, "classes of at least forty members are usually found to have satisfied the numerosity requirement." *Aikens v. Malcolm Cisneros*, No. 5:17-CV-02462-JLS-SP, 2019 WL 3491928, at *3 (C.D. Cal. July 31, 2019) (quoting *Makaron v. Enagic USA, Inc*., 324 F.R.D. 228, 232 (C.D. Cal. 2018)). The proposed Class here is comprised of more than 2.1 million Class Vehicles, easily satisfying numerosity.

Second, Rule 23(a)(2) requires questions of law or fact common to the class, requiring Plaintiffs to "demonstrate that the class members have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011) (citation and internal quotation marks omitted). In the Ninth Circuit, "commonality only requires a significant question of law or fact." *Saenz v. Lowe's Home Centers, LLC*, No. 2:17-cv-08758-ODW-PLA, 2019 WL 1382968, at *3 (C.D. Cal. Mar. 27, 2019). But Plaintiffs must show "the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Dukes*, 564 U.S. 350 (internal quotation marks and citation omitted). Here, the common issues include: (i) whether the Class Vehicles' engines all suffered the same risks arising from Defendants' unreasonable acts and omissions in the manufacturing, production, and sale of the Class Vehicles;

(ii) whether the defective engines can cause catastrophic engine failure and potentially result in engine fires; (iii) whether and when Defendants knew about the defective engines; (iv) whether a reasonable consumer would consider the defective engine and its consequences to be material; (v) whether the defective engine implicates safety concerns; and (vi) whether Defendants' conduct violates the consumer protection statutes alleged, and the terms of their warranties. Thus, commonality is also satisfied here.

Third, Rule 23(a)(3) requires "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Typicality is satisfied where the representative claims are "reasonably co-extensive with those of absent class members; [but] they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Here, Plaintiffs' claims arise out of the same facts and circumstances as those of the Class because they each purchased a Class Vehicle that contains a defective engine and thus suffered the same injury—namely, they were sold a defective vehicle that has required or will require a repair to make the vehicle safe. *See Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) ("Typicality can be satisfied despite different factual circumstances surrounding the manifestation of the defect."). Typicality is satisfied here, too.

Fourth, Rule 23(a)(4) requires "the representative parties [to] fairly and adequately protect the interests of the class." Adequacy requires the named plaintiffs and their counsel must not have any conflicts of interest with other class members, but also that the named plaintiffs and their counsel to prosecute the action vigorously on behalf of the class. *See Hanlon*, 150 F.3d at 1020. Here, Plaintiffs, Co-Lead Counsel, and Settlement Counsel do not have any conflicts of interest with other Class members, and Plaintiffs' counsel vigorously litigated the case over the course of three years and negotiated the proposed settlement with the assistance of a respected mediator. *See Aikens*, 2019 WL 3491928, at *4 (finding class representative adequate

1  where claims arose from the same set of facts as the proposed class and no conflict

2  was evident); *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d at 566 (adequacy

3  satisfied if plaintiffs and their counsel lack conflicts of interest and will prosecute the

4  action vigorously on behalf of the class). Plaintiffs, Co-Lead Counsel, and Settlement

5  Counsel satisfy the adequacy requirement.

6        **2.**    **The Settlement Class satisfies Rule 23(b)(3).**

7       Rule 23(b)(3) requires the Court to find that "questions of law or fact common

8  to class members predominate over any questions affecting only individual members,

9  and that a class action is superior to other available methods for fairly and efficiently

10  adjudicating the controversy." The "predominance inquiry tests whether proposed

11  classes are sufficiently cohesive to warrant adjudication by representation . . . [and]

12  focuses on the relationship between the common and individual issues." *Hanlon*, 150

13  F.3d at 1022. Where common questions "present a significant aspect of the case and

14  they can be resolved for all members of the class in a single adjudication,"

15  predominance is met. *Id.* (citing Wright, Miller & Kane, Federal Practice and

16  Procedure § 1778 (2d Ed. 1986)).

17       The questions central to Plaintiffs' claims are whether the Class Vehicles are

18  similarly defective (namely, they were all equipped with engines built under and using

19  the common procedures, practices, and manufacturing or production processes),

20  whether Defendants had a duty to disclose any resulting manufacturing or production

21  issues, whether Defendants knowingly concealed manufacturing or production issues,

22  and whether one (or more) of these manufacturing or production issues is a material

23  fact. The discovery and expert reports obtained in *Short* and the confirmatory

24  discovery exchanged to date indicate that the engines were subject to the same

25  manufacturing and production processes, which Plaintiffs allege makes them prone to

26  premature and irregular engine wear, which can result in engine failure and engine

27  fire. Plaintiffs further allege that Defendants knew of this defect, but concealed it, and

28

the discovery and expert reports obtained in *Short* provide support for the knowledge allegations. These are the same issues that courts have found sufficient to satisfy predominance. *See, e.g.*, *Hanlon*, 150 F.3d at 1022-1023 (allegedly defective rear liftgate latches); *Chamberlan v. Ford Motor Co.*, 223 F.R.D. 524, 526 (N.D. Cal. 2004) (allegedly defective engine intake manifolds).

Resolving all Class members' claims through a single class action is superior to a series of individual lawsuits involving these defective Class Vehicles from both an efficiency and value perspective. *See Hanlon*, 150 F.3d at 1023 ("From either a judicial or litigant viewpoint, there is no advantage in individual members controlling the prosecution of separate actions. There would be less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery."). By implementing and installing the KSDS (in all Class Vehicles), and providing compensation for actual harm (vehicles suffering engine failure or fire), the proposed Settlement resolves the significant problem of the defect for all Class members. Finally, manageability considerations are not a concern for settlement class certification. *Amchem*, 521 U.S. at 620 ("the proposal is that there be no trial"); *see also In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d at 557 ("manageability is not a concern in certifying a settlement class where, by definition, there will be no trial.").

The proposed Class meets the predominance and superiority requirements of Rule 23(b)(3), and therefore should be preliminarily approved by this Court.

**C.      The Court should order dissemination of the Class notice.**

The proposed notice plan, *supra* II.E., has multiple layers and is designed to reach as many Class members as possible to inform them of their rights in clear language, and to facilitate the submission of claims. Defendants are responsible for all costs of Class notice and settlement administration under the proposed Settlement. SA § IV. HMA and KA may self-administer the Settlement or use a third-party administrator to process submitted claims. Claims may be submitted by U.S. mail,

email, or through the dedicated settlement websites. Hyperlinks to the settlement websites will be posted on HMA's and KA's websites.

###    1.    The proposed Settlement offers the best notice method practicable.

The Court must "direct notice in a reasonable manner to all class members who would be bound by the proposal" before final approval. Fed. R. Civ. P. 23(e)(1). A settlement class certified under subsection (b)(3) requires the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

Individual notice will be disseminated by U.S. mail to all reasonably identifiable Class members under this proposed Settlement, satisfying due process requirements. *See Sullivan v. Am. Express Publ'g Corp.*, No. SACV 09-142-JST (ANx), 2011 WL 2600702, at *8 (C.D. Cal. June 30, 2011) ("Notice by mail has been found by the Supreme Court to be sufficient if the notice is 'reasonably calculated . . . to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" (*quoting Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950))). The Long Form Notice and Claim Form will be sent to Class members via U.S. mail. To identify Class members for notice, Defendants will provide Class Vehicle owner names, addresses, and vehicle identification numbers (VINs) to R.L. Polk & Company, or a similar third-party entity authorized to use that information to obtain the names and current addresses of Class members through state agencies. An address search will also be conducted through the United States Postal Service's National Change of Address database to update address information for Class members. If a notice is returned as undeliverable, best efforts will be used to conduct an advanced address search using Defendants' customer database to obtain a deliverable address.

Defendants will also email Class members a hyperlink to the dedicated settlement websites and an electronic version of the Long Form Notice and Claim

Form. The dedicated settlement websites will contain: (i) instructions on how to obtain reimbursements; (ii) a mechanism for Class members to submit claims electronically; (iii) contact information for Defendants or their Settlement Administrators for assistance with claims; (iv) the Long Form Notice; (v) the Pamphlet; (vi) the Claim Form; (vii) the Settlement Agreement; (viii) any orders issued in this litigation approving or disapproving of the proposed Settlement; and (ix) any other information the Parties deem relevant to the Settlement. Defendants or their Settlement Administrators will make the same information available to Class members through www.hyundaiusa.com/myhyundai and www.owners.kia.com via links to the dedicated settlement websites (apart from the mechanism for submitting claims).

Defendants' customer service departments will be available to respond to questions regarding submitted claim status, how to submit a claim, and other aspects of the settlement via a dedicated, toll-free telephone number. Defendants will also inform their authorized dealerships of the settlement so the dealerships can inform their customers of about it, as well as provide the dealerships Pamphlets for distribution to their customers.

Plaintiffs believe this notice plan is robust and the best practicable under the circumstances. *See*, *e.g.*, *Rannis v. Recchia*, 380 F. App'x 646, 650 (9th Cir. 2010) (finding mailed notice the best notice practicable where reasonable efforts were taken to ascertain class members' addresses).

### 2.   The proposed notice adequately informs Class members about their rights.

Notice provided to Class members should "clearly and concisely state in plain, easily understood language" the nature of the action; the class definition; the class claims issues or defenses; that the class member may appear through counsel; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment on class members. Fed. R. Civ. P. 23(c)(2)(B). The form of notice proposed by the Parties

complies with those requirements. SA, Exs. A, B. Notice sent by U.S. Mail will explain the terms of the proposed Settlement, the Class definition, the underlying litigation, and the fact that Class members may appear through counsel; detail the process for requesting exclusion from the Settlement; and disclose the binding effect of the Settlement on Class members if they do not request exclusion from the Court. Plaintiffs believe this is the most effective way to alert Class members to the Settlement and convey detailed information about the settlement approval process. *See Schaffer v. Litton Loan Servicing, LP*, No. 05-cv-07673-MMM, 2012 WL 10274679, at *8-9 (C.D. Cal. Nov. 13, 2012) (approving a similar notice plan); *see also Churchill*, 361 F.3d at 575 ("Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" (*quoting Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir.1980))).

### 3.     Notice to federal and state officials.

Defendants will disseminate notice of the proposed settlement to the U.S. Attorney General and appropriate regulatory officials in all fifty states, as required by the Class Action Fairness Act, 28 U.S.C. § 1715. Defendants will provide copies of all required materials so the states and federal government may independently evaluate the settlement and raise any concerns with the Court before final approval.

### D.     Proposed Schedule for Final Approval

| Event | Date |
|---|---|
| Notice Date | 120 days after entry of the preliminary approval order |
| Class Counsel Fee and Service Award Application | 30 days after the Notice Date |
| Opt-Out or Objection Deadline | 60 days after the Notice Date |
| Claim Forms Due | 90 days after the Final Approval Order if the Qualifying Failure or Qualifying Fire occurred on or |

| Event | Date |
|---|---|
| | before the Notice Date, or if it occurred after the Notice Date, within 90 days of the Qualifying Failure or Qualifying Fire |
| Final Approval papers to be filed | At least 14 days prior to the Final Approval Hearing |
| Final Approval Hearing | At a date convenient for the Court, not less than 195 days after entry of the preliminary approval order |

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court preliminarily approve the proposed Settlement.

DATED: September 26, 2022          Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

/s/ Steve W. Berman

Steve W. Berman (*pro hac vice*)
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Matthew D. Schelkopf (*pro hac vice*)
Joseph B. Kenney (*pro hac vice*)
SAUDER SCHELKOPF LLC
1109 Lancaster Avenue
Berwyn, PA 19312
Telephone: (610) 200-0581
Facsimile: (610) 421-1326
mds@sauderschelkopf.com
jbk@sauderschelkopf.com

*Interim Co-Lead Counsel*

1
2
3
4
5
6
7

Gretchen Freeman Cappio *(pro hac vice)*
Ryan McDevitt *(pro hac vice)*
Adele Daniel *(pro hac vice)*
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Telephone: (206) 623-1900
Facsimile: (206) 623-3384
gcappio@kellerrohrback.com
rmcdevitt@kellerrohrback.com
adaniel@kellerrohrback.com

8

*Interim Settlement Counsel*

9
10
11
12
13

Bonner C. Walsh *(pro hac vice)*
WALSH PLLC
1561 Long Haul Road
Grangeville, ID 83530
Telephone: (541) 359-2827
Facsimile: (866) 503-8206
bonner@walshpllc.com

14
15
16
17
18

Adam Gonnelli *(pro hac vice)*
LAW OFFICE OF ADAM R. GONNELLI, L.L.C.
707 Alexander Road
Bldg. 2, Suite 208
Princeton, NJ, 08540
Telephone: (917) 541-7110
Facsimile: (315) 446-7521
adam@arglawoffice.com

19
20
21
22
23

Rachel E. Fitzpatrick *(pro hac vice)*
HAGENS BERMAN SOBOL SHAPIRO LLP
11 W. Jefferson Street, Suite 1000
Phoenix, AZ 85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
rachelf@hbsslaw.com

24
25
26
27
28