# EXHIBIT 1

# SETTLEMENT AGREEMENT

This Settlement Agreement is made and entered into as of this 29th day of August, 2022, by and between Plaintiffs Leslie Flaherty, Joanna Caballero, James Carpenter, Sharon Moon, Stanton Vignes, Kesha Franklin Marbury, Christina Roos, James J. Martino, James H. Palmer, John H. Caro, Ashley Gagas, Nicole Thornhill, Janet O'Brien, Robert Buettner, Linda Short, James Twigger, Jennifer and Anthony DiPardo, Seane Ronfeldt, Gabrielle Alexander, Tavish Carduff, Brian Frazier, Chad Perry, William Pressley, and Jeannett Smith (the "Plaintiffs" or "Class Representatives"), individually and as representatives of the Class defined below, and Defendants Hyundai Motor America ("HMA"), Hyundai Motor Company ("HMC"), Kia Corporation ("KC"), and Kia America, Inc. ("KA") (collectively the "Parties").

WHEREAS, Plaintiffs Flaherty, Caballero, Carpenter, Moon, and Vignes filed the proposed nationwide class action lawsuit *Flaherty et al. v. Hyundai Motor Company, et al.*, No. 8:18-cv-02223-JLS-JDE (C.D. Cal.) on December 14, 2018; Plaintiffs Marbury, Roos, Martino, Palmer, Caro, and Gagas filed the proposed nationwide class action lawsuit *Marbury et al. v. Hyundai Motor America et al.*, No. 8:21-cv-00379-JLS-JDE (C.D. Cal.) on February 26, 2021; Plaintiffs Thornhill and O'Brien filed the proposed nationwide class action lawsuit *Thornhill et al. v. Hyundai Motor Company et al.*, No. 8:21-cv-00481-JLS-JDE (C.D. Cal.) on March 12, 2021; and Plaintiff Buettner filed the proposed nationwide class action lawsuit *Buettner v. Hyundai Motor America, Inc. et al.*, No. 8:21-cv-01057-JLS-JDE (C.D. Cal.) on June 15, 2021;

WHEREAS, Plaintiff Short filed the proposed nationwide class action lawsuit *Short et al. v. Hyundai Motor Company, et al.*, No. 2:19-cv-00318-JLR (W.D. Wash.) on March 4, 2019; and following consolidation with a related action (*Snider et al. v. Hyundai Motor America, et al.*, No. 2:19-cv-00371/3:19-cv-05193-JLR (W.D. Wash.)), Plaintiffs Short, Twigger, the DiPardos, Ronfeldt, Alexander, Carduff, Frazier, Perry, Pressley, and Smith filed a consolidated amended complaint in *Short* on May 4, 2020;

WHEREAS, on September 8, 2021, the Court ordered the *Flaherty*, *Marbury*, *Thornhill*, and *Buettner* cases consolidated as *In re: Hyundai and Kia Engine Litigation II*, No. 8:18-cv-02223-JLS-JDE (C.D. Cal.);

WHEREAS, the *Short* case was transferred to this District as Case No. 2:22-cv-03498 on May 23, 2022, to this Court on June 10, 2022, and consolidated with *In re: Hyundai and Kia Engine Litigation II* on August 25, 2022;

WHEREAS, these cases arise from Plaintiffs' allegations that certain Kia and Hyundai vehicles were manufactured, marketed, sold, and/or leased with an engine defect that can result in sudden engine seizure, engine failure and/or engine fire;

WHEREAS, HMA, HMC, KC and KA deny Plaintiffs' allegations, deny all liability and culpability, and maintain that they have meritorious defenses;

WHEREAS, following consolidation of the cases, counsel for the Parties met and conferred several times, including with an engineering representative from HMA, HMC, KC and KA present, regarding Plaintiffs' allegations, HMA's, HMC's, KC's and KA's defenses, and potential resolution of the litigation;

WHEREAS, as part of these discussions, and in the context of a potential classwide resolution, HMA, HMC, KC and KA informed Plaintiffs they had planned to conduct or had already initiated product improvement campaigns and/or recalls of these vehicles at issue, in accordance with procedures reviewed by the National Highway Traffic Safety Administration ("NHTSA");

WHEREAS, the Parties engaged in settlement discussions for more than a year and reached a settlement in principle to resolve the class allegations;

WHEREAS, the Parties continued to negotiate the final portions of this Settlement Agreement, including fees and administrative matters;

WHEREAS, Defendants and Plaintiffs in *In re: Hyundai and Kia Engine Litigation II* mediated on February 22, 2022, with the assistance of Hon. Edward A. Infante (Ret.) of JAMS, at which time the Parties reached agreement on incentive awards, but the Parties did not reach agreement on attorneys' fees and expenses;

WHEREAS, Class Counsel (defined below) have investigated the facts and law relating to Plaintiffs' claims and HMA's, HMC's, KC's and KA's defenses, and have concluded that a settlement with HMA, HMC, KC and KA according to the terms set forth below is fair, reasonable, and adequate, and in the best interests of Plaintiffs and the Class;

WHEREAS, despite their denial of any liability or culpability and their belief that they have meritorious defenses to the claims alleged, HMA, HMC, KC and KA nevertheless decided to enter into the Settlement described herein as a benefit to their customers and to avoid further litigation; and

WHEREAS, Plaintiffs have, and will continue to, take reasonable confirmatory discovery, including deposition(s) of Defendants' corporate designee(s), to the extent that additional information is reasonably required to support the terms of the Settlement Agreement. Any such discovery shall be subject to limitations negotiated by Class Counsel and HMA's, HMC's, KC's and KA's counsel.

NOW, THEREFORE, in consideration for the covenants, agreements, and releases set forth herein, and intending to be legally bound, it is agreed by and among the undersigned that this Action be settled, compromised, and judgment entered on the terms and conditions set forth below.

## I.   DEFINITIONS

Capitalized terms in this Settlement Agreement not defined in this section shall have the meanings ascribed to them elsewhere in this Agreement.

### A.   "Action"

"Action" refers to the consolidated litigation titled *In re: Hyundai and Kia Engine Litigation II*, No. 8:18-cv-02223-JLS-JDE (C.D. Cal.) [hereinafter *Engine II*], inclusive of the underlying cases that were consolidated. *Engine II* is not settled in its entirety, and the claims of *Engine II*'s named plaintiffs and putative class members not explicitly named, identified, or encompassed in this Settlement Agreement are subject to ongoing litigation.

### B.   "Claim"

A "Claim" is a request for reimbursement, compensation, or other relief made by Claim Form under this Settlement.

### C.   "Claimant"

"Claimant" is a Class member or other person or entity eligible to make a Claim pursuant to this Settlement Agreement (*e.g.*, a subsequent purchaser of a Class Vehicle under the terms of the 15-Year/150,000-Mile Extended Warranty, described in section II).

### D.    "Claim Form"

"Claim Form" refers to a form used to make a Claim under this Settlement, substantially in the form attached hereto as Exhibits C and D.

### E.   "Settlement Class" or "Class"

"Settlement Class" or "Class" refers to:

*All owners and lessees of a Class Vehicle who purchased or leased a Class Vehicle in the United States, including those that were purchased while the owner was abroad on active U.S. military duty, but excluding those purchased in U.S. territories and/or abroad.*

Excluded from the claims of the Class (and not released by this Settlement) are all claims for death, personal injury, property damage (other than damage to a Class Vehicle that is the subject of a Qualifying Repair), and subrogation.  Also excluded from the Class are (a) HMA, HMC, KC and KA; (b) any affiliate, parent, or subsidiary of HMA, HMC, KC or KA; (c) any entity in which HMA, HMC, KC or KA has a controlling interest; (d) any officer, director, or employee of HMA, HMC, KC or KA; (e) any successor or assign of HMA, HMC, KC or KA; (f) any judge to whom this Action is assigned, the judge's spouse or partner, and all persons within the third degree of relationship to either of them, as well as the spouses of such persons; (g) individuals and/or entities who validly and timely opt-out of the settlement; (h) consumers or businesses that have purchased Class Vehicles previously deemed a total loss, salvaged, branded, or obtained from a junkyard (subject to verification through Carfax or other means); (i) vehicle owners or lessees who rent or previously rented the Class Vehicle for use by third-party drivers, including leasing companies; (j) individuals and commercial entities engaged in the business of buying, selling, or dealing in motor vehicles, including new and used motor vehicle dealerships, franchisees, vehicle brokers, or automobile auction houses and individuals employed by or acting on behalf of such businesses; (k) banks, credit unions or other lienholders; and (l) current or former owners of a Class Vehicles who previously released their claims in an individual settlement with HMA, HMC, KC or KA with respect to the issues raised the Action.

**F.     "Class Counsel"**

"Class Counsel" means Matthew D. Schelkopf of Sauder Schelkopf LLC, Steve W. Berman of Hagens Berman Sobol Shapiro LLP, and Gretchen Freeman Cappio of Keller Rohrback L.L.P., as per the Order of Judge Staton of September 8, 2021 in *Engine II* (Dkt. 55).

**G.     "Class Vehicles"**

"Class Vehicles" refer to the below-listed "Hyundai Class Vehicles" and "Kia Class Vehicles" that were purchased or leased in the United States, excluding the territories, and including those that may have been purchased while the owner was abroad on active U.S. military duty.  The "Hyundai Class Vehicles" are the following vehicle models that were

originally equipped with or replaced with the respective corresponding genuine engine type within Original Equipment Manufacturer ("OEM") specifications:

- 2011, 2012, 2013, 2014, and 2015 model year Hyundai Sonata Hybrid (HEV) vehicles with a Theta II 2.4-liter multi-port fuel injection ("MPI") engine;

- 2016, 2017, 2018, and 2019 model year Hyundai Sonata Hybrid/Plug-In Hybrid (HEV/PHEV) vehicles with a Nu 2.0-liter gasoline direct injection ("GDI") engine;

- 2010, 2011, and 2012 model year Hyundai Santa Fe vehicles with a Theta II 2.4-liter MPI engine;

- 2010, 2011, 2012, and 2013 model year Hyundai Tucson vehicles with a Theta II 2.4-liter MPI engine;

- 2014, 2015, 2016, 2017, 2018, 2019, 2020, and 2021 model year Hyundai Tucson vehicles with a Nu 2.0-liter GDI engine;

- 2014 model year Hyundai Elantra Coupe vehicles with a Nu 2.0-liter GDI engine;

- 2014, 2015, and 2016 model year Hyundai Elantra vehicles with a Nu 2.0-liter GDI engine;

- 2014, 2015, 2016, 2017, 2018, 2019, and 2020 model year Hyundai Elantra GT vehicles with a Nu 2.0-liter GDI engine; and

- 2012, 2013, 2014, 2015, 2016, and 2017 model year Hyundai Veloster vehicles with a Gamma 1.6-liter GDI engine.

The "Kia Class Vehicles" are the following vehicle models that are originally equipped with or replaced with the respective corresponding genuine engine type within Original Equipment Manufacturer ("OEM") specifications:

- 2011, 2012, 2013, 2014, 2015, and 2016 model year Kia Optima Hybrid (HEV) vehicles with a Theta II 2.4-liter MPI engine;

- 2017, 2018, 2019, and 2020 model year Kia Optima Hybrid (HEV/PHEV) vehicles with a Nu 2.0-liter GDI engine;

- 2011, 2012, and 2013 model year Kia Sorento vehicles with a Theta II 2.4-liter MPI engine;

- 2011, 2012, and 2013 model year Kia Sportage vehicles with a Theta II 2.4-liter MPI engine;

- 2010, 2011, 2012, and 2013 model year Kia Forte vehicles with a Theta II 2.4-liter MPI engine;

- 2010, 2011, 2012, and 2013 model year Kia Forte Koup vehicles with a Theta II 2.4-liter MPI engine;

- 2014, 2015, 2016, 2017, and 2018 model year Kia Forte vehicles with a Nu 2.0-liter GDI engine;

- 2014, 2015, and 2016 model year Kia Forte Koup vehicles with a Nu 2.0-liter GDI engine;

- 2012, 2013, 2014, 2015, and 2016 model year Kia Soul vehicles with a Gamma 1.6-liter GDI engine; and

- 2014, 2015, 2016, 2017, 2018, and 2019 model year Kia Soul vehicles with a Nu 2.0-liter GDI engine.

**H.     "Court"**

"Court" means the United States District Court for the Central District of California.

**I.     "Effective Date"**

"Effective Date" means the first business day after (a) if there is at least one appeal, any appeals of the Court's entry of final approval ("Final Approval Order") and Judgment have expired or been exhausted in such a manner as to render the Final Approval Order and Judgment non-appealable, or (b) if there is no timely filed appeal or motion to extend the time for filing an appeal, the time for any appeals of the Final Approval Order and Judgment has expired.

**J.     "Exceptional Neglect"**

"Exceptional Neglect" for Extended Warranty purposes means when (i) Defendants or their dealers suspect the engine evidences a lack of maintenance or care (*i.e.*, outside of factory maintenance and care specifications) based on an inspection of the physical condition of the engine that shows unacceptable lacquering, varnish, or sludge (unless such lack of maintenance was due to a Qualifying Failure or Qualifying Fire) and (ii) service records demonstrate unacceptable gaps in regular oil changes as further described below.  Defendants will bear the diagnostic costs associated with establishing Exceptional Neglect.

"Exceptional Neglect" for non-Extended Warranty purposes and for Claims requiring a Qualifying Repair, Qualifying Failure, and/or Qualifying Fire means (i) an evaluation of available service records and/or submitted documentation suggests a lack of maintenance or care

(*i.e.*, outside of factory maintenance and care specifications), *e.g.*, a repair order or service records noting engine oil sludge, engine coolant in oil, oil that smells burnt, an old oil filter (noted to be on the engine for greater than 20,000 miles), very low levels of drained oil, or other similar indicia of neglect, and (ii) service records demonstrate unacceptable gaps in regular oil changes as described below.

In situations of suspected Exceptional Neglect, Defendants will verify oil change records from dealers and Carfax (or similar reputable third parties), but may also request maintenance records from the Claimant. No Claimant will be tasked with providing maintenance records from any previous owner, but Claimants are strongly encouraged to voluntarily provide them if available in case Hyundai or Kia identify oil change gaps preceding the Claimant's ownership.

For Extended Warranty purposes, Defendants' dealers will inspect the Class Vehicle, and if they suspect Exceptional Neglect based on this inspection, the dealers will communicate this to the Claimant, request the Claimant provide their maintenance records, and the dealer will document these communications internally and in accordance with Defendants' protocols. Claimants will have five business days to respond to a dealer's request for maintenance records to confirm that they are gathering records and need additional time, in which case Claimants will be permitted an additional five business days to produce records, or confirm they do not have records to provide.

For non-Extended Warranty purposes and for Claims requiring a Qualifying Repair, Qualifying Failure, and/or Qualifying Fire, Defendants or the Settlement Administrators will notify Claimant via mail, email, or both that Exceptional Neglect is suspected based on a review of Claimant's available service records and/or submitted documentation, and that they are requesting Claimant's maintenance records. Claimants will have fourteen business days, as evidenced by the postmark date or e-mail sent date, to produce maintenance records.

Unacceptable gaps in regular oil changes for the purpose of establishing "Exceptional Neglect" applies for Extended Warranty and non-Extended Warranty Claims if these records collectively reveal that since original delivery, the Class Vehicle:

- Has one oil change gap of greater than 10,500 miles;
- Has one oil change gap of greater than 14 months; or
- Was previously diagnosed with excessive oil consumption issues but the Class member or subsequent owner did not obtain a repair to address such issues within 30

days or 1,000 miles, whichever comes first, subsequent to any completed oil consumption testing and confirmed diagnosis.

However, "Exceptional Neglect" shall not bar non-Extended Warranty or Extended Warranty claims for otherwise eligible engine failures that occurred within a Class Vehicle's first 15,000 miles.  Hyundai and Kia recommend that vehicles receive oil changes every 7,500 miles for the Class Vehicles and at least every 12 months, if driven under normal driving conditions, and severe usage conditions will require more frequent oil changes.  For non-Extended Warranty claims, Defendants shall notify Class Counsel of any findings of Exceptional Neglect in the monthly reports outlined in section III.D.  For both non-Extended Warranty and Extended Warranty claims, and upon request from Class Counsel, Defendants will provide documentation to Class Counsel forming the basis of Exceptional Neglect determinations, *e.g.*, photos of the engine, records reflecting when the Claimant was asked to provide maintenance records, and the vehicle history considered when determining oil maintenance gaps.

K.      **"Extended Warranty"**

"Extended Warranty" or "15-Year/150,000-Mile Extended Warranty" refers to the extension of the existing Powertrain Limited Warranty to 15 years (from the date of original retail delivery or date of first use) or 150,000 miles, whichever comes first, to cover damage caused by a connecting rod bearing failure to the original or genuine replacement short block assembly, consisting of the engine block, crankshaft and bearings, connecting rods and bearings, and pistons, except in instances of Exceptional Neglect as described in section I.J and KSDS Installation Neglect as described in section I.Q.  The Extended Warranty shall also apply to any damage caused to the original or genuine replacement long block assembly (excluding accessory engine components) that is a result of a connecting rod bearing failure, except in instances of Exceptional Neglect as described in section I.J and KSDS Installation Neglect as described in section I.Q.  Subject to the other terms in this agreement (*e.g.*, exclusions to the Class such as vehicles previously branded or salvaged and commercial entities or their affiliates engaged in business of buying or selling used cars) and existing terms, limitations, and conditions of the Class Vehicles' original Powertrain Limited Warranty, the Extended Warranty once obtained shall otherwise endure for the 15-year or 150,000-mile period, whichever comes first, irrespective of any change in ownership of the Class Vehicle.  The Extended Warranty shall not

apply or be available to commercial entities such as used car dealers, franchisees, or automobile auction houses, but will still be transferable to subsequent owners pursuant to section II.A.1.

**L.** **"Fairness Hearing" and/or "Final Approval Hearing"**

"Fairness Hearing" and/or "Final Approval Hearing" means the final hearing conducted by the Court on [DATE] to determine the fairness, adequacy, and reasonableness of the Settlement in accordance with applicable jurisprudence, held after notice has been provided to the Settlement Class in accordance with this Settlement, and where the Court will: (a) determine whether to grant final approval to the certification of the Settlement Class; (b) determine whether to designate Plaintiffs as the representatives of the Settlement Class; (c) determine whether to designate Class Counsel as counsel for the Settlement Class; (d) determine whether to grant final approval to the Settlement; (e) rule on Class Counsel's application for a fee and expense award; (f) rule on Class Representatives' application for Class Representative service awards; and (g) consider whether to enter the Final Approval Order.

**M.** **"Final Approval Date"**

"Final Approval Date" means the date of the order issued by the Court granting final approval of this Settlement.

**N.** **"Final Approval Order"**

"Final Approval Order" means the order issued by the Court granting final approval of this Settlement.

**O.** **"Insurance Paperwork"**

"Insurance Paperwork" refers to documents issued by the Claimants' car insurance company reflecting that coverage was denied or a final insurance settlement that shows how much the insurance paid minus the deductible.

**P.** **"Knock Sensor Detection Software"**

"Knock Sensor Detection Software" or "KSDS" refers to the engine monitoring technology developed by Defendants that, with software innovations, leverages existing hardware on the subject Class Vehicles to continuously monitor engine performance for symptoms that may precede connecting rod bearing failure and engine failure that is being offered as a software update to Class members free of charge pursuant to the product improvement campaigns referenced herein. Hyundai and Kia currently obtain and monitor monthly owner change reports for Class Vehicles and notify these subsequent owners of the

KSDS availability and procedure where records show the Class Vehicle does not already have the KSDS installed. Hyundai and Kia will continue, for a period of not less than one year from the Final Approval Date, to obtain these reports and notify subsequent Class Vehicle owners about the KSDS as deemed necessary. Nothing in this section precludes Hyundai or Kia from continuing this KSDS notification process for longer than one year.

Q.     **"KSDS Installation Neglect"**

For the purposes of determining eligibility for non-Extended Warranty benefits, *i.e.,* under sections II.D, II.E, II.F, II.G, II.H, and II.I, "KSDS Installation Neglect" means the failure of a Settlement Class member to have the KSDS installed within 150 days of the Notice Date. This term of KSDS Installation Neglect applies to a subsequent owner of a Class Vehicle even if the previous owner of the vehicle failed to timely obtain the KSDS unless the subsequent owner provides evidence (*e.g.*, a bill of sale) that the Class Vehicle was purchased by the subsequent owner at an authorized Hyundai or Kia dealership after the KSDS was available for the Class Vehicle.  KSDS Installation Neglect shall not apply where Class members brought their Class Vehicles to an authorized dealership for servicing subsequent to the launch of the applicable campaign or recall described in section II.B, but (i) the dealership failed to install KSDS and (ii) contemporaneous documents (*e.g.*, repair orders or other communications) do not show that the Class member refused KSDS installation.  KSDS Installation Neglect shall not bar Class members from obtaining benefits under this Settlement if the Qualifying Repair, Qualifying Failure, or Qualifying Fire for which they seek Settlement compensation occurred at some point before 150 days following the Notice Date and before installation of the KSDS.

For purposes of determining eligibility for benefits under the Extended Warranty under section II.A, KSDS Installation Neglect means the failure to obtain KSDS before experiencing an otherwise covered engine failure.  This term of KSDS Installation Neglect shall not apply to Class members who own or lease Class Vehicles affected by the recalls described in section II.B (*i.e.*, NHTSA Recall Numbers 20V746, 21V727, 20V750, and 21V844).  KSDS Installation Neglect will also not bar current and subsequent owners or lessees of Hyundai Class Vehicles and Kia Class Vehicles unaffected by these recalls from Extended Warranty benefits as long as they obtained the KSDS before experiencing an engine failure.  Defendants reserve the right to waive the KSDS requirement in their discretion on a case-by-case basis.

**R.**    **"Long Form Notice"**

"Long Form Notice" refers to the notice to be sent to the Class as detailed below, substantially in the same form as Exhibits A and B.

**S.**    **"Notice Date"**

"Notice Date" refers to the date on which notice of the Settlement is disseminated.  The Notice Date shall be the first business day after 120 days following the Court's entry of an order preliminarily approving this Settlement.

**T.**    **"Pamphlet"**

"Pamphlet" refers to the separate, color-printed document, substantially in the same form as attached as Exhibits E and F, that will be provided to Class members in accordance with section IV.E.  The Pamphlet shall be designed to be kept with the owner's manual for Class Vehicles.

**U.**    **"Parties"**

"Parties" (or "Party" individually) means Plaintiffs and Defendants.

**V.**    **"Plaintiffs' Counsel"**

"Plaintiffs' Counsel" (as distinct from "Class Counsel") means Matthew D. Schelkopf of Sauder Schelkopf LLC, Steve W. Berman of Hagens Berman Sobol Shapiro LLP, Gretchen Freeman Cappio of Keller Rohrback L.L.P., Adam Gonnelli of the Law Office of Adam R. Gonnelli, L.L.C., Bonner C. Walsh of Walsh PLLC, Benjamin L. Bailey of Bailey Glasser LLP, and W. Daniel Miles, III of Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.

**W.**    **"Preliminary Approval Order"**

"Preliminary Approval Order" means the order issued by the Court granting preliminary approval of this Settlement.

**X.**    **"Proof of Ownership"**

"Proof of Ownership" means a copy of any document(s) issued to a Claimant by a state department of motor vehicles, insurance company, bank or other financing company, or any combination thereof, reflecting that the Claimant owns or leases a Class Vehicle, identified by Vehicle Identification Number ("VIN").  Examples of such documents include owner registration card, vehicle title, bank note identifying the vehicle, and insurance card.  Defendants or their Settlement Administrators are not responsible for returning documents (*i.e.*, Claimants should not send in original registration cards or vehicle titles).

### Y.     "Proof of Payment"

"Proof of Payment" refers to the original or copy of any original document(s) generated at or around the time expenses were incurred showing that the Claimant paid for expense(s) incurred (*e.g.*, the cost of a Qualifying Repair, towing expenses, transportation expenses) for which they may be entitled to reimbursement under this Settlement. "Proof of Payment" must reflect the method of payment the Claimant used, cost of the expense, and the name of the entity charging the Claimant for the expense. "Proof of Payment" for an expense paid by credit card are final repair invoices or similar records that show a duty to pay for a related expense plus credit card receipts, or credit card statements reflecting actual amounts paid. "Proof of Payment" for an expense paid by debit card or check are final repair invoices plus debit card receipts, cleared checks, or bank account statements reflecting actual amounts paid. For Qualifying Repairs performed at authorized Hyundai or Kia dealerships and paid in cash with a valid corresponding final repair order, an attestation under penalty of perjury by the Claimant that they do not have a cash payment receipt from the dealership showing their payment and as to the specific dollar amount they paid in cash to the dealership shall also suffice as "Proof of Payment." Defendants and their Settlement Administrators may ask Claimants for additional Proof of Payment if fraud is suspected but must contemporaneously notify Class Counsel of such request.

### Z.     "Proof of Qualifying Repair"

"Proof of Qualifying Repair" means the original or copy of any original document(s) generated at or around the time of a Qualifying Repair that identifies the vehicle by VIN, the vehicle symptoms experienced prior to the Qualifying Repair, the Qualifying Repair's nature, date performed, mileage at the time, and cost incurred by the Class member for the Qualifying Repair. "Proof of Qualifying Repair" may include, but is not limited to, any combination of final repair orders, invoices, photographs, Insurance Paperwork, and contemporaneous written communications between the Claimant and business performing the repair. Third-party repairs (repairs not done at Hyundai or Kia dealers) must be performed by a verified business entity with a business address, a working phone number, and online reviews (all subject to verification). "Proof of Qualifying Repair" does not include attestations from third-party repair shops where the original repair order, invoice, or other contemporaneous document lacks the required detail.

AA.     **"Proof of Qualifying Failure"**

"Proof of Qualifying Failure" means the original or a copy of any original document(s) generated at or around the time of a Qualifying Failure that identifies the vehicle by VIN, date of the Qualifying Failure, mileage at the time, cause of the Qualifying Failure if identified, and other information that reflects that a Qualifying Failure occurred, such as a repair order, police report, Insurance Paperwork, and/or CarFax or other similar third-party report.  Photographs of a Qualifying Failure are not by themselves Proof of Qualifying Failure.

BB.     **"Proof of Qualifying Fire"**

"Proof of Qualifying Fire" means the original or a copy of any original document(s) generated at or around the time of a Qualifying Fire that identifies the vehicle by VIN, date of the Qualifying Fire, mileage at the time, cause of the Qualifying Fire if identified, and other information that reflects that a Qualifying Fire occurred, such as a fire report, police report, Insurance Paperwork, and/or CarFax or similar third-party report.  Photographs of a vehicle fire are not by themselves Proof of Qualifying Fire.

CC.     **"Qualifying Failure"**

"Qualifying Failure" refers to an engine seizure, engine stall, or other vehicle incident, as outlined in the definition of Qualifying Repair, short of an engine compartment fire, that would otherwise be addressed by a Qualifying Repair, except where it was plainly unrelated to the engine short block manufacturing issues (for example, a stall directly caused by a fuel pump, oxygen sensor, timing, or the electrical system), due to Exceptional Neglect (or KSDS Installation Neglect), or an investigation or inspection revealed an unrelated cause.  An engine failure that would otherwise be a "Qualifying Failure" does not qualify where documentation shows the Class Vehicle was involved in a moderate to severe front-end collision (i) within three months prior to the otherwise Qualifying Failure, or (ii) more than three months prior to the otherwise Qualifying Failure and there is evidence the vehicle component(s) essential for engine operation was improperly or never repaired, as validated by an inspection, diagnosis, or a CarFax report or similar third-party report. This exception will not apply if the front-end collision to the Class Vehicle was repaired at a Hyundai or Kia dealership.

DD.     **"Qualifying Fire"**

"Qualifying Fire" refers to an engine compartment fire that would otherwise be addressed by a Qualifying Repair, and excepting where the fire was plainly unrelated to the engine short

block manufacturing issues (for example, a fire caused solely and independently by a collision, electrical, or fuel-related problems), due to Exceptional Neglect (or KSDS Installation Neglect), there are indications the fire was caused by negligence, a third-party car part installed on the vehicle was the cause of the fire, or an investigation or inspection revealed an unrelated cause. Loss that would otherwise be a "Qualifying Fire" does not qualify where documentation shows the Class Vehicle was involved in a moderate to severe front-end collision (i) within three months prior to the otherwise Qualifying Fire, or (ii) more than three months prior to the otherwise Qualifying Fire and there is evidence the vehicle component(s) essential for engine operation was improperly or never repaired, as validated by a CarFax report or similar third-party report. This exception will not apply if the front-end collision to the Class Vehicle was repaired at a Hyundai or Kia dealership.

EE.   **"Qualifying Repair"**

"Qualifying Repair" refers to any completed repair, replacement, diagnosis, or inspection of the Class Vehicle engine performed to address the following documented symptoms: hole-in-block (*i.e.*, the connecting rod punctures a hole in the engine block), engine seizure (unrelated to pre-existing oil consumption issues), or engine fire (*see* "Qualifying Fire"), but excluding (i) Exceptional Neglect, (ii) KSDS Installation Neglect, (iii) where the repairs were plainly unrelated to the engine short block manufacturing issues (for example, a stall caused directly by a timing chain, fuel pump, oxygen sensor, turbocharger, or the electrical system), or (iv) an investigation or inspection revealed an unrelated cause (for example, oil consumption issues that are not the causal result of connecting rod bearing failure). For Claimants who obtained repair, replacement, diagnosis, or inspection of their Class Vehicles' engine at authorized Hyundai or Kia dealerships, "Qualifying Repair" will cover such work where it was performed to address symptoms associated with connecting rod bearing failure where the vehicles received a diagnosis of (1) abnormal bearing noise according to HMA's and KA's inspection protocols, (2) stall caused by seizure with a failed Bearing Clearance Test, or (3) P1326 warning light, subject to the limitations described in (i)–(iv) above. For purposes of administrating settlement benefits for Repair-Related Transportation and Towing Reimbursements, Inconvenience Due to Repair Delays, and Incidentals for Qualifying Failure or Qualifying Fire: any recall repair, replacement, diagnosis, or inspection by dealers made pursuant to NHTSA Recall Numbers 20V746, 21V727, 20V750, and 21V844 constitutes a "Qualifying Repair." Nothing in this definition shall require

Defendants to provide repairs or compensation for repairs caused by a collision involving a Class Vehicle, unless such collision is directly caused by a Qualifying Failure or Qualifying Fire.

**FF.    "Releasees"**

"Releasee[s]" shall refer jointly and severally, individually and collectively to entities that marketed the Class Vehicles, entities that designed, developed, and/or disseminated advertisements for the Class Vehicles, HMA, HMC, KA, KC, Hyundai America Technical Center, Inc. (also doing business as Hyundai-Kia America Technical Center), Hyundai Motor Manufacturing Alabama, Kia Georgia, Inc., all affiliates of the Hyundai Motor Group, and each of their respective future, present, and former direct and indirect parents, subsidiaries, affiliates, divisions, predecessors, successors, assigns, dealers, distributors, agents, principals, suppliers, vendors, issuers, licensees, and joint ventures, and their respective future, present, and former officers, directors, employees, partners, general partners, limited partners, members, managers, agents, shareholders (in their capacity as shareholders) and legal representatives, and the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing. As used in this paragraph, "affiliates" means entities controlling, controlled by, or under common control with a Releasee.

**GG.    "Releasors"**

"Releasor[s]" shall refer jointly and severally, individually and collectively to the Class Representatives, the Class members, and their future, present, and former direct and indirect parents, subsidiaries, affiliates, divisions, predecessors, successors, and assigns, and their respective future, present, and former officers, directors, employees, partners, general partners, limited partners, members, managers, agents, shareholders (in their capacity as shareholders) and legal representatives, and the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing. As used in this paragraph, "affiliates" means entities controlling, controlled by or under common control with a Releasor.

**HH.    "Settlement"**

"Settlement" means the settlement into which the Parties have entered to resolve the Action. The terms of the Settlement are as set forth in this Settlement Agreement.

**II.    "Settlement Administrator" or "Claims Administrator"**

"Settlement Administrator" or "Claims Administrator" means Defendants or their administrators selected to administer the Settlement and approved by the Court.

## II.      SETTLEMENT CONSIDERATION

In consideration for the Settlement, entry of judgment, and dismissal, and for the mutual release provided herein, HMA and KA agree to provide the following consideration to the Class:

### A.      15-Year/150,000-Mile Extended Warranty Coverage For Engine Short Block

1.      Effective beginning on the Notice Date, HMA and KA shall extend and sustain into full effect the 15-Year/150,000-Mile Extended Warranty for all eligible Class Vehicles, but excluding those cases involving Exceptional Neglect or KSDS Installation Neglect. Notwithstanding any provision(s) to the contrary in any express warranty provided by HMA or KA in conjunction with the sale or lease of Class Vehicles, the 15-Year/150,000-Mile Extended Warranty shall persist in its full duration once obtained regardless of any transfer in ownership or lease of a Class Vehicle.

2.      For the 90-day period immediately following the Final Approval Date, all Class Vehicles that have not received an inspection under at least one of the campaigns or recalls referenced below will be eligible under the Extended Warranty to schedule a free inspection if they are still within the 15-year or 150,000-mile period, whichever comes first.  The free inspection is limited to an assessment of whether the vehicle has symptoms of connecting rod bearing failure, and, if needed, a bearing clearance test.  For any other conditions or symptoms, Claimants would bear the financial responsibility for any engine tear down or diagnosis at an authorized dealership.  If any such teardown results in findings that the connecting rod bearings caused a Qualifying Failure, the diagnostic and tear down costs would then be covered by HMA (for Claimants who own(ed) or leas(ed) Hyundai Class Vehicles, *i.e.* "Hyundai Claimants") and KA (for Claimants who own(ed) or leas(ed) Kia Class Vehicles, *i.e.* "Kia Claimants"), together with the cost for repairs.

3.      As needed on a vehicle-by-vehicle basis for 15 years from the date of original retail delivery or date of first use or 150,000 miles, whichever comes first, the Extended Warranty shall cover all costs associated with any Qualifying Repair, including, without limitation, the costs associated with replacement parts, labor, diagnoses, and mechanical or cosmetic damage to the Class Vehicle's original or genuine replacement engine, including damage to the original or genuine replacement engine long block, caused by the engine malfunction.

4.      In conjunction with any Qualifying Repair provided under the Extended Warranty, authorized Hyundai or Kia dealerships shall provide a comparable class of loaner vehicle, as may be available at a dealer location, at no cost if requested.  To the extent no loaner vehicle is reasonably available through HMA's or KA's authorized Hyundai or Kia dealerships at the time of the request, HMA and KA will provide reimbursement pursuant to section II.D.1 for rental car, ride-sharing, or other transportation expenses of up to $80 per day until the Qualifying Repair is completed and after the Claimant has submitted a claim for reimbursement. In situations where a Claimant has been awaiting an engine repair for at least three months, Defendants will use best efforts to prioritize these Claimants for a loaner vehicle from a dealership upon notification by Class Counsel. However, the failure to obtain KSDS within 150 days of the Notice Date as set forth under the definition of KSDS Installation Neglect will disqualify Claimants from seeking reimbursements for rental car, towing, ride-sharing, or other transportation expenses and other settlement benefits under sections II.D, II.E, and II.F even where the underlying repair itself is covered under the Extended Warranty.

5.      No inspections or repairs under the Extended Warranty shall be denied for a Class Vehicle on the grounds that the Qualifying Repair was necessitated by the owner or lessor for failing to properly service or maintain the vehicle, except in instances of Exceptional Neglect. This Settlement shall not be construed as obligating HMA, KA, or their dealerships to repair engines or provide new engines under the 15-Year/150,000-Mile Extended Warranty, or provide any other compensation or reimbursement for vehicles previously branded or salvaged (subject to verification through CarFax or similar means) and junkyard vehicles not otherwise roadworthy unless such inoperability is directly caused by a Qualifying Failure or Qualifying Fire.

6.      Claimants shall not be required to present the Long Form Notice, Pamphlet, Claim Form, or any other Settlement-related document in order to receive 15-Year/150,000-Mile Extended Warranty inspections or repairs at an authorized Hyundai or Kia dealership.  Claimants are encouraged to retain all vehicle maintenance records after the Notice Date, and if HMA or KA believe there to be Exceptional Neglect, such Claimants may be required to provide records for vehicle maintenance to receive 15-Year/150,000-Mile Extended Warranty repairs (see section I.J).

7.      All rights otherwise available to owners and lessees under preexisting HMA or KA warranties will continue to remain available to Claimants notwithstanding the

implementation of this Settlement.  Nothing in this Settlement will be construed as diminishing or otherwise affecting any express or implied warranty, duty, or contractual obligation of HMA or KA in connection with Class Vehicles.

8.      As set out in the Long Form Notice, any repairs performed pursuant to the 15-Year/150,000-Mile Extended Warranty before the Notice Date shall preclude Claimants who received such repairs from opting out of the Class.  For sake of clarity, a Claimant who received a 15-Year/150,000-Mile Extended Warranty but did not receive any warranty repairs under a previous HMA or KA recall or campaign is not precluded from opting out of this Settlement.

9.      HMA and KA may implement or continue to implement any additional customer satisfaction or goodwill policy, program, or procedure at their discretion, and may extend goodwill consideration to individual Class members on a case-by-case basis, without regard to their entitlement to relief under the Settlement. No such goodwill decision by HMA or KA, however, shall act to deprive a Class member or Claimant of the benefits available under the Settlement.

**B.      Recall and Product Improvements**

1.      HMA acknowledges that the consideration provided in conjunction with its voluntary safety recalls of certain 2011–2013 and 2016 model year Sonata Hybrid, 2012 model year Santa Fe, and 2015–2016 model year Veloster vehicles in or about December 2020 (NHTSA Recall Number 20V746) and certain 2017 model year Tucson and 2017 Sonata Hybrid vehicles in or about September 2021 (NHTSA Recall Number 21V727), represent part of the consideration to the Class in exchange for the settlement in this Action.  HMA further acknowledges that, as required by existing law, it is conducting the voluntary recalls in accordance with NHTSA mandates.

2.      KA acknowledges that the consideration provided in conjunction with its voluntary safety recalls of certain 2012–2013 model year Sorento, 2012–2015 model year Forte and Forte Koup, 2011–2013 model year Optima Hybrid, 2014–2015 model year Soul, and 2012 model year Sportage vehicles in or about December 2020 (NHTSA Recall Number 20V750) and certain 2017–2018 model year Optima Hybrid and Optima Plug-In Hybrid vehicles in or about November 2021 (NHTSA Recall Number 21V844) represent part of the consideration to the Class in exchange for the settlement in this Action.  KA further acknowledges that, as required by existing law, it is conducting the voluntary recalls in accordance with NHTSA mandates.

3.      HMA and KA acknowledge that they each have initiated product improvement campaigns in which knock sensor detection technology could be added through a free software update to the Class Vehicles.

4.      HMA and KA acknowledge that Class Counsel sought relief for some of the Class Vehicles subject to this agreement before any NHTSA inquiry, recall, or campaign.

### C.      Repair Reimbursements

1.      To the extent any Class member obtained a Qualifying Repair on or before the Notice Date and within 15 years from the date of original retail delivery or date of first use or 150,000 miles, whichever came first, for a Class Vehicle, the Class member will be entitled to full reimbursement by HMA (for Hyundai Class Vehicles) or KA (for Kia Class Vehicles) of any and all such expenses incurred for the Qualifying Repair portions listed on a Proof of Qualifying Repair (*e.g.*, excluding non-engine repairs and services such as brake pads, tires, etc.) minus any reimbursement previously received, regardless of whether the Class member was an original owner, lessee or subsequent purchaser unless Exceptional Neglect applies, provided that:

a.      A Claim is submitted no later than 90 days after the Final Approval Order;

b.      The Claim contains a completed Claim Form;

c.      The Claim contains Proof of Ownership;

d.      The Claim contains Proof of Qualifying Repair reflecting a Qualifying Repair date on or before the Notice Date;

e.      The Claim contains Proof of Payment for the Qualifying Repair;

f.      If applicable, the Claim contains documentation, such as Insurance Paperwork, of any reimbursement previously received in connection with the Qualifying Repair; and

g.      If applicable, documentation that the Class member sought in-warranty repairs from an authorized dealer but was denied.

2.      Repair reimbursements shall be provided irrespective of whether Qualifying Repairs were performed at an authorized Hyundai or Kia dealership or elsewhere.  However, the third-party repair shop must be a verified business entity with a business address, a working phone number, and online reviews (all subject to verification).

3.      For Claims submitted for reimbursement for Qualifying Repairs performed at authorized Hyundai or Kia dealerships, Class members, to the best of their abilities, shall provide

the name of the dealerships that performed the Qualifying Repairs, dates for the repair work in question, and a description of the work performed.  Class members are also encouraged to provide repair orders, their communications with the dealership, and any other documentation they deem related to the Qualifying Repairs when submitting a completed Claim Form to assist claims processing.  HMA (for Hyundai Class Vehicles) and KA (for Kia Class Vehicles) shall take all reasonably available steps to acquire from dealerships that are still in operation the information reasonably necessary to approve the Claim—namely, the date, nature, and cost charged for the Qualifying Repair.  HMA and KA acknowledge and represent that they should be able to acquire that information in many instances, except for Proof of Payment for the Qualifying Repair.

4.  For Claims submitted for reimbursement for Qualifying Repairs performed at third-party repair shops not associated with Hyundai or Kia, HMA and KA are not responsible for acquiring information necessary to approve the Claim from the third-party repair shop.

5.  Except in instances of Exceptional Neglect, reimbursements shall be provided to Class members even if warranty coverage was initially denied for the Qualifying Repair on the grounds that it was necessitated by a failure to properly service or maintain the vehicle.  Class members who (i) presented a Class Vehicle to a Hyundai or Kia dealership, (ii) were denied an in-warranty repair prior to receiving notice of this Settlement, and (iii) obtained their Qualifying Repair elsewhere, are also entitled to claim an additional $150 goodwill payment unless Exceptional Neglect applies.  A Class member must provide the name of the dealership that denied the in-warranty repair and the approximate date they presented the Class Vehicle for repair.  Verbal denials that are not documented contemporaneously, *e.g.*, through a repair order or communications to HMA's or KA's Consumer Assistance, are insufficient for Class members to obtain the $150 goodwill payment.

6.  Claimants previously reimbursed in full or in part for the expense incurred in connection with a Qualifying Repair (*e.g.*, through an HMA, KA, or dealership goodwill payment, insurance payout, or another section under this Settlement) shall not be entitled to a reimbursement under this Settlement for that portion of the same expense for which they have already been reimbursed.  Instead, they will be entitled to only that amount to fully reimburse them for a Qualifying Repair, if any.

### D.      Repair-Related Transportation and Towing Reimbursements

1.      Except in cases of Exceptional Neglect or KSDS Installation Neglect, to the extent any Claimant incurs transportation and towing expenses reasonably related to timely obtaining a Qualifying Repair—which if occurring after the Notice Date, the Qualifying Repair must be from a Hyundai or Kia authorized dealership—within 15 years from the date of original retail delivery or date of first use or 150,000 miles, whichever comes first, for a Class Vehicle, the Claimant shall be entitled to, minus any reimbursement previously received, (i) full reimbursement of any towing expenses reasonably related to obtaining a Qualifying Repair, and (ii) if a loaner vehicle was not originally provided by HMA or KA, reimbursement of actual expenses, up to $80 per day, for rental car, ride-sharing, or other transportation expenses, provided that:

> a.      A Claim is submitted within 90 days after the later of the Final Approval Order for a Qualifying Repair on or before the Notice Date, or, for a Qualifying Repair after the Notice Date, within 90 days of either the date on which the expenses were incurred or the date the expense were paid, whichever is later;

> b.      The Claim contains a completed Claim Form;

> c.      The Claim contains Proof of Ownership;

> d.      The Claim contains Proof of Qualifying Repair that reflects that the Class member sought a Qualifying Repair within 15 business days of the incurred rental car or towing expense;

> e.      The Claim contains Proof of Payment for the expenses claimed under this section; and

> f.      The Claim contains documentation, such as Insurance Paperwork, of any reimbursement previously received in connection with the claimed expenses.

2.      Claimants must show that they obtained the towing services, rental car, ride-share, and other transportation services from a verified business entity with a business address, a working phone number, and online reviews (all subject to verification).  Documentation that the Claimant was charged the towing expenses and transportation expenses claimed under this section must be generated by the entity providing the towing or transportation service at or

around the time that expense was incurred for a rental car, towing service, or other transportation-related expense in direct conjunction with obtaining a Qualifying Repair, and which identifies the nature of the expense, the date the cost was incurred, and the dollar amount. Examples of such documents are receipts and invoices.

3.      Reimbursement for towing, rental car, ride-share, and other transportation services is limited to no more than 15 business days before delivery of the vehicle to the dealership or third party repair shop for the Qualifying Repair, and up to 3 business days after the Claimant was notified that their vehicle was ready to be picked up.

4.      Claimants previously reimbursed in full or in part for transportation or towing expenses following an engine seizure, engine stall, engine noise, engine compartment fire, or illumination of the oil lamp diagnosed as requiring repair of the engine (*e.g.*, through an HMA, KA, or dealership goodwill payment, insurance payout, or another section under this Settlement) shall not be entitled to a reimbursement under this Settlement for that portion of the same expense for which they have already been reimbursed. In situations where a Claimant has been awaiting an engine repair for at least three months or longer, Defendants will use best efforts to prioritize these Claimants for a loaner vehicle from a dealership upon notification as per section II.A.4 and/or to work with Class Counsel to assist these Claimants in obtaining interim transportation reimbursement before their repairs can be completed.

### E.      Inconvenience Due to Repair Delays

1.      Except in cases of Exceptional Neglect or KSDS Installation Neglect, to the extent any Claimant is or was inconvenienced by prolonged delays (exceeding 60 days) obtaining any Qualifying Repair within 15 years from the date of original retail delivery or date of first use or 150,000 miles, whichever comes first, from an authorized Hyundai or Kia dealership, the Claimant shall be entitled to a goodwill payment based on the length of the delay provided that:

a.      For a Qualifying Repair occurring on or before the Notice Date, a Claim is submitted within 90 days after the Final Approval Order, or, for a Qualifying Repair occurring after the Notice Date, within 90 days of when the Qualifying Repair was completed;

b.      The Claim contains a completed Claim Form, including (i) a statement under oath by the Claimant attesting that he or she felt inconvenienced by

the delay and (ii) the number of days it took for the Qualifying Repair to be completed;

  c.  The Claim contains Proof of Ownership; and

  d.  The Claim contains sufficient information for HMA or KA to obtain information from the repairing dealership or Proof of Qualifying Repair that reflects the total number of days it took for the Qualifying Repair to be completed.

  2.  Claimants, to the best of their abilities, shall provide the name of the dealerships that performed the Qualifying Repairs and relevant dates. Claimants are also encouraged to provide repair orders, their communications with the dealership, and any other documentation they deem related to the Qualifying Repairs when submitting a completed Claim Form to assist claims processing. HMA (for Hyundai Class Vehicles) and KA (for Kia Class Vehicles) shall take all reasonably available steps to acquire from dealerships that are still in operation the information reasonably necessary to approve the Claim—namely, the date, nature, and cost charged for the Qualifying Repair. HMA and KA acknowledge and represent that they should be able to acquire that information in many instances, except for proof that cost for the Qualifying Repair was paid by the Claimant.

  3.  The goodwill payment will be calculated based on the total cumulative time the Claimant was waiting for the Qualifying Repair to be completed beginning from the date the vehicle was delivered to the repairing dealer as reflected on the repair order for the Class Vehicle or other documentation from the repairing dealer at a Hyundai (for Hyundai Class Vehicles) or Kia (for Kia Class Vehicles) authorized dealership until completion of the work reflected on the repair order as follows.

  4.  For Qualifying Repairs that are completed in 61–180 days, the Claimant shall receive $75. For Qualifying Repairs that are completed in 181 days or more, the Claimant shall receive $100 for Qualifying Repairs completed in 181–210 days and $100 for each additional 30-period of delay (*i.e.*, $100 total for delays of 181–210 days, $200 total for delays of 211–240 days, $300 total for delays of 241–270 days, and so forth).

  5.  A Class member may elect to receive his or her compensation in the form of a dealer service card valued at 150% of the amount that would otherwise be paid under this provision as a cash debit card. The dealer service debit card may only be used at an authorized

Hyundai dealer (for Hyundai Class Vehicles) or an authorized Kia dealer (for Kia Class
Vehicles) in payment towards any merchandise, parts, or service. If the Class member elects to
exercise this option, they must indicate this election on the claim form at the time they submit
their claim.

6.      Claimants who have already received a goodwill payment by HMA, KA, or any
authorized Hyundai or Kia dealerships for any delay due to a Qualifying Repair will only be
eligible for the calculated amount of this inconvenience payment less any amounts previously
paid.

**F.      Incidentals for Qualifying Failure or Qualifying Fire**

1.      Except in cases of Exceptional Neglect or KSDS Installation Neglect, to the
extent any Claimant incurs certain expenses reasonably related to experiencing a Qualifying
Failure or Qualifying Fire within 15 years from the date of original retail delivery or date of first
use or 150,000 miles, whichever comes first, the Claimant shall be entitled to, minus any amount
previously received, (i) full reimbursement of any towing expenses reasonably related to a
Qualifying Repair, including towing the vehicle home, to a repair facility, or to an insurance
yard, and (ii) if the Qualifying Failure or Qualifying Fire occurred within 150 miles of the
Claimant's nearest residence at the time, reimbursement of actual costs up to $125 for
transportation expenses incurred on the day of the Qualifying Failure or Qualifying Fire, or, if
the Qualifying Failure or Qualifying Fire occurred more than 150 miles away from the
Claimant's nearest residence at the time, reimbursement of actual costs for transportation,
lodging, and reasonable meal expenses incurred as a result of the Qualifying Failure or
Qualifying Fire for a maximum of three days of up to $300 for the first day, up to $200 for the
second day, and up to $100 for the third day provided that:

a.      For a Qualifying Failure or Qualifying Fire occurring on or before the
Notice Date, a Claim must be submitted within 90 days after the Final
Approval Order, or, for a Qualifying Failure or Qualifying Fire occurring
after the Notice Date, within 90 days of either the date on which the
expenses were incurred or the date the expense were paid, whichever is
later;

b.      The Claim contains a completed Claim Form;

c.      The Claim contains Proof of Ownership;

      d.      The Claim contains documentation showing the Claimant's nearest residence to the Qualifying Failure or Qualifying Fire;

      e.      The Claim contains documentation that the Claimant was charged the expenses claimed under this section;

      f.      The Claim contains Proof of Payment for the expenses claimed under this section;

      g.      The Claim contains documentation, such as Insurance Paperwork, of any reimbursement previously received in connection with the claimed expenses; and

      h.      The Claim contains Proof of Qualifying Failure or Proof of Qualifying Fire at the time they incurred the expenses.

2.      Claimants must obtain the towing service, rental car, ride-share, other transportation services, lodging, and meals from a verified business entity with a business address, working phone number, and online reviews (all subject to verification). Documentation that the Claimant was charged such expenses claimed under this section must be generated by the entity providing the service, lodging, or meals at or around the time the expense was incurred in direct conjunction with experiencing a Qualifying Failure or Qualifying Fire, and which reflects the nature of the expense, the date the cost was incurred, and the dollar amount.

3.      Documentation showing the Claimant's nearest residence to the Qualifying Failure or Qualifying Fire must be valid at the time or otherwise generated at or around the time of the Qualifying Failure or Qualifying Fire and include the street, apartment number (if applicable), city, state, and zip code. Examples of such documentation may include Proof of Ownership, driver's insurance card, and lease agreements, or any combination thereof.

4.      If a Claimant obtained a Qualifying Repair after experiencing a Qualifying Failure or Qualifying Fire and is entitled to receive reimbursement for transportation or towing expenses under section II.D, the Claimant shall not be entitled to receive reimbursement for that portion of the same expenses under this section (*e.g.*, if a Claimant spent $125 on a rental car on the day they experienced a Qualifying Failure and then obtained a Qualifying Repair, they may be entitled to repair-related reimbursements under section II.D as well, but under no circumstances would receive more than $125 for transportation costs incurred on the day they experienced the Qualifying Failure). Claimants previously reimbursed in full or in part for

incidentals following the Qualifying Failure or Qualifying Fire (*e.g.,* through an HMA, KA, or dealership goodwill payment, roadside assistance programs, or insurance payout) shall not be entitled to a reimbursement under this Settlement for that portion of the expense for which they have already been reimbursed.

5.      In no circumstances shall Claimants be entitled to receive compensation under this section or any other section apart from the expenses described.  For example, Claimants are not entitled to lost wages allegedly incurred due to an inability to get to or from a place of employment, compensation for emotional distress, or other forms of consequential damages, such as having to buy or lease another vehicle to drive for a ride-share job.

      **G.      Loss of Value for Certain Sold or Traded-In Vehicles**

1.      Except in cases of Exceptional Neglect, Class members who (i) experienced a Qualifying Failure or Qualifying Fire within 15 years from the date of original retail delivery or date of first use or 150,000 miles, whichever came first, before the Notice Date, and (ii) sold or traded-in the Class Vehicle before the Notice Date without first procuring the recommended repair will be entitled to $150 and reimbursement by HMA (for Hyundai Class Vehicles) or KA (for Kia Class Vehicles) of the baseline Black Book value (*i.e.*, wholesale used vehicle value) of the sold or traded-in Class Vehicle at the time of loss minus actual amount received in an arm's-length negotiation from the sale or trade-in provided that:

      a.      A Claim is submitted no later than 90 days after the Final Approval Order;

      b.      The Claim contains a completed Claim Form;

      c.      The Claim contains Proof of Ownership;

      d.      The Claim contains a Proof Qualifying Failure or Proof of Qualifying Fire that reflects a Qualifying Failure or Qualifying Fire that occurred before the Notice Date;

      e.      The Claim contains a proof of sale or trade-in and value received for sale or trade-in that occurred before the Notice Date; and

      f.      The Claim contains documentation, such as Insurance Paperwork, of any reimbursement previously received in connection with the Qualifying Failure or Qualifying Fire.

2.      If the actual amount received from the sale or trade-in is nominal, *e.g.*, in a straw sale, or the Class member donated their Class Vehicle, reimbursement will be calculated using an

actual amount received value of $500. If the actual amount received from the sale or trade-in exceeds the baseline Black Book value, the Class member is not entitled to any compensation or goodwill payment under this section. Class members previously reimbursed in full or in part in connection with a sale or trade-in following a Qualifying Failure or Qualifying Fire (*e.g.*, through an HMA, KA, or dealership goodwill payment, insurance payout, or another section under this Settlement) shall not be entitled to a reimbursement under this Settlement for that portion of the same expense for which they have already been reimbursed. If Class members are claiming actual damages due to a repossession, such claims should be addressed through the process discussed under section III.C.

      **H.**    **Loss of Vehicle By Qualifying Fire**

      1.    Except in cases of Exceptional Neglect or KSDS Installation Neglect, to the extent any Claimant suffers a loss of vehicle by a Qualifying Fire within 15 years from the date of original retail delivery or date of first use or 150,000 miles, whichever comes first, the Claimant will be entitled to payment by HMA (for Hyundai Class Vehicles) or KA (for Kia Class Vehicles) of the maximum Black Book value (*i.e.*, private party/very good) of the Class Vehicle at the time of loss minus value received (*e.g.*, from insurance paid to the Claimant's lienholder), if any, plus an additional $150 goodwill payment provided that:

      a.    A Claim is submitted no later than 90 days after the Final Approval Order for a loss on or before the Notice Date, or, for a loss incurred after the Notice Date, no later than 90 days after the Qualifying Fire occurred;

      b.    The Claim contains a completed Claim Form;

      c.    The Claim contains Proof of Ownership;

      d.    The Claimant submits Proof of Qualifying Fire; and

      e.    The Claim contains documentation, such as Insurance Paperwork, of any reimbursement or value previously received in connection with the Qualifying Fire.

      2.    If the actual amount received from the insurance, sale, trade-in or other compensation exceeds the maximum Black Book value, the Claimant is not entitled to the $150 goodwill payment or reimbursement by HMA or KA. For purposes of calculating value received from a sale or trade-in in which the Claimant received only nominal payment, *e.g.*, in a straw

sale, or the Claimant donated their Class Vehicle, reimbursement will be calculated using an actual amount received value of $500.

3.       Any reimbursement for loss of vehicle by Qualifying Fire under this section shall not be construed as a waiver or release of claims for death, personal injury, or any property (other than the Class Vehicle) damage related to the fire.

4.       Nothing in this section shall require HMA or KA to provide for the loss of a Class Vehicle due to an engine fire caused by a collision or a source other than the engine.

**I.       Qualifying Failure or Qualifying Fire Rebate**

1.       Except in cases of Exceptional Neglect or KSDS Installation Neglect, to the extent any Claimant after the Notice Date (i) loses faith in their Class Vehicle as a result of this Settlement, (ii) experienced a Qualifying Failure or Qualifying Fire within 15 years from the date of original retail delivery or date of first use or 150,000 miles, whichever comes first, (iii) sells the Class Vehicle in an arm's-length transaction, and (iv) purchases a replacement Hyundai vehicle (for Hyundai Claimants) from authorized Hyundai dealerships or a replacement Kia vehicle (for Kia Claimants) from authorized Kia dealerships, the Claimant may present a claim for a rebate provided that:

a.       A Claim is submitted within 90 days of the Final Approval Order if the Qualifying Failure or Qualifying Fire occurred on or before the Notice Date, or, if the Qualifying Failure or Qualifying Fire occurred after the Notice Date, within 90 days of the Qualifying Failure or Qualifying Fire;

b.       The Claim contains a completed Claim Form;

c.       The Claim contains Proof of Ownership;

d.       The Claim contains a statement under oath that the Claimant lost faith in the Class Vehicle as a result of notification of this Settlement;

e.       The Claim contains Proof of Qualifying Failure or Proof of Qualifying Fire;

f.       The Claim contains a proof of sale or trade-in and value received for sale or trade-in; and

g.       The Claim contains proof of purchase of a replacement Hyundai or Kia vehicle from an authorized Hyundai or Kia dealership that was obtained after the Notice Date.

2.      The amount of the rebate shall be calculated as the difference between the value the Claimant received at trade-in or sale to the maximum Black Book value (*i.e.*, private party/very good) of the Class Vehicle at the time of the relevant Knock Sensor Detection System campaign launch for their Class Vehicle, irrespective of any underlying vehicle loans, up to the following amounts:

  a.      For model year 2010, 2011, and 2012 Class Vehicles: $2,500
  b.      For model year 2013 and 2014 Class Vehicles: $2,000
  c.      For model year 2015 and 2016 Class Vehicles: $1,500
  d.      For model year 2017, 2018, 2019, 2020, and 2021 model year Class Vehicles: $1,000

For example, a Claimant who sold his 2010 model year Class Vehicle, with a maximum Black Book value of $5,000, for $4,000 would receive a rebate of $1,000, and a Claimant who sold his 2010 model year Class Vehicle, with a maximum Black Book value of $5,000, for $2,000 would receive a rebate of $2,500.  Claimants who received a sale amount meeting or exceeding the maximum Black Book value (*i.e.*, private party/very good) for their sold or traded-in car shall not receive a rebate under this section.

3.      For purposes of calculating value received from a sale or trade-in in which the Claimant received only nominal payment, *e.g.*, in a straw sale, or the Claimant donated their Class Vehicle, reimbursement will be calculated using an actual amount received value of $500.

J.      **Costs of Administration and Notice**

HMA and KA shall be responsible for all costs of Class notice and settlement administration.  In no event shall Plaintiffs' Counsel or the Class be responsible for any costs associated with Class notice or settlement administration.  Class Counsel retains the right to audit and review the administration of Claims.

III.    **CLAIMS ADMINISTRATION**

A.      **Claims Submissions**

1.      HMA and KA have the option of self-administrating or electing a third-party administrator ("Settlement Administrator") to process submitted claims.  HMA shall end claims administration no earlier than December 31, 2036, and KA shall end claims administration no earlier than December 31, 2035.

2.      Claims submitted pursuant to this Settlement may be submitted, at the election of the Claimant, by U.S. mail, email, or through the dedicated settlement website discussed below. The mailing address and email address to which Claimants may submit Claims, as well as Claimants' right to submit their Claims through the settlement website, shall be posted prominently in each of the following locations: the Long Form Notice, the Pamphlet (once prepared and as made available before the Effective Date on the settlement website), the Claim Form, and the dedicated settlement website.  The www.hyundaiusa.com/myhyundai website shall provide a link to the dedicated settlement website for Hyundai Class Vehicles accessible from its homepage.  The www.owners.kia.com website shall provide a link to the dedicated settlement website for Kia Class Vehicles accessible from its homepage.

3.      The Claim Form shall provide an option for Claimants to indicate a preference for communication via regular U.S. mail instead of email.  If HMA or KA has an email address for a Claimant and the Claimant did not indicate on the claim form that they prefer to communicate via regular U.S. mail, HMA and KA shall respond by email.  In instances in which U.S. mail is used, HMA and KA shall respond using the address provided on the corresponding Claim Form.

**B.      Claims Processing**

1.      Upon receipt of a Claim, Defendants or their Settlement Administrators shall review the Claim to determine whether the Claim meets all qualifications for payment set forth in this Settlement Agreement and, if so, the amount of the reimbursement owed.

2.      Within 60 days of receiving the Claim and subject to reasonable extensions depending on claims volume, Defendants or their Settlement Administrators shall provide written notice of their initial determination to the Claimant who submitted it, notifying the Claimant of:

a.      Any deficiency in required documentation and reasonably specify what documents are still needed for claims determination, if any;

b.      The amount, if any, that HMA or KA proposes to reimburse the Claimant under this Settlement;

c.      The basis for HMA's or KA's decision to either deny or pay less than a full reimbursement (if applicable); and

d.      The Claimant's right to attempt to cure any deficiency that led to HMA's or KA's proposal to award less than full reimbursement.

3.      In response to receiving the written notice under section III.B.2, Claimants may:

      a.      Attempt to cure the deficiency stated as justification for not awarding a full reimbursement, by submitting the information and/or documentation identified by HMA or KA as lacking in the Claim, within 45 days of receipt of the written notice.  Defendants or their Settlement Administrators shall have 45 days from the date of the cure attempt to provide written notice to the Claimant stating its final determination as to the total reimbursement, if any, to be paid to the Claimant and the reasons for the reimbursement amount if less than requested; or

      b.      Accept the initial determination by HMA or KA, which acceptance will be presumed if no cure attempt is received by Defendants or their Settlement Administrators within 45 days of the date of the initial determination, at which point Defendants or their Settlement Administrators will provide Claimants with their final determination as to the total reimbursement, if any, to be paid to the Claimant.  Claimants who accept an initial determination, *i.e.*, by communicating acceptance of the full amount offered or without making a cure attempt, shall not be eligible to appeal the final determination or entitled to BBB arbitration.

4.      For Claims that require Defendants or their Settlement Administrators to obtain information from an authorized dealership, HMA or KA may extend the deadlines described in this section to provide the initial determination or final determination to a Claimant by 30 days upon each written notification provided to the Claimant that Defendants or their Settlement Administrators are still awaiting information from an authorized dealership until the dealership responds with the requested information or states that it has none.  Such notification to the Claimant shall describe what information they are awaiting from the dealership in the event that the Claimant can more quickly provide it instead.

**C.      Appealing Final Determinations and Warranty Denials**

1.      The Settlement Administrators must issue a final determination communication to the Claimant within six months of receipt of the Claim. Defendants or their Settlement Administrators will provide the addresses for mailing appeals in the Long Form Notice, on the dedicated settlement websites, and in the final determination communications to Claimants if

they made a cure attempt after initial determination. When issuing a final determination communication to a Claimant whose Claim is denied in part or in full and the Claimant made a cure attempt after initial determination, Defendants or their Settlement Administrators shall concurrently inform the Claimant of (1) the right to appeal the decision via arbitration; (2) that the appeal must be made in writing, detailing which denied claims they are disputing and what amount they are seeking, and mailed to the respective Defendant (HMA or KA) along with all supporting documents; (3) the mailing address for submitting the appeal; and (4) that the appeal must be postmarked no later than 30 days from the postmark date on the final determination communication.

2.      Within 30 days of receipt of HMA's or KA's final determination of a Claim (including determinations of Exceptional Neglect, KSDS Installation Neglect, and whether a repair is a Qualifying Repair) or denial of repairs under the Extended Warranty after the Notice Date, any Claimant dissatisfied with HMA's or KA's final determination or denial of Extended Warranty coverage must notify HMA (for Hyundai Class Vehicles) or KA (for Kia Class Vehicles) in writing and by mail that the Claimant requests arbitration through an alternative dispute resolution process administered by the Better Business Bureau ("BBB").  Claimants should retain records of their timely mailing of their written appeal and may be requested to provide such records in the event Defendants or their Settlement Administrators do not actually receive the written appeal at the mailing address provided.

3.      Coverage under the Extended Warranty that was denied before the Notice Date is not appealable to the BBB under this settlement.  Denials based on exclusions from the Class, *e.g.*, salvaged or branded vehicles, claims for a non-Class Vehicle, etc. are not appealable to the BBB.  Any final determination approving a claim in full pursuant to the terms set forth in Settlement is not appealable or subject to BBB arbitration, *e.g.*, a Claimant cannot appeal if they were approved for rental car reimbursements up to the maximum of $80/day because they believe they should have gotten $100/day.

4.      After receipt of the Claimant's written notice, HMA and KA shall be permitted a 30-day good faith period in which to confer with the Claimant in an attempt to resolve the dispute.  If HMA or KA notifies the Claimant it declines to engage in this conferral or the claim cannot be resolved during this period, Claimant shall be permitted to initiate arbitration proceedings through a BBB-administered alternative dispute resolution process within 30 days of

HMA's or KA's declination to engage in conferral or HMA or KA notifying the Claimant that it stands by its final determination during the good faith period, whichever comes first.

5.       Except with the modification described below in section III.C.6, the arbitration shall take place by written submission with a telephonic hearing to occur if the arbitrator determines it is needed.  The arbitrator shall have the ability to make the final determination regarding the amount to be paid to any Claimant who elects this process.  The arbitrator, however, will be limited to deciding disputes over the actual Claims submitted by the Claimant that were denied, *i.e.*, the arbitrator may not determine the Claimant may qualify for a Settlement benefit they did not previously apply for. With the exception of the photographs described in section III.C.7, the arbitrator may not consider supporting documents from the Claimant that were both (1) not submitted previously to Defendants prior to initiating arbitration proceedings and (2) are suspected of being fraudulent.

6.       For Claims that receive a denial on final determination after sixty days following the Final Approval Date based on KSDS Installation Neglect, under no circumstances shall purported lack of notice excuse KSDS Installation Neglect and such final determinations are not eligible for appeal or entitled to BBB arbitration.  For Claims that receive a denial on final determination within sixty days following the Final Approval Date, however, where a Claimant is disputing a determination of KSDS Installation Neglect and was the owner of the Class Vehicle at the time of the Notice Date, the BBB will first ask the Claimant for copies of the relevant registration cards and a list of his, her, or their residential addresses and email addresses since 2020, which Claimants must supply within fourteen days.  If HMA or KA is able to attest that (i) notice of the applicable product improvement campaign or recall, Settlement Notice, or Pamphlet was sent to at least one of Claimant's residential addresses or email addresses, (ii) KSDS was not installed within the timeframe described in section I.Q, and (iii) the Class Vehicle was not at a dealership since the applicable campaign or recall launched such that it should have received the KSDS update for the relevant timeframe, then arbitration shall resolve in HMA's or KA's favor without the usual written submission process.  For Claims that receive a denial on final determination within sixty days following the Final Approval Date, where a Claimant is disputing a determination of KSDS Installation Neglect and claims his ownership of the vehicle started after the Notice Date, arbitration will resolve in HMA's or KA's favor if HMA or KA is able to attest that (i) KSDS was not installed within the timeframe described in section I.Q, and

(ii) the Class Vehicle was not at a dealership since the applicable campaign or recall launched such that it should have received the KSDS update for the relevant timeframe. For Extended Warranty coverage denials based on KSDS Installation Neglect, arbitration shall resolve in HMA's or KA's favor without the usual written submission process where HMA or KA is able to attest that (i) notice of the KSDS update was sent to the Claimant, the Pamphlet was in the vehicle at the time Extended Warranty coverage was requested, or, for Claimants who are subsequent owners and lessees of Kia Class vehicles, notice of the KSDS update was sent to the vehicle's previous owner, (ii) KSDS was not installed within the timeframe described in section I.Q, and (iii) the Class Vehicle was not at a dealership since the applicable campaign or recall launched such that it should have received the KSDS update for the relevant timeframe. In each of these circumstances described in this provision, if HMA or KA is not able to attest to the required information, the usual written submission process, with a telephone hearing to occur if the arbitrator determines it is needed, resumes.

7.      For Extended Warranty claims that received a denial based upon a determination of Exceptional Neglect, Claimants may contest this determination by getting their Class Vehicle inspected by a third party at their own cost and submitting photographs, with contemporaneous writing in each photograph showing the date and Claimant's name, of the following: (1) VIN plate; (2) the camshafts and rocker arms taken from the top of the engine after removal of the valve cover; (3) the crankshaft and connecting rods from the underside of the vehicle after removal of the engine oil pan; and (4) the inside of the engine oil pan. If all of these areas of the engine have no oil sludge accumulation, then the gaps in oil changes will not be dispositive.

8.      The expense for each arbitration by the BBB shall be borne by HMA (for Hyundai Class Vehicles) or KA (for Kia Class Vehicles) unless the arbitrator finds that the Claimant's claims were brought in bad faith. Bad faith includes, but is not limited to, situations where (i) the Class Vehicle experienced an engine fire or engine failure outside of the 15-year/150,000-mile period, (ii) the Claimant seeks reimbursement for repairs and repair-related expenses that took place outside of the 15-year/150,000-mile period, (iii) the Claimant previously released claims in a prior settlement agreement with HMA or KA, (iv) the Claimant seeks compensation for amounts that were already paid for by insurance, or (v) document(s) submitted to the arbitrator are determined to be fraudulent. HMA and KA will not bear the costs of Claimant's attorneys' fees by Class Counsel or other counsel, if any, selected by the Claimant.

**D.      Claims Reporting to Class Counsel**

1.      On a monthly basis beginning 30 days after the Notice Date, HMA and KA shall provide Class Counsel with a report regarding Claims received, each Claim's status, and any final determinations made, including if the Claim was denied for Exceptional Neglect.  Upon request, HMA and KA shall provide Class Counsel with a copy of any final determination notice sent by HMA and KA, along with the Claim Form and all other documentation associated with the Claim.  HMA (for Hyundai Claimants) and KA (for Kia Claimants) will also furnish upon request a report of Exceptional Neglect or KSDS Installation Neglect cases, if any, to Class Counsel.

2.      On a monthly basis beginning 120 days after the Notice Date, HMA and KA shall provide monthly reports regarding all written requests for arbitration, Claims that have been escalated to the BBB, and their statuses.  Upon request, HMA and KA shall provide copies of written requests for arbitration to Class Counsel and copies of any communications concerning such arbitration review.  Class Counsel shall have the right to participate in the alternative dispute resolution process, including the right to participate in any written submission or telephonic hearing, but shall not be obligated to participate.

**E.      Payments To Class Members**

1.      For each Claim qualifying for a reimbursement payment under this Settlement Agreement, HMA (for Hyundai Class Vehicles) and KA (for Kia Class Vehicles) shall mail to the Claimant, at the address on the Claim Form, no later than 30 days after the Effective Date, a check or a reimbursement debit card, at the Class member's request.

2.      For checks that are not cashed within 120 days after issuance, Defendants or their Settlement Administrators will reissue the check upon request.  If the reissued check remains uncashed for 120 days as well, Claimants must request HMA or KA reissue the check again. HMA and KA will consider these second reissuance requests on a case-by-case basis depending on how much time has passed and if the request seems legitimate.

3.      The debit cards provided under this Settlement shall be redeemable for at least one year, without any fees charged by HMA, KA, or the debit card issuer, at ATMs and merchants that accept Visa cards.  The debit cards shall indicate their "use by" dates on their face.  The value of any debit card shall remain the property of HMA or KA unless and until it is expended by the Claimant.  HMA and KA will reissue any unused debit card at the request of the

Claimant if requested before the "use by" date of not less than one year from the issue date. Upon expiration of any debit card, any unexpended funds shall become the permanent property of HMA or KA. The intent of this section is for the funds to never become abandoned or subject to escheat.  It is not the intent of this section to capture the Claimant funds at expiration.

4.      The Parties acknowledge and agree that any and all provisions, rights, or benefits conferred by any law of any state or territory of the U.S., or any principle of common law, that provides for how residual amounts in a settlement fund should be distributed, including, but not limited to, California Code of Civil Procedure section 384(b), are not applicable to this Settlement Agreement.  Although the Parties expressly agree that this Settlement is not governed by California Code of Civil Procedure section 384(b) or other similar laws and does not create a settlement fund nor any "unpaid residue," the Class Representatives on behalf of themselves and the Class members nonetheless expressly acknowledge and agree that, to the extent permitted by law, they are waiving any protections of California Code of Civil Procedure section 384(b) and of any comparable statutory or common law provision of any other jurisdiction.

5.      The Parties acknowledge and agree that the forms of compensation set forth in section II do not constitute gift cards, gift certificates, or member rewards cards under any federal and/or state laws.

6.      Nothing in this Settlement Agreement shall be read to prevent HMA or KA from electing, at its sole discretion and on a case-by-case basis, to implement or to continue to implement any customer satisfaction or goodwill policy, program, or procedure at its discretion, that provides consideration to Class members without regard to the Class members' entitlement to relief under the Settlement.  No such election by HMA or KA, however, shall act to deprive a Class member or Claimant of any of the benefits available under the Settlement.

## IV.     NOTICE TO THE CLASS

### A.     CAFA Notice

In compliance with the attorney general notification provision of the Class Action Fairness Act, 28 U.S.C. § 1715, HMA and KA shall provide notice of this Settlement to the Attorney General of the United States, and the attorneys general of each state or territory in which a Class member resides. HMA and KA shall file a certificate of service on the docket to confirm that CAFA notice has been issued.

**B.      Notice Deadline**

No later than the Notice Date, HMA and KA shall cause notice to the Class to be disseminated by U.S. mail, email, and the dedicated settlement website (with a link to the dedicated settlement website from www.hyundaiusa.com/myhyundai (for Hyundai Class Vehicles) or www.owners.kia.com (for Kia Class Vehicles)). The form and substance of all notices provided by HMA and KA to Class members shall be subject to prior input and approval from Class Counsel. The domain names of the dedicated settlement websites shall also be subject to prior input and approval from Class Counsel.

**C.      Individual Class Notice Methods**

1.      Following the Court granting preliminary approval of this Settlement, Defendants or their Settlement Administrators shall provide the Long Form Notice by direct U.S. mail, to all reasonably identifiable Class members. For purposes of identifying the requisite names and addresses, Defendants or their Settlement Administrators agree to provide, to the extent they have not already done so, all names and addresses of Class Vehicle owners, along with Class Vehicle VINs, to R.L. Polk & Company, or a similar third-party entity, who shall be authorized to use that information to obtain the names and most current addresses of Class Vehicle owners through state agencies. Because some states require a prior court order before vehicle owner and lessee information can be released, such information may not be available until after the Preliminary Approval Order is entered. Prior to mailing individual notice, Defendants or their Settlement Administrators shall conduct an address search through the United States Postal Service's National Change of Address database to update the address information for Class Vehicle owners. For each individual notice that is returned as undeliverable, Defendants or their Settlement Administrators shall use its best efforts to conduct an advanced address search using HMA's and KA's customer database information regarding the Class Vehicle owner to obtain a deliverable address.

2.      Additionally, Defendants or their Settlement Administrators shall provide by email, to all Class members for which HMA and KA maintain email addresses, a hyperlink to the dedicated settlement website discussed below and electronic versions of the Long Form Notice and Claim Form following the Court granting preliminary approval of this Settlement.

3.      Defendants or their Settlement Administrators shall each maintain a dedicated settlement website—the content and domain name of such are subject to prior Class Counsel

approval—which will contain: (i) instructions on how to obtain reimbursements; (ii) a mechanism by which Claimants can submit Claims electronically; (iii) instructions on how to contact Defendants or their Settlement Administrators for assistance with their Claims; (iv) the Long Form Notice; (v) the Pamphlet; (vi) the Claim Form; (vii) this Settlement Agreement; (viii) any orders issued in this Action approving or disapproving of the proposed Settlement; and (ix) any other information the Parties determine is relevant to the Settlement.  Defendants or their Settlement Administrators shall make the same information available to Class members through www.hyundaiusa.com/myhyundai and www.owners.kia.com via links to the dedicated settlement websites (apart from the mechanism for submitting Claims).  The dedicated settlement websites shall also offer the ability for visitors to enter their VINs without completing a Claim Form to determine if their vehicles are indeed Class Vehicles.

4.      Defendants or their Settlement Administrators shall be prepared, through Defendants' customer service departments, to respond to questions regarding the status of submitted Claims, how to submit a Claim, and other aspects of this Settlement.  As may be appropriate from time to time, Defendants and Class Counsel may consult with one another concerning proposed responses and other information to be provided to Class Members.  Defendants or their Settlement Administrators shall maintain a dedicated toll-free telephone number for Class members to call.  The telephone numbers shall be listed on the Long Form Notice, Pamphlet, Claim Form, and the dedicated settlement websites.

5.      Nothing herein shall restrict Class Counsel's communications with, or efforts to inform, Class Members of the Settlement or benefits available thereunder.

**D.      Notice Reporting to Class Counsel**

For a period ending 90 days after the Notice Date, Defendants or their Settlement Administrators shall provide Class Counsel with reasonable periodic reports of the total number of notices sent to Class members by U.S. mail and email, along with the numbers of notices returned as undeliverable.  The first report shall be provided to Class Counsel no more than 15 business days after notices have been sent to Class members.  Defendants or their Settlement Administrators shall communicate with Class Counsel regarding delivery of notice and the number of Class members who have responded to the notice.

### E.      Pamphlet Dissemination

1.      Within 120 days after the Final Approval Date, Defendants or their Settlement Administrators shall provide a copy of the company's version of the Pamphlet by direct U.S. mail to all reasonably identifiable Class members who are current owners or lessees of Class Vehicles (*i.e.*, HMA and KA need not send the Pamphlet to former owners or lessees) and identify the VIN, and if reasonably practical, the model, and model year of the Class Vehicle to which the Pamphlet applies.  Defendants or their Settlement Administrators shall use the name and address information compiled through the steps described in section IV.C.1 and the claims process pursuant to the Settlement Agreement.

2.      Also within 120 days after the Final Approval Date, Defendants or their Settlement Administrators shall each provide an electronic version of the Pamphlet by email to all Class members who are current owners or lessees of Class Vehicles (*i.e.*, HMA and KA need not send the Pamphlet to former owners or lessees) for which HMA and KA maintain email addresses.

3.      Beginning no later than two weeks after the Final Approval Date, HMA and KA shall provide the Pamphlet—in both hard copy and electronic form—to each of its authorized dealerships, with instruction to disseminate (i) the Pamphlet to any person who presents a Class Vehicle for maintenance or service of any type and (ii) information regarding HMA's and KA's product improvement campaigns, including about the free KSDS update.

## V.      ATTORNEYS' FEES AND SERVICE PAYMENTS

1.      Plaintiffs, through Class Counsel, will petition the Court for an attorneys' fee award, cost award, and for Class Representative service payments.  This petition by Plaintiffs, through Class Counsel, is inclusive of an attorneys' fee and cost award sought on behalf of Plaintiffs' Counsel, including any attorneys currently or previously affiliated with those law firms.

2.      Plaintiffs will seek an amount not to exceed $12,000,000 in attorneys' fees and actual litigation expenses.  Defendants may oppose unless an agreement on fees is reached prior to moving for Final Approval.

3.      Subject to entry of the Final Approval Order and Judgment pursuant to section VII.C, HMA and KA will not oppose, undermine, or solicit others to oppose or undermine Class Representative service payments in the amount of $5,000 to each Class Representative who is or

has been deposed in this Action, and $3,500 to each Class Representative who is not deposed in this Action.

       4.     HMA and KA agree to pay the attorneys' fees, costs, and service payments separate and apart from, and in addition to, the relief provided to the Class.

       5.     HMA and KA shall pay Class Counsel the fees, expenses, and service payments awarded by the Court within the later of 30 days following (i) the Effective Date or (ii) the first date after the Court enters an order awarding fees, expenses, and service payments, and all appellate rights with respect to said order have expired or been exhausted in such a manner as to affirm the order.  Within 3 days following (i) the Effective Date or (ii) the first date after the Court enters an order awarding fees, expenses, and service payments, and all appellate rights with respect to said order have expired or been exhausted in such a manner as to affirm the order, Class Counsel shall provide HMA and KA, for each payee, a W-9 and wire instructions on their firm letterhead for the payment to Class Counsel of fees, expenses, and service payments awarded by the Court.

## VI.   MUTUAL RELEASE

       1.     Upon entry of a Court order granting final approval of the Settlement and entering judgment pursuant to section VII.C below, Releasors irrevocably release, waive, and discharge any and all past, present, and future liabilities, claims, causes of action, legal claims, damages, costs, attorneys' fees, losses, or demands that have been brought or could have been brought, whether known or unknown, existing or potential, or suspected or unsuspected relating to Class Vehicles against Releasees, whether or not specifically named herein, asserted or unasserted, under or pursuant to any statute, regulation, common law, or equitable principle, based on (i) the facts alleged in any complaint filed in the Action and all legal claims of whatever type or description arising out of, that may have arisen as a result of, or which could have been brought based on, any of the facts, acts, events, transactions, occurrences, courses of conduct, representations, omissions, circumstances or other matters pleaded in complaints filed in the Action, and (ii) claims covered by and remedied under the 15-Year/150,000-Mile Extended Warranty and other benefits described in sections II.A through II.I (including the 15-Year/150,000-Mile Extended Warranty, Repair Reimbursements, Repair-Related Transportation and Towing Reimbursements, Inconvenience Due to Repair Delays, Incidentals for Qualifying Fire or Qualifying Failure, Loss of Value for Certain Sold or Traded-In Vehicles, Loss of

Vehicle By Qualifying Fire, and Qualifying Failure or Qualifying Fire Rebate), including those
related to issues of oil consumption (that are the causal result of connecting rod bearing failure),
oil maintenance (that are the causal result of connecting rod bearing failure), and vehicle fires
originating in the engine compartment.

2.      The Settlement Agreement and release do not release claims for (i) death, (ii)
personal injury, (iii) damage to tangible property other than a Class Vehicle, or (iv) subrogation.

3.      The release effected by this Settlement Agreement is intended to be a specific
release and not a general release.  If, despite, and contrary to the Parties' intention, a court
construes the release as a general release under California law and determines that Section 1542
of the California Civil Code is applicable to the release, the Class Representatives, on behalf of
themselves and all Class members, hereby expressly waive and relinquish to the fullest extent
permitted by law, the rights provided by Section 1542 of the California Civil Code, which
provides:

> *Certain Claims Not Affected By General Release:*  *A general release does not
> extend to claims that the creditor or releasing party does not know or suspect to
> exist in his or her favor at the time of executing the release and that, if known by
> him or her, would have materially affected his or her settlement with the debtor or
> released party.*

Each of the Class Representatives expressly acknowledges that the Class Representative has
been advised by Class Counsel of the contents and effects of Section 1542, and with knowledge,
each of the Class Representatives hereby expressly waives, on behalf of the Class Representative
and all Class members, whatever benefits the Class Representatives and the Class members may
have had pursuant to such section.  Each of the Class Representatives hereby expressly waives,
on behalf of the Class Representative and all Class members, the benefit of any law of any state
or territory of the United States, federal law or principle of common law, or of international or
foreign law, which is similar, comparable, or equivalent to Section 1542 of the California Civil
Code.

4.      Plaintiffs and the Class members recognize that, even if they later discover facts
in addition to or different from those which they now know or believe to be true, they
nevertheless agree that, upon entry of the Final Approval Order and Judgment, Releasors fully,
finally, and forever settle and release any and all legal claims against Releasees.  The Parties

acknowledge that this waiver and release were bargained for, and are material elements of the Settlement.

5.      By this Settlement Agreement, HMA, KA, HMC, and KC release the Plaintiffs and Plaintiffs' Counsel from any and all claims or causes of action that were, or could have been, asserted by HMA, KA, HMC, and KC, pertaining to this Action or Settlement.  HMA, KA, HMC, and KC recognize that, even if they later discover facts in addition to or different from those which they now know or believe to be true, both entities nevertheless agree that, upon entry of an order granting final approval to this Settlement and entering judgment, HMA, KA, HMC, and KC fully, finally, and forever settle and release any and all such claims.  The Parties acknowledge that this waiver and release were bargained for, and are material elements of the Settlement.

6.      This Settlement and the release in the preceding paragraph do not affect the rights of Class members who timely and properly request exclusion from the Class, or anyone encompassed within the class definitions set forth in the complaints in this Action who are not a member of the Class defined in this Settlement Agreement, including but not limited to the named plaintiffs and putative class members in *Engine II* who are not expressly named, identified, or encompassed in this Settlement Agreement.  The Parties do not intend this Settlement Agreement and release to affect any legal claims that arise out of a consumer's purchase or use of any vehicle other than a Class Vehicle.  The Settlement Agreement and release do not release claims for (i) death, (ii) personal injury, (iii) damage to tangible property other than a Class Vehicle, or (iv) subrogation.

7.      The administration and consummation of the Settlement shall be under the authority of the Court.  The Court shall retain jurisdiction to protect, preserve, and implement the Settlement.  The Court retains jurisdiction to enter such further orders as may be necessary or appropriate in administering and implementing the terms and provisions of the Settlement, including, but not limited to, orders enjoining Class members from prosecuting claims that are released pursuant to the Settlement and allowing for discovery related to objectors.

8.      Upon issuance of the Final Approval Order and Judgment: (i) the Settlement shall be the exclusive remedy for Class members and subsequent Class Vehicle owners and lessees; (ii) Releasees shall not be subject to liability or expense of any kind to any Class members or subsequent Class Vehicle owners and lessees for reasons related to the Action except as set forth

herein; and (iii) Class members and subsequent Class Vehicle owners and lessees shall be permanently barred from initiating, asserting, or prosecuting any and all released claims against the Releasees.

## VII.   SETTLEMENT APPROVAL PROCESS

### A.   Intention to Complete Settlement

1.      The Parties shall cooperate with each other in good faith to carry out the purposes of and effectuate this Settlement, shall promptly perform their respective obligations hereunder, and shall promptly take any and all actions and execute and deliver any and all additional documents and all other materials and/or information reasonably necessary or appropriate to carry out the terms of this Settlement and the transactions contemplated hereby.  Plaintiffs shall prepare all preliminary approval and final approval papers.

2.      If the Preliminary Approval Order or the Final Approval Order and Judgment are not obtained from the Court in the form contemplated by this Settlement, or, if the Final Approval Order and Judgment is reversed or materially modified on appeal, this Settlement should be null and void *ab initio* upon election of any of the Parties and have no further force and effect with respect to any of the Parties in this Action.  Nothing in this provision shall affect HMA and KA's obligation to pay all costs reasonably incurred by the settlement administration process.

### B.   Preliminary Court Approval

1.      Promptly after execution of this Settlement by the Parties, counsel for the Parties shall present this Settlement to the Court for review and jointly seek entry of an order that preliminary certifies the Class as a settlement class, grants preliminary approval of this Settlement, and directs HMA and KA to provide notice of the Settlement in the manners listed herein.

2.      No later than 20 days before the Final Approval Hearing of the Settlement, HMA and KA shall provide affidavits for the Court, with a copy to Class Counsel, attesting that notice was disseminated in a manner consistent with the terms of this Settlement Agreement, or as otherwise required by the Court.

### C.   Final Court Approval

1.      Once the Court enters a Preliminary Approval Order, counsel for the Parties shall use their best efforts to promptly obtain entry of a Final Approval Order and Judgment that:

a.   Finds the Settlement to be fair, reasonable, and adequate;

b.   Finds that the Class notice given constitutes the best notice practicable;

c.   Approves the release specified in section VI as binding and effective as to all Class members who have not properly excluded themselves from the Class;

d.   Directs that judgment be entered on the terms stated herein; and

e.   Provides that the Court will retain jurisdiction over the Parties and Class members to enforce the terms of the final order and judgment.

2.      Upon entry of the Final Approval Order and Judgment, this Action shall be dismissed, on its merits and with prejudice, with respect to all Plaintiffs and all Class members who have not properly excluded themselves from the Class, and without prejudice as to anyone else, subject to the continuing jurisdiction of the Court, including but not limited to the claims of the named plaintiffs and putative class members in *Engine II* who are not expressly named, identified, or encompassed in this Settlement Agreement.

## VIII.   REQUESTS FOR EXCLUSION

1.      The provisions of this section shall apply to any request by a Class member for exclusion from the Class.

2.      Any Class member may make a request for exclusion by submitting such request in writing as set forth in the Class notice.

3.      Any request for exclusion must be submitted not later than the date specified in the Court's Preliminary Approval Order.

4.      Any request for exclusion shall (i) state the Class member's full name and current address, (ii) provide the model, model year, and VIN of their Class Vehicle(s) and the approximate date(s) of purchase or lease, and (iii) specifically and clearly state the Class member's desire to be excluded from the Settlement and from the Class.

5.      Failure to comply with these requirements and to timely submit the request for exclusion will result in the Class member being bound by the terms of the Settlement Agreement.

6.      Any Class member who submits a timely request for exclusion may not file an objection to the Settlement and shall be deemed to have waived any rights or benefits under this Settlement Agreement.

7.      HMA and KA shall report the names of all Class members who have submitted a request for exclusion to Class Counsel on a weekly basis, beginning 30 days after the Notice Date.

8.      Class Counsel represent and warrant that they have no other agreements with other counsel respecting Class members, including any agreements with respect to referring, soliciting, or encouraging any Class members to request to be excluded (or "opt out") from this agreement.

9.      Upon certification of the Class in connection with the Preliminary Approval of this agreement, Class Counsel agree to seek in the Preliminary Approval Order from the Court a provision encouraging all written communications to multiple Class members with respect to this Agreement to be reviewed and approved by Class Counsel and the Court, and Class Counsel agree to abide by that provision as may be required by the Court.

10.     Objections and Requests for exclusions shall be permitted on an individual basis only.  Any purported "class-wide" objections or opt-outs will be construed as being submitted only on behalf of the person who actually submitted the exclusion.

## IX.   OBJECTIONS

1.      The Parties will request that the Court enter an order requiring any Class member who wishes to enter an objection to be considered to submit a written notice of objection to HMA and KA by the deadline set in the Court's Preliminary Approval Order.  HMA and KA will promptly send any received objections to Class Counsel.

2.      To state a valid objection to the Settlement, an objecting Class member must provide the following information in their written objection: (i) the case name and number, *In re: Hyundai and Kia Engine Litigation II*, No. 8:17-cv-02223-JLS-JDE (C.D. Cal.); (ii)  the objecting Class member's full name, current address, email, if any, and current telephone number; (iii) the model year and VIN(s) of the objecting Class member's Class Vehicle(s); (iv) a statement of the objection(s), including all factual and legal grounds for the position; (v) copies of any documents the objector wishes to submit in support; (vi) the name and address of the lawyer(s), if any, who is representing the objecting Class member in making the objection or who may be entitled to compensation in connection with the objection; (vii) a statement of whether the objecting Class member intends to appear at the Final Approval Hearing, either with or without counsel; (viii) the identity of all counsel (if any) who will appear on behalf of the

objecting Class member at the Final Approval Hearing and all persons (if any) who will be called to testify in support of the objection; and (ix) the signature of the objecting Class member, in addition to the signature of any attorney representing the objecting Class member in connection with the objection, and date of the objection. In addition, any Class member objecting to the Settlement shall provide a list of any other objections submitted by the objector, or the objector's counsel, to any class action settlements submitted in any court in the United States in the previous five years. If the Class member or their counsel has not made any such prior objection, the Class member shall affirmatively so state in the written materials provided with the objection.

3.      If the objecting Class member intends to appear, in person or by counsel, at the Final Approval Hearing, the objecting Class member must so state in the objection. Any Class member who does not state their intention to appear in accordance with the applicable deadlines and other specifications, or who has not filed an objection in accordance with the applicable deadlines and other specifications, will be deemed to have waived any objections to the Settlement and can be barred from speaking or otherwise presenting any views at the Final Approval Hearing.

4.      The Parties will request that the Court enter an order providing that the filing of an objection allows Class Counsel or counsel for HMA and KA to notice such objecting Class member for and take their deposition consistent with the Federal Rules of Civil Procedure at an agreed-upon location, and to seek any documentary evidence or other tangible things that are relevant to the objection. Failure by an objector to make themself available for a deposition or comply with expedited discovery requests may result in the Court striking the objection and otherwise denying that Class member the opportunity to be heard. The Court may tax the costs of any such discovery to the objector or the objector's counsel should the Court determine that the objection is frivolous or made for improper purpose.

5.      Any objector who seeks a fee for their objection shall do so as prescribed under Federal Rule of Civil Procedure 23(e)(5)(B).

6.      These procedures and requirements for objecting are intended to ensure the efficient administration of justice and the orderly presentation of any Class member's objection to the Settlement, in accordance with the due process rights of all Class members.

7.    Any Class member who fails to file and serve timely a written objection containing all of the information listed in paragraphs 2 and 3 above, including notice of their intent to appear at the Final Approval Hearing, shall not be permitted to object to the Settlement and shall be foreclosed from seeking any review of the Settlement or the terms of the Settlement Agreement by any means, including but not limited to an appeal.

8.    The Parties shall promptly inform the Court of any consideration sought by an objector and the circumstances of such a request.

## X.    MISCELLANEOUS

### A.    Choice of Law

This Settlement Agreement shall be governed by and construed in accordance with the substantive laws of the State of California without giving effect to any choice or conflict of law provision, or rule that would cause the application of the laws of any other jurisdiction.

### B.    Not Evidence

1.    The Parties understand and acknowledge that this Settlement Agreement constitutes a compromise and settlement of disputed claims.  No action taken by the Parties, either previously or in connection with the negotiations or proceedings connected with this Settlement Agreement, shall be deemed or construed to be an admission of the truth or falsity of any claims or defenses heretofore made or an acknowledgment or admission by any party of any fault, liability or wrongdoing of any kind whatsoever to any other party.

2.    Neither this Settlement Agreement nor any act performed or document executed pursuant to or in furtherance of it: (a) is, or may be deemed to be, or may be used as, an admission of, or evidence of, the validity of any legal claim made by Plaintiffs or Class members, or of any wrongdoing or liability of HMA, KA, HMC, and/or KC, or (b) is, or may be deemed to be, or may be used as, an admission of, or evidence of, any fault or omission of Releasees in any proceeding in any court, administrative agency, or other tribunal.

3.    This provision shall survive the expiration or voiding of the Settlement Agreement.

### C.    Headings

The headings of the sections and paragraphs of this Settlement Agreement are included for convenience only and shall not be deemed to constitute part of this Agreement or to affect its construction.

### D.     Effect of Exhibits

The exhibits to this Settlement Agreement are an integral part of the Settlement and are expressly incorporated and made a part of this Settlement Agreement.

### E.     Entire Agreement

This Settlement Agreement represents the entire agreement and understanding among the Parties and supersedes all prior proposals, negotiations, agreements, and understandings relating to the subject matter of this agreement.  The Parties acknowledge, stipulate, and agree that no covenant, obligation, condition, representation, warranty, inducement, negotiation, or understanding concerning any part or all of the subject matter of this agreement has been made or relied on except as expressly set forth in this Settlement Agreement.  No modification or waiver of any provisions of this Settlement Agreement shall in any event be effective unless the same shall be in writing and signed by the person or Party against whom enforcement of the Agreement is sought.

### F.     Counterparts

This Settlement Agreement may be executed in one or more counterparts, each of which shall be deemed an original as against any Party who has signed it, and all of which shall be deemed a single agreement.

### G.     Arm's-Length Negotiations

1.     The Parties have negotiated all of the terms and conditions of this Settlement Agreement at arm's length.  The provisions for attorneys' fees and costs and service awards set forth herein were negotiated separately from and after agreement on the provisions for relief to Plaintiffs and the Class.

2.     All terms, conditions, and exhibits in their exact form are material and necessary to this Settlement Agreement and have been relied upon by the Parties in entering into this Settlement Agreement.

3.     The determination of the terms of, and the drafting of, this Settlement Agreement has been by mutual agreement after negotiation, with consideration by and participation of all Parties and their counsel.  Since this Settlement Agreement was drafted with the participation of all Parties and their counsel, the presumption that ambiguities shall be construed against the drafter does not apply. The Parties were represented by competent and effective counsel throughout the course of settlement negotiations and in the drafting and execution of this

Settlement Agreement, and there was no disparity in bargaining power among the Parties to this Agreement.

### H.   Public Statements

1.      The Parties and their Counsel agree to keep the substance of this agreement confidential until the date on which the Settlement Agreement is filed with the Court, provided that this section shall not prevent HMA or KA from disclosing such information, prior to the date on which the agreement is filed, to state and federal agencies, independent accountants, actuaries, advisors, financial analysts, insurers, or attorneys, nor shall it prevent the Parties and their Counsel from disclosing such information to persons or entities (such as experts, courts, co-counsel, and/or administrators) to whom the Parties agree disclosure must be made in order to effectuate the terms and conditions of the agreement; provided further that HMA and KA may disclose publicly the terms of the agreement that it deems necessary to meet its regulatory obligations or fiduciary duties; and provided further that Plaintiffs may disclose the terms to their expert(s).

2.      Neither the Parties nor their Counsel shall issue (or cause any other Person to issue) any press release concerning the existence or substance of this agreement, excepting the jointly-created press release described as follows.  The Parties may publicly release and announce the fact and terms of the settlement, subject to the Parties reaching mutual written consent on the contents of the press release prior to filing for preliminary approval.  Excepting such announcement and the Exhibits to this Agreement, neither the Parties nor their Counsel shall issue (or cause any other Person to issue) any other press release concerning this Agreement or the settlement set forth herein, unless otherwise agreed to in writing and neither the Parties or their Counsel shall make (or cause any other Person to make) any statements of any kind to the press concerning this Agreement or the settlement set forth herein, except that a Party or Party's counsel may respond to an inquiry from a member of the press by (a) directing the member of the press to a public resource to review or obtain a copy of this Agreement or the Class Notice or (b) by supplying additional information to the member of the press, provided that the responding Party will provide such additional information to the other Parties as promptly as practicable.  A Party or Party's counsel shall provide notice to the other Parties before responding to a press inquiry whenever reasonably possible.  If such notice cannot reasonably be provided before responding to a press inquiry, the responding Party or Party's Counsel shall

notify the other Parties promptly after responding to the press inquiry.  This paragraph does not prevent Class Counsel from communicating with individual Class members about the Settlement.

**I.**    **Good Faith**

The Parties acknowledge that prompt approval, consummation, and implementation of this Settlement is essential.  The Parties shall cooperate with each other in good faith to carry out the purposes of and effectuate this Settlement, shall promptly perform their respective obligations hereunder, and shall attempt to resolve any dispute that may arise under this Settlement in a good faith and expeditious manner.

**J.**    **Continuing Jurisdiction**

The Parties agree the Court may retain continuing and exclusive jurisdiction over them, and all Class members, for the purpose of the administration and enforcement of this Settlement.

**K.**    **Extensions of Time**

The Parties may agree upon a reasonable extension of time for deadlines and dates reflected in this Settlement Agreement without further notice (subject to Court approval as to court dates).

**L.**    **Service of Notice**

Whenever, under the terms of this Settlement Agreement, written notice is required to be given to HMA, HMC, KC, KA, or Class Counsel, such service or notice shall be directed to the individuals and addresses specified below, unless those individuals or their successors give notice to the other parties in writing:

<u>As to Plaintiffs</u>:

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Fax: (206) 623-0594
Email: steve@hbsslaw.com

Matthew Schelkopf
SAUDER SCHELKOPF LLC
1109 Lancaster Avenue
Berwyn, PA 19312
Telephone: (610) 200-0581
Email: mds@sstriallawyers.com

Gretchen Freeman Cappio

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Telephone: (206) 623-1900
Fax: (206) 623-3384
Email: gcappio@kellerrohrback.com

As to HMA, HMC,
KC and KA:                   Shon Morgan
                             QUINN EMANUEL URQUHART & SULLIVAN, LLP
                             865 S. Figueroa St., 10th Floor
                             Los Angeles, CA 90017

IN WITNESS HEREOF, each of the Parties hereto has caused this agreement to be executed, as of the day(s) set forth below.

Dated: _August 26_, 2022          By: _____

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Fax: (206) 623-0594
Email: steve@hbsslaw.com

Matthew Schelkopf
SAUDER SCHELKOPF LLC
1109 Lancaster Avenue
Berwyn, PA 19312
Telephone: (610) 200-0581
Email: mds@sstriallawyers.com

Gretchen Freeman Cappio
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Telephone: (206) 623-1900
Fax: (206) 623-3384
Email: gcappio@kellerrohrback.com

Bonner C. Walsh
WALSH PLLC
1561 Long Haul Road
Grangeville, ID 83530
Telephone: (541) 359-2827
Facsimile: (866) 503-8206
Email: bonner@walshpllc.com

Adam Gonnelli, Esq.
LAW OFFICE OF ADAM R. GONNELLI, L.L.C.
707 Alexander Road
Bldg. 2, Ste. 208
Princeton, NJ 08540
Tel: (917) 541-7110
Fax: (315) 446-7521
Email: adam@arglawoffice.com

Benjamin L. Bailey
BAILEY GLASSER LLP

209 Capitol Street
Charleston, WV 25301
Telephone: (304) 345-6555
Facsimile: (304) 342-1110
Email: bbailey@baileyglasser.com

W. Daniel Miles, III
BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
272 Commerce Street
Montgomery, AL 36104
Telephone: (334) 269-2343
Facsimile: (334) 954-7555
Email: dee.miles@beasleyallen.com

*Counsel for Plaintiffs*, *In re: Hyundai and Kia Engine Litigation II*, No. 8:18-cv-02223-JLS-JDE (C.D. Cal.)

Dated: _August 26_, 2022          By: _____
                                      Shon Morgan
                                      **QUINN EMANUEL URQUHART
                                      & SULLIVAN, LLP**
                                      865 S. Figueroa St., 10th Floor
                                      Los Angeles, CA 90017

*Counsel for Defendants Hyundai Motor America, Hyundai Motor Company, Kia Corporation, and Kia America, Inc.*

Dated: _August 26_, 2022          By: _____
                                      Jason Erb
                                      General Counsel
                                      For Hyundai Motor America and Hyundai Motor
                                      Company *(agent)*

Dated: _____, 2022      By: _____
                                      Mark Goldzweig
                                      Executive Director and Associate General Counsel
                                      For Kia Corporation and Kia America, Inc.

209 Capitol Street
Charleston, WV 25301
Telephone: (304) 345-6555
Facsimile: (304) 342-1110
Email: bbailey@baileyglasser.com

W. Daniel Miles, III
BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
272 Commerce Street
Montgomery, AL 36104
Telephone: (334) 269-2343
Facsimile: (334) 954-7555
Email: dee.miles@beasleyallen.com

*Counsel for Plaintiffs, In re: Hyundai and Kia Engine Litigation II*, No. 8:18-cv-02223-JLS-JDE (C.D. Cal.)

Dated: _____, 2022          By: _____

Shon Morgan
**QUINN EMANUEL URQUHART**
**& SULLIVAN, LLP**
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017

*Counsel for Defendants Hyundai Motor America, Hyundai Motor Company, Kia Corporation, and Kia America, Inc.*

Dated: _____, 2022          By: _____

Jason Erb
General Counsel
For Hyundai Motor America and Hyundai Motor
Company

Dated: Aug 26, 2022          By: _____

Mark Goldzweig
Executive Director and Associate General Counsel
For Kia Corporation and Kia America, Inc.

## Representative Plaintiff Signatures

_Leslie Flaherty_
Leslie Flaherty

Dated: 8·29·22

Joanne Caballero

Dated:

Sharon Moon

Dated:

Stanton Vignes

Dated:

Kesha Franklin Marbury

Dated:

Christina Roos

Dated:

James H. Palmer

Dated:

John H. Caro

Dated:

Ashley Gagas

Dated:

Nicole Thornhill

Dated:

Janet O'Brien

Dated:

James Carpenter

Dated:

Robert Buettner

Dated:

James J. Martino

Dated:

## Representative Plaintiff Signatures

_____

Leslie Flaherty

Dated:_____

_____

Sharon Moon

Dated:_____

_____

Kesha Franklin Marbury

Dated:_____

_____

James H. Palmer

Dated:_____

_____

Ashley Gagas

Dated:_____

_____

Janet O'Brien

Dated:_____

_____

Robert Buettner

Dated:_____

*Joanna Caballero*

Joanna Caballero

Dated: 8/30/2022

_____

Stanton Vignes

Dated:_____

_____

Christina Roos

Dated:_____

_____

John H. Caro

Dated:_____

_____

Nicole Thornhill

Dated:_____

_____

James Carpenter

Dated:_____

_____

James J. Martino

Dated:_____

## Representative Plaintiff Signatures

_____          _____
Leslie Flaherty                          Joanne Caballero

Dated:_____          Dated:_____


_____          _____
Sharon Moon                              Stanton Vignes

Dated:____8/26/22_____         Dated:_____


_____          _____
Kesha Franklin Marbury                   Christina Roos

Dated:_____          Dated:_____


_____          _____
James H. Palmer                          John H. Caro

Dated:_____          Dated:_____


_____          _____
Ashley Gagas                             Nicole Thornhill

Dated:_____          Dated:_____


_____          _____
Janet O'Brien                            James Carpenter

Dated:_____          Dated:_____


_____          _____
Robert Buettner                          James J. Martino

Dated:_____          Dated:_____

**<u>Representative Plaintiff Signatures</u>**


_____        _____
Leslie Flaherty                                           Joanna Caballero

Dated:_____        Dated:_____


_____        Stanton Vignes
                                                                _____
Sharon Moon                                          Stanton Vignes

Dated:_____        Dated: 09/05/2022_____


_____        _____
Kesha Franklin Marbury                          Christina Roos

Dated:_____        Dated:_____


_____        _____
James H. Palmer                                       John H. Caro

Dated:_____        Dated:_____


_____        _____
Ashley Gagas                                           Nicole Thornhill

Dated:_____        Dated:_____


_____        _____
Janet O'Brien                                          James Carpenter

Dated:_____        Dated:_____


_____        _____
Robert Buettner                                       James J. Martino

Dated:_____        Dated:_____

## Representative Plaintiff Signatures

Leslie Flaherty
_____

Dated:_____

Joanne Caballero
_____

Dated:_____


Sharon Moon
_____

Dated:_____

Stanton Vignes
_____

Dated:_____


Kesha Franklin Marbury
_____

Dated: 8·22·2022

Christina Roos
_____

Dated:_____


James H. Palmer
_____

Dated:_____

John H. Caro
_____

Dated:_____


Ashley Gagas
_____

Dated:_____

Nicole Thornhill
_____

Dated:_____


Janet O'Brien
_____

Dated:_____

James Carpenter
_____

Dated:_____


Robert Buettner
_____

Dated:_____

James J. Martino
_____

Dated:_____

## Representative Plaintiff Signatures

_____
Leslie Flaherty

Dated:_____

_____
Sharon Moon

Dated:_____

_____
Kesha Franklin Marbury

Dated:_____

_____
James H. Palmer

Dated:_____

_____
Ashley Gagas

Dated:_____

_____
Janet O'Brien

Dated:_____

_____
Robert Buettner

Dated:_____

_____
Joanne Caballero

Dated:_____

_____
Stanton Vignes

Dated:_____

_Christina Roos_
**Christina Roos**

Dated: 8-22-22

_____
John H. Caro

Dated:_____

_____
Nicole Thornhill

Dated:_____

_____
James Carpenter

Dated:_____

_____
James J. Martino

Dated:_____

## <u>Representative Plaintiff Signatures</u>

_____
Leslie Flaherty

Dated:_____


_____
Sharon Moon

Dated:_____


_____
Kesha Franklin Marbury

Dated:_____


_____
James H. Palmer

Dated: **Aug 22, 2022**


_____
Ashley Gagas

Dated:_____


_____
Janet O'Brien

Dated:_____


_____
Robert Buettner

Dated:_____


_____
Joanne Caballero

Dated:_____


_____
Stanton Vignes

Dated:_____


_____
Christina Roos

Dated:_____


_____
John H. Caro

Dated:_____


_____
Nicole Thornhill

Dated:_____


_____
James Carpenter

Dated:_____


_____
James J. Martino

Dated:_____

## **Representative Plaintiff Signatures**

Leslie Flaherty

Dated:_____

Sharon Moon

Dated:_____

Kesha Franklin Marbury

Dated:_____

James H. Palmer

Dated:_____

Ashley Gagas

Dated:_____

Janet O'Brien

Dated:_____

Robert Buettner

Dated:_____

Joanne Caballero

Dated:_____

Stanton Vignes

Dated:_____

Christina Roos

Dated:_____

*John H. Caro*
John H. Caro (Aug 24, 2022 14:38 EDT)

John H. Caro

Dated: Aug 24, 2022

Nicole Thornhill

Dated:_____

James Carpenter

Dated:_____

James J. Martino

Dated:_____

## Representative Plaintiff Signatures

| | |
|---|---|
| Leslie Flaherty | Joanne Caballero |
| Dated: | Dated: |
| | |
| Sharon Moon | Stanton Vignes |
| Dated: | Dated: |
| | |
| Kesha Franklin Marbury | Christina Roos |
| Dated: | Dated: |
| | |
| James H. Palmer | John H. Caro |
| Dated: | Dated: |

DocuSign by:

Ashley Gagas

Dated: 8/22/2022

Nicole Thornhill

Dated:

| | |
|---|---|
| Janet O'Brien | James Carpenter |
| Dated: | Dated: |
| | |
| Robert Buettner | James J. Martino |
| Dated: | Dated: |

## Representative Plaintiff Signatures

| | |
|---|---|
| Leslie Flaherty | Joanne Caballero |
| Dated: | Dated: |
| | |
| Sharon Moon | Stanton Vignes |
| Dated: | Dated: |
| | |
| Kesha Franklin Marbury | Christina Roos |
| Dated: | Dated: |
| | |
| James H. Palmer | John H. Caro |
| Dated: | Dated: |
| | |
| Ashley Gagas | Nicole Thornhill |
| Dated: | Dated: 08/24/2022 |
| | |
| Janet O'Brien | James Carpenter |
| Dated: | Dated: |
| | |
| Robert Buettner | James J. Martino |
| Dated: | Dated: |

## Representative Plaintiff Signatures

| | |
|---|---|
| Leslie Flaherty | Joanne Caballero |
| Dated:_____ | Dated:_____ |
| | |
| Sharon Moon | Stanton Vignes |
| Dated:_____ | Dated:_____ |
| | |
| Kesha Franklin Marbury | Christina Roos |
| Dated:_____ | Dated:_____ |
| | |
| James H. Palmer | John H. Caro |
| Dated:_____ | Dated:_____ |
| | |
| Ashley Gagas | Nicole Thornhill |
| Dated:_____ | Dated:_____ |
| | |
| Janet O'Brien | James Carpenter |
| Dated:_____6/26/2022_____ | Dated:_____ |
| | |
| Robert Buettner | James J. Martino |
| Dated:_____ | Dated:_____ |

**<u>Representative Plaintiff Signatures</u>**

---
Leslie Flaherty

Dated:_____

---
Joanne Caballero

Dated:_____

---
Sharon Moon

Dated:_____

---
Stanton Vignes

Dated:_____

---
Kesha Franklin Marbury

Dated:_____

---
Christina Roos

Dated:_____

---
James H. Palmer

Dated:_____

---
John H. Caro

Dated:_____

---
Ashley Gagas

Dated:_____

---
Nicole Thornhill

Dated:_____

---
Janet O'Brien

Dated:_____

---
James Carpenter

Dated: 08.23.2022

---
Robert Buettner

Dated:_____

---
James J. Martino

Dated:_____

## Representative Plaintiff Signatures

_____          _____
Leslie Flaherty                          Joanne Caballero

Dated:_____          Dated:_____


_____          _____
Sharon Moon                              Stanton Vignes

Dated:_____          Dated:_____


_____          _____
Kesha Franklin Marbury                   Christina Roos

Dated:_____          Dated:_____


_____          _____
James H. Palmer                          John H. Caro

Dated:_____          Dated:_____


_____          _____
Ashley Gagas                             Nicole Thornhill

Dated:_____          Dated:_____


_____          _____
Janet O'Brien                            James Carpenter

Dated:_____          Dated:_____

Robert Buettner
_____          _____
Robert Buettner                          James J. Martino

Dated:_____August 25, 2022_____        Dated:_____

## Representative Plaintiff Signatures

---------------------------------     ---------------------------------

Leslie Flaherty                                   Joanne Caballero

Dated:_____     Dated:_____


Sharon Moon                                       Stanton Vignes

Dated:_____     Dated:_____


Kesha Franklin Marbury                 Christina Roos

Dated:_____     Dated:_____


James H. Palmer                             John H. Caro

Dated:_____     Dated:_____


Ashley Gagas                                   Nicole Thornhill

Dated:_____     Dated:_____


Janet O'Brien                                 James Carpenter

Dated:_____     Dated:_____

James J. Martino (Aug 30, 2022 21:09 EDT)

Robert Buettner                             James J. Martino

Dated:_____     Dated: Aug 30, 2022

_____          _____
Linda Short                              James Twigger

Dated: _____August 24, 2022_____         Dated: _____


_____          _____
Anthony DiPardo                          Jennifer DiPardo

Dated: _____         Dated: _____


_____          _____
Jeannett Smith                           Seane Ronfeldt

Dated: _____         Dated: _____


_____          _____
Gabrielle Alexander                      Tavis Carduff

Dated: _____         Dated: _____


_____          _____
Brian Frazier                            Chad Perry

Dated: _____         Dated: _____


_____
William Pressley

Dated: _____

_____          _____
Linda Short                              James Twigger

Dated: _____           Dated: 08/24/2022

_____          _____
Anthony DiPardo                          Jennifer DiPardo

Dated: _____           Dated: _____

_____          _____
Jeannett Smith                           Seane Ronfeldt

Dated: _____           Dated: _____

_____          _____
Gabrielle Alexander                      Tavis Carduff

Dated: _____           Dated: _____

_____          _____
Brian Frazier                            Chad Perry

Dated: _____           Dated: _____

_____
William Pressley

Dated: _____

Linda Short

Dated:

James Twigger

Dated:

Anthony DiPardo

Dated: August 25, 2022

Jennifer DiPardo

Dated: August 25, 2022

Jeannett Smith

Dated:

Seane Ronfeldt

Dated:

Gabrielle Alexander

Dated:

Tavish Carduff

Dated:

Brian Frazier

Dated:

Chad Perry

Dated:

William Pressley

Dated:

Linda Short

Dated:

James Twigger

Dated:

Anthony DiPardo

Dated:

Jennifer DiPardo

Dated:

Jeannett Smith

Dated: 08/30/2022

Seane Ronfeldt

Dated:

Gabrielle Alexander

Dated:

Tavis Carduff

Dated:

Brian Frazier

Dated:

Chad Perry

Dated:

William Pressley

Dated:

Linda Short

Dated:

James Twigger

Dated:

Anthony DiPardo

Dated:

Jennifer DiPardo

Dated:

Jeannett Smith

Dated:

*Seane Ronfeldt*
Seane Ronfeldt

Dated: 08/23/2022

Gabrielle Alexander

Dated:

Tavis Carduff

Dated:

Brian Frazier

Dated:

Chad Perry

Dated:

William Pressley

Dated:

Linda Short

Dated:

James Twigger

Dated:

Anthony DiPardo

Dated:

Jennifer DiPardo

Dated:

Jeannett Smith

Dated:

Seane Ronfeldt

Dated:

Gabrielle Alexander

Dated:                August 25, 2022

Tavish Carduff

Dated:

Brian Frazier

Dated:

Chad Perry

Dated:

William Pressley

Dated:

Linda Short                               James Twigger

Dated:_____               Dated:_____


Anthony DiPardo                           Jennifer DiPardo

Dated:_____               Dated:_____


Jeannett Smith                            Seane Ronfeldt

Dated:_____               Dated:_____

                                          _Tavish Carduff_____

Gabrielle Alexander                       Tavish Carduff

Dated:_____               Dated:____August 24, 2022_____


Brian Frazier                             Chad Perry

Dated:_____               Dated:_____


William Pressley

Dated:_____

Linda Short
_____

Dated:_____

James Twigger
_____

Dated:_____

Anthony DiPardo
_____

Dated:_____

Jennifer DiPardo
_____

Dated:_____

Jeannett Smith
_____

Dated:_____

Seane Ronfeldt
_____

Dated:_____

Gabrielle Alexander
_____

Dated:_____

Tavis Carduff
_____

Dated:_____

Brian Frazier
_____

Dated:____8/25/22_____

Chad Perry
_____

Dated:_____

William Pressley
_____

Dated:_____

_____          _____
Linda Short                        James Twigger

Dated: _____            Dated: _____


_____          _____
Anthony DiPardo                    Jennifer DiPardo

Dated: _____            Dated: _____


_____          _____
Jeannett Smith                     Seane Ronfeldt

Dated: _____            Dated: _____


_____          _____
Gabrielle Alexander                Tavish Carduff

Dated: _____            Dated: _____


_____          _____
Brian Frazier                      Chad Perry

Dated: _____            Dated: _____ August 25, 2022 _____


_____
William Pressley

Dated: _____

Linda Short

Dated:

James Twigger

Dated:

Anthony DiPardo

Dated:

Jennifer DiPardo

Dated:

Jeannett Smith

Dated:

Seane Ronfeldt

Dated:

Gabrielle Alexander

Dated:

Tavis Carduff

Dated:

Brian Frazier

Dated:

Chad Perry

Dated:

*William Pressley*

William Pressley

Dated: 08/25/2022

# EXHIBIT A

UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA

# <u>NOTICE OF PROPOSED CLASS SETTLEMENT</u>

## If you bought or leased one of these vehicles equipped with the specified corresponding engine below, you might benefit from a class action settlement:

| Model Year | Model | Engine |
|---|---|---|
| 2011–2015 | Sonata Hybrid (HEV) | Theta II 2.4-liter MPI Hybrid |
| 2016–2019 | Sonata Hybrid/Plug-In Hybrid (HEV/PHEV) | Nu 2.0-liter GDI Hybrid |
| 2010–2012 | Santa Fe | Theta II 2.4-liter MPI |
| 2010–2013 | Tucson | Theta II 2.4-liter MPI |
| 2014–2021 | Tucson | Nu 2.0-liter GDI |
| 2014 | Elantra Coupe | Nu 2.0-liter GDI |
| 2014–2016 | Elantra | Nu 2.0-liter GDI |
| 2014–2020 | Elantra GT | Nu 2.0-liter GDI |
| 2012–2017 | Veloster | Gamma 1.6-liter GDI |

*A federal court authorized this notice.  This is not a solicitation from a lawyer.*

*Your rights are affected whether you act or do not act.  Read this notice carefully.*

The purpose of this Notice is to inform you of a proposed Settlement of a class action lawsuit in California federal court called *In re: Hyundai and Kia Engine Litigation II*, No. 8:18-cv-02223-JLS-JDE (C.D. Cal.).  You are receiving this Notice because Hyundai Motor Company ("HMC") and Hyundai Motor America, Inc.'s ("HMA") (collectively "Hyundai") records indicate that you might be entitled to claim certain financial benefits offered by this Settlement.

The lawsuit alleges that certain Hyundai vehicles (called the "Class Vehicles" and listed below) have a defect that can cause engine seizure, stalling, engine failure, and possibly engine fire, and that some owners and lessees have been improperly denied repairs under the vehicle's warranty.  Hyundai has not been found liable for any claims alleged in the lawsuit.  The parties have instead reached a voluntary settlement in order to avoid lengthy litigation and thereby provide relief to Class Members.  People who owned or leased Class Vehicles, referred to as "Class Members," might be entitled to compensation if they submit valid and timely claims.

Under the proposed Settlement, and subject to proof, Hyundai will provide financial and other benefits for certain engine-related repairs and/or engine failures or engine fires.

To qualify for benefits under the Settlement you must have bought or leased a Class Vehicle, which are certain vehicle models originally equipped with or replaced with the respective corresponding genuine multi-port fuel injection ("MPI") or gasoline direct injection ("GDI") engine within Original Equipment Manufacturer ("OEM") specifications listed below:

- 2011–2015 model year Hyundai Sonata Hybrid (HEV) vehicles with a Theta II 2.4-liter MPI Hybrid engine;
- 2016–2019 model year Hyundai Sonata Hybrid/Plug-In Hybrid (HEV/PHEV) vehicles with a Nu 2.0-liter GDI Hybrid engine;
- 2010–2012 model year Hyundai Santa Fe vehicles with a Theta II 2.4-liter MPI engine;
- 2010–2013 model year Hyundai Tucson vehicles with a Theta II 2.4-liter MPI engine;
- 2014–2021 model year Hyundai Tucson vehicles with a Nu 2.0-liter GDI engine;
- 2014 model year Hyundai Elantra Coupe vehicles with a Nu 2.0-liter GDI engine;
- 2014–2016 model year Hyundai Elantra vehicles with a Nu 2.0-liter GDI engine;
- 2014–2020 model year Hyundai Elantra GT vehicles with a Nu 2.0-liter GDI engine; or
- 2012–2017 model year Hyundai Veloster vehicles with a Gamma 1.6-liter GDI engine.

To check whether your vehicle might be a Class Vehicle, you can visit the Settlement website at [LINK] or call [PHONE] and ask whether your vehicle is included in the Settlement.  Whether you visit the website or call the toll-free number, you will need to have your Vehicle Identification Number ("VIN") ready.

The benefits under the Settlement are:

- The Settlement extends the Powertrain Limited Warranty to 15 years or 150,000 odometer miles from the date of the vehicle's original retail delivery, whichever comes first, to both original and subsequent owners for damage to the engine short block and long block assembly caused by connecting rod bearing failure (the "Extended Warranty").  **To obtain Extended Warranty benefits, you may need to first complete the Knock Sensor Detection System ("KSDS") update at a Hyundai dealership (explained further below).**  For the 90-day period following final approval of the Settlement, the Extended Warranty also provides a free campaign or recall inspection for any Class Vehicles not yet inspected and within the 15-year or 150,000-odometer-mile period from the date of the vehicle's original retail delivery (whichever comes first), regardless of prior repairs.  Service campaigns and recalls are provided free of charge to customers of eligible vehicles.  The Settlement also provides loaner vehicles in some instances, subject to dealer availability, or reimbursement or compensation of certain expenses for rental car, ride-sharing, or other transportation expenses for any vehicles that undergo qualifying engine replacement or repair.

- The Settlement provides certain cash reimbursements for qualifying past out-of-pocket repairs and compensation for past and current out-of-pocket repair-related transportation (*e.g.*, rental, ride-share) and towing expenses, as well as for inconvenience due to qualifying engine repair delays while the vehicle was serviced by Hyundai dealers.

- The Settlement provides certain cash compensation for out-of-pocket transportation (*e.g.*, rental, ride-share) and towing expenses, and for lodging and meal expenses in certain circumstances, if you experienced a qualifying engine failure or engine fire (regardless of whether you obtained a repair afterwards).

- The Settlement provides cash compensation for certain trade-ins and sales of unrepaired vehicles that experienced a qualifying engine failure or fire.

- The Settlement provides compensation for vehicles lost due to qualifying engine fires.  In some instances, the Settlement also provides a cash rebate if you lost faith in the vehicle after experiencing engine troubles related to the alleged defect and you purchased another Hyundai vehicle within a specified timeframe.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **SUBMIT A CLAIM FORM** | The <u>only</u> way to get a reimbursement or compensation.  However, it is not necessary to submit a claim form to benefit from the 15-Year/150,000-Mile Extended Warranty, subject to first installing the KSDS update, if applicable.  The deadline to submit a claim for most benefits is [DATE].  Any extension of this date will be posted on the Settlement website. |
| **EXCLUDE YOURSELF** | Get no payment.  This is the only option that allows you to ever file or be part of any pending or future lawsuit against Hyundai about the legal claims in this case.  The deadline to submit a request for exclusion is [DATE]. |
| **OBJECT** | In order to object to the Settlement, you must remain a member of the lawsuit—you cannot ask to be excluded.  You may object to the Settlement by writing to Class Counsel (identified on page [PAGE]) and indicating why you do not like the Settlement.  The deadline to object is [DATE]. |
| **GO TO A HEARING** | Ask to speak in Court about the fairness of the Settlement.  The deadline to challenge the fairness of the Settlement is [DATE]. |
| **DO NOTHING** | Get no reimbursement or compensation.  However, you will receive the 15-Year/150,000-Mile Extended Warranty, subject to first installing the KSDS update, if applicable. |

- These rights and options—**and the deadlines to exercise them**—are explained in this notice.

- The Court overseeing this case still must decide whether to approve the Settlement.  Payments will be made if the Court approves the Settlement and after appeals are resolved.  The Court approval process may take some time, so please be patient.

- Please visit [LINK] for a copy of this notice in Spanish.  Visite [LINK] para obtener una copia de este aviso en español.

**BASIC INFORMATION**.................................................................................................................**1**
1.  Why did I get this notice package?.......................................................................... 1
2.  What are these lawsuits about?................................................................................ 1
3.  Why is this a class action?...................................................................................... 1
4.  Why is there a settlement?...................................................................................... 1

**WHO IS IN THE SETTLEMENT?**..................................................................................**2**
5.  How do I know if I am part of the Settlement? ......................................................... 2
6.  Which vehicles are included? ................................................................................. 2
7.  If I bought or leased a Class Vehicle that has not had problems, am I included? ......... 2
8.  I am still not sure if I am included........................................................................... 3

**SETTLEMENT BENEFITS – WHAT YOU GET** ...........................................................**3**
9.  What does the Settlement provide? ......................................................................... 3

**HOW YOU GET A REIMBURSEMENT – SUBMITTING A CLAIM FORM**.............**8**
10.  How do I make a claim? ....................................................................................... 8
11.  What kind of documentation do I need to include when submitting my Claim Form?..... 8
12.  When would I get my reimbursement? .................................................................... 9
13.  What if my claim is found to be deficient? .............................................................. 9
14.  What am I giving up to stay in the Settlement Class? ................................................. 9

**EXCLUDING YOURSELF FROM THE SETTLEMENT** ...........................................**10**
15.  How do I get out of the Settlement? ..................................................................... 10
16.  If I do not exclude myself, can I sue for the same thing later? ................................... 11
17.  If I exclude myself, can I get the benefits of this Settlement?.................................... 11

**THE LAWYERS REPRESENTING YOU** ....................................................................**11**
18.  Do I have a lawyer in this case?........................................................................... 11
19.  How will the lawyers be paid and will the Class representatives receive service payments? ......................................................................................................... 11

**OBJECTING TO THE SETTLEMENT** ........................................................................**12**
20.  How do I tell the Court if I do not like the Settlement?............................................. 12
21.  What is the difference between objecting and excluding?.......................................... 13

**THE COURT'S FAIRNESS HEARING** .......................................................................**13**
22.  When and where will the Court decide whether to approve the Settlement? ................ 13
23.  Do I have to come to the Fairness Hearing? .......................................................... 13
24.  May I speak at the Fairness Hearing? ................................................................... 13

**IF YOU DO NOTHING** .................................................................................................**14**
25.  What happens if I do nothing at all? ..................................................................... 14

**GETTING MORE INFORMATION**..............................................................................**14**
26.  Are there more details about the Settlement? ......................................................... 14
27.  How do I get more information?........................................................................... 14

## BASIC INFORMATION

**1.      Why did I get this notice package?**

According to Hyundai's records, you bought or leased a Class Vehicle in the United States (or while abroad on active U.S. military duty).

The Court has ordered this notice be sent to you because you have a right to know about a proposed settlement of a class action lawsuit and about your options in that lawsuit before the Court decides whether to approve the Settlement.  If the Court approves the Settlement, and after objections and appeals are resolved, Hyundai will provide payments and other benefits agreed to in the Settlement to the Class Members.  This notice explains the lawsuit, the Settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.

<u>You should read this entire notice.</u>

**2.      What are these lawsuits about?**

The people who filed these lawsuits are called Plaintiffs, and the companies they sued, including Hyundai, are called Defendants.  The Plaintiffs allege that the Class Vehicles suffer from a defect, related to connecting rod bearing failure, that can cause engine seizure, stalling, engine failure, and engine fire.  The Plaintiffs also allege that engine seizure or stalling can be dangerous if experienced.  The Plaintiffs also allege that some owners and lessees have been improperly denied repairs under the vehicle's warranty.  Hyundai denies Plaintiffs' allegations.

**3.      Why is this a class action?**

In a class action lawsuit, one or more persons, called "Class Representatives" (in this case Leslie Flaherty, Joanna Caballero, James Carpenter, Sharon Moon, Stanton Vignes, Kesha Franklin Marbury, Christina Roos, James J. Martino, James H. Palmer, John H. Caro, Ashley Gagas, Nicole Thornhill, Janet O'Brien, Robert Buettner, Linda Short, James Twigger, Jennifer and Anthony DiPardo, Seane Ronfeldt, Gabrielle Alexander, Tavish Carduff, Brian Frazier, Chad Perry, William Pressley, and Jeannett Smith), sue on behalf of people who have similar claims.  All of these people and those similarly situated are a "Settlement Class" or "Class Members."  One court resolves the issues for all Class Members, except those who exclude themselves from the Settlement Class.  The court in charge of the case is the United States District Court for the Central District of California, and the case is known as *In re: Hyundai and Kia Engine Litigation II*, No. 8:18-cv-02223-JLS-JDE (C.D. Cal.).  United States District Judge Josephine Staton is presiding over this class action.

**4.      Why is there a settlement?**

The Class Representatives and Defendants agreed to a settlement to avoid the cost and risk of further litigation, including a potential trial, and so that the Class Members can get payments and other benefits in exchange for releasing Defendants from liability.  The Settlement does not mean Defendants broke any laws and/or did anything wrong, and the Court did not decide which side was right.

The Class Representatives and Defendants entered into a Settlement Agreement that was preliminarily approved by the Court, which authorized the issuance of this notice.  The Class Representatives and the lawyers representing them (called "Class Counsel") believe that the Settlement is in the best interest of the Class Members.

This notice summarizes the essential terms of the Settlement.  The Settlement Agreement, along with all exhibits and addenda, sets forth in greater detail the rights and obligations of all the parties and is available at [LINK].  If

there is any conflict between this notice or the claim form and the Settlement Agreement, the Settlement Agreement governs.

---

## WHO IS IN THE SETTLEMENT?

**5.     How do I know if I am part of the Settlement?**

Judge Staton decided that, for the purposes of this proposed Settlement, everyone who fits this description is covered by the Settlement:  <u>All owners and lessees of a Class Vehicle who purchased or leased the Class Vehicle in the United States, including those that were purchased while the owner was abroad on active U.S. military duty, but excluding those purchased in the U.S. territories and/or abroad.</u>

However, the Class excludes all claims for death, personal injury, property damage, and subrogation.

The Class also excludes Hyundai; Kia Corporation and Kia America, Inc. (together, "Kia"); any affiliate, parent, or subsidiary of Hyundai or Kia; any entity in which Hyundai or Kia has a controlling interest; any officer, director, or employee of Hyundai or Kia; any successor or assign of Hyundai or Kia; any judge to whom this Action is assigned, their spouse, and all persons within the third degree of relationship to either of them, as well as the spouses of such persons; individuals and/or entities who validly and timely opt-out of the Settlement; consumers or businesses that have purchased Class Vehicles previously deemed a total loss (*e.g.*, salvage) (subject to verification through Carfax or other means); owners or lessees who rent or previously rented the Class Vehicle for use by third-party drivers; individuals and commercial entities engaged in the business of buying, selling, or dealing in motor vehicles (*e.g.*, new and used motor vehicle dealerships); banks, credit unions, or other lienholders; and current or former owners of a Class Vehicle who previously released their claims against Hyundai or Kia with respect to the same issues raised in this class action.

**6.     Which vehicles are included?**

The "Class Vehicles," for the purposes of the description in the response to Question 5 above, are the following certain vehicle models originally equipped with or replaced with the respective corresponding genuine MPI or GDI engine within OEM specifications: 2011–2015 model year Hyundai Sonata Hybrid (HEV) vehicles with a Theta II 2.4-liter MPI Hybrid engine; 2016–2019 model year Hyundai Sonata Hybrid/Plug-In Hybrid (HEV/PHEV) vehicles with a Nu 2.0-liter GDI Hybrid engine; 2010–2012 model year Hyundai Santa Fe vehicles with a Theta II 2.4-liter MPI engine; 2010–2013 model year Hyundai Tucson vehicles with a Theta II 2.4-liter MPI engine; 2014–2021 model year Hyundai Tucson vehicles with a Nu 2.0-liter GDI engine; 2014 model year Hyundai Elantra Coupe vehicles with a Nu 2.0-liter GDI engine; 2014–2016 model year Hyundai Elantra vehicles with a Nu 2.0-liter GDI engine; 2014–2020 model year Hyundai Elantra GT vehicles with a Nu 2.0-liter GDI engine; and 2012–2017 model year Hyundai Veloster vehicles with a Gamma 1.6-liter GDI engine.

**7.     If I bought or leased a Class Vehicle that has not had problems, am I included?**

Yes.  You did NOT have to experience stalling, engine seizure, engine failure, or a vehicle fire to be included in this Settlement.  If you still own or lease a Class Vehicle, you are eligible to take advantage of the Settlement's extension of the Powertrain Limited Warranty to 15 years or 150,000 odometer miles from the date of the vehicle's original retail delivery, whichever comes first, for certain types of engine repairs, as well as certain other benefits of the Settlement. **To obtain Extended Warranty benefits, you may need to first complete the KSDS update at a Hyundai dealership (explained further below).**

8.      **I am still not sure if I am included.**

If you are still not sure whether you are included, you can ask for free help.  You can visit [LINK] or call [PHONE] and ask whether your vehicle is included in the Settlement.  Whether you visit the website or call the toll-free number, you will need to have your VIN ready.  The VIN is located on a small placard on the top of the dashboard and is visible through the driver's side corner of the windshield.  It also appears on your vehicle registration card and probably appears on your vehicle insurance card.  Your VIN should have 17 characters, a combination of both letters and numbers.

---

## SETTLEMENT BENEFITS – WHAT YOU GET

---

9.      **What does the Settlement provide?**

The Settlement provides the following benefits for which you can submit a claim (see the response to Question 10 for how to make a timely claim using the Claim Form):

1.      Warranty Extension

As part of the Settlement, Hyundai is extending the Powertrain Limited Warranty to a 15-Year/150,000-Mile Limited Warranty from the date of the vehicle's original retail delivery for current and subsequent owners of Hyundai Class Vehicles.  The Extended Warranty will cover damage to the short block assembly, consisting of the engine block, crankshaft and bearings, connecting rods and bearings, and pistons, and the long-block assembly, **that is the causal result of connecting rod bearing failure** in those Class Vehicles owned or leased by individual consumers that occurs within 15 years from the date of the vehicle's original retail delivery or 150,000 odometer miles, whichever comes first.

**To obtain Extended Warranty benefits , you will need to have the free KSDS update installed in your vehicle by a Hyundai dealership BEFORE experiencing an otherwise Qualifying Failure or Qualifying Fire (see below).**  You are not required to complete the KSDS update to obtain Extended Warranty if your vehicle was previously recalled under NHTSA Recall Numbers 20V746 or 21V727 (which affected 2011–2013 model year Hyundai Sonata Hybrid (HEV) vehicles with a Theta II 2.4-liter MPI Hybrid engine; 2016–2017 model year Hyundai Sonata Hybrid (HEV) vehicles with a Nu 2.0-liter GDI Hybrid engine; 2012 model year Hyundai Santa Fe vehicles with a Theta II 2.4-liter MPI engine; 2017 model year Hyundai Tucson vehicles with a Nu 2.0-liter GDI engine; and 2015–2016 model year Hyundai Veloster vehicles with a Gamma 1.6-liter GDI engine).  However, if you have not done so already, Hyundai strongly encourages you to have your local Hyundai dealership install the KSDS update by [NOTICE DATE + 150], so that you may be eligible for other compensation offered under the Settlement, *e.g.*, rental car, towing, ride-sharing, or other transportation expenses and incidental expenses, where the underlying repair itself is covered under the Extended Warranty.  To confirm whether your vehicle has received the KSDS update or for assistance scheduling an appointment, please contact your nearest Hyundai dealer or Hyundai's Consumer Assistance Center at (800) 633-5151 or visit https://owners.hyundaiusa.com/us/en/contact-us.html.

With the exception of cases of where Class Members did not timely obtain the KSDS update, if applicable, or cases of "Exceptional Neglect" (defined below), and subject to the existing terms, limitations, and condition of the Class Vehicles' original Powertrain Limited Warranty, the 15-Year/150,000-Mile Limited Warranty from the date of the vehicle's original retail delivery shall persist in its full duration once obtained regardless of any subsequent transfer in ownership or lease of the vehicle.  The Extended Warranty is not available to commercial entities such as used car dealers, franchisees, or automobile auction houses, but will still be transferable to subsequent owners.

The Extended Warranty covers all costs of inspections and repairs including, parts, labor, and diagnosis, for the engine short block assembly and long block assembly <u>caused by connecting rod bearing failure</u>. Class Members are suggested to retain all vehicle maintenance records, and, if Hyundai believes there may be Exceptional Neglect, you may be required to provide records for vehicle maintenance performed to receive Extended Warranty repairs.

Coverage under the Extended Warranty may be denied for Exceptional Neglect.  Exceptional Neglect means when (i) Defendants or their dealers suspect the engine evidences a lack of maintenance or care (*i.e.*, outside of factory maintenance and care specifications) based on an inspection of the physical condition of the engine that shows unacceptable lacquering, varnish, or sludge and (ii) service records demonstrate unacceptable gaps in regular oil changes.

You will have the opportunity to provide service records to Hyundai if Exceptional Neglect is suspected.  Based on the records that you submit, records from dealers, and records from Carfax (or similar reputable third parties), there are unacceptable gaps in regular oil changes if, since original delivery, the Class Vehicle has one oil change gap of greater than 10,500 miles or 14 months, or was previously diagnosed with excessive oil consumption issues **AND** the Class Vehicle was not repaired to address such issues within 30 days or 1,000 miles, whichever comes first, subsequent to any completed oil consumption testing and confirmed diagnosis.  If you experienced a Qualifying Failure or Qualifying Fire within your vehicle's first 15,000 miles, however, you will not be barred from receiving Extended Warranty coverage regardless of any oil change gaps.

As part of the Settlement, Hyundai will provide a free inspection for up to 90 days after the Notice Date for any vehicle that did not receive an inspection under at least one of the KSDS update campaigns or recalls if it is still within the 15-year or 150,000-mile period from the date of the vehicle's original retail delivery, whichever comes first.

Depending on loaner availability, Hyundai dealerships will also provide a free loaner vehicle of comparable value **if requested** and until repairs are completed.  If no loaner vehicle is available, Hyundai will provide compensation of reasonable rental car, ride-share, or transportation expenses up to a maximum of $80 per day.  (See below for how to make a claim for transportation reimbursements.)

You do **<u>NOT</u>** need to submit a Claim Form to receive this extension of the Powertrain Limited Warranty for the engine short block assembly or long block assembly under this Settlement.

2.    <u>Reimbursement for Past Repairs</u>

Under the Settlement, Hyundai will reimburse you in full for money you spent on Qualifying Repairs that occurred before [NOTICE DATE] if the vehicle was within 15 years from the date of original retail delivery or 150,000 odometer miles, whichever came first.  In certain instances, you may receive an additional $150 goodwill payment and/or inconvenience payment based on the following requirements:

**(a) TYPES OF "QUALIFYING REPAIRS"**

- "Qualifying Repairs" refers to any repairs performed to address hole-in-block symptoms (*i.e.*, the connecting rod punctures a hole in the engine block), engine seizure (unrelated to pre-existing oil consumption issues), or engine fire (see "Qualifying Fire").

- If the repair was completed at an authorized Hyundai dealership, "Qualifying Repairs" also include any repairs to address symptoms associated with connecting rod bearing failure where the vehicles received a diagnosis of (1) abnormal bearing noise, (2) stall caused by seizure with a failed bearing clearance test, or (3) P1326 warning light.

- "Qualifying Repairs" <u>does not</u> include repairs caused by a collision involving a Class Vehicle, unless the collision was directly caused by a Qualifying Failure or Qualifying Fire. "Qualifying Repairs" also <u>does not</u> include any repairs that were plainly unrelated to engine short block manufacturing issues (for example, a stall caused directly by a timing chain, fuel pump, oxygen sensor, turbocharger, or the electrical system) or where an investigation or inspection revealed an unrelated cause (for example, oil consumption issues that are not the causal result of connecting rod bearing failure).

- "Exceptional Neglect" may also exclude an otherwise Qualifying Repair if (i) an evaluation of available service records and/or submitted documentation suggests a lack of maintenance or care (*i.e.*, outside of factory maintenance and care specifications), *e.g.*, a repair order or service records noting engine oil sludge, engine coolant in oil, oil that smells burnt, an old oil filter (noted to be on the engine for greater than 20,000 miles), very low levels of drained oil, or other similar indicia of neglect, and (ii) service records demonstrate unacceptable gaps in regular oil changes.

- You will have the opportunity to provide service records to Hyundai if Exceptional Neglect is suspected. Based on the records that you submit, records from dealers, and records from Carfax (or similar reputable third parties), there are unacceptable gaps in regular oil changes if, since original delivery, the Class Vehicle has one oil change gap of greater than 10,500 miles or greater than 14 months, or was previously diagnosed with excessive oil consumption issues but the Class Vehicle was not repaired to address such issues within 30 days or 1,000 miles, whichever comes first, subsequent to any completed oil consumption testing and confirmed diagnosis. If the Qualifying Repair occurred within your vehicle's first 15,000 miles, however, Exceptional Neglect will not bar you from obtaining reimbursement for the past repair of the Qualifying Repair.

## (b) GOODWILL PAYMENT FOR PREVIOUSLY DENIED WARRANTY REPAIRS

- If before [NOTICE DATE], you presented a Qualifying Repair to a Hyundai dealership and were denied an in-warranty repair and subsequently obtained the Qualifying Repair elsewhere, you are eligible to receive an additional $150 goodwill payment. The denial of warranty repair must be documented contemporaneously in repair orders or communications to Hyundai or its representatives.

* * *

Class Members are eligible for a reimbursement even if warranty coverage was denied on grounds of improper service or maintenance (excepting limited Exceptional Neglect circumstances), and even if the repairs were performed at an independent mechanic shop as long as it is a business entity with a business address, a working phone number, and online reviews (all subject to verification).

3. <u>Compensation for Repair-Related Transportation and Towing Expenses</u>

Money you spent on rental cars, ride-shares, or similar transportation services will be reimbursed for up to a maximum of $80 per day, and towing services will be reimbursed in full as long as these expenses are reasonably related to obtaining a Qualifying Repair (see above) performed on a Class Vehicle within 15 years from the date of original retail delivery or 150,000 odometer miles, whichever comes first. A Qualifying Repair that begins after [NOTICE DATE] must be from a Hyundai dealership. You must have completed the KSDS update on your Class Vehicle if the Qualifying Repair begins after [NOTICE DATE + 150] to be eligible for this reimbursement. Reimbursement for these expenses is limited to no more than fifteen (15) business days before delivery of the vehicle to the dealership or third-party repair facility for the Qualifying Repair and up to three (3) business days after Class Member was notified that their vehicle was ready to be picked up.

4.       Inconvenience Due to Repair Delays

You may be entitled to compensation based on the length of the delay if you experienced prolonged delays (exceeding 60 days) obtaining a Qualifying Repair performed by an authorized Hyundai dealer on a Class Vehicle within 15 years from the date of original retail delivery or 150,000 miles, whichever comes first. You must have completed the KSDS update on your Class Vehicle if the Qualifying Repair begins after [NOTICE DATE + 150] to be eligible for this compensation.

If you had delays between 61 and 180 days, you will be entitled to $75. For delays of 181 days or more, you are entitled to $100, plus $100 for each additional 30-day period of delay (*i.e.*, $100 total for delays of 181–210 days, $200 total for delays of 211–240 days, $300 total for delays of 241–270 days, and so forth).

A class member may elect to receive this compensation in the form of a dealer service card valued at 150% of the amount that would otherwise be paid. The dealer service card may only be used at an authorized Hyundai dealer in payment towards any merchandise, parts, or service.

5.       Incidentals for Qualifying Failure or Qualifying Fire

Money you spent on reasonable towing services will be reimbursed in full if you experience a Qualifying Failure or Qualifying Fire **within 150 miles of your home**, within 15 years from the date of the vehicle's original retail delivery or 150,000 miles, whichever comes first. If the Qualifying Failure or Qualifying Fire occurred within 150 miles of your home, you can get reimbursed for up to $125 for actual transportation expenses incurred on the day of Qualifying Failure or Qualifying Fire. If the Qualifying Failure or Qualifying Fire occurred **more than 150 miles away from your home**, you can get reimbursed for a maximum of three (3) days of up to $300 for the first day, up to $200 for the second day, and up to $100 for the third day for transportation, lodging, and reasonable meal expenses.

**"QUALIFYING FAILURES" AND "QUALIFYING FIRES"**

For future Qualifying Failures and Qualifying Fires occurring after [NOTICE DATE + 150], you must have completed the KSDS update on your Class Vehicle by [NOTICE DATE + 150] to be eligible for this compensation.

"Qualifying Failure" refers to an engine seizure, engine stall, or other vehicle incident short of an engine compartment fire that would otherwise be addressed by a Qualifying Repair (see above). "Qualifying Fire" refers to an engine compartment fire that would otherwise be addressed by a Qualifying Repair (see above).

An engine failure is not a Qualifying Failure and an engine fire is not a Qualifying Fire if unrelated to the engine short block manufacturing issues as it relates to connecting rod bearing failure or if an investigation or inspection revealed an unrelated cause. An engine failure or engine fire does not qualify where documentation shows the Class Vehicle was previously involved in a moderate to severe front-end collision (see the Settlement Agreement for further details) prior to the otherwise Qualifying Failure or Qualifying Fire.

"Exceptional Neglect" may also exclude an otherwise Qualifying Repair or Qualifying Fire if (i) an evaluation of available service records and/or submitted documentation suggests a lack of maintenance or care (*i.e.*, outside of factory maintenance and care specifications), *e.g.*, a repair order or service records noting engine oil sludge, engine coolant in oil, oil that smells burnt, an old oil filter (noted to be on the engine for greater than 20,000 miles), very low levels of drained oil, or other similar indicia of neglect, and (ii) service records demonstrate unacceptable gaps in regular oil changes.

6

You will have the opportunity to provide service records to Hyundai if Exceptional Neglect is suspected.  Based on the records that you submit, records from dealers, and Carfax (or similar reputable third parties), there are unacceptable gaps in regular oil changes if, since original delivery, the Class Vehicle has one oil change gap of greater than 10,500 miles or greater than 14 months, or was previously diagnosed with excessive oil consumption issues but the Class Vehicle was not repaired to address such issues within 30 days or 1,000 miles, whichever comes first, subsequent to any completed oil consumption testing and confirmed diagnosis.  If the Qualifying Repair occurred within your vehicle's first 15,000 miles, however, Exceptional Neglect will not bar you from obtaining reimbursement for the past repair of the Qualifying Repair.

6.     Compensation If You Sold or Traded In a Class Vehicle in Certain Circumstances

If your Class Vehicle (i) experienced a Qualifying Failure or Qualifying Fire (see above) within 15 years from the date of original retail delivery or 150,000 odometer miles, whichever came first, and before [NOTICE DATE], *and* (ii) you sold or traded in the Class Vehicle without first getting it repaired, you may receive compensation for any resulting effect on fair market value of the Class Vehicle received in the sale or trade.  You may also receive an additional goodwill payment of $150.00.  The amount of compensation will be based on the baseline Black Book value of the vehicle minus the actual amount received from the sale or trade-in transaction as a whole (among other considerations).

7.     Compensation for Vehicle Involved in a Qualifying Fire

If your Class Vehicle suffered or suffers a Qualifying Fire (see above) within 15 years from the date of original retail delivery or 150,000 odometer miles, whichever comes first, you may receive compensation for the value of the vehicle, and an additional $150 goodwill payment.  If the Qualifying Fire occurs after [NOTICE DATE + 150], you must have completed the KSDS update on your Class Vehicle by [NOTICE DATE + 150] to be eligible for this compensation.  The amount of compensation will be based on the maximum Black Book value of the vehicle minus any value received for the vehicle (*e.g.*, through insurance).

8.     Qualifying Failure or Qualifying Fire Rebate Program

You may be entitled to a rebate payment if after [NOTICE DATE] (i) you lost faith in your Class Vehicle as a result of a Qualifying Failure or Qualifying Fire (see above) occurring within 15 years from the date of the vehicle's original retail delivery or 150,000 odometer miles, whichever came first, (ii) you sold your vehicle as result, and (iii) you purchase a replacement Hyundai vehicle from an authorized Hyundai dealership.  If the Qualifying Failure or Qualifying Fire occurs after [NOTICE DATE + 150], you must have completed the KSDS update on your Class Vehicle by [NOTICE DATE + 150] to be eligible for this rebate payment.

The rebate is based on the difference between the value you received at trade-in or sale and the maximum Black Book value (*i.e.*, private party/very good) of the Class Vehicle at the time of the relevant KSDS update campaign launch for the Class Vehicle, irrespective of any underlying vehicle loans, up to the following amounts: for model year 2010, 2011, and 2012 Class Vehicles $2,500; for model year 2013 and 2014 Class Vehicles $2,000; for model year 2015 and 2016 Class Vehicles $1,500, and for model year 2017, 2018, 2019, 2020, and 2021 model year Class Vehicles $1,000.

9.     Informational Pamphlet

The Settlement provides that Hyundai will distribute an informational pamphlet to Class Members that provides further recommended guidance on the maintenance of the engines in the Class Vehicles and that reminds Class Members of the available inspections and repairs.  We suggest you keep the pamphlet in the vehicle at all times.

**HOW YOU GET A REIMBURSEMENT – SUBMITTING A CLAIM FORM**

**10.    How do I make a claim?**

- Fill out the Claim Form (paper or online), <u>and</u>

- Include the documentation specified on the Claim Form, <u>and</u>

- Submit online, by mail, or email the Claim Form to the address listed on the Claim Form, <u>and</u>

- Do so by [DATE] (any extension of that date will be posted on the Settlement website), unless your claim relates to a Qualifying Repair, Qualifying Failure, or Qualifying Fire that occurs after [NOTICE DATE], in which case you have 90 days from the date those costs were incurred or from the date you experienced the Qualifying Failure or Qualifying Fire.

Hyundai encourages you to submit your Claim Form online, but you may download and then print a Claim Form by visiting [LINK] or you may request a Claim Form be mailed to you through [LINK] or by calling [PHONE]. Please keep a copy of your completed Claim Form and all documentation you submit for your own records.

If you fail to submit a Claim Form and supporting documents by the required deadline, you will not get paid. Sending in a Claim Form late will be the same as doing nothing.  Please **<u>DO NOT</u>** send Claim Forms to Class Counsel or the Court.

**11.    What kind of documentation do I need to include when submitting my Claim Form?**

In addition to a completed Claim Form, you will need to submit supporting documentation.  For benefits relating to a Qualifying Repair, this generally includes at least (i) proof that you owned or leased your Class Vehicle; (ii) proof that the Qualifying Repair actually occurred, like a repair order; (iii) proof you paid for the Qualifying Repair and any other repair-related expenses; and (iv) related insurance paperwork if any.  If you received the Qualifying Repair at a Hyundai dealership, you are strongly encouraged to submit repair orders, your communications with the dealership, and any other documentation related to the Qualifying Repair, so that Hyundai can take any necessary steps to acquire additional information that may be needed to assist with approving the claim.

For benefits that do not require you to get a Qualifying Repair, you will similarly need to submit (i) proof that you owned or leased your Class Vehicle; (ii) proof that a Qualifying Failure or Qualifying Fire actually occurred, like a police report and/or insurance paperwork; (iii) proof you paid for expenses incurred as a result; and (iv) if applicable, proof of sale or trade-in and value received for the sale or trade-in of your vehicle.

Proof that you incurred an expense may be different from proof that you paid for it.  For example, while an invoice may show that you were charged for a repair, you will also need to provide a credit card receipt, credit card statement, bank statement, cleared check, or other documents to show that you actually paid for it.  The only circumstance in which attesting (swearing under oath) on your Claim Form that you paid for something in cash counts as proof of payment is if you paid cash for a repair done at an authorized Hyundai dealership.

**12.    When would I get my reimbursement?**

In general, valid claims will be paid as they are approved, **<u>after</u>** the Effective Date.  If there are no objections or appeals, the Effective Date for the Settlement will be the date of the Court's Order giving final approval to the Settlement.  **<u>Payments under the Settlement will begin once the Settlement has been finally approved by the</u>**

**Court and any appeals from that decision are completed.**  If there are objections or appeals, the date will be later.  When the date becomes known it will be posted at [LINK].

The Hon. Josephine Staton, U.S. District Court Judge, will hold a Fairness Hearing at [TIME] on [DATE] in Courtroom 8A on the 8th Floor at the U.S. District Court for the Central District of California, First Street U.S. Courthouse, 350 West 1st St., Los Angeles, CA 90012, to decide whether to approve the Settlement.  The hearing may be rescheduled without further notice to you, so it is recommended you periodically check [LINK] for updated information.  If the Court approves the Settlement, there may be appeals afterwards.  It is always uncertain whether these appeals can be resolved, and resolving them can take time, perhaps more than a year.  Please be patient.

You may continue to check on the progress of the Settlement by visiting [LINK] or calling [PHONE].

### 13.    What if my claim is found to be deficient?

If a claim is found to be deficient and is rejected during the review process by the Settlement Administrator, the Class Member will be notified of the deficiency in writing.  The Settlement Class Member will then have an opportunity to remedy the deficiency within 45 days of the written notice.

Hyundai will then send you a final determination of how much it will reimburse you.  If you are unhappy with the final determination, you must write to Hyundai by mail within 30 days from the postmark date of your final determination letter or email to state that you elect arbitration through the Better Business Bureau ("BBB").  At that point, you and Hyundai will have up to 30 days to resolve the dispute before you can go to the BBB.

### 14.    What am I giving up to stay in the Settlement Class?

Unless you exclude yourself in writing as described in the answer to Question 15, you will be treated as part of the Settlement Class, and that means that **you cannot sue, continue to sue, or be part of any other lawsuit against Hyundai,** or other related entities or individuals (listed in the Settlement Agreement, which you can view at [LINK]) about the legal issues in *this* case if the Settlement is approved, including but not limited to claims of false advertising, deceptive practices, fraud, breach of implied or express warranties, lemon laws, unjust enrichment, strict product liability, and negligence arising from the defect alleged in this case.  You will not be able to sue even on existing claims that you may already hold against Hyundai, or other related entities or individuals listed in the Settlement Agreement.  It also means that all the Court's orders will apply to you and legally bind you.

However, nothing in this Settlement will prohibit you from pursuing claims for: (i) death; (ii) personal injury; (iii) damage to property other than to a Class Vehicle; (iv) subrogation; or (v) any and all claims that relate to something other than a Class Vehicle and the alleged defect here.

If you have any questions about the scope of the legal claims you give up by staying in the Settlement Class, you may view Section VI of the Settlement Agreement (available at [LINK]) or you can contact the lawyers representing the Settlement Class (listed below) for free or speak with your own lawyer at your own expense.

| | | |
|---|---|---|
| Matthew D. Schelkopf<br>Sauder Schelkopf LLC<br>1109 Lancaster Avenue<br>Berwyn, Pennsylvania 19312<br>mds@sstriallawyers.com | Steve W. Berman<br>Hagens Berman Sobol Shapiro LLP<br>1301 Second Avenue<br>Suite 2000<br>Seattle, WA 98101<br>steve@hbsslaw.com | Gretchen Freeman Cappio<br>Keller Rohrback L.L.P.<br>1201 Third Avenue, Suite 3200<br>Seattle, WA 98101<br>gcappio@kellerrohrback.com |

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you do not want the benefits or reimbursements provided in this Settlement, and you want to keep the right to sue or continue to sue Hyundai or other related entities or individuals, on your own and at your own expense, about the legal issues in this case, including for any existing claims you may currently have, then you must take steps to get out of the Settlement Class.  This is called excluding yourself—or is sometimes referred to as opting out of the Settlement Class.

**15.     How do I get out of the Settlement?**

To exclude yourself from the Settlement, you must send a letter by U.S. mail (or an express mail carrier) saying that you want to "opt-out of" or "be excluded from" the Class Settlement in *In re: Hyundai and Kia Engine Litigation II*, No. 8:18-cv-02223-JLS-JDE (C.D. Cal.).  Be sure to include (i) your full name and current address, (ii) the model year, exact or approximate date(s) of purchase or lease, Vehicle Identification Number ("VIN") of your vehicle (which is located on a placard on the top of the dashboard visible through the driver's side corner of the windshield), and (iii) a clear statement saying you wish to be excluded from the Settlement and the Class. You must mail your exclusion request no later than [DATE] to:

|  |
|---|
| **Defense Counsel** |
| Shon Morgan |
| Quinn Emanuel Urquhart & Sullivan, LLP |
| 865 S. Figueroa St., 10th Floor |
| Los Angeles, California 90017 |

***You cannot exclude yourself on the phone, on any website, or by e-mail.***  Please keep a copy of any exclusion (or opting out) letter for your records.

If you ask to be excluded, you cannot receive any benefits under this Settlement, and you cannot object to the Settlement.  If you choose to be excluded or opt out, you will be excluded for all claims you have that are included in the Settlement.  You will not be legally bound by anything that happens in this lawsuit.  Depending on the laws in your state, you may be able to sue (or continue to sue) Hyundai, or other related entities or individuals in the future about the legal issues in this case.

Any repairs performed on your Class Vehicle under the 15-Year/150,000-Mile Extended Warranty (from the date of the vehicle's original retail delivery) before [NOTICE DATE] shall preclude you from excluding yourself from the Class.

**16.     If I do not exclude myself, can I sue for the same thing later?**

No.  Unless you exclude yourself (opting out), you give up the right to sue Hyundai and other related entities or individuals for the claims that this Settlement resolves.

If you have a pending lawsuit against Hyundai, or related entities, speak to your lawyer in that lawsuit immediately.  You must exclude yourself from *this* Settlement Class to continue your own lawsuit if it concerns the same legal issues related to the Class Vehicles and the alleged defect in this case, even if it involves other causes of action, including but not limited to, false advertising, deceptive practices, fraud, breach of implied or

express warranties, lemon laws, unjust enrichment, strict product liability, and negligence. Remember, the exclusion deadline is [<mark>DATE</mark>].

If you are a Class Member and you do nothing, you will remain a Class Member and all of the Court's orders will apply to you, you will be eligible for the Settlement benefits described above as long as you satisfy the conditions for receiving each benefit, and you will not be able to sue Defendants over the issues in this lawsuit.

### 17. If I exclude myself, can I get the benefits of this Settlement?

No. If you exclude yourself, do not send in a Claim Form to ask for any reimbursement. But, you may sue, continue to sue, or be part of a different lawsuit against Hyundai and other related entities or individuals for the claims that this Settlement resolves.

## THE LAWYERS REPRESENTING YOU

### 18. Do I have a lawyer in this case?

The Court has appointed Matthew D. Schelkopf of Sauder Schelkopf LLC, Steve W. Berman of Hagens Berman Sobol Shapiro LLP, and Gretchen Freeman Cappio of Keller Rohrback L.L.P., to represent you and other Class Members. Together, these lawyers are called "Class Counsel." You will not be charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own cost. Please **DO NOT** send Claim Forms to Class Counsel or the Court.

### 19. How will the lawyers be paid and will the Class representatives receive service payments?

At a later date, Class Counsel will ask the Court to award attorneys' fees, expenses, and service payments to each of the named Class Representatives: Leslie Flaherty, Joanna Caballero, James Carpenter, Sharon Moon, Stanton Vignes, Kesha Franklin Marbury, Christina Roos, James J. Martino, James H. Palmer, John H. Caro, Ashley Gagas, Nicole Thornhill, Janet O'Brien, Robert Buettner, Linda Short, James Twigger, Jennifer and Anthony DiPardo, Seane Ronfeldt, Gabrielle Alexander, Tavish Carduff, Brian Frazier, Chad Perry, William Pressley, and Jeannett Smith. It will be up to the Court to decide whether Defendants will be ordered to pay any of those fees, expenses, and service payments. The Court may award less than the amounts requested by Class Counsel. Defendants will separately pay the fees and expenses and service payments that the Court awards. These amounts will not come out of the funds for payments to Class Members. Class Counsel will not seek more than $12,000,000 in fees and expenses or a service award exceeding $5,000 to each Class Representative who was deposed in this lawsuit and $3,500 to each Class Representative who was not deposed in this lawsuit. Class Counsel will file their motion for attorneys' fees and expenses by [<mark>DATE</mark>]. You may continue to check on the progress of Class Counsel's request for attorneys' fees, expenses, and service awards by visiting [<mark>LINK</mark>].

Defendants will also separately pay the costs to administer the Settlement. The payment of Settlement administration costs will not come out of the funds for payments to Class Members.

## OBJECTING TO THE SETTLEMENT

You can tell the Court that you do not agree with all or part of the Settlement.

**20.    How do I tell the Court if I do not like the Settlement?**

If you are a member of the Settlement Class and do not like the Settlement, you can object to all or part of the Settlement.  You can give reasons you think the Court should not approve it.  The Court will consider your views.

To object, you must mail a letter saying that you object to the addresses below:

| | | |
|---|---|---|
| Matthew D. Schelkopf<br>Sauder Schelkopf LLC<br>1109 Lancaster Avenue<br>Berwyn, Pennsylvania 19312 | Steve W. Berman<br>Hagens Berman Sobol Shapiro LLP<br>1301 Second Avenue<br>Suite 2000<br>Seattle, WA 98101 | Gretchen Freeman Cappio<br>Keller Rohrback L.L.P.<br>1201 Third Avenue, Suite 3200<br>Seattle, WA 98101 |

Your objection letter must include:

1) The name and title of the lawsuit, *In re: Hyundai and Kia Engine Litigation II*, No. 8:18-cv-02223-JLS-JDE (C.D. Cal.);
2) A detailed written statement of each objection being made, including the specific reasons for each objection, and any evidence or legal authority to support each objection;
3) Your full name, address, and telephone number;
4) The model year and VIN of your Class Vehicle;
5) A statement disclosing whether you or your lawyer will ask to appear at the Fairness Hearing to talk about your objections, and if so, how much time you will need to present your objections;
6) Any supporting papers, materials, exhibits, or briefs that you want the Court to consider when reviewing the objection;
7) The identity of all counsel who represent you, including any former or current counsel who may be entitled to compensation for any reason related to your objection;
8) The number of times in which you, your counsel (if any), or your counsel's law firm (if any) have objected to a class action settlement within the five years preceding the date that you file the objection and the caption (name, case number, and court) of each case in which such objection was made;
9) A statement disclosing any consideration that you, your counsel (if any), or your counsel's law firm (if any) has received in connection with the resolution or dismissal of an objection to a class action settlement within the five years preceding the date that you file the objection; and
10) Your signature and that of your attorney, if you have one.

Submitting an objection allows Class Counsel or counsel for Defendants to notice your deposition and to seek any documentary evidence or other tangible things that are relevant to your objection.  Failure to make yourself available for such a deposition or comply with expedited discovery requests may result in the Court striking your objection or denying you the opportunity to be heard.  The Court may require you or your counsel to pay the costs of any such discovery should the Court determine the objection is frivolous or made for improper purpose.

Objections must be sent by first class mail to each of the above addresses and postmarked no later than [DATE].  Objections submitted after this date will not be considered.

If you do not state your intention to appear in accordance with the applicable deadlines and specifications, or you do not submit an objection in accordance with the applicable deadlines and specifications, you will waive all objections and can be barred from speaking at the final approval hearing.

**21.    What is the difference between objecting and excluding?**

Objecting is simply telling the Court that you do not like something about the Settlement. You can object only if you stay in the Settlement Class. Excluding yourself is telling the Court that you do not want to be part of the Settlement Class and the Settlement. If you exclude yourself, you have no basis to object because the case no longer affects you.

| THE COURT'S FAIRNESS HEARING |
|:---:|

The Court will hold a hearing to decide whether to approve the Settlement. You may attend and you may ask to speak, subject to the requirements above, but you do not have to.

**22.    When and where will the Court decide whether to approve the Settlement?**

The Court will hold a Fairness Hearing at [TIME] on [DATE] in Courtroom 8A on the 8th Floor at the U.S. District Court for the Central District of California, First Street U.S. Courthouse, 350 West 1st St., Los Angeles, CA 90012, to decide whether to approve the Settlement. At this hearing the Court will consider whether the Settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. The Court will listen to people who have asked to speak at the hearing. The Court may also decide how much to pay Class Counsel and whether to approve the Class Representatives' service awards. After the hearing, the Court will decide whether to finally approve the Settlement. We do not know how long these decisions will take.

The hearing may be rescheduled without further notice to you, so it is recommended you periodically check [LINK] for updated information.

**23.    Do I have to come to the Fairness Hearing?**

No. Class Counsel will answer any questions Judge Staton may have. However, you are welcome to attend the hearing at your own expense. If you send an objection, you do not have to come to Court to talk about it. As long as you mailed your written objection on time, the Court will consider it. You may also attend or pay your own lawyer to attend, but it is not necessary. Class Members do not need to appear at the hearing or take any other action to indicate their approval.

**24.    May I speak at the Fairness Hearing?**

You may ask the Court's permission to speak at the Fairness Hearing. To do so, you must send a letter saying that it is your "Notice of Intention to Appear in *In re: Hyundai and Kia Engine Litigation II*, No. 8:18-cv-02223-JLS-JDE (C.D. Cal.)" or state in your objections that you intend to appear at the hearing. Be sure to include your name, address, telephone number, the model year and VIN for your Class Vehicle(s), and signature, as well as the identities of any attorneys who will represent you. Your Notice of Intention to Appear must be postmarked no later than [DATE], and be sent to Defense Counsel and Class Counsel, at the following addresses:

| Defense Counsel | Class Counsel |
|:---:|:---:|
| Shon Morgan<br>Quinn Emanuel Urquhart &<br>Sullivan, LLP<br>865 S. Figueroa St., 10th Floor<br>Los Angeles, California 90017 | Matthew D. Schelkopf<br>Sauder Schelkopf LLC<br>1109 Lancaster Avenue<br>Berwyn, Pennsylvania 19312 |

| IF YOU DO NOTHING |
|:---:|

**25.     What happens if I do nothing at all?**

If you do nothing, you will not receive any reimbursements or compensation from this Settlement.  However, you will be entitled to the benefits of the 15-Year/150,000-Year Extended Warranty from the date of the vehicle's original retail delivery (if you continue to own or lease your Class Vehicle). **As explained above, to obtain Extended Warranty benefits, you may need to first complete the KSDS update at a Hyundai dealership.** But, unless you exclude yourself, you will not be able to start a lawsuit, continue a lawsuit, or be part of any other lawsuit against Hyundai or other related entities or individuals about the legal issues in this case, ever again.

This Settlement will not affect your right to sue Defendants for any claims not resolved by the Settlement, regardless of whether or not you exclude yourself from the Settlement.

| GETTING MORE INFORMATION |
|:-:|

**26.     Are there more details about the Settlement?**

This notice summarizes the proposed Settlement.  More details are in a Settlement Agreement, which you can view at [LINK].

Neither Defendants nor Class Counsel make any representation regarding the tax effects, if any, of receiving any benefits under this Settlement.  Consult your tax adviser for any tax questions you may have.

**27.     How do I get more information?**

You can call [PHONE] toll free or visit [LINK], where you will find information and documents about the Settlement, a Claim Form, plus other information.  You may also contact Class Counsel listed in response to Question 14.

All papers filed in this action are also available for review via the Public Access to Court Electronic Resources System (PACER), available online at http://www.pacer.gov.

**Other than a request to review the Court's files at the Clerk of the Court's Office, please do not contact the Clerk of the Court or the Judge with questions.**

# EXHIBIT B

# <u>NOTICE OF PROPOSED CLASS SETTLEMENT</u>

## If you bought or leased one of these vehicles equipped with the specified corresponding engine below, you might benefit from a class action settlement:

| Model Year | Model | Engine |
|---|---|---|
| 2011–2016 | Optima Hybrid (HEV) | Theta II 2.4L MPI Hybrid |
| 2017–2020 | Optima Hybrid (HEV/PHEV) | Nu 2.0L GDI Hybrid |
| 2011–2013 | Sorento | Theta II 2.4L MPI |
| 2011–2013 | Sportage | Theta II 2.4L MPI |
| 2010–2013 | Forte | Theta II 2.4L MPI |
| 2010–2013 | Forte Koup | Theta II 2.4L MPI |
| 2014–2018 | Forte | Nu 2.0L GDI |
| 2014–2016 | Forte Koup | Nu 2.0L GDI |
| 2012–2016 | Soul | Gamma 1.6L GDI |
| 2014–2019 | Soul | Nu 2.0L GDI |

*A federal court authorized this notice.  This is not a solicitation from a lawyer.*

*Your rights are affected whether you act or do not act.  Read this notice carefully.*

The purpose of this Notice is to inform you of a proposed Settlement of a class action lawsuit in California federal court called *In re: Hyundai and Kia Engine Litigation II*, No. 8:18-cv-02223-JLS-JDE (C.D. Cal.).  You are receiving this Notice because Kia Corporation ("KC") and Kia America, Inc.'s ("KA") (collectively "Kia") records indicate that you might be entitled to claim certain financial benefits offered by this Settlement.

The lawsuit alleges that certain Kia vehicles (called the "Class Vehicles" and listed below) have a defect that can cause engine seizure, stalling, engine failure, and possibly engine fire, and that some owners and lessees have been improperly denied repairs under the vehicle's warranty.  Kia has not been found liable for any claims alleged in the lawsuit.  The parties have instead reached a voluntary settlement in order to avoid lengthy litigation and thereby provide relief to Class Members.  People who owned or leased Class Vehicles, referred to as "Class Members," might be entitled to compensation if they submit valid and timely claims.

Under the proposed Settlement, and subject to proof, Kia will provide financial and other benefits for certain engine-related repairs and/or engine failures or engine fires.

To qualify for benefits under the Settlement you must have bought or leased a Class Vehicle, which are certain vehicle models originally equipped with or replaced with the respective corresponding genuine multi-port fuel injection ("MPI") or gasoline direct injection ("GDI") engine within Original Equipment Manufacturer ("OEM") specifications listed below:

- 2011–2016 model year Kia Optima Hybrid (HEV) vehicles with a Theta II 2.4-liter MPI engine Hybrid;
- 2017–2020 model year Kia Optima Hybrid (HEV/PHEV) vehicles with a Nu 2.0-liter GDI engine Hybrid;
- 2011–2013 model year Kia Sorento vehicles with a Theta II 2.4-liter MPI engine;
- 2011–2013 model year Kia Sportage vehicles with a Theta II 2.4-liter MPI engine;
- 2010–2013 model year Kia Forte vehicles with a Theta II 2.4-liter MPI engine;
- 2010–2013 model year Kia Forte Koup vehicles with a Theta II 2.4-liter MPI engine;
- 2014–2018 model year Kia Forte vehicles with a Nu 2.0-liter GDI engine;
- 2014–2016 model year Kia Forte Koup vehicles with a Nu 2.0-liter GDI engine;
- 2012–2016 model year Kia Soul vehicles with a Gamma 1.6-liter GDI engine; and
- 2014–2019 model year Kia Soul vehicles with a Nu 2.0-liter GDI engine.

To check whether your vehicle might be a Class Vehicle, you can visit the Settlement website at [LINK] or call [PHONE] and ask whether your vehicle is included in the Settlement.  Whether you visit the website or call the toll-free number, you will need to have your Vehicle Identification Number ("VIN") ready.

The benefits under the Settlement are:

- The Settlement extends the Powertrain Limited Warranty to 15 years or 150,000 odometer miles from the date of the vehicle's original retail delivery, whichever comes first, to both original and subsequent owners for damage to the engine short block and long block assembly caused by connecting rod bearing failure (the "Extended Warranty").  **To obtain Extended Warranty benefits, you may need to first complete the Knock Sensor Detection System ("KSDS") update at a Kia dealership (explained further below).**  For the 90-day period following final approval of the Settlement, the Extended Warranty also provides a free campaign or recall inspection for any Class Vehicles not yet inspected and within the 15-year or 150,000-odometer-mile period from the date of the vehicle's original retail delivery (whichever comes first), regardless of prior repairs.  Service campaigns and recalls are provided free of charge to customers of eligible vehicles.  The Settlement also provides loaner vehicles in some instances, subject to dealer availability, or reimbursement or compensation of certain expenses for rental car, ride-sharing, or other transportation expenses for any vehicles that undergo qualifying engine replacement or repair.

- The Settlement provides certain cash reimbursements for qualifying past out-of-pocket repairs and compensation for past and current out-of-pocket repair-related transportation (*e.g.*, rental, ride-share) and towing expenses, as well as for inconvenience due to qualifying engine repair delays while the vehicle was serviced by Kia dealers.

- The Settlement provides certain cash compensation for out-of-pocket transportation (*e.g.*, rental, ride-share) and towing expenses, and for lodging and meal expenses in certain circumstances, if you experienced a qualifying engine failure or engine fire (regardless of whether you obtained a repair afterwards).

- The Settlement provides cash compensation for certain trade-ins and sales of unrepaired vehicles that experienced a qualifying engine failure or fire.

- The Settlement provides compensation for vehicles lost due to qualifying engine fires.  In some instances, the Settlement also provides a cash rebate if you lost faith in the vehicle after experiencing engine troubles related to the alleged defect and you purchased another Kia vehicle within a specified timeframe.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **SUBMIT A CLAIM FORM** | The <u>only</u> way to get a reimbursement or compensation.  However, it is not necessary to submit a claim form to benefit from the 15-Year/150,000-Mile Extended Warranty, subject to first installing the KSDS update, if applicable.  The deadline to submit a claim for most benefits is [DATE].  Any extension of this date will be posted on the Settlement website. |
| **EXCLUDE YOURSELF** | Get no payment.  This is the only option that allows you to ever file or be part of any pending or future lawsuit against Kia about the legal claims in this case.  The deadline to submit a request for exclusion is [DATE]. |
| **OBJECT** | In order to object to the Settlement, you must remain a member of the lawsuit—you cannot ask to be excluded.  You may object to the Settlement by writing to Class Counsel (identified on page [PAGE]) and indicating why you do not like the Settlement.  The deadline to object is [DATE]. |
| **GO TO A HEARING** | Ask to speak in Court about the fairness of the Settlement.  The deadline to challenge the fairness of the Settlement is [DATE]. |
| **DO NOTHING** | Get no reimbursement or compensation.  However, you will receive the 15-Year/150,000-Mile Extended Warranty, subject to first installing the KSDS update, if applicable. |

- These rights and options—**and the deadlines to exercise them**—are explained in this notice.

- The Court overseeing this case still must decide whether to approve the Settlement.  Payments will be made if the Court approves the Settlement and after appeals are resolved.  The Court approval process may take some time, so please be patient.

- Please visit [LINK] for a copy of this notice in Spanish.  Visite [LINK] para obtener una copia de este aviso en español.

**BASIC INFORMATION**................................................................................................**1**
1.   Why did I get this notice package?....................................................................... 1
2.   What are these lawsuits about?.............................................................................. 1
3.   Why is this a class action?.................................................................................... 1
4.   Why is there a settlement?.................................................................................... 1

**WHO IS IN THE SETTLEMENT?**........................................................................**2**
5.   How do I know if I am part of the Settlement?..................................................... 2
6.   Which vehicles are included?................................................................................ 2
7.   If I bought or leased a Class Vehicle that has not had problems, am I included?..... 2
8.   I am still not sure if I am included....................................................................... 3

**SETTLEMENT BENEFITS – WHAT YOU GET** .................................................**3**
9.   What does the Settlement provide? ....................................................................... 3

**HOW YOU GET A REIMBURSEMENT – SUBMITTING A CLAIM FORM**.......**8**
10.   How do I make a claim? ...................................................................................... 8
11.   What kind of documentation do I need to include when submitting my Claim Form?....... 8
12.   When would I get my reimbursement? ................................................................ 9
13.   What if my claim is found to be deficient?........................................................... 9
14.   What am I giving up to stay in the Settlement Class? ........................................... 9

**EXCLUDING YOURSELF FROM THE SETTLEMENT** ..................................**10**
15.   How do I get out of the Settlement? .................................................................. 10
16.   If I do not exclude myself, can I sue for the same thing later? ............................ 11
17.   If I exclude myself, can I get the benefits of this Settlement?............................. 11

**THE LAWYERS REPRESENTING YOU** ...........................................................**11**
18.   Do I have a lawyer in this case?......................................................................... 11
19.   How will the lawyers be paid and will the Class representatives receive service
        payments? ........................................................................................................ 11

**OBJECTING TO THE SETTLEMENT** ..............................................................**12**
20.   How do I tell the Court if I do not like the Settlement?...................................... 12
21.   What is the difference between objecting and excluding?................................... 13

**THE COURT'S FAIRNESS HEARING** ..............................................................**13**
22.   When and where will the Court decide whether to approve the Settlement? ........ 13
23.   Do I have to come to the Fairness Hearing? ...................................................... 13
24.   May I speak at the Fairness Hearing? ................................................................ 13

**IF YOU DO NOTHING** ......................................................................................**14**
25.   What happens if I do nothing at all? .................................................................. 14

**GETTING MORE INFORMATION**....................................................................**14**
26.   Are there more details about the Settlement? ..................................................... 14
27.   How do I get more information?........................................................................ 14

| BASIC INFORMATION |
|---|

### 1.    Why did I get this notice package?

According to Kia's records, you bought or leased a Class Vehicle in the United States (or while abroad on active U.S. military duty).

The Court has ordered this notice be sent to you because you have a right to know about a proposed settlement of a class action lawsuit and about your options in that lawsuit before the Court decides whether to approve the Settlement.  If the Court approves the Settlement, and after objections and appeals are resolved, Kia will provide payments and other benefits agreed to in the Settlement to the Class Members.  This notice explains the lawsuit, the Settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.

**You should read this entire notice.**

### 2.    What are these lawsuits about?

The people who filed these lawsuits are called Plaintiffs, and the companies they sued, including Kia, are called Defendants.  The Plaintiffs allege that the Class Vehicles suffer from a defect, related to connecting rod bearing failure, that can cause engine seizure, stalling, engine failure, and engine fire.  The Plaintiffs also allege that engine seizure or stalling can be dangerous if experienced.  The Plaintiffs also allege that some owners and lessees have been improperly denied repairs under the vehicle's warranty.  Kia denies Plaintiffs' allegations.

### 3.    Why is this a class action?

In a class action lawsuit, one or more persons, called "Class Representatives" (in this case Leslie Flaherty, Joanna Caballero, James Carpenter, Sharon Moon, Stanton Vignes, Kesha Franklin Marbury, Christina Roos, James J. Martino, James H. Palmer, John H. Caro, Ashley Gagas, Nicole Thornhill, Janet O'Brien, Robert Buettner, Linda Short, James Twigger, Jennifer and Anthony DiPardo, Seane Ronfeldt, Gabrielle Alexander, Tavish Carduff, Brian Frazier, Chad Perry, William Pressley, and Jeannett Smith), sue on behalf of people who have similar claims.  All of these people and those similarly situated are a "Settlement Class" or "Class Members."  One court resolves the issues for all Class Members, except those who exclude themselves from the Settlement Class.  The court in charge of the case is the United States District Court for the Central District of California, and the case is known as *In re: Hyundai and Kia Engine Litigation II*, No. 8:18-cv-02223-JLS-JDE (C.D. Cal.).  United States District Court Judge Josephine Staton is presiding over this class action.

### 4.    Why is there a settlement?

The Class Representatives and Defendants agreed to a settlement to avoid the cost and risk of further litigation, including a potential trial, and so that the Class Members can get payments and other benefits in exchange for releasing Defendants from liability.  The Settlement does not mean Defendants broke any laws and/or did anything wrong, and the Court did not decide which side was right.

The Class Representatives and Defendants entered into a Settlement Agreement that was preliminarily approved by the Court, which authorized the issuance of this notice.  The Class Representatives and the lawyers representing them (called "Class Counsel") believe that the Settlement is in the best interest of the Class Members.

This notice summarizes the essential terms of the Settlement.  The Settlement Agreement, along with all exhibits and addenda, sets forth in greater detail the rights and obligations of all the parties and is available at [LINK].  If

there is any conflict between this notice or the claim form and the Settlement Agreement, the Settlement Agreement governs.

| **WHO IS IN THE SETTLEMENT?** |
|---|

### 5.    How do I know if I am part of the Settlement?

Judge Staton decided that, for the purposes of this proposed Settlement, everyone who fits this description is covered by the Settlement:  <u>All owners and lessees of a Class Vehicle who purchased or leased the Class Vehicle in the United States, including those that were purchased while the owner was abroad on active U.S. military duty, but excluding those purchased in the U.S. territories and/or abroad.</u>

However, the Class excludes all claims for death, personal injury, property damage, and subrogation.

The Class also excludes Kia; Hyundai Motor America, Inc. and Hyundai Motor Company (together, "Hyundai"); any affiliate, parent, or subsidiary of Hyundai or Kia; any entity in which Hyundai or Kia has a controlling interest; any officer, director, or employee of Hyundai or Kia; any successor or assign of Hyundai or Kia; any judge to whom this Action is assigned, their spouse, and all persons within the third degree of relationship to either of them, as well as the spouses of such persons; individuals and/or entities who validly and timely opt-out of the Settlement; consumers or businesses that have purchased Class Vehicles previously deemed a total loss (*e.g.*, salvage) (subject to verification through Carfax or other means); owners or lessees who rent or previously rented the Class Vehicle for use by third-party drivers; individuals and commercial entities engaged in the business of buying, selling, or dealing in motor vehicles (*e.g.*, new and used motor vehicle dealerships); banks, credit unions, or other lienholders; and current or former owners of a Class Vehicle who previously released their claims against Hyundai or Kia with respect to the same issues raised in this class action.

### 6.    Which vehicles are included?

The "Class Vehicles," for the purposes of the description in the response to Question 5 above, are the following certain vehicle models originally equipped with or replaced with the respective corresponding genuine MPI or GDI engine within OEM specifications: 2011–2016 model year Kia Optima Hybrid (HEV) vehicles with a Theta II 2.4-liter MPI Hybrid engine; 2017–2020 model year Kia Optima Hybrid (HEV/PHEV) vehicles with a Nu 2.0-liter GDI Hybrid engine; 2011–2013 model year Kia Sorento vehicles with a Theta II 2.4-liter MPI engine; 2011–2013 model year Kia Sportage vehicles with a Theta II 2.4-liter MPI engine; 2010–2013 model year Kia Forte vehicles with a Theta II 2.4-liter MPI engine; 2010–2013 model year Kia Forte Koup vehicles with a Theta II 2.4-liter MPI engine; 2014–2018 model year Kia Forte vehicles with a Nu 2.0-liter GDI engine; 2014–2016 model year Kia Forte Koup vehicles with a Nu 2.0-liter GDI engine; 2012–2016 model year Kia Soul vehicles with a Gamma 1.6-liter GDI engine; and 2014–2019 model year Kia Soul vehicles with a Nu 2.0-liter GDI engine.

### 7.    If I bought or leased a Class Vehicle that has not had problems, am I included?

Yes.  You did NOT have to experience stalling, engine seizure, engine failure, or a vehicle fire to be included in this Settlement.  If you still own or lease a Class Vehicle, you are eligible to take advantage of the Settlement's extension of the Powertrain Limited Warranty to 15 years or 150,000 odometer miles from the date of the vehicle's original retail delivery, whichever comes first, for certain types of engine repairs, as well as certain other benefits of the Settlement.  **To obtain Extended Warranty benefits, you may need to first complete the KSDS update at a Hyundai dealership (explained further below).**

**8.** **I am still not sure if I am included.**

If you are still not sure whether you are included, you can ask for free help.  You can visit [LINK] or call [PHONE]
and ask whether your vehicle is included in the Settlement.  Whether you visit the website or call the toll-free
number, you will need to have your VIN ready.  The VIN is located on a small placard on the top of the dashboard
and is visible through the driver's side corner of the windshield.  It also appears on your vehicle registration card
and probably appears on your vehicle insurance card.  Your VIN should have 17 characters, a combination of
both letters and numbers.

---

## SETTLEMENT BENEFITS – WHAT YOU GET

---

**9.** **What does the Settlement provide?**

The Settlement provides the following benefits for which you can submit a claim (see the response to Question
10 for how to make a timely claim using the Claim Form):

1.  <u>Warranty Extension</u>

As part of the Settlement, Kia is extending the Powertrain Limited Warranty to a 15-Year/150,000-Mile Limited
Warranty from the date of the vehicle's original retail delivery for current and subsequent owners of Kia Class
Vehicles.  The Extended Warranty will cover damage to the short block assembly, consisting of the engine block,
crankshaft and bearings, connecting rods and bearings, and pistons, and the long-block assembly, **that is the
causal result of connecting rod bearing failure** in those Class Vehicles owned or leased by individual
consumers that occurs within 15 years from the date of the vehicle's original retail delivery or 150,000 odometer
miles, whichever comes first.

**To obtain Extended Warranty benefits, you will need to have the free KSDS update installed in your vehicle
by a Kia dealership <u>BEFORE</u> experiencing an otherwise Qualifying Failure or Qualifying Fire (see below).**
You are not required to complete the KSDS update to obtain Extended Warranty if your vehicle was previously
recalled under NHTSA Recall Numbers 20V750 or 21V844 (which affected 2011–2013 model year Kia Optima
Hybrid (HEV) vehicles with a Theta II 2.4-liter MPI Hybrid engine; 2017–2018 model year Kia Optima Hybrid
(HEV/PHEV) vehicles with a Nu 2.0-liter GDI Hybrid engine; 2011–2013 model year Kia Sorento vehicles with
a Theta II 2.4-liter MPI engine; 2012 model year Kia Sportage vehicles with a Theta II 2.4-liter MPI engine;
2012–2013 model year Kia Forte vehicles with a Theta II 2.4-liter MPI engine; 2012–2013 model year Kia Forte
Koup vehicles with a Theta II 2.4-liter MPI engine; 2014–2015 model year Kia Forte vehicles with a Nu 2.0-liter
GDI engine; 2014–2015 model year Kia Forte Koup vehicles with a Nu 2.0-liter GDI engine; and 2014–2015
model year Kia Soul vehicles with a Nu 2.0-liter GDI engine).  However, if you have not done so already, Kia
strongly encourages you to have your local Kia dealership install the KSDS update by [NOTICE DATE + 150],
so that you may be eligible for other compensation offered under the Settlement, *e.g.*, rental car, towing, ride-
sharing, or other transportation expenses and incidental expenses, where the underlying repair itself is covered
under the Extended Warranty.  To confirm whether your vehicle has received the KSDS update or for assistance
scheduling an appointment, please contact your nearest Kia dealer or Kia's Customer Care Center via
https://ksupport.kisausa.com/ConsumerAffairs or by phone at 1-800-333-4542.

With the exception of cases of where Class Members did not timely obtain the KSDS update, if applicable, or
cases of "Exceptional Neglect" (defined below), and subject to the existing terms, limitations, and condition of
the Class Vehicles' original Powertrain Limited Warranty, the 15-Year/150,000-Mile Limited Warranty from the
date of the vehicle's original retail delivery shall persist in its full duration once obtained regardless of any
subsequent transfer in ownership or lease of the vehicle.  The Extended Warranty is not available to commercial

entities such as used car dealers, franchisees, or automobile auction houses, but will still be transferable to subsequent owners.

The Extended Warranty covers all costs of inspections and repairs including, parts, labor, and diagnosis, for the engine short block assembly and long block assembly <u>caused by connecting rod bearing failure</u>.  Class Members are suggested to retain all vehicle maintenance records, and, if Kia believes there may be Exceptional Neglect, you may be required to provide records for vehicle maintenance performed to receive Extended Warranty repairs.

Coverage under the Extended Warranty may be denied for Exceptional Neglect.  Exceptional Neglect means when (i) Defendants or their dealers suspect the engine evidences a lack of maintenance or care (*i.e.*, outside of factory maintenance and care specifications) based on an inspection of the physical condition of the engine that shows unacceptable lacquering, varnish, or sludge and (ii) service records demonstrate unacceptable gaps in regular oil changes.

You will have the opportunity to provide service records to Kia if Exceptional Neglect is suspected.  Based on the records that you submit, records from dealers, and records from Carfax (or similar reputable third parties), there are unacceptable gaps in regular oil changes if, since original delivery, the Class Vehicle has one oil change gap of greater than 10,500 miles or 14 months, or was previously diagnosed with excessive oil consumption issues **AND** the Class Vehicle was not repaired to address such issues within 30 days or 1,000 miles, whichever comes first, subsequent to any completed oil consumption testing and confirmed diagnosis.  If you experienced a Qualifying Failure or Qualifying Fire within your vehicle's first 15,000 miles, however, you will not be barred from receiving Extended Warranty coverage regardless of any oil change gaps.

As part of the Settlement, Kia will provide a free inspection for up to 90 days after the Notice Date for any vehicle that did not receive an inspection under at least one of the KSDS update campaigns or recalls if it is still within the 15-year or 150,000-mile period from the date of the vehicle's original retail delivery, whichever comes first.

Depending on loaner availability, Kia dealerships will also provide a free loaner vehicle of comparable value **if requested** and until repairs are completed.  If no loaner vehicle is available, Kia will provide compensation of reasonable rental car, ride-share, or transportation expenses up to a maximum of $80 per day.  (See below for how to make a claim for transportation reimbursements.)

You do **NOT** need to submit a Claim Form to receive this extension of the Powertrain Limited Warranty for the engine short block assembly or long block assembly under this Settlement.

2.  <u>Reimbursement for Past Repairs</u>

Under the Settlement, Kia will reimburse you in full for money you spent on Qualifying Repairs that occurred before [NOTICE DATE] if the vehicle was within 15 years from the date of original retail delivery or 150,000 odometer miles, whichever came first.  In certain instances, you may receive an additional $150 goodwill payment and/or inconvenience payment based on the following requirements:

**(a) TYPES OF "QUALIFYING REPAIRS"**

▪ "Qualifying Repairs" refers to any repairs performed to address hole-in-block symptoms (*i.e.*, the connecting rod punctures a hole in the engine block), engine seizure (unrelated to pre-existing oil consumption issues), or engine fire (see "Qualifying Fire").

▪ If the repair was completed at an authorized Kia dealership, "Qualifying Repairs" also include any repairs to address symptoms associated with connecting rod bearing failure where the vehicles

received a diagnosis of (1) abnormal bearing noise, (2) stall caused by seizure with a failed bearing clearance test, or (3) P1326 warning light.

- "Qualifying Repairs" <u>does not</u> include repairs caused by a collision involving a Class Vehicle, unless the collision was directly caused by a Qualifying Failure or Qualifying Fire. "Qualifying Repairs" also <u>does not</u> include any repairs that were plainly unrelated to engine short block manufacturing issues (for example, a stall caused directly by a timing chain, fuel pump, oxygen sensor, turbocharger, or the electrical system) or where an investigation or inspection revealed an unrelated cause (for example, oil consumption issues that are not the causal result of connecting rod bearing failure).

- "Exceptional Neglect" may also exclude an otherwise Qualifying Repair if (i) an evaluation of available service records and/or submitted documentation suggests a lack of maintenance or care (*i.e.*, outside of factory maintenance and care specifications), *e.g.*, a repair order or service records noting engine oil sludge, engine coolant in oil, oil that smells burnt, an old oil filter (noted to be on the engine for greater than 20,000 miles), very low levels of drained oil, or other similar indicia of neglect, and (ii) service records demonstrate unacceptable gaps in regular oil changes.

- You will have the opportunity to provide service records to Kia if Exceptional Neglect is suspected. Based on the records that you submit, records from dealers, and records from Carfax (or similar reputable third parties), there are unacceptable gaps in regular oil changes if, since original delivery, the Class Vehicle has one oil change gap of greater than 10,500 miles or greater than 14 months, or was previously diagnosed with excessive oil consumption issues but the Class Vehicle was not repaired to address such issues within 30 days or 1,000 miles, whichever comes first, subsequent to any completed oil consumption testing and confirmed diagnosis. If the Qualifying Repair occurred within your vehicle's first 15,000 miles, however, Exceptional Neglect will not bar you from obtaining reimbursement for the past repair of the Qualifying Repair.

**(b) GOODWILL PAYMENT FOR PREVIOUSLY DENIED WARRANTY REPAIRS**

- If before [NOTICE DATE], you presented a Qualifying Repair to a Kia dealership and were denied an in-warranty repair and subsequently obtained the Qualifying Repair elsewhere, you are eligible to receive an additional $150 goodwill payment. The denial of warranty repair must be documented contemporaneously in repair orders or communications to Kia or its representatives.

\* \* \*

Class Members are eligible for a reimbursement even if warranty coverage was denied on grounds of improper service or maintenance (excepting limited Exceptional Neglect circumstances), and even if the repairs were performed at an independent mechanic shop as long as it is a business entity with a business address, a working phone number, and online reviews (all subject to verification).

3.     <u>Compensation for Repair-Related Transportation and Towing Expenses</u>

Money you spent on rental cars, ride-shares, or similar transportation services will be reimbursed for up to a maximum of $80 per day, and towing services will be reimbursed in full as long as these expenses are reasonably related to obtaining a Qualifying Repair (see above) performed on a Class Vehicle within 15 years from the date of original retail delivery or 150,000 odometer miles, whichever comes first. A Qualifying Repair that begins after [NOTICE DATE] must be from a Kia dealership. You must have completed the KSDS update on your Class Vehicle if the Qualifying Repair begins after [NOTICE DATE + 150] to be eligible for this reimbursement. Reimbursement for these expenses is limited to no more than fifteen (15) business days before delivery of the

vehicle to the dealership or third-party repair facility for the Qualifying Repair and up to three (3) business days after Class Member was notified that their vehicle was ready to be picked up.

      4.   <u>Inconvenience Due to Repair Delays</u>

You may be entitled to compensation based on the length of the delay if you experienced prolonged delays (exceeding 60 days) obtaining a Qualifying Repair performed by an authorized Kia dealer on a Class Vehicle within 15 years from the date of original retail delivery or 150,000 miles, whichever comes first.  You must have completed the KSDS update on your Class Vehicle if the Qualifying Repair begins after [NOTICE DATE + 150] to be eligible for this compensation.

If you had delays between 61 and 180 days, you will be entitled to $75.  For delays of 181 days or more, you are entitled to $100, plus $100 for each additional 30-day period of delay (*i.e.*, $100 total for delays of 181–210 days, $200 total for delays of 211–240 days, $300 total for delays of 241–270 days, and so forth).

A class member may elect to receive this compensation in the form of a dealer service card valued at 150% of the amount that would otherwise be paid.  The dealer service card may only be used at an authorized Kia dealer in payment towards any merchandise, parts, or service.

      5.   <u>Incidentals for Qualifying Failure or Qualifying Fire</u>

Money you spent on reasonable towing services will be reimbursed in full if you experience a Qualifying Failure or Qualifying Fire **within 150 miles of your home**, within 15 years from the date of the vehicle's original retail delivery or 150,000 miles, whichever comes first.  If the Qualifying Failure or Qualifying Fire occurred within 150 miles of your home, you can get reimbursed for up to $125 for actual transportation expenses incurred on the day of Qualifying Failure or Qualifying Fire.  If the Qualifying Failure or Qualifying Fire occurred **more than 150 miles away from your home**, you can get reimbursed for a maximum of three (3) days of up to $300 for the first day, up to $200 for the second day, and up to $100 for the third day for transportation, lodging, and reasonable meal expenses.

**"QUALIFYING FAILURES" AND "QUALIFYING FIRES"**

For future Qualifying Failures and Qualifying Fires occurring after [NOTICE DATE + 150], you must have completed the KSDS update on your Class Vehicle by [NOTICE DATE + 150] to be eligible for this compensation.

"Qualifying Failure" refers to an engine seizure, engine stall, or other vehicle incident short of an engine compartment fire that would otherwise be addressed by a Qualifying Repair (see above).  "Qualifying Fire" refers to an engine compartment fire that would otherwise be addressed by a Qualifying Repair (see above).

An engine failure is not a Qualifying Failure and an engine fire is not a Qualifying Fire if unrelated to the engine short block manufacturing issues as it relates to connecting rod bearing failure or if an investigation or inspection revealed an unrelated cause.  An engine failure or engine fire does not qualify where documentation shows the Class Vehicle was previously involved in a moderate to severe front-end collision (see the Settlement Agreement for further details) prior to the otherwise Qualifying Failure or Qualifying Fire.

"Exceptional Neglect" may also exclude an otherwise Qualifying Repair or Qualifying Fire if (i) an evaluation of available service records and/or submitted documentation suggests a lack of maintenance or care (*i.e.*, outside of factory maintenance and care specifications), *e.g.*, a repair order or service records noting engine oil sludge, engine coolant in oil, oil that smells burnt, an old oil filter (noted to be on the engine for greater than 20,000

miles), very low levels of drained oil, or other similar indicia of neglect, and (ii) service records demonstrate unacceptable gaps in regular oil changes.

You will have the opportunity to provide service records to Kia if Exceptional Neglect is suspected. Based on the records that you submit, records from dealers, and Carfax (or similar reputable third parties), there are unacceptable gaps in regular oil changes if, since original delivery, the Class Vehicle has one oil change gap of greater than 10,500 miles or greater than 14 months, or was previously diagnosed with excessive oil consumption issues but the Class Vehicle was not repaired to address such issues within 30 days or 1,000 miles, whichever comes first, subsequent to any completed oil consumption testing and confirmed diagnosis. If the Qualifying Repair occurred within your vehicle's first 15,000 miles, however, Exceptional Neglect will not bar you from obtaining reimbursement for the past repair of the Qualifying Repair.

6.    <u>Compensation If You Sold or Traded In a Class Vehicle in Certain Circumstances</u>

If your Class Vehicle (i) experienced a Qualifying Failure or Qualifying Fire (see above) within 15 years from the date of original retail delivery or 150,000 odometer miles, whichever came first, and before [NOTICE DATE], *and* (ii) you sold or traded in the Class Vehicle without first getting it repaired, you may receive compensation for any resulting effect on fair market value of the Class Vehicle received in the sale or trade. You may also receive an additional goodwill payment of $150.00. The amount of compensation will be based on the baseline Black Book value of the vehicle minus the actual amount received from the sale or trade-in transaction as a whole (among other considerations).

7.    <u>Compensation for Vehicle Involved in a Qualifying Fire</u>

If your Class Vehicle suffered or suffers a Qualifying Fire (see above) within 15 years from the date of original retail delivery or 150,000 odometer miles, whichever comes first, you may receive compensation for the value of the vehicle, and an additional $150 goodwill payment. If the Qualifying Fire occurs after [NOTICE DATE + 150], you must have completed the KSDS update on your Class Vehicle by [NOTICE DATE + 150] to be eligible for this compensation. The amount of compensation will be based on the maximum Black Book value of the vehicle minus any value received for the vehicle (*e.g.*, through insurance).

8.    <u>Qualifying Failure or Qualifying Fire Rebate Program</u>

You may be entitled to a rebate payment if after [NOTICE DATE] (i) you lost faith in your Class Vehicle as a result of a Qualifying Failure or Qualifying Fire (see above) occurring within 15 years from the date of the vehicle's original retail delivery or 150,000 odometer miles, whichever came first, (ii) you sold your vehicle as result, and (iii) you purchase a replacement Kia vehicle from an authorized Kia dealership. If the Qualifying Failure or Qualifying Fire occurs after [NOTICE DATE + 150], you must have completed the KSDS update on your Class Vehicle by [NOTICE DATE + 150] to be eligible for this rebate payment.

The rebate is based on the difference between the value you received at trade-in or sale and the maximum Black Book value (*i.e.*, private party/very good) of the Class Vehicle at the time of the relevant KSDS update campaign launch for the Class Vehicle, irrespective of any underlying vehicle loans, up to the following amounts: for model year 2010, 2011, and 2012 Class Vehicles $2,500; for model year 2013 and 2014 Class Vehicles $2,000; for model year 2015 and 2016 Class Vehicles $1,500, and for model year 2017, 2018, 2019, and 2020 model year Class Vehicles $1,000.

9.     <u>Informational Pamphlet</u>

The Settlement provides that Kia will distribute an informational pamphlet to Class Members that provides further recommended guidance on the maintenance of the engines in the Class Vehicles and that reminds Class Members of the available inspections and repairs.  We suggest you keep the pamphlet in the vehicle at all times.

**HOW YOU GET A REIMBURSEMENT – SUBMITTING A CLAIM FORM**

**10.     How do I make a claim?**

- Fill out the Claim Form (paper or online), <u>and</u>

- Include the documentation specified on the Claim Form, <u>and</u>

- Submit online, by mail, or email the Claim Form to the address listed on the Claim Form, <u>and</u>

- Do so by [DATE] (any extension of that date will be posted on the Settlement website), unless your claim relates to a Qualifying Repair, Qualifying Failure, or Qualifying Fire that occurs after [NOTICE DATE], in which case you have 90 days from the date those costs were incurred or from the date you experienced the Qualifying Failure or Qualifying Fire.

Kia encourages you to submit your Claim Form online, but you may download and then print a Claim Form by visiting [LINK] or you may request a Claim Form be mailed to you through [LINK] or by calling [PHONE]. Please keep a copy of your completed Claim Form and all documentation you submit for your own records.

If you fail to submit a Claim Form and supporting documents by the required deadline, you will not get paid. Sending in a Claim Form late will be the same as doing nothing.  Please **<u>DO NOT</u>** send Claim Forms to Class Counsel or the Court.

**11.     What kind of documentation do I need to include when submitting my Claim Form?**

In addition to a completed Claim Form, you will need to submit supporting documentation.  For benefits relating to a Qualifying Repair, this generally includes at least (i) proof that you owned or leased your Class Vehicle; (ii) proof that the Qualifying Repair actually occurred, like a repair order; (iii) proof you paid for the Qualifying Repair and any other repair-related expenses; and (iv) related insurance paperwork if any.  If you received the Qualifying Repair at a Kia dealership, you are strongly encouraged to submit repair orders, their communications with the dealership, and any other documentation related to the Qualifying Repair, so that Kia can take any necessary steps to acquire additional information that may be needed to assist with approving the claim.

For benefits that do not require you to get a Qualifying Repair, you will similarly need to submit (i) proof that you owned or leased your Class Vehicle; (ii) proof that a Qualifying Failure or Qualifying Fire actually occurred, like a police report and/or insurance paperwork; (iii) proof you paid for expenses incurred as a result; and (iv) if applicable, proof of sale or trade-in and value received for the sale or trade-in of your vehicle.

Proof that you incurred an expense may be different from proof that you paid for it.  For example, while an invoice may show that you were charged for a repair, you will also need to provide a credit card receipt, credit card statement, bank statement, cleared check, or other documents to show that you actually paid for it.  The only circumstance in which attesting (swearing under oath) on your Claim Form that you paid for something in cash counts as proof of payment is if you paid cash for a repair done at an authorized Kia dealership.

**12.     When would I get my reimbursement?**

In general, valid claims will be paid as they are approved, **<u>after</u>** the Effective Date.  If there are no objections or appeals, the Effective Date for the Settlement will be the date of the Court's Order giving final approval to the Settlement.  **<u>Payments under the Settlement will begin once the Settlement has been finally approved by the Court and any appeals from that decision are completed.</u>**  If there are objections or appeals, the date will be later.  When the date becomes known it will be posted at [LINK].

The Hon. Josephine Staton, U.S. District Court Judge, will hold a Fairness Hearing at [TIME] on [DATE] in Courtroom 8A on the 8th Floor at the U.S. District Court for the Central District of California, First Street U.S. Courthouse, 350 West 1st St., Los Angeles, CA 90012, to decide whether to approve the Settlement.  The hearing may be rescheduled without further notice to you, so it is recommended you periodically check [LINK] for updated information.  If the Court approves the Settlement, there may be appeals afterwards.  It is always uncertain whether these appeals can be resolved, and resolving them can take time, perhaps more than a year.  Please be patient.

You may continue to check on the progress of the Settlement by visiting [LINK] or calling [PHONE].

**13.     What if my claim is found to be deficient?**

If a claim is found to be deficient and is rejected during the review process by the Settlement Administrator, the Class Member will be notified of the deficiency in writing.  The Settlement Class Member will then have an opportunity to remedy the deficiency within 45 days of the written notice.

Kia will then send you a final determination of how much it will reimburse you.  If you are unhappy with the final determination, you must write to Kia by mail within 30 days from the postmark date of your final determination letter or email to state that you elect arbitration through the Better Business Bureau ("BBB").  At that point, you and Kia will have up to 30 days to resolve the dispute before you can go to the BBB.

**14.     What am I giving up to stay in the Settlement Class?**

Unless you exclude yourself in writing as described in the answer to Question 15, you will be treated as part of the Settlement Class, and that means that **<u>you cannot sue, continue to sue, or be part of any other lawsuit against Kia,</u>** or other related entities or individuals (listed in the Settlement Agreement, which you can view at [LINK]) about the legal issues in *this* case if the Settlement is approved, including but not limited to claims of false advertising, deceptive practices, fraud, breach of implied or express warranties, lemon laws, unjust enrichment, strict product liability, and negligence arising from the defect alleged in this case.  You will not be able to sue even on existing claims that you may already hold against Kia, or other related entities or individuals listed in the Settlement Agreement.  It also means that all the Court's orders will apply to you and legally bind you.

However, nothing in this Settlement will prohibit you from pursuing claims for: (i) death; (ii) personal injury; (iii) damage to property other than to a Class Vehicle; (iv) subrogation; or (v) any and all claims that relate to something other than a Class Vehicle <u>and</u> the alleged defect here.

If you have any questions about the scope of the legal claims you give up by staying in the Settlement Class, you may view Section VI of the Settlement Agreement (available at [LINK]) or you can contact the lawyers representing the Settlement Class (listed below) for free or speak with your own lawyer at your own expense.

| | | |
|---|---|---|
| Matthew D. Schelkopf<br>Sauder Schelkopf LLC<br>1109 Lancaster Avenue<br>Berwyn, Pennsylvania 19312<br>mds@sstriallawyers.com | Steve W. Berman<br>Hagens Berman Sobol Shapiro LLP<br>1301 Second Avenue<br>Suite 2000<br>Seattle, WA 98101<br>steve@hbsslaw.com | Gretchen Freeman Cappio<br>Keller Rohrback L.L.P.<br>1201 Third Avenue, Suite 3200<br>Seattle, WA 98101<br>gcappio@kellerrohrback.com |

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you do not want the benefits or reimbursements provided in this Settlement, and you want to keep the right to sue or continue to sue Kia or other related entities or individuals, on your own and at your own expense, about the legal issues in this case, including for any existing claims you may currently have, then you must take steps to get out of the Settlement Class.  This is called excluding yourself—or is sometimes referred to as opting out of the Settlement Class.

**15.    How do I get out of the Settlement?**

To exclude yourself from the Settlement, you must send a letter by U.S. mail (or an express mail carrier) saying that you want to "opt-out of" or "be excluded from" the Class Settlement in *In re: Hyundai and Kia Engine Litigation II*, No. 8:18-cv-02223-JLS-JDE (C.D. Cal.).  Be sure to include (i) your full name and current address, (ii) the model year, exact or approximate date(s) of purchase or lease, Vehicle Identification Number ("VIN") of your vehicle (which is located on a placard on the top of the dashboard visible through the driver's side corner of the windshield), and (iii) a clear statement saying you wish to be excluded from the Settlement and the Class. You must mail your exclusion request no later than [DATE] to:

| Defense Counsel |
|---|
| Shon Morgan<br>Quinn Emanuel Urquhart & Sullivan, LLP<br>865 S. Figueroa St., 10th Floor<br>Los Angeles, California 90017 |

***You cannot exclude yourself on the phone, on any website, or by e-mail.***  Please keep a copy of any exclusion (or opting out) letter for your records.

If you ask to be excluded, you cannot receive any benefits under this Settlement, and you cannot object to the Settlement.  If you choose to be excluded or opt out, you will be excluded for all claims you have that are included in the Settlement.  You will not be legally bound by anything that happens in this lawsuit.  Depending on the laws in your state, you may be able to sue (or continue to sue) Kia, or other related entities or individuals in the future about the legal issues in this case.

Any repairs performed on your Class Vehicle under the 15-Year/150,000-Mile Extended Warranty (from the date of the vehicle's original retail delivery) before [NOTICE DATE] shall preclude you from excluding yourself from the Class.

**16.    If I do not exclude myself, can I sue for the same thing later?**

10

No.  Unless you exclude yourself (opting out), you give up the right to sue Kia and other related entities or individuals for the claims that this Settlement resolves.

If you have a pending lawsuit against Kia, or related entities, speak to your lawyer in that lawsuit immediately. You must exclude yourself from *this* Settlement Class to continue your own lawsuit if it concerns the same legal issues related to the Class Vehicles and the alleged defect in this case, even if it involves other causes of action, including but not limited to, false advertising, deceptive practices, fraud, breach of implied or express warranties, lemon laws, unjust enrichment, strict product liability, and negligence.  Remember, the exclusion deadline is [DATE].

If you are a Class Member and you do nothing, you will remain a Class Member and all of the Court's orders will apply to you, you will be eligible for the Settlement benefits described above as long as you satisfy the conditions for receiving each benefit, and you will not be able to sue Defendants over the issues in this lawsuit.

### 17.     If I exclude myself, can I get the benefits of this Settlement?

No.  If you exclude yourself, do not send in a Claim Form to ask for any reimbursement.  But, you may sue, continue to sue, or be part of a different lawsuit against Kia and other related entities or individuals for the claims that this Settlement resolves.

## THE LAWYERS REPRESENTING YOU

### 18.     Do I have a lawyer in this case?

The Court has appointed Matthew D. Schelkopf of Sauder Schelkopf LLC, Steve W. Berman of Hagens Berman Sobol Shapiro LLP, and Gretchen Freeman Cappio of Keller Rohrback L.L.P., to represent you and other Class Members.  Together, these lawyers are called "Class Counsel."  You will not be charged for these lawyers.  If you want to be represented by your own lawyer, you may hire one at your own cost.  Please **DO NOT** send Claim Forms to Class Counsel or the Court.

### 19.     How will the lawyers be paid and will the Class representatives receive service payments?

At a later date, Class Counsel will ask the Court to award attorneys' fees, expenses, and service payments to each of the named Class Representatives:  Leslie Flaherty, Joanna Caballero, James Carpenter, Sharon Moon, Stanton Vignes, Kesha Franklin Marbury, Christina Roos, James J. Martino, James H. Palmer, John H. Caro, Ashley Gagas, Nicole Thornhill, Janet O'Brien, Robert Buettner, Linda Short, James Twigger, Jennifer and Anthony DiPardo, Seane Ronfeldt, Gabrielle Alexander, Tavish Carduff, Brian Frazier, Chad Perry, William Pressley, and Jeannett Smith.  It will be up to the Court to decide whether Defendants will be ordered to pay any of those fees, expenses, and service payments.  The Court may award less than the amounts requested by Class Counsel. Defendants will separately pay the fees and expenses and service payments that the Court awards.  These amounts will not come out of the funds for payments to Class Members.  Class Counsel will not seek more than $12,000,000 in fees and expenses or a service award exceeding $5,000 to each Class Representative who was deposed in this lawsuit and $3,500 to each Class Representative who was not deposed in this lawsuit.  Class Counsel will file their motion for attorneys' fees and expenses by [DATE].  You may continue to check on the progress of Class Counsel's request for attorneys' fees, expenses, and service awards by visiting [LINK].

Defendants will also separately pay the costs to administer the Settlement.  The payment of Settlement administration costs will not come out of the funds for payments to Class Members.

**OBJECTING TO THE SETTLEMENT**

You can tell the Court that you do not agree with all or part of the Settlement.

**20.     How do I tell the Court if I do not like the Settlement?**

If you are a member of the Settlement Class and do not like the Settlement, you can object to all or part of the Settlement.  You can give reasons you think the Court should not approve it.  The Court will consider your views.

To object, you must mail a letter saying that you object to the addresses below:

| | | |
|---|---|---|
| Matthew D. Schelkopf<br>Sauder Schelkopf LLC<br>1109 Lancaster Avenue<br>Berwyn, Pennsylvania 19312 | Steve W. Berman<br>Hagens Berman Sobol Shapiro LLP<br>1301 Second Avenue<br>Suite 2000<br>Seattle, WA 98101 | Gretchen Freeman Cappio<br>Keller Rohrback L.L.P.<br>1201 Third Avenue, Suite 3200<br>Seattle, WA 98101 |

Your objection letter must include:

1) The name and title of the lawsuit, *In re: Hyundai and Kia Engine Litigation II*, No. 8:18-cv-02223-JLS-JDE (C.D. Cal.);
2) A detailed written statement of each objection being made, including the specific reasons for each objection, and any evidence or legal authority to support each objection;
3) Your full name, address, and telephone number;
4) The model year and VIN of your Class Vehicle;
5) A statement disclosing whether you or your lawyer will ask to appear at the Fairness Hearing to talk about your objections, and if so, how much time you will need to present your objections;
6) Any supporting papers, materials, exhibits, or briefs that you want the Court to consider when reviewing the objection;
7) The identity of all counsel who represent you, including any former or current counsel who may be entitled to compensation for any reason related to your objection;
8) The number of times in which you, your counsel (if any), or your counsel's law firm (if any) have objected to a class action settlement within the five years preceding the date that you file the objection and the caption (name, case number, and court) of each case in which such objection was made;
9) A statement disclosing any consideration that you, your counsel (if any), or your counsel's law firm (if any) has received in connection with the resolution or dismissal of an objection to a class action settlement within the five years preceding the date that you file the objection; and
10) Your signature and that of your attorney, if you have one.

Submitting an objection allows Class Counsel or counsel for Defendants to notice your deposition and to seek any documentary evidence or other tangible things that are relevant to your objection.  Failure to make yourself available for such a deposition or comply with expedited discovery requests may result in the Court striking your objection or denying you the opportunity to be heard.  The Court may require you or your counsel to pay the costs of any such discovery should the Court determine the objection is frivolous or made for improper purpose.

Objections must be sent by first class mail to each of the above addresses and postmarked no later than [DATE]. Objections submitted after this date will not be considered.

If you do not state your intention to appear in accordance with the applicable deadlines and specifications, or you do not submit an objection in accordance with the applicable deadlines and specifications, you will waive all objections and can be barred from speaking at the final approval hearing.

**21.     What is the difference between objecting and excluding?**

Objecting is simply telling the Court that you do not like something about the Settlement.  You can object only if you stay in the Settlement Class.  Excluding yourself is telling the Court that you do not want to be part of the Settlement Class and the Settlement.  If you exclude yourself, you have no basis to object because the case no longer affects you.

| THE COURT'S FAIRNESS HEARING |
|:---:|

The Court will hold a hearing to decide whether to approve the Settlement.  You may attend and you may ask to speak, subject to the requirements above, but you do not have to.

**22.     When and where will the Court decide whether to approve the Settlement?**

The Court will hold a Fairness Hearing at [TIME] on [DATE] in Courtroom 8A on the 8th Floor at the U.S. District Court for the Central District of California, First Street U.S. Courthouse, 350 West 1st St., Los Angeles, CA 90012, to decide whether to approve the Settlement.  At this hearing the Court will consider whether the Settlement is fair, reasonable, and adequate.  If there are objections, the Court will consider them.  The Court will listen to people who have asked to speak at the hearing.  The Court may also decide how much to pay Class Counsel and whether to approve the Class Representatives' service awards.  After the hearing, the Court will decide whether to finally approve the Settlement.  We do not know how long these decisions will take.

The hearing may be rescheduled without further notice to you, so it is recommended you periodically check [LINK] for updated information.

**23.     Do I have to come to the Fairness Hearing?**

No.  Class Counsel will answer any questions Judge Staton may have.  However, you are welcome to attend the hearing at your own expense.  If you send an objection, you do not have to come to Court to talk about it.  As long as you mailed your written objection on time, the Court will consider it.  You may also attend or pay your own lawyer to attend, but it is not necessary.  Class Members do not need to appear at the hearing or take any other action to indicate their approval.

**24.     May I speak at the Fairness Hearing?**

You may ask the Court's permission to speak at the Fairness Hearing.  To do so, you must send a letter saying that it is your "Notice of Intention to Appear in *In re: Hyundai and Kia Engine Litigation II*, No. 8:18-cv-02223-JLS-JDE (C.D. Cal.)" or state in your objections that you intend to appear at the hearing.  Be sure to include your name, address, telephone number, the model year and VIN for your Class Vehicle(s), and signature, as well as the identities of any attorneys who will represent you.  Your Notice of Intention to Appear must be postmarked no later than [DATE], and be sent to Defense Counsel and Class Counsel, at the following addresses:

| Defense Counsel | Class Counsel |
|---|---|
| Shon Morgan<br>Quinn Emanuel Urquhart &<br>Sullivan, LLP<br>865 S. Figueroa St., 10th Floor<br>Los Angeles, California 90017 | Matthew D. Schelkopf<br>Sauder Schelkopf LLC<br>1109 Lancaster Avenue<br>Berwyn, Pennsylvania 19312 |

## IF YOU DO NOTHING

**25.    What happens if I do nothing at all?**

If you do nothing, you will not receive any reimbursements or compensation from this Settlement.  However, you will be entitled to the benefits of the 15-Year/150,000-Year Extended Warranty from the date of the vehicle's original retail delivery (if you continue to own or lease your Class Vehicle).  **As explained above, to obtain Extended Warranty benefits, you may need to first complete the KSDS update at a Kia dealership.**  But, unless you exclude yourself, you will not be able to start a lawsuit, continue a lawsuit, or be part of any other lawsuit against Kia or other related entities or individuals about the legal issues in this case, ever again.

This Settlement will not affect your right to sue Defendants for any claims not resolved by the Settlement, regardless of whether or not you exclude yourself from the Settlement.

## GETTING MORE INFORMATION

**26.    Are there more details about the Settlement?**

This notice summarizes the proposed Settlement.  More details are in a Settlement Agreement, which you can view at [LINK].

Neither Defendants nor Class Counsel make any representation regarding the tax effects, if any, of receiving any benefits under this Settlement.  Consult your tax adviser for any tax questions you may have.

**27.    How do I get more information?**

You can call [PHONE] toll free or visit [LINK], where you will find information and documents about the Settlement, a Claim Form, plus other information.  You may also contact Class Counsel listed in response to Question 14.

All papers filed in this action are also available for review via the Public Access to Court Electronic Resources System (PACER), available online at http://www.pacer.gov.

**Other than a request to review the Court's files at the Clerk of the Court's Office, please do not contact the Clerk of the Court or the Judge with questions.**

# EXHIBIT C

Claims can be submitted electronically at [LINK].

Hyundai Settlement Administrator
[INSERT]

HYUNDAI CLAIM FORM – Five Steps to Make a Claim
*In re: Hyundai and Kia Engine Litigation II*, No. 8:18-cv-02223-JLS-JDE (C.D. Cal.)

*You must submit this Claim by [**DATE**] (any extension of that date will be posted on the Settlement website), or, for Qualifying Repairs, Qualifying Failures, and/or Qualifying Fires after [**NOTICE DATE**], no later than 90 days after the engine repair, failure, or fire occurred.  See below at page 2 and [LINK] for an explanation of what qualifies.*

**[1] CONTACT INFORMATION:  Please provide the information in the spaces below:**

First Name:                 MI    Last Name:

Business Name (if applicable):

Address 1:

Address 2:

City:                                  State:

ZIP Code:

**ADDITIONAL CONTACT INFORMATION (*Optional*): Please provide your email address and phone number:**

Email:

Phone:

**If you choose to provide your email address, Hyundai's Settlement Administrator may contact you about the Settlement by email.  If not, Hyundai's Settlement Administrator will contact you about the Settlement at the postal address above.**

*For more information, please view the Class Notice, visit [LINK], or call Hyundai's Settlement Administrator toll-free number at [**PHONE**].*

1

Claims can be submitted electronically at [LINK].

**[2] <u>VEHICLE INFORMATION</u>:  Provide your Vehicle Identification Number ("VIN") and the vehicle's current odometer mileage below.**  The VIN is located on a small placard on the top of the dashboard and is visible through the driver's side corner of the windshield.  It also appears on your vehicle registration card and probably appears on your vehicle insurance card. Your VIN should have 17 characters, a combination of both letters and numbers.

VIN: ☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐

Current Odometer Mileage: ☐☐☐☐☐☐

**In the boxes below, provide both the date and the vehicle's odometer mileage at the time you experienced a Qualifying Failure or Qualifying Fire.**  To obtain certain Settlement benefits, you must have obtained a <u>Qualifying Repair</u>, as explained in the Class Notice, which refers to (1) any repairs to fix engine hole-in-block scenarios (*i.e.*, the connecting rod punctures a hole in the engine block), (2) engine seizure (unrelated to pre-existing oil consumption issues), or (3) engine compartment fire (see Qualifying Fire).  For repairs completed at Hyundai dealerships, Qualifying Repair will also cover work performed to address symptoms associated with connecting rod bearing failure where the vehicle received a diagnosis of (i) abnormal bearing noise in accordance with Hyundai's inspection protocols, (ii) stall was caused by engine seizure with a failed bearing clearance test, or (iii) P1326 warning light.  Even if you did not complete a Qualifying Repair, you may still be entitled to receive some Settlement benefits for a Qualifying Failure or a Qualifying Fire.  <u>Qualifying Failure</u> refers to an engine stall or other vehicle incident, caused by engine hole-in-block scenarios or engine seizure.  <u>Qualifying Fire</u> refers to an engine compartment fire caused by engine hole-in-block scenarios or engine seizure.  *An engine failure is not a Qualifying Failure and an engine compartment fire is not a Qualifying Fire if not caused by engine short block manufacturing issues (examples of issues not covered under the settlement include a fire caused by a collision, electrical, or fuel issues, or a stall caused by a fuel pump, oxygen sensor, timing, or electrical system malfunction do not qualify).  Please visit [LINK] to learn more.*

Check if you experienced a:     ☐ Qualifying Failure     OR     ☐ Qualifying Fire

Odometer Mileage at the time of the Qualifying Failure or Qualifying Fire: ☐☐☐☐☐☐

Date the Qualifying Failure or Qualifying Fire Occurred:   ☐☐ - ☐☐ - ☐☐☐☐
                                                          MM    DD    YYYY

**[3] <u>REIMBURSEMENT ELECTIONS</u>:  Indicate the nature of the reimbursement(s) you are claiming and the total amount of reimbursement you are requesting, and enclose the required documents.  NOTE: More than one type of reimbursement may apply to you.**

☐     <u>I AM REQUESTING REIMBURSEMENT FOR QUALIFYING REPAIRS PERFORMED ON OR BEFORE [NOTICE DATE] **AT AN AUTHORIZED HYUNDAI DEALERSHIP** WITHIN 15 YEARS OR 150,000 ODOMETER MILES FROM THE DATE OF THE VEHICLE'S ORIGINAL RETAIL DELIVERY, WHICHEVER OCCURS FIRST</u>.

*Claims for this benefit must be submitted no later than [DATE].*

[A] Provide the total amount of Qualifying Repair costs for which you are requesting reimbursement:

$ ☐☐☐☐☐ . ☐☐

[B] Provide the following to assist with locating repair order information necessary to process your claim:

*For more information, please view the Class Notice, visit [LINK], or call Hyundai's Settlement Administrator toll-free number at [PHONE].*

Claims can be submitted electronically at [LINK].

Hyundai Dealership Name:

City:                                                                                                State:

Repair Start Date: [  ] - [  ] - [    ]
                    MM      DD      YYYY

Repair End Date: [  ] - [  ] - [    ]
                  MM      DD      YYYY

**[C] Required Documentation:**

1. Proof of Ownership:  A copy of your vehicle title, a copy of your registration card, **OR** other document showing that you owned or leased the vehicle that was repaired;
2. Proof of Qualifying Repair:  Hyundai strongly encourages you to provide copies of the repair invoice or other documents that describe the work performed, the date, and amount paid for the Qualifying Repair(s) you received on or before the [NOTICE DATE];
3. Proof of Payment:  A credit card receipt, credit card statement, bank statement, cleared check, receipt from the dealership, **OR** other document showing the amount that you paid for the Qualifying Repair(s).  If you had the Qualifying Repair(s) performed at a Hyundai dealership **AND** paid in cash but do not have a cash payment receipt, please provide a valid corresponding final repair order and complete the attestation under penalty of perjury below that you do not have a cash payment receipt from the dealership; and
4. Prior Reimbursement:  If you previously received **any** reimbursement in connection with the Qualifying Repair(s), you must provide documentation of this with your Claim, for example, insurance documents or prior campaign reimbursement and/or customer satisfaction payments.

***If you are requesting reimbursement for more than one Qualifying Repair, or the Qualifying Repair for which you are seeking reimbursement was performed at more than one Hyundai dealership, please provide the information requested above on a separate sheet of paper and include it with your Claim Form along with the required documentation.***

[  ]    I AM REQUESTING REIMBURSEMENT FOR QUALIFYING REPAIRS PERFORMED ON OR BEFORE [NOTICE DATE] AT A **THIRD-PARTY REPAIR FACILITY (UNRELATED TO HYUNDAI)** WITHIN 15 YEARS OR 150,000 ODOMETER MILES, FROM THE DATE OF THE VEHICLE'S ORIGINAL RETAIL DELIVERY, WHICHEVER OCCURS FIRST.

*Claims for this benefit must be submitted no later than [DATE].*

[A] Provide the total amount of Qualifying Repair costs for which you are requesting reimbursement:

$ [          ] . [      ]

**[B] Required Documentation:**

1. Proof of Ownership:  A copy of your vehicle title, a copy of your registration card, **OR** other document showing that you own or lease the vehicle that was repaired;
2. Proof of Qualifying Repair:  A repair invoice or document generated at or around the time of repair that shows what Qualifying Repair(s) you received, the name and contact information of the business that repaired your vehicle, the amount paid, and the date of the Qualifying Repair(s);

*For more information, please view the Class Notice, visit [LINK], or call Hyundai's Settlement Administrator toll-free number at [PHONE].*

Claims can be submitted electronically at [LINK].

3. <u>Proof of Payment</u>:  A credit card receipt, credit card statement, bank statement, cleared check, **OR** other document showing the amount that you paid for the Qualifying Repair(s) (NOTE: Cash payments for repairs completed at independent repair facilities (unrelated to Hyundai) are not reimbursable); and

4. <u>Prior Reimbursement</u>:  If you previously received **any** reimbursement in connection with the Qualifying Repair(s), you must provide documentation of this with your Claim, for example, insurance paperwork or prior campaign reimbursement and/or customer satisfaction payments.

☐   <u>I AM REQUESTING THE $150 GOODWILL PAYMENT FOR QUALIFYING REPAIRS THAT WERE PREVIOUSLY DENIED WARRANTY COVERAGE ON OR BEFORE [NOTICE DATE] BY A HYUNDAI DEALERSHIP WITHIN 15 YEARS OR 150,000 ODOMETER MILES, FROM THE DATE OF THE VEHICLE'S ORIGINAL RETAIL DELIVERY, WHICHEVER OCCURS FIRST, AND HAD TO GET MY VEHICLE REPAIRED ELSEWHERE.</u>

*Claims for this benefit must be submitted no later than [DATE].*

[A] Provide the name and location of the dealership that denied you the warranty coverage for a Qualifying Repair and the approximate date you were denied the repair:

Hyundai Dealership Name:

City:                                                                                                                 State:

Denial Date:

| MM | DD | YYYY |

[B] **Required Documentation:**  Enclose any repair orders, emails, letters, or other written communications between you and the dealership and/or Hyundai Motor America showing that you were denied warranty coverage for a Qualifying Repair.

☐   <u>I AM REQUESTING COMPENSATION FOR OUT-OF-POCKET TRANSPORTATION EXPENSES (*E.G.*, RENTAL CAR, RIDE-SHARE) OF UP TO $80/DAY (MAXIMUM COMPENSATION) AND/OR TOWING COSTS IN FULL THAT WERE REASONABLY RELATED TO OBTAINING QUALIFYING REPAIRS THAT OCCURRED WITHIN 15 YEARS OR 150,000 ODOMETER MILES, FROM THE DATE OF THE VEHICLE'S ORIGINAL RETAIL DELIVERY, WHICHEVER OCCURS FIRST.</u>

*Claims under this benefit must be submitted by [DATE] for a Qualifying Repair on or before [NOTICE DATE], or, for a Qualifying Repair after [NOTICE DATE], within 90 days of either the date on which the expenses were incurred or the date the expenses were paid, whichever is later.*

▪ Your expenses must have been incurred within 15 business days before your Qualifying Repair began and within 3 business days after completion of the Qualifying Repair to be eligible for compensation.

▪ For purposes of this claim, your transportation expenses may have been more than $80/day, but the maximum daily compensation under the Settlement is capped at $80/day.

[A] Provide the following information:

<u>Transportation</u>:  Check one or more of the boxes below showing what kind of actual transportation expenses you incurred in relation to the Qualifying Repair and provide the total amount you spent on these transportation expenses for which you are requesting compensation (up to a maximum of $80/day):

*For more information, please view the Class Notice, visit [LINK], or call Hyundai's Settlement Administrator toll-free number at [PHONE].*

Claims can be submitted electronically at [LINK].

☐ Rental Car   ☐ Ride-Share   ☐ Other Transportation      $ ⬚⬚⬚⬚ . ⬚⬚

<u>Towing</u>:  Check the box below if you incurred towing expenses in relation to the Qualifying Repair and provide the total amount you spent on towing for which you are requesting reimbursement:

☐ Towing      $ ⬚⬚⬚⬚ . ⬚⬚

**[B] Required Documentation:**

1. <u>Proof of Ownership</u>:  A copy of your vehicle title, a copy of your registration card, **OR** other document showing that you own or lease the vehicle that was repaired;
2. <u>Proof of Expense(s) Incurred</u>:  A receipt, final rental agreement, or other document showing final expenses paid to a verified business entity (*e.g.*, a rental car, ride-sharing trip(s), or towing service) and date(s) of your purchase(s);
3. <u>Proof of Payment</u>:  A credit card receipt, credit card statement, bank statement, cleared check, **OR** other document showing the amount that you paid for the transportation or towing(s);
4. <u>Prior Reimbursement</u>:  If you previously received <u>**any**</u> reimbursement for the transportation or towing, you must provide documentation of this with your Claim, for example, insurance paperwork or prior campaign reimbursement and/or customer satisfaction payments; and
5. <u>Proof of Qualifying Repair</u>:  A repair invoice or document that shows the nature of the corresponding Qualifying Repair(s) you received, the amount paid, the name and contact information of the business that repaired your vehicle, and the date of the Qualifying Repair(s).  If the corresponding Qualifying Repair was performed at a Hyundai dealership, Hyundai will attempt to obtain that information to process your claim, but you are strongly encouraged to provide a copy of the supporting repair documents to avoid delays.

☐ <u>I AM REQUESTING COMPENSATION FOR INCONVENIENCE DUE TO QUALIFYING REPAIR DELAYS EXCEEDING 60 DAYS FOR QUALIFYING REPAIRS PERFORMED **BY A HYUNDAI DEALERSHIP** THAT OCCURRED WITHIN 15 YEARS OR 150,000 ODOMETER MILES FROM THE DATE OF THE VEHICLE'S ORIGINAL RETAIL DELIVERY, WHICHEVER OCCURS FIRST.</u>

*Claims under this benefit must be submitted by [DATE] for a Qualifying Repair on or before [NOTICE DATE], or, for a Qualifying Repair after [NOTICE DATE], within 90 days of when the Qualifying Repair was completed.*

[A] Provide the following information regarding the dates of your Qualifying Repair at a Hyundai dealership, and, to assist with locating repair order information necessary to process your claim, details regarding the Hyundai dealership that provided the Qualifying Repair:

Repair Start Date: ⬚⬚ - ⬚⬚ - ⬚⬚⬚⬚
                   MM      DD      YYYY

Repair End Date:  ⬚⬚ - ⬚⬚ - ⬚⬚⬚⬚
                   MM      DD      YYYY

Hyundai Dealership Name:
⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚

City:                                                                State:
⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚     ⬚⬚

[B] Choose ONE reimbursement type:

*For more information, please view the Class Notice, visit [LINK], or call Hyundai's Settlement Administrator toll-free number at [PHONE].*

Claims can be submitted electronically at [LINK].

☐     <u>I AM REQUESTING A CASH PAYMENT.</u>  (If your Qualifying Repair took between 61 and 180 days, you will be entitled to $75.  If your Qualifying Repair took more than 181 days, you will be entitled to $100, plus an additional $100 for each additional 30-day period after 210 days).

        OR

☐     <u>I AM REQUESTING A DEALER SERVICE CARD FOR 150% OF THE CASH PAYMENT THAT I WOULD OTHERWISE BE ENTITLED TO FOR THIS BENEFIT.</u>

[C] **Required Documentation:**
1. <u>Proof of Ownership</u>:  A copy of your vehicle title, a copy of your registration card, **OR** other document showing that you own or lease the vehicle that was repaired;
2. <u>Proof of Payment</u>:  A credit card receipt, credit card statement, bank statement, cleared check, receipt from the dealership, **OR** other document showing the amount that you paid for the Qualifying Repair(s);
3. <u>Prior Reimbursement</u>:  If you previously received **any** reimbursement in connection with the Qualifying Repair(s), you must provide documentation of this with your Claim, for example, insurance paperwork or prior campaign reimbursement and/or customer satisfaction payments; and
4. <u>Proof of Qualifying Repair</u>:  A repair order **OR** other document identifying the start and end of your corresponding Qualifying Repair.

☐     <u>I AM REQUESTING COMPENSATION FOR TRANSPORTATION BECAUSE I EXPERIENCED A QUALIFYING FAILURE OR QUALIFYING FIRE THAT OCCURRED **WITHIN 150 MILES FROM MY HOME** AND ALSO WITHIN 15 YEARS OR 150,000 ODOMETER MILES, FROM THE DATE OF THE VEHICLE'S ORIGINAL RETAIL DELIVERY, WHICHEVER OCCURS FIRST.</u>

*Claims under this benefit must be submitted by [DATE] for a Qualifying Failure or Qualifying Fire on or before [NOTICE DATE], or, for a Qualifying Failure or Qualifying Fire after [NOTICE DATE], within 90 days of either the date on which the expenses were incurred or the date the expenses were paid, whichever is later.*

▪ If the Qualifying Failure or Qualifying Fire occurred **within 150 miles of your home** at the time, you can get up to $125 for out-of-pocket rental car, ride-share, or other transportation expenses incurred on the day of the Qualifying Failure or Qualifying Fire.  You are also eligible for reasonable towing expenses related to the incident.  For purposes of this claim, "your home" shall be the address on your driver's license **OR** other documents showing your residential address at the time of the Qualifying Failure or Qualifying Fire.
▪ Your transportation expenses incurred on the day of the incident may have been more than $125, but the maximum daily reimbursement under the Settlement is capped at $125.

[A] Provide the following information:

<u>Transportation</u>:  Check one or more of the boxes below showing what kind of transportation expenses you incurred in relation to the Qualifying Failure or Qualifying Fire and provide the total amount you spent on these transportation expenses for which you are requesting reimbursement (up to a maximum of $125):

☐ Rental Car ☐ Ride-Share ☐ Other Transportation    $ ☐☐☐☐ . ☐☐

<u>Towing</u>:  Check the box below if you incurred towing expenses in relation to the Qualifying Failure or Qualifying Fire and provide the total amount you spent on towing for which you are requesting reimbursement:

☐ Towing    $ ☐☐☐☐ . ☐☐

*For more information, please view the Class Notice, visit [LINK], or call Hyundai's Settlement Administrator toll-free number at [PHONE].*

Claims can be submitted electronically at [LINK].

[B] Check which of the statements best applied to you at the time of the Qualifying Failure or Qualifying Fire:

☐ I resided at my current address that's reflected at the beginning of this form.

OR

☐ My address at the time was:

Address 1:

| | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

Address 2:

| | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

City:                                                                                          State:

ZIP Code:

[C] Please state where the Qualifying Failure or Qualifying Fire occurred.  Provide the nearest address, or the nearest location (*e.g.*, highway and nearest milepost marker), where you experienced the Qualifying Failure or Qualifying Fire):

Address 1:

Address 2:

City:                                                                                          State:

ZIP Code:

[D] **Required Documentation:**
1. Proof of Ownership:  A copy of your vehicle title, a copy of your registration card, **OR** other document showing that you own or lease the vehicle that had a Qualifying Failure or Qualifying Fire;
2. Proof of Qualifying Failure/Fire:  A repair facility diagnosis, police report, insurance documents, **OR** other documents showing you experienced a Qualifying Failure or Qualifying Fire;
3. Proof of Expense(s) Incurred:  A receipt or other document showing what was purchased (*e.g.*, a rental car, ride-sharing trip(s), or towing service) and date(s) of your purchases(s);
4. Proof of Payment:  A credit card receipt, credit card statement, bank statement, cleared check, **OR** other document showing the amount that you paid for the purchase(s);
5. Prior Reimbursement:  If you previously received **any** reimbursement for the purchase(s), you must provide documentation of this with your Claim, for example, insurance paperwork or prior campaign reimbursement and/or customer satisfaction payments; and
6. Proof of Residence:  A copy of your driver's license **OR** other documents showing your residential address at the time of the Qualifying Failure or Qualifying Fire.

☐   I AM REQUESTING REIMBURSEMENT FOR INCIDENTALS BECAUSE I EXPERIENCED A QUALIFYING FAILURE OR QUALIFYING FIRE THAT OCCURRED **MORE THAN 150 MILES FROM**

*For more information, please view the Class Notice, visit [LINK], or call Hyundai's Settlement Administrator toll-free number at [PHONE].*

Claims can be submitted electronically at [LINK].

**MY HOME** AND ALSO WITHIN 15 YEARS OR 150,000 ODOMETER MILES, FROM THE DATE OF THE VEHICLE'S ORIGINAL RETAIL DELIVERY, WHICHEVER OCCURS FIRST.

*Claims under this benefit must be submitted by [DATE] for a Qualifying Failure or Qualifying Fire on or before [NOTICE DATE], or, for a Qualifying Failure or Qualifying Fire after [NOTICE DATE], within 90 days of either the date on which the expenses were incurred or the date the expenses were paid, whichever is later.*

- If the Qualifying Failure or Qualifying Fire occurred **more than 150 miles away of your home** at the time, you can get up to $300 for the first day, $200 for the second day, and $100 for the third day for out-of-pocket rental car, ride-share, or other transportation costs and lodging and reasonable meal expenses.  You are also eligible for reasonable towing expenses related to the incident.  For purposes of this claim, "your home" shall be the address on your driver's license **OR** other documents showing your residential address at the time of the Qualifying Failure or Qualifying Fire.
- Your transportation expenses incurred during the first three days of the incident may have been more than $300/200/100 for each respective day, but the maximum daily reimbursement under the Settlement is capped at either $300/200/100 for each respective day, as described above.

[A] Check the box below identifying how many days it took you to get home after your Qualifying Failure or Qualifying Fire:

☐ One Day          ☐ Two Days          ☐ Three or More Days

[B] Please state where the Qualifying Failure or Qualifying Fire occurred.  Provide the nearest address, or the nearest location (*e.g.*, highway and nearest milepost marker), where you experienced the Qualifying Failure or Qualifying Fire:

Address 1:

| | | | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

Address 2:

| | | | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

City:                                                                                           State:

ZIP Code:

[C] Provide the following information:

<u>Transportation, Meals, & Lodging</u>:  Check one or more of the boxes showing what kind of transportation, meals, and lodging expenses you incurred in relation to the Qualifying Failure or Qualifying Fire and provide the total amount you spent on these expenses for which you are requesting reimbursement (up to $300 for the first day, $200 for the second day, and $100 for the third day):

☐ Rental Car   ☐ Ride-Share   ☐ Other Transportation     $ [ ][ ][ ][ ] . [ ][ ]

☐ Meals     $ [ ][ ][ ] . [ ][ ]

☐ Lodging     $ [ ][ ][ ] . [ ][ ]

<u>Towing</u>:  Check the box if you incurred towing expenses in relation to the Qualifying Failure or Qualifying Fire and provide the total amount you spent on towing for which you are requesting reimbursement:

*For more information, please view the Class Notice, visit [LINK], or call Hyundai's Settlement Administrator toll-free number at [PHONE].*

Claims can be submitted electronically at [LINK].

☐  Towing          $ ☐☐☐☐ . ☐☐

[D] Check which of the statements best applied to you at the time of the Qualifying Failure or Qualifying Fire:

☐  I resided at my current address that's reflected at the beginning of this form.

OR

☐  My address at the time was:

Address 1:

☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐

Address 2:

☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐

City:                                                                                         State:

☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐        ☐☐

ZIP Code:

☐☐☐☐☐ - ☐☐☐☐

[E] **Required Documentation:**
1.  <u>Proof of Ownership</u>:  A copy of your vehicle title, a copy of your registration card, **OR** other document showing that you own or lease the vehicle that had a Qualifying Failure or Qualifying Fire;
2.  <u>Proof of Qualifying Failure/Fire</u>:  A repair facility diagnosis, police report, insurance documents, **OR** other documents showing you experienced a Qualifying Failure or Qualifying Fire;
3.  <u>Proof of Expense(s) Incurred</u>:  A receipt or other document showing what was purchased (*e.g.*, a rental car, ride-sharing trip(s), towing service, lodging, or meals), and date(s) of your purchases(s);
4.  <u>Proof of Payment</u>:  A credit card receipt, credit card statement, bank statement, cleared check, **OR** other document showing the amount that you paid for the purchase(s);
5.  <u>Prior Reimbursement</u>:  If you previously received <u>**any**</u> reimbursement for the purchase(s), you must provide documentation of this with your Claim, for example, insurance paperwork or prior campaign reimbursement and/or customer satisfaction payments; and
6.  <u>Proof of Residence</u>:  A copy of your driver's license **OR** other documents showing your residential address at the time of the Qualifying Failure or Qualifying Fire.

☐   <u>I AM REQUESTING REIMBURSEMENT FOR A CLASS VEHICLE I SOLD OR TRADED IN BEFORE [NOTICE DATE] AND AFTER THE VEHICLE HAD A QUALIFYING FAILURE OR QUALIFYING FIRE **BUT BEFORE** THE RECOMMENDED REPAIR WAS PERFORMED WITHIN 15 YEARS OR 150,000 ODOMETER MILES FROM THE DATE OF THE VEHICLE'S ORIGINAL RETAIL DELIVERY, WHICHEVER OCCURS FIRST.</u>

*Claims for this benefit must be submitted no later than [DATE].*

▪   To qualify for this compensation, you must have sold or traded your Class Vehicle in an arm's length transaction **AFTER** the Class Vehicle had a Qualifying Failure or Qualifying Fire **BUT BEFORE** it was repaired.
▪   Compensation is based on the baseline Black Book value (*i.e.*, wholesale used vehicle value) of the Class Vehicle <u>at the time of sale or trade-in</u> minus any actual value received. If the actual amount received from the sale or trade-in exceeds the baseline Black Book value, no reimbursement or goodwill will be provided.

*For more information, please view the Class Notice, visit [LINK], or call Hyundai's Settlement Administrator toll-free number at [PHONE].*

Claims can be submitted electronically at [LINK].

- In addition to reimbursement for the vehicle, you are eligible to receive an additional $150 goodwill payment.

[A] Provide the following information:

Date of Sale/Trade-In: [  ] [  ] - [  ] [  ] - [  ] [  ] [  ] [  ]
                   MM      DD      YYYY

Odometer Mileage at the time of Sale/Trade-In: [  ] [  ] [  ] [  ] [  ] [  ]

State where Sale/Trade-In occurred: [  ] [  ]

Total Sale or Trade-In Amount for Your Vehicle at the Time of Sale or Trade-In:
$ [  ] [  ] [  ] [  ] [  ] . [  ] [  ]

**[B] Required Documentation:**
1. <u>Proof of Ownership</u>:  A copy of your vehicle title, a copy of your registration card, **OR** other document showing that you owned or leased the vehicle that you then sold or traded in;
2. <u>Proof of Qualifying Failure/Fire</u>:  A repair facility diagnosis, police report, insurance documents, **OR** other documents showing you experienced a Qualifying Failure or Qualifying Fire;
3. <u>Proof of Sale</u>:  A bill of sale, purchase agreement, **OR** paperwork showing what you received for your vehicle as a sale or trade-in and the mileage; and
4. <u>Prior Reimbursement</u>:  If you previously received **<u>any</u>** reimbursement in connection with your Qualifying Failure or Qualifying Fire, you must provide documentation of this with your Claim, for example, insurance paperwork or prior campaign reimbursement and/or customer satisfaction payments.

☐ <u>I AM REQUESTING REIMBURSEMENT FOR A CLASS VEHICLE THAT EXPERIENCED A QUALIFYING FIRE RESULTING IN THE LOSS OF MY VEHICLE THAT OCCURRED WITHIN 15 YEARS OR 150,000 ODOMETER MILES FROM THE DATE OF THE VEHICLE'S ORIGINAL RETAIL DELIVERY, WHICHEVER OCCURS FIRST.</u>

*Claims under this benefit must be submitted by [DATE] for a Qualifying Fire on or before [NOTICE DATE], or, for a Qualifying Fire after [NOTICE DATE], within 90 days of the Qualifying Fire.*

- Compensation is based on the maximum Black Book value (*i.e.*, private party/very good) of the Class Vehicle <u>at the time of loss</u> minus any actual value received.  If the actual amount received from the sale or trade-in exceeds the maximum Black Book value, no reimbursement or goodwill will be provided.
- In addition to reimbursement for the vehicle, you are eligible to receive an additional $150 goodwill payment.

[A] Provide the following information:

Date of Qualifying Fire: [  ] [  ] - [  ] [  ] - [  ] [  ] [  ] [  ]
                 MM      DD      YYYY

Odometer Mileage at the time of Qualifying Fire: [  ] [  ] [  ] [  ] [  ] [  ]

State where Qualifying Fire occurred: [  ] [  ]

Total Amount Received for Your Vehicle as a result of Qualifying Fire (insurance payment, sale to salvage yard, etc.):

*For more information, please view the Class Notice, visit [LINK], or call Hyundai's Settlement Administrator toll-free number at [PHONE].*

Claims can be submitted electronically at [LINK].

$ ☐☐☐☐☐ . ☐☐

[B] **Required Documentation:**
1. Proof of Ownership:  A copy of your vehicle title, a copy of your registration card, **OR** other document showing that you owned or leased the vehicle that experienced a Qualifying Fire;
2. Proof of Qualifying Fire:  A repair facility diagnosis, police report, insurance documents, **OR** other documents showing you experienced a Qualifying Fire; and
3. Prior Reimbursement:  If you previously received **any** reimbursement or value in connection with your Qualifying Fire, you must provide documentation of this with your Claim, for example, insurance paperwork or prior campaign reimbursement and/or customer satisfaction payments.

☐   AS A RESULT OF THIS SETTLEMENT AND AFTER [NOTICE DATE], I (1) LOST FAITH IN MY VEHICLE, (2) EXPERIENCED A QUALIFYING FAILURE OR QUALIFYING FIRE WITHIN 15 YEARS OR 150,000 ODOMETER MILES, FROM THE DATE OF ORIGINAL RETAIL DELIVERY, WHICHEVER OCCURS FIRST; (3) SOLD MY VEHICLE, **AND** (4) THEN PURCHASED A REPLACEMENT HYUNDAI VEHICLE FROM AN AUTHORIZED HYUNDAI DEALERSHIP.

*Claims under this benefit must be submitted by [DATE] for a Qualifying Failure or Qualifying Fire on or before [NOTICE DATE], or, for a Qualifying Failure or Qualifying Fire after [NOTICE DATE], within 90 days of the Qualifying Failure or Qualifying Fire.*

▪ To qualify for this compensation, after [NOTICE DATE] you must have (1) lost faith in the vehicle; (2) experienced a Qualifying Failure or Qualifying Fire within 15 years or 150,000 odometer miles from date of original retail delivery; (3) sold your vehicle in an arm's length transaction; **AND** (4) purchased a replacement Hyundai vehicle from an authorized Hyundai dealership.
▪ If you choose this option, you are eligible for a rebate which shall be calculated as the actual loss by comparing sales documentation to the maximum Black Book value of your vehicle at the time of the Knock Sensor Detection System campaign launch for up to the following amounts:
   a. For model year 2010, 2011, and 2012 Class Vehicles: $2,500
   b. For model year 2013 and 2014 Class Vehicles: $2,000
   c. For model year 2015 and 2016 Class Vehicles: $1,500
   d. For model year 2017, 2018, 2019, 2020, and 2021 Class Vehicles: $1,000

[A] Provide the following information:

Date of Sale/Trade-In:  ☐☐ - ☐☐ - ☐☐☐☐
                        MM    DD    YYYY

Odometer Mileage at the time of Sale/Trade-In:  ☐☐☐☐☐☐

State where Sale/Trade-In occurred:  ☐☐

Total Sale or Trade-In Amount for Your Vehicle at the Time of Sale or Trade-In:
$ ☐☐☐☐☐ . ☐☐

[B] Provide the VIN of the Hyundai vehicle you bought from a Hyundai dealership to replace your vehicle that experienced a Qualifying Failure or Qualifying Fire:

**Replacement** Hyundai Vehicle VIN:  ☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐

*For more information, please view the Class Notice, visit [LINK], or call Hyundai's Settlement Administrator toll-free number at [PHONE].*

Claims can be submitted electronically at [LINK].

**[C] Required Documentation:**
1. <u>Proof of Ownership</u>:  A copy of your vehicle title, a copy of your registration card, **OR** other document showing that you owned or leased the vehicle that you then sold or traded in;
2. <u>Proof of Qualifying Failure/Fire</u>:  A repair facility diagnosis, police report, insurance documents, **OR** other documents showing you experienced a Qualifying Failure or Qualifying Fire;
3. <u>Proof of Sale</u>:  Paperwork showing what you received for your vehicle as a sale or trade-in; and
4. <u>Proof of Replacement</u>:  Sales documents showing you purchased a replacement Hyundai vehicle from an authorized Hyundai dealership.

**[4] <u>SIGN & DATE</u>**

The information on this form is true and correct to the best of my knowledge.  I agree to participate in the Settlement.  I authorize any dealership that serviced my vehicle to release records to Hyundai as needed to assist in the payment of my Claim.  To the extent I am seeking the following Settlement relief:
- Reimbursement for an authorized Hyundai dealership repair and I do not have a receipt or other documentation for the corresponding **cash** payment, I attest under penalty of perjury that I paid for the repair in **cash** and I do not have a receipt or documentation for the **cash** payment. Cash payments for repairs completed at independent repair facilities (unrelated to Hyundai) are not reimbursable.
- If seeking participation in the rebate program, I attest under penalty of perjury that I have lost faith in my vehicle.
- If seeking participation in the inconvenience-due-to-repairs program, I attest under penalty of perjury that I felt inconvenienced.

Signature: _____     Date: ____ - ____ - _____
                                                                         MM      DD      YYYY

**[5] <u>HOW TO SUBMIT</u>:** Email the completed form and the documentation to [EMAIL] or mail it to Hyundai's Settlement Administrator, [ADDRESS].  For faster servicing, you may also complete and submit a Claim Form online at [WEBSITE]. It is highly recommended that you maintain a copy of the completed Claim Form and a copy of any supporting documentation for your own records.

Please **<u>DO NOT</u>** send Claim Forms to Class Counsel or the Court.

*For more information, please view the Class Notice, visit [LINK], or call Hyundai's Settlement Administrator toll-free number at [PHONE].*

# EXHIBIT D

Claims can be submitted electronically at [LINK].

Kia Settlement Administrator
[INSERT]

KIA CLAIM FORM – Five Steps to Make a Claim
*In re: Hyundai and Kia Engine Litigation II*, No. 8:18-cv-02223-JLS-JDE (C.D. Cal.)

*You must submit this Claim by [DATE] (any extension of that date will be posted on the Settlement website), or, for Qualifying Repairs, Qualifying Failures, and/or Qualifying Fires after [NOTICE DATE], no later than 90 days after the engine repair, failure, or fire occurred.  See below at page 2 and [LINK] for an explanation of what qualifies.*

**[1] CONTACT INFORMATION:  Please provide the information in the spaces below:**

First Name:

MI

Last Name:

Business Name (if applicable):

Address 1:

Address 2:

City:

State:

ZIP Code:

**ADDITIONAL CONTACT INFORMATION (*Optional*): Please provide your email address and phone number:**

Email:

Phone:

**If you choose to provide your email address, Kia's Settlement Administrator may contact you about the Settlement by email.  If not, Kia's Settlement Administrator will contact you about the Settlement at the postal address above.**

*For more information, please view the Class Notice, visit [LINK], or call Kia's Settlement Administrator toll-free number at [PHONE].*

Claims can be submitted electronically at [LINK].

**[2] <u>VEHICLE INFORMATION</u>:  Provide your Vehicle Identification Number ("VIN") and the vehicle's current odometer mileage below.**  The VIN is located on a small placard on the top of the dashboard and is visible through the driver's side corner of the windshield.  It also appears on your vehicle registration card and probably appears on your vehicle insurance card. Your VIN should have 17 characters, a combination of both letters and numbers.

VIN: ☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐

Current Odometer Mileage: ☐☐☐☐☐☐

**In the boxes below, provide both the date and the vehicle's odometer mileage at the time you experienced a Qualifying Failure or Qualifying Fire.**  To obtain certain Settlement benefits, you must have obtained a <u>Qualifying Repair</u>, as explained in the Class Notice, which refers to (1) any repairs to fix engine hole-in-block scenarios (*i.e.*, the connecting rod punctures a hole in the engine block), (2) engine seizure (unrelated to pre-existing oil consumption issues), or (3) engine compartment fire (see Qualifying Fire).  For repairs completed at Kia dealerships, Qualifying Repair will also cover work performed to address symptoms associated with connecting rod bearing failure where the vehicle received a diagnosis of (i) abnormal bearing noise in accordance with Kia's inspection protocols, (ii) stall was caused by engine seizure with a failed bearing clearance test, or (iii) P1326 warning light.  Even if you did not complete a Qualifying Repair, you may still be entitled to receive some Settlement benefits for a Qualifying Failure or a Qualifying Fire.  <u>Qualifying Failure</u> refers to an engine stall or other vehicle incident, caused by engine hole-in-block scenarios or engine seizure.  <u>Qualifying Fire</u> refers to an engine compartment fire caused by engine hole-in-block scenarios or engine seizure.  *An engine failure is not a Qualifying Failure and an engine compartment fire is not a Qualifying Fire if not caused by engine short block manufacturing issues examples of issues not covered under the settlement include a fire caused by a collision, electrical, or fuel issues, or a stall caused by a fuel pump, oxygen sensor, timing, or electrical system malfunction do not qualify).  Please visit [LINK] to learn more.*

Check if you experienced a:        ☐ Qualifying Failure    OR    ☐ Qualifying Fire

Odometer Mileage at the time of the Qualifying Failure or Qualifying Fire: ☐☐☐☐☐☐

Date the Qualifying Failure or
Qualifying Fire Occurred:    ☐☐ - ☐☐ - ☐☐☐☐
                MM      DD      YYYY

**[3] <u>REIMBURSEMENT ELECTIONS</u>:  Indicate the nature of the reimbursement(s) you are claiming and the total amount of reimbursement you are requesting, and enclose the required documents.  NOTE: More than one type of reimbursement may apply to you.**

☐    <u>I AM REQUESTING REIMBURSEMENT FOR QUALIFYING REPAIRS PERFORMED ON OR BEFORE [NOTICE DATE] **AT AN AUTHORIZED KIA DEALERSHIP** WITHIN 15 YEARS OR 150,000 ODOMETER MILES FROM THE DATE OF THE VEHICLE'S ORIGINAL RETAIL DELIVERY, WHICHEVER OCCURS FIRST.</u>

*Claims for this benefit must be submitted no later than [DATE].*

[A] Provide the total amount of Qualifying Repair costs for which you are requesting reimbursement:

$ ☐☐☐☐☐ . ☐☐

[B] Provide the following to assist with locating repair order information necessary to process your claim:

*For more information, please view the Class Notice, visit [LINK], or call Kia's Settlement Administrator toll-free number at [PHONE].*

Claims can be submitted electronically at [LINK].

Kia Dealership Name:

City:                                                                                                    State:

Repair Start Date: ☐☐ - ☐☐ - ☐☐☐☐
               MM     DD     YYYY

Repair End Date: ☐☐ - ☐☐ - ☐☐☐☐
               MM     DD     YYYY

[C] **Required Documentation:**
1. <u>Proof of Ownership</u>:  A copy of your vehicle title, a copy of your registration card, **OR** other document showing that you owned or leased the vehicle that was repaired;
2. <u>Proof of Qualifying Repair</u>:  Kia strongly encourages you to provide copies of the repair invoice or other documents that describe the work performed, the date, and amount paid for the Qualifying Repair(s) you received on or before the [NOTICE DATE];
3. <u>Proof of Payment</u>:  A credit card receipt, credit card statement, bank statement, cleared check, receipt from the dealership, **OR** other document showing the amount that you paid for the Qualifying Repair(s).  If you had the Qualifying Repair(s) performed at a Kia dealership **AND** paid in cash but do not have a cash payment receipt, please provide a valid corresponding final repair order and complete the attestation under penalty of perjury below that you do not have a cash payment receipt from the dealership; and
4. <u>Prior Reimbursement</u>:  If you previously received **any** reimbursement in connection with the Qualifying Repair(s), you must provide documentation of this with your Claim, for example, insurance documents or prior campaign reimbursement and/or customer satisfaction payments.

*If you are requesting reimbursement for more than one Qualifying Repair, or the Qualifying Repair for which you are seeking reimbursement was performed at more than one Kia dealership, please provide the information requested above on a separate sheet of paper and include it with your Claim Form along with the required documentation.*

☐ <u>I AM REQUESTING REIMBURSEMENT FOR QUALIFYING REPAIRS PERFORMED ON OR BEFORE [NOTICE DATE] AT A **THIRD-PARTY REPAIR FACILITY (UNRELATED TO KIA**) WITHIN 15 YEARS OR 150,000 ODOMETER MILES, FROM THE DATE OF THE VEHICLE'S ORIGINAL RETAIL DELIVERY, WHICHEVER OCCURS FIRST.</u>

*Claims for this benefit must be submitted no later than [DATE].*

[A] Provide the total amount of Qualifying Repair costs for which you are requesting reimbursement:

$ ☐☐☐☐☐ . ☐☐

[B] **Required Documentation:**
1. <u>Proof of Ownership</u>:  A copy of your vehicle title, a copy of your registration card, **OR** other document showing that you own or lease the vehicle that was repaired;
2. <u>Proof of Qualifying Repair</u>:  A repair invoice or document generated at or around the time of repair that shows what Qualifying Repair(s) you received, the name and contact information of the business that repaired your vehicle, the amount paid, and the date of the Qualifying Repair(s);

*For more information, please view the Class Notice, visit [LINK], or call Kia's Settlement Administrator toll-free number at [PHONE].*

Claims can be submitted electronically at [LINK].

3. <u>Proof of Payment</u>:  A credit card receipt, credit card statement, bank statement, cleared check, **OR** other document showing the amount that you paid for the Qualifying Repair(s) (NOTE: Cash payments for repairs completed at independent repair facilities (unrelated to Kia) are not reimbursable); and

4. <u>Prior Reimbursement</u>:  If you previously received **<u>any</u>** reimbursement in connection with the Qualifying Repair(s), you must provide documentation of this with your Claim, for example, insurance paperwork or prior campaign reimbursement and/or customer satisfaction payments.

☐  <u>I AM REQUESTING THE $150 GOODWILL PAYMENT FOR QUALIFYING REPAIRS THAT WERE PREVIOUSLY DENIED WARRANTY COVERAGE ON OR BEFORE [NOTICE DATE] BY A KIA DEALERSHIP WITHIN 15 YEARS OR 150,000 ODOMETER MILES, FROM THE DATE OF THE VEHICLE'S ORIGINAL RETAIL DELIVERY, WHICHEVER OCCURS FIRST, AND HAD TO GET MY VEHICLE REPAIRED ELSEWHERE.</u>

*Claims for this benefit must be submitted no later than [DATE].*

[A] Provide the name and location of the dealership that denied you the warranty coverage for a Qualifying Repair and the approximate date you were denied the repair:

Kia Dealership Name:

| | | | | | | | | | | | | | | | | | | | | |
|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|

City:　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　State:

| | | | | | | | | | | | | | | | | | | | |   | | |
|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|---|-|-|

Denial Date:  [ ][ ] - [ ][ ] - [ ][ ][ ][ ]
　　　　　　　　MM　　　DD　　　YYYY

[B] **Required Documentation:**  Enclose any repair orders, emails, letters, or other written communications between you and the dealership and/or Kia America showing that you were denied warranty coverage for a Qualifying Repair.

☐  <u>I AM REQUESTING COMPENSATION FOR OUT-OF-POCKET TRANSPORTATION EXPENSES (*E.G.*, RENTAL CAR, RIDE-SHARE) OF UP TO $80/DAY (MAXIMUM COMPENSATION) AND/OR TOWING COSTS IN FULL THAT WERE REASONABLY RELATED TO OBTAINING QUALIFYING REPAIRS THAT OCCURRED WITHIN 15 YEARS OR 150,000 ODOMETER MILES, FROM THE DATE OF THE VEHICLE'S ORIGINAL RETAIL DELIVERY, WHICHEVER OCCURS FIRST.</u>

*Claims under this benefit must be submitted by [DATE] for a Qualifying Repair on or before [NOTICE DATE], or, for a Qualifying Repair after [NOTICE DATE], within 90 days of either the date on which the expenses were incurred or the date the expenses were paid, whichever is later.*

- Your expenses must have been incurred within 15 business days before your Qualifying Repair began and within 3 business days after completion of the Qualifying Repair to be eligible for compensation.
- For purposes of this claim, your transportation expenses may have been more than $80/day, but the maximum daily compensation under the Settlement is capped at $80/day.

[A] Provide the following information:

<u>Transportation</u>:  Check one or more of the boxes below showing what kind of actual transportation expenses you incurred in relation to the Qualifying Repair and provide the total amount you spent on these transportation expenses for which you are requesting compensation (up to a maximum of $80/day):

*For more information, please view the Class Notice, visit [LINK], or call Kia's Settlement Administrator toll-free number at [PHONE].*

Claims can be submitted electronically at [LINK].

☐ Rental Car   ☐ Ride-Share   ☐ Other Transportation       $ ☐☐☐☐ . ☐☐

<u>Towing</u>:  Check the box below if you incurred towing expenses in relation to the Qualifying Repair and provide the total amount you spent on towing for which you are requesting reimbursement:

☐ Towing       $ ☐☐☐☐ . ☐☐

**[B] Required Documentation:**

1. <u>Proof of Ownership</u>:  A copy of your vehicle title, a copy of your registration card, **OR** other document showing that you own or lease the vehicle that was repaired;
2. <u>Proof of Expense(s) Incurred</u>:  A receipt, final rental agreement, or other document showing final expenses paid to a verified business entity (*e.g.*, a rental car, ride-sharing trip(s), or towing service) and date(s) of your purchase(s);
3. <u>Proof of Payment</u>:  A credit card receipt, credit card statement, bank statement, cleared check, **OR** other document showing the amount that you paid for the transportation or towing(s);
4. <u>Prior Reimbursement</u>:  If you previously received **<u>any</u>** reimbursement for the transportation or towing, you must provide documentation of this with your Claim, for example, insurance paperwork or prior campaign reimbursement and/or customer satisfaction payments; and
5. <u>Proof of Qualifying Repair</u>:  A repair invoice or document that shows the nature of the corresponding Qualifying Repair(s) you received, the amount paid, the name and contact information of the business that repaired your vehicle, and the date of the Qualifying Repair(s).  If the corresponding Qualifying Repair was performed at a Kia dealership, Kia will attempt to obtain that information to process your claim, but you are strongly encouraged to provide a copy of the supporting repair documents to avoid delays.

☐ <u>I AM REQUESTING COMPENSATION FOR INCONVENIENCE DUE TO QUALIFYING REPAIR DELAYS EXCEEDING 60 DAYS FOR QUALIFYING REPAIRS PERFORMED **BY A KIA DEALERSHIP** THAT OCCURRED WITHIN 15 YEARS OR 150,000 ODOMETER MILES FROM THE DATE OF THE VEHICLE'S ORIGINAL RETAIL DELIVERY, WHICHEVER OCCURS FIRST.</u>

*Claims under this benefit must be submitted by [DATE] for a Qualifying Repair on or before [NOTICE DATE], or, for a Qualifying Repair after [NOTICE DATE], within 90 days of when the Qualifying Repair was completed.*

[A] Provide the following information regarding the dates of your Qualifying Repair at a Kia dealership, and, to assist with locating repair order information necessary to process your claim, details regarding the Kia dealership that provided the Qualifying Repair:

Repair Start Date:  ☐☐ - ☐☐ - ☐☐☐☐
                 MM     DD     YYYY

Repair End Date:  ☐☐ - ☐☐ - ☐☐☐☐
                 MM     DD     YYYY

Kia Dealership Name:
☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐

City:                                                                                                 State:
☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐     ☐☐

[B] Choose ONE reimbursement type:

*For more information, please view the Class Notice, visit [LINK], or call Kia's Settlement Administrator toll-free number at [PHONE].*

Claims can be submitted electronically at [LINK].

☐ <u>I AM REQUESTING A CASH PAYMENT.  (If your Qualifying Repair took between 61 and 180 days, you will be entitled to $75.  If your Qualifying Repair took more than 181 days, you will be entitled to $100, plus an additional $100 for each additional 30-day period after 210 days)</u>.

OR

☐ <u>I AM REQUESTING A DEALER SERVICE CARD FOR 150% OF THE CASH PAYMENT THAT I WOULD OTHERWISE BE ENTITLED TO FOR THIS BENEFIT.</u>

[C] **Required Documentation:**
1. <u>Proof of Ownership</u>:  A copy of your vehicle title, a copy of your registration card, **OR** other document showing that you own or lease the vehicle that was repaired;
2. <u>Proof of Payment</u>:  A credit card receipt, credit card statement, bank statement, cleared check, receipt from the dealership, **OR** other document showing the amount that you paid for the Qualifying Repair(s);
3. <u>Prior Reimbursement</u>:  If you previously received **any** reimbursement in connection with the Qualifying Repair(s), you must provide documentation of this with your Claim, for example, insurance paperwork or prior campaign reimbursement and/or customer satisfaction payments; and
4. <u>Proof of Qualifying Repair</u>:  A repair order **OR** other document identifying the start and end of your corresponding Qualifying Repair.

☐ <u>I AM REQUESTING COMPENSATION FOR TRANSPORTATION BECAUSE I EXPERIENCED A QUALIFYING FAILURE OR QUALIFYING FIRE THAT OCCURRED **WITHIN 150 MILES FROM MY HOME** AND ALSO WITHIN 15 YEARS OR 150,000 ODOMETER MILES, FROM THE DATE OF THE VEHICLE'S ORIGINAL RETAIL DELIVERY, WHICHEVER OCCURS FIRST.</u>

*Claims under this benefit must be submitted by [DATE] for a Qualifying Failure or Qualifying Fire on or before [NOTICE DATE], or, for a Qualifying Failure or Qualifying Fire after [NOTICE DATE], within 90 days of either the date on which the expenses were incurred or the date the expenses were paid, whichever is later.*

▪ If the Qualifying Failure or Qualifying Fire occurred **within 150 miles of your home** at the time, you can get up to $125 for out-of-pocket rental car, ride-share, or other transportation expenses incurred on the day of the Qualifying Failure or Qualifying Fire.  You are also eligible for reasonable towing expenses related to the incident.  For purposes of this claim, "your home" shall be the address on your driver's license **OR** other documents showing your residential address at the time of the Qualifying Failure or Qualifying Fire.
▪ Your transportation expenses incurred on the day of the incident may have been more than $125, but the maximum daily reimbursement under the Settlement is capped at $125.

[A] Provide the following information:

<u>Transportation</u>:  Check one or more of the boxes below showing what kind of transportation expenses you incurred in relation to the Qualifying Failure or Qualifying Fire and provide the total amount you spent on these transportation expenses for which you are requesting reimbursement (up to a maximum of $125):

☐ Rental Car   ☐ Ride-Share   ☐ Other Transportation        $ ☐☐☐☐ . ☐☐

<u>Towing</u>:  Check the box below if you incurred towing expenses in relation to the Qualifying Failure or Qualifying Fire and provide the total amount you spent on towing for which you are requesting reimbursement:

☐ Towing        $ ☐☐☐☐ . ☐☐

*For more information, please view the Class Notice, visit [LINK], or call Kia's Settlement Administrator toll-free number at [PHONE].*

Claims can be submitted electronically at [LINK].

[B] Check which of the statements best applied to you at the time of the Qualifying Failure or Qualifying Fire:

☐ I resided at my current address that's reflected at the beginning of this form.

OR

☐ My address at the time was:

Address 1:

| | | | | | | | | | | | | | | | | | | | | | | | |
|--|--|--|--|--|--|--|--|--|--|--|--|--|--|--|--|--|--|--|--|--|--|--|--|--|

Address 2:

| | | | | | | | | | | | | | | | | | | | | | | | |
|--|--|--|--|--|--|--|--|--|--|--|--|--|--|--|--|--|--|--|--|--|--|--|--|--|

City:                                                                State:

ZIP Code:

[C] Please state where the Qualifying Failure or Qualifying Fire occurred. Provide the nearest address, or the nearest location (*e.g.*, highway and nearest milepost marker), where you experienced the Qualifying Failure or Qualifying Fire):

Address 1:

Address 2:

City:                                                                State:

ZIP Code:

[D] **Required Documentation:**

1. Proof of Ownership: A copy of your vehicle title, a copy of your registration card, **OR** other document showing that you own or lease the vehicle that had a Qualifying Failure or Qualifying Fire;
2. Proof of Qualifying Failure/Fire: A repair facility diagnosis, police report, insurance documents, **OR** other documents showing you experienced a Qualifying Failure or Qualifying Fire;
3. Proof of Expense(s) Incurred: A receipt or other document showing what was purchased (*e.g.*, a rental car, ride-sharing trip(s), or towing service) and date(s) of your purchases(s);
4. Proof of Payment: A credit card receipt, credit card statement, bank statement, cleared check, **OR** other document showing the amount that you paid for the purchase(s);
5. Prior Reimbursement: If you previously received **any** reimbursement for the purchase(s), you must provide documentation of this with your Claim, for example, insurance paperwork or prior campaign reimbursement and/or customer satisfaction payments; and
6. Proof of Residence: A copy of your driver's license **OR** other documents showing your residential address at the time of the Qualifying Failure or Qualifying Fire.

☐ I AM REQUESTING REIMBURSEMENT FOR INCIDENTALS BECAUSE I EXPERIENCED A QUALIFYING FAILURE OR QUALIFYING FIRE THAT OCCURRED **MORE THAN 150 MILES FROM**

*For more information, please view the Class Notice, visit [LINK], or call Kia's Settlement Administrator toll-free number at [PHONE].*

Claims can be submitted electronically at [LINK].

**MY HOME** AND ALSO WITHIN 15 YEARS OR 150,000 ODOMETER MILES, FROM THE DATE OF THE VEHICLE'S ORIGINAL RETAIL DELIVERY, WHICHEVER OCCURS FIRST.

*Claims under this benefit must be submitted by [DATE] for a Qualifying Failure or Qualifying Fire on or before [NOTICE DATE], or, for a Qualifying Failure or Qualifying Fire after [NOTICE DATE], within 90 days of either the date on which the expenses were incurred or the date the expenses were paid, whichever is later.*

- If the Qualifying Failure or Qualifying Fire occurred **more than 150 miles away of your home** at the time, you can get up to $300 for the first day, $200 for the second day, and $100 for the third day for out-of-pocket rental car, ride-share, or other transportation costs and lodging and reasonable meal expenses.  You are also eligible for reasonable towing expenses related to the incident.  For purposes of this claim, "your home" shall be the address on your driver's license **OR** other documents showing your residential address at the time of the Qualifying Failure or Qualifying Fire.
- Your transportation expenses incurred during the first three days of the incident may have been more than $300/200/100 for each respective day, but the maximum daily reimbursement under the Settlement is capped at either $300/200/100 for each respective day, as described above.

[A] Check the box below identifying how many days it took you to get home after your Qualifying Failure or Qualifying Fire:

☐ One Day          ☐ Two Days          ☐ Three or More Days

[B] Please state where the Qualifying Failure or Qualifying Fire occurred.  Provide the nearest address, or the nearest location (*e.g.*, highway and nearest milepost marker), where you experienced the Qualifying Failure or Qualifying Fire:

Address 1:

Address 2:

City:                                                                                                State:

ZIP Code:

[C] Provide the following information:

<u>Transportation, Meals, & Lodging</u>:  Check one or more of the boxes showing what kind of transportation, meals, and lodging expenses you incurred in relation to the Qualifying Failure or Qualifying Fire and provide the total amount you spent on these expenses for which you are requesting reimbursement (up to $300 for the first day, $200 for the second day, and $100 for the third day):

☐ Rental Car   ☐ Ride-Share   ☐ Other Transportation     $          .

☐ Meals          $          .

☐ Lodging       $          .

<u>Towing</u>:  Check the box if you incurred towing expenses in relation to the Qualifying Failure or Qualifying Fire and provide the total amount you spent on towing for which you are requesting reimbursement:

*For more information, please view the Class Notice, visit [LINK], or call Kia's Settlement Administrator toll-free number at [PHONE].*

8

Claims can be submitted electronically at [LINK].

☐  Towing          $ ☐☐☐☐ . ☐☐

[D] Check which of the statements best applied to you at the time of the Qualifying Failure or Qualifying Fire:

☐  I resided at my current address that's reflected at the beginning of this form.

OR

☐  My address at the time was:

Address 1:

☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐

Address 2:

☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐

City:                                                                                State:

☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐    ☐☐

ZIP Code:

☐☐☐☐☐ - ☐☐☐☐

[E] **Required Documentation:**
1. <u>Proof of Ownership</u>:  A copy of your vehicle title, a copy of your registration card, **OR** other document showing that you own or lease the vehicle that had a Qualifying Failure or Qualifying Fire;
2. <u>Proof of Qualifying Failure/Fire</u>:  A repair facility diagnosis, police report, insurance documents, **OR** other documents showing you experienced a Qualifying Failure or Qualifying Fire;
3. <u>Proof of Expense(s) Incurred</u>:  A receipt or other document showing what was purchased (*e.g.*, a rental car, ride-sharing trip(s), towing service, lodging, or meals), and date(s) of your purchases(s);
4. <u>Proof of Payment</u>:  A credit card receipt, credit card statement, bank statement, cleared check, **OR** other document showing the amount that you paid for the purchase(s);
5. <u>Prior Reimbursement</u>:  If you previously received **<u>any</u>** reimbursement for the purchase(s), you must provide documentation of this with your Claim, for example, insurance paperwork or prior campaign reimbursement and/or customer satisfaction payments; and
6. <u>Proof of Residence</u>:  A copy of your driver's license **OR** other documents showing your residential address at the time of the Qualifying Failure or Qualifying Fire.

☐    <u>I AM REQUESTING REIMBURSEMENT FOR A CLASS VEHICLE I SOLD OR TRADED IN BEFORE [NOTICE DATE] AND AFTER THE VEHICLE HAD A QUALIFYING FAILURE OR QUALIFYING FIRE **BUT BEFORE** THE RECOMMENDED REPAIR WAS PERFORMED WITHIN 15 YEARS OR 150,000 ODOMETER MILES FROM THE DATE OF THE VEHICLE'S ORIGINAL RETAIL DELIVERY, WHICHEVER OCCURS FIRST.</u>

*Claims for this benefit must be submitted no later than [DATE].*

▪ To qualify for this compensation, you must have sold or traded your Class Vehicle in an arm's length transaction **AFTER** the Class Vehicle had a Qualifying Failure or Qualifying Fire **BUT BEFORE** it was repaired.
▪ Compensation is based on the baseline Black Book value (*i.e.*, wholesale used vehicle value) of the Class Vehicle <u>at the time of sale or trade-in</u> minus any actual value received. If the actual amount received from the sale or trade-in exceeds the baseline Black Book value, no reimbursement or goodwill will be provided.

*For more information, please view the Class Notice, visit [LINK], or call Kia's Settlement Administrator toll-free number at [PHONE].*

Claims can be submitted electronically at [LINK].

- In addition to reimbursement for the vehicle, you are eligible to receive an additional $150 goodwill payment.

[A] Provide the following information:

Date of Sale/Trade-In: ☐☐ - ☐☐ - ☐☐☐☐
              MM     DD     YYYY

Odometer Mileage at the time of Sale/Trade-In: ☐☐☐☐☐☐

State where Sale/Trade-In occurred: ☐☐

Total Sale or Trade-In Amount for Your Vehicle at the Time of Sale or Trade-In:
$ ☐☐☐☐☐☐ . ☐☐

[B] **Required Documentation:**
1. <u>Proof of Ownership</u>:  A copy of your vehicle title, a copy of your registration card, **OR** other document showing that you owned or leased the vehicle that you then sold or traded in;
2. <u>Proof of Qualifying Failure/Fire</u>:  A repair facility diagnosis, police report, insurance documents, **OR** other documents showing you experienced a Qualifying Failure or Qualifying Fire;
3. <u>Proof of Sale</u>:  A bill of sale, purchase agreement, **OR** paperwork showing what you received for your vehicle as a sale or trade-in and the mileage; and
4. <u>Prior Reimbursement</u>:  If you previously received <u>**any**</u> reimbursement in connection with your Qualifying Failure or Qualifying Fire, you must provide documentation of this with your Claim, for example, insurance paperwork or prior campaign reimbursement and/or customer satisfaction payments.

☐ <u>I AM REQUESTING REIMBURSEMENT FOR A CLASS VEHICLE THAT EXPERIENCED A QUALIFYING FIRE RESULTING IN THE LOSS OF MY VEHICLE THAT OCCURRED WITHIN 15 YEARS OR 150,000 ODOMETER MILES FROM THE DATE OF THE VEHICLE'S ORIGINAL RETAIL DELIVERY, WHICHEVER OCCURS FIRST.</u>

*Claims under this benefit must be submitted by [DATE] for a Qualifying Fire on or before [NOTICE DATE], or, for a Qualifying Fire after [NOTICE DATE], within 90 days of the Qualifying Fire.*

- Compensation is based on the maximum Black Book value (*i.e.*, private party/very good) of the Class Vehicle <u>at the time of loss</u> minus any actual value received.  If the actual amount received from the sale or trade-in exceeds the maximum Black Book value, no reimbursement or goodwill will be provided.
- In addition to reimbursement for the vehicle, you are eligible to receive an additional $150 goodwill payment.

[A] Provide the following information:

Date of Qualifying Fire: ☐☐ - ☐☐ - ☐☐☐☐
            MM     DD     YYYY

Odometer Mileage at the time of Qualifying Fire: ☐☐☐☐☐☐

State where Qualifying Fire occurred: ☐☐

Total Amount Received for Your Vehicle as a result of Qualifying Fire (insurance payment, sale to salvage yard, etc.):

*For more information, please view the Class Notice, visit [LINK], or call Kia's Settlement Administrator toll-free number at [PHONE].*

Claims can be submitted electronically at [LINK].

$ ☐☐☐☐☐ . ☐☐

**[B] Required Documentation:**

1. Proof of Ownership:  A copy of your vehicle title, a copy of your registration card, **OR** other document showing that you owned or leased the vehicle that experienced a Qualifying Fire;
2. Proof of Qualifying Fire:   A repair facility diagnosis, police report, insurance documents, **OR** other documents showing you experienced a Qualifying Fire; and
3. Prior Reimbursement:  If you previously received **any** reimbursement or value in connection with your Qualifying Fire, you must provide documentation of this with your Claim, for example, insurance paperwork or prior campaign reimbursement and/or customer satisfaction payments.

☐  AS A RESULT OF THIS SETTLEMENT AND AFTER [NOTICE DATE], I (1) LOST FAITH IN MY VEHICLE, (2) EXPERIENCED A QUALIFYING FAILURE OR QUALIFYING FIRE WITHIN 15 YEARS OR 150,000 ODOMETER MILES, FROM THE DATE OF ORIGINAL RETAIL DELIVERY, WHICHEVER OCCURS FIRST; (3) SOLD MY VEHICLE, **AND** (4) THEN PURCHASED A REPLACEMENT KIA VEHICLE FROM AN AUTHORIZED KIA DEALERSHIP.

*Claims under this benefit must be submitted by [DATE] for a Qualifying Failure or Qualifying Fire on or before [NOTICE DATE], or, for a Qualifying Failure or Qualifying Fire after [NOTICE DATE], within 90 days of the Qualifying Failure or Qualifying Fire.*

▪ To qualify for this compensation, after [NOTICE DATE] you must have (1) lost faith in the vehicle; (2) experienced a Qualifying Failure or Qualifying Fire within 15 years or 150,000 odometer miles from date of original retail delivery; (3) sold your vehicle in an arm's length transaction; **AND** (4) purchased a replacement Kia vehicle from an authorized Kia dealership.
▪ If you choose this option, you are eligible for a rebate which shall be calculated as the actual loss by comparing sales documentation to the maximum Black Book value of your vehicle at the time of the Knock Sensor Detection System campaign launch for up to the following amounts:
    a. For model year 2010, 2011, and 2012 Class Vehicles: $2,500
    b. For model year 2013 and 2014 Class Vehicles: $2,000
    c. For model year 2015 and 2016 Class Vehicles: $1,500
    d. For model year 2017, 2018, 2019, and 2020 Class Vehicles: $1,000

[A] Provide the following information:

Date of Sale/Trade-In: ☐☐ - ☐☐ - ☐☐☐☐
                       MM      DD      YYYY

Odometer Mileage at the time of Sale/Trade-In: ☐☐☐☐☐☐

State where Sale/Trade-In occurred: ☐☐

Total Sale or Trade-In Amount for Your Vehicle at the Time of Sale or Trade-In:
$ ☐☐☐☐☐ . ☐☐

[B] Provide the VIN of the Kia vehicle you bought from a Kia dealership to replace your vehicle that experienced a Qualifying Failure or Qualifying Fire:

**Replacement** Kia Vehicle VIN: ☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐

*For more information, please view the Class Notice, visit [LINK], or call Kia's Settlement Administrator toll-free number at [PHONE].*

Claims can be submitted electronically at [LINK].

[C] **Required Documentation:**
1. <u>Proof of Ownership</u>:  A copy of your vehicle title, a copy of your registration card, **OR** other document showing that you owned or leased the vehicle that you then sold or traded in;
2. <u>Proof of Qualifying Failure/Fire</u>:  A repair facility diagnosis, police report, insurance documents, **OR** other documents showing you experienced a Qualifying Failure or Qualifying Fire;
3. <u>Proof of Sale</u>:  Paperwork showing what you received for your vehicle as a sale or trade-in; and
4. <u>Proof of Replacement</u>:  Sales documents showing you purchased a replacement Kia vehicle from an authorized Kia dealership.

## [4] <u>SIGN & DATE</u>

The information on this form is true and correct to the best of my knowledge.  I agree to participate in the Settlement.  I authorize any dealership that serviced my vehicle to release records to Kia as needed to assist in the payment of my Claim.  To the extent I am seeking the following Settlement relief:
- Reimbursement for an authorized Kia dealership repair and I do not have a receipt or other documentation for the corresponding **cash** payment, I attest under penalty of perjury that I paid for the repair in **cash** and I do not have a receipt or documentation for the **cash** payment.  Cash payments for repairs completed at independent repair facilities (unrelated to Kia) are not reimbursable.
- If seeking participation in the rebate program, I attest under penalty of perjury that I have lost faith in my vehicle.
- If seeking participation in the inconvenience-due-to-repairs program, I attest under penalty of perjury that I felt inconvenienced.

Signature:

Date: ☐☐ - ☐☐ - ☐☐☐☐
      MM    DD      YYYY

## [5] **HOW TO SUBMIT:** Email the completed form and the documentation to [EMAIL] or mail it to Kia's Settlement Administrator, [ADDRESS].  For faster servicing, you may also complete and submit a Claim Form online at [WEBSITE].  It is highly recommended that you maintain a copy of the completed Claim Form and a copy of any supporting documentation for your own records.

Please **<u>DO NOT</u>** send Claim Forms to Class Counsel or the Court.

*For more information, please view the Class Notice, visit [LINK], or call Kia's Settlement Administrator toll-free number at [PHONE].*