1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CASE NO. 8:18-cv-02223-JLS-JDE

IN RE: HYUNDAI AND KIA ENGINE
LITIGATION II

**ORDER (1) GRANTING PLAINTIFFS'
MOTION FOR CERTIFICATION OF
A SETTLEMENT CLASS, MOTION
FOR PRELIMINARY APPROVAL OF
CLASS SETTLEMENT, AND ORDER
DIRECTING NOTICE TO THE CLASS
(Doc. 79); AND (2) SETTING A FINAL
FAIRNESS HEARING**

Before the Court is Plaintiffs' unopposed Motion for Preliminary Approval of Class Action Settlement.  (Mot., Doc. 79; Notice of Non-Opposition, Doc. 81.)  For the reasons set forth below, the Court now GRANTS the Motion and sets a Final Fairness Hearing for **September 8, 2023, at 10:30 a.m.**  The parties should carefully review and comply with the conditions of this Order.

## I.   **BACKGROUND**

This putative nationwide class action is brought on behalf of purchasers of various Hyundai and Kia vehicles (Class Vehicles).  All Class Vehicles were equipped with either multipoint fuel injection ("MPI") or gasoline direct injection ("GDI") engines: the Theta II 2.4-liter MPI engine, the 1.6-liter Gamma GDI engine, or the 2.0-liter Nu GDI engine. (Consolidated Class Action Complaint ("CAC"), Doc. 72 ¶ 101.)  Certain Hyundai and Kia vehicles, Plaintiffs allege, contain an engine defect that causes an "unacceptable risk of engine failure and spontaneous engine stalling and fire while driving."  (*Id.* ¶ 2.) Specifically, Plaintiffs allege that, "due to an improper manufacturing and machining process," connecting rod bearings in Class Vehicle engines "undergo prolonged failure" and eventually begin to fracture, causing "large amounts of metal debris … to accumulate in the engine oil."  (*Id.* ¶ 107.)  This contaminated engine oil can result in catastrophic engine failure and engine compartment fire.  (*Id.* ¶¶ 107-110.)  Plaintiffs are purchasers of Class Vehicles containing the alleged engine defect, and many of them experienced catastrophic engine failure and/or fire.  (*Id.* ¶¶ 6, 17-87.)  Defendants Hyundai Motor Company, Hyundai Motor America ("HMA"), Kia America Inc. ("KA"), and Kia Corporation manufacture and sell the Class Vehicles.  (*Id.* ¶¶ 88-100.)

This litigation stems from an earlier case, *In re: Hyundai and Kia Engine Litigation* ("*Engine I*"), No. 8:17-cv-00838 (C.D. Cal.), concerning vehicles equipped with Theta II GDI engines containing a similar alleged defect, which reached final settlement in May 2021.  (Mot. at 11.)  While litigating *Engine I*, Plaintiffs' counsel received reports regarding engine failures and fires in other engines, leading to the instant litigation.  (*Id.*)

The following cases were consolidated into this action: *Flaherty v. Hyundai Motor Co.*, No. 18-2223 (C.D. Cal.); *Marbury v. Hyundai Motor America*, No. 21-379 (C.D. Cal.); *Thornhill v. Hyundai Motor Co.*, No. 21-481 (C.D. Cal.); *Buettner v. Hyundai Motor America, Inc.*, No. 21-1057 (C.D. Cal.); *Short v. Hyundai Motor America*, No. 22-3498 (C.D. Cal.); and *Chieco v. Kia Motors America Inc.*, No. 19-854 (C.D. Cal.). (*See* Sept. 8, 2021 Order, Doc. 55; Aug. 25, 2022 Order, Doc. 71; Sept. 22, 2022 Order, Doc. 77.)

 The parties have reached a proposed settlement. The settlement class is defined as "[a]ll owners and lessees of a Class Vehicle who purchased or leased a Class Vehicle[1] in

---

[1] Class Vehicles include the following Hyundai Class Vehicles:
- 2011, 2012, 2013, 2014, and 2015 model year Hyundai Sonata Hybrid (HEV) vehicles with a Theta II 2.4-liter multi-port fuel injection ("MPI") engine;
- 2016, 2017, 2018, and 2019 model year Hyundai Sonata Hybrid/Plug-In Hybrid (HEV/PHEV) vehicles with a Nu 2.0-liter gasoline direct injection ("GDI") engine;
- 2010, 2011, and 2012 model year Hyundai Santa Fe vehicles with a Theta II 2.4-liter MPI engine;
- 2010, 2011, 2012, and 2013 model year Hyundai Tucson vehicles with a Theta II 2.4-liter MPI engine;
- 2014, 2015, 2016, 2017, 2018, 2019, 2020, and 2021 model year Hyundai Tucson vehicles with a Nu 2.0-liter GDI engine;
- 2014 model year Hyundai Elantra Coupe vehicles with a Nu 2.0-liter GDI engine;
- 2014, 2015, and 2016 model year Hyundai Elantra vehicles with a Nu 2.0-liter GDI engine;
- 2014, 2015, 2016, 2017, 2018, 2019, and 2020 model year Hyundai Elantra GT vehicles with a Nu 2.0-liter GDI engine; and
- 2012, 2013, 2014, 2015, 2016, and 2017 model year Hyundai Veloster vehicles with a Gamma 1.6-liter GDI engine.

Class Vehicles also include the following Kia Class Vehicles:
- 2011, 2012, 2013, 2014, 2015, and 2016 model year Kia Optima Hybrid (HEV) vehicles with a Theta II 2.4-liter MPI engine;
- 2017, 2018, 2019, and 2020 model year Kia Optima Hybrid (HEV/PHEV) vehicles with a Nu 2.0-liter GDI engine;
- 2011, 2012, and 2013 model year Kia Sorento vehicles with a Theta II 2.4-liter MPI engine;
- 2011, 2012, and 2013 model year Kia Sportage vehicles with a Theta II 2.4-liter MPI engine;
- 2010, 2011, 2012, and 2013 model year Kia Forte vehicles with a Theta II 2.4-liter MPI engine;
- 2010, 2011, 2012, and 2013 model year Kia Forte Koup vehicles with a Theta II 2.4-liter MPI engine;

(footnote continued)

the United States, including those that were purchased while the owner was abroad on active U.S. military duty, but excluding those purchased in U.S. territories and/or abroad." (Settlement Agreement ("SA"), Doc. 79-2 § I.E.)  Excluded from the class, and not released by the settlement, are claims for death, personal injury, property damage (other than to a Class Vehicle that is the subject of a Qualifying Repair), and subrogation.  (*Id.*)

The main relief in the settlement comes in the form of 15-year or 150,000-mile Extended Warranty coverage for "all costs associated with inspections and repairs, including replacement parts, labor, diagnoses, and mechanical or cosmetic damage caused by connecting rod bearing failure," which will extend to all Class Vehicles that have completed the Knock Sensor Detection System ("KSDS") software update.  (Mot. at 18.) KSDS "refers to the engine monitoring technology developed by Defendants that, with software innovations, leverages existing hardware on the subject Class Vehicles to continuously monitor engine performance for symptoms that may precede connecting rod bearing failure and engine failure that is being offered as a software update to Class members free of charge pursuant to the product improvement campaigns" that Defendants have already begun offering.  (SA § I.P.)  To be eligible for the Extended Warranty, Class Vehicles must have the KSDS installed within 150 days of the Notice Date.[2]  (*Id.* § I.Q.) Class Vehicles may also be denied Extended Warranty for Exceptional Neglect, defined as evidence of a failure to maintain or care for the engine within factory maintenance and

---

- 2014, 2015, 2016, 2017, and 2018 model year Kia Forte vehicles with a Nu 2.0-liter GDI engine;
- 2014, 2015, and 2016 model year Kia Forte Koup ve hicles with a Nu 2.0-liter GDI engine;
- 2012, 2013, 2014, 2015, and 2016 model year Kia Soul vehicles with a Gamma 1.6-liter GDI engine; and
- 2014, 2015, 2016, 2017, 2018, and 2019 model year Kia Soul vehicles with a Nu 2.0-liter GDI engine.

(Settlement Agreement, Doc. 79-2 § I.G.)

[2] The term Notice Date "refers to the date on which notice of the Settlement is disseminated. The Notice Date shall be the first business day after 120 days following the Court's entry of an order preliminarily approving this Settlement."  (*Id.* § I.S.)

care specifications (unless such lack of maintenance was due to a Qualifying Failure[3] or Qualifying Fire[4]) or service records demonstrate unacceptable gaps in regular oil changes. (Mot. at 18-19.)  Defendants will provide a comparable class of loaner vehicle during any repairs under the Extended Warranty, or, if a loaner is not available, up to $80 per day of reimbursement for reasonable rental car expenses.  (*Id.* at 19.)

Defendants have also initiated a number of recalls and KSDS product improvement campaigns.  (*Id.* at 19-20.)  The settlement provides for full reimbursement for Qualifying Repairs ("any completed repair, replacement, diagnosis, or inspection of the Class Vehicle engine performed to address the following documented symptoms: hole-in-block (*i.e.*, the connecting rod punctures a hole in the engine block), engine seizure (unrelated to pre-existing oil consumption issues), or engine fire" (SA § I.EE)) for Class Vehicles within 15 years from the date of original retail delivery or first use or 150,000 miles and before

---

[3] A Qualifying Failure "refers to an engine seizure, engine stall, or other vehicle incident, as outlined in the definition of Qualifying Repair, short of an engine compartment fire, that would otherwise be addressed by a Qualifying Repair, except where it was plainly unrelated to the engine short block manufacturing issues (for example, a stall directly caused by a fuel pump, oxygen sensor, timing, or the electrical system), due to Exceptional Neglect (or KSDS Installation Neglect), or an investigation or inspection revealed an unrelated cause. An engine failure that would otherwise be a 'Qualifying Failure' does not qualify where documentation shows the Class Vehicle was involved in a moderate to severe front-end collision (i) within three months prior to the otherwise Qualifying Failure, or (ii) more than three months prior to the otherwise Qualifying Failure and there is evidence the vehicle component(s) essential for engine operation was improperly or never repaired, as validated by an inspection, diagnosis, or a CarFax report or similar third-party report. This exception will not apply if the front-end collision to the Class Vehicle was repaired at a Hyundai or Kia dealership."  (SA § I.CC.)

[4] A Qualifying Fire "refers to an engine compartment fire that would otherwise be addressed by a Qualifying Repair, and excepting where the fire was plainly unrelated to the engine short block manufacturing issues (for example, a fire caused solely and independently by a collision, electrical, or fuel-related problems), due to Exceptional Neglect (or KSDS Installation Neglect), there are indications the fire was caused by negligence, a third-party car part installed on the vehicle was the cause of the fire, or an investigation or inspection revealed an unrelated cause. Loss that would otherwise be a 'Qualifying Fire' does not qualify where documentation shows the Class Vehicle was involved in a moderate to severe front-end collision (i) within three months prior to the otherwise Qualifying Fire, or (ii) more than three months prior to the otherwise Qualifying Fire and there is evidence the vehicle component(s) essential for engine operation was improperly or never repaired, as validated by a CarFax report or similar third-party report. This exception will not apply if the front-end collision to the Class Vehicle was repaired at a Hyundai or Kia dealership."  (SA § I.DD.)

receiving notice of the settlement.  (Mot. at 20.)  Class members can also be reimbursed for towing or other out-of-pocket expenses reasonably related to obtaining a Qualifying Repair and up to $80 per day for transportation if a loaner was not provided.   (*Id.* at 21.) For repair delays over sixty days, class members may seek goodwill payments of $75 for delays lasting between 61 and 180 days, and goodwill payments of $100 for delays of 181 days or more, with an additional $100 payment for each thirty-day period of delay after 181 days.  (*Id.*)  Class members who experienced a Qualifying Failure or Qualifying Fire while away from home can seek reimbursement for reasonably related transportation, lodging, and meal expenses.  (*Id.* at 23.)  For each of these reimbursements, class members must submit their claim forms and supporting documentation within ninety days of the Final Approval Order.  (*Id.* at 20, 22-24.)

Class members who experienced a Qualifying Failure or Qualifying Fire and sold or traded-in their Class Vehicles before the Notice Date without first getting the recommended repair can seek a $150 payment plus reimbursement of the baseline Black Book value of the Class Vehicle at the time minus the actual amount received from the sale or trade-in.  (*Id.* at 24.)  Claimants must submit their claim forms and supporting documentation within ninety days of the Final Approval Order.  (*Id.*)  Class members whose vehicles were destroyed in a Qualifying Fire within 15 years of delivery or 150,000 miles are entitled to a $150 goodwill payment plus the maximum Black Book value of the Class Vehicle minus any value received for the vehicle.  (*Id.* at 24-25.)  Claimants must submit a claim form and supporting documentation within ninety days of the Final Approval Order for a Qualifying Fire occurring on or before the Notice Date, or within ninety days after the Qualifying Fire occurred for a Qualifying Fire occurring after the Notice Date.  (*Id.* at 25.)

Class members are eligible for a rebate if they experience a Qualifying Failure or Qualifying Fire, lose faith in their Class Vehicle because of the settlement, sell their Class Vehicle in an arm's length sale or trade, and purchase a replacement Hyundai (for Hyundai Class members) or Kia (for Kia Class members).  (*Id.* at 25.)  The rebate is calculated as

the difference between the value the claimant received at trade-in or sale and the maximum Black Book value, up to "(a) $2,500 for model year 2010-2012 Class Vehicles; (b) $2,000 for model year 2013-2014 Class Vehicles; (c) $1,500 for model year 2015-2016 Class Vehicles; and (d) $1,000 for model year 2017-2021 model year Class Vehicles." (*Id.*)  The Qualifying Failure or Qualifying Fire must occur within 15 years or 150,000 miles to be eligible for the rebate. (*Id.* at 25-26.)  Claim forms and supporting documentation must be submitted within ninety days of the Final Approval Order, where the Qualifying Failure or Qualifying Fire occurred before the Notice Date) or within ninety days of the Qualifying Failure or Qualifying Fire (for a Qualifying Failure or Qualifying Fire that occurred after the Notice Date). (*Id.* at 26.)

Notice will be sent to class members via mail and email within 120 days after the entry of this Order. (*Id.* at 26-27.)  In the same time frame, Defendants will also provide a copy of a Pamphlet designed to be kept with the owner's manual of Class Vehicles to all reasonably identifiable current owners or lessees of Class Vehicles. (*Id.* at 27.)  Class members who wish to object or exclude themselves must do so via mail no later than forty-five days after the Notice Date. (*Id.*)  All members who do not exclude themselves will be bound by a release applicable to all claims arising out of or relating to the claims asserted in the CAC. (*Id.* at 27-28.)  This does not include any claims for death, personal injury, property damage (other than to a Class Vehicle), or subrogation. (*Id.* at 28.)

Plaintiffs asked the Court to preliminarily certify the settlement class, preliminarily approve the proposed settlement, and order dissemination of the Class notice.  On December 14, 2022, the Court issued an Order requiring supplemental briefing to address the following concerns: (1) whether Defendants would be self-administering the settlement, and, if so, whether they could do so fairly, competently, efficiently, and impartially; (2) why class members wishing to opt out of the settlement would be required to do so via mail rather than via electronic submission; (3) how the proposed settlement differs from the settlement reached in *Engine I*. (Order, Doc. 86.)  The parties filed a Joint Supplemental Brief in response on January 13, 2023. (Supp. Br., Doc. 94.)

As to the first issue, Hyundai intends to self-administer with the assistance of Sedgwick Claims Management, and Kia plans to retain Epiq Class Action & Claims Solution, Inc. to administer the settlement.  (Supp. Br. at 2.)  Regarding opt-out methods, the parties have agreed to permit class members to opt-out either online or by mail and have amended the Long-Form notices to inform class members that they may do so.  (*Id.* at 10-11.)  Finally, the parties provided the Court with a comparison of the proposed settlement with the settlement reached in *Engine I*.  (*See id.* at 11-18; *see also* Doc. 94-8.)  As discussed further *infra*, the Court finds that the parties have satisfactorily addressed its concerns.

## II.  CONDITIONAL CERTIFICATION OF THE CLASS

Plaintiff requests that the Court preliminarily certify the proposed settlement class under Federal Rules of Civil Procedure 23(a) and 23(b)(3).  "A party seeking class certification must satisfy the requirements of Federal Rule of Civil Procedure 23(a) and the requirements of at least one of the categories under Rule 23(b)."  *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 542 (9th Cir. 2013).  Rule 23(a) "requires a party seeking class certification to satisfy four requirements: numerosity, commonality, typicality, and adequacy of representation."  *Id.* (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011)).  Rule 23(a) provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>> (1) the class is so numerous that joinder of all members is impracticable;
>> (2) there are questions of law or fact common to the class;
>> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  "If the court divides the class into subclasses . . ., then 'each subclass must independently meet the requirements for the maintenance of a class action.'" *Bates v. United Parcel Serv.*, 204 F.R.D. 440, 443 (N.D. Cal. 2001) (quoting *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 630 (9th Cir. 1982)). Here, other than which Defendant is administering the settlement, the settlement is substantially identical for the Hyundai and Kia subclasses, so the Court's consideration of the requirements for certification is the same for both.

"Rule 23 does not set forth a mere pleading standard.  A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart*, 564 U.S. at 350.  This requires a district court to conduct a "rigorous analysis" that frequently "will entail some overlap with the merits of the plaintiff's underlying claim." *Id.* at 350–51 (internal quotation marks omitted).

Additionally, "the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)." *Id.* at 345.  Rule 23(b)(3) permits certification where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

## A.   The Proposed Classes Meet All Rule 23(a) Requirements

The Class meets the requirements of Rule 23(a).

### 1.   Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  The proposed Class here includes owners or lessees of more than 2.1 million Class Vehicles.  (Mot. at 42.)  The proposed class easily meets the numerosity requirement.

### 2.   Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  "Commonality requires the plaintiff to demonstrate that the class

members have suffered the same injury." *Wal-Mart*, 564 U.S. at 349–50 (quotations omitted).  The plaintiff must allege that the class members' injuries "depend upon a common contention" that is "capable of classwide resolution." *Id.* at 350.  In other words, the "determination of [the common contention's] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*  "What matters to class certification . . . is not the raising of common questions—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (quotations omitted).

Plaintiffs state that the questions common to the entire class include:

> (i) whether the Class Vehicles' engines all suffered the same risks arising from Defendants' unreasonable acts and omissions in the manufacturing, production, and sale of the Class Vehicles; (ii) whether the defective engines can cause catastrophic engine failure and potentially result in engine fires; (iii) whether and when Defendants knew about the defective engines; (iv) whether a reasonable consumer would consider the defective engine and its consequences to be material; (v) whether the defective engine implicates safety concerns; and (vi) whether Defendants' conduct violates the consumer protection statutes alleged, and the terms of their warranties.

(Mot. at 42-43.)  These are the kinds of questions that courts in this Circuit have found capable of classwide resolution.  *See, e.g.*, *Keegan v. Am. Honda Motor Co., Inc.*, 284 F.R.D. 504, 523-24 (C.D. Cal. 2012); *Asghari v. Volkswagen Grp. of Am., Inc.*, No. 13-2529, 2015 WL 12732462, at *12 (C.D. Cal. May 29, 2015).  The commonality requirement is satisfied.

### 3.    Typicality

Rule 23(a)(3) requires "the claims or defenses of the representative parties [to be] typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "[U]nder the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 613 (9th Cir. 2010) (en banc) (quoting

*Hanlon v. Chrysler Corp*, 150 F.3d 1011, 1020 (9th Cir. 1998)), *overruled on other grounds*, *Wal-Mart*, 564 U.S. 338.  As to the representative, "[t]ypicality requires that the named plaintiffs be members of the class they represent."  *Dukes*, 603 F.3d at 613.  The commonality, typicality, and adequacy-of-representation requirements "tend to merge."  *See Wal-Mart*, 564 U.S. at 349 n.5.

Here, each of the named plaintiffs purchased a Class Vehicle containing the alleged engine defect, so each suffered the same injury of purchasing the defective product.  Typicality is met.

### 4.    Adequacy

Rule 23(a)(4) permits certification of a class action only if "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Hanlon*, 150 F.3d at 1020.

As to the named plaintiffs, there are no apparent conflicts of interests between them and the rest of the class.  Courts recognize a potential conflict of interest between a named plaintiff and the class where "there is a large difference between the enhancement award and individual class member recovery."  *Mansfield v. Sw. Airlines Co.*, No. 13-2337, 2015 WL 13651284, at *7 (S.D. Cal. Apr. 21, 2015).  Here, the proposed service awards of $5,000 for plaintiffs who have been deposed and $3,000 for those who have not (*see* Mot. at 32) are not so large as to create a potential conflict of interest.  *See Carlin v. DairyAmerica, Inc.*, 380 F. Supp. 3d 998, 1024 (E.D. Cal. 2019) (noting that "[i]in the Ninth Circuit, courts have found that $5,000 is a presumptively reasonable service award").  It appears that named plaintiffs' interests are aligned with the rest of the class and that they will continue to vigorously prosecute the action on the class's behalf.

As to the adequacy of Class Counsel, the Court must consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's

experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).

On September 8, 2021, the Court appointed Steve W. Berman of Hagens Berman and Matthew D. Schelkopf of Sauder Shelkopf as Interim co-Lead Counsel for the putative class, and Gretchen Freeman Cappio of Keller Rohrback L.L.P. as Settlement Counsel. (Sept. 8 Order, Doc. 55.) Berman and his firm, Hagens Berman, "have significant experience prosecuting consumer class actions against automotive companies, including successful actions against Hyundai and Kia." (Berman Decl., Doc. 79-1 ¶ 3.) Berman was co-lead counsel in the *Engine I* litigation. (*Id.*) He was also co-lead counsel in another Central District of California case which resulted in a settlement that was "valued at up to $1.6 billion." (*Id.*) Schelkopf has received multiple awards in recognition of his consumer litigation work. (Schelkopf Decl., Doc. 79-4 ¶ 5.) He was also Class Counsel in *Engine I*. (*Id.* ¶ 6.) He has served as lead or co-lead counsel in a number of automotive class actions in various district courts across the United States. (*Id.*) Cappio has experience in large-scale, multidistrict complex class action litigation, and is currently serving on two Plaintiffs' Steering Committees in automotive class actions and directing the Keller Rohrback team as appointed co-lead counsel in a third. (Cappio Decl., Doc. 79-6 ¶ 4.) She has played a leadership role in at least seven complex or class action cases. (*Id.* ¶¶ 4-5.) Based on this experience, and the quality of counsels' work to date, the Court concludes that Berman, Schelkopf, and Cappio satisfy the adequacy requirement.

### B.    The Proposed Class Also Meets the Rule 23(b)(3) Requirements

Plaintiffs seek certification under Rule 23(b)(3). (Mot. at 44-45.) For the following reasons, the Court finds that certification of the proposed Class is appropriate under Rule 23(b)(3).

Under Rule 23(b)(3), a class action may be maintained if: "[1] the court finds that the questions of law or fact common to class members *predominate* over any questions

affecting only individual members, and [2] that a class action is *superior* to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. R. 23(b)(3) (emphasis added).  When examining a class that seeks certification under Rule 23(b)(3), the Court may consider:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.[5]

*Id.*  The Court finds that the proposed Class satisfies both the predominance and superiority requirements.

### 1.    Predominance

"[T]he predominance analysis under Rule 23(b)(3) focuses on the relationship between the common and individual issues in the case, and tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation."  *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 964 (9th Cir. 2013) (quotations omitted).  "Rule 23(b)(3) requires [only] a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class."  *Id.* (alteration in original).

Here, as discussed more generally above, Class Members' claims allege a common engine defect in various Class Vehicles which they allege defendants had knowledge of and concealed.  Questions which are common to the entire class include "whether the Class Vehicles are similarly defective," "whether Defendants had a duty to disclose any resulting manufacturing or production issues," "whether Defendants knowingly concealed manufacturing or production issues," and "whether one (or more) of these manufacturing

---

[5] This factor is not relevant in the context of certification for settlement purposes.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." (internal citation omitted)).

or production issues is a material fact." (Mot. at 44.)  It is "readily apparent" that these classwide questions predominate over individual issues in the case.  *See Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 962 (9th Cir. 2005); *see also Alger v. FCA US LLC*, 334 F.R.D. 415, 427-28 (E.D. Cal. 2020); *Falco v. Nissan N. Am. Inc.*, No. 13-686, 2016 WL 1327474, at *7-12 (C.D. Cal. Apr. 5, 2016).

### 2.    Superiority

The Court also finds that a class action would be a superior method of adjudicating Plaintiffs' class claims.  "The superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case."  *Hanlon*, 150 F.3d at 1023.  "This determination necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution."  *Id.*  Here, each member of the proposed Class pursuing a claim individually would burden the judicial system and run afoul of Rule 23's focus on efficiency and judicial economy, especially because discovery would necessarily be duplicative of the extensive discovery and investigation that has already been conducted.  *See Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 946 (9th Cir. 2009) ("The overarching focus remains whether trial by class representation would further the goals of efficiency and judicial economy.").  As Plaintiffs argue, the settlement provides for resolution of the defect and compensation for actual harm suffered for all class members.  (Mot. at 45.)

In sum, having considered the non-exclusive factors set forth under Rule 23(b)(3), the Court finds that class treatment here is superior to other methods of adjudication. Therefore, the Court concludes that the proposed Class may be certified under Rule 23(b)(3).

### D.    Rule 23(g) – Appointment of Class Counsel

Under Rule 23(g), "a court that certifies a class must appoint class counsel."  Fed. R. Civ. P. 23(g)(1).  As discussed previously, the Court is satisfied that counsel, Steve W.

1  Berman, Matthew D. Schelkopf, and Gretchen Freeman Cappio are adequate and appoints

2  them as Class Counsel.

3

4       Having found that the proposed Class satisfies the elements of Rule 23(a) and

5  23(b)(3), the Court conditionally certifies the Class for settlement purposes only.

6

7  **III.**      **<u>PRELIMINARY APPROVAL OF CLASS SETTLEMENT</u>**

8

9       To preliminarily approve a proposed class action settlement, Rule 23(e)(2) requires

10  the Court to determine whether the proposed settlement is fair, reasonable, and adequate.

11  *See* Fed. R. Civ. P. 23(e)(2).  Review of a proposed settlement typically proceeds in two

12  stages, with preliminary approval followed by a final fairness hearing.  Federal Judicial

13  Center, *Manual for Complex Litigation*, § 21.632 (4th ed. 2004).  "The decision to [grant

14  preliminary approval and] give notice of a proposed settlement to the class is an important

15  event.  It should be based on a solid record supporting the conclusion that the proposed

16  settlement will likely earn final approval after notice and an opportunity to object."  Fed.

17  R. Civ. P. 23 advisory committee's note to 2018 Amendment.

18       "To determine whether a settlement agreement meets these standards, a district

19  court must consider a number of factors, including: the strength of plaintiffs' case; the risk,

20  expense, complexity, and likely duration of further litigation; the risk of maintaining class

21  action status throughout the trial; the amount offered in settlement; the extent of discovery

22  completed, and the stage of the proceedings; the experience and views of counsel; the

23  presence of a governmental participant[6]; and the reaction of the class members to the

24  proposed settlement."  *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (quotations

25  omitted).  "The relative degree of importance to be attached to any particular factor will

26  depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief

27  _____

28       [6] This factor does not apply in this case.

sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at 625.  "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness, and the settlement must stand or fall in its entirety." *Staton*, 327 F.3d at 960 (cleaned up).

In addition to these factors, where "a settlement agreement is negotiated *prior* to formal class certification," the Court must also satisfy itself that "the settlement is not the product of collusion among the negotiating parties." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946–47 (9th Cir. 2011) (cleaned up).  Accordingly, the Court must look for explicit collusion and "more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id.* at 947.  Such signs include (1) "when counsel receive a disproportionate distribution of the settlement," (2) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds," and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Id.* (quotations omitted).

At this preliminary stage, and because class members will receive an opportunity to be heard on the settlement, "a full fairness analysis is unnecessary." *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008).  Instead, preliminary approval and notice of the settlement terms to the proposed class are appropriate where "[1] the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls within the range of *possible* approval[.]" *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (quotations omitted) (emphasis added); *see also Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) ("To determine whether preliminary approval is appropriate, the settlement need only be *potentially* fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval, after such time as any party has had a chance to object and/or opt out.").

Based on its analysis below of all applicable factors, the Court finds that the Settlement Agreement should be preliminarily approved.

### A.      Strength of Plaintiff's Case

Plaintiffs argue that they "are poised to prove Defendants violated numerous state consumer protection statutes, breached state and federal warranty laws, and engaged in fraud by failing to disclose a known safety defect that put consumers in avoidable danger and caused them to incur expensive and lengthy repairs." (Mot. at 34.)  They allege that their "ongoing investigations" have demonstrated that, despite Defendants' claimed improvements in design and manufacturing processes, additional models of vehicles continue to be impacted by the defect.  (*Id.*)  Nevertheless, Plaintiffs' co-lead and settlement counsel assess that there are risks to proving liability.  Defendants could argue a lack of knowledge of the defect before some of the class vehicles were sold; they could argue that some members of the class were not harmed because some Class Vehicles will never manifest the defect and, for those that do, the KSDS will notify them in time to prevent engine fire or failure; and they could argue that a Class Vehicle's service history is relevant to whether the engine fails, so certification under 23(b)(3) is inappropriate.  (*Id.*)  Moreover, Plaintiffs note that even victory at trial would delay resolution and recovery for years, making it more difficult to locate and compensate class members, and diminishing the value of certain benefits from the proposed settlement, such as the Extended Warranty. (*Id.*)  The Court finds that this factor weighs in favor of granting preliminary approval.

### B.      Risk, Complexity, and Likely Duration of Further Litigation

Plaintiffs note that "Co-Lead Counsel and Settlement Counsel frequently litigate automotive class actions that take years to resolve, while some have gone on for over a decade with appeals." (Mot. at 36.)  They estimate that this case would not even reach trial before 2024, which would delay recovery for class members and would also place class members at risk of engine seizure or stalling, which the proposed settlement would notify

1   them about and permit them to address with free inspections and repairs.  (*Id.*)  In this case,

2   early resolution provides a benefit to class members that might not be present even if

3   Plaintiffs were ultimately to succeed at every stage of trial and post-trial litigation. This

4   factor therefore weighs in favor of granting preliminary approval.  *See Nat'l Rural*

5   *Telecomms. Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("In most

6   situations, unless the settlement is clearly inadequate, its acceptance and approval are

7   preferable to lengthy and expensive litigation with uncertain results.").

8

9          **C.     Risk of Obtaining and Maintaining Class Certification**

10         As noted above, Defendants would almost certainly challenge class certification

11  were this case to proceed to trial.  Plaintiffs contend that they "could marshal sufficient

12  evidence in support of" a motion for class certification, but acknowledge that, "instead of

13  resolving this litigation on a nationwide basis, Plaintiffs would likely only succeed in

14  certifying certain state classes, further reducing the scope of relief to the potential class."

15  (Mot. at 37.)  The risk of opposition to class certification and the likelihood that the scope

16  of relief would be reduced weigh in favor of granting preliminary approval.

17

18         **D.     Amount or Type of Relief Offered in Settlement**

19         The Court finds that the amount and type of relief offered in the settlement are

20  reasonable.  The main relief in the proposed settlement is that Class Vehicles will receive

21  an Extended Warranty for free inspections and necessary repairs for fifteen years or

22  150,000 miles. (Mot. at 37.)  Plaintiffs assert that the "proposed Settlement provides Class

23  members with largely everything Plaintiffs sought in their complaints."  (*Id.*)  They note

24  that they initially sought lifetime warranties, but in conversations with the National

25  Highway Traffic Safety Administration ("NHTSA") discovered that the NHTSA had a

26  concern that a "lifetime warranty could create a public safety risk by incentivizing

27  consumers to drive vehicles longer than their contemplated useful lives."  (*Id.*; *see also*

28  Latouf Decl., Doc. 81-1 ¶ 11.)  Because Plaintiffs conceded the shorter warranty term, they

negotiated "increased benefits in other categories of settlement relief as compared to *Engine I*" including a higher cap on rental car reimbursements; transportation, lodging, and meal reimbursements for class members stranded away from home by a Qualifying Failure or Qualifying Repair; and increased inconvenience payments for repair delays and increased goodwill payments for Qualifying Fires and warranty repairs improperly denied by Defendants.  (Mot. at 38.)

Overall, the settlement provides nine categories of relief: (1) the Extended Warranty described above; (2) recalls and product improvements of certain models; (3) reimbursement for Qualifying Repairs at authorized dealerships and repair shops and additional goodwill payments for class members denied in-warranty repair at authorized dealerships; (4) repair-related transportation and towing reimbursements for Qualifying Repairs; (5) goodwill payments for inconvenience due to repair delays; (6) reimbursement for expenses related to transportation, lodging, and meals for class members stranded away from home by a Qualifying Failure or Qualifying Fire; (7) reimbursement for lost value plus a $150 payment for Class Vehicles sold or traded in after experiencing a Qualifying Failure or Qualifying Fire before the notice date without receiving the recommended repair; (8) goodwill payments of $150 plus reimbursement of the maximum Black Book value of the Class Vehicle at the time of loss minus any value received for the vehicle for Class Vehicles destroyed by a Qualifying Fire; and (9) a rebate program for class members who experienced a Qualifying Failure or Qualifying Fire, lose faith in their Class Vehicle because of the settlement, sell their Class Vehicle, and purchase a replacement Hyundai or Kia (for Hyundai and Kia class members respectively).  (Mot. at 18-26.)

The settlement is comprehensive in compensating class members for the harms suffered and providing protection against future harms.  *See Eisen v. Porsche Cars N. Am.*, No. 11-09405, 2014 WL 439006, at *1, *11 (C.D. Cal. Jan. 30, 2014) (approving class action settlement that provided an extended warranty to class members and permitted for reimbursement for expenses already incurred in repairing auto defect). It is not necessary for the settlement to be the best possible outcome for the settlement to be fair and

1    adequate.  *See Staton*, 327 F.3d at 959 ("[T]he very essence of a settlement is compromise,

2    a yielding of absolutes and an abandoning of highest hopes" (quotations omitted)).  The

3    Court finds that the relief offered in the settlement is reasonable.

4         The Court notes that the proposed settlement is substantially similar to the

5    settlement that the Court approved in *Engine I* and finds that the differences between the

6    two settlements do not raise concerns about the reasonableness of the proposed settlement.

7

8         **E.**    **Stage of the Proceedings and Extent of Discovery Completed**

9         This factor requires the Court to evaluate whether "the parties have sufficient

10   information to make an informed decision about settlement."  *Linney v. Cellular Alaska*

11   *P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).  Discovery can be both formal and informal,

12   and "plaintiffs may rely on discovery developed in prior or related proceedings."  *See id.* at

13   1239-40; *see also Clesceri v. Beach City Investigations & Protective Servs., Inc.*, No. 10-

14   3873, 2011 WL 320998, at *9 (C.D. Cal. Jan. 27, 2011).  Co-Lead Counsel and Settlement

15   Counsel investigated the claims prior to filing complaints by engaging an expert to

16   investigate the defect and perform teardown analyses of Class Vehicle engines, reviewing

17   publicly available information and NHTSA complaints, and communicating with hundreds

18   of class members.  (Mot. at 39-40; Berman Decl. ¶ 12; Schelkopf Decl. ¶ 12; Cappio Decl.

19   ¶ 7.)  Settlement Counsel had the benefit of formal discovery in the *Short* lawsuit, where

20

21            Defendants produced thousands of pages of technical and
             engineering documents, including design, testing, and service
22            bulletin information, as well as voluminous, detailed data on
             hundreds of thousands of repairs and warranty claims, including
23            diagnostic information and comments from the technicians who
             worked on class members' vehicles. Counsel and their highly
24            qualified experts reviewed these documents and data closely,
             and both engineering and economic experts provided counsel
25            with detailed reports based on this discovery.

26

27   (Mot. at 39-40; Cappio Decl. ¶ 8.)

28

Given these facts, the Court concludes that the parties possess enough information to make an informed settlement decision.  Accordingly, this factor weighs in favor of granting preliminary approval.

### F.     Experience and Views of Counsel

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).  As a result, representation by competent counsel familiar with the law in the relevant area and with "the strengths and weaknesses of [the parties'] respective positions[] suggests the reasonableness of the settlement." *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007).  "On the other hand, recognizing the potential conflict of interest between attorneys and the class they represent, the Court should not blindly follow counsel's recommendations, but give them appropriate weight in light of all factors surrounding the settlement." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979).

As discussed above, Class Counsel are experienced and knowledgeable in this area of the law, and all have endorsed the Settlement Agreement.  (*See* Berman Decl. ¶ 11; Schelkopf Decl. ¶ 11; Cappio Decl. ¶ 15.)  More importantly, at this stage the Court does not detect a conflict of interest between Class Counsel and the Class.  Accordingly, this factor favors preliminary approval.

### G.     Reaction of Class Members to Proposed Settlement

This factor cannot yet be assessed because the class has not yet been informed of the terms of the proposed settlement.  Before the Final Fairness Hearing, Class Counsel are ORDERED to submit a sufficient number of declarations from Class Members discussing their reactions to the Settlement Agreement.  A small number of objections at the time of

the fairness hearing may raise a presumption that the Settlement Agreement is favorable to the Class. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008).

### H.  <u>Signs of Collusion</u>

The Court finds no signs, explicit or subtle, of collusion between the parties. Of course, before final approval, the court will "scrutinize closely the relationship between attorneys' fees and benefit to the class" and will not "award[] unreasonably high fees simply because they are uncontested." *In re Bluetooth*, 654 F.3d at 948 (quotations omitted). The Court notes that the Settlement Agreement is the result of a mediation held before a private mediator (*see* Mot. at 15), which is a factor "that supports the argument that [the agreement] is non-collusive." *Lee v. JPMorgan Chase & Co.*, No. 13-511, 2015 WL 12711659, at *6 (C.D. Cal. Apr. 28, 2015).

Considering all the factors together, the Court preliminarily concludes that the Settlement Agreement is fair, reasonable, and adequate.

## IV.  <u>APPROVAL OF SETTLEMENT ADMINISTRATORS</u>

Hyundai plans to self-administer the settlement with the assistance of Sedgwick Claims Management Services, Inc. ("Sedgwick"). (Supp. Br. at 2.) Sedgwick will conduct an initial review of all claims, approving straightforward claims that have the necessary documentation. (*Id.* at 5.) For claims where there is uncertainty, Hyundai's consumer assistance department will determine whether the claim should be approved or denied. (*Id.*) Hyundai's consumer assistance department will also automatically review high-value claims above a minimum dollar threshold. (*Id.*) Hyundai points to its successful administration of the *Engine I* settlement as evidence that it will fairly administer the proposed settlement agreement, and asserts that its expertise and commitment to fostering brand loyalty will ensure efficient and fair settlement

administration.  (*Id.* at 6-7.)  Kia intends to retain Epiq Class Action & Claims Solution, Inc. ("Epiq") to administer the settlement; Epiq worked with Kia to administer the *Engine I* settlement "and will build upon the experience obtained from the *Engine I* claims administration."  (*Id.* at 7-8.)  Kia has also worked with Class Counsel and Epiq to remedy concerns regarding fire-related claims from *Engine I* and implemented changes in the proposed settlement agreement to prevent reoccurrence of such issues.  (*Id.* at 9-10.) Finally, Class Counsel will monitor claims administration: Hyundai and Kia will regularly update Class Counsel regarding notices sent and returned as undeliverable and any determinations of Exceptional Neglect.  (*Id.* at 10.)  Whenever Defendants request proof of payment from claimants due to suspicion of fraud, they must also notify Class Counsel. (*Id.*)  Defendants will provide monthly reports to Class Counsel regarding claims received, each claim's status, final determinations made, and any claims escalated to arbitration, and Defendants will provide underlying documentation for denied claims upon request so that Class Counsel can evaluate the determination.  (*Id.*)

Finding that the parties have adequately shown that the settlement will be administered fairly, competently, efficiently, and impartially, the Court approves this settlement administration arrangement.

## V.    PRELIMINARY APPROVAL OF CLASS NOTICE FORM AND METHOD

For a class certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B). However, actual notice is not required.  *See Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994).

The Settlement Agreement requires Defendants Hyundai and Kia to disseminate notice to the class by mail, email, and the dedicated settlement website no later than the Notice Date.  (Settlement Agreement § IV.B.)  In order to identify the names and addresses

of class members, Defendants or their Settlement Administrators will provide, to the extent it has not yet been done, the names and addresses of Class Vehicle owners, and Class Vehicle VINs, to R.L Polk & Company, or a similar third-party entity, who will be authorized to use that information to obtain the names and current addresses of class members through state agencies. (*Id.* § IV.C.1.)  Where notice is returned as undeliverable, "best efforts" will be used to locate the correct address through an advanced address search using Hyundai's and Kia's customer database information.  (*Id.*)  For all class members for whom Hyundai and Kia maintain email addresses, Defendants or their Settlement Administrator will provide an email containing a hyperlink to the dedicated settlement website, which will contain electronic versions of the Long Form Notice and Claim Form.  (*Id.* § IV.C.2.)  Hyundai and Kia will both maintain settlement websites which will contain:

> (i) instructions on how to obtain reimbursements; (ii) a mechanism by which Claimants can submit Claims electronically; (iii) instructions on how to contact Defendants or their Settlement Administrators for assistance with their Claims; (iv) the Long Form Notice; (v) the Pamphlet; (vi) the Claim Form; (vii) th[e] Settlement Agreement; (viii) any orders issued in th[e] Action approving or disapproving of the proposed Settlement; and (ix) any other information the Parties determine is relevant to the Settlement.

(*Id.* § IV.C.3.)  The websites will also allow visitors to enter their VINs without completing a Claim Form to determine if their vehicles are Class Vehicles.  (*Id.*)

Within 120 days of the Final Approval Date, Defendants or their Settlement Administrators will disseminate by mail and by email a copy of the company's Pamphlet to all reasonably identifiable class members who are current owners of Class Vehicles. (*Id.* § IV.E.1-2.)  These Pamphlets will also be provided to Hyundai and Kia's authorized dealerships within two weeks of the Final Approval Date with instructions to disseminate (1) the Pamphlet to anyone presenting a Class Vehicle for maintenance or service of any kind and (2) information regarding Hyundai and Kia's product improvement campaigns,

including about the free KSDS update.  (*Id.* § IV.E.3.)  Hyundai will end claims

administration no earlier than December 31, 2036, and Kia will end claims administration

no earlier than December 31, 2035.  (*Id.* § III.A.1.)

The Supreme Court has found notice by mail to be sufficient if the notice is

"reasonably calculated . . . to apprise interested parties of the pendency of the action and

afford them an opportunity to present their objections."  *Mullane v. Cent. Hanover Bank &*

*Tr. Co.*, 339 U.S. 306, 314 (1950).  The Court finds that the proposed procedure for class

notice satisfies this standard.

Under Rule 23, the notice must include, in a manner that is understandable to

potential class members: "(i) the nature of the action; (ii) the definition of the class

certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an

appearance through an attorney if the member so desires; (v) that the court will exclude

from the class any member who requests exclusion; (vi) the time and manner for

requesting exclusion; and (vii) the binding effect of a class judgment on members under

Rule 23(c)(3)."  Fed. R. Civ. P. 23(c)(2)(B).  Plaintiff provided the Court with copies of

the proposed Notices, which include this necessary information.

Beyond notice to Class Members, the Class Action Fairness Act of 2005 ("CAFA")

requires that certain government authorities receive notice of any class action settled in

federal court.  *See* 28 U.S.C. § 1715(b).  Defendants filed a Notice of Compliance with 28

U.S.C. § 1715 on October 18, 2022.  (Notice, Doc. 83; *see also* Fiereck Decl., Doc. 83-1.)

## VI.  <u>CONCLUSION</u>

For the reasons discussed above, the Court (1) conditionally certifies the class for

settlement purposes only; (2) preliminarily approves the settlement agreement; (3) names

Leslie Flaherty, Joanna Caballero, James Carpenter, Sharon Moon, Stanton Vignes, Kesha

Franklin Marbury, Christina Roos, James J. Martino, James H. Palmer, John H. Caro,

Ashley Gagas, Nicole Thornhill, Janet O'Brien, Robert Buettner, Linda Short, James

Twigger, Jennifer and Anthony DiPardo, Seane Ronfeldt, Gabrielle Alexander, Tavish Carduff, Brian Frazier, Chad Perry, William Pressley, and Jeannett Smith as Class Representatives; (4) appoints Matthew D. Schelkopf of Sauder Schelkopf and Steve W. Berman of Sobol Shapiro LLP as co-Lead Counsel, and Gretchen Freeman Cappio of Keller Rohrback LLP as Settlement Counsel; and (5) approves the form and method of the Class Notice.

The Court sets a Final Fairness Hearing for **September 8, 2023 at 10:30 a.m.** [7]

Defendants must cause individual notice to be mailed via first-class mail to all reasonably identifiable Class members by **June 7, 2023.** For purposes of identifying current and former owners and lessees of Class Vehicles, R.L. Polk & Company or a similar third-party entity is hereby authorized to provide the names and most current addresses of such owners and lessees to Hyundai and/or Kia or their designee(s). Any governmental agency in possession of names or addresses of current and former Class Vehicle owners or lessees is hereby authorized and directed to release that information to R.L. Polk & Company, or a similar third-party entity, upon request.

Class members must opt-out or make any objections to the proposed settlement on or before **August 7, 2023**.

The parties shall submit motions for final approval, as well as declarations from class members regarding their reactions to the proposed settlement, no later than **July 7, 2023**. A supplemental brief addressing any objections and summarizing settlement administration to date shall be filed no later than **August 25, 2023.** The parties should also notify the Court at that time whether any class members intend to appear at the Final Fairness Hearing.

Co-Lead and Settlement Counsel shall file a joint motion for attorneys' fees and expenses, and any service awards no later than **July 7, 2023**. Defendants shall file any

---

[7] The Court reserves the right to continue the date of the Final Fairness Hearing without further notice to Class Members.

response **seven days** thereafter, and any reply by Plaintiff must be filed within **seven days** of Defendants' response.

DATED: February 08, 2023

_____

HON. JOSEPHINE L. STATON
UNITED STATES DISTRICT JUDGE