Steve W. Berman (*pro hac vice*)
*steve@hbsslaw.com*
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Matthew D. Schelkopf (*pro hac vice*)
*mds@sauderschelkopf.com*
SAUDER SCHELKOPF LLC
1109 Lancaster Avenue
Berwyn, PA 19312
Telephone: (610) 200-0581
Facsimile: (610) 421-1326

*Co-Lead Class Counsel*

*[Additional counsel on signature page]*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re: Hyundai and Kia Engine Litigation II* | Case No. 8:18-cv-02223-JLS-JDE |
| | **PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |
| | Date: September 8, 2023 Time: 10:30 a.m. Hon. Josephine L. Staton Courtroom: 8A |

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on September 8, 2023, at 10:30 a.m. before the Honorable Josephine L. Staton in Court 8A, 8th Floor, of the United States District Court for the Central District of California, located at First Street U.S. Courthouse, 350 West 1st St., Los Angeles, CA 90012, Plaintiffs Leslie Flaherty, Joanna Caballero, Sharon Moon, Stanton Vignes, Kesha Franklin Marbury, Christina Roos, James Carpenter, James J. Martino, James H. Palmer, John H. Caro, Ashley Gagas, Nicole Thornhill, Janet O'Brien, Robert Buettner, Linda Short, James Twigger, Jennifer and Anthony DiPardo, Seane Ronfeldt, Gabrielle Alexander, Tavish Carduff, Brian Frazier, Chad Perry, William Pressley, and Jeannett Smith will and hereby do move the Court for final approval of the class action settlement and reaffirm its certification of the settlement class.

Plaintiffs' unopposed motion is based on this notice; the accompanying Memorandum of Law; the Declaration of Steve W. Berman and its exhibits; the Declaration of Matthew D. Schelkopf and its exhibits; the Declaration of Gretchen Freeman Cappio; the Declaration of Adam R. Gonnelli and its exhibits; the Proposed Order Granting Plaintiffs' Motion for Final Approval of Class Action Settlement; and all other papers filed and proceedings had in this Action.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on June 30, 2023.

DATED: July 7, 2023

Respectfully submitted,

/s/ Steve W. Berman
Steve W. Berman (*pro hac vice*)
1301 Second Avenue, Suite 2000
HAGENS BERMAN SOBOL SHAPIRO LLP
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Matthew D. Schelkopf (*pro hac vice*)
Joseph B. Kenney
SAUDER SCHELKOPF LLC
1109 Lancaster Avenue
Berwyn, PA 19312
Telephone: (610) 200-0581
Facsimile: (610) 421-1326
mds@sauderschelkopf.com
jbk@sauderschelkopf.com

*Co-Lead Class Counsel*

Gretchen Freeman Cappio (*pro hac vice*)
Ryan McDevitt (*pro hac vice*)
Adele Daniel
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Telephone: (206) 623-1900
Facsimile: (206) 623-3384
gcappio@kellerrohrback.com
rmcdevitt@kellerrohrback.com
adaniel@kellerrohrback.com

*Settlement Counsel*

Bonner C. Walsh (*pro hac vice*)
WALSH PLLC
1561 Long Haul Road
Grangeville, ID 83530
Telephone: (541) 359-2827
Facsimile: (866) 503-8206
bonner@walshpllc.com

Adam Gonnelli (*pro hac vice*)
LAW OFFICE OF ADAM R. GONNELLI, L.L.C.
707 Alexander Road
Bldg. 2, Suite 208
Princeton, NJ, 08540
Telephone: (917) 541-7110
Facsimile: (315) 446-7521
adam@arglawoffice.com

Rachel E. Fitzpatrick (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
11 W. Jefferson Street, Suite 1000
Phoenix, AZ 85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
rachelf@hbsslaw.com

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................. 1

II. FACTUAL BACKGROUND .............................................................. 2

   A.  Plaintiffs' Allegations about the Engine Defect ......................... 2

   B.  The History of the Litigation ...................................................... 3

   C.  Settlement Negotiations and Global Resolution of the
       Litigation .................................................................................... 4

   D.  Preliminary Approval of the Settlement ..................................... 5

   E.  The Settlement Benefits and Their Value to the Class ............... 6

       1.  15-Year/150,000-Mile Extended Warranty
           Coverage and Free Inspection ........................................... 9

       2.  Recalls and Product Improvements ................................. 11

       3.  Repair Reimbursements .................................................... 12

       4.  Repair-Related Transportation and Towing
           Reimbursements ............................................................... 13

       5.  Inconvenience Payments for Repair Delays ..................... 14

       6.  Incidentals for Qualifying Engine Failure or Engine
           Fire ................................................................................... 15

       7.  Lost Value for Sold or Traded-In Vehicles ..................... 16

       8.  Vehicles Destroyed by Engine Fire ................................. 17

       9.  Rebate Program ................................................................ 17

   F.  Settlement Notice ....................................................................... 18

III. ARGUMENT ...................................................................................... 19

A.   The Court Should Reaffirm Certification of the Settlement Class ................................................................ 19

B.   The Settlement Is Fair, Reasonable, and Adequate ............................ 20

   1.   The Strength of Plaintiffs' Case .................................................. 21

   2.   The Risk, Expense, Complexity, and Duration of Further Litigation .......................................................................... 23

   3.   The Risk of Maintaining the Class Action Throughout Trial ............................................................................ 24

   4.   The Amount and Type of Relief Offered in the Settlement .................................................................................. 25

   5.   The Discovery Completed and Stage of the Proceedings ................................................................................. 27

   6.   The Experience and Views of Counsel ...................................... 28

   7.   The Presence of a Governmental Participant ............................ 29

   8.   The Reaction of the Class ............................................................ 29

   9.   The Settlement Is Not the Product of Collusion....................... 30

C.   Notice Was Given to All Class Members in a Reasonable Manner ...................................................................................... 32

IV.   CONCLUSION ........................................................................... 33

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Acosta v. Trans Union, LLC*,
  243 F.R.D. 377 (C.D. Cal. 2007) ........................................................ 24

*In re Bluetooth Headset Prod. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011)........................................................ 21, 31

*Bravo v. Gale Triangle, Inc.*,
  2017 WL 708766 (C.D. Cal. Feb. 16, 2017)...................................... 31

*Buettner v. Hyundai Motor America, Inc. et al.*,
  No. 8:21-cv-01057-JLS-JDE (C.D. Cal.) ........................................ 4, 5

*Casey v. Doctor's Best, Inc.*,
  2022 WL 1726080 (C.D. Cal. Feb. 28, 2022)................................ 24, 32

*Chambers v. Whirlpool Corp.*,
  214 F. Supp. 3d 877 (C.D. Cal. 2016)................................................ 20

*Chieco, et al. v. Kia Motors America, Inc., et al.*,
  No. 8:21-cv-00854-JLS-JDE (C.D. Cal.), ........................................... 4

*Churchill Vill., L.L.C. v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004) ............................................................. 33

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992)............................................................ 20

*Clesceri v. Beach City Investigations & Protective Servs., Inc.*,
  2011 WL 320998 (C.D. Cal. Jan. 27, 2011)....................................... 27

*Contreras v. Armstrong Flooring*,
  2021 WL 4352299 (C.D. Cal. July 6, 2021) ...................................... 31

*Correa v. Zillow, Inc.*,
  2021 WL 4925394 (C.D. Cal. June 14, 2021)..................................... 27

*Flaherty et al. v. Hyundai Motor Company, et al.*,
  No. 8:18-cv-02223-JLS-JDE (C.D. Cal.) .................................. 3, 4, 11

*In re Gen. Motors Corp. Pickup Truck Fuel Tank Prods. Liab. Litig.*,
   1993 WL 204116 (E.D. Pa. June 10, 1993) ....................................................... 29

*Hardmon v. Ascena Retail Grp., Inc.*,
   2022 WL 17572098 (C.D. Cal. Nov. 29, 2022) ................................................ 29

*In re Hyundai & Kia Fuel Econ. Litig.*,
   926 F.3d 539 (9th Cir. 2019) (en banc) ............................................................ 20

*In re: Hyundai and Kia Engine Litig.*,
   No. 8:17-cv-00838 (C.D. Cal.) ................................................................. *passim*

*In re Immune Response Sec. Litig.*,
   497 F. Supp. 2d 1166 (S.D. Cal. 2007) ............................................................ 29

*Kissel v. Code 42 Software, Inc.*,
   2017 WL 10560526 (C.D. Cal. Oct. 4, 2017) .................................................... 32

*Lane v. Facebook, Inc.*,
   696 F.3d 811 (9th Cir. 2012) ............................................................................. 20

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998) .......................................................................... 27

*Marbury et al. v. Hyundai Motor America et al.*,
   No. 8:21-cv-00379-JLS-JDE (C.D. Cal.) ....................................................... 4, 5

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ...................................................................... 24

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982) ...................................................................... 20, 27

*In re Pac. Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ............................................................................... 29

*Rannis v. Recchia*,
   380 F. App'x 646 (9th Cir. 2010) ...................................................................... 32

*Ruiz v. JCP Logistics, Inc.*,
   2016 WSL 6156212 (C.D. Cal. Aug. 12, 2016) ........................................... 23, 24

*Short et al. v. Hyundai Motor Company, et al.*,
   No. 2:19-cv-00318-JLR (W.D. Wash.) .......................................................... *passim*

*Snider et al. v. Hyundai Motor America, et al.*,
   No. 2:19-cv-00371/3:19-cv-05193-JLR (W.D. Wash.) ......................................3

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003).........................................................................20, 21

*Thornhill et al. v. Hyundai Motor Company et al.*,
   No. 8:21-cv-00481-JLS-JDE (C.D. Cal.) ..........................................................4

*Wallace v. Countrywide Home Loans, Inc.*,
   2015 WL 13284517 (C.D. Cal. Apr. 17, 2015)...................................................31

*Zubia v. Shamrock Foods Co.*,
   2017 WL 10541431 (C.D. Cal. Dec. 21, 2017) ..................................................24

## I.     INTRODUCTION

Plaintiffs seek final approval of a class settlement benefitting the owners and lessees of nearly two million Hyundai and Kia vehicles equipped with Gamma and Nu gasoline direct injection ("GDI") engines and Theta II multipoint fuel injection ("MPI") engines that, due to an alleged engine defect, are susceptible to catastrophic engine failure and fire while in operation. The Settlement[1] was achieved after twenty months of formal arm's-length negotiations and with the assistance of Hon. Edward A. Infante (Ret.), and thoroughly informed by Class Counsel's fulsome and independent pre-suit investigations, their experience litigating and settling *Engine I*, the extensive litigation in *Short*, and the confirmatory discovery conducted here.

The Settlement provides an extended warranty that covers the engine defect for the expected useful life of the vehicle, free installation of the Knock Sensor Detection System ("KSDS") to detect and prevent engine failure and fire, a free diagnostic inspection, reimbursement for certain out-of-pocket repairs, costs, and incidentals, goodwill payments, a rebate program, and reimbursement for sold or traded-in Class Vehicles[2] with a failed engine and Class Vehicles destroyed by fire. These Settlement benefits are conservatively estimated to be worth $934 million. *See* Declaration of Adam R. Gonnelli ("Gonnelli Decl."), Ex. 1 (Expert Report and Opinion of Susan K. Thompson ("Thompson Report")).

After the Court preliminarily approved the Settlement on February 8, 2023, notice was sent to the Class via U.S. Mail and email, and dedicated settlement websites were established. The class member response to the Settlement has been overwhelmingly positive with 7,009 Settlement claims filed as of June 30, 2023; 577

---

[1] The capitalized terms herein are defined in the Settlement Agreement ("SA"). Doc. 79-2.

[2] The Class Vehicles are listed in section II.E *infra*.

class member declarations[3] submitted in support of the Settlement; and only 3
objections received at the time of the filing of this motion. *See* Declaration of
Matthew D. Schelkopf ("Schelkopf Decl.") ¶ 20, Ex. A (Declaration of Amanda
Sternberg ("Sternberg Decl.")) ¶ 20; Ex. B (Declaration of Elizabeth Fernandez
("Fernandez Decl.")) ¶ 14; Declaration of Steve W. Berman Decl. ("Berman Decl.")
¶¶ 14, 17. Given the results achieved, the reaction of the Class, and the Ninth
Circuit's factors for approval of class action settlements, the Settlement is fair,
reasonable, and adequate, and Plaintiffs respectfully request the Court grant final
approval.

## II.    FACTUAL BACKGROUND

### A.    Plaintiffs' Allegations about the Engine Defect

This litigation and Settlement derive from a similar alleged engine defect that
was the subject of *In re: Hyundai and Kia Engine Litig.*, No. 8:17-cv-00838 (C.D.
Cal.) ("*Engine I*").[4] The alleged defect causes premature connecting rod bearing wear
in affected engines, which, if manifested and left unremedied, results in catastrophic
engine failure during operation, and in some cases engine fire (the "Engine Defect").

In *Engine I*, Hyundai and Kia settled class claims involving Theta II GDI
engines, but opposed Plaintiffs' allegations that other Hyundai and Kia vehicles with
different engines were impacted by the Engine Defect. Based on their thorough
preliminary investigations and the ongoing complaints received from consumers
about engine failures and fires in other engines, Class Counsel continued to
investigate and pursue these claims even while settling *Engine I*. Those efforts led to
the prosecution of this Action and produced the Settlement here, which resolves class
claims about the Engine Defect in Theta II MPI, Gamma GDI, and Nu GDI engines.

---

[3] Only 14 declarations did not support the Settlement. Two of these declarants
submitted two declarations each.
[4] *Engine I* was also presided over by Judge Staton, who granted final approval to
its settlement in May 2021.

### B.     The History of the Litigation

On December 14, 2018, Plaintiff Flaherty and other named plaintiffs who owned or leased Hyundai and Kia vehicles equipped with Gamma GDI and Theta II GDI engines filed the proposed nationwide class action *Flaherty et al. v. Hyundai Motor Company, et al.*, No. 8:18-cv-02223-JLS-JDE (C.D. Cal.). *Flaherty* was amended twice, on January 10, 2019, and May 1, 2019, to add Plaintiffs Carpenter, Caballero, Moon, and Vignes, who owned or leased Hyundai and Kia vehicles equipped with Gamma and Nu GDI engines, along with other plaintiffs not subject to this proposed Settlement. The claims of the *Flaherty* plaintiffs with Theta II GDI engines were settled as part of *Engine I*, and the remaining litigation was stayed pending that settlement, including claims concerning the Gamma and Nu GDI engines.

On March 4, 2019, Plaintiff Linda Short filed the proposed nationwide class action *Short et al. v. Hyundai Motor Company, et al.*, No. 2:19-cv-00318-JLR (W.D. Wash.), and following consolidation with a related action (*Snider et al. v. Hyundai Motor America, et al.*, No. 2:19-cv-00371/3:19-cv-05193-JLR (W.D. Wash.)), Plaintiffs Short, Twigger, Jennifer and Anthony DiPardo, Seane Ronfeldt, Gabrielle Alexander, Tavish Carduff, Brian Frazier, Chad Perry, William Pressley, and Jeannett Smith filed a consolidated amended complaint in *Short* on May 4, 2020. These actions also included allegations that the Gamma and Nu GDI and Theta II MPI engines suffered from the same defect as the Theta II GDI engines. Defendants vigorously opposed these allegations, and between 2019 and 2021, the *Short* case was litigated extensively. This included three successive motions to dismiss and active discovery, including depositions and expert testimony continuing right up until the start of global settlement negotiations among counsel in all pending actions (see section II.C *infra*).

On February 26, 2021, Plaintiffs Marbury, Roos, Palmer, Martino, Caro, and Gagas filed the proposed nationwide class action *Marbury et al. v. Hyundai Motor*

*America et al.*, No. 8:21-cv-00379-JLS-JDE (C.D. Cal.). On March 12, 2021, Plaintiffs Thornhill and O'Brien filed the proposed nationwide class action *Thornhill et al. v. Hyundai Motor Company et al.*, No. 8:21-cv-00481-JLS-JDE (C.D. Cal.). On June 15, 2021, Plaintiff Buettner filed the proposed nationwide class action *Buettner v. Hyundai Motor America, Inc. et al.*, No. 8:21-cv-01057-JLS-JDE (C.D. Cal.). Each of these actions alleged the Engine Defect in Hyundai and Kia vehicles with Theta II MPI engines.

On September 8, 2021, the Court ordered the *Flaherty*, *Marbury*, *Thornhill*, and *Buettner* cases consolidated as *In re: Hyundai and Kia Engine Litigation II*, No. 8:18-cv-02223-JLS-JDE (C.D. Cal.) ("*Engine II*"). *Flaherty*, Doc. 55. On November 8, 2021, Plaintiffs in *Engine II* filed a consolidated complaint. *Engine II*, Doc. 57. On August 25, 2022, the *Short* case was consolidated with *Engine II* (Doc. 71), and on September 13, 2022, Plaintiffs filed an amended consolidated complaint (Doc. 72). On May 31, 2022, and September 22, 2022, respectively, the Court related and then consolidated *Chieco, et al. v. Kia Motors America, Inc., et al.*, No. 8:21-cv-00854-JLS-JDE (C.D. Cal.), with *Engine II*.[5] *Chieco*, Doc. 98; *Engine II*, Doc. 77.

**C.     Settlement Negotiations and Global Resolution of the Litigation**

While litigating *Engine I*, the parties agreed to stay the remaining *Flaherty* claims alleging that Gamma and Nu GDI engines also contained the Engine Defect because the parties strongly disagreed about which engines were afflicted. After the May 2021 final approval of *Engine I*'s settlement, the remaining *Flaherty* plaintiffs reinitiated this litigation with Defendants. Around the same time and based on their independent investigations into different engine types, Class Counsel filed the related proposed class actions *Marbury*, *Thornhill*, and *Buettner*, which expanded the scope of the Engine Defect litigation to include Hyundai and Kia vehicles equipped with

---

[5] Since *Chieco*'s relation and consolidation to *Engine II*, counsel for the *Chieco* Plaintiffs have not communicated with Class Counsel about litigating or resolving class-wide claims for any overlapping proposed Class Vehicles.

Theta II MPI engines. Class Counsel and Settlement Counsel agreed to work together to cooperatively litigate the pending cases, which led to their consolidation as *Engine II*, and the parties continued their settlement discussions.

From December 2020 to February 2022, Class Counsel and Settlement Counsel met and conferred with Defendants' counsel on multiple occasions regarding the *Engine II* allegations, Defendants' defenses, and potential resolution. These meetings culminated in a mediation session before the Honorable Edward Infante (Ret.) of JAMS on February 22, 2022. Informed by the discovery and comprehensive expert reports from the *Short* litigation, Plaintiffs remained steadfast in their position that the alleged Engine Defect was more widespread than Defendants maintained. At mediation, the parties reached agreement on the overall settlement structure but not all the specific details, and so they continued to negotiate regularly through August 2022, when the parties ultimately agreed to the proposed Settlement (see section II.E *infra*).

To ensure the Settlement was fair, reasonable, and adequate, Class Counsel immediately began confirmatory discovery. On June 17, 2022, Plaintiffs served written discovery on Defendants. Defendants responded to Plaintiffs' requests on August 19, 2022, and began producing documents the week of August 22, 2022. The parties also negotiated a protective order, which Magistrate Judge Early entered on September 14, 2022. Doc. 75. Class Counsel reviewed more than 43,000 pages of documents, the most critical of which were hundreds of Korean technical documents detailing design and manufacturing issues regarding the Defect that required translation. Class Counsel deposed Defendants' corporate designees, Dr. Hongwook Lee and Dr. Joon Dong Oh, on December 6 and 8, 2022, respectively.

## D.   Preliminary Approval of the Settlement

On September 26, 2022, Plaintiffs moved for preliminary approval of the Settlement. Doc. 79. On December 14, 2022, the Court requested supplemental

briefing to: (1) identify the proposed settlement administrators and their qualifications, and if Defendants planned to self-administer, whether they could do so fairly, competently, efficiently, and impartially; (2) agree to provide an electronic opt-out procedure or justify the use of regular mail for opting out; and (3) explain the substantive differences between this Settlement and the *Engine I* settlement. Doc. 86. On January 13, 2023, the parties filed a joint supplemental brief in support of preliminary approval of the Settlement that addressed the proposed settlement administrators, opt-out procedures, and the material differences between the two settlements. Doc. 94. On February 8, 2023, the Court issued an Order, *inter alia*, (1) conditionally certifying the Settlement Class and preliminarily approving the Settlement; (2) setting a final fairness hearing for September 8, 2023, at 10:30 a.m.; (3) directing mail notice to all reasonably identifiable class members by June 7, 2023; (4) setting an August 7, 2023 deadline for all opt-outs and objections; and (5) setting deadlines for final approval, attorneys' fees and costs, and other supplemental briefing. Doc. 99.

**E.    The Settlement Benefits and Their Value to the Class**

If approved, the Settlement provides substantial benefits to the following Class: All owners and lessees of a Class Vehicle who purchased or leased the Class Vehicle in the United States, including those that were purchased while the owner was abroad on active U.S. military duty, but excluding those purchased in U.S. territories or abroad.[6]

---

[6] Excluded from the claims of the Class (and not released by this Settlement) are all claims for death, personal injury, property damage (other than damage to a Class Vehicle that is the subject of a Qualifying Repair), and subrogation. Also excluded from the Class are (a) HMA, HMC, KC, and KA; (b) any affiliate, parent, or subsidiary of HMA, HMC, KC, or KA; (c) any entity in which HMA, HMC, KC, or KA has a controlling interest; (d) any officer, director, or employee of HMA, HMC, KC, or KA; (e) any successor or assign of HMA, HMC, KC, or KA; (f) any judge to whom this Action is assigned, the judge's spouse or partner, and all persons within the third degree of relationship to either of them, as well as the spouses of such persons; (g) individuals and/or entities who validly and timely opt-out of the

The Class Vehicles include the following vehicle models that were originally equipped or replaced with the respective corresponding genuine engine type within Original Equipment Manufacturer ("OEM") specifications.

| MODEL YEAR | MODEL |
|---|---|
| 2010–2012 | Hyundai Santa Fe vehicles equipped with a Theta II 2.4-liter MPI engine |
| 2011–2015 | Hyundai Sonata Hybrid (HEV) vehicles equipped with a Theta II 2.4-liter MPI Hybrid engine |
| 2016-2019 | Hyundai Sonata Hybrid/Plug-In (HEV/PHEV) vehicles equipped with a Nu 2.0 GDI Hybrid engine |
| 2010–2013 | Hyundai Tucson vehicles equipped with a Theta II 2.4-liter MPI engine |
| 2014–2021 | Hyundai Tucson vehicles equipped with a Nu 2.0 GDI engine |
| 2014 | Hyundai Elantra Coupe vehicles equipped with a Nu 2.0 GDI engine |
| 2014–2016 | Hyundai Elantra vehicles equipped with a Nu 2.0 GDI engine |
| 2014–2020 | Hyundai Elantra GT vehicles equipped with a Nu 2.0 GDI engine |
| 2012–2017 | Hyundai Veloster vehicles equipped with a Gamma 1.6-liter GDI engine |
| 2010–2013 | Kia Forte vehicles equipped with a Theta II 2.4-liter MPI engine |
| 2010–2013 | Kia Forte Koup vehicles equipped with a Theta II 2.4-liter MPI engine |

settlement; (h) consumers or businesses that have purchased Class Vehicles previously deemed a total loss, salvaged, branded, or obtained from a junkyard (subject to verification through Carfax or other means); (i) vehicle owners or lessees who rent or previously rented the Class Vehicle for use by third-party drivers, including leasing companies; (j) individuals and commercial entities engaged in the business of buying, selling, or dealing in motor vehicles, including new and used motor vehicle dealerships, franchisees, vehicle brokers, or automobile auction houses and individuals employed by or acting on behalf of such businesses; (k) banks, credit unions or other lienholders; and (l) current or former owners of a Class Vehicles who previously released their claims in an individual settlement with HMA, HMC, KC, or KA with respect to the issues raised the Action.

| MODEL YEAR | MODEL |
|---|---|
| 2014–2018 | Kia Forte vehicles equipped with a Nu 2.0 GDI engine |
| 2014–2016 | Kia Forte Koup vehicles equipped with a Nu 2.0 GDI engine |
| 2011–2016 | Kia Optima Hybrid (HEV) vehicles equipped with a Theta II 2.4-liter MPI Hybrid engine |
| 2017–2020 | Kia Optima Hybrid/Plug-In (HEV/PHEV) vehicles equipped with a Nu 2.0 GDI Hybrid engine |
| 2011–2013 | Kia Sorento vehicles equipped with a Theta II 2.4-liter MPI engine |
| 2012–2016 | Kia Soul vehicles equipped with a Gamma 1.6-liter GDI engine |
| 2014–2019 | Kia Soul vehicles equipped with a Nu 2.0 GDI engine |
| 2011–2013 | Kia Sportage vehicles equipped with a Theta II 2.4-liter MPI engine. |

There are 1,930,208 Class Vehicles, excluding those destroyed or with branded titles (indicating the vehicle suffered significant damage). Gonnelli Decl. ¶¶ 5-6, Ex. 1 (Thompson Report) ¶ 36.

Class Counsel retained expert Susan Thompson, a partner at economic consulting firm Hemming Morse, to value the Settlement because, unlike a common fund settlement, many of its benefits require expertise to quantify with precision. Gonnelli Decl., Ex. 1 (Thompson Report). Because the claims deadline for some of the Settlement's readily calculable benefits, like cash reimbursement for repairs and towing, does not pass until after final approval, Thompson relied on the claims rates from the *Engine I* settlement to yield reasonable estimates for the Settlement here.

### 1.      15-Year/150,000-Mile Extended Warranty Coverage and Free Inspection

All Class Vehicles that timely complete the KSDS software update will receive a 15-year or 150,000-mile Extended Warranty[7] covering all costs associated with inspections and repairs, including replacement parts, labor, diagnoses, and mechanical or cosmetic damage caused by connecting rod bearing failure. Doc. 79-2, SA § II.A. Further, for ninety (90) days following the Final Approval Date, all Class Vehicles within the 15-year or 150,000-mile period that have not received a recall inspection[8] are eligible to schedule a free inspection and, if necessary, obtain Extended Warranty repairs regardless of transfer in ownership or lease or any prior repairs. *Id.* Defendants will also provide a comparable class of loaner vehicle to class members during Extended Warranty repairs, and if no loaner vehicle is reasonably available through Defendants' authorized dealerships, the class member is eligible for reimbursement up to $80 per day for reasonable transportation expenses incurred until the Extended Warranty repairs are completed. *Id.*

The Extended Warranty providing coverage against the Engine Defect for the expected useful life of the Class Vehicles (15 years or 150,000 miles) is valued at $786,947,007. Gonnelli Decl., Ex. 1 (Thompson Report) ¶ 43. Because Hyundai and Kia dealers do not offer a warranty that permits a direct price comparison to the Extended Warranty, the value of the Extended Warranty was derived from the MSRPs provided by Kia. First, Thompson reviewed the MSRP data and compared it on an engine-by-engine basis to the Hyundai Class Vehicles. *Id.* ¶ 42. This yielded an across-the-board set of comparable MSRPs. These values were conservatively extrapolated from ten to fifteen years. *Id.* ¶ 41. Thompson then used the percentage

---

[7] Claimants may only be denied Extended Warranty coverage for two reasons: Exceptional Neglect or KSDS Installation Neglect. *See id.* §§ I.J. and I.Q. KSDS installation is not a prerequisite for Extended Warranty coverage for Class Vehicles subject to recall. *See id.* § I.Q.

[8] Previous recall campaigns are discussed at section II.E.2 *infra*.

of the powertrain warranty that covers the short block as provided by Defendants (Gonnelli Decl. ¶ 11), to estimate the prices a consumer would be charged in the retail market for the Extended Warranty for each model Class Vehicle. Thompson Report ¶ 41.

Next, Thompson calculated the number of Class Vehicles eligible for Extended Warranty benefits. First, Thompson deducted the estimated number of Class Vehicles in service for more than 150,000 miles (which are not eligible for the Extended Warranty), which yielded a pool of 1,825,127 Class Vehicles. *Id.* ¶ 43. Second, Thompson deducted the 529,950 previously recalled Class Vehicles,[9] which do not require KSDS installation as a prerequisite to Extended Warranty benefits. This yielded a non-recall population of 1,295,177 Class Vehicles. *Id.* (Table 3). Third, Thompson applied the KSDS installation rates from the *Engine I* litigation to the non-recalled population and added the recalled population back for a total of 1,686,342 Class Vehicles eligible for the Extended Warranty. Multiplying the number of eligible Class Vehicles by the estimated retail warranty prices yielded a value of $436,015,591 for Kia Class Vehicles and $350,931,415 for Hyundai Class Vehicles, for a total of $786,947,007.

The value of the free inspection is estimated at $65,792,453. The value was calculated based on the amount of labor for which a consumer would be charged for the inspection at a Hyundai or Kia dealership. *Id.* ¶¶ 48, 52. The amount of time to perform each inspection depends on how extensive the inspection needs to be before a connecting rod bearing problem is either located or ruled out. Hyundai lists nine possible iterations of diagnostic inspections in its April 28, 2022 *Service Campaign* issued to dealers. Gonnelli Decl. ¶ 15 and Ex. 9 at 8. Each of these inspections is associated with specific dealer labor hours, ranging from 0.2 to 1.7 hours. Hyundai estimated the percentage of Class Vehicles that would undergo each type of

---

[9] 224,463 Hyundai Class Vehicles and 305,487 Kia Class Vehicles were subject to the recalls. See NHTSA Recall Nos. 20V746, 20V750, 21V727 and 21V844.

inspection and used a projected compliance rate for the free inspection based on its experience with the recalls. Thompson Report ¶¶ 46, 50.

To estimate the value of the free inspections, Thompson first calculated the number of Class Vehicles eligible for the free inspections by removing the Class Vehicles that had been in service for over 150,000 miles. Gonnelli Decl. ¶¶ 7-8; Thompson Report at Schedule 3. Thompson next applied Hyundai's compliance rate estimate to the eligible Hyundai and Kia Class Vehicle populations to project the number of Class Vehicles that would receive the inspection.[10] Thompson Report ¶¶ 46, 50. For Hyundai, Thompson calculated a weighted average of the amount of labor each inspection would require based on Hyundai's *Service Campaign* and the percentage of Class Vehicles projected to undergo each type of inspection. *Id.* ¶ 45. Kia did not have a similar breakdown of inspection types but provided an estimate of its average inspection labor. Gonnelli Decl. ¶ 18. Thompson then multiplied the average national hourly labor rates of Hyundai and Kia, respectively, to the total estimated hours projected for Hyundai Class Vehicle inspections. These calculations resulted in projected values of $33,049,867 for Hyundai inspections and $32,742,585 for Kia inspections, for a total of $65,792,453. Thompson Report ¶¶ 48, 52.

### 2. Recalls and Product Improvements

In December 2020, in the wake of continuing litigation and discussions among the parties in both *Flaherty* and *Short*, Hyundai recalled certain model year 2011-2013, 2016 Sonata Hybrid, 2012 Santa Fe, and 2015-2016 Veloster vehicles under NHTSA Recall No. 20V746, and Kia recalled certain model year 2012-2013 Sorento, 2012-2015 Forte and Forte Koup, 2011-2013 Optima Hybrid, 2014-2015 Soul, and 2012 Sportage vehicles under NHTSA Recall No. 20V750. Then in September and October 2021, respectively, Hyundai recalled certain model year 2017 Tucson and 2017 Sonata Hybrid vehicles under NHTSA Recall No. 21V727, and Kia recalled

---

[10] Kia did not have a corresponding figure.

certain model year 2017-2018 Optima Hybrid and Optima Hybrid Plug-In vehicles under NHTSA Recall No. 21V844.

Under the Settlement, all Class Vehicles are eligible for the KSDS software update, and as of October 2021, Defendants initiated these product improvement campaigns for the Class Vehicles. Doc. 79-2, SA § II.B. The KSDS is designed to monitor and detect premature connecting rod bearing wear and alert the driver before it results in engine seizure or fire. *Id.* § I.P. Defendants acknowledge these recalls and the KSDS represent part of the consideration to the Class under the Settlement. *Id.* § II.B.

Although the KSDS installation is free to class members, the labor required to install it is valued at $70,701,739. Gonnelli Decl., Ex. 1 (Thompson Report) ¶ 58. As in *Engine I*, the installation here takes 0.3 hours of labor, but the labor rates of Hyundai and Kia have increased from *Engine I*. Gonnelli Decl. ¶¶ 25-26. Thompson multiplied the updated hourly labor rates by the time expended for the installation to calculate the respective costs for the KSDS installation. Thompson Report ¶ 58. She then multiplied the KSDS compliance rates from *Engine I* by the total Class Vehicle population (1,930,208), which netted 1,722,147 Class Vehicles estimated to obtain the KSDS for a projected value of $70,951,740. *Id.* at Table 5.

### 3. Repair Reimbursements

Class members who obtained Qualifying Repairs for their Class Vehicles within the 15 years or 150,000 miles period and before receiving Settlement notice are eligible for full cash reimbursement, regardless of whether the Class member is an original owner, lessee, or subsequent purchaser, whether the repair was made at an authorized Hyundai or Kia dealership or third-party repair shop, and whether the repair was completed before or after the recall campaigns identified above.[11] Doc. 79-2, SA § II.C. Class members are eligible for repair reimbursements even if

---

[11] Claimants may be denied repair reimbursement for Exceptional Neglect. Doc. 79-2, SA § I.J.

Defendants initially denied warranty coverage for alleged failure to properly service or maintain the Class Vehicle. *Id.* Those who presented their Class Vehicle to an authorized dealership and were denied a warranty repair before receiving notice of this Settlement and then obtained their repair elsewhere are also eligible for a $150 goodwill payment. *Id.* To receive reimbursement, Claimants must submit their claim form and required documentation within ninety (90) days of the Final Approval Order. *Id.*

Although Class members have begun submitting Settlement claims, it is premature to calculate Defendants' payments to class members under this Settlement benefit. However, based on the approved repair reimbursement claims data in *Engine I*, Thompson projects Hyundai Class members will receive $608,973 in reimbursement for prior dealer repairs and $2,521,319 for prior third-party repairs, totaling $3,130,292. Gonnelli Decl., Ex. 1 (Thompson Report) ¶ 62, Table 6. Similarly, Kia class members are projected to receive $1,002,571 in reimbursement for prior dealer repairs and $3,210,213 for prior third-party repairs, totaling $4,212,784. *Id.* ¶ 66, Table 7. In addition, goodwill payments for repair denials are projected to be $23,717 for Kia, and $26,296 for Hyundai. *Id.* The total reimbursement for prior repairs, including goodwill payments, is projected to be $7,393,089 for the Class. *Id.*

### 4. Repair-Related Transportation and Towing Reimbursements

Class members may also seek cash reimbursement for all towing or other out-of-pocket expenses reasonably related to obtaining a Qualifying Repair, and up to $80 per day for transportation expenses if a loaner vehicle was not originally provided by Defendants, so long as the Qualifying Repair occurs within the 15 years or 150,000 miles period.[12] Doc. 79-2, SA § II.D. This reimbursement is limited to no

---

[12] Claimants may be denied reimbursement for Exceptional Neglect or KSDS Installation Neglect. Doc. 79-2, SA § II.D. KSDS Installation Neglect for purposes

more than 15 days before delivery of the Class Vehicle to the dealership or repair shop for the Qualifying Repair, and up to 3 business days after the Claimant was notified their vehicle was ready to be picked up. *Id.* Lost wages or other consequential damages are not reimbursable. *Id.* To receive reimbursement, Claimants must submit their claim form and required documentation within the later of ninety (90) days of the Final Approval Order (for a Qualifying Repair occurring on or before June 7, 2023) or the date the expenses were incurred or paid (for a Qualifying Repair occurring after June 7, 2023). *Id.*

Like the repair reimbursement claims, it is premature to calculate Defendants' payments to class members for out-of-pocket repair-related towing and transportation expenses under this Settlement benefit. Based on the claims data in *Engine I* and using the ratio of the number of Class Vehicles in *Engine I* and *Engine II*, the projected reimbursement for towing and transportation expenses is at least $737,635 for Hyundai Class Vehicles and $1,349,343 for Kia Class Vehicles, for a total of $2,086,978. Gonnelli Decl., Ex. 1 (Thompson Report) ¶¶ 62, 66. This estimate is conservative, because it does not account for the doubling of transportation reimbursement from $40 per day in *Engine I* to $80 per day in *Engine II*. The claims reporting data in *Engine I* did not separate towing and rental expenses, so Thompson was not able to reliably project the increased value of the rental and transportation reimbursement. *Id.* at fns. 68, 74.

### 5.   Inconvenience Payments for Repair Delays

Class members inconvenienced by repair delays exceeding sixty (60) days from an authorized Hyundai or Kia dealership may seek a goodwill payment based on the total cumulative delay length, so long as the Qualifying Repair occurs within

---

of this Settlement benefit means the class member's failure to have the KSDS installed by November 4, 2023. *Id.* § I.Q.

the 15 years or 150,000 miles period.[13] Doc. 79-2, SA § II.E. For repair delays lasting between sixty-one (61) and one hundred and eighty (180) days, class members are eligible for a $75 goodwill payment. *Id.* For repair delays lasting one hundred and eighty-one (181) days or longer, class members are eligible for a $100 goodwill payment plus an additional $100 payment for each 30-day period of delay thereafter. *Id.* To receive this payment, Claimants must submit their claim form and required documentation within ninety (90) days of the Final Approval Order (for a Qualifying Repair occurring on or before June 7, 2023) or the date the repair was completed (for a Qualifying Repair occurring after June 7, 2023).

To project the value of the inconvenience payments, Thompson examined the *Engine I* claims data and projected the number of claims based on the reported days of repair delay in *Engine I* to the smaller Class Vehicle population and increased the benefit schedule for *Engine II,* which yielded a total value of $44,571. Gonnelli Decl., Ex. 1 (Thompson Report) at Schedules 5 and 6.

### 6.   Incidentals for Qualifying Engine Failure or Engine Fire

Class members who experience a Qualifying Failure or Qualifying Fire while far from home may seek additional reimbursement for other reasonably related transportation, lodging, and meal expenses.[14] Doc. 79-2, SA § II.F. Claimants will receive reimbursement of full towing expenses. *Id.* In addition, where the Qualifying Failure or Qualifying Fire occurred within one hundred and fifty (150) miles of the class member's nearest residence, they are eligible for reimbursement of transportation expenses incurred on the date of the Qualifying Failure or Qualifying

---

[13] Claimants may be denied reimbursement for Exceptional Neglect or KSDS Installation Neglect. Doc. 79-2, SA § II.E. KSDS Installation Neglect for purposes of this Settlement benefit means the Class member's failure to have the KSDS installed by November 4, 2023. *Id.* § I.Q.

[14] Claimants may be denied reimbursement for Exceptional Neglect or KSDS Installation Neglect. Doc. 79-2, SA § II.F. KSDS Installation Neglect for purposes of this Settlement benefit means the Class member's failure to have the KSDS installed by November 4, 2023. *Id.* § I.Q.

Fire up to $125. *Id.* For a Qualifying Failure or Qualifying Fire occurring more than one hundred and fifty (150) miles from the class member's nearest residence at the time, they are eligible for reimbursement of transportation, lodging, and reasonable meal expenses incurred for a maximum of three days following the Qualifying Failure or Qualifying Fire of up to $300 for the first day, $200 for the second day, and $100 for the third day. *Id.* To be eligible for these benefits, the Qualifying Failure or Qualifying Fire must occur within the 15 years or 150,000 miles period. *Id.* Lost wages or other consequential damages are not reimbursable. *Id.* To receive reimbursement, Claimants must submit their claim form and required documentation within ninety (90) days of the Final Approval Order (for a Qualifying Failure or Qualifying Fire occurring on or before June 7, 2023) or the date the repair was completed (for a Qualifying Failure or Qualifying Fire occurring after June 7, 2023). *Id.*

Thompson could glean no reliable data from the *Engine I* claim data to provide an opinion on the projected value of this benefit.

### 7.    Lost Value for Sold or Traded-In Vehicles

Class members who (1) experienced a Qualifying Failure or Qualifying Fire within the 15 years or 150,000 miles period and before receiving Settlement notice, and (2) sold or traded-in the Class Vehicle before June 7, 2023, without first procuring the recommended repair are entitled to $150 plus reimbursement of the Class Vehicle's baseline Black Book value (i.e., wholesale used vehicle value) at the time of loss minus the actual amount received from the sale or trade-in.[15] Doc. 79-2, SA § II.G. The Black Book value is a standardized value used by car dealers to determine what to pay a consumer for a vehicle (or the wholesale value). To receive payment, Claimants must submit their claim form and required documentation within ninety (90) days of the Final Approval Order. *Id.*

---

[15] Claimants may be denied reimbursement for Exceptional Neglect. Doc. 79-2, SA § II.G.

Based on the *Engine I* approved claims data, Thompson estimates that *Engine II* class members with Hyundai vehicles will receive $429,949 and Kia class members will receive $512,998, for a total projected benefit of $942,947. Gonnelli Decl., Ex. 1 (Thompson Report) at Schedules 5 and 6.

### 8.    Vehicles Destroyed by Engine Fire

Class members with Class Vehicles destroyed by a Qualifying Fire within the 15 years or 150,000 miles period are entitled to a $150 goodwill payment plus reimbursement of the Class Vehicle's maximum Black Book value (i.e., private party/very good) at the time of loss minus any value received for the vehicle.[16] Doc. 79-2, SA § II.H. The maximum Black Book value, as opposed to the baseline value used for sales or trade-ins, represents a reasonable estimate of the maximum amount a consumer could receive from a dealer for the car. To receive payment, Claimants must submit their claim form and required documentation within ninety (90) days of the Final Approval Order (for a Qualifying Fire occurring on or before June 7, 2023) or within ninety (90) days after the Qualifying Fire occurred (for a Qualifying Fire occurring after June 7, 2023). *Id.*

Like the Loss of Value for Sold or Traded in benefit, Thompson estimated the value of the Engine Fire Vehicle Loss based on *Engine I* approved claims. Kia class members are projected to receive $587,394 and Hyundai class members $122,037, for a total projected value of $709,431. Gonnelli Decl., Ex. 1 (Thompson Report) at Schedules 5 and 6.

### 9.    Rebate Program

Class members who (1) experience a Qualifying Failure or Qualifying Fire within the 15 years or 150,000 miles period, (2) lose faith in their Class Vehicle

---

[16] Claimants may be denied reimbursement for Exceptional Neglect or KSDS Installation Neglect. Doc. 79-2, SA § II.H. KSDS Installation Neglect for purposes of this Settlement benefit means the Class member's failure to have the KSDS installed by November 4, 2023. *Id.* § I.Q.

because of the Settlement, (3) sell their Class Vehicle in an arm's-length sale or trade, and (4) purchase a replacement Hyundai (for Hyundai class members) or Kia (for Kia class members) vehicle are eligible for a rebate.[17] Doc. 79-2, SA § II.I. The rebate will be calculated as the difference between the value the Claimant received at trade-in or sale and the Class Vehicle's maximum Black Book value (*i.e.*, private party/very good) at the time of the relevant KSDS campaign launch for their Class Vehicle, irrespective of any underlying vehicle loans, up to the following amounts: (a) $2,500 for model year 2010-2012 Class Vehicles; (b) $2,000 for model year 2013-2014 Class Vehicles; (c) $1,500 for model year 2015-2016 Class Vehicles; and (d) $1,000 for model year 2017-2021 model year Class Vehicles. *Id.* To receive the rebate, Claimants must submit their claim form and required documentation within ninety (90) days of the Final Approval Order (for a Qualifying Failure or Qualifying Fire occurring on or before June 7, 2023) or the date of the Qualify Failure or Qualifying Fire (for a Qualifying Failure or Qualifying Fire occurring after June 7, 2023). *Id.*

Based on the *Engine I* approved rebate claims, Thompson estimates that Kia class members will receive $52,758 and Hyundai class members will receive $91,560 for a total projected value of $144,318. Gonnelli Decl., Ex. 1 (Thompson Report) at Schedules 5 and 6.

## F.   Settlement Notice

Class notice was carried out by Hyundai (for Hyundai class members) and Epiq for (Kia class members). Schelkopf Decl., Ex. A (Sternberg Decl.); Ex. B (Fernandez Decl.). In total, 5,046,347 first-class mail notices went out. Sternberg Decl. ¶ 10; Fernandez Decl. ¶ 10. Email notice was sent to 2,718,834 email addresses. Sternberg Decl. ¶ 12; Fernandez Decl. ¶ 12. As of June 30, 2023, the

---

[17] Claimants may be denied reimbursement for Exceptional Neglect or KSDS Installation Neglect. Doc. 79-2, SA § II.I. KSDS Installation Neglect for purposes of this Settlement benefit means the Class member's failure to have the KSDS installed by November 4, 2023. *Id.* at § I.Q.

Settlement-dedicated phone lines established by Hyundai and Epiq have received 96,435 calls. Sternberg Decl. ¶ 17; Fernandez Decl. ¶ 5. As of June 30, 2023, 3,536 Kia class members have submitted claims and 3,473 Hyundai class members have submitted claims. Sternberg Decl. ¶ 20; Fernandez Decl. ¶ 14.

As of July 6, 2023, Class Counsel have received 3 objections and 201 requests for exclusion (78 for Hyundai and 123 for Kia). Given the Class size, these objections and opt-outs together represent slightly more than one one-hundredth of one percent (.010569%) of the Class solely based on the 1,930,208 Class Vehicle population.

## III.   ARGUMENT

### A.   The Court Should Reaffirm Certification of the Settlement Class

On February 8, 2023, the Court conditionally certified the Class and granted preliminary approval to the Settlement, finding the requirements under Rules 23(a) and 23(b)(3) were satisfied. Doc. 99 at 9-14. *See* Fed. R. Civ. P. 23 advisory committee's note to 2018 Amendment ("The decision to [grant preliminary approval and] give notice of a proposed settlement to the class is an important Event … [that] should be based on a solid record supporting the conclusion that the proposed settlement will likely earn final approval after notice and an opportunity to object."). Nothing has changed that would affect the Court's ruling on class certification, and no Settlement objections challenge the propriety of the class certification here (i.e., the objections received to date only seek to expand the Settlement's relief). *See Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877 (C.D. Cal. 2016) (reconfirming certification in preliminary approval order "[b]ecause the circumstances have not changed" since order); *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556-57 (9th Cir. 2019) (en banc) (acknowledging class certification criteria must be applied "differently in litigation classes and settlement classes" and in the latter, focus should be proposed settlement's fairness and class definition). Accordingly, the Court should grant final approval of the Settlement Class. *See Class Plaintiffs v. City of*

*Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (finding strong judicial policy favors settlement of class actions).

## B.  The Settlement Is Fair, Reasonable, and Adequate

To grant final approval, the Court must find the Settlement fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2); *see Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) ("the question whether a settlement is fundamentally fair within the meaning of Rule 23(e) is different from the question whether the settlement is perfect in the estimation of the reviewing court"). In the Ninth Circuit, courts consider the following non-exhaustive factors in conducting this fairness analysis: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (internal citations and quotation marks omitted). "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness, and the settlement must stand or fall in its entirety." *Staton*, 327 F.3d at 960 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

Where, like here, a settlement is reached before formal class certification, the Court must also consider whether the settlement is the "product of collusion among the negotiating parties." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935,

947 (9th Cir. 2011) (quoting *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000)).

The Fed. R. Civ. P. 23(e)(2) factors for settlement approval substantially overlap with the Ninth Circuit's factors analyzed herein and at preliminary approval. The Court considered and found that Plaintiffs and Class Counsel adequately represented the Settlement Class at preliminary approval. Doc. 99 at 11-12. *See* Fed. R. Civ. P. 23(e)(2)(A). The Court also found no signs of collusion or improper bargaining at preliminary approval (Doc. 99 at 22), and Plaintiffs revisit this in section III.B.9 *infra*. *See* Fed. R. Civ. P. 23(e)(2)(B) (whether the settlement was negotiated at arm's length). Plaintiffs address the adequacy of the Settlement relief in sections III.B.1-6, 8 *infra*. *See* Fed. R. Civ. P. 23(e)(2)(C) (requiring consideration of costs, risks, and delay of trial and appeal (*see* sections III.B.2-3 *infra*); effectiveness of method for distributing settlement relief, including claims processing (*see* section III.B.4 *infra*); terms of any proposed award of attorney's fees, including timing of payment (*see* Doc. 79-2, SA § V; section III.B.9 *infra*, and Plaintiffs' motion for attorneys' fees filed concurrently herewith); and any agreement identified under Rule 23(e)(3) (other than Settlement Agreement, none)). Last, the Court found the Settlement compensates class members for their harm suffered (Doc. 99 at 19), and Plaintiffs address the Settlement's equitable treatment of class members relative to each other in section III.B.4 *infra*. *See* Fed. R. Civ. P. 23(e)(2)(D).

**1.    The Strength of Plaintiffs' Case**

At preliminary approval, the Court considered the strength of Plaintiffs' case and found this factor weighed in favor of approval. Doc. 99 at 17. Plaintiffs allege that Defendants sold Class Vehicles with defectively manufactured engines that are susceptible to sudden and catastrophic engine failure and a risk of engine fire. Engine failures and fires are expensive, destructive, and pose serious safety risks to consumers and other drivers. The alleged Engine Defect can potentially manifest in

any Class Vehicle, necessitating recalls and KSDS implementation (which occurred during this litigation) for early engine wear detection and repair. Defendants claim they improved their design and manufacturing processes to reduce and potentially eliminate the problem in later model years, but as Class Counsel's ongoing investigations have shown, additional models continue to be impacted. Without the KSDS, it is impossible to identify and repair those Class Vehicles that will manifest the Defect before danger occurs. If the case did not settle and the litigation continued, Plaintiffs intend to show that Defendants knew about this dangerous safety defect before Class Vehicles were sold, and that Class Vehicle engines can and do fail even where properly maintained. Class Counsel are poised to prove Defendants violated numerous state consumer protection statutes, breached state and federal warranty laws, and engaged in fraud by failing to disclose a known safety defect that put consumers in avoidable danger and caused them to incur expensive and lengthy repairs.

But Class Counsel are seasoned automotive class action litigators and recognize the risks to proving full or partial liability here. Berman Decl. ¶¶ 3-4; Schelkopf Decl. ¶ 3; Declaration of Gretchen Freeman Cappio ("Cappio Decl.") ¶ 3. For example, Defendants will argue there was no fraud because they did not have knowledge of the Engine Defect before many of the Class Vehicles were sold. They will also argue that not all class members have been harmed because some Class Vehicles will never manifest the Defect, and for those that do, Defendants developed the KSDS to detect and alert class members to prevent engine failure and fire at all. Defendants will also argue that Class Vehicles' individual service histories bear on whether their engines fail, and thus Rule 23(b)(3) certification is inappropriate. Defendants will also likely argue they made affected class members whole by covering many engine repairs under warranty or through goodwill, and that uncovered repairs were fairly denied because inspection revealed poor vehicle

maintenance. Accordingly, "these potential obstacles weigh in favor of granting final approval." *Ruiz v. JCP Logistics, Inc.*, 2016 WSL 6156212, at \*4 (C.D. Cal. Aug. 12, 2016) (Staton, J.) (despite plaintiff's confidence in prevailing on class-wide basis, various legal and factual challenges remained).

### 2.    The Risk, Expense, Complexity, and Duration of Further Litigation

The litigation will be protracted and costly if the parties cannot resolve this case through settlement, and as the Court noted at preliminary approval, "early resolution provides a benefit to class members that might not be present even if Plaintiffs were ultimately to succeed at every stage of trial and post-trial litigation." Doc. 99 at 18. Class Counsel frequently litigate automotive class actions that take several years to resolve, while some have gone on for over a decade with appeals. Before trying this case, the parties would brief motions to dismiss, conduct discovery, brief class certification (along with a potential Rule 23(f) appeal), and brief summary judgment and *Daubert* motions, in addition to expending considerable resources on electronic discovery, depositions, and expert witnesses. It is unlikely the case would reach trial before 2024, with additional post-trial activity to follow. Even if Plaintiffs prevail at trial and on appeal, the recovery and its benefits to the Class would be diminished and delayed by years. In that time, more class members will have sold their vehicles or experienced the defect and lost money out-of-pocket, more Class Vehicles will age out of the Extended Warranty and other benefits, and more class members would be at risk for engine seizure or fire (when this Settlement would otherwise notify them and remedy these risks). Delay also makes locating class members and distributing damage awards, and obtaining the required documentation for such awards, more difficult. Put simply, a trial victory several years from now is not likely to deliver results superior to the proposed Settlement.

The proposed Settlement balances these costs, risks, and potential for delay with its benefits, achieving a settlement that offers immediate and substantial relief

to the Class. *See Casey v. Doctor's Best, Inc.*, 2022 WL 1726080, at *8 (C.D. Cal. Feb. 28, 2022) (observing that even if plaintiff prevailed at every stage, the possibility of lengthy appeals evidenced substantial risk of further litigation); *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."); *Ruiz*, 2016 WL 6156212, at *5 ("Settlement eliminates the risks inherent in continued litigation, and it may be the last chance for class members to obtain relief.").

### 3.    The Risk of Maintaining the Class Action Throughout Trial

There is real and substantial risk that Plaintiffs cannot maintain a nationwide class, as provided in the Settlement, through trial, and the Court likewise found this factor weighed in favor of approval. Doc. 99 at 18. *See Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 392 (C.D. Cal. 2007) (acknowledging value of class action depends largely on certification and "class certification undeniably represents a serious risk for plaintiffs in any class action") (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 817 (3d Cir. 1995)). Defendants maintain that the Class Vehicles are not defective. And Defendants will argue that even if there is a Defect, it is not uniform across all Class Vehicles. If the Court grants class certification, Defendants will likely file a 23(f) petition and motions to decertify the class. Given these facts, the Settlement is preferable to undertaking the risk of maintaining the class action through trial. *Zubia v. Shamrock Foods Co.*, 2017 WL 10541431, at *12 (C.D. Cal. Dec. 21, 2017) (finding class certification uncertainty favors settlement approval where "settlement was reached prior to a hearing on Plaintiffs' motion for class certification … a time when there was still risk that the class would not be certified by the Court.") (quoting *Chambers*, 214 F. Supp. 3d at 888-89).

### 4.      The Amount and Type of Relief Offered in the Settlement

The Settlement offers an excellent result for the Class, and the Court found its relief "comprehensive in compensating class members for the harms suffered and providing protection against future harms" at preliminary approval. Doc. 99 at 19. Even with conservative assumptions, the Extended Warranty is worth over $934 million to the Class. Gonnelli Decl., Ex. 1 (Thompson Report) ¶ 9. Based on the compliance rates of recalls and the experience of *Engine I*, the inspections and KSDS installations are estimated to provide over $135 million in value to the Class. *Id.* ¶ 9(b)-(c). In addition, the out-of-pocket reimbursements for repairs, towing, rentals, and related incidentals is projected to be over $11 million based on the approved claims in *Engine I*. *Id.* ¶ 9(d). The Settlement has also proven effective in informing class members about the KSDS remedy and encouraging its installation. As of June 28, 2023, more than half of Class Vehicles have had the KSDS installed. *See* Gonnelli Decl., Ex. 10 (Declaration of Elizabeth Fernandez regarding Knock Sensor Detection Software (KSDS) Installation Rates ("Fernandez KSDS Decl.")) ¶ 8; Ex. 11 (Declaration of Alex Lee regarding Knock Sensor Detection Software (KSDS) Installation Rates ("Lee Decl.")) ¶ 8. Class members with the KSDS installed automatically receive the Extended Warranty and are eligible for other Settlement benefits (e.g., transportation, towing, and incidental reimbursements). Defendants' dealerships have also received notice of the KSDS remedy and, in addition to performing the engine inspections and KSDS installations, must provide a pamphlet to vehicle owners detailing the Extended Warranty coverage.

The proposed Settlement provides class members with largely everything Plaintiffs sought in their complaints. Defendants are warning affected drivers about the Engine Defect risks, remedying the risks via KSDS installation, and offering an Extended Warranty that allows free inspections and necessary repairs within the expected useful life of the Class Vehicles (15 years or 150,000 miles). Although Plaintiffs initially sought lifetime warranties as they did in *Engine I*, safety

considerations subsequently raised in discussions between NHTSA and Defendants indicated that the Extended Warranty is preferable and appropriate so that consumers are not incentivized to drive their Class Vehicles beyond their contemplated useful lives. Doc. 81-1 (Decl. of Brian Latouf) ¶¶ 7-14. And Plaintiffs' concession on the lifetime warranty term netted enhanced benefits in other Settlement categories as compared to *Engine I*, such as increased transportation reimbursements ($80 per day), reimbursements for transportation, lodging, and meals for certain Qualifying Failures and Qualifying Fires, and increased goodwill and inconvenience payments. Like in *Engine I*, class members will still receive full reimbursement for towing expenses and past repairs, compensation for sold or traded-in Class Vehicles that experienced a Qualifying Failure or Class Vehicles that were destroyed in a Qualifying Fire, and a rebate for lost faith in their Class Vehicles. To receive cash payments under the Settlement, class members must complete a claim form and submit the required documentation, all of which can be done electronically. The BBB process applies to both Settlement claims and warranty coverage denials and provides a more streamlined appeals process. At preliminary approval, the Court found "the differences between the [*Engine I* settlement and the Settlement here] do not raise concerns about the reasonableness of the [Settlement]." Doc. 99 at 20. Although it is unlikely trial would produce a better result, the Settlement need not be the best possible outcome to meet the standard for approval. *See Officers for Justice*, 688 F.2d at 628 ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair.") (citing *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173-74 (4th Cir. 1975)); *Correa v. Zillow, Inc.*, 2021 WL 4925394, at *5 (C.D. Cal. June 14, 2021) (approving settlement that represented approximately 13.75% of the defendant's total potential exposure).

Further, no group of class members is favored over any other in the Settlement and class members are offered multiple categories of relief and compensation that reflect the varying degrees to which they were harmed as a result of the Defect. All class members are eligible for the KSDS remedy which will monitor and alert them to engine failure before it occurs, effectively eliminating the Defect's risk. Class members for whom the Defect manifested within the 15 years or 150,000 miles period are eligible for reimbursement and compensation commensurate with their harm (e.g., vehicle value and goodwill payments for Class Vehicles destroyed by fire), and these class members receive equal treatment within these relief categories (e.g., Black Book values, uniform caps on certain reimbursements). The Settlement relief is fair, adequate, and reasonable, and it should be finally approved.

### 5. The Discovery Completed and Stage of the Proceedings

The Court must evaluate whether "the parties have sufficient information to make an informed decision about settlement." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998). Discovery can be both formal and informal, and "plaintiffs may rely on discovery developed in prior or related proceedings." *See id.* at 1239-40; *see also Clesceri v. Beach City Investigations & Protective Servs., Inc.*, 2011 WL 320998, at *9 (C.D. Cal. Jan. 27, 2011) (Staton, J.).

Here, Class Counsel conducted significant, independent pre-suit investigations that included speaking with putative class members and reviewing their documents, consulting automotive experts regarding the design and performance of Hyundai and Kia's engines, reviewing relevant regulatory documents, and investigating potential legal claims. Berman Decl. ¶ 5; Schelkopf Decl. ¶ 4; Cappio Decl. ¶ 4. Once on file, Class Counsel continued to communicate with hundreds of putative class members about the Defect and reviewed and discussed Defendants' information about the Defect and impacted vehicles in informal resolution discussions between the parties. Berman Decl. ¶ 6; Schelkopf Decl. ¶ 4; Cappio Decl. ¶ 6. Class Counsel also utilized

the relevant information it obtained in litigating *Engine I* to help inform this Settlement. Berman Decl. ¶ 7; Schelkopf Decl. ¶ 5. After reaching the Settlement, Class Counsel conducted formal confirmatory discovery that included written discovery, document review (more than 43,000 pages) that required translation for the most critical documents, and two depositions of Defendants' corporate representatives. Berman Decl. ¶ 10; Schelkopf Decl. ¶¶ 14-18. And as this Court acknowledged at preliminary approval, "Settlement Counsel had the benefit of formal discovery in the *Short* lawsuit" before it was joined with the other pending actions. Doc. 99 at 20. This included significant document review ("thousands of pages of technical and engineering documents, including design, testing, and service bulletin information [and] voluminous, detailed data on hundreds of thousands of repairs and warranty claims, including diagnostic information and comments from the technicians who worked on class members' vehicles") and expert analysis ("highly qualified experts reviewed these documents and data closely, and both engineering and economic experts provided counsel with detailed reports based on this discovery"). *Id.* Plaintiffs have sufficient information to make an informed decision in settling this case. *See id.* at 21.

### 6.    The Experience and Views of Counsel

As this Court found at preliminary approval, Class Counsel are "experienced and knowledgeable in this area of the law, and all have endorsed the Settlement Agreement." Doc. 99 at 21. *See In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007) (representation by competent counsel familiar with relevant area of law and strengths and weaknesses of parties' respective positions suggests reasonableness of settlement); *see also In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995) ("Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation."). After completing confirmatory discovery, Class

Counsel maintain that the Settlement offers an excellent result and is in the best interest of the Class. Schelkopf Decl. ¶ 3; Berman Decl. ¶ 4; Cappio Decl. ¶ 4. *See Hardmon v. Ascena Retail Grp., Inc.*, 2022 WL 17572098, at *6 (C.D. Cal. Nov. 29, 2022) ("The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." (citation omitted)).

### 7.     The Presence of a Governmental Participant

Defendants voluntarily recalled certain Class Vehicles with NHTSA's oversight as described in section II.E.2 *supra*, but otherwise there was no governmental participant in this litigation and this factor is inapplicable. This Settlement provides immediate benefit to class members instead of relying on a protracted NHTSA investigation to produce relief. *See generally In re Gen. Motors Corp. Pickup Truck Fuel Tank Prods. Liab. Litig.*, 1993 WL 204116, at *3 (E.D. Pa. June 10, 1993) (noting NHTSA proceedings can take several years to conclude).

### 8.     The Reaction of the Class

Much like in *Engine I*, the Class's reaction to the Settlement has been overwhelmingly positive. As of June 30, 2023, class members have filed 7,009 Settlement claims, submitted 577 declarations supporting the Settlement, and only 3 have lodged objections. Schelkopf Decl., Ex. A (Sternberg Decl.) ¶ 20, Ex. B (Fernandez Decl.) ¶ 14; Berman Decl. ¶¶ 14, 17.

At the Court's direction, Class Counsel obtained declarations from class members about their views of the Settlement.[18] *See* Doc. 99 at 21. Of the 589 Class members who provided declarations, 577 supported the Settlement and want to see it approved, while only 12 did not support the Settlement (less than 3%). Berman Decl. ¶ 14. Most declarants found the relief fully satisfactory (some 380 class members)

---

[18] Class Counsel have provided the Court with all the non-supporting declarations, but only a random sample of the supporting declarations received (100 of 577). Berman Decl. ¶¶ 15-16. All declarations are available for the Court's review on request. *Id.*

while others, though they supported the Settlement, found it unsatisfactory. *Id.* Most of the unsatisfied declarants did not give a specific reason, but instead highlighted their frustrations with their vehicle. *Id.* Others stated they either wanted greater relief (44 declarants) or were frustrated by the claims process (25 declarants). *Id.* To Class Counsel's knowledge, this direct request for declarations is unique to this case and *Engine I*, but with over 97.9% of declarants supporting the Settlement, there is little doubt it is well received. *Id.*

Although the deadline for objecting is August 7, 2023, so far Class Counsel have received 3 objections.[19] All the current objections simply express a desire for expanded Settlement benefits and/or a possible misunderstanding of the benefits. For example, Objector Alexander Suprin believes the goodwill payment is insufficient and instead thinks he should be reimbursed for the engine costs, towing, and interim transportation. All these items are available under the Settlement, and it appears he may be confused. Suprin also wants additional compensation beyond what's offered under the Settlement because he believes the replacement of the engine with another engine with a new serial number devalues his car. Likewise, the other two objectors want a broader Settlement: Objector Christine Pembroke believes her parking costs should be recoverable; and Objector Scott Sappington believes the warranty extension should be for a higher mileage. As discussed in section III. A. *supra*, these objections do nothing challenge the propriety of the class certification here.

On balance, the Settlement is well received by the Class, and this reaction supports final approval.

### 9.     The Settlement Is Not the Product of Collusion

Collusion among settling parties can be found explicitly or in "more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Bluetooth Headset Prods.*

---

[19] Professional objections tend to arrive at or just before the deadline.

*Liab. Litig.*, 654 F.3d at 947. Subtle signs of collusion include (1) "when counsel receive a disproportionate distribution of the settlement," (2) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds," and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Id.* (internal citations omitted). A mediator's involvement in the settlement can also indicate it is non-collusive. *Wallace v. Countrywide Home Loans, Inc.*, 2015 WL 13284517, at *7 (C.D. Cal. Apr. 17, 2015) (citing *Satchell v. Fed. Exp. Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007)).

Here, the Settlement is not the result of collusion among the parties. First, Class Counsel filed a contested fee motion seeking $8.9 million in fees and up to $300,000 in actual litigation expenses, which is approximately 11% of the value of the Extended Warranty benefit alone. *See Bravo v. Gale Triangle, Inc.*, 2017 WL 708766, at *13 (C.D. Cal. Feb. 16, 2017) (finding Plaintiffs' requested fees equal to approximately one-half the net recovery to the Class Members "does not suggest collusion"); *Contreras v. Armstrong Flooring*, 2021 WL 4352299, at *8 (C.D. Cal. July 6, 2021) ("the Court is not concerned about collusion based on Class Counsel's fee request" equal to 25% of settlement fund). Second, although Defendants have agreed to pay attorneys' fees, costs, and service awards separately from the Settlement benefits, the parties have not agreed on these amounts and Defendants can oppose Plaintiffs' fee motion on any basis. Doc. 79-2, SA § V.2. *See Kissel v. Code 42 Software, Inc.*, 2017 WL 10560526, at *9 (C.D. Cal. Oct. 4, 2017) (Staton, J.) (finding "clear sailing" agreement alone does not evidence collusion). Ultimately, the Court will consider and award any fees, costs, and service awards, and Class Counsel are not guaranteed anything. Moreover, Defendants' separate payment of fees and costs protects the Class's interests by not reducing the Settlement benefits to the Class. Third, the Settlement does not provide a common fund and so

there is no reversion of any unawarded fees to Defendants. Defendants are obligated to provide all the Settlement benefits regardless of the number of class member claims. Finally, the Settlement structure was reached in mediation with Hon. Edward A. Infante, and the parties spent the next six months negotiating the final terms and Settlement Agreement. Berman Decl. ¶ 9; Schelkopf Decl. ¶ 11; Freeman Cappio Decl. ¶ 7. *See, e.g.*, *Casey*, 2022 WL 1726080, at *10 (finding all-day remote mediation with Judge Infante supported arm's-length negotiations and lack of collusion).

These factors indicate the Settlement is not the product of collusion and the Settlement should be approved.

## C.   Notice Was Given to All Class Members in a Reasonable Manner

Before approving a class settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Where the settlement class is certified under Rule 23(b)(3), the notice must also be the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see Rannis v. Recchia*, 380 F. App'x 646, 650 (9th Cir. 2010) (Rule 23(c)(2)(B) "does not necessarily require that every in-state class member 'actually receive[]' notice." (quoting *Silber v. Mabon,* 18 F.3d 1449, 1453-54 (9th Cir. 1994)). The notice contents must "generally describe[] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citation omitted).

At preliminary approval, the Court found the parties' proposed notice and notice plan satisfactory. Doc. 99 at 23-25. As discussed in section II.F *supra*, the settlement administrators substantially implemented the notice plan by providing notice via U.S. Mail, email, and dedicated settlement websites in accordance with the

Settlement Agreement terms and the Court's preliminary approval order. Accordingly, all class members have an opportunity to opt-out or object and appear at the fairness hearing, and the notice plan satisfies Rule 23 and due process.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court grant final approval of the Settlement.

DATED: July 7, 2023                    Respectfully submitted,

*/s/ Steve W. Berman*
Steve W. Berman (*pro hac vice*)
1301 Second Avenue, Suite 2000
HAGENS BERMAN SOBOL SHAPIRO LLP
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Matthew D. Schelkopf (*pro hac vice*)
Joseph B. Kenney
SAUDER SCHELKOPF LLC
1109 Lancaster Avenue
Berwyn, PA 19312
Telephone: (610) 200-0581
Facsimile: (610) 421-1326
mds@sauderschelkopf.com
jbk@sauderschelkopf.com

*Co-Lead Class Counsel*

Gretchen Freeman Cappio (*pro hac vice*)
Ryan McDevitt (*pro hac vice*)
Adele Daniel
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Telephone: (206) 623-1900
Facsimile: (206) 623-3384
gcappio@kellerrohrback.com
rmcdevitt@kellerrohrback.com
adaniel@kellerrohrback.com

*Settlement Counsel*

Bonner C. Walsh (*pro hac vice*)
WALSH PLLC
1561 Long Haul Road
Grangeville, ID 83530
Telephone: (541) 359-2827
Facsimile: (866) 503-8206
bonner@walshpllc.com

Adam Gonnelli (*pro hac vice*)
LAW OFFICE OF ADAM R. GONNELLI, L.L.C.
707 Alexander Road
Bldg. 2, Suite 208
Princeton, NJ, 08540
Telephone: (917) 541-7110
Facsimile: (315) 446-7521
adam@arglawoffice.com

Rachel E. Fitzpatrick (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
11 W. Jefferson Street, Suite 1000
Phoenix, AZ 85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
rachelf@hbsslaw.com

*Attorneys for Plaintiffs*