1
QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Shon Morgan (Bar No. 187736)
2
  shonmorgan@quinnemanuel.com
865 South Figueroa Street, 10th Floor
3
Los Angeles, California 90017-2543
Telephone:  (213) 443-3000
4
Facsimile:   (213) 443-3100
  Christine W. Chen (Bar No. 327581)
5
  christinechen@quinnemanuel.com
50 California Street, 22nd Floor
6
San Francisco, California 94111-4788
Telephone:  (415) 875-6600
7
Facsimile:   (415) 875-6700
  Cristina Henriquez (Bar No. 317445)
8
  cristina.henriquez@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
9
Redwood Shores, California 94065
Telephone: (650) 801-5000
10
Facsimile:   (650) 801 5100

11
*Attorneys for Defendants*

12
UNITED STATES DISTRICT COURT

13
CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

14
*In re: Hyundai and Kia Engine Litigation II*

CASE NO. 8:18-cv-02223-JLS-JDE

15
**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES**

16

17
Date:      September 8, 2023
Time:     10:30 a.m.
18
Ctrm:    8A

19
The Hon. Josephine L. Staton
20

Trial Date:        None Set
21

22

23

24

25

26

27

28

1
2

# **<u>TABLE OF CONTENTS</u>**

<u>Page</u>

PRELIMINARY STATEMENT ......................................................... 1

FACTUAL BACKGROUND............................................................ 1

LEGAL STANDARD ..................................................................... 9

ARGUMENT ............................................................................... 10

I.    NO BASIS EXISTS TO CREDIT MOST, IF NOT ALL, THE *SHORT* FIRMS' CLAIMED LODESTAR AND COSTS ........................................... 11

    A.    Work in *Short* Did Not Contribute to the *Engine II* Settlement .......... 11

    B.    The *Short* Firms Unnecessarily Continued Litigating *Short* ............... 13

    C.    The *Short* Firms' Work Was Duplicative and Inefficient ................... 15

    D.    Costs Attributable to *Short* Should Be Similarly Discounted .............. 18

II.   PLAINTIFFS' ESTIMATED FEES FOR POST-APPROVAL ADMINISTRATION ARE EXCESSIVE........................................................ 19

III.  NO MULTIPLIER IS WARRANTED ............................................. 20

    A.    The Issues in This Case Do Not Support a Lodestar Multiplier........... 21

    B.    The Results Achieved Do Not Support a Lodestar Multiplier ............. 22

    C.    Risk and Contingency Considerations Are Inappropriate Here ........... 23

    D.    At Minimum, the *Short* Firms' Multiplier Should Be Reduced .......... 24

CONCLUSION............................................................................. 25

# <u>TABLE OF AUTHORITIES</u>

<u>**Page**</u>

## <u>Cases</u>

*Aikens v. Malcolm Cisneros*,
  No. 5:17-cv-02462-JLS-SP, 2020 WL 10828062 (C.D. Cal. Jan. 2,
  2020) ................................................................................................ 16

*AK Futures, LLC v. LCF Labs, Inc.*,
  No. 8:21-cv-02121-JVS-ADSx, 2023 WL 2561729 (C.D. Cal. Feb.
  2, 2023) ......................................................................................... 9, 15

*In re Am. Apparel, Inc. Shareholder Litig.*,
  No. CV 10-06352 MMM, 2014 WL 10212865 (C.D. Cal. July 28,
  2014) ................................................................................................ 17

*Ang v. Bimbo Bakeries USA, Inc.*,
  No. 13-cv-01196-HSG, 2020 WL 5798152 (N.D. Cal. Sept. 29,
  2020) ................................................................................................ 16

*Asghari v. Volkswagen Grp. of Am., Inc.*,
  No. CV 13-02529 MMM (VBKx) 2015 WL 12732462 (C.D. Cal.
  May 29, 2015) ............................................................................. 15, 17

*In re Bluetooth Headset Prods. Liab. Litig.*,
  No. 07-ML-1822 DSF (Ex), 2012 WL 6869641 (C.D. Cal. July 31,
  2012) ................................................................................................ 23

*Blum v. Stenson*,
  465 U.S. 886, 898 (1984) ................................................................ 21

*Buettner v. Hyundai Motor Am., Inc.*,
  No. 8:21-cv-01057-JLS-JDE (C.D. Cal.) ........................................... 5

*Carr v. Tadin, Inc.*,
  51 F. Supp. 3d 970 (S.D. Cal. 2014) ............................................... 24

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
  No. C-07-5944-SC, 2016 WL 6909680 (N.D. Cal. Oct. 24, 2016) ................... 24

*Chambers v. Whirlpool Corp.*,
  980 F.3d 654 (9th Cir. 2020) ............................................... 21, 22, 23

*Chieco v. Kia Motors Am. Inc.*,
    No. 8:19-cv-00854-JLS-JDE (C.D. Cal.) .............................................. 6

*City of Burlington v. Dague*,
    505 U.S. 557 (1992) ....................................................... 9, 21, 23

*In re Consumer Priv. Cases*,
    175 Cal. App. 4th 545 (2009) ............................................... 9

*Cruz v. Starbucks Corp.*,
    No. C-10-01868 JCS, 2013 WL 2447862 (N.D. Cal. June 5, 2013) ................. 17

*Edelman v. PSI Assoc. II, Inc.*,
    147 F.R.D. 217 (C.D. Cal. 1993) ........................................... 13

*In re Equity Funding Corp. of Am. Sec. Litig.*,
    438 F. Supp. 1303 (C.D. Cal. 1977) ....................................... 24

*Farris v. Cox*,
    508 F. Supp. 222 (N.D. Cal. 1981) ........................................ 17

*Fernandez v. Siam Minh Corp.*,
    No. CV 20-9484-MWF, 2022 WL 16857020 (C.D. Cal. Sept. 28,
    2022) ..................................................................... 21

*Flaherty v. Hyundai Motor Co.*,
    No. 8:18-cv-02223-JLS-JDE (C.D. Cal.) ..................................... 2

*Glover v. Mercedes-Benz USA, LLC*,
    No. 8:21-cv-01969-JDE, 2022 WL 17080196 (C.D. Cal. Aug. 9,
    2022) ..................................................................... 10

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011, 1029 (9th Cir. 1998) ...................................... 9

*Hernandez v. Grullense*,
    No. 12-cv-03257-WHO, 2014 WL 1724356 (N.D. Cal. Apr. 30,
    2014) ................................................................. 17, 18

*In re: Hyundai & Kia Engine Litigation*,
    No. 8:17-cv-00838-JLS-JDE (C.D. Cal.) ..................................... 1

*In re Hyundai & Kia Fuel Economy Litig.*,
    926 F.3d 539 (9th Cir. 2019) ............................................. 25

*Kane v. Smithfield Direct, LLC*,
No. CV 21-4832 PA, 2022 WL 3099429 (C.D. Cal. July 20, 2022) ................ 10

*Kearney v. Hyundai Motor Am.*,
No. SACV 09-1298-JST, 2013 WL 3287996 (C.D. Cal. June 28,
2013) ................................................................................................................. 9

*Keegan v. Am. Honda Motor Co, Inc.*,
No. CV 10-09508 MMM (AJWx), 2014 WL 12551213 (C.D. Cal.
Jan. 21, 2014) ................................................................................................. 15

*In re Kia & Hyundai Engine Litigation*,
No. 2898 (J.P.M.L.) ......................................................................................... 3

*Lightbourne v. Printroom, Inc.*,
No. SACV 13-876-JLS, 2015 WL 12732457 (C.D. Cal. Dec. 10,
2015) ............................................................................................................... 11

*Lim v. Transforce, Inc.*,
No. LA CV19-04390 JAK (AGRx), 2022 WL 17253907 (C.D. Cal.
Nov. 15, 2022) ............................................................................................... 10

*Loera v. Cnty. of Los Angeles*,
No. CV 047508PA, 2005 WL 1225982 (C.D. Cal. Mar. 21, 2005) ................. 17

*Lusk v. Five Guys Enter. LLC*,
No. 1:17-cv-0762 JLT EPG, 2023 WL 4134656 (E.D. Cal. June 22,
2023) .......................................................................................................... 17, 24

*In re Magsafe Apple Power Adapter Litig.*,
No. 5:091-CV-01911-EJD, 2015 WL 428105 (N.D. Cal. Jan. 30,
2015) ............................................................................................................... 17

*Marbury v. Hyundai Motor Am., Inc.*,
No. 8:21-cv-00379-JLS-JDE (C.D. Cal.) ........................................................ 5

*McGrath v. County of Nevada*,
67 F.3d 248 (9th Cir. 1995) ............................................................................ 17

*McIntosh v. McAfee, Inc.*,
No. C06-07694 JW, 2009 WL 673976 (N.D. Cal. Mar. 13, 2009) ................... 21

*In re Media Vision Tech. Sec. Litig.*,
913 F. Supp. 1362 (N.D. Cal. 1996) ............................................................... 18

*Merritt v. Mackey*,
    932 F.2d 1317 (9th Cir. 1991) ............................................................................ 21

*Moore v. Verizon Commc'ns, Inc.*,
    No. C 09-1823 1823 SBA, 2014 WL 588035 (N.D. Cal. Feb. 14,
    2014 ...................................................................................................................... 9

*Navarrete v. Sprint/United Mgmt. Co.*,
    No. 8:19-cv-00794-JLS-ADS, 2021 WL 9880475 (C.D. Cal. Nov.
    18, 2021) ............................................................................................................ 24

*Nguyen v. BMW of N. Am., LLC*,
    No. C 10-02257 SI, 2012 WL 1380276 (N.D. Cal. Apr. 20, 2012) .................. 22

*Nightingale v. Hyundai Motor Am.*,
    31 Cal. App. 4th 99, 104 (1994) ........................................................................ 10

*Parkinson v. Hyundai Motor Am., Inc.*,
    796 F. Supp. 2d 1160 (C.D. Cal. 2010) ............................................................ 21

*Pennsylvania v. Del. Valley Citizens' Council for Clean Air*,
    478 U.S. 546 (1986) ........................................................................................... 20

*Perdue v. Kenny A.*,
    559 U.S. 542 (2010) ........................................................................................... 21

*Petersen v. FCA US, LLC*,
    No. CV 21-1386 DSF (Ex), 2022 WL 2255099 (C.D. Cal. June 21,
    2022) ................................................................................................................... 16

*Pollard v. FCA US, LLC*,
    No. 8:17-cv-00591-JLS-JCG, 2020 WL 57270 (C.D. Cal. Jan. 3,
    2020) ............................................................................................................ 10, 15

*Rahman v. FCA US, LLC*,
    594 F. Supp. 3d 1199 (C.D. Cal. 2022) ............................................................ 21

*Rodriguez v. Disner*,
    688 F.3d 645 (9th Cir. 2012) ............................................................................. 11

*Rodriguez v. Farmers Insur. Co. of Ariz.*,
    No. CV 09-06786 JGB, 2014 WL 12544829 (C.D. Cal. Mar. 13,
    2014) ................................................................................................................... 17

*Sarabia v. Ricoh USA, Inc.*,
    No. 8:20-cv-00218-JLS-KES, 2023 WL 3432160 (C.D. Cal. May 1,
    2023) ........................................................................................................ 15

*Scott v. HSS, Inc.*,
    No. 8:14-cv-01911-JLS-RNB, 2017 WL 7049524 (C.D. Cal. Dec.
    18, 2017) ............................................................................................ 11, 16

*Short v. Hyundai Motor Am.*,
    No. 2:19-cv-00318-JLR (W.D. Wash.) ................................................ 2, 10

*Sinohui v. CEC Ent., Inc.*,
    No. 5:14-cv-02516-JLS-KK, 2018 WL 11379579 (C.D. Cal. Oct. 2,
    2018) ........................................................................................................ 11

*Snider v. Hyundai Motor Am.*,
    No. 2:19-cv-05193-JLR (W.D. Wash.) ...................................................... 3

*Snow Joe, LLC v. Linemart Inc.*,
    No. 20-00587-RSWL-RAOx, 2022 WL 3446032 (C.D. Cal. Aug.
    16, 2022) ................................................................................................. 15

*Stewart v. Gates*,
    987 F.2d 1450 (9th Cir. 1993) .......................................................... 20, 21

*Thornhill v. Hyundai Motor Co.*,
    No. 8:21-cv-00481-JLS-JDE (C.D. Cal.) ................................................... 5

*In re Toyota Motor Corp.*,
    No. 8:10ML 02151 JVS, 2013 WL 12327929 (C.D. Cal. July 24,
    2013) ........................................................................................................ 18

*Van Gerwen v. Guarantee Mut. Life Co.*,
    214 F.3d 1041 (9th Cir. 2000) ................................................................ 20

*Van Lith v. iHeartMedia + Ent., Inc.*,
    No. 1:16-cv-00066-SKO, 2017 WL 4340337 (E.D. Cal. Sept. 29,
    2017) ........................................................................................................ 11

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ................................................................ 24

*Wilson v. Hyundai Motor Am.*,
    No. 8:22-cv-00771-JLS-JDE (C.D. Cal. Apr. 6, 2022) .............................. 7

## PRELIMINARY STATEMENT

This motion for fees presents a common scenario: multiple plaintiff groups file parallel class actions. A settlement is reached with one group independently, and the others nonetheless seek to recoup fees for work that played no role in achieving or enhancing the settlement. That is not the way it works. Here, the plaintiffs' firms involved in *Engine I* put together a follow-on settlement, *Engine II*, based on discussions with defendants that began before *Engine I* was given final approval. Upon learning of the proposed *Engine II* settlement, the plaintiffs' attorneys in the later-filed *Short* case wanted to get involved too but did not join until all key settlement points were already negotiated, and failed to mitigate their litigation expenses in *Short* to account for the imminent settlement in *Engine II*. What was five plaintiffs' firms in *Engine II* became eight. Sixteen plaintiffs' attorneys became thirty-two.

The mere fact that there are now more plaintiffs' attorneys involved does not warrant attorneys' fees disproportionate to the benefit conferred. Nor should defendants be required to pay for plaintiffs' work in *Short* because it did not contribute to the settlement. *Short* counsel was not responsible for enlarging the scope of class vehicles or providing additional class benefits.

Given that this settlement mirrors *Engine I*—yet involves only about half as many vehicles—no basis here justifies an award that approaches the $6.9 million in attorneys' fees and $175,000 in costs in *Engine I*. Rather, the lodestars here of firms that should fairly be considered total only $2.46 million. That fee amount would reasonably compensate the relevant plaintiffs' counsel, given that this settlement required less work than in *Engine I* and appropriately excludes the non-accretive work in *Short*.

## FACTUAL BACKGROUND

**The *Engine I* Settlement and *Flaherty*.** As this Court is aware, this is a follow-on settlement to *In re: Hyundai & Kia Engine Litigation*, No. 8:17-cv-00838-

JLS-JDE (C.D. Cal.) ("*Engine I*"), in which plaintiffs alleged vehicles with Theta II gasoline direct injection ("GDI") engines contained a manufacturing debris issue that could lead to premature connecting rod bearing wear.   The *Engine I* settlement provided benefits to owners and lessees of 4.2 million vehicles, including some in *Flaherty v. Hyundai Motor Co.*, No. 8:18-cv-02223-JLS-JDE (C.D. Cal.).   *Engine I*, Dkt. 194-1 at 2–3; *Engine I*, Dkt. 143-2.

Hagens Berman Sobol Shapiro LLP had filed *Flaherty* on December 14, 2018. *In re: Hyundai & Kia Engine Litig. II*, No. 8:18-cv-02223-JLS-JDE (C.D. Cal.) ("*Engine II*"), Dkt. 1.   The parties repeatedly requested that *Flaherty* be stayed because *Engine I* would resolve only some of the *Flaherty* claims.   *See, e.g.*, Dkts. 38, 44; *Engine I*, Dkt. 194-1 at 4 ("*Flaherty* is not settled in its entirety.").   For instance, *Flaherty* alleged a defect in the 2012–2019 Kia Soul, Dkt. 1 at 3, but the *Engine I* settlement does not encompass the Kia Soul.   *Engine I*, Dkt. 143 at 13.

The plaintiffs' firms involved in the *Engine I* settlement include Hagens Berman, Sauder Schelkopf LLC, the Law Office of Adam Gonnelli LLC, Walsh PLLC, and Nve, Stirling, Hale, Miller & Sweet, LLP (collectively, "*Engine I* firms").[1] *Engine I*, Dkt. 139 at 20–22.   This Court awarded $6.9 million in attorneys' fees, which reflects a multiplier of 1.67, and $175,000 in costs.   *Engine I*, Dkt. 202 at 47.

**The *Short* Firms Initially Opposed Consolidation.**   Keller Rohrback LLP, Bailey and Glasser LLP, and Beasley Allen Crow Methvin Portis and Miles PC (collectively, "*Short* firms") filed *Short v. Hyundai Motor Am.*, No. 2:19-cv-00318-JLR (W.D. Wash.), on March 4, 2019—months after Hagens Berman had initiated *Flaherty*.   *Short*, Dkt. 1.   *Short* asserted classwide defects in about 800,000 vehicles including the Kia Soul vehicles already at issue in *Flaherty*, as well as 2011–2013 Hyundai Tucson with Theta II multiport fuel injection ("MPI") engines.   *Short*, Dkt.

---

[1]   There were other plaintiffs' law firms involved in *Engine I*.  However, the *Engine I* firms took lead in settlement negotiations and resolving settlement administration issues.  Morgan Decl. ¶ 3.

71 ¶ 19.  Plaintiffs alleged the catalytic converters in the Soul were susceptible to overheating and the oil pans in the Tucson leaked.  *Id.*  As in *Flaherty*, they also alleged Soul vehicles could have leftover manufacturing debris based on the recalls mentioned in *Engine I.  Id.* ¶¶ 19–21.

On April 17, 2019, defendants filed a notice informing the *Short* court of related actions, including *Engine I* and *Flaherty*.  *Short*, Dkt. 19.  The *Short* firms disputed any relation between these actions and *Short*.  *Short*, Dkt. 20.  Similarly, on April 22, 2019, a third party attempted to initiate a multi-district litigation proceeding, seeking to transfer and consolidate *Flaherty*, *Short*, and other actions.  *In re Kia & Hyundai Engine Litigation* ("*JPML*"), No. 2898, Dkt. 1 (J.P.M.L.).  The *Short* firms opposed on the basis that *Short* covered "a unique class of vehicles."  *JPML*, Dkt. 33. Defendants had also opposed centralization.  *JPML*, Dkt. 34; Dkt. 106 ("Mot.") at 13. However, this was because a multi-district litigation would unnecessarily divert resources from the then-imminent settlement in *Engine I*, which would resolve many claims across all the related actions.  *JPML*, Dkt. 34 at 7.  With respect to *Short* specifically, defendants noted they had initiated discussions with plaintiffs about voluntarily transferring *Short* to this Court but that the parties agreed to defer discussions until after plaintiffs filed a consolidated complaint.[2]  *JPML*, Dkt. 34 at 15.

The parties thus litigated *Short* as a separate action.  Plaintiffs Linda Short, Olivia Parker, Elizabeth Snider, and James Twigger filed a complaint on April 29, 2019.  *Short*, Dkt. 23.  They amended the complaint, adding three plaintiffs, in response to defendants' first motion to dismiss.  *Short*, Dkts. 37, 42.  Defendants moved to dismiss again, which the court granted in part.  *Short*, Dkt. 62.  Plaintiffs amended to add seven more plaintiffs, and the *Short* court partially granted defendants' motion to dismiss this complaint as well.  *Short*, Dkt. 85.  None of the

---

[2]  On April 26, 2019, *Short* was consolidated with *Snider v. Hyundai Motor Am.*, No. 2:19-cv-05193-JLR (W.D. Wash.), and plaintiffs were directed to file a consolidated complaint.  *Short*, Dkt. 22.

Case No. 8:18-cv-02223-JLS-JDE

DEFENDANTS' OPPOSITION TO MOTION FOR ATTORNEYS' FEES

consolidated complaints increased the scope of asserted class vehicles, and the description of the alleged defects remained largely the same. *Compare Short*, Dkt. 23 ¶¶ 7–10, *Short*, Dkt 42 ¶¶ 10–13, *and Short*, Dkt. 71 ¶¶ 19–23.

Discovery in *Short* was relatively limited in terms of quantity. Between December 12, 2019, and April 30, 2021, the *Short* plaintiffs served 15 interrogatories and 42 requests for production.[3]  Declaration of Shon Morgan ("Morgan Decl.") ¶ 4. Plaintiffs' broad discovery requests required much clarification and narrowing through meet-and-confers and an exchange of correspondence. *Id*. Defendants resolved their requests in good faith. *Id*. Defendants served no interrogatories and their only 13 requests for production were served on January 8, 2021. *Id.* ¶ 6. Defendants produced 1,008 total documents, of which 92 were in Korean, between May 12, 2020, and July 29, 2021. *Id.* ¶ 4. Defendants' productions included documents such as publicly available owner handbooks, warranty manuals, and advertising materials. *Id*. The *Short* plaintiffs produced a little over 300 documents, totaling fewer than 3,000 pages. *Id.* ¶ 6. Plaintiffs also served two expert reports on April 22, 2021. *Id.* ¶ 7. These reports now claimed that manufacturing debris, the same underlying issue alleged in the first-filed *Flaherty* case, was the ultimate cause for the catalytic converter overheating and leaking oil pans. *Id*. Defendants served two rebuttal expert reports on June 17, 2021. *Id.* ¶ 8.

**Procedural History of *Engine II* and Remaining Discovery in *Short*.** Defendants and Hagens Berman began *Engine II* settlement discussions to resolve the remainder of *Flaherty* in December 2020—before the Court granted final approval in *Engine I* in May 2021. *Id.* ¶ 9. These discussions included at least one in-person meeting in March 2021. *Id*. The other *Engine I* firms joined discussions around this time. *Id*. The parties agreed the second settlement should largely mirror the *Engine*

---

[3]  Plaintiffs claim defendants responded to requests for admission in November 2020 in *Short*. Mot. at 13. Defendants received no requests for admission from plaintiffs in *Short*. Morgan Decl. ¶ 5.

*I* benefits and to make certain clarifications and refinements based on the parties' experience in *Engine I*.  *Id.*

The *Engine I* firms filed *Marbury v. Hyundai Motor Am., Inc.*, No. 8:21-cv-00379-JLS-JDE (C.D. Cal.), and *Thornhill v. Hyundai Motor Co.*, No. 8:21-cv-00481-JLS-JDE (C.D. Cal.), on February 26, 2021, and March 12, 2021, respectively. *Marbury*, Dkt. 1; *Thornhill*, Dkt. 1.  The *Marbury* plaintiffs alleged a connecting rod bearing defect in vehicles with Theta II MPI engines, including the 2011–2013 Hyundai Tucson as in *Short*.  *Marbury*, Dkt. 1 ¶¶ 1, 114.  The *Thornhill* plaintiffs alleged the same defect in certain vehicles with GDI and MPI engines, including the 2014–2015 Kia Soul at issue in *Short*.  *Thornhill*, Dkt. 1 ¶¶ 2–3.

On April 27, 2021, the parties in *Marbury* filed a stipulation to extend defendants' time to answer the complaints because the "parties [were] exploring potential resolution."  *See, e.g.*, *Marbury*, Dkt. 39.

In addition to knowing about *Flaherty* since April 17, 2019, *Short*, Dkt. 19, the *Short* firms were aware of the developments in *Marbury* and *Thornhill* by at least May 11, 2021.  Morgan Decl., Ex. A.  The *Short* firms asked how defendants intended to "coordinate" these actions.  *Id.*  Because the *Short* firms previously opposed consolidation or coordination with *Flaherty*, defendants responded that they believed coordination was not warranted.  *Id.*  The *Short* firms did not further engage defendants on this issue.  *Id.*

On June 4, 2021, the parties in *Marbury* filed another stipulation informing the Court that "the parties continue to engage in productive discussions concerning a possible class resolution" and anticipated *Marbury* would be consolidated with *Flaherty*.  *Marbury*, Dkt. 42.  A virtually identical stipulation was filed in *Thornhill* the same day.  *Thornhill*, Dkt. 25.  Also on June 4, 2021, *Engine I* firms moved to consolidate *Flaherty*, *Marbury*, and *Thornhill* and to appoint Steve Berman and Matt Schelkopf as interim class counsel.  Dkt. 48.

On June 15, 2021, the *Short* firms filed *Buettner v. Hyundai Motor Am., Inc.*,

No. 8:21-cv-01057-JLS-JDE (C.D. Cal.), alleging a defect in vehicles with Theta II MPI engines, such as the 2011–2013 Hyundai Tucson (which were also at issue in *Short*). *Buettner*, Dkt. 1. On June 17, 2021, the *Short* firms responded to the *Flaherty-Marbury-Thornhill* motion for consolidation, asking the Court include *Buettner* in the consolidation and to appoint Keller as Interim Co-Lead Class Counsel. Dkt. 50. At this point, defendants and *Engine I* firms had already reached agreement on the main deal points in *Engine II*. Morgan Decl. ¶ 12.

In the meantime, the *Short* firms made no suggestion to stay *Short*, settle it, or consolidate it with *Engine I*; thus, defendants deposed the ten *Short* class representatives between June 30 and July 27, 2021, Morgan Decl. ¶ 13, in advance of the class discovery deadline of July 29, 2021. *Short*, Dkt. 87. The *Short* firms never moved to certify a class in *Short*.

On September 8, 2021, *Flaherty*, *Marbury*, *Thornhill*, and *Buettner* were consolidated as *Engine II*. Dkt. 55. There was no motions practice nor was discovery exchanged in these cases before consolidation. Morgan Decl. ¶ 14.

On September 13, 2021, the parties stipulated to stay *Short*, citing the impending *Engine II* settlement that could resolve the *Short* plaintiffs' claims. *Short*, Dkt. 107. *Short* was not consolidated with *Engine II* until August 25, 2022.[4] Dkt. 71.

**The *Engine II* Settlement.** On September 26, 2022, *Engine II* plaintiffs moved for preliminary approval. Dkt. 79. The *Engine II* settlement involves approximately 2.2 million vehicles—slightly more than half of the *Engine I* vehicles—with Theta II MPI, Nu GDI, and Gamma GDI engines.[5] Dkt. 79 at 11. As the Court has recognized

---

[4]   On September 22, 2022, the Court consolidated *Chieco v. Kia Motors Am. Inc.*, No. 8:19-cv-00854-JLS-JDE (C.D. Cal.), with *Engine II*. *Chieco*, Dkt. 100. *Chieco*'s counsel has filed its own motion for attorneys' fees to which defendants will respond separately. *See* Dkt. 108.

[5]   Plaintiffs contend the parties disagreed on which vehicle engines were afflicted. Mot. at 17. The only instance of disagreement that defendants recall on this point was when the *Engine I* firms inquired as to whether *Engine II* should also include vehicles with Lambda engines. Morgan Decl. ¶ 10. Defendants shared that they did not believe the data supported inclusion of these vehicles. *Id.* Subsequently, the *Engine*

(Dkt. 99 at 20), settlement benefits offered to *Engine II* class members largely mirror those offered to *Engine I* class members:

| *Engine I* – class members received: | *Engine II* – class members will receive: |
|---|---|
| KSDS installation | |
| Repair reimbursements | |
| Other repair-related reimbursements, including for towing and transportation fees | |
| Goodwill payments for inconvenience due to repair delays | |
| Reimbursement of lost value for sold/traded-in vehicles | |
| Compensation for vehicles that experienced engine fires | |
| Rebate for loss of faith | |
| Lifetime warranty, including free diagnostic inspection | Extended warranty for 15 years or 150,000 miles, including free diagnostic inspection |
| | Reimbursements for towing, transportation fees, and incidentals such as meals and lodging |

**Mediations.**  The parties in *Engine II* mediated on February 22, 2022, and April 27, 2023.  Morgan Decl. ¶ 15.  Both mediations focused on the issue of attorneys' fees because the substantive settlement structure was already resolved.  *Id*.  The parties did not reach agreement concerning the attorneys' fees and costs that would be requested.  *Id.*; *see also* Mot. at 18.

**Plaintiffs' Demanded Fees and Costs.**  Plaintiffs' counsel seeks $8.9 million in attorneys' fees and $300,000 in costs.  Mot. at 2.  They claim to have spent more

---

*I* firms (minus Hagens Berman) filed a separate case, alleging a connecting rod bearing defect in Lambda engines.  *Wilson v. Hyundai Motor Am.*, No. 8:22-cv-00771-JLS-JDE (C.D. Cal. Apr. 6, 2022).  The Court largely granted defendants' motion to dismiss the *Wilson* complaint.  *Wilson*, Dkt. 60.  Instead of amending the complaint, plaintiffs voluntarily dismissed.  *Wilson*, Dkt. 63.

than 8,500 hours litigating this case to arrive at a combined lodestar of $5.1 million. *Id.* at 19–23.

Of the $5.1 million lodestar, the 16 attorneys and 12 support staff of the *Engine I* firms that actually negotiated the settlement incurred only $1.8 million in fees (*id.* at 11–14):

| Firm Name | Rates Range | Hours | Lodestar |
|---|---|---|---|
| Sauder Schelkopf LLC | $75–$825 | 876.8 | $660,722.50 |
| Hagens Berman Sobol Shapiro LLP | $225–$1,285 | 1,355.9 | $733,576.00 |
| The Law Office of Adam R. Gonnelli | $900 | 168.8 | $151,920.00 |
| Walsh PLLC | $575–$700 | 389.4 | $266,855.00 |
| Nve, Stirling, Hale, Miller & Sweet, LLP | $200–$750 | 26.2 | $16,710.00 |
| **Totals** | | **2,817.1** | **$1,829,783.50** |

By sharp contrast, the 16 attorneys and nine support staff of the *Short* firms, who did not contribute at all to the settlement, claim a $3.3 million lodestar, *i.e.*, 64% of the $5.1 million lodestar incurred to-date (*id.*):

| Firm Name | Rates Range | Hours | Lodestar |
|---|---|---|---|
| Keller Rohrback LLP | $250–$1,320 | 4,129.2 | $2,202,035.50 |
| Bailey Glasser, LLP | $250–$690 | 788.4 | $520,024.50 |
| Beasley, Allen, Crow, Methvin, Portis & Miles, P.C. | $275–$850 | 811.4 | $550,180.00 |
| **Totals** | | **5,729.0** | **$3,272,240.00** |

Of the *Short* firms' $3.3 million lodestar, about $2,643,270.50 is attributed to work done in *Short*.[6]   *See* Keller Entries; Bailey Entries; Beasley Entries.

---

[6]   Excel sheets reflecting plaintiffs' counsel's time entries sent directly to the Court are cited as "[Firm] Entries."   Defendants received only PDF versions of the Excel sheets due to plaintiffs' privilege redactions, and so had difficulty parsing the thousands of entries but nonetheless used best efforts to sort through this format.

Commensurate with lack of motions practice in *Flaherty*, *Marbury*, *Thornhill*, and *Buettner*, plaintiffs' counsel has submitted lower lodestars with respect to work done on these four matters. *See generally* Sauder Entries; Hagens Entries; Gonnelli Entries; Walsh Entries; Nye Entries; Keller Entries; Bailey Entries; Beasley Entries.

Based on the ratio of the number of notices sent in *Engine I* versus *Engine II*, plaintiffs' counsel anticipates they will incur 71.8% of the total post-final approval lodestar in *Engine I* ($2 million), *i.e.*, $1,436,000. Mot. at 28.

Plaintiffs' counsel also states they have incurred $251,095.87 in costs. *Id.* at 32. Of this total, the *Engine I* firms incurred only $38,317.72. Dkt. 106-1 ¶ 28; Dkt. 106-3 ¶ 8; Dkt. 106-4 ¶ 17; Dkt. 106-6 ¶ 46. The *Short* firms incurred $212,238.15 in costs, most attributable to expenses related to only *Short*. Dkt. 106-7 ¶¶ 33–34; Dkt. 106-9 ¶ 25; Dkt. 106-10 ¶ 7.

## **LEGAL STANDARD**

Where "there is no way to gauge the net value of the settlement," courts traditionally employ the lodestar method to assess proposed fee awards. *Moore v. Verizon Commc'ns, Inc.*, No. C 09-1823 SBA, 2014 WL 588035, at *9 (N.D. Cal. Feb. 14, 2014) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998)); *see also Kearney v. Hyundai Motor Am.*, No. SACV 09-1298-JST (MLGx), 2013 WL 3287996, at *7 (C.D. Cal. June 28, 2013) (using lodestar method because settlement does not involve a conventional common fund). The "lodestar is the product of reasonable hours times a reasonable rate." *City of Burlington v. Dague*, 505 U.S. 557, 559 (1992) (citations omitted).

The nature of the lodestar review remains rooted in a court's "objective determination of the value of the attorney's services." *In re Consumer Priv. Cases*, 175 Cal. App. 4th 545, 557 (2009) (citations omitted). Plaintiffs' counsel must show identifiable and substantial ***contribution to the results achieved*** for the classes, not simply that they recorded a given number of hours. *See also AK Futures, LLC v. LCF Labs, Inc.*, No. 8:21-cv-02121-JVS-ADSx, 2023 WL 2561729, at *4 (C.D. Cal. Feb.

2, 2023) ("In determining reasonable compensation, courts 'must carefully review attorney documentation of hours expended; padding in the form of inefficient or duplicative efforts is not subject to compensation.'"); *Kane v. Smithfield Direct, LLC*, No. CV 21-4832 PA (JCx), 2022 WL 3099429, at *3 (C.D. Cal. July 20, 2022) ("The Court is obligated to conduct a careful review of the reasonableness of requested attorneys' fees and costs."); *Lim v. Transforce, Inc.*, No. LA CV19-04390 JAK (AGRx), 2022 WL 17253907, at *15 (C.D. Cal. Nov. 15, 2022) ("[C]ourts have an independent obligation to ensure that the award, like the settlement itself, is reasonable."); *Glover v. Mercedes-Benz USA, LLC*, No. 8:21-cv-01969-JDE, 2022 WL 17080196, at *2 (C.D. Cal. Aug. 9, 2022) ("If the court finds the time expended or fee request is 'not reasonable under all the circumstances, then the court must take this into account and award attorney fees in a lesser amount.'" (quoting *Nightingale v. Hyundai Motor Am.*, 31 Cal. App. 4th 99, 104 (1994))).

## ARGUMENT

The amount of fees and costs sought by plaintiffs' counsel is excessive and unsupported.[7]  Specifically, defendants take issue with (1) fees and costs claimed for work done in *Short*, (2) plaintiffs' estimate for fees for post-approval work, and (3) the requested 1.74 multiplier.  At least $2.64 million of plaintiffs' demanded fees and much of their costs relate solely to *Short*, work that did not contribute to the settlement and thus cannot be credited.  In addition, plaintiffs' calculation for post-approval work is based on inaccurate assumptions.  Finally, plaintiffs provide no justification for a multiplier, let alone one greater than in *Engine II*.

As it has done before, the Court should discount plaintiffs' demand.  *See, e.g.*, *Pollard v. FCA US, LLC*, No. 8:17-cv-00591-JLS-JCG, 2020 WL 57270, at *5 (C.D. Cal. Jan. 3, 2020) (reducing calculated lodestar by 10% where billing lacked sufficient

---

[7]  Plaintiffs represent the demanded fee is "substantially below" the $12 million "agreed maximum amount."  Mot. at 11.  The settlement agreement only obligated *plaintiffs* to seek less than this amount. Dkt. 79-2 at 40.  Defendants have never agreed to pay up to $12 million in fees and expenses.  Morgan Decl. ¶ 16.

detail, rates did not appear reasonable, and case was not managed efficiently); *Sinohui v. CEC Ent., Inc.*, No. 5:14-cv-02516-JLS-KK, 2018 WL 11379579, at *8 (C.D. Cal. Oct. 2, 2018) (reducing calculated lodestar by 10% where it was difficult to "determine the reasonableness of the hours for settlement of the relevant claims" and where class counsel "billed routine, administrative, or easily delegable tasks at a partner rate"); *Scott v. HSS, Inc.*, No. 8:14-cv-01911-JLS-RNB, 2017 WL 7049524, at *8 (C.D. Cal. Dec. 18, 2017) (reducing calculated lodestar by 20%); *Lightbourne v. Printroom, Inc.*, No. SACV 13-876-JLS (RNBx), 2015 WL 12732457, at *5 (C.D. Cal. Dec. 10, 2015) (same).  The Court should reduce the excessive *Short* components of the claimed lodestar and costs by at least $2.64 million and $200,000, respectively, to eliminate recovery for work that did not contribute to the settlement.

## I.   NO BASIS EXISTS TO CREDIT MOST, IF NOT ALL, THE *SHORT* FIRMS' CLAIMED LODESTAR AND COSTS

### A.   Work in *Short* Did Not Contribute to the *Engine II* Settlement

Of the $5.1 million lodestar, the *Short* firms claim $3.72 million, with much of it attributable to discovery and expert work done in *Short*.  Mot. at 20–23.  But only contributions to the settlement can be considered for the fees award.  *See Rodriguez v. Disner*, 688 F.3d 645, 659 (9th Cir. 2012) (denying attorneys' fees altogether when counsel added no legal argument or expertise to the class's litigation effort); *Van Lith v. iHeartMedia + Ent., Inc.*, No. 1:16-cv-00066-SKO, 2017 WL 4340337, at *16 (E.D. Cal. Sept. 29, 2017) (noting courts must exclude time "'spent on services which produce no tangible benefit for the client'" (citation omitted)).

Plaintiffs contend, in conclusory fashion, that work in *Short* aided their "review" of the settlement and reduced the scope of confirmatory discovery.  Mot. at 26.  The Court cannot credit these vague assertions.  Plaintiffs do not and cannot provide specifics as to how *Short* advanced the settlement.  All core terms of the *Engine II* settlement were agreed upon with the *Engine I* firms before counsel in *Short* became involved.  Morgan Decl. ¶ 12.  That all but one of the *Engine II* settlement

benefits came directly from *Engine I* further underscores *Short*'s lack of influence on the settlement. *Id.* ¶ 9.   And *Short* counsel played no role in negotiating reimbursement for incidentals, the only new benefit in *Engine II*. *Id.* ¶ 12.

Nor did *Short* help plaintiffs achieve the settlement in any other way.   For instance, *Short* did not enlarge the scope of class vehicles. *Flaherty* had long included *Short*'s 2012–2016 Kia Soul as class vehicles, and *Marbury* targeted vehicles with Theta II MPI engines, including *Short*'s 2011–2013 Hyundai Tucson. Dkt. 1 ¶ 2; *Marbury*, Dkt. 1 ¶ 1.   In other words, there were no vehicles at issue in *Short* that the *Engine I* firms had not already contemplated.   Similarly, *Short* did not help resolve whether to include vehicles with Lambda engines as part of the settlement (*see* Morgan Decl. ¶ 10) because *Short* did not involve Lambda engines. *Short*, Dkt. 71 ¶ 19.

*Short* did not focus the asserted defect for *Engine II* either.   The complaints in *Short* all alleged problems concerning overheated catalytic converters and leaking oil pans.[8] *Short*, Dkt. 23 ¶¶ 7–10; *Short*, Dkt 42 ¶¶ 10–13, *and Short*, Dkt. 71 ¶¶ 19–23. Notably, *Short* then abandoned this theory and adopted the same one *Flaherty* had alleged all along—that the issue was manufacturing debris.   Morgan Decl. ¶ 7. Plaintiffs' expert reports in *Short* were also served after *Marbury* and *Thornhill* were filed, and these two cases alleged a similar connecting rod bearing defect to *Flaherty*. *Marbury*, Dkt. 1 ¶ 114; *Thornhill*, Dkt. 1 ¶ 3.   Of course, this is not a novel defect theory in the first place.   It is the same one alleged in *Engine I*—just for a different set of vehicles.   Dkt. 99 at 2.

Nor did anything the *Short* plaintiffs did "narrow" confirmatory discovery.   The confirmatory discovery sought and obtained in *Engine II* was virtually identical to that in *Engine I*, including depositions of the same two witnesses.   Morgan Decl. ¶ 17.   In *Engine I*, plaintiffs served 14 requests for production and 22 interrogatories.

---

[8]   Catalytic converters are part of the exhaust system, not the engine system.

*Id*.  *Engine II* plaintiffs served 17 requests for production—14 of which were taken verbatim from *Engine I*—and 14 interrogatories.  *Id*.  Plaintiffs sought the same information from defendants in both cases, *e.g.*, the average labor time to install KSDS, any amounts allocated to providing settlement benefits, and the number of class vehicles.  *Id*.  In addition, plaintiffs did not use any documents produced in *Short* in the confirmatory discovery depositions.  *Id*. ¶ 4.

Accordingly, the Court should reduce plaintiffs' lodestar to exclude work done on *Short*.  Defendants estimate that at least $2,643,270.50, or 80.83%, of the *Short* firms' $3.27 million lodestar, was for work done solely on *Short*.  Morgan Decl. ¶ 18.  This amount includes the *Short* firms' entries that preceded the *Flaherty-Marbury-Thornhill* motion for consolidation on June 4, 2021, and a line-by-line evaluation of entries after this date.  *Id*.  Where it was unclear whether an entry related to the settlement or *Short*, defendants counted it as settlement work.  *Id*.

**B.**   **The *Short* Firms Unnecessarily Continued Litigating *Short***

The *Short* firms conveniently ignore that **they** chose to continue litigating *Short* despite knowing *Engine II* overlapped with the claims in *Short* and was heading toward class settlement.  This sequence provides an independent reason the *Short* firms cannot claim fees for this unnecessary work.  *See Edelman v. PSI Assoc. II, Inc.*, 147 F.R.D. 217, 223 (C.D. Cal. 1993) (reducing the hours claimed by class counsel because "much of the work performed by [class counsel] was excessive and unnecessary because a settlement might well have been reached early in the litigation, or even before the complaint was filed").

The *Short* firms were aware of *Flaherty*, the earliest filed action of the consolidated *Engine II* cases, not later than April 17, 2019.  *Short*, Dkt. 20.  They were also aware since at least May 2021 that the *Engine I* firms had filed *Marbury* and *Thornhill*.  Morgan Decl., Ex. A; *Marbury*, Dkt. 1; *Thornhill*, Dkt. 1.  Multiple stipulations and a motion for consolidation in *Flaherty*, *Marbury*, and *Thornhill* filed in April through early June 2021 made clear a class settlement was percolating.  Dkt.

48; *Marbury*, Dkts. 39, 42; *Thornhill*, Dkt. 25.  Indeed, the *Short* firms' efforts to consolidate *Buettner* with *Flaherty*, *Marbury*, and *Thornhill*, and to appoint Keller Rohrback as Interim Co-Lead Class Counsel show they were well aware of looming settlement.  Dkt. 50.

Defendants were of course not privy to the *Short* firms' litigation strategy nor any conversations between the *Engine I* firms and the *Short* firms.  The *Short* firms had previously rejected transfer and coordination (*Short*, Dkt. 20; *JPML*, Dkt. 33; *JPML*, Dkt. 34 at 15), and never requested a stay or consolidation with *Engine II* before expert reports were exchanged and depositions of named plaintiffs in *Short* began on June 30, 2021.  Morgan Decl. ¶ 13.  Had the *Short* firms shared even an inkling of their plan to join the proposed settlement, defendants would have gladly agreed to pause *Short* to avoid wasting their own time and expenses.  *Id.*  Instead, the *Short* firms urged that they were "eager to move ahead with discovery" and made no efforts to stop or delay these depositions or the expert work.  Morgan Decl., Ex. B. Without knowing plaintiffs' plan for *Short*, the only sensible course for defendants was to obtain the discovery it needed with the deadline looming.  *See Short*, Dkt. 87.

Relatedly, plaintiffs fault defendants' "litigation tactics" for their bloated billing in *Short* and claim defendants refused to engage in *Short* settlement discussions.  Mot. at 25.  This sequence is inaccurate.  It was the *Short* firms' piecemeal addition of named plaintiffs and causes of action that led to two separate motion to dismiss briefing rounds.  *See Short*, Dkts. 23, 42, 71.  Defendants also engaged in discovery in good faith by attempting to understand and respond to plaintiffs' expansive and often vague discovery demands.  Morgan Decl. ¶ 4.  Nor did the *Short* plaintiffs ever broach settlement.  *Id.* ¶ 13.  At most, *Short* plaintiffs inquired what defendants intended to do about the overlap among *Short*, *Marbury*, and *Thornhill* on May 11, 2021.  Morgan Decl., Ex. A.  Plaintiffs cannot blame defendants for their risky and wasteful litigation choices and then demand defendants indemnify them.

### C.   The *Short* Firms' Work Was Duplicative and Inefficient[9]

Plaintiffs claim fees on behalf of 32 attorneys and 21 paralegals from eight different firms.[10]   Mot. at 20–23.   The Court should not award fees for duplicative work among the various law firms.  *Sarabia v. Ricoh USA, Inc.*, No. 8:20-cv-00218-JLS-KES, 2023 WL 3432160, at *9 (C.D. Cal. May 1, 2023) (Staton, J.) (citation omitted) ("Hours not reasonably expended are those that are excessive, redundant, or otherwise unnecessary. A district court may reduce hours by either conducting an hour-by-hour analysis or by making an across-the-board percentage cut."); *Pollard*, 2020 WL 57270, at *5 (Staton, J.) (reducing lodestar by 10% because case was not pursued efficiently); *Snow Joe, LLC v. Linemart Inc.*, No. CV 20-00587-RSWL-RAOx, 2022 WL 3446032, at *3 (C.D. Cal. Aug. 16, 2022) ("Counsel should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." (quoting *Hensley*, 461 U.S. at 434 (1983))); *Keegan v. Am. Honda Motor Co, Inc.*, No. CV 10-09508 MMM (AJx), 2014 WL 12551213, at *26 (C.D. Cal. Jan. 21, 2014) (finding excess billing where "there were 21 attorneys and four law firms"); *Asghari v. Volkswagen Grp. Of Am., Inc.*, No. 13-02529 MMM (VBKx), 2015 WL 12732462, at *49 (C.D. Cal. May 29, 2015) ("21 attorneys from seven law firms . . . likely resulted in duplicative work being performed."); *AK Futures*, 2023 WL 2561729, at *4 ("[P]adding in the form of inefficient or duplicative efforts is not subject to compensation.").

As the result in *Engine I* suggests, the *Engine I* firms were capable of obtaining a satisfactory resolution for a class that is twice as large as the one here.  *Compare* Dkt. 79 at 11 *with Engine I*, Dkt. 143-2.  Given the overlap with *Engine I* work and

---

[9]   The *Short* firms' time records also appear to include entries unrelated to *Short*.  For instance, attorneys at these firms participated in calls with Berger Montague attorneys about a "McGregor complaint."  *See, e.g.*, Bailey Entries at 3/19/2020 (J. Boggs), 7/28/2020 (J. Boggs), 7/30/2020 (J. Boggs); Beasley Entries at 7/28/2020 (C. Barnett), 7/30/2020 (C. Barnett & M. Williams), 8/11/2020 (C. Barnett).
[10]   Even when examining the *Short* firms' entries attributable to work on *Engine II*, many entries are about getting involved (or paid) in the consolidated case, not about moving the settlement forward.

the number of attorneys and firms engaged, work by the *Short* firms can only be surplus that cannot support plaintiffs' large fee demand.

Plaintiffs' billing records confirm replete examples of inefficient and duplicative billing. The *Short* firms should have delegated certain tasks to paralegals or junior attorneys. For instance, attorneys were scanning documents or organizing files. *See, e.g.*, Bailey Entries at 12/15/2020 (J. Boggs), 2/4/2021 (J. Boggs); Beasley Entries at 2/23/2021 (C. Barnett); Keller Entries at 4/23/2020 (M. Goins). The two highest billing plaintiffs' attorneys billed easily delegable research and fact investigation. *See, e.g.*, Keller Entries at 3/2/2019 (L. Sarko), 3/7/2019 (G. Cappio), 3/18/2019 (G. Cappio), 9/2/2022 (L. Sarko). Multiple attorneys reviewed the same *pro hac vice* applications. *See* Beasley Entries at 5/31/22 (C. Barnett, M. Williams, D. Martin); Keller Entries at 5/31/22 (R. McDevitt). At least six attorneys reviewed a simple stipulation to transfer. *See* Keller Entries at 5/17/22 (R. McDevitt), 5/19/22 (A. Daniel, G. Cappio); Beasley Entries at 5/20/22 (C. Barnett), 5/23/22 (M. Williams, D. Martin). Hundreds of entries are devoted to internal conferences and emails. *See, e.g.*, Keller Entries at 3/26/19 (G. Cappio), 2/5/20 (R. McDevitt), 3/11/21 (G. Cappio), 3/30/22 (G. Cappio), 6/9/22 (R. McDevitt), 4/28/23 (L. Sarko). As one example of the many large team meetings reflected in the entries, seven Keller personnel attended a team meeting in January 2020. Keller Entries at 1/29/20 (J. Mersing, A. Daniel, R. McDevitt, M. Goins, G. Cappio, B. Nealious, K. Gardner).

Courts, including this one, have deemed such billing inappropriate when awarding fees. *See Scott*, 2017 WL 7049524, at *8 (Staton, J.) (reducing lodestar by 20% where counsel "billed routine, administrative, or easily delegable tasks at a partner rate"); *Aikens v. Malcolm Cisneros*, No. 5:17-cv-02462-JLS-SP, 2020 WL 10828062, at *7 (C.D. Cal. Jan. 2, 2020) (Staton, J.) (reducing lodestar because "billing records reflect a high of degree of 'strategy' conferencing and 'discussion[s] . . . at seemingly every point in this litigation."); *Petersen v. FCA US, LLC*, No. CV 21-1386 DSF (Ex), 2022 WL 2255099, at *7–8 (C.D. Cal. June 21, 2022) (reducing

block-billed entries by 20%); *Ang v. Bimbo Bakeries USA, Inc.*, No. 13-cv-01196-HSG, 2020 WL 5798152, at *9 (N.D. Cal. Sept. 29, 2020) ("[T]he Court finds substantial time was billed for clerical tasks such as 'filing, transcript, and document organization time,' which the Ninth Circuit has stated are not compensable, regardless of who completes them."); *In re Am. Apparel, Inc. Shareholder Litig.*, No. CV 10-06352 MMM (JCGx), 2014 WL 10212865, at *27 (C.D. Cal. July 28, 2014) (similar); *Rodriguez v. Farmers Insur. Co. of Ariz.*, No. CV 09-06786 JGB (AJWx), 2014 WL 12544829, at *4 (C.D. Cal. Mar. 13, 2014) (similar); *Asghari*, 2015 WL 12732462, at *49 (lowering lodestar by 10% across the board due to "concerns regarding duplicative billing"); *Hernandez v. Grullense*, No. 12-cv-03257-WHO, 2014 WL 1724356, at *10 (N.D. Cal. Apr. 30, 2014) (reducing lodestar for "unnecessary and duplicative intra-office conferences"); *In re Magsafe Apple Power Adapter Litig.*, No. 5:091-CV-01911-EJD, 2015 WL 428105, at *13 (N.D. Cal. Jan. 30, 2015) (similar); *Lusk v. Five Guys Enter. LLC*, No. 1:17-cv-0762 JLT EPG, 2023 WL 4134656, at *26–27 (E.D. Cal. June 22, 2023) (similar).

In addition, the *Short* firms' hours spent on this fees motion should be deducted or completely denied. Although reasonable fees and costs associated with the pursuit of attorneys' fees are generally recoverable, *McGrath v. County of Nevada*, 67 F.3d 248, 253 (9th Cir. 1995), "these compensable hours must be strictly limited," and the Court can deny fees in the entirety "when petitioning lawyers are guilty of overreaching in seeking outrageously unreasonable fees." *Farris v. Cox*, 508 F. Supp. 222, 227 (N.D. Cal. 1981). The *Short* firms requests payment for at least 124.9 hours spent on its fee petition. *See* Keller Entries. In comparison, Hagens Berman submitted no billing entries and Sauder Schelkopf billed 13.7 hours for preparing and drafting its fee application. *See* Hagens Entries; Sauder Entries. Courts have decreased plaintiffs' lodestars when they have billed far less for fees motions than what was billed here. *See, e.g.*, *Loera v. Cnty. of Los Angeles*, No. CV 047508PA, 2005 WL 1225982, at *3 (C.D. Cal. Mar. 21, 2005) (finding fees motion "should not

have taken 7.4 hours to prepare" and reducing to 3 hours); *Cruz v. Starbucks Corp.*, No. C-10-01868 JCS, 2013 WL 2447862, at *9 (N.D. Cal. June 5, 2013) (reducing 30.8 hours spent on fees motion by 50%); *Hernandez*, 2014 WL 1724356, at *14 (similar).

### D.      Costs Attributable to *Short* Should Be Similarly Discounted

Plaintiffs seek $300,000 in costs.  Mot. at 2.  This total is presumably based on rounding up the *Engine I* firms' $38,318 claimed expenses and the *Short* firms' $212,238.15.  Dkt. 106-1 ¶ 28; Dkt. 106-3 ¶ 8; Dkt. 106-4 ¶ 17; Dkt. 106-6 ¶ 46; Dkt. 106-7 ¶ 33; Dkt. 106-9 ¶ 25; Dkt. 106-10 ¶ 7.  "However, the costs and expenses incurred by counsel are subject to a ***test of relevance and reasonableness*** in amount" and "[t]he taxation of costs lies within the trial court's discretion." *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996) (emphasis added).  As such, reimbursable costs "should be limited to typical out-of-pocket expenses that are charged to a fee playing client and should be reasonable and necessary." *In re Toyota Motor Corp.*, No. 8:10ML 02151 JVS (FMOx), 2013 WL 12327929, at *36 (C.D. Cal. July 24, 2013).

Much of the *Short* firms' costs are related to the depositions of the *Short* named representatives, expert fees, discovery hosting, and legal research done in *Short*.  Dkt. 106-7 ¶¶ 33, 34.  As with fees (*see* Section I.A), plaintiffs have not shown these tasks contributed to the settlement, so the Court should not credit these related costs.

Defendants are cognizant that plaintiffs may incur future expenses that are in fact related to the settlement.  In *Engine I*, plaintiffs represented in their motion for attorneys' fees that they had incurred $150,153.70 in costs and then later informed the Court of an additional $46,514.81 after the final fairness hearing.  *Engine I*, Dkt. 202 at 45; *Engine I*, Dkt. 194 at 3.  This amounted to $196,668.51 in total expenses, or an increase of 31% from the amount initially reported in the fees motion.  *Id.* Applying the same percentage increase to the costs incurred by *Engine I* firms here ($38,318) results in about $50,000 in total expected expenses post-final fairness

hearing.  The *Short* firms have not provided sufficient information to determine which of their costs is attributable to the settlement or to *Short*, so defendants will assume the *Short* firms will also incur $50,000 in total expenses that the Court can credit. Thus, the Court should award no more than $100,000 in costs.

## II.   PLAINTIFFS' ESTIMATED FEES FOR POST-APPROVAL ADMINISTRATION ARE EXCESSIVE[11]

Plaintiffs' counsel expects to incur $1,436,000 in additional lodestar for "claims administration, briefing and attending the final approval hearing, valuing the Settlement, and handling any appeals."  Mot. at 27–28.  They anticipate much of this time to be devoted to settlement administration issues.  *Id.* at 27.  In arriving at their projection, plaintiffs reason that the number of *Engine II* notices is 71.8% of the *Engine I* notices, and so anticipate incurring 71.8% of the total post-final approval lodestar in *Engine I* ($2 million).  *Id.* at 27–28.

Plaintiffs' analysis is flawed.  First, it is unclear how plaintiffs derived 71.8% from the "total notices."  Mot. at 28.  Notices were mailed, re-mailed, and emailed, and several class members received both mailed and emailed notices.  *See* Dkts. 105-5, 105-6.  Second, plaintiffs ignore that notices were sent to former and current owners and lessees, meaning the number of notices merely reflects ownership turnover. Based on defendants' administration experiences in *Engine I*, it is rare that more than one class member will have qualifying claims for a single VIN.  Morgan Decl. ¶ 19. Thus, a better proxy for projecting post-approval work is the number of class vehicles. There were 4.2 million *Engine I* class vehicles, but only 2.2 million class vehicles in *Engine II*, *i.e.*, only 52% of the vehicles at issue in *Engine I*.  *Compare* Dkt. 79 at 11 *with Engine I*, Dkt. 143-2.  Fifty-two percent of the $2 million total post-final approval

---

[11]   Plaintiffs appear to claim this anticipated work will decrease their effective requested multiplier to 1.36.  Mot. at 28.  They provide no case law suggesting the Court should consider work not yet done when assessing a multiplier request.

lodestar in *Engine I* yields $1.04 million.[12]   Third, even this projection must be adjusted downward to account for efficiencies learned and implemented from *Engine I*.  The parties have clarified ambiguities present in the *Engine I* settlement agreement.  For example, the definition for "Exceptional Neglect" in *Engine II* is much more objective compared to its definition in *Engine I*, and so Exceptional Neglect cases can be resolved more expeditiously here.  Dkt. 79-2 at 7–9; *Engine I*, Dkt. 194-1 at 6–7.  Hyundai and Kia have also improved the claims submission process, such as including a clearer benefit-by-benefit explanation of required documents in the online submissions portal, which should lead to fewer questions by class members.  Moreover, the model for the *Engine II* administration exists from *Engine I*, and defendants now have increased experience from *Engine I* with assisting class counsel and class members.  Consequently, class counsel will need to spend fewer hours on settlement administration, leading to an even lower post-final approval lodestar calculation.

## III.   <u>NO MULTIPLIER IS WARRANTED</u>

In *Engine I*, the Court approved an agreed-upon 1.67 multiplier.  *Engine I*, Dkt. 202 at 47.  Here, plaintiffs seek a 1.74 multiplier without providing any rationale to warrant a ***higher*** multiplier than in *Engine I*.  Mot. at 19.  Multipliers cannot be justified in most settlements, and one is not reasonable here.

There is a "strong presumption" that the properly adjusted lodestar alone provides the reasonable fee.  *See Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986); *see also Stewart v. Gates*, 987 F.2d 1450, 1453 (9th Cir. 1993) ("Once determined, the basic fee leaves 'very little room' for enhancement." (quoting *Clean Air*, 478 U.S. at 566)).  The lodestar amount (assuming it is accurate and supported) is presumed to provide full and reasonable compensation,

---

[12]   As an alternative methodology to the one suggested in Section I.D for costs, applying 52% to the total *Engine I* costs ($196,668.51) similarly yields about $100,000 in estimated costs for *Engine II*.

"and thus a multiplier may be used to adjust the lodestar amount upward or downward only in 'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings by the lower courts that the lodestar amount is unreasonably low or unreasonably high." *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000); *see, e.g.*, *Parkinson v. Hyundai Motor Am., Inc.*, 796 F. Supp. 2d 1160, 1176 (C.D. Cal. 2010) (rejecting requested multiplier); *Rahman v. FCA US, LLC*, 594 F. Supp. 3d 1199, 1207 (C.D. Cal. 2022) (rejecting requested multiplier because case was routine); *Fernandez v. Siam Minh Corp.*, No. CV 20-9484-MWF (ASx), 2022 WL 16857020, at *8 (C.D. Cal. Sept. 28, 2022) (rejecting use of lodestar multiplier where "minimal motion practice, no discovery, and no trial").

To overcome the strong presumption against a multiplier, class counsel would need to satisfy "stringent requirements." *Stewart*, 987 F.2d at 1453. Among these, they would need specific evidence that the requested enhancement is "necessary to the determination of a reasonable fee." *Dague*, 505 U.S. at 562 (emphasis in original); *Perdue v. Kenny A.*, 559 U.S. 542, 553 (2010) ("[T]he burden of proving that an enhancement is necessary must be borne by the fee applicant."). "[F]actors subsumed in the lodestar calculation cannot be used as a ground for increasing an award above the lodestar[.]" *Perdue*, 559 U.S. at 546; *see also McIntosh v. McAfee, Inc.*, No. C06-07694 JW, 2009 WL 673976, at *3 (N.D. Cal. Mar. 13, 2009) ("Courts must not consider any of the Multiplier factors to the extent that they are already encompassed within the Lodestar calculation itself.").

### A.   The Issues in This Case Do Not Support a Lodestar Multiplier

Courts disapprove of using novelty and complexity as "ground[s] for an enhancement because these factors 'presumably are fully reflected in the number of billable hours recorded by counsel.'" *Perdue*, 559 U.S. at 553 (quoting *Blum v. Stenson*, 465 U.S. 886, 898 (1984)); *Merritt v. Mackey*, 932 F.2d 1317, 1324 (9th Cir. 1991) (same); *Chambers v. Whirlpool Corp.*, 980 F.3d 654, 666 (9th Cir. 2020)

1  (finding no exceptional factors applied to deviate from rule that "novelty and

2  complexity of a case generally may not be used as a ground for an enhancement").

3  Yet plaintiffs' counsel alleges that the "novelty and complexity of the issues" here

4  support a lodestar multiplier.  Mot. at 29.  They claim it is not a "run-of-the-mill auto

5  defect case" because they had to learn about the "existence and nature of the alleged

6  defect and the vehicles affected."  *Id.*  Not only do all auto defect class actions involve

7  inquiry into these factors, but plaintiffs' position also ignores that this litigation and

8  settlement are lifted directly from *Engine I*—the only significant difference being the

9  type of engine covered.  *See* Dkt. 105 at 11.  If there was no novelty or complexity in

10  *Engine I*, there is certainly none in *Engine II*.  In fact, noting that "Class Counsel have

11  litigated, and this Court has presided over, many automotive defect class actions, and

12  Class Counsel have not pointed to anything that makes this one particularly novel or

13  complex compared to other automotive defect class actions," this Court was

14  "unpersuaded that 'the novelty and the complexity of the issues'" supported a lodestar

15  multiplier in *Engine I*.  *Engine I*, Dkt. 202 at 44.

16      If plaintiffs are claiming complexity based on the *Short* discovery, plaintiffs do

17  not show how this discovery was complex or why their labor there should be credited,

18  let alone why a multiplier applies to it.  *See* Sections I & III.D; *see also Chambers*,

19  980 F.3d at 666  ("[W]hen considering whether an upward multiplier should apply to

20  a large lodestar based on a high number of discovery-related hours, courts should

21  assess the reasonableness of the discovery efforts in light of the lack of structural

22  restraints on discovery in class action cases.").

23      **B.**    **The Results Achieved Do Not Support a Lodestar Multiplier**

24      Pointing to the relief offered to class members, plaintiffs' counsel argues that

25  the "robust and valuable Settlement supports the multiplier sought."  Mot. at 30.

26  However, this position ignores that the settlement largely extends defendants' prior

27  voluntary efforts.  Courts have consistently declined to apply a multiplier and have

28  even applied a downward adjustment when the value of a settlement largely derives

1  from defendants' voluntarily actions.  *See, e.g.*, *Nguyen v. BMW of N. Am., LLC*, No.

2  C 10-02257 SI, 2012 WL 1380276, at *2 (N.D. Cal. Apr. 20, 2012) (decreasing fee

3  amount based in part because major "benefits [like the extended warranty provided

4  by the settlement] were provided voluntarily by BMW, separate and apart from the

5  parties Settlement."); *In re Bluetooth Headset Prods. Liab. Litig.*, No. 07-ML-1822

6  DSF (Ex), 2012 WL 6869641, at *7 (C.D. Cal. July 31, 2012) (reducing the lodestar

7  because the settlement "provided very little benefit beyond that 'voluntary' action").

8  Defendants are offering the bulk of the value of the settlement benefits

9  independently: a 15-year/150,000-mile extended warranty, free diagnostic inspection,

10  and KSDS installation.  *See, e.g.*, Morgan Decl., Exs. C–F.  Out of plaintiffs' own

11  $934 million settlement valuation, these three benefits account for $923.6 million of

12  it.[13]  Dkt. 105 at 10, 18, 19, 21.  And as public communications show, Hyundai and

13  Kia considered reimbursement requests from owners for expenses incurred to remedy

14  the issue prior to receiving notice of the recalls.  *See, e.g.*, Morgan Decl., Ex. C at 4,

15  Ex. D at 5.  Even the new incidentals benefit is based on defendants' existing roadside

16  assistance programs.  *See* Morgan Decl., Exs. G, H.

17  **C.  Risk and Contingency Considerations Are Inappropriate Here**

18  Plaintiffs' counsel also contends "the contingent nature of the fee supports

19  Class Counsel's request" for a multiplier.  Mot. at 30.  But "enhancement for

20  contingency is not permitted" in statutory fee cases such as this.  *Dague*, 505 U.S. at

21  567; *see also Engine I*, Dkt. 202 at 44 ("[R]isk multipliers are inappropriate in

22  statutory fee cases.").  In addition, "[b]ecause this is not a common fund case, the

23  Court [cannot] take the risk of litigation or the contingent nature of the fee into

24  consideration when considering the appropriateness of a lodestar multiplier." *Engine*

25

26  _____

27  [13]  The Court's observation of an inflated valuation in *Engine I* calls into question the application and accuracy of plaintiffs' approach here.  Dkt. at 18-27; *Engine I*, Dkt. 202 at 44 n.23 ("As detailed above, the expert's valuation inflates the value derived

28  from repair-related reimbursements because it is based on 100% of claimed value, even though the value of claims actually approved is much lower.").

-23-

1    *I*, Dkt. 202 at 44–45; *see also Chambers*, 980 F.3d at 668 (explaining enhancements

2    for contingency not permitted "where the attorney's fees are paid directly by the

3    defendants rather than coming out of the class recovery.").

4         Even if a contingency enhancement could apply, this case presented little risk

5    to plaintiffs' counsel.  The Court had approved of the largely identical one in *Engine*

6    *I*.  *See Engine I*, Dkt. 202.  Moreover, defendants had begun rolling out voluntary

7    remedial measures before settlement with plaintiffs.  *See* Morgan Decl., Exs. C–F.

8    Rather than being a "litigation . . . fraught with numerous risks," Mot. at 22, this case

9    was a "low-risk and desirable matter."  *Carr v. Tadin, Inc.*, 51 F. Supp. 3d 970, 984

10   n.1 (S.D. Cal. 2014) (finding the case a "low-risk and desirable matter" because

11   defendant "agreed to modify its packaging before [the] lawsuit was even filed, and

12   the case settled early in the proceedings, before discovery even began.").

13        In contrast to the *Vizcaino* case that plaintiffs cite (Mot. at 30), a "potential

14   resolution" was discussed early in *Engine II*, and plaintiffs identify no issues that

15   threatened successful settlement.  Mot. at 17; *Vizcaino v. Microsoft Corp.*, 290 F.3d

16   1043, 1048 (9th Cir. 2002) (plaintiffs lost in district court twice and revived case on

17   appeal); *see also Navarrete v. Sprint/United Mgmt. Co.*, No. 8:19-cv-00794-JLS-

18   ADS, 2021 WL 9880475, at *6 (C.D. Cal. Nov. 18, 2021) (Staton, J.) ("The risks

19   highlighted are common to class actions generally and say nothing about whether

20   there are 'special circumstances' in this case that would support an upward

21   departure."); *Lusk*, 2023 WL 4134656, at *24 (finding that contention on the merits,

22   risks in certification, contested motions, appeal, delay, and discovery "apply []

23   generally to class action litigation.").

24        **D.     At Minimum, the *Short* Firms' Multiplier Should Be Reduced**

25        In settlements where multiple law firms make up class counsel, courts

26   frequently apply different multipliers to firms depending on an individual firm's

27   contributions.  *See, e.g.*, *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-

28   5944-SC, 2016 WL 6909680 (N.D. Cal. Oct. 24, 2016) (applying multipliers in the

range of 1 to 2.8 to different plaintiffs' firms); *In re Equity Funding Corp. of Am. Sec. Litig.*, 438 F. Supp. 1303, 1338 (C.D. Cal. 1977) (categorizing law firms by contribution to settlement and applying no multiplier to "counsel who . . . spent much of their time on the sidelines of [the] litigation . . . and did not have primary responsibility for major aspects of the litigation."). For the reasons detailed above, *see* Section I, the *Short* firms contributed substantially less to the settlement than did the *Engine I* firms. Accordingly, even if the Court finds that a multiplier is warranted for the *Engine I* firms' lodestar, none should be applied for the *Short* firms' lodestar.

Plaintiffs' counsel points to no unique or concrete contribution by the *Short* firms. Rather, the *Short* firms assumed less risk. *Flaherty* was the first to assert an issue in certain class vehicles. Dkt. 1 at 14–15; *Engine I*, Dkt. 143 at 13; *In re Hyundai & Kia Fuel Economy Litig.*, 926 F.3d 539, 571–72 (9th Cir. 2019) (upholding downward multiplier applied to class counsel who "had a more minor role in the MDL and did not participate in negotiating the primary settlement" and applying a higher multiplier for different class counsel who had "assumed more risk than other firms by being one of the first firms to take up" the case). The *Short* firms played no role in negotiating the major aspects of this settlement. Morgan Decl. ¶ 9.

## CONCLUSION

For all these reasons, the Court should award no more than $2.46 million in attorneys' fees and $100,000 in costs.

DATED:  July 28, 2023

Respectfully submitted,

QUINN EMANUEL URQUHART &
SULLIVAN, LLP


By /s/ *Shon Morgan*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Shon Morgan
*Attorneys for Defendants Hyundai Motor
Company, Hyundai Motor America, Kia
America, Inc., and Kia Corporation*

DEFENDANTS' OPPOSITION TO MOTION FOR ATTORNEYS' FEES